No. 24-880

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————

CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,

*Plaintiffs-Appellees,*

v.

UNITED STATES DEPARTMENT OF LABOR,

*Defendant-Appellant.*

———————————

On Appeal from the United States District Court
for the Northern District of California

———————————

## EXCERPTS OF RECORD
## VOLUME 3 OF 4

———————————

*Of Counsel:*

SEEMA NANDA
*Solicitor of Labor*

EMILY S. WHITTEN
*Attorney*

*United States Department of Labor*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

ISMAIL J. RAMSEY
*United States Attorney*

PAMELA JOHANN
*Assistant United States Attorney*

MARK B. STERN
JOSHUA M. KOPPEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7212*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4820*

1

2

3                     UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5

6   THE CENTER FOR INVESTIGATIVE          ) Case No. 22-cv-07182-WHA
    REPORTING and WILL EVANS,             )
7                                         )
              Plaintiffs,                 ) **DECLARATION OF MICHELE HODGE IN**
8                                         ) **SUPPORT OF DEFENDANT UNITED STATES**
                                          ) **DEPARTMENT OF LABOR'S MOTION FOR**
9      v.                                 ) **SUMMARY JUDGMENT**
                                          )
10  UNITED STATES DEPARTMENT OF           )
    LABOR,                                )
11                                        )
              Defendant.                  )
12  _____)

13        I, Michele Hodge, declare as follows:

14        1.      I am the current Acting Director of the Office of Federal Contract Compliance Programs

15  ("OFCCP") within the Department of Labor ("DOL" or "Department").  I am familiar with, and

16  routinely administer, Executive Order 11246 ("EO 11246"), the standards and regulations promulgated

17  thereunder, and related enforcement programs.

18        2.      I have worked for OFCCP since April 1986, primarily in the enforcement area. Prior to

19  my tenure as Acting Director, from April 2023 to present, I served as the Deputy Director of OFCCP,

20  where I led the agency to achieve its mission to enforce equal employment opportunity laws, protect

21  workers, and promote equity and diversity by expanding access to quality jobs and advancement

22  opportunities for all workers, especially those who have been historically underrepresented.  Before

23  becoming the Deputy, I served as the Regional Director for OFCCP's Mid-Atlantic region from 2011 to

24  2021, where I worked to ensure that those who do business with the federal government fulfill their

25  affirmative action and nondiscrimination obligations to promote equal employment opportunity.  All of

26  these positions involve the review and understanding of EEO-1 data as it pertains to OFCCP's

27  enforcement initiatives.  In summary, over the last 37 years I have been substantively involved in the

28

operation of OFCCP's enforcement programs, including the collection and use of EEO-1 data in the context of OFCCP compliance evaluations. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

## I.    BACKGROUND

3.    OFCCP is a subdivision of the United States Department of Labor. In 1978, Congress consolidated equal employment opportunity ("EEO") contract compliance programs across the government into OFCCP at DOL. OFCCP administers three legal authorities requiring equal employment opportunity in the employment practices of federal contractors: EO 11246, Section 503 of the Rehabilitation Act of 1973, and the Vietnam Era Veterans' Readjustment Assistance Act of 1974. OFCCP's overall mission is to ensure equal employment opportunity and protect workers from discrimination on the bases protected by these laws: race, color, religion, sex, sexual orientation, gender identity, national origin, disability, and status as a protected veteran. E.O. 11246 § 201(1); 29 U.S.C. § 793; 38 U.S.C. § 4212. Each of these legal authorities have implementing regulations at 41 C.F.R. Chapter 60, promulgated through notice and comment rulemaking, setting forth non-discrimination and other equal employment opportunity standards ("OFCCP standards") that contractors must follow, as well as recordkeeping regulations detailing the personnel action and other employment-related records that federal contractors must maintain. 41 C.F.R. Chapter 60, et seq.; 41 C.F.R. §§ 60-1.12, 60-300.80, 60-741.80. OFCCP standards set forth equal employment opportunity requirements to protect workers from unlawful discrimination by federal contractors in all industries.

4.    OFCCP carries out its mission by scheduling a certain number of federal contractor establishments for compliance evaluations, which generally consist of comprehensive analysis and evaluation of the hiring and employment practices of the contractor, its written affirmative action program, and the results of the efforts taken by contractors to ensure equal employment opportunity, consistent with EO 11246 and its implementing regulations. *See* 41 C.F.R. § 60-1.20(a). These compliance reviews also evaluate compliance with Section 503 of the Rehabilitation Act of 1973 and with the Vietnam Era Veterans' Readjustment Assistance Act (VEVRAA). 41 CFR 60-741.60; 41 CFR

1   60-300.60. OFCCP schedules contractors for compliance evaluations through the use of a scheduling

2   methodology that is made available to the public. *See* most recent methodology, OFCCP, Methodology

3   for Developing the Supply and Service Scheduling List FY 2023, Release – 1,

4   https://www.dol.gov/sites/dolgov/files/OFCCP/scheduling/files/SL23R1-SS-Methodology.pdf (last

5   visited August 17, 2023). This methodology meets the criteria for a neutral administrative plan that

6   complies with the Fourth Amendment's protections against unreasonable searches.  After a contractor

7   has been identified through this methodology, the agency sends an OMB-approved scheduling letter to

8   the contractor with a list of requested information and data for OFCCP to review and analyze off-site.

9   During the course of the compliance evaluation, OFCCP may seek follow-up information and data to

10  review off-site, and may also conduct an on-site review of the contractor's establishment if it needs to

11  obtain further information, such as personnel interviews, at the contractor's premises. While the exact

12  number varies, in recent years, OFCCP has typically conducted between 1,000 to 3,000 of these

13  compliance evaluations per year.

14       5.    There are two circumstances in which OFCCP may file an enforcement action against a

15  contractor.  The first, colloquially referred to as an "access" case, is a situation in which the contractor

16  has refused to provide access to some portion, or all, of the data, information, employees, and/or

17  premises that OFCCP has requested during the course of the compliance evaluation. Such complaints

18  are filed by DOL's Office of the Solicitor (SOL) before the Department's Office of Administrative Law

19  Judges (OALJ). While SOL can file certain "access cases" under expedited hearing procedures, such

20  cases typically take months, and sometimes much longer, to fully litigate. Accordingly, having to go

21  through an "access case" can significantly prolong the length and efficacy of OFCCP's compliance

22  evaluations.  SOL has had to file multiple access cases over the past several years; a listing is attached to

23  this Declaration. *See* Ex. A. The second type of enforcement action is for a substantive violation of

24  OFCCP's legal authorities, including whether the contractor has engaged in unlawful discrimination

25  and/or other violations of the EO 11246 Equal Opportunity Clause.  These complaints are also filed in

26  the first instance before the OALJ.

27

28

## II.    EEO-1 REPORTS

6.    The EEO-1 report is a mandatory annual data collection that requires all private sector employers with 100 or more employees, and federal contractors with 50 or more employees meeting certain criteria, to submit demographic workforce data, including data by race/ethnicity, sex, and job categories. *See* EEOC, EEO-1 Component 1 Data Collection, https://www.eeoc.gov/data/eeo-1-data-collection (last visited August 17, 2023). A sample EEO-1 form is attached hereto. *See* Ex. B.

7.    The raw statistical data contained in these reports is extremely sensitive information because it reflects both the personal demographic data of employees and the workforce allocation strategies of employers. Additionally, the workforce data contained in the EEO-1 reports may qualify as "confidential statistical data" as defined by the Trade Secrets Act. 18 U.S.C. § 1905.

8.    Pursuant to DOL's regulations, each prime contractor and first-tier subcontractor must file EEO-1 reports annually if they have 50 or more employees and a contract, subcontract, or purchase order of $50,000 or more. 41 C.F.R. § 60-1.7. OFCCP regularly receives, usually on an annual basis, EEO-1 report data for all entities that self-identify as federal contractors in response to Question C(3) of their EEO-1 report submissions.

9.    To avoid duplication of efforts and reduce the administrative burden on companies, EEOC and OFCCP jointly developed the EEO-1 form, and created the Joint Reporting Committee ("JRC") to administer the EEO-1 reporting system in a manner that establishes a single data collection to meet the statistical needs of both agencies. The EEO-1 data collection is thus a joint initiative of EEOC and OFCCP, *see* 41 C.F.R. § 60-1.7(a)(1), but EEOC is the agency that administers the EEO-1 report and is functionally responsible for collecting the data through a submission portal accessed through the EEOC website, EEOC Data Collection, https://www.eeocdata.org (last visited August 17, 2023). OFCCP typically receives the EEO-1 data of federal contractors from EEOC at least a year after the reports are filed, after EEOC has had the opportunity to check the data for errors and assemble it for transmittal to OFCCP.

10.    The EEO-1 data submission portal is currently closed because the filing period for the next EEO-1 report has not yet commenced.  A true and correct copy of the 2019 and 2020 EEO-1

DECLARATION OF MICHELE HODGE IN SUPPORT OF DOL'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                           4

1   Component 1 Data Collection User's Guide (containing screen captures of the filing process) is attached

2   hereto. *See* Ex. C.

3          11.     Accurate EEO-1 report information is important to the mission of OFCCP in several

4   ways. First, EEO-1 data is one of the sources OFCCP uses to confirm whether an entity is a federal

5   contractor, and thus an entity over which OFCCP has jurisdiction. This is integral to OFCCP developing

6   its scheduling lists of contractors to review.  Further, while the EEO-1 data, and in particular the Type 2

7   consolidated EEO-1 data, cannot alone form the basis for a finding of discrimination, even in its

8   aggregated form it can allow OFCCP, using its expertise in comprehension of this data, to see where

9   underutilization of particular demographic groups exists, which may be the result of discrimination. This

10  can assist the agency in determining whether there is a need for further evaluation, and in focusing its

11  scheduling of compliance reviews to better review these potential problem areas.

12  **III.    CONFIDENTIALITY OF EEO-1 REPORTS.**

13         12.     The EEOC, the agency that administers the EEO-1 report and is functionally responsible

14  for collecting the data, is prohibited from publicly disclosing EEO-1 forms under Title VII, 42 U.S.C.

15  § 2000e-8(e), which states:

16              It shall be unlawful for any officer or employee of the Commission to
                make public in any manner whatever any information obtained by the
17              Commission pursuant to its authority under this section prior to the
                institution of any proceeding under this subchapter involving such
18              information. Any officer or employee of the Commission who shall make
                public in any manner whatever any information in violation of this
19              subsection shall be guilty, of a misdemeanor and upon conviction thereof,
                shall be fined not more than $1,000, or imprisoned not more than one year.
20

21  42 U.S.C. § 2000e-8(e). The EEOC's regulations implementing the FOIA statute incorporate the

22  statutory prohibition against disclosure. 29 C.F.R. § 1610.17(f). The EEOC "takes extensive measures to

23  protect the confidentiality and integrity of EEO-1 data in its possession" and maintains "a robust cyber

24  security and privacy program" to protect the data.  *See* Agency Information Collection Activities; Notice

25  of Submission for OMB Review, Final Comment Request: Revision of the Employer Information

26  Report (EEO-1), 81 Fed. Reg. 45479, 45492 (July 14, 2016) ("Final Notice")*.  It transmits the database

27  of EEO-1 reports subject to OFCCP jurisdiction to OFCCP "on an encrypted storage device." *Id*.  EEO-

28

DECLARATION OF MICHELE HODGE IN SUPPORT OF DOL'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                              5

1    data is then securely stored by OFCCP upon receipt, and access is limited to a small number of staff.

2        13.     While there is not a parallel statutory prohibition criminalizing disclosure of EEO-1 data

3 by OFCCP, the existence of the statutory prohibition against disclosure by the agency that collects the

4 data, and the congressional intent reflected in this provision, inform OFCCP's treatment of the data as

5 confidential, and create an expectation of confidentiality by contractors, which submit the EEO-1 form

6 only once through the EEOC website. OFCCP understands the important confidentiality concerns and

7 expectation of privacy animating the Title VII provision, and treats the EEO-1 reports as confidential to

8 the maximum extent permitted by law. That commitment is reiterated in multiple public-facing

9 representations. *See* Final Notice at 45491.

10        14.     This commitment to maintaining the EEO-1 reports' confidentiality is explicitly

11 conveyed to submitters through the EEOC data collection website. The EEOC EEO-1 Instruction

12 Booklet during the relevant period specifically states in paragraph 4: "All reports and any information

13 from individual reports are subject to the confidentiality provisions of Section 709(e) of Title VII and

14 may not be made public by the EEOC prior to the institution of any proceeding under Title VII

15 involving the EEO-1 data. Any EEOC employee who violates this prohibition may be found guilty of a

16 criminal misdemeanor and could be fined or imprisoned." Attached to this Declaration is a true and

17 correct copy of the EEO-1 Instruction Booklet accessible on the EEOC website during the relevant

18 period. See Ex. D.

19        15.     EEO-1 submitters are also assured that their EEO-1 filings will be kept confidential

20 when submitting their information via the EEO-1 reporting system. Ex. C at 36. The sample EEO-1

21 form accessed through a link in the Instruction Booklet contains a further assurance of confidentiality:

22 "All reports and information obtained from individual reports will be kept confidential as required by

23 Section 709(e) of Title VII." Ex. B at 2.

24        16.     OFCCP, via the JRC, also explicitly assured all EEO-1 submitters with federal contracts

25 that their reports would be treated as confidential. The Instruction Booklet expressly informed

26 submitters that OFCCP "will protect the confidentiality of the EEO-1 data to the maximum extent

27 possible consistent with FOIA and the Trade Secrets Act." OFCCP also notified submitter that it "will

28

DECLARATION OF MICHELE HODGE IN SUPPORT OF DOL'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA         6

1    notify contractors of any Freedom of Information Act (FOIA) requests that are made to obtain any of the

2    data provided on the EEO-1 reports." Ex. D. ¶ 4 at 4.

3         17.    Consistent with these assurances and the backdrop of strict confidentiality expressed in

4    Title VII, OFCCP treats the EEO-1 reports as confidential and has never released an EEO-1 report

5    except where it has determined that disclosure would be required by law.

6         18.    In addition, OFCCP has a longstanding practice of notifying contractors of any FOIA

7    requests to disclose their EEO-1 reports and giving them an opportunity to object to disclosure.

8    Specifically, pursuant to Executive Order 12600's requirement of predisclosure notification for

9    confidential commercial information and DOL's implementing regulations, 29 C.F.R. § 70.26, OFCCP

10   has routinely provided federal contractors notice of any request for the disclosure of their EEO-1 reports

11   because it believes the documents contain confidential information that is potentially protectable from

12   disclosure. *See* Ronald Reagan, Executive Order 12600--Predisclosure notification procedures for

13   confidential commercial information, June 23, 1987, https://www.archives.gov/federal-

14   register/codification/executive-order/12600.html.  Pursuant to these requirements, OFCCP provides

15   notice to contractors and will not disclose their EEO-1 reports until after they have had an opportunity to

16   object.  If a contractor objects to disclosure, OFCCP evaluates any claims by the contractor that the

17   release of such data is exempt from FOIA disclosure, and, if it accepts the objections as legally

18   sufficient, it declines to release the data.[1]

19        19.    As demonstrated by the thousands of objections filed by contractors in response to the

20   current FOIA requests, many contractors have long proceeded under the understanding that this

21   information would be held confidentially by the agencies that collect the information, including OFCCP.

22   This understanding is supported by OFCCP's prior recent responses to FOIA requests for EEO-1 Type 2

23

24        [1] OFCCP has records dating back as early as 2002 that confirm this practice. Prior to 2009,
25   OFCCP was organized under the Employment Standards Administration (ESA). On November, 8, 2009,
     the ESA was abolished and the four major program components of ESA – the Office of Federal Contract
26   Compliance Programs, the Office of Labor Management Standards, the Office of Workers'
     Compensation Programs and the Wage and Hour Division – became stand-alone programs reporting
27   directly to the Secretary of Labor. *See* Department of Labor, Wage and Hour Division Historical
     Summary, https://www.dol.gov/agencies/whd/about/history (last visited August 17, 2023). Due to
28   compliance with records retention schedules, earlier records no longer exist or are difficult to locate.

DECLARATION OF MICHELE HODGE IN SUPPORT OF DOL'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                    7

1  data, in which OFCCP has declined to release the data based on representations in contractor objections

2  when OFCCP has found the objections to be legally sufficient.  OFCCP has only released EEO-1 data in

3  response to FOIA requests where it has determined that the information does not fall within a FOIA

4  exemption, and it has never released EEO-1 data outside of a FOIA request.[2]

5  **IV.    FORESEEABLE HARM**

6          20.    OFCCP reasonable foresees that releasing the requested EEO-1 data over the objections

7  of submitters who treat this commercial data as private and submitted it to the government under an

8  assurance and expectation of privacy would result in multiple harms to both the federal contractor

9  objectors and OFCCP's mission.

10         21.    Based on OFCCP's expertise in this area, the objections received and evaluated by

11  OFCCP, consultation with experts, and discussion with an employer association, OFCCP reasonably

12  foresees that release of the objectors' data would cause commercial or financial harm to the contractors

13  whose data is released, including, but not limited to:

14              a.    Competitors gaining knowledge of business plans that companies have invested

15                    substantial resources in developing, refining, and implementing to gain a

16                    competitive advantage, including sensitive staffing plans that are revealed by the

17                    EEO-1 reports, such as the ratio of managers to sales workers.  Submitters will

18                    lose the competitive edge afforded by their confidential workforce structure

19                    strategies.

20              b.    Providing competitors information that would allow them to draw additional

21                    conclusions about the submitters' commercial operations from the multiple years

22                    of data that would be released, which they could not draw from one year of data.

23                    Changes and trends in workforce numbers in specific categories would provide

24

25

---

26  [2] In 2018, DOL agreed to settle a lawsuit filed by CIR seeking the EEO-1 reports of several
    companies by withdrawing its assertion that the documents were protected from disclosure under
27  Exemption 4.  *Center for Investigative Reporting, et al. v. Department of Labor*, No. 18-cv-2008-JCS.
    DOL's decision in that case was informed by the heightened substantial competitive harm standard
28  required for application of Exemption 4 at that time.

DECLARATION OF MICHELE HODGE IN SUPPORT OF DOL'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                                              8

insight into a company's operations, forecasting, and strategic plans. The commercial harm that would result from this multi-year analysis is a significant source of concern among submitters.

c. Providing an inaccurate or incomplete picture of the scope of the Diversity, Equity, Inclusion, and Accessibility efforts that contractors are undertaking, as EEO-1 numbers do not reflect the full actions of the contractor. Public criticism of contractors that laypeople do not believe are diverse enough based solely on EEO-1 statistics may cause fewer diverse workers to want to work for that contractor, thus making it harder for them to recruit and maintain a diverse workforce.

d. Increased scrutiny by the public and other organization and officials, and the use and misinterpretation of the raw EEO-1 data to draw inferences about DEI initiatives that can be used to damage the commercial interests of the company. Contractors are increasingly aware of and concerned about public backlash, boycotts, lawsuits, and lost revenue resulting from this scrutiny, which have been widely reported on in recent months. *See, e.g.*, Theo Francis and Lauren Weber, "The Legal Assault on Corporate Diversity Efforts Has Begun," *The Wall Street Journal* (Aug. 8, 2023), https://www.wsj.com/articles/diversity-equity-dei-companies-blum-2040b173 (last visited August 17, 2023) ("The pressure leaves employers vulnerable to litigation for either going too far or not far enough in addressing barriers to equity and inclusion, lawyers say."); J. Edward Moreno, "Fall in Bud Light Sales Puts Dent in Beer Maker's Earnings," *The New York Times* (Aug. 3, 2023), https://www.nytimes.com/2023/08/03/business/bud-light-sales-decline.html ("Retail sales of Bud Light fell as much as 42 percent in some U.S. metro areas in the four weeks that ended on July 22.");; Michael King, "How Chick-Fil-A Became a Target for Going "Woke," *CBS News* (June 2, 2023) https://www.cbsnews.com/atlanta/news/how-chick-fil-a-became-a-target-for-going-woke/.

DECLARATION OF MICHELE HODGE IN SUPPORT OF DOL'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                                      9

e.    Infringement of the privacy of workers who self-identified with a promise of confidentiality, particularly for small companies with few people in certain EEO categories, wherein it may be possible to discern the EEO characteristics of a particular employee.  This may lead to fewer employee self-identifications, which would make it harder for contractors to evaluate their own EEO/DEIA efforts, and may harm employer-employee relations due to a perceived breach of trust.

22.    OFCCP also reasonably foresees the potential for significant harm to the agency in many different ways in the event that OFCCP is required to disclose all federal contractor Type 2 EEO-1 data. Each of these potential harms would interfere with OFCCP being able to perform the mission for which it is appropriated funds and affect the efficiency and effectiveness of the agency's operations.

23.    Disclosure of this data would likely harm relations between OFCCP and the regulated community, which has already expressed many concerns about the OFCCP's ability to keeps company data confidential as a result of these FOIA requests.[3]  OFCCP reasonably foresees that some contractors, who submitted their EEO-1 reports with the expectation of confidentiality and objected to their release, will blame OFCCP if it is unable to protect these sensitive reports from public disclosure.

24.    Due to limited resources, OFCCP only conducts a few thousand establishment reviews each year, although EEO-1 data reveals that there are well over 100,000 contractor establishments in a given year.  Therefore, to fulfill its mission, OFCCP also must rely on contractors' proactive compliance with their equal employment opportunity obligations, which requires some degree of contractor cooperation.  To ensure that contractors are aware of their equal employment opportunity obligations, and thus to facilitate contractor cooperation and compliance, OFCCP conducts numerous compliance

---

[3] Federal contractors are not alone in their concerns. OFCCP recently received correspondence from Representative Virginia Foxx with regard to EEO-1 data specifically and the confidentiality of contractor-provided information and data generally as well as OFCCP's handling of the FOIA request, in which she expresses "serious concerns" that OFCCP did not provide federal contractors with sufficient notice of the FOIA request, suggests that "OFCCP's failures could result in disclosing employers' and employees' sensitive, confidential information" and further asserts that "OFCCP may not have the authority to make such disclosures." *See* Foxx Correspondence, Ex. E. OFCCP anticipates that, should it not be able to protect employers' and employees' sensitive, confidential information, it will see an increase in oversight requests from Congress.

1  assistance events each year both out of its National Office and in its regional offices.  For example, in

2  June 2023, OFCCP collaborated with the Virginia Ship Repair Association, which consists of federal

3  contractors, to provide information on what to expect during an OFCCP compliance review and the

4  types of documentation requested during a review. This presentation occurred at the request of the VA

5  Ship Repair Association.  Also in June 2023, OFCCP hosted a webinar highlighting construction

6  contractors' equal employment and affirmative action obligations. Invitations were sent to contractors

7  on the Corporate Scheduling Announcement List and those who registered to receive email notifications

8  from the agency.  OFCCP meets regularly with regional Industry Liaison Groups to discuss recent

9  developments within OFCCP and provide information and promising practices for complying with

10  OFCCP's legal authorities.  And in August 2023, top officials from OFCCP attended the four-day

11  annual National Industry Liaison Groups conference in Phoenix, where they participated on panels to

12  educate contractors as to obligations under OFCCP's authorities and made themselves available for

13  questions throughout the conference. OFCCP reasonably foresees that disclosure of this data would

14  harm the cooperative relationship it has built with federal contractors, through substantial and sustained

15  efforts, leading to direct harm to the mission of OFCCP.

16      25.      OFCCP further reasonably foresees that disclosure of the data would lead to a portion of

17  the federal contractors being much more reluctant to provide any data requested by OFCCP that the

18  company believes is confidential.  OFCCP's compliance efforts involve requests for substantial amounts

19  of information from contractors in addition to the EEO-1 reports.  Contractors may ultimately refuse to

20  provide such data, forcing OFCCP to file "access" cases to compel the production of this information.

21  Any increase in the number of access cases OFCCP has to file compromises its mission, as it forces the

22  agency to spend significant time and resources on ancillary matters, in turn delaying OFCCP's ability to

23  identify, address and remedy discrimination in contractors' workplaces.

24      26.      Another likely outcome of an order compelling the production of this information is that

25  some number of contractors will decline to bid for federal contracts in the future, as this would be the

26  only way to keep their EEO-1 information from being disclosed. Such an outcome is harmful in two

27  different ways. First, it would decrease the number of entities over which OFCCP has jurisdiction, and

28

DECLARATION OF MICHELE HODGE IN SUPPORT OF DOL'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                    11

1    thus there would be fewer entities that would be required to comply with OFCCP's affirmative and

2    equal employment obligations.  This includes the analyses and other actions OFCCP requires so that

3    contractors can proactively find and address discrimination and other obstacles to equal employment

4    opportunity. Second, if federal contracting agencies have fewer entities willing to bid on federal

5    contracts, the logical result would be a negative impact on the efficiency of federal contracting, as there

6    would be less competition and fewer federal contractors to choose from.

7

8           Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

9    correct hereto.  Executed this 17th day of August, 2023.

10

11

12                                             *Michele Hodge*

13                                             MICHELE HODGE
                                               Acting Director
14                                             Office of Federal Contract Compliance
                                               Programs
15                                             U.S. Department of Labor
                                               200 Constitution Ave., NW
16                                             Washington, DC 20210

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

# OFCCP Access Complaints Filed

| Case Name | Description | Filing Date(s) |
|---|---|---|
| Entergy Services, Inc. | Refusal to provide access to or supply any records and information for compliance review. (DOJ/CRLM) | 7/17/2014 |
| Convergys | Expedited filing for refusal to give access to or supply AAPs and supporting data for compliance review. (Dallas RSOL & Atlanta RSOL) | 12/5/2014 12/10/2015 |
| Google | Refusal to provide access to a variety of employment records related to its compensation practices and contact inform for current and former employees and applicants. (San Francisco RSOL) | 12/29/2016 |
| Baker DC | Expedited filing against construction contractor for refusal to provide records and allow on-site access (Philadelphia RSOL) | 1/13/2017 |
| Oracle | Access case in part for denying access to key documents during the OFCCP investigation, including refusing to provide pay equity analyses. (San Francisco RSOL) | 1/17/2017 |
| AccuWeather | Expedited filing for refusal to give access to OFCCP to investigate a complaint alleging discrimination and hostile work environment based on sexual orientation. (Philadelphia RSOL) | 2/x/2017 |
| Rosemount, Inc. | Refusal to provide support data related to employment activity (applicants, hires, promotions, and terminations), compensation data, and AAPs. (Chicago RSOL) | 9/9/2022 |
| Ad Hoc, LLC | Refusal to provide AAPs and supporting documentation. (Philadelphia RSOL) | 5/23/2023 |

# Exhibit B

Joint Reporting
Committee

- Equal Employment
  Opportunity Com-
  mission
- Office of Federal
  Contract Compli-
  ance Programs (Labor)

# EQUAL EMPLOYMENT OPPORTUNITY

### EMPLOYER INFORMATION REPORT EEO—1

Standard Form 100
REV. 01/2008

O.M.B.No. 3046-0007
FORM APPROVAL: www.reginfo.gov/public/do/PRAMain
100-214

---

**Section A—TYPE OF REPORT**
Refer to instructions for number and types of reports to be filed.

1. Indicate by marking in the appropriate box the type of reporting unit for which this copy of the form is submitted (MARK ONLY ONE BOX).

   (1) ☐ Single-establishment Employer Report

Multi-establishment Employer:
   (2) ☒ Consolidated Report (Required)
   (3) ☒ Headquarters Unit Report (Required)
   (4) ☒ Individual Establishment Report (submit one for each establishment with 50 or more employees)
   (5) ☒ Special Report

2. Total number of reports being filed by this Company (Answer on Consolidated Report only) _____

| Section B—COMPANY IDENTIFICATION *(To be answered by all employers)* | OFFICE USE ONLY |
|---|---|
| 1. Parent Company | |
|   a. Name of parent company (owns or controls establishment in item 2) omit if same as label | a. |
| Address (Number and street) | b. |
| City or town     State     ZIP code | c. |

2. Establishment for which this report is filed. (Omit if same as label)

| | | | | | |
|---|---|---|---|---|---|
|   a. Name of establishment | | | | | d. |
| Address (Number and street) | City or Town | County | State | ZIP code | e. |
|   b. Employer identification No. (IRS 9-DIGIT TAX NUMBER) | | | | | f. |

  c. Was an EEO–1 report filed for this establishment last year? ☐ Yes ☐ No

**Section C—EMPLOYERS WHO ARE REQUIRED TO FILE** *(To be answered by all employers)*

| ☐ Yes | ☐ No | 1. Does the entire company have at least 100 employees in the payroll period for which you are reporting? |
|---|---|---|
| ☐ Yes | ☐ No | 2. Is your company affiliated through common ownership and/or centralized management with other entities in an enterprise with a total employment of 100 or more? |
| ☐ Yes | ☐ No | 3. Does the company or any of its establishments (a) have 50 or more employees <u>AND</u> (b) is not exempt as provided by 41 CFR 60–1.5, <u>AND</u> either (1) is a prime government contractor or first-tier subcontractor, and has a contract, subcontract, or purchase order amounting to $50,000 or more, or (2) serves as a depository of Government funds in any amount or is a financial institution which is an issuing and paying agent for U.S. Savings Bonds and Savings Notes? |

If the response to question C–3 is yes, please enter your Dun and Bradstreet identification number (if you have one): ☐☐☐☐☐☐☐☐

NOTE: If the answer is yes to questions 1, 2, or 3, complete the entire form, otherwise skip to Section G.

SF 100 – Page 2

## Section D–EMPLOYMENT DATA

Employment at this establishment – Report all permanent full- and part-time employees including apprentices and on-the-job trainees unless specifically excluded as set forth in the instructions. Enter the appropriate figures on all lines and in all columns. Blank spaces will be considered as zeros.

**Number of Employees**
(Report employees in only one category)

| Job Categories | | Hispanic or Latino | | Not-Hispanic or Latino | | | | | | | | | | | | | Total Col A - N |
| | | | | Male | | | | | | | Female | | | | | | |
| | | Male | Female | White | Black or African American | Native Hawaiian or Other Pacific Islander | Asian | American Indian or Alaska Native | Two or more races | White | Black or African American | Native Hawaiian or Other Pacific Islander | Asian | American Indian or Alaska Native | Two or more races | |
| | | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O |
| Executive/Senior Level Officials and Managers | 1.1 | | | | | | | | | | | | | | | |
| First/Mid-Level Officials and Managers | 1.2 | | | | | | | | | | | | | | | |
| Professionals | 2 | | | | | | | | | | | | | | | |
| Technicians | 3 | | | | | | | | | | | | | | | |
| Sales Workers | 4 | | | | | | | | | | | | | | | |
| Administrative Support Workers | 5 | | | | | | | | | | | | | | | |
| Craft Workers | 6 | | | | | | | | | | | | | | | |
| Operatives | 7 | | | | | | | | | | | | | | | |
| Laborers and Helpers | 8 | | | | | | | | | | | | | | | |
| Service Workers | 9 | | | | | | | | | | | | | | | |
| TOTAL | 10 | | | | | | | | | | | | | | | |
| PREVIOUS YEAR TOTAL | 11 | | | | | | | | | | | | | | | |

1. Date(s) of payroll period used: _____

### Section E - ESTABLISHMENT INFORMATION (Omit on the Consolidated Report.)

1. What is the major activity of this establishment? (Be specific, i.e., manufacturing steel castings, retail grocer, wholesale plumbing supplies, title insurance, etc. Include the specific type of product or type of service provided, as well as the principal business or industrial activity.)

### Section F - REMARKS

Use this item to give any identification data appearing on the last EEO-1 report which differs from that given above, explain major changes in composition of reporting units and other pertinent information.

### Section G - CERTIFICATION

Check one
1 ☐ All reports are accurate and were prepared in accordance with the instructions. (Check on Consolidated Report only.)
2 ☐ This report is accurate and was prepared in accordance with the instructions.

| Name of Certifying Official | Title | Signature | Date |
| Name of person to contact regarding this report | Title | Address (Number and Street) | |
| City and State | Zip Code | Telephone No. (Including Area Code and Extension) | Email Address |

All reports and information obtained from individual reports will be kept confidential as required by Section 709(e) of Title VII. WILLFULLY FALSE STATEMENTS ON THIS REPORT ARE PUNISHABLE BY LAW, U.S. CODE, TITLE 18, SECTION 1001

# Exhibit C

# 2019 & 2020
# EEO-1 Component 1
# Data Collection User's Guide

Multi-Establishments

June, 2021

EEO-1 Component 1
**Data Collection**



# EEO-1 Component 1
## Data Collection

# Table of Contents

What Is The EEO-1 Component 1 Filing? ................................................... 4

Who Needs To File? ................................................................................. 5

Getting Started ........................................................................................ 6

Login to Begin Filing Your Report ............................................................ 7

Company List and Filing Instructions ....................................................... 8

Your Company List .................................................................................. 9

Company Dashboard Overview ............................................................... 10

Verify Company Information .................................................................... 11

Provide NAICS Code ............................................................................... 12

Review Company Information .................................................................. 13

Update Contact Information ..................................................................... 14

EEO-1 Component 1 Filing Requirements ............................................... 15

Provide DUNS .......................................................................................... 16

Confirm Company Information .................................................................. 17

Company Dashboard – File EEO-1 Component 1 Reports ....................... 18

Establishment List Overview ................................................................... 19

Add Establishment from Establishment List ........................................... 20

Add New Establishment Details .............................................................. 21

Establishment List .................................................................................. 22

Verify Establishment Information ............................................................. 23

Verify Establishment EIN ........................................................................ 24

Provide Establishment NAICS Code ........................................................ 25

Select Establishment Workforce Snapshot Pay Period ........................... 26

**1      Return to Table of Contents**

EEO-1 Component 1
**Data Collection**

Enter Employee Data and Submit Report ......................................................................................... 27

Comments ......................................................................................................................................... 28

Establishment List Completed Report .............................................................................................. 29

Establishment List All Reports Completed......................................................................................... 30

Company Dashboard – Review and Certify Report ........................................................................... 31

Download Uncertified Reports .......................................................................................................... 32

Review Uncertified Report ................................................................................................................. 33

Enter Optional Comments Before Certifying Report ......................................................................... 34

Certify EEO-1 Component 1 Report................................................................................................... 35

Company Dashboard – Certified Report ........................................................................................... 36

Downloading Certified Reports .......................................................................................................... 37

Certified Report PDF ........................................................................................................................ 38

Establishment List- Report Types Overview...................................................................................... 39

Type 6 and Reconciliation Reports: Establishment List..................................................................... 40

Type 6 and Reconciliation Reports: Establishment Information ......................................................... 41

Type 6 and Reconciliation Reports: Establishment Information Comments........................................ 42

Type 6 and Reconciliation Reports: Company Dashboard with Reconciliation Report ...................... 43

Type 6 and Reconciliation Reports: Reconciliation Report in Establishment List .............................. 44

Type 6 and Reconciliation Reports: Reconciliation Report ................................................................ 45

Type 6 and Reconciliation Reports: Reconciliation Report Completed and Return to Dashboard ...... 46

Type 6 and Reconciliation Reports: Reconciliation Report Complete................................................. 47

Significant Establishment Deletions Warning .................................................................................... 48

Establishment Deletion Warning Additional Action Needed .............................................................. 49

Troubleshooting FAQs........................................................................................................................ 50

**2**    <u>**Return to Table of Contents**</u>

# EEO-1 Component 1
## Data Collection

Additional Resources.................................................................55

**Return to Table of Contents**

**3**

EEO-1 Component 1
**Data Collection**

## What Is The EEO-1 Component 1 Filing?

The EEO-1 Component 1 report is a mandatory annual data collection that requires all private sector employers with 100 or more employees, and federal contractors with 50 or more employees meeting certain criteria, to submit demographic workforce data, including data by race/ethnicity, sex and job categories. The filing by eligible employers of the EEO-1 Component 1 Report is required under section 709(c) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-8(c), and 29 CFR 1602.7-.14 and 41 CFR 60-1.7(a). Employers can find additional eligibility information at https://eeocdata.org/eeo1.

- Employers meeting the reporting thresholds have a legal obligation to submit annual workforce data on their employees by race/ethnicity, sex and job category.

- The data include seven race/ethnicity categories and 10 job categories.

- EEO-1 Component 1 data are used by the EEOC to investigate charges of employment discrimination against employers and to provide information about the employment status of minorities and women.

- Please see the 2019 and 2020 EEO-1 Component 1 Instruction Booklet for additional information.

**4**   **Return to Table of Contents**



# EEO-1 Component 1 Data Collection

## Who Needs To File?

The following employers are required to file the EEO-1 Component 1 Report annually:

a. Private employers (who are subject to Title VII of the Civil Rights Act of 1964, as amended) with 100 or more employees; OR

b. Private employers subject to Title VII who have fewer than 100 employees and are owned or affiliated with another company, or there is centralized ownership, control or management (such as central control of personnel policies and labor relations) so that the group legally constitutes a single enterprise, and the entire enterprise employs a total of 100 or more employees.

c. Federal contractors who (1) are not exempt as provided for by 41 CFR 60-1.5; (2) have 50 or more employees; (3) are prime contractors or first-tier subcontractors; and (4) have a contract, subcontract, or purchase order amounting to $50,0000 or more; OR

d. Federal contractors that serve as depositories of Government funds in any amount; or are financial institutions which are issuing and paying agents for U.S. savings bonds and savings notes.

**Return to Table of Contents**

**5**

ER-286



# EEO-1 Component 1 Data Collection

## Getting Started

Navigate to https://eeocdata.org/eeo1 to start your EEO-1 Component 1 Report. All companies start the 2019 and 2020 EEO-1 Component 1 Data collection by selecting "Get Started." If your company has never filed an EEO-1 Component 1 Report, you will need to register your company in the EEO-1 Component 1 Online Filing System. Returning filers will use their Company ID and Passcode that was sent via the U.S. mail to create a User Account associated with their company. After you have created a User's Account and associated your company with this account, select "Continue" to begin filing.



**2019 & 2020 EEO-1 Data Collection**

The Employer Information Report EEO-1 Component 1, or the EEO-1 Component 1 Report, is open. The deadline to submit and certify the EEO-1 Component 1 Report is Monday July 19, 2021. Organizations can file their information through the new EEO-1 Component 1 Online Filing System.

Continue

Get Started

Once you have a User Account and associate your company with this account, use the "Continue" button to return to the EEO-1 Component 1 Online Filing System to login.

Click "Get Started" to begin the registration process. See the 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide:  Returning Filer Account Creation if you are a returning filer or the 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide:  New Filer Registration if your company has never filed the EEO-1 Component 1 Report in the past for additional guidance on this process.

**Return to Table of Contents**

6

# EEO-1 Component 1
## Data Collection

## Login to Begin Filing Your Report



Enter your Username (email address) and Password that you created in the Registration process, then select "Begin." This will take you to your Company List to begin the filing process.

If logging in for the first time, you must first create a User Account. Selecting "Create Account" will begin the process described in the 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide: Returning Filer Account Creation or the 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide: New Filer Registration.

ER-288



# EEO-1 Component 1
## Data Collection

## Company List and Filing Instructions

### Your Company List

To begin filing the EEO-1 Component 1 Report for a company, select your company below.

**Instructions, Data File Upload and Other Information**

You must file and certify your 2019 report prior to filing your 2020 report. Important EEO-1 Component 1 Online Filing Dates:

- Data collection begins April 26, 2021.
- The deadline to submit 2019 and 2020 reports is August 23, 2021.

The system is continuously being improved, with new features added on a flow basis. If you encounter an issue, please contact the Filer Support Team at FilerSupport@eeoccdata.org or 1-855-EEOC-035 (1-855-336-2035). Thank you for your patience as we continue to improve the online filing system.

Before filing, you will be required to confirm company information. You must confirm this information even if you have not had any changes since the 2018 filing.

Companies must report acquisitions, mergers, and spinoffs that occurred between January 1, 2019 and December 2020 to the Filer Support Team prior to proceeding with filing. The team will update the records accordingly to ensure accurate reporting.

The Online Filing System saves your information as you progress through the steps. If you need to leave the Online Filing System and come back later, click "Save and Continue Later" before logging out. Without clicking "Save and Continue Later" the data on the last page you left off on may not be saved.

There are two ways to file 2019 and 2020 EEO-1 Component 1 Reports. 1) Filers can use the online form to enter data into a secure data entry form. 2) Filers can also upload data files. The format of the uploaded data file(s) must follow the file layout(s) set forth in the EEOC-approved specifications. Please visit the public website to view the file layouts and instructions.

- Single-Establishment Data File Upload Instructions
- Multi-Establishment Data File Upload Instructions

Please refer to the FAQs, User's Guides, and Fact Sheets for additional guidance on the online filing system. These are available on the Filer Support Page.

☐ Have a Question?

Click on "Have a Question" to view top FAQs, Fact Sheets, and additional resources.

Select the drop down to view instructions and additional information on the EEO-1 Component 1 Reporting process.

If at any point you need help filing your report, click the links here to view Data File Upload Instructions, FAQs, User's Guides, and Fact Sheets and FAQs on EEO-1 Component 1 topics.

ER-289

8

**Return to Table of Contents**



# EEO-1 Component 1
## Data Collection

## Your Company List

You will begin by completing the 2019 EEO-1 Component 1 Report by clicking on the Record below. Once the 2019 report will display on this screen.

Report is certified, the 2020

**Callout:** Select "Instructions, Data File Upload, and Other Information", to view instructions and additional information on the EEO-1 Component 1 Reporting process.

**Callout:** All companies associated with your User account will be displayed here. Most filers will only see one company.

**Callout:** Filers can link additional existing companies to their User account by clicking here and entering the Company ID and Passcode. The new companies will then appear in the list below. Do not add establishments here. Adding and removing establishments is completed within the company record.

**Callout:** Select your company to continue or begin the Filing Process. Only 2019 appears at first. 2020 will appear here when 2019 is complete.

**Callout:** Select "Register a New Company" to add a new company to your account. Do not use this to add establishments. Adding and removing establishments is completed within the company record. View the 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide: How to File for Multiple Companies for support in this process.

### Your Company List

Instructions, Data File Upload and Other Information

Complete Component 1 Report for a company, select your company below.

Instructions, Data File Upload and Other Information                                >

This page only lists the headquarters or parent companies for all companies associated with your account.

Most filers will only see one company on their company list. You do not add or edit establishments on this page. To add establishments or make changes to a multi-establishment company or commonly owned and centrally managed entities, please select your company to continue to the EEO-1 Component 1 Dashboard. Parent companies with subsidiaries can add and edit commonly owned entities after selecting the Company below.

| COMPANY # | COMPANY NAME # | REPORT YEAR # | STATUS # | CITY # | STATE # | NO. EMPLOYEES # | NO. LOCATIONS # |
|---|---|---|---|---|---|---|---|
| JH98667 | Example Company | 2019 | Incomplete | Rockville | MD | 0 | 3 |

### Filing for Multiple Companies?

If you are responsible for filing for companies not included on your list, please use their Company ID and Passcode to Link
**Register a New Company** to add a company that has never filed before.

🔗 Link an Existing Company    ➕ Register a New Company

🔾 Have a Question?

**Return to Table of Contents**

9



# EEO-1 Component 1 Data Collection

## Company Dashboard Overview

Your company dashboard displays steps for completing your EEO-1 Component 1 Report. The current step will be highlighted and listed as active. After completion, the status will change to "Complete" and you will be able to move to the next pending task.

To begin, select "Confirm Company & Contacts." You can click anywhere in the box to proceed.

Select "Back to Company List" to return to the list of your companies, or "Historic Data" to view your previously filed reports.

Selecting the drop down will display the steps for completing and certifying your EEO-1 Component 1 Report. You can select this to review the instructions at any time.

Steps will remain "Pending" until the step above is marked as Complete. When you complete the "Confirm Company & Contacts" step, for example, the "File/Upload EEO-1 Component 1 Reports" step will become active.

← Back to Company List

### Company Dashboard
### Example Company - 2019
Rockville, MD 20850

Historic Data (Prior EEO-1 Reports)

**Instructions**

- Step 1) Confirm Company and Contact Information: Begin by confirming the company EIN, NAICS code, and company contacts including identifying the certifying official. Then, answer four questions to confirm the company is required to file a report.
- Step 2) File/Upload EEO-1 Component 1 Reports: Next, file EEO-1 Component 1 Report data on employees for all establishment locations by using the data entry grid or data file upload. Note: Single-Establishment filers can use the data entry grid or upload data files after selecting the workforce snapshot pay period while Multi-Establishment filers can upload directly from the Establishment Listing screen.
- Step 2b) Reconciliation Report (if applicable): If you submitted a Type 6 Establishment List Report you will have to submit a Reconciliation Report. The Reconciliation Report collects employee demographic details of all employees included in your Type 6 Establishment List Report.
- Step 3) Review EEO-1 Component 1 Reports: After filing EEO-1 Component 1 Reports you can preview PDF reports for each establishment location prior to certifying.
- Step 4) Certify EEO-1 Component 1 Reports: Enter information on the certifying official and primary contact for this report. After confirming that all reports are accurate, certify 2019 EEO-1 Component 1 Reports.

Certification of the 2019 and 2020 EEO-1 Component 1 Report(s) is mandatory. Without certifying your report, your company will receive a notification of failure to file letter.

Complete the following steps to certify your EEO-1 Component 1 Reports.

**Confirm Company & Contacts**    Active
Begin by confirming the company EIN, NAICS code, and company contacts including identifying the certifying official.
Then, answer four questions to confirm the company is required to file a report.

File/Upload EEO-1 Component 1 Reports    Pending

Review EEO-1 Component 1 Reports    Pending

Certify EEO-1 Component 1 Reports    Pending

ER-291



# EEO-1 Component 1
## Data Collection

## Verify Company Information



Review the Company ID, Name, and Employer Identification Number (EIN) for 2019. Make sure this information matches your 2019 records. If any of these changed in 2020, you will update those on the 2020 EEO-1 Component 1 Report.

**Company Information**

Company List  ›  Example Company - 2019  ›  2019  ›  Confirm Company and Contact Information

Please review your company information for 2019. Enter/update any information if applicable.

If filing by File Upload, ensure the information for the Company Headquarters in this series of screens is complete and accurate. This information will NOT be updated from the contents of the upload file.

Note - Required fields are marked with an asterisk *

Company ID:       JH97237
Company Name:     Example Company
EIN ❶:            83-6999989

If the EIN displayed above is correct, click the "Next" button to proceed to the next screen. If incorrect, enter and re-enter the correct information below and click the "Next" button to proceed.

EIN ❶*
836999989
Please do not enter dashes

Re-enter EIN*
836999989

**Next**

161-101

**Save & Continue Later**

If the EIN displayed on the screen is wrong, enter the correct number in the EIN fields and Re-enter the number to verify.

Select "Save & Continue Later" to save and return to your Company Dashboard. You must select "Next" or "Save & Continue Later" to save any entered information.

Select "Next" to proceed.

**Return to Table of Contents**

11

ER-292

# EEO-1 Component 1
## Data Collection

## Provide NAICS Code

Enter your North American Industry Classification System (NAICS) code and then re-enter to verify

NAICS (North American Industry Classification System) code is the standard used by Federal statistical agencies in classifying business establishments for the purpose of collecting, analyzing, and publishing statistical data related to the U.S. business economy.

If you do not know your NAICS code, visit https://www.census.gov/naics/ to find the option that best describes your establishment's industry.

ER-293





# EEO-1 Component 1
## Data Collection

## Review Company Information

13   **Return to Table of Contents**

ER-194

# EEO-1 Component 1
## Data Collection

## Update Contact Information



Use this page to add additional contacts. It is recommended to have at least one secondary contact. All contacts will receive a notification when the Report is certified. Entering additional contacts here will not automatically provide them with accounts. If additional contacts need accounts, provide them with your Company ID and Passcode and provide them with instructions from the 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide:  Returning Filer Account Creation, if needed.

Select Deactivate to remove a contact that should no longer have access to the system.

Identify the contact that is the Certifying Official. This can be any employee in your company tasked with certifying that your submitted Report is accurate.

The primary contact will receive emails and other updates related to the EEO-1 Component 1 Report. The contact person serves as your company's contact for all EEO-1 Component 1 Report matters.

### Contact Information

Please provide or edit company contact information. This includes anyone who may need to access this company's online filing system. Please make sure the Certifying Official is included in this list.

Note - Required fields are marked with an asterisk.*

| First Name* | Last Name* | Title* | Phone* | Email* | Is Primary | Certifying | Deactivate |
|---|---|---|---|---|---|---|---|
| First | Last | HR Director | 555-555-5555 | ExampleFiler@gmail.com | ☑ | ☑ | |
| Example | Contact | Report Contact | 555-555-5555 | ExampleContact@example.com | ☐ | ☐ | ☐ |

Back    Next

Add

181-108

ER-295



# EEO-1 Component 1
## Data Collection

## EEO-1 Component 1 Filing Requirements



If you answer "Yes" to any of these questions it means you are required to complete the EEO-1 Component 1 Report for the given year and should proceed to file your EEO-1 Component 1 Report.

If you answer "No" to all of these questions, your company is not required to complete the EEO-1 Component 1 Report for the given year. Select "Next" to confirm you are ineligible. You will then be directed to the Certification page to certify this selection.

If you answer "Yes" and indicate you were a Federal Contractor or Subcontractor or served as a depository of government funds or issuing and paying agent for U.S. Savings Bonds and saving notes, you will be directed to a page to provide your company's Dun and Bradstreet Number (DUNS).

Company List > Example Company - 2019 > Confirm Company and Contact Information

### Company Information

Answer the additional questions below to determine if your Company is required to file the EEO-1 rep for 2019.

The filing by eligible employers of the EEO-1 Component 1 Report is required under section 709(c) of VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-8(c), and 29 CFR 1602.7-.14 and 41 CF 1.7(a). Employers can find additional eligibility information in the EEO-1 Component 1 Instruction Book.

Note - all questions are required

Company ID:    JH97237
Company Name:  Example Company

|  | Yes | No |
| --- | --- | --- |
| In 2019, did the company or any of its establishments have 50 or more employees, have a federal contract, subcontract or purchase order amounting to $50,000 or more AND was not exempt as provided for by 41 CFR 60-1.5? | ○ | ● |
| In 2019, did the company or any of its establishments have 50 or more employees, serve as depositories of Government funds in any amount; or are financial institutions which are issuing and paying agents for U.S. Savings Bonds and savings notes? | ○ | ● |
| In 2019, did the company employ 100 or more employees? | ○ | ● |
| In 2019, was the company affiliated through common ownership and/or centralized management with other entities in an enterprise with a total employment of 100 or more? | ○ | ● |

Save & Continue Later

Back    Next

161-109

15    **Return to Table of Contents**

ER-296

# EEO-1 Component 1
## Data Collection

## Provide DUNS

Only companies that are designated as a Federal Contractor or Subcontractor AND are not exempt as provided for by 41 CFR 60-1.5 or serve as depositories of Government funds in any amount or are financial institutions which are issuing and paying agents for U.S. Savings Bonds and savings notes will see this page to enter a company Dun and Bradstreet Number (DUNS).



If requested, provide your establishment's Dun and Bradstreet (DUNS) number. This number is a unique nine-digit identifier for businesses.

Click the "Next" button to confirm your Company and Contact Information and proceed to file your EEO-1 Component 1 Report.

ER-297

Return to Table of Contents

16

EEO-1 Component 1
**Data Collection**

## Confirm Company Information



**EEO-1**

EXAMPLECOMPANY8888@GMAIL.COM

U.S. Equal Employment
Opportunity Commission

Company List · Example Company - 2019 · Confirm Company and Contact Information

### Company Information

Thank you for completing your Company information. Click the "Submit" button below to return to the Company dashboard screen. From there you will be able to provide the detailed demographic details for the Company and then certify the filing.

Back    Submit

Select "Submit" to confirm your entry of your Company Information and Contacts and proceed to Filing the EEO-1 Component 1 Report.

**Return to Table of Contents**

17

# EEO-1 Component 1 Data Collection



## Company Dashboard – File EEO-1 Component 1 Reports



To edit or update any of your Company Information and Contacts, select the lock icon to unlock this section. You will be able to revisit your earlier entries. You will need to review all previously entered information and re-confirm your entries.

Now that your first task is complete, the next task is highlighted. Select "File EEO-1 Component 1 Reports" to proceed to enter your employee information.

After you have confirmed your Company & Contacts section, the section will turn green and the status will change from "Active" to "Complete."

**Return to Table of Contents**

18

ER-299



# EEO-1 Component 1
## Data Collection

## Establishment List Overview

The number displayed here is the number of establishments you entered in the Company Information screen. If this is incorrect, go back to the Company Information screen to make the update.

Summary information is displayed here. It summarizes the number of complete, incomplete, and deleted establishments.

Select "Incomplete" to enter data for your first establishment.

New filers will only see their Type 3 Report here until they add establishments using the Add Establishment button. Returning filers will see existing establishments listed on this screen.

If you want to make changes to a specific establishment, use the search bar to quickly find the establishment.

Click here to use Data File Upload to file your report. View the 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide: Multi-Establishment Data File Upload for a step by step guide and detailed upload instructions.

This will switch to "Finish with Establishments" when you have finished your Reports. This must match the number of completed reports on this page.

Select the "Add Establishments" button to add establishments not already on your list. Your total number of completed establishments must match the number of reports listed at the top of this page.

← Back to Example Company

Reports Completed: 0 of 3

In Progress    Active

Incomplete
1 TOTAL    1 TYPE 3

Complete
0 TOTAL

+ Add Establishment

Enter Name

🖶 Upload EEO-1 Component 1 Reports
Optional, upload EEO-1 Component 1 Report in .txt or .csv format.

### Records 1

Click on each establishment to enter employee data. To add establishments to your company's establishment list, click 'add establishment' and provide the establishment's information. Once complete select 'Finish with Establishments' at the top to continue.

| REPORT | STATUS | UNIT NUMBER | EMP COUNT | EST. NAME | STREET | CITY | STATE |
|--------|--------|-------------|-----------|-----------|--------|------|-------|
| 3 | Incomplete → | JH98667 | 0 | Example Company | 123 Main Street | Rockville | MD |

ER-300

**Return to Table of Contents**



EEO-1 Component 1
Data Collection

## Add Establishment from Establishment List



**Return to Table of Contents**

ER-301

# EEO-1 Component 1
## Data Collection

## Add New Establishment Details



**Return to Table of Contents**

21



EEO-1 Component 1
**Data Collection**

## Establishment List



EEO-1 Component 1
Data Collection

## Verify Establishment Information



The information here will show the establishment information you just entered if filing for a new establishment, or the information we have on file from 2018 if filing for an existing establishment. This step is only for Type 4 and Type 8 Reports. It does not appear on the Type 3 Reports.

Review this number carefully. You will have to return to this screen to make changes to your employee count if the number of employee for which you enter demographics differs from the number of employees entered here.

Return to Table of Contents

ER-304



# EEO-1 Component 1
## Data Collection

## Verify Establishment EIN

Review the Name and Employer Identification Number (EIN) for 2019. This step is only for Type 4 and Type 8 Reports. It does not appear on the Type 3 Reports. Make sure this information matches your 2019 records. If any of these changed in 2020, you will update those on the 2020 EEO-1 Component 1 Report.

If the EIN displayed on the screen is wrong, enter the correct number in the EIN fields and Re-enter the number to verify.

Select "Save & Continue Later" to save and return to your Company Dashboard. You must select "Next" or "Save & Continue Later" to save any entered information.

Select "Next" to proceed.



Return to Table of Contents

24

ER-305

# EEO-1 Component 1
## Data Collection

## Provide Establishment NAICS Code



Enter your North American Industry Classification System (NAICS) code and then re-enter to verify

NAICS (North American Industry Classification System) code is the standard used by Federal statistical agencies in classifying business establishments for the purpose of collecting, analyzing, and publishing statistical data related to the U.S. business economy.

If you do not know your NAICS code, visit https://www.census.gov/naics/ to find the option that best describes your establishment's industry.

This step is only for Type 4 and Type 8 Reports. It does not appear on the Type 3 Reports.

ER-306

Return to Table of Contents

---

**Establishment Information**

Company List | Example Company - 2019 | Establishments | Establishment Details

Please review your establishment information for 2019. Enter/update any information if applicable.

Note - Required fields are marked with an asterisk *

Unit ID:          JS33567
Unit Name:        Second Establishment
EIN ⓘ:           83-9999999
NAICS Code ⓘ:    711130
NAICS Description: Musical Groups and Artists

If the NAICS Code displayed above is correct, click the "Next" button to proceed to the next screen. If incorrect, enter and re-enter the correct information below and click the "Next" button to proceed.

NAICS Code ⓘ ######*       Re-enter NAICS Code*

711130                      711130

• Note 1  If the company is a PEO, the correct NAICS Code is 561330.
• Note 2  NAICS Codes starting with 92 (public administration) are not allowed. Data collection is for private employers and not for organizations that are classified as public administration. If you are an entity that is more closely linked to State and Local Governments, you should be filing the EEO-4 Report. Please stop this EEO-1 filing process and contact the Filing Support Team for further clarification and guidance.
• Note 3  If you need to find a NAICS Code, visit https://www.census.gov/naics/

Back     Next                                        Save & Continue Later



# EEO-1 Component 1
## Data Collection

## Select Establishment Workforce Snapshot Pay Period

Data must be pulled from one workforce snapshot pay period in October, November, or December of the reporting year. The workforce snapshot pay period is a single pay period, selected by the employer. Examples of pay periods are: weekly, every two weeks, twice a month, etc. You may select different workforce snapshot pay periods for 2019 and 2020.



Select the month and day for the start and end of the workforce snapshot pay period used to count employees in the EEO-1 Component 1 Report. The dates used should encompass the start date of the desired pay period and the end date of the desired pay period. For Type 3 HQ Reports, this is also where you will enter the number of employees at the Headquarters.

ER-307

**Return to Table of Contents**

26



# EEO-1 Component 1
## Data Collection

## Enter Employee Data and Submit Report

Enter the correct number of employees for each relevant row and column. Totals will automatically sum at the end of the row, and columns. If a category has no employees, you may leave the box blank or enter a "0".

Enter the count of your employees within each category in the table below. Each employee should be in only one category.

Example: If the establishment has seven Hispanic/Latino males whose jobs are categorized as "Executive/Senior Level Officials and Managers," enter "7" in column 1, row 1.

The total here will automatically calculate based on employee demographics entered into this matrix. Overall Total must equal the number of employees you reported on the establishment information screen prior to this report.

If you need to leave this screen before you finish entering your employee data, select "Save & Continue Later" to return to your Company Dashboard. Your progress will be saved.

Select "Next" to continue. Once data data entry is complete, employers will have the opportunity to provide additional details or clarifications in a comment box for the establishment.

Unit ID:    JG00733
Unit Name:   Example Company

**Number Of Employees**

| Job Categories | Hispanic or Latino Male | Hispanic or Latino Female | White (Male) | Black or African American (Male) | Native ... (Male) | Asian (Male) | Alaska Native (Male) | Native Hawaiian Pacific Islander (Male) | Two or More Races (Male) | White | Black or African American | Native Hawaiian Pacific Islander | Asian | Alaska Native | more races | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Executive/Senior Level Officials and Managers | | | | | | | | | | | | | | | | |
| First/Mid-Level Officials and Managers | | | | | | | | | | | | | | | | |
| Professionals | | | | | | | | | | | | | | | | |
| Technicians | | | | | | | | | | | | | | | | |
| Sales Workers | | | | | | | | | | | | | | | | |
| Administrative Support Workers | | | | | | | | | | | | | | | | |
| Craft Workers | | | | | | | | | | | | | | | | |
| Operatives | | | | | | | | | | | | | | | | |
| Laborers and Helpers | | | | | | | | | | | | | | | | |
| Service Workers | | | | | | | | | | | | | | | | |
| TOTAL | | | | | | | | | | | | | | | | |

Back    Next    Save & Continue Later

146-182

ER-308



# EEO-1 Component 1
## Data Collection

## Comments



If you are a returning filer and your employee count changed by 35% or more, you will be required to enter a reason here. Otherwise, this is an optional field.

Select "Next" to complete the "File/Uplaod EEO-1 Component 1 Reports" step for this

ER-309

EEO-1 Component 1
**Data Collection**



## Establishment List Completed Report



ER-310



## EEO-1 Component 1
### Data Collection

## Establishment List All Reports Completed

Once you have completed your reports. Select "Finish with Establishments" to complete this section and return to your "Company Dashboard".

Once you have completed all your reports, you will see all green "Complete" boxes on the Establishment List.



ER-311



Case 3:22-cv-07182-WHA Document 34-3 Filed 08/18/23 Page 50 of 100



EEO-1 Component 1
**Data Collection**

# Company Dashboard – Review and Certify Report



The first two steps indicate "Complete" statuses. To edit or update any of your Company Information and Contacts, select the lock icon to unlock this section. You will be able to revisit your earlier entries. You will need to review all previously entered information and re-confirm your entries.

After reviewing your Reports and verifying that the information is correct, select "Certify EEO-1 Component 1 Reports" to proceed to certification. Certification of the EEO-1 Component 1 Report is mandatory. Failure to certify the report will result in receipt of a notification of a failure to file letter.

The next step is to Review the EEO-1 Component 1 Reports. Select this to review all entered data prior to certification.

EER-312

**Return to Table of Contents**



EEO-1 Component 1
**Data Collection**

## Download Uncertified Reports

You can view and download all uncertified reports for this company by selecting the "Download" button. If anything is incorrect, you can return to the dashboard and edit the relevant section.



ER-313

**Return to Table of Contents**

32




Case 3:22-cv-07182-WHA   Document 34-3   Filed 08/18/23   Page 52 of 100

EEO-1 Component 1
**Data Collection**

## Review Uncertified Report

Review your previously entered company information. If anything needs to be revised, you can return to the Company Information and Contact screen on the Company Dashboard.

ER-314

Review your employee data. If this does not match your records, return to the "File EEO-1 Component 1 Report" on the Company Dashboard.

After certification, the certifying official's information will be displayed in this area and the red "Uncertified" watermark will be removed.

**Return to Table of Contents**

33

---

EQUAL EMPLOYMENT OPPORTUNITY
2019 EMPLOYER INFORMATION REPORT EEO-1
Consolidated Report

COMPID = JG28160
UNITID = JG28160

SECTION B – COMPANY IDENTIFICATION

1. Example Company
111 Test Street
Rockville, MD 20850

2.a. Example Company
111 Test Street
Rockville, MD 20850

c. EIN= B39999999

SECTION C – TEST FOR FILING REQUIREMENT

1-y  2-Y  3-Y    DUNS=

SECTION E – ESTABLISHMENT INFORMATION
NAICS: 711130 : Musical Groups and Artists

SECTION D – EMPLOYMENT DATA

| JOB CATEGORIES | Hispanic or Latino | | Non-Hispanic or Latino | | | | | | | | | | | | | | Over Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Male | | | | | | | Female | | | | | | | |
| | Male | Female | White | Black or African American | Native Hawaiian Or Pacific Islander | Asian | American Indian or Alaska Native | Two or More Races | White | Black or African American | Native Hawaiian Or Pacific Islander | Asian | American Indian or Alaska Native | Two or More Races | | | |
| Exec/Sr. Officials & Mgrs | 3 | 0 | 0 | 0 | 2 | 1 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 1 | | | |
| First/Mid Officials & Mgrs | 6 | 6 | 2 | 0 | 2 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 0 | 0 | | | |
| Professionals | 25 | 10 | 9 | 3 | 2 | 0 | 3 | 5 | 5 | 0 | 0 | 0 | 1 | 0 | | | |
| Technicians | 2 | 0 | 16 | 11 | 0 | 0 | 0 | 0 | 0 | 16 | 0 | 1 | 0 | 0 | | | |
| Sales Workers | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | | | |
| Administrative Support | 3 | 3 | 19 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | 25 |
| Craft Workers | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | 0 |
| Operatives | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | | | 5 |
| Laborers & Helpers | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | | | 5 |
| Service Workers | 2 | 0 | 3 | 3 | 0 | 3 | 0 | 0 | 3 | 3 | 0 | 3 | 0 | 3 | | | 26 |
| Total | 41 | 19 | 49 | 20 | 11 | 4 | 3 | 5 | 16 | 19 | 3 | 6 | 5 | 4 | | | 205 |
| Previous Year Total | | | | | | | | | | | | | | | | | |

SECTION F – REMARKS

DATES OF PAYROLL PERIOD: 10/1/2019    THRU  10/31/2019

SECTION G – CERTIFICATION:    CERTIFIED DATE:

CERTIFYING OFFICIAL:                TITLE:
EMAIL:                PHONE:
EEO-1 REPORT CONTACT PERSON:            TITLE:
EMAIL:                PHONE:

EEO-1 Component 1
**Data Collection**



# Enter Optional Comments Before Certifying Report



The Comments section allows you to add anything you feel is noteworthy regarding the establishment. Otherwise, you may leave it blank.

After you have written your comments, click the "NEXT Button." You will be taken to the certification screen.

**34** <u>Return to Table of Contents</u>

ER-315

# EEO-1 Component 1
## Data Collection

## Certify EEO-1 Component 1 Report

Once all data is entered for your establishment, certify the reported data for each year. Each year of data must be completed and certified separately. Once you complete and certify your 2019 Report, please repeat these steps for 2020. Certification of the EEO-1 Component 1 Report is mandatory. Failure to certify the Report will result in receipt of a notification of failure to file letter.

Review information for the Certifying Official and Report Contact. This will be pre-populated with the contact information for the contact selected as the Certifying Official and Primary Contact on the Contact Information Screen.

Check this box to certify that all statements are accurate and prepared according to instructions. Please note all reports and information obtained from individual reports will be kept confidential as required by section 709(e) of Title VII. Willfully false statements on these reports are punishable by law, U.S. Code, Title 18, Section 1001.

Check the box certifying that all data entered is accurate, then click the "Certify" button. Your EEO-1 Component 1 Report is now complete!

Please fill in the information below. Check the box and press "Certify" when ready to finalize your EEO-1 Component 1 data 2019.

**Certifying Official Contact Information**

Certifying Official*
Example Contact

Title*
Second Contact

Telephone number (xxx-xxx-xxxx)*
555-555-5555

Email Address*
examplecontact@example.com

**Report Contact Information**

Contact Name*
Test Person

Title*
HR Director

Telephone number (xxx-xxx-xxxx)*
999-999-9999

Email Address*
ExampleCompany888@gmail.com

**Select to Certify**
☐ *All statements are accurate and were prepared in accordance with the instructions.

All reports and information obtained from this report will be kept confidential as required by section 709(e) of Title VII. Willfully false statements on this report are punishable by law, U.S. Code, Title 18, Section 1001.

If you experience technical issues, please contact the EEO-1 Component 1 Filer Support Team at FilerSupport@eeocdata.org or 1-855-EEOC-035 (1-855-336-2035) for assistance.

Back    Certify

199-102

35    **Return to Table of Contents**

RR-316

EEO-1 Component 1
**Data Collection**

## Company Dashboard – Certified Report



# Company Dashboard
## Example Company - 2020

Rockville, MD 20850

← Back to Company List

Company Name: **Example Company**
Company ID: **JH97237**
Year: **2020**
Certification Date: **8/18/2021 11:17:03 AM**

↺ Historic Data (Prior EEO-1 Reports)   ⬇ Download Establishments

Number of Reports Filed: **3**
Certifying Official: **Example Contact**
Title: **Second Contact**

Thank you for completing the EEO-1 Component 1 Report for 2020.

⬇ Report      ⧉ Decertify

Save or print a copy of the reports for your records. If after reviewing you find an error, please con[...]
FilerSupport@eeocdata.org or 1-855-EEOC-035 (1-855-336-2035) prior to the October 25, 2021 filing deadline.

**Callout (top):** This information will also be emailed to you and all company contacts.

**Callout (top right):** Prior to October 25, 2021, if you find an error after reviewing your report, select "Decertify". If you decertify your Report, you will need to repeat the certification process after making any edits. Once the filing deadline has passed on on October 25th, you cannot make any edits.

**Callout (bottom):** Select Report to save or print a copy of the Report for your records.

ER-317

Return to Table of Contents

EEO-1 Component 1
Data Collection

Downloading Certified Reports

U.S. Equal Employment
Opportunity Commission



You can view and download all certified reports for this company by selecting the "Download" button.

**2019 EEO-1 Component 1 Reports**

← Back to Example Company

Records (4)

| ACTION | STATUS ⇕ | REPORT TYPE ⇕ | EST. NAME ⇕ | UNIT NUMBER ⇕ | EMP. COUNT ⇕ | STREET ⇕ | STATE ⇕ | ZIP ⇕ |
|---|---|---|---|---|---|---|---|---|
| ⤓ Download | Complete | 2 | Example Company | JG28160 | 205 | 111 Test Street | MD | 20850 |
| ⤓ Download | Complete | 3 | Example Company | JG28160 | 0 | 111 Test Street | MD | 20850 |
| ⤓ Download | Complete | 4 | Third Establishment | JG33788 | 75 | 113 Test Street | MD | 20850 |
| ⤓ Download | Complete | 8 | Second Establishment | JG33667 | 30 | 112 Test Street | MD | 20850 |

EEO-1

⊖ EXAMPLECOMPANY321@GMAIL.COM

⊠ Have a Question?

Return to Table of Contents



# EEO-1 Component 1 Data Collection

## Certified Report PDF

Review the information in your Certified Report prior to the filing deadline on October 25, 2021. If you notice anything incorrect prior to October 25, 2021, please decertify your report and re-visit the relevant section. If you decertify your Report, you will need to repeat the certification process after making any edits. Once the filing deadline has passed on October 25th, you cannot make any ...

Now that you have certified, Section G in the Type 2 Consolidated Report is filled out with Certified Date and Time and the Certifying Official and Report Contact Person contact information.

---

**EQUAL EMPLOYMENT OPPORTUNITY**
2019 EMPLOYER INFORMATION REPORT EEO-1
Consolidated Report

COMPID = JG28160
UNITID = JG28160

**SECTION B – COMPANY IDENTIFICATION**

1. Example Company
   111 Test Street
   Rockville, MD 20850

2.a  Example Company
   111 Test Street
   Rockville, MD 20850

c. EIN= 830999999

**SECTION C – TEST FOR FILING REQUIREMENT**

1-Y  2-Y  3-Y  DUNS=

**SECTION E – ESTABLISHMENT INFORMATION**
NAICS: 711130 - Musical Groups and Artists

**SECTION D – EMPLOYMENT DATA**

| JOB CATEGORIES | Hispanic or Latino | | Non-Hispanic or Latino | | | | | | | | | | | | | | | Overall Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Male | Female | Male | | | | | | | Female | | | | | | | | |
| | | | White | Black or African American | Native Hawaiian Or Pacific Islander | Asian | American Indian or Alaska Native | Two or More Races | White | Black or African American | Native Hawaiian Or Pacific Islander | Asian | American Indian or Alaska Native | Two or More Races | | | | |
| Exec/Sr. Officials & Mgrs | 3 | 0 | 0 | 0 | 2 | 1 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | | | 9 |
| First/Mid Officials & Mgrs | 6 | 6 | 2 | 0 | 2 | 0 | 0 | 0 | 6 | 0 | 0 | 0 | 0 | 0 | 0 | | | 22 |
| Professionals | 25 | 10 | 9 | 3 | 2 | 0 | 3 | 5 | 5 | 0 | 0 | 0 | 1 | 0 | 0 | | | 63 |
| Technicians | 2 | 0 | 16 | 11 | 0 | 0 | 0 | 0 | 0 | 16 | 0 | 1 | 0 | 0 | 0 | | | 46 |
| Sales Workers | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | | | 4 |
| Administrative Support | 3 | 3 | 19 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | 25 |
| Craft Workers | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | 0 |
| Operatives | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | | | 5 |
| Laborers & Helpers | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | | | 5 |
| Service Workers | 2 | 0 | 3 | 3 | 0 | 3 | 0 | 0 | 3 | 3 | 3 | 3 | 0 | 0 | 3 | | | 26 |
| Total | 41 | 19 | 49 | 20 | 11 | 4 | 3 | 5 | 16 | 19 | 3 | 6 | 5 | 0 | 4 | | | 205 |
| Previous Year Total | | | | | | | | | | | | | | | | | | |

**SECTION F – REMARKS**

DATES OF PAYROLL PERIOD: 10/1/2019       THRU  10/31/2019       CERTIFIED DATE: 5/7/2021       2:39 PM

**SECTION G – CERTIFICATION:**

CERTIFYING OFFICIAL: Second Contact
   EMAIL: ExampleCompany321@gmail.com

EEO-1 REPORT CONTACT PERSON: Example Filer
   EMAIL: ExampleCompany321@gmail.com

TITLE: Backup EEO-1 Component-1 Filer
PHONE: 999-999-9999
TITLE: Component-1 Filer
PHONE: 999-999-9999

---

**Return to Table of Contents**

38

ER-319



# EEO-1 Component 1
## Data Collection

## Establishment List- Report Types Overview

The EEO-1 Component 1 Online Filing system automatically selects the appropriate Report Type based on the number of employees at an Establishment. This is an update from previous Online Filing Systems. All establishments within a company must use the same Report Type for establishments under 50 employees. The image below demonstrates where to find information on report types in the Online Filing System.

### Records 3

Click on each establishment to enter employee data. To add establishments to your company's establishment list, click "add establishment" and provide the establishment's information. Once completed select "Finish with Establishments" at the top to continue.

(+ Add Establishment)

| REPORT ⇕ | STATUS ⇕ | UNIT NUMBER ⇕ | EMP. COUNT ⇕ | EST. NAME ⇕ | STREET ⇕ | CITY ⇕ | STATE ⇕ |
|---|---|---|---|---|---|---|---|
| 4 | Incomplete > | JG33788 | 75 | Third Establishment | 113 Test Street | Rockville | MD |
| 8 | Incomplete > | JG33667 | 30 | Second Establishment | 112 Test Street | Rockville | MD |
| 3 | Incomplete > | JG28160 | 0 | Example Company | 111 Test Street | Rockville | MD |

Type 4: For an establishment with 50 or more employees; contains employee demographics

Type 8: Used for an establishment with less than 50 employees; contains employee demographics

Type 3: Headquarters report; contains the employee demographics for only your headquarters establishment

Type 6 Establishment List Reports can be used by companies that have used them in the past. These reports are for an establishment with less than 50 employees; contain only the establishment name, address and total number of employees for the establishment. These reports involve an extra reporting step through Reconciliation Reports. Please see the next section for additional detail on this process.

**Return to Table of Contents**

39

ER 320



EEO-1 Component 1
**Data Collection**

## Type 6 and Reconciliation Reports: Establishment List



Case 3:22-cv-07182-WHA   Document 34-3   Filed 08/18/23   Page 60 of 100



EEO-1 Component 1
**Data Collection**

# Type 6 and Reconciliation Reports: Establishment Information



**Establishment Information**

Please review your establishment information for 2019. Enter/update any information if applicable.

Note - Required fields are marked with an asterisk *

Unit ID:
Unit Name:

Unit Name*
Example Establishment

Address (Number and Street)*
122 Main Street

Address 2

Please do not enter a PO Box here

City*
Rockville

State*
Maryland

Zip*
20850

Number of Employees for 2019*
30

Next

164-161

Save & Continue Later

*Callout (top right):* This is all the data required for the Type 6 Establishment List Reports. Select "Next" to continue to the Comments section.

*Callout (bottom left):* Update the establishment's information as needed. If the number of employees is now 50 or more, the establishment will automatically update to a Type 4 Report.

41   <u>Return to Table of Contents</u>

ER-322



EEO-1 Component 1
**Data Collection**

# Type 6 and Reconciliation Reports: Establishment Information Comments

The Comments section allows you to add anything you feel is noteworthy regarding the establishment. Otherwise, you may leave it blank.

Select "Submit" to finish with this establishment's Type 6 Establishment List Report and return to your Establishment List.



**Return to Table of Contents**

42

ER-323



EEO-1 Component 1
Data Collection

## Type 6 and Reconciliation Reports: Company Dashboard with Reconciliation Report



If you have any Type 6 Establishment List Reports in your Establishments List, you must create a Reconciliation Report. This is a report of the demographics of all employees included in all Type 6 Establishment List Reports.

Select anywhere on this step to continue to your Reconciliation Report.

**Return to Table of Contents**

43

ER-324



EEO-1 Component 1
Data Collection

# Type 6 and Reconciliation Reports: Reconciliation Report in Establishment List



Return to Table of Contents

ER-325

# EEO-1 Component 1
## Data Collection

# Type 6 and Reconciliation Reports: Reconciliation Report

## Reconciliation Report

Your company's EEO-1 Component 1 Report includes Type 6 Reports.

The number of employees from ALL of your Type 6 Reports is 130. Enter the details for these employees in the matrix below. Employees should only be counted in [...] [...] will calculate automatica[...]

Unit ID:
Unit Name:    Example Company



Enter the count of your employees within each category in the table below. Each employee should be in only one category.

The number of employees entered in this screen must equal the number of employees from ALL your Type 6 Establishment List Reports. That number is displayed here for reference.

Example: If the establishments have seven Hispanic/Latino males whose jobs are categorized as "Executive/Senior Level Officials and Managers," enter "7" in column 1, row 1.

If you need to leave this screen before you finish entering your employee data, select "Save & Continue Later" to return to your Company Dashboard. Your progress will be saved.

Select "Next" to complete your Type 7 Reconciliation Report. Type 7 Reconciliation Reports do not ask for Comments.

ER-326

Return to Table of Contents

EEO-1 Component 1
Data Collection

## Type 6 and Reconciliation Reports: Reconciliation Report Completed and Return to Dashboard



ER-327



Case 3:22-cv-07182-WHA   Document 34-3   Filed 08/18/23   Page 66 of 100

EEO-1 Component 1
**Data Collection**

## Type 6 and Reconciliation Reports: Reconciliation Report Complete



The first three steps indicate "Complete" statuses. To edit or update any of your Company Information and Contacts, select the lock icon to unlock this section. You will be able to revisit your earlier entries. You will need to review all previously entered information and re-confirm your entries.

After reviewing your Reports and verifying that the information is correct, select this to proceed to certification. Certification of the EEO-1 Component 1 Report is mandatory. Failure to certify the report will result in notification of a failure to file letter.

The next step is to Review the EEO-1 Component 1 Reports. Select this to review all entered data prior to certification. The system will use the data entered in the Reconciliation Report, along with the Type 3 and 4 Reports to automatically generate a Type 2 Consolidated Report.

EEO-3293

The Review and Certify process is described in detail on page 31 through 38 earlier in the User's Guide.

47     <u>**Return to Table of Contents**</u>



# EEO-1 Component 1
## Data Collection

## Significant Establishment Deletions Warning

### ESTABLISHMENT DELETIONS WARNING

You have reported a significant reduction in the number of establishments for 2019 compared to the last time that you filed. If this is not correct, click the "Back" button to correct the number of establishments. If correct, please answer each of the following questions.

Note - all questions are required

**Company ID:**
**Company Name:**

If there was a significant reduction in the number of establishments from your previous EEO-1 component 1 Report, we will request additional information regarding the business changes. This will screen will only appear if significant changes occurred. Please answer the questions to help the EEO-1 Component 1 Filer Support Team ensure the company changes are completed correctly in the Online Filing System.

|  | Yes | No |
|---|---|---|
| Is the reduction in the number of establishments due to corporate reorganization resulting in establishment closures? | ○ | ○ |
| Is the reduction in the number of establishments due to the loss of a Federal contract, resulting in establishment closures? | ○ | ○ |
| Is the reduction in the number of establishments due to bankruptcy, resulting in business closure? | ○ | ○ |
| Is the reduction in the number of establishments due to errors in the existing number of establishments as reported in the online filing system (i.e. your changes are correcting an error in the listing of the company's establishments)? | ○ | ○ |
| Is the reduction in the number of establishment due to a merger, acquisition, asset acquisition, or spinoff, resulting in establishments moved to another company that is also required to file? | ○ | ○ |
| Is the reduction in the number of establishments due to an effort to combine establishments to a single headquarter EIN? | ○ | ○ |

Back        Next

Save & Continue Later

**Return to Table of Contents**

48

EEO-1 Component 1
**Data Collection**

## Establishment Deletion Warning Additional Action Needed

Certain changes require assistance from the EEO-1 Component 1 Filer Support Team. If you see this screen please contact the Filer Support Team toll free at 1-855-EEOC-035 (1-855-336-2035) or via the filer support page 'Contact Us' form.

## ESTABLISHMENT DELETIONS WARNING

Company ID:
Company Name:

For 2019, the answer(s) selected on the previous screen indicate the company may have been involved in a merger or had some establishments spinoff to another company.

Please contact the Filer Support Team toll free at 1-855-EEOC-035 (1-855-336-2035) for assistance. After the issue is resolved, the Filer Support Team will provide you with a numerical code to enter in the field below to continue with the filing process.

Enter code provided by the Filer Support Team:

After providing the necessary assistance to process your change, the EEO-1 Component 1 Filer Support Team will provide a unique code that you can enter here to help you continue to the next screen.

Back          Next

**Return to Table of Contents**

49

ER-330



# EEO-1 Component 1
## Data Collection

## Troubleshooting FAQs

### How to Count Employees

**What is a workforce snapshot pay period?**

The workforce snapshot pay period is a single pay period, selected by the employer, within the last quarter to count employees for the EEO-1 Component 1 filing. Examples of pay periods are: weekly, every two weeks, twice a month, etc.

**Which workforce snapshot pay period (i.e., pay period) must employers use to extract EEO-1 Component 1 employment data?**

Employment data must be pulled from one pay period in October, November or December of the EEO-1 Component 1 data collection year (i.e., 2019 and 2020). This is referred to as the **workforce snapshot pay period.**

**Do companies need to select the same workforce snapshot pay period for 2019 and 2020?**

No. Companies may select different workforce snapshot pay periods for 2019 and 2020.

### Which Employees Must Be Included in the Report

**Are employers required to report employees who were employed during the selected workforce snapshot pay period even if they were no longer active employees by December 31st of the data collection year?**

Yes. Even if an employee resigned or was terminated before December 31 of that year, the employee must be reported if the employee was employed during the selected workforce snapshot pay period.

**Should part-time employees be included in the report?**

Yes. Both full and part-time employees must be included in EEO-1 Component 1 Reporting.

50   <u>**Return to Table of Contents**</u>

ER-331



# EEO-1 Component 1
## Data Collection

**How should employees who work remotely (i.e., telework) be reported on the 2019 and 2020 EEO-1 Component 1 Reports?**

Employees who work remotely (i.e., telework) must be included in the EEO-1 Component 1 Report for the establishment to which they report. Under no circumstances, should an employee's home address be reported on any EEO-1 Component 1 report.

**What if, for example, because of the COVID-19 Pandemic, an employee did not work at any of the employer's physical work locations?**

Generally, and in most instances, the temporary closure of a physical work site will not affect how employees are counted on the EEO-1 Component 1 Report. The fact that most, or even all, employees are teleworking would typically not change EEO-1 Component 1 reporting if the employees continue to be assigned to, or report to, a physical location or establishment. Those employees should be included on the EEO-1 Component 1 establishment report for the physical location to which they are assigned or report. If the employer has closed an establishment and reassigned employees from the closed establishment to another location, the reassigned employee should be included at the establishment to which that employee reports or has been reassigned. Under no circumstances, should an employee's home address be reported on any EEO-1 Component 1 report.

**What if a remote employee is not assigned to and does not report to any physical location on a permanent basis (i.e., not due to a temporary closure of an establishment)?**

In those circumstances, the employee should be counted at the establishment to which the employee's manager reports or is assigned. If an employee does not report to an establishment and the employee's manager also does not report to an establishment, the employee (and their manager) should be included on the employer's EEO-1 Component 1 Headquarters Report. Under no circumstances, should an employee's home address be reported on any EEO-1 Component 1 report.

**What if an employer operates entirely remotely and does not have any physical location (not even a headquarters office)? How should employees be reported?**

In such a situation, employees should be included on the EEO-1 Component 1 Headquarters Report. For purposes of the EEO-1 Component 1 Report, the employer should report the address where the business is legally registered, for example, a Post Office box in lieu of a physical address. Under no circumstances, should an employee's home address be reported on any EEO-1 Component 1 report.

51     <u>**Return to Table of Contents**</u>

EEO-1 Component 1
**Data Collection**

## Single or Multi-Establishments: Help Determining Number of Establishments

**What is the difference between a single-establishment and a multi-establishment company?**

A single-establishment company does business at only one physical address. A multi-establishment company does business at two or more physical addresses.

Single-establishment companies are only required to submit one EEO-1 Component 1 data record/report. Multi-establishment companies are required to submit a) a separate report for the headquarters, b) a separate report for **each** establishment of the company with 50 or more employees, c) a separate report for **each** establishment with fewer than 50 employees, and d) a consolidated report that includes all employees.

**If a company does business under multiple NAICS codes, do multiple EEO-1 Component 1 Reports need to be filed?**

EEO-1 Component 1 Reports are based on physical locations. If the one location has multiple NAICS codes, the filer must use the NAICS code under which the greatest number of employees operate.

**If a company's headquarters is a holding company with zero employees, is it still necessary to file?**

If a holding company and its holdings meet the filing requirements, the holding company must file on behalf of all associated companies and establishments.

**How do employers report employees who work at client sites?**

Employers have the option to either a) report employees working at client sites using the client site address as the location of the establishment, or b) report those employees at a non-client site employer address.

**My company has several establishments that are located at the same address. Do we submit separate reports for each entity?**

If the establishments that are located at the same address AND have the same North American Industry Classification System (NAICS) code and the same EIN, the establishments MUST be combined into only one report. These are considered one establishment for EEO-1 Component 1 Reporting purposes.

52      <u>Return to Table of Contents</u>

ER-333



EEO-1 Component 1
Data Collection

## Considerations for PEOs and Client Companies of PEOs

**Is a Professional Employer Organization (PEO) choosing to prepare and file your company's 2019/2020 EEO-1 Component 1 report(s)?** If so, please ensure a report is filed for your company. It is the responsibility of your company to ensure a report is filed on your behalf. If a PEO is choosing to prepare and file your report, please contact the PEO to ensure it has your necessary information to file.

If a PEO is choosing <u>not</u> to prepare and file your 2019/2020 EEO-1 Component 1 report(s), please ensure that you register your company in the Online Filing System to submit your necessary reports. If your company is a first time filer (i.e., neither the company nor a PEO ever filed a report for the company), please visit <u>EEOCdata.org/eeo1</u>, navigate to the registration page, and follow the online instructions for companies filing for the first time. After submitting the registration form, a filer will receive a Company ID and Passcode. This will be used to create accounts for your company.

If a PEO filed your company's 2018 EEO-1 Component 1 report, please contact the EEO-1 Component 1 Filer Support Team through the filer support page '<u>Contact Us</u>' Form. The Filer Support Team will need to spin-off your company from the PEO prior to your company filing.

**If I am a current client company of a PEO but they are not preparing and filing my 2019 and/or 2020 EEO-1 Component 1 report(s), how do I obtain prior year reports filed by the PEO on my company's behalf?**

You should contact your current PEO to obtain those reports.

**If I am a former client company of a PEO, how do I obtain prior year reports filed by the PEO on my company's behalf?**

You should contact your former PEO to obtain those reports.

**If a PEO is choosing to file 2019/2020 EEO-1 Component 1 report(s) on behalf of its client companies, is the PEO required to report the employees of client companies that do not otherwise meet the EEO-1 Component 1 filing thresholds?**

No. If a client company of a PEO is not otherwise subject to the EEO-1 Component 1 filing requirements, that client company is not required to file an EEO-1 Component 1 report simply by virtue of being party to a PEO arrangement. Consequently, in that instance, neither the ineligible client company nor the PEO is required to include the employee data of the ineligible client company on the EEO-1

**Return to Table of Contents**

53

ER-334



# EEO-1 Component 1
## Data Collection

Component 1 report. For example, a single establishment company that is not a federal contractor and has less than 100 employees would not meet the eligibility thresholds requiring it to file an EEO-1 Component 1 report. Thus, neither this company nor its PEO would be required to report its employees for purposes of the EEO-1 Component 1 report.

**If a PEO is choosing to file 2019/2020 EEO-1 Component 1 report(s) on behalf of its client companies, which EIN does a PEO use to file for client companies' establishments?**

For purposes of the 2019/2020 EEO-1 Component 1 data collection, a PEO should use its own EIN for its own establishments.  The PEO should use the EIN associated with each of the client company's establishment(s).

**If a PEO is not providing EEO-1 Component 1 reporting services for ALL a client company's employees, is the PEO permitted to file an EEO-1 Component 1 report on behalf of the client company for just part of the client company's employees?**

No. Partial workforce PEO arrangements are not permitted in EEO-1 Component 1 Reporting.  In such a situation, the client company is responsible for filing an EEO-1 Component 1 report(s).  The client company, not the PEO, must file an EEO-1 Component 1 report for all its employees.

**If a PEO is choosing to file 2019/2020 EEO-1 Component 1 report(s) on behalf of its client companies, which NAICS code(s) should a PEO use for its headquarters and any establishment reports?**

For purposes of the 2019/2020 EEO-1 Component 1 data collection, a PEO filing a Headquarters Report for its own organization should use the NAICS (North American Industry Classification System) code for PEOs which is  *561330 – Professional Employer Organizations*.  Additionally, a multi-establishment PEO should use this NAICS code for each of its own establishments.  A PEO choosing to file establishment reports for the establishments of its client companies should use a NAICS code based on the major business activity at  each client company establishment.  To identify the correct NAICS code for each establishment, please reference this 2012 to 2017 NAICS crosswalk.

ER-335

54    **Return to Table of Contents**



# EEO-1 Component 1
## Data Collection

## Additional Resources

Additional User's Guides:

- 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide:  New Filer Registration

- 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide:  Returning Filer Account Creation

- 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide:  How to File for  Multiple Companies

- 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide:  Single-Establishments

- 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide:  Single-Establishments Data File Upload

- 2019 and 2020 EEO-1 Component 1 Data Collection User's Guide:  Multi-Establishments Data File Upload

- EEO-1 Component 1 Instruction Booklet: https://eeocdata.org/eeo1/howto/instructionbooklet

- EEO-1 Component 1 Fact Sheets: https://eeocdata.org/eeo1/support/factsheets

- EEO-1 Component 1 Frequently Asked Questions and Answers: https://eeocdata.org/eeo1/support/faq

**Return to Table of Contents**

55

ER-336

# Exhibit D

(77 of 273), Page 77 of 273, Case: 24-880, 05/09/2024, DktEntry: 9.4, Page 77 of 273
Case 3:22-cv-07182-WHA Document 14 Filed 02/22/23 Page 76 of 100
8/18/2020                     EEO-1 Instruction Booklet U.S. Equal Employment Opportunity Commission

 **U.S. Equal Employment Opportunity Commission**

# EEO–1 Instruction Booklet

[Sample Form](#)

.

| | |
|---|---|
| **EEO-1 JOINT REPORTING COMMITTEE**<br><br>• Equal Employment Opportunity Commission<br>• Office of Federal Contract Compliance Programs | O.M.B. No. 3046-0007<br><br>Approval Expires 9/2019 |

EQUAL EMPLOYMENT
 OPPORTUNITY COMMISSION

WASHINGTON, D.C. 20507

**EQUAL EMPLOYMENT OPPORTUNITY**

STANDARD FORM 100, REV. March 2018, EMPLOYER INFORMATION REPORT EEO-1

**INSTRUCTION BOOKLET**

The Employer Information EEO-1 report (Standard Form 100) is collected annually under the authority of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et. seq., as amended. All employers with 15 or more employees are covered by Title VII and are required to keep employment records as specified by Commission regulations. Based on the number of employees and federal contract activities, certain employers are required to file an EEO-1 report on an annual basis under the Equal Employment Opportunity Commission (EEOC) and the U.S. Department of Labor Office of Federal Contract Compliance Programs (OFCCP) regulations.

See the Appendix for the applicable provisions of Title VII, Section 709(c) of Title VII, and the applicable EEOC regulations, Sections 1602.7-1602.14, Chapter XIV, Title 29 of the Code of Federal Regulations. State and local governments, public school systems and educational institutions are

(78 of 273), Page 78 of 273, Case: 24-880, 05/09/2024, DktEntry: 9.4, Page 78 of 273

8/18/2020                    Case 3:22-cv-07182-WHA    Document 14    EEO-1 Instruction Booklet | U.S. Equal Employment Opportunity Commission    Page 77 of 100

covered by other employment reports and are excluded from Standard Form 100, Employer Information Report EEO-1.

In the interests of consistency, uniformity and economy, Standard Form 100 has been jointly developed by the EEOC and OFCCP, as a single form which meets the statistical needs of both programs.

As stated above, the filing of Standard Form 100 is required by law; it is not voluntary. Under section 709(c) of Title VII, the Equal Employment Opportunity Commission may compel an employer to file this form by obtaining an order from the United States District Court.

Under Section 209(a) of Executive Order 11246, the penalties for failure by a federal contractor or subcontractor to comply may include termination of the federal government contract and debarment from future federal contracts.

## 1. WHO MUST FILE

Standard Form 100 must be filed by --

(A) All private employers who are (1) subject to Title VII of the Civil Rights Act of 1964, as amended, with 100 or more employees EXCLUDING State and local governments, public primary and secondary school systems, institutions of higher education, American Indian or Alaska Native tribes and tax-exempt private membership clubs other than labor organizations; OR (2) subject to Title VII who have fewer than 100 employees if the company is owned or affiliated with another company, or there is centralized ownership, control or management (such as central control of personnel policies and labor relations) so that the group legally constitutes a single enterprise, and the entire enterprise employs a total of 100 or more employees.

AND

(B) All federal contractors who (1) are not exempt as provided for by 41 CFR 60-1.5; (2) have 50 or more employees; (3) are prime contractors or first-tier subcontractors; and (4) have a contract, subcontract, or purchase order amounting to $50,000 or more; or serve as depositories of Government funds in any amount; or are financial institutions which are issuing and paying agents for U.S. Savings Bonds and or savings notes.

Establishments located in the District of Columbia and the 50 states are required to submit Standard Form 100. No reports should be filed for establishments in Puerto Rico, the Virgin Islands, or other American Protectorates

## 2. HOW TO FILE

(79 of 273)   Page 79 of 273   Case: 24-880   05/09/2024   DktEntry: 9.4   Page 79 of 273
8/18/2020                      EEO-1 Instruction Booklet | U.S. Equal Employment Opportunity Commission
Case 3:22-cv-07182-WHA   Document 11-4   Filed 12/16/22   Page 78 of 100

**(a) EEO-1 Electronic Filing Requirement:**

EEO-1 reporting is an electronic, online application. The EEOC **requires** that EEO-1 reports be submitted via the *EEO-1 Online Filing System*, or as an electronically transmitted data file.

Any employer who claims that the electronic submission of Standard Form 100 would create undue hardship may apply to the Commission for a special reporting procedure in accordance with the instructions set forth in paragraph 5.

**(b) Single-establishment employers**, i.e., employers doing business at only one establishment in one location must complete a single EEO-1 online data record.

**(c) Multi-establishment employers,** i.e., employers doing business at more than one establishment must complete online: (1) a report covering the principal or headquarters office; (2) a separate report for **each** establishment employing 50 or more persons; and (3) a separate report (Type 8 record) for **each** establishment employing fewer than 50 employees, OR an Establishment List (Type 6 record), showing the name, address, and total employment for **each** establishment employing fewer than 50 persons. For the EEO-1 online portal, companies using Establishment List reports (Type 6), must enter all employment data into the Consolidated report (Type 2). For the EEO-1 online application, all keyed employment data including data from the Type 8 reports will automatically transfer to populate the overall Consolidated Report.

The total number of employees indicated on the headquarters report, **PLUS** the establishment reports, **PLUS** the list of establishments employing fewer than 50 employees, **MUST** equal the total number of employees shown on the Consolidated Report. Employment data for multi-establishment companies, including parent corporations and their subsidiary holdings, must report all employees working at each company establishment or subsidiary establishment. For purposes of this report, the term **parent corporation** refers to any corporation which owns all or the majority stock of another corporation so that the latter relates to it as a subsidiary.

### 3. WHEN TO FILE

This annual report must be filed not later than March 31 following the reporting year. Employment figures from any pay period in October through December may be used (workforce snapshot).

### 4. CONFIDENTIALITY

All reports and any information from individual reports are subject to the confidentiality provisions of Section 709(e) of Title VII, and may not be made public by the EEOC prior to the institution of any proceeding under Title VII involving the EEO-1 data. Any EEOC employee who violates this prohibition may be found guilty of a criminal misdemeanor and could be fined or imprisoned. The confidentiality requirements allow the EEOC to publish only aggregated data, and only in a manner that does not reveal any particular filer's or any individual employee's personal information.

OFCCP will notify contractors of any Freedom of Information Act (FOIA) requests that are made to obtain any of the data provided on the EEO-1 report, and will protect the confidentiality of EEO-1 data to the maximum extent possible consistent with FOIA and the Trade Secrets Act. However, should OFCCP receive FOIA requests for any EEO-1 data on filers not within its jurisdiction, OFCCP will refer the requests to the EEOC for a response. The confidentiality provision of Section 709(e) of Title VII applies to all EEO-1 data submitted by filers that are not federal contractors, and the EEOC adheres to that statutory provision when reviewing all requests for EEO-1 data.

## 5. REQUESTS FOR INFORMATION AND SPECIAL PROCEDURES

Where the employer claims undue hardship due to electronic submission or otherwise, the employer must submit in writing a detailed alternative proposal for compiling, reporting, or submitting information to: EEO-1 Coordinator, EEOC Survey Division, 131 M Street, NE, Room 4SW22G, Washington, DC 20507. In cases where the Commission approves written requests to submit paper EEO-1 forms, the paper EEO-1 report must be prepared in accordance with the directions set forth in the Commission's written approval. EEOC will generate a paper EEO-1 form only in extreme cases where internet access is not available to the employer. Only those special procedures approved in writing by the Commission are authorized. Such authorizations are only in effect for one report year. Paper records may not be submitted until after March 31.

## 6. BURDEN ESTIMATE

Public reporting burden for this collection of information is estimated to average three and five tenths (3.5) hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed and completing and reviewing the collection of information. A response is defined as one survey form.

Comments regarding this collection of information, including suggestions for reducing burden, can be sent at any time to:

EEO-1 Coordinator
 EEOC Survey Division -- Room 4SW22G
 131 M Street, N.E.
 Washington, D.C. 20507

AND

Paperwork Reduction Project (3046-0007)
 Office of Management and Budget
 Washington, D.C. 20503

The full text of the OMB regulations on the Paperwork Reduction Act may be found at 5 CFR Part 1320.

ER-341

## EEO-1 Terms

**Type of Report** (Status Code)
Single-Establishment company
1 Single-establishment company

Multi-establishment company
2 Consolidated Report (Required)
3 Headquarters Report (Required)
4 Establishment Report (50 or more employees)
6 Establishment List (Option 1)
8 Establishment Report (less than 50 employees) (Option 2)
Special Report (See 29 CFR 1602.10)

## Company Identification

Refers to the company name and address of the headquarters office of the multi-establishment company (Report Types 2 and 3); or the establishment name and address.

## Employers Who Are Required To File

Questions 1, 2 and 3 **MUST** be answered by all employers required to file the EEO-1. If the answer to Question C-3 is Yes, please enter the company's Dun and Bradstreet identification number if the company has one. If the answer is Yes to question 1, 2, or 3, complete the entire form. Otherwise skip to Section G.

## Employment Data

Employment data must include **ALL** full-time and part-time employees **who were employed during the payroll period selected by the employer between October 1 and December 31 (workforce snapshot),** except those employees specifically excluded as indicated in the Appendix. Employees must be counted by sex and race, and ethnicity, for each of the ten occupational categories. See Appendix for detailed explanation of job categories and race and ethnicity identification.

Every employee must be accounted for in only one of the categories in Columns A through N.

## Occupational Data

Employment data must be reported by job category. Report each employee in only one job category. In order to simplify and standardize the method of reporting, all jobs are considered as belonging in one of the broad job categories shown in the EEO-1. To assist in determining where to place jobs within these categories, consult the description of job categories in the *EEO-1 Job Classification Guide* or the EEO-1-Census Codes Cross Walk web site

ER-342

(https://www.census.gov/people/eeotabulation/documentation/jobgroups.pdf). For further clarification, consult the Alphabetical and Classified Indices of Industries and Occupations (2010 Census) published by the U.S. Department of Commerce, Census Bureau.

## Establishment Information

The major activity should be sufficiently descriptive to identify the industry and product produced or service provided. If an establishment is engaged in more than one activity, describe the activity at which the **greatest** number of employees work.

**The description of the major activity indicated on the Headquarters Report (Type 3) must reflect the dominant economic activity of the company in which the greatest numbers of employees are engaged.**

## Remarks

Include in this section any remarks, explanations, or other pertinent information regarding this report.

## Certification

If all reports have been completed at headquarters, the authorized official should check Item 1 and sign the Consolidated Report only. If the reports have been completed at the individual establishments, the authorized official should check Item 2 and sign the establishment report.

## APPENDIX

## 1. DEFINITIONS APPLICABLE TO ALL EMPLOYERS

*a.* "Commission" refers to the Equal Employment Opportunity Commission

*b.* "OFCCP" refers to the Office of Federal Contract Compliance Programs, U.S. Department of Labor, established to implement Executive Order 11246, as amended.

*c.* "Joint Reporting Committee" is the committee representing the Commission and OFCCP for the purpose of administering this reporting system.

*d.* "Employer" under Section 701(b), Title VII of the Civil Rights Act of 1964, as amended, means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include the United States, a corporation wholly owned by the government of the United States, American Indian or Alaska Native tribes, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as

ER-343

8/18/2020                     EEO-1 Instruction Booklet | U.S. Equal Employment Opportunity Commission

defined in section 2102 of Title 5 of the United States Code), or a bona fide private membership club (other than a labor organization) which is exempt from taxation under Section 501(c) of the Internal Revenue Code of 1954; OR any person or entity subject to Executive Order 11246 who is a federal government prime contractor or subcontractor at any tier (including a bank or other establishment serving as a depository of federal government funds, or an issuing and paying agent of U.S. Savings Bonds and savings notes, or a holder of a federal government bill of lading) or a federally-assisted construction prime contractor or subcontractor at any tier.

*e.* "Employee" means any individual on the payroll of an employer who is an employee for purposes of the employers withholding of Social Security taxes except insurance sales agents who are considered to be employees for such purposes solely because of the provisions of 26 USC 3121 (d)(3) (B) (the Internal Revenue Code). Leased employees are included in this definition.

*f.* "Leased Employee", for EEO-1 reporting only, means a permanent employee provided by an employment agency for a fee to an outside company for which the employment agency handles all personnel tasks including payroll, staffing, benefit payments and compliance reporting. The employment agency shall include leased employees in its EEO-1 report. **For EEO-1 reporting purposes only**, the term "employee" shall not include persons who are hired on a casual basis for a specified time, or for the duration of a specified job (for example, a person at a construction site whose employment relationship is expected to terminate with the end of the employee's work at the site); persons temporarily employed in any industry other than construction, such as temporary office workers, mariners, stevedores, lumber yard workers, etc., who are hired through a hiring hall or other referral arrangement, through an employee contractor or agent, or by some individual hiring arrangement, or persons **(EXCEPT** leased employees) on the payroll of an employment agency who are referred by such agency for work to be performed on the premises of another employer under that employers direction and control. These definitions are only for purposes of clarifying who reports these individuals on the EEO-1 and do not have legal ramifications as to the analysis of whether a particular individual is an employee or an independent contractor. That is done under the factors enumerated by the Supreme Court in *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318 (1992).

*g.* "Commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof.

*h.* "Industry Affecting Commerce" means any activity, business or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry affecting commerce within the meaning of the Labor Management Reporting and Disclosure Act of 1959. Any employer of 15 or more persons is presumed to be in an industry affecting commerce.

ER-344

*i*. "Establishment" is generally a single physical location where business is conducted or where services or industrial operations are performed (e.g., factory, mill, store, hotel, movie theater, mine, farm, airline terminal, sales office, warehouse, or central administrative office (definition adapted from the *North American Industry Classification System, 2012*).

Units at different physical locations, even though engaged in the same kind of business operation, must be reported as separate establishments. For locations involving construction, transportation, communications, electric, gas, and sanitary services, oil and gas fields, and similar types of physically dispersed industrial activities, however, it is not necessary to list separately each individual site, project, field, line, etc., unless it is treated by you as a separate legal entity. For these types of activities, list as establishments only those relatively permanent main or branch offices, terminals, stations etc., which are either: (a) directly responsible for supervising such dispersed activities (where employees work from home, they should be reported as if working at the establishment where their supervisor is reported to work); or (b) the base from which personnel and equipment operate to carry out these activities. (Where these dispersed activities cross State lines, at least one such establishment should be listed for each State involved.)

*j*. "Major Activity" means the major product or group of products produced or handled, or services rendered by the reporting unit (e.g., manufacturing airplane parts, retail sales of office furniture) in terms of the activity at which the greatest number of all employees work. The description includes the type of product manufactured or sold or the type of service provided. "Major Activity" is based on the industrial definitions developed by the federal government as adopted by the EEOC (For example, the *North American Industry Classification System, 2012*)**.**

It is the opinion of the Commission that Section 702 of Title VII of the Civil Rights Act of 1964, as amended, does not authorize a complete exemption of religious organizations from the coverage of the Act or of the reporting requirements of the Commission. The exemption for religious organizations applies to their employment of individuals of a particular religion to perform work connected with the organization's activities. Therefore, since the Standard Form 100 does not provide for information as to the religion of employees, religious organizations must report all information required by this report.

## 2. DEFINITIONS APPLICABLE ONLY TO GOVERNMENT CONTRACTORS SUBJECT TO EXECUTIVE ORDER 11246

*a*. "Order" means Executive Order 11246, as amended.

*b*. "Contract" means any government contract or any federally-assisted construction contract.

*c*. "Prime Contractor" means any employer having a government contract or any federally-assisted construction contract, or any employer serving as a depository of federal government funds.

8/18/2020  EEO-1 Instruction Booklet | U.S. Equal Employment Opportunity Commission
Case 3:22-cv-07182-WHA  Document 1-4  Filed 11/15/22  Page 84 of 100

*d.* "Subcontractor" means any employer having a contract with a prime contractor or another subcontractor calling for supplies or services required for the performance of a government contract or federally assisted construction contract.

*e.* "Contracting Agency" means any department, agency and establishment in the executive branch of the government, including any wholly-owned government corporation, which enters into contracts.

*f.* "Administering Agency" means any department, agency and establishment in the executive branch of the government, including any wholly-owned government corporation, which administers a program involving federally-assisted construction contracts.

## 3. RESPONSIBILITIES OF PRIME CONTRACTORS

*a.* At the time of an award of a subcontract subject to these reporting requirements, the prime contractor shall inform the subcontractor of its responsibility to submit annual EEO-1 employment data in accordance with these instructions.

*b.* If prime contractors are required by their Contracting Officer or subcontractors by their prime contractors, to submit notification of filing, they shall do so by ordinary correspondence. However, such notification is not required by and should not be sent to the Joint Reporting Committee.

## 4. RACE, ETHNIC, AND SEX IDENTIFICATION

Self-identification is the preferred method of identifying the race and ethnic information necessary for the EEO-1 report. Employers are required to attempt to allow employees to use self-identification to complete the EEO-1 report.

As to the method of collecting data, the basic principles for ethnic and racial self-identification for purposes of the EEO-1 report are:

(1) Offer employees the opportunity to self-identify

(2) Provide a statement about the voluntary nature of this inquiry for employees. For example, language such as the following may be used (employers may adapt this language):

"The employer is subject to certain governmental recordkeeping and reporting requirements for the administration of civil rights laws and regulations. In order to comply with these laws, the employer invites employees to voluntarily self-identify their race or ethnicity. Submission of this information is voluntary and refusal to provide it will not subject you to any adverse treatment. The information obtained will be kept confidential and may only be used in accordance with the provisions of applicable laws, executive orders, and regulations, including those that require the information to be summarized and reported to the federal government for civil rights enforcement. When reported, data will not identify any specific individual."

https://www.eeoc.gov/employers/eeo-1-survey/eeo-1-instruction-booklet

If an employee declines to self-identify his or her race and/or ethnicity, employment records or observer identification may be used. Where records are maintained, it is recommended that they be kept separately from the employee's basic personnel file or other records available to those responsible for personnel decisions.

Race and ethnicity designations as used by the Equal Employment Opportunity Commission for the EEO-1 do not denote scientific definitions of anthropological origins. In addition, such designations do not control who is protected by Title VII's prohibitions against employment discrimination based on race or national origin.

Definitions of the EEO-1 race and ethnicity categories are as follows:

**Hispanic or Latino** - A person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin regardless of race.

**White (Not Hispanic or Latino)** - A person having origins in any of the original peoples of Europe, the Middle East, or North Africa.

**Black or African American (Not Hispanic or Latino)** - A person having origins in any of the black racial groups of Africa.

**Native Hawaiian or Pacific Islander (Not Hispanic or Latino)** - A person having origins in any of the peoples of Hawaii, Guam, Samoa, or other Pacific Islands.

**Asian (Not Hispanic or Latino)** - A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian Subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam.

**Native American or Alaska Native (Not Hispanic or Latino)** - A person having origins in any of the original peoples of North and South America (including Central America), and who maintain tribal affiliation or community attachment.

**Twoor More Races (Not Hispanic or Latino) -** All persons who identify with more than one of the above five races.

# Instructions for assigning employees into the race/ethnic categories:

**Hispanic or Latino** - Include all employees who answer YES to the question, Are you Hispanic or Latino. Report all Hispanic males in Column A and Hispanic females in Column B.

ER-347

**White (Not Hispanic or Latino)** - Include all employees who identify as White males in Column C and as White females in Column I.

**Black or African American (Not Hispanic or Latino)**- Include all employees who identify as Black males in Column D and as Black females in Column J.

**Native Hawaiian or Pacific Islander (Not Hispanic or Latino)** - Include all employees who identify as Native Hawaiian or Other Pacific Islander males in Column E and as Native Hawaiian or Other Pacific Islander females in Column K.

**Asian (Not Hispanic or Latino)** - Include all employees who identify as Asian males in Column F and as Asian females in Column L.

**Native American or Alaska Native (Not Hispanic or Latino)** - Include all employees who identify as Native American or Alaska Native males in Column G and as Native American or Alaska Native females in Column M.

**Two or More Races (Not Hispanic or Latino)** - Report all male employees who identify with more than one of the above five races in Column H and all female employees who identify with more than one of the above five races in Column N.

## 5. DESCRIPTION OF JOB CATEGORIES

The major job categories are listed below, including a brief description of the skills and training required for occupations in that category and examples of the job titles that fit each category. The examples shown below are illustrative and not intended to be exhaustive of all job titles in a job category. These job categories are primarily based on the average skill level, knowledge, and responsibility involved in each occupation within the job category.

The Officials and Managers category as a whole is to be divided into the following two subcategories: Executive/Senior Level Officials and Managers, and First/Mid Level Officials and Managers. These subcategories are intended to mirror the employers own well established hierarchy of management positions. Small employers who may not have two well-defined hierarchical steps of management should report their management employees in the appropriate categories.

***Executive/Senior Level Officials and Managers***. Individuals who plan, direct and formulate policies, set strategy and provide the overall direction of enterprises/organizations for the development and delivery of products or services, within the parameters approved by boards of directors or other governing bodies. Residing in the highest levels of organizations, these executives plan, direct or coordinate activities with the support of subordinate executives and staff managers. They include, in larger organizations, those individuals within two reporting levels of the CEO, whose responsibilities require frequent interaction with the CEO. Examples of these kinds of managers are: chief executive officers, chief operating officers, chief financial officers, line of business heads, presidents or

executive vice presidents of functional areas or operating groups, chief information officers, chief human resources officers, chief marketing officers, chief legal officers, management directors and managing partners.

**First/Mid Level Officials and Managers.** Individuals who serve as managers, other than those who serve as Executive/Senior Level Officials and Managers, including those who oversee and direct the delivery of products, services or functions at group, regional or divisional levels of organizations. These managers receive directions from the Executive/Senior Level management and typically lead major business units. They implement policies, programs and directives of executive/senior management through subordinate managers and within the parameters set by Executive/Senior Level management. Examples of these kinds of managers are: vice presidents and directors, group, regional or divisional controllers; treasurers; human resources, information systems, marketing, and operations managers. The First/Mid Level Officials and Managers subcategory also includes those who report directly to middle managers. These individuals serve at functional, line of business segment or branch levels and are responsible for directing and executing the day-to-day operational objectives of enterprises/organizations, conveying the directions of higher level officials and managers to subordinate personnel and, in some instances, directly supervising the activities of exempt and non-exempt personnel. Examples of these kinds of managers are: first-line managers; team managers; unit managers; operations and production mangers; branch managers; administrative services managers; purchasing and transportation  managers; storage and distribution managers; call center or customer service managers; technical support managers; and brand or product managers.

**Professionals**. Most jobs in this category require bachelor and graduate degrees, and/or professional certification. In some instances, comparable experience may establish a person's qualifications. Examples of these kinds of positions include: accountants and auditors; airplane pilots and flight engineers; architects; artists; chemists; computer programmers; designers; dieticians; editors; engineers; lawyers; librarians; mathematical scientists; natural scientists; registered nurses; physical scientists; physicians and surgeons; social scientists; teachers; and surveyors.

**Technicians**. Jobs in this category include activities that require applied scientific skills, usually obtained by post-secondary education of varying lengths, depending on the particular occupation, recognizing that in some instances additional training, certification, or comparable experience is required. Examples of these types of positions include: drafters; emergency medical technicians; chemical technicians; and broadcast and sound engineering technicians.

**Sales Workers**. These jobs include non-managerial activities that wholly and primarily involve direct sales. Examples of these types of positions include: advertising sales agents; insurance sales agents; real estate brokers and sales agents; wholesale sales representatives; securities, commodities, and

ER-349

8/18/2020    Case 3:22-cv-07182-WHA    Document 14    EEO-1 Instruction Booklet | U.S. Equal Employment Opportunity Commission    Filed 12/06/22    Page 13 of 100

financial services sales agents; telemarketers; demonstrators; retail salespersons; counter and rental clerks; and cashiers.

*Administrative Support Workers*. These jobs involve non-managerial tasks providing administrative and support assistance, primarily in office settings. Examples of these types of positions include: office and administrative support workers; bookkeeping; accounting and auditing clerks; cargo and freight agents; dispatchers; couriers; data entry keyers; computer operators; shipping, receiving and traffic clerks; word processors and typists; proofreaders; desktop publishers; and general office clerks.

*Craft Workers* (formerly Craft Workers (Skilled)). Most jobs in this category include higher skilled occupations in construction (building trades craft workers and their formal apprentices) and natural resource extraction workers. Examples of these types of positions include: boilermakers; brick and stone masons; carpenters; electricians; painters (both construction and maintenance); glaziers; pipelayers, plumbers, pipefitters and steamfitters; plasterers; roofers; elevator installers; earth drillers; derrick operators; oil and gas rotary drill operators; and blasters and explosive workers. This category also includes occupations related to the installation, maintenance and part replacement of equipment, machines and tools, such as: automotive mechanics; aircraft mechanics; and electric and electronic equipment repairers. This category also includes some production occupations that are distinguished by the high degree of skill and precision required to perform them, based on clearly defined task specifications, such as: millwrights; etchers and engravers; tool and die makers; and pattern makers.

*Operatives* (formerly Operatives (Semi-skilled)). Most jobs in this category include intermediate skilled occupations and include workers who operate machines or factory-related processing equipment. Most of these occupations do not usually require more than several months of training. Examples include: textile machine workers; laundry and dry cleaning workers; photographic process workers; weaving machine workers; electrical and electronic equipment assemblers; semiconductor processors; testers, graders and sorters; bakers; and butchers and other meat, poultry and fish processing workers. This category also includes occupations of generally intermediate skill levels that are concerned with operating and controlling equipment to facilitate the movement of people or materials, such as: bridge and lock tenders; truck, bus or taxi drivers; industrial truck and tractor (forklift) operators; parking lot attendants; sailors; conveyor operators; and hand packers and packagers.

*Laborers and Helpers* (formerly Laborers (Unskilled)). Jobs in this category include workers with more limited skills who require only brief training to perform tasks that require little or no independent judgment. Examples include: production and construction worker helpers; vehicle and equipment cleaners; laborers; freight, stock and material movers; service station attendants; construction laborers; refuse and recyclable materials collectors; septic tank servicers; and sewer pipe cleaners.

ER-350

8/18/2020     Case 3:22-cv-07182-WHA Instruction DocumentLU.S.4 Equal Employment Opportunity Commission of 100

*Service Workers*. Jobs in this category include food service, cleaning service, personal service, and protective service activities. Skill may be acquired through formal training, job-related training or direct experience. Examples of food service positions include: cooks; bartenders; and other food service workers. Examples of personal service positions include: medical assistants and other healthcare support positions; hairdressers; ushers; and transportation attendants. Examples of cleaning service positions include: cleaners; janitors; and porters. Examples of protective service positions include: transit and railroad police and fire fighters; guards; private detectives and investigators.

## 6. LEGAL BASIS FOR REQUIREMENTS

SECTION 709(c), TITLE VII, CIVIL RIGHTS ACT OF 1964, AS AMENDED

Execution, retention, and preservation of records; reports to Commission; training program records; appropriate relief from regulation or order for undue hardship; procedure for exemption; judicial action to compel compliance.

Every employer, employment agency, and labor organization subject to this subchapter shall: (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom as the Commission shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this title or the regulations or orders thereunder. The Commission shall, by regulation, require each employer, labor organization, and joint labor-management committee subject to this subchapter which controls an apprenticeship or other training program to maintain such records as are reasonably necessary to carry out the purposes of this subchapter, including, but not limited to, a list of applicants who wish to participate in such program, including the chronological order in which applications were received, and to furnish to the Commission upon request, a detailed description of the manner in which persons are selected to participate in the apprenticeship or other training program. Any employer, employment agency, labor organization, or joint labor-management committee which believes that the application to it of any regulation or order issued under this section would result in undue hardship may apply to the Commission for an exemption from the application of such regulation or order, and, if such application for an exemption is denied, bring a civil action in the United States District Court for the district where such records are kept. If the Commission or the court, as the case may be, finds that the application of the regulation or order to the employer, employment agency, or labor organization in question would impose an undue hardship, the Commission or the court, as the case may be, may grant appropriate relief. If any person required to comply with the provisions of this subsection fails or refuses to do so, the United States District Court for the district in which such person is found, resides, or transacts business, shall, upon application of the Commission, or the Attorney General in a case

8/18/2020    Case 3:22-cv-07182-WHA Document 60-4 Equal Employment Opportunity Commission of 100

involving a government, governmental agency or political subdivision, have jurisdiction to issue to such person an order requiring him to comply.

TITLE 29, CHAPTER XIV CODE OF FEDERAL REGULATIONS

*Subpart B -- Employer Information Report*

### §1602.7 Requirement for filing of report.

On or before March 31 of each year, every employer that is subject to Title VII of the Civil Rights Act of 1964, as amended, and that has 100 or more employees, shall file with the Commission or its delegate executed copies of Standard Form 100, as revised (otherwise known as "Employer Information Report EEO-1"), in conformity with the directions set forth in the form and accompanying instructions. Notwithstanding the provisions of §1602.14, every such employer shall retain at all times at each reporting unit, or at company or divisional headquarters, a copy of the most recent report filed for each such unit and shall make the same available if requested by an officer, agent, or employee of the Commission under the authority of section 710 of Title VII. Appropriate copies of Standard Form 100 in blank will be supplied to every employer known to the Commission to be subject to the reporting requirements, but it is the responsibility of all such employers to obtain necessary supplies of the form from the Commission or its delegate prior to the filing date.

### §1602.8 Penalty for making of willfully false statements on report.

The making of willfully false statements on Report EEO-1 is a violation of the United States Code, Title 18, section 1001, and is punishable by fine or imprisonment as set forth therein.

### §1602.9 Commissions remedy for employers failure to file report.

Any employer failing or refusing to file Report EEO-1 when required to do so may be compelled to file by order of a U.S. District Court, upon application of the Commission.

### §1602.10 Employers exemption from reporting requirements.

If an employer claims that the preparation or filing of the report would create undue hardship, the employer may apply to the Commission for an exemption from the requirements set forth in this part, according to instruction 5. If an employer is engaged in activities for which the reporting unit criteria described in section 5 of the instructions is not readily adaptable, special reporting procedures may be required. If an employer seeks to change the date for filing its Standard Form 100 or seeks to change the period for which data are reported, an alternative reporting date or period may be permitted. In such instances, the employer should so advise the Commission by submitting to the Commission or its delegate a specific written proposal for an alternative reporting system prior to the date on which the report is due.

(92 of 273), Page 92 of 273  Case: 24-880, 05/09/2024, DktEntry: 9.4, Page 92 of 273
8/18/2020                    EEO-1 Instruction Booklet | U.S. Equal Employment Opportunity Commission
Case 3:22-cv-07182-WHA Document 114-5 Filed 12/16/24 Page 93 of 100

## §1602.11 Additional reporting requirements.

The Commission reserves the right to require reports, other than that designated as the Employer Information Report EEO-1, about the employment practices of individual employers or groups of employers whenever, in its judgment, special or supplemental reports are necessary to accomplish the purposes of Title VII, the ADA, or GINA. Any system for the requirement of such reports will be established in accordance with the procedures referred to in section 709(c) of Title VII, section 107 of the ADA, or section 207(a) of GINA and as otherwise prescribed by law.

Subpart C--Recordkeeping by Employers

## §1602.12 Records to be made or kept.

The Commission has not adopted any requirement, generally applicable to employers, that records be made or kept. It reserves the right to impose recordkeeping requirements upon individual employers or groups of employers subject to its jurisdiction whenever, in its judgment, such records (a) are necessary for the effective operation of the EEO-1 reporting system or of any special or supplemental reporting system as described above; or (b) are further required to accomplish the purposes of Title VII, the ADA, or GINA. Such record-keeping requirements will be adopted in accordance with the procedures referred to in section 709(c) of Title VII, section 107 of the ADA, or section 207(a) of GINA, and otherwise prescribed by law.

## §1602.13 Records as to racial or ethnic identity of employees.

Employers may acquire the information necessary for completion of Section D of the EEO-1 either by visual surveys of the work force, or at their option, by the maintenance of post-employment records as to the identity of employees where the same is permitted by State law. In the latter case, however, the Commission recommends the maintenance of a permanent record as to the racial or ethnic identity of an individual for purpose of completing the report form only where the employer keeps such records separately from the employees basic personnel form or other records available to those responsible for personnel decisions, e.g., as part of an automatic data processing system in the payroll department.

## §1602.14 Preservation of records made or kept.

Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of

Case 3:22-cv-07182-WHA Document 14 Instruction Booklet U.S. Equal Employment Opportunity Commission Page 92 of 100

termination. Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII, the ADA, or GINA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and  application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring an action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the Commission, or by the Attorney General, the date on which such litigation is terminated.

EEO-1 Survey Home

About the EEO-1 Survey

EEO-1 Instruction Booklet

Data File Format & Instructions

Reference Documents

# Exhibit E

MAJORITY MEMBERS:

VIRGINIA FOXX, NORTH CAROLINA,
  *Chairwoman*

JOE WILSON, SOUTH CAROLINA
GLENN THOMPSON, PENNSYLVANIA
TIM WALBERG, MICHIGAN
GLENN GROTHMAN, WISCONSIN
ELISE M. STEFANIK, NEW YORK
RICK W. ALLEN, GEORGIA
JIM BANKS, INDIANA
JAMES COMER, KENTUCKY
LLOYD SMUCKER, PENNSYLVANIA
BURGESS OWENS, UTAH
BOB GOOD, VIRGINIA
LISA C. MCCLAIN, MICHIGAN
MARY E. MILLER, ILLINOIS
MICHELLE STEEL, CALIFORNIA
RON ESTES, KANSAS
JULIA LETLOW, LOUISIANA
KEVIN KILEY, CALIFORNIA
AARON BEAN, FLORIDA
ERIC BURLISON, MISSOURI
NATHANIEL MORAN, TEXAS
JOHN JAMES, MICHIGAN
LORI CHAVEZ-DEREMER, OREGON
BRANDON WILLIAMS, NEW YORK
ERIN HOUCHIN, INDIANA



# COMMITTEE ON
# EDUCATION AND THE WORKFORCE
### U.S. HOUSE OF REPRESENTATIVES
2176 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6100

MINORITY MEMBERS:

ROBERT C. "BOBBY" SCOTT, VIRGINIA,
  *Ranking Member*

RAÚL M. GRIJALVA, ARIZONA
JOE COURTNEY, CONNECTICUT
GREGORIO KILILI CAMACHO SABLAN,
  NORTHERN MARIANA ISLANDS
FREDERICA S. WILSON, FLORIDA
SUZANNE BONAMICI, OREGON
MARK TAKANO, CALIFORNIA
ALMA S. ADAMS, NORTH CAROLINA
MARK DESAULNIER, CALIFORNIA
DONALD NORCROSS, NEW JERSEY
PRAMILA JAYAPAL, WASHINGTON
SUSAN WILD, PENNSYLVANIA
LUCY MCBATH, GEORGIA
JAHANA HAYES, CONNECTICUT
ILHAN OMAR, MINNESOTA
HALEY M. STEVENS, MICHIGAN
TERESA LEGER FERNÁNDEZ,
  NEW MEXICO
KATHY E. MANNING, NORTH CAROLINA
FRANK J. MRVAN, INDIANA
JAMAAL BOWMAN, NEW YORK

February 10, 2023

The Honorable Jenny R. Yang
Director
Office of Federal Contract Compliance Programs
U.S. Department of Labor
200 Constitution Ave., N
 Washington, DC 20210

Re     Release of EEO-1 Data

Dear Director Yang

I have serious concerns that the Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) has not provided federal contractors, especially smaller employers, with sufficient information and time to object to having their confidential data released pursuant to a *Freedom of Information Act* (FOIA) request from the Center for Investigative Reporting, a left-of-center journalism organi ation. OFCCP's failures could result in disclosing employers' and employees' sensitive, confidential information without due process.

The Employer Information Report (EEO-1) requires federal contractors with 50 or more employees to submit demographic workforce data to the Equal Employment Opportunity Commission (EEOC) and OFCCP, including data by race, ethnicity, sex, and job categories. The Type 2 Consolidated EEO-1 report combines data from employers with different locations into one report, and these reports can reveal the private information of individual employees, especially for smaller employers. It is a crime for any EEOC officer or employee to disclose this information, and OFCCP may not have the authority to make such disclosures.[1]

 ast week, OFCCP published a list of 13,521 employers who are recorded by the agency as not objecting to the disclosure of Type 2 EEO-1 data for the years 2016-2020 (non-objector list) in response to the FOIA request. On February 7, OFCCP extended the deadline to February 17 for

---

[1] 42 U.S.C. § 2000e-8(e).

The Honorable Jenny R. Yang
February 10, 2023
Page 2

employers to notify OFCCP that they are wrongly on the non-objector list.[2] However, I am concerned OFCCP has not taken the necessary steps to notify federal contractors, especially smaller employers, that the non-objector list may have errors or that employers were required to submit objections previously to prevent their sensitive data from being released.

It has come to my attention that an alarming number of employers on the list have submitted objections to OFCCP but are still included as non-objectors. This alone shows that much more time is needed to correct the list and for employers to ensure their non-objector status is recorded.

It further appears that many employers were not aware of the pending FOIA request at OFCCP. The agency must do a much better job of informing federal contractors, especially smaller employers, about their rights and obligations. I am also aware that OFCCP has not provided information to all relevant employers about what data will be disclosed in response to the FOIA request. These employers could not determine whether to submit objections because they did not know what information OFCCP would turn over. Employers who were unaware of the FOIA request or were not provided sufficient information about the potential disclosure should be allowed additional time to submit objections regarding their Type 2 EEO-1 data being disclosed.

For these reasons, I request that OFCCP re-open the period for employers to submit objections to the Type 2 EEO-1 data being released for **60 days**. I also request that OFCCP extend the deadline for employers to notify the agency they are wrongly on the non-objector list by **60 days**. I further request that OFCCP immediately ensure that every employer on the non-objector list is notified of their status as a non-objector and of what they must do to submit objections or correct the record if they are wrongly on the list. Please respond by **February 14** indicating whether OFCCP will reopen the period for submitting objections and extend the deadline for notifying the agency that the non-objector list has an error.

In addition, to understand more fully the process OFCCP has undertaken in response to the FOIA request, please respond to the following requests and questions in writing by **February 24**

1. Provide all notices and communications from OFCCP to employers regarding their potential obligations to submit objections with respect to the FOIA request.

2. What percentage of employers on the non-objector list have been informed that they are on the list How many employers on the list have not been informed about the FOIA request and their potential obligations

3. What steps did OFCCP take to inform employers that they needed to submit objections so that their sensitive Type 2 EEO-1 data is not disclosed When did OFCCP take those actions

---

[2] OFCCP Extends Deadline from February 7, 2023, to February 17, 2023, for Federal Contractors to Assert Type 2 EEO-1 Data Should Not Be Released, https www.dol.gov agencies ofccp submitter-notice-response-portal.

The   onorable Jenny R. Yang
February 10, 2023
Page 3

4.      hat actions is OFCCP planning to take to ensure employers are fully informed of their
        rights and obligations with respect to the FOIA request

Thank you for your attention to these requests.

Sincerely,

*Virginia Foxx*

 irginia Foxx
Chairwoman

Enclosure

## Responding to Committee Document Requests

1. In complying with this request, you should produce all responsive documents that are in your agency's possession, custody, or control, whether held by you or other past or present employees of the executive branch, or a representative acting on your behalf. Your response should also produce documents that you have a legal right to obtain, that the agency has a right to copy or to which you have access, or that you have placed in the temporary possession, custody, or control of any third party. Requested records, documents, data or information should not be destroyed, modified, removed, transferred or otherwise made inaccessible to the Committee on Education and the    orkforce (the "Committee").

2. If any entity, organi ation or individual denoted in this request has been, or is also known by any other name than that herein denoted, the request shall be read also to include that alternative identification.

3. The Committee s preference is to receive documents in electronic form (i.e., email, CD, memory stick, or thumb drive) in lieu of paper productions.

4. Documents produced in electronic format should also be organi ed, identified, and indexed electronically.

5. Electronic document productions should be prepared according to the following standards

   (a) The production should consist of single page Tagged Image File ("TIF"), files accompanied by a Concordance-format load file, an Opticon reference file, and a file defining the fields and character lengths of the load file.

   (b) Document numbers in the load file should match document    ates numbers and TIF file names.

   (c) If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

6. Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box, or folder should contain an index describing its contents.

7. Documents produced in response to this request shall be produced together with copies of file labels, dividers or identifying markers with which they were associated when they were requested.

8.    hen you produce documents, you should identify the paragraph, question number or request number in the Committee's request to which the documents respond.

9. It shall not be a basis for refusal to produce documents that any other person or entity   either inside or outside of the executive branch   also possesses non-identical or identical copies of the same documents.

10. If any of the requested information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), the agency's staff should consult with the Committee staff to determine the appropriate format in which to produce the information.

11. If compliance with the request cannot be made in full, compliance shall be made to the extent possible and shall include a written explanation of why full compliance is not possible.

12. In the event that a document or portion of a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document or redaction  (a) the privilege asserted  (b) the type of document  (c) the general subject matter  (d) the date, author, and addressee  and (e) the relationship of the author and addressee to each other.

13. If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

14. If a date or other descriptive detail set forth in this request referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or other agency employees, or is otherwise apparent from the context of the request, you should produce all documents which would be responsive as if the date or other descriptive detail were correct.

15. The time period covered by this request is included in the attached request. To the extent a time period is not specified, produce relevant documents from January 20, 2021 to the present.

16. This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data or information, not produced because it has not been located or discovered by the return date, shall be produced immediately upon subsequent location or discovery. Such submission shall include an explanation as to why the information was not produced originally.

17. All documents shall be   ates-stamped sequentially and produced sequentially.

18. If physical documents are to be delivered, two sets of documents should be delivered, one set to the Majority Staff in Room 2176 of the Rayburn   ouse Office   uilding and one set to the Minority Staff in Room 2101 of the Rayburn   ouse Office   uilding during Committee office hours (9am-5pm, unless other arrangements are made) and signed by members of the respective staffs upon delivery.

19. Upon completion of the document production, the agency's written response should include a written certification, signed by the Secretary or his or her designee, stating that  (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents  and (2) all documents located during the search that are responsive have been produced to the Committee.

20. If the agency does not expect to produce all documents responsive to this letter by the date requested, the agency's staff shall consult with the Committee as soon as it is known the agency cannot meet the deadline, but no later than 24 hours before the due date to explain (1) what will be provided by the due date, (2) why the agency believes certain materials cannot be produced by the due date, and (3) the agency's proposed timeline for providing any omitted information.

21. The agency's response to questions and request should be answered or provided in separate document and not included inside a narrative response.

## Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following  memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, maga ines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utili ed, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, email, regular mail, telexes, releases, or otherwise.

3.  The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

4.  The terms "person" or "persons" mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

5.  The term "identify," when used in a question about individuals, means to provide the following information  (a) the individual s complete name and title  and (b) the individual s business address and phone number.

6.  The term "referring or relating," with respect to any given subject, means anything that constitutes, contains, embodies, reflect s, identifies, states, refers to, deals with or is pertinent to that subject in any manner whatsoever.

7.   The term "agency" means any department, independent establishment, or corporation of the federal government. For the purposes of responding to oversight requests, the Committee expects information to be provided from all sub-agencies of an agency and not just the information that is immediately available to the addressee or the addressee's immediate sub-agency.

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3

4   THE CENTER FOR INVESTIGATIVE              ) Case No. 22-cv-07182-WHA
    REPORTING and WILL EVANS,                 )
5                                             )
                 Plaintiffs,                  ) **DECLARATION OF HELENE BAXTER IN**
6                                             ) **SUPPORT OF DEFENDANT DEPARTMENT**
           v.                                 ) **OF LABOR'S MOTION FOR SUMMARY**
7                                             ) **JUDGMENT**
    UNITED STATES DEPARTMENT OF               )
8   LABOR,                                    )
                                              )
9                Defendant.                   )
                                              )
10  _____      )

11

12          I, Helene Baxter, state as follows:

13          1.      I am Vice President, Corporate Employment Counsel for Universal Services of America,

14  LP d/b/a Allied Universal Security Services ("Allied Universal").  I submit this declaration in support of

15  the United States Department of Labor's ("DOL's") Motion for Summary Judgment in the above-

16  captioned matter.  I have personal knowledge of the following facts and if called to testify, I could and

17  would competently testify thereto.

18          2.      My position of Vice President, Corporate Employment Counsel involves the national

19  oversight and handling of legal and compliance matters that affect Allied Universal's employees,

20  employment practices, regulatory employment issues (including issues arising from Allied Universal's

21  status as a federal contractor), and the handling of employee disputes. I previously worked for a

22  company acquired by Allied Universal called G4S Secure Solutions where I worked in the position of

23  Senior Counsel, which involved similar duties. I was elevated to Vice President soon after joining Allied

24  Universal. Working in the position of Vice President, Corporate Employment Counsel for Allied

25  Universal provides me with direct knowledge of and insight on Allied Universal's business and

26  employment practices as well as the legal and practical issues and concerns relating to the potential

27  disclosure of its EEO-1 Type 2 reporting via the Freedom of Information Act ("FOIA"), as well as

28

1  knowledge of and insight on the potential harms that would likely result from such disclosure.

2      3.      Allied Universal, which originally began doing business (under a prior corporate name)

3  in 1957, is the nation's largest provider of security guards and related services and is one of the largest

4  employers in the United States.  Allied Universal is headquartered in Irvine, California and services all

5  50 U.S. states in addition to maintaining global operations. Allied Universal is not a publicly traded

6  company. In addition to providing security guards and related services for commercial customers and

7  operations, Allied Universal further provides specialized security guards and related services for critical

8  sites and infrastructure, such as those involving aviation, aerospace and defense, chemical and

9  petrochemical, energy and utility, government, judicial, maritime, port authority, and financial sites and

10  operations throughout the country.

11      4.      Given its numerous and ongoing federal contracts with various agencies, Allied

12  Universal, as an employer, is subject to Executive Order 11246 and its implementing regulations. Allied

13  Universal (along with its acquired company, G4S Secure Solutions) maintained this status during the

14  period of 2016 to 2020, as well as in the years preceding and following this period.

15      5.      Allied Universal, having more than 50 employees, is required to submit EEO-1 reports on

16  an annual basis, including EEO-1 Type 2 reports. Notably, Allied Universal submitted EEO-1 Type 2

17  reports to the government during the years 2016 to 2020.

18      6.      In the Fall of 2022, Allied Universal was notified by the DOL's Office of Federal

19  Contractor Compliance Programs ("OFCCP") of the FOIA request involving its EEO-1 Type 2 reporting

20  that underlies the above-captioned litigation. As will be detailed, Allied considers its EEO-1 Type 2

21  reports, as well as the employment data underlying those reports, to constitute important commercial

22  information that it treats as strictly confidential.

23      Allied Universal's EEO-1 Reports are Commercial Information

24      7.      Allied Universal considers its EEO-1 Type 2 reports, as well as the employment data

25  underlying those reports, to be commercial information given the significant relation of the underlying

26  data to Allied Universal's business model, profitability, and strategic planning. As noted above, Allied

27  Universal is a significant security guard provider within the United States. Despite having a very large

28  workforce, Allied Universal does not manufacture any products nor does it engage in financial services

1  or banking. Instead, Allied Universal's business, and the business of most security guard providers, is

2  almost entirely focused on staffing. In other words, Allied Universal's primary "product" is the staff it

3  employs and mobilizes to provide security guard services at thousands of locations across the United

4  States. As a result, Allied Universal's human capital represents its core commercial asset and provides

5  the basis for its overall revenue and profitability as a business concern.

6        8.    The most important financial metric with respect to Allied Universal's security guard

7  business is the "guard hour," which equates to one (1) hour of security guard time on the customer's site.

8  Allied Universal's customer contracts are almost universally based on the provision of a certain number

9  of guard hours per day, week, and/or month. Allied Universal's ability to supply its product—guard

10  hours—is a direct function of the number of security guards it employs.  The guard hours are typically

11  multiplied by a negotiated "bill rate," with the product of this equation representing Allied Universal's

12  gross revenue per contract. The staffing of employees to work guard hours results in the vast majority of

13  Allied Universal's revenue. Likewise, the staffing costs Allied Universal expends per guard hour

14  represent Allied Universal's primary operating expense. Given these facts, Allied Universal's

15  headcount, staffing strategies, and adjustments to its employee headcounts in different job categories (in

16  order to minimize its overall labor costs per guard hour), constitute essential business factors affecting

17  nearly all of the commercial transactions that Allied Universal engages in.

18        9.    Given the nature of this business and commercial model, Allied Universal's relative skill

19  in staffing its security guards at different customer sites, hiring and efficiently maintaining the total

20  number of security guards needed to staff its customers' sites, and forecasting staffing fluctuations and

21  needs (both locally and nationally) are absolutely critical to Allied Universal's commercial profitability.

22        10.    Notably, the EEO-1 Type 2 reports separate employee headcount totals across ten (10)

23  job categories. Given that Allied Universal's primary business is the provision of security guards and

24  related services, a large majority of its employee headcount total is obviously comprised of individuals

25  working in security guard positions.[1] All of these security guard positions fall within EEO-1 job

26

27  ──────────────────

28  [1] For the reasons discussed herein, Allied Universal cannot, in this publicly filed document, disclose the precise ratio of its total employees versus those working in security guard positions, as it treats such information as confidential commercial data.

1    category 9, "Service Workers," which means the disclosure of Allied Universal's headcount by job

2    category – as is detailed in its EEO-1 Type 2 reporting – would reveal this critical staffing metric.

3         11.    As noted above, security guard (EEO-1 job category 9, "Service Worker") positions are

4    those that directly produce most of Allied Universal's revenue based on guard hours worked. In this

5    structure, Allied Universal's employment of administrators (EEO-1 job category 6, "Administrative

6    Support"), managers (EEO-1 job category 2, "First/Mid. Officials & Managers"), and executives (EEO-

7    1 job category 1, "Executive/Sr. Officials & Managers") that administer, manage, and oversee its

8    security guard operations reflect Allied Universal's employment costs that are attributable to either

9    client support operations or overhead. Allied Universal's ability to staff these client support and

10   overhead positions in an efficient and strategic manner directly impacts on its profitability and staffing

11   methodologies. Such ratios are constantly monitored by Allied Universal and adjusted in a strategic

12   manner where necessary as they directly impact and reveal Allied Universal's profit potential and the

13   cost impact of its current staffing approach. As such, the ratios Allied Universal maintains between

14   security guard positions and client support and overhead positions constitutes key commercial

15   information in light of Allied Universal's business model.

16        12.    Diversity, inclusion, and equity are core values that are promoted and supported

17   throughout Allied Universal's organization. One of the key areas of focus for Allied Universal in this

18   area is the hiring, promotion, and advancement of women employees. Historically, women have been

19   significantly underrepresented in the security guard services industry.  To counteract this situation,

20   Allied Universal has spent a tremendous amount of time and resources on numerous initiatives,

21   programs, and efforts to recruit and advance women candidates into upper-level positions, both in local

22   areas and nationally. These efforts are reflected in the composition data in the EEO-1 report and in the

23   year-to-year comparisons.  Allied Universal views such efforts as critical to its growth, its ability to

24   enter and succeed in emerging markets, and critical to its overall performance and strategic business

25   planning. Given this importance, Allied Universal, separate and apart from any requirement arising from

26   EEO-1 reporting obligations, tracks and monitors its headcounts of women and minority employees

27   across different job types and levels and considers this data to be key to its commercial success.  Such

28   information is key given that there is significant competition in the security services industry around the

1    recruiting and retention of women candidates, for which there is already a shortage in the industry.

2         13.    In the course of creating and maintaining its valuable commercial information, Allied

3    Universal keeps and tracks employee headcount information by job category for purposes other than

4    completing its required EEO-1 reporting. As outlined above, this staffing data is the most critical

5    component of Allied Universal's business model and is key to its revenues and profitability.  This data is

6    also used in allocating recruiting resources and in both local and national business planning efforts.

7    Likewise, given the central nature of employee diversity data to Allied Universal's core values, such

8    information directly underlies its overall business planning and strategy. Further, as noted, Allied

9    Universal would create and maintain data on employee race/ethnicity and sex by job category even if the

10   EEO-1 reporting requirement did not apply. For example, data on female headcount by job category is

11   an important metric that Allied Universal monitors in order to adjust its recruiting and outreach

12   strategies for women candidates, which are extensive.

13   <u>Allied Universal Customarily and Actually Maintains the EEO-1 Reports as Confidential</u>

14   <u>Records</u>

15        14.    Given that Allied Universal's EEO-1 Type 2 reports and the data underlying such reports

16   have significant commercial value to Allied Universal, the company takes numerous steps to maintain

17   their strict confidentiality.

18        15.    Some very general headcount information, such as the approximate number of its United

19   States employees is publicly confirmed by Allied Universal. However, Allied Universal does not make

20   its employee headcount by job category data public in any forum – this information is not disclosed

21   publicly by Allied Universal.

22        16.    I am further unaware of any other company in Allied Universal's industry that publishes

23   or voluntarily discloses its EEO-1 reports in any fashion, or that otherwise voluntarily publishes

24   employee headcount totals by job category. In my experience, information regarding staffing levels of

25   security guards and other critical positions is typically closely guarded within the security guard

26   industry.

27        17.    All of Allied Universal's "raw" employment-related data that underlies its EEO-1 reports

28   is stored in a highly-secure Human Resources Information System ("HRIS"). Access to the HRIS is

1  limited to specific designated users by the Company and can only be accessed with secure logins and

2  passwords that are maintained and issued by its IT staff. Such credentials include two-factor

3  authentication, regulated permission levels, and IT monitoring, as well as IT/cyber security initiatives.

4  These systems are subject to periodic IT security audits.

5       18.  The high-security storage used for the data underlying Allied Universal's EEO-1 reports

6  is maintained and monitored by Allied Universal's Shared Services department. There are only

7  approximately two (2) individuals in the Shared Services department with complete access to all levels

8  of employment data. Resulting reports and data compilations are restricted to the Vice President and

9  Executive levels of corporate management, which are individuals with defined "Level 8 - Higher Level"

10 security permissions.  Allied Universal further strictly limits employee access to the electronic account

11 through which its EEO-1 reports are uploaded and transmitted to the government to Executive-level

12 Human Resources officials.  All employees with access to these records understand that they are

13 confidential and must be treated as such.

14      19.  Allied Universal has also implemented numerous policies that serve to restrict the

15 disclosure of its confidential and proprietary commercial and informational assets, such as the

16 employment data underlying its EEO-1 reports. For example, the Company has issued an employee

17 handbook to its administrative workforce (the "Handbook") that contains numerous provisions regarding

18 the handling of confidential and/or proprietary Company information and data.

19      20.  The issue of confidentiality of Company information, such as EEO-1 data, is dealt with

20 extensively in the Handbook's section on "Maintaining Confidentiality." As stated therein,

21     All employees must treat any information relating to the business of Allied Universal®

22     and any of its activities, projects, or customers as confidential. Employees may not

23     divulge any of this information to non-employees, including family and friends, without

24     the prior written consent of the Regional President. All such information must be kept

25     completely confidential during, and subsequent to, employment with Allied Universal.

26      21.  Information subject to the above policy is defined to include "confidential information or

27 any other information of a secret, proprietary, or generally undisclosed nature *relating to the company,*

28 or its services, customers, *employees*, plans or procedures" (emphasis added). This definition is clearly

1    intended to include records that would reveal valuable commercial information, such as headcount data

2    by job category and employee diversity information by job category, in addition to the EEO-1 reports

3    that may result from such information. This is particularly true given Allied Universal's actual and

4    consistent practice of treating such information as strictly confidential pursuant to its policies.

5         22.    The Handbook further provides that, while employees are not restricted from sharing

6    information about their own employment and the terms and conditions thereof, "employees who have

7    access to confidential information about other employees or applicants as part of their essential job

8    functions cannot disclose this information to individuals who do not otherwise have access to it," unless

9    a legally protected ground for disclosure applies. "Such protected information includes . . . sensitive

10   employee information." "Sensitive employee information" inherently includes headcount data by job

11   category and employee diversity information by job category, in addition to the EEO-1 reports that may

12   be derived from such information.

13        23.    In order to aid its employees in understanding and abiding by its policies on confidential

14   information, the Handbook contains a list of required practices concerning "Maintaining Personnel

15   Records and Confidential Information." With respect to such records, the Handbook notes that the

16   "Company will *safeguard them from disclosure* and will divulge such information only as permitted or

17   required by any applicable federal or state law" (emphasis added). These records are further

18   characterized as "the property of the Company." Likewise, in its "Guidelines for Utilizing Social

19   Media," employees are directed to "not disclose any Company or Customer confidential or proprietary

20   information." Further, in the Handbook's section on "Voicemail, Email, and Computer Files,"

21   employees are instructed that "Company confidential or proprietary information should not be

22   transmitted via these systems outside the organization or even to Employees within the organization

23   unless such recipients are authorized to receive such information."

24        24.    Given these stringent confidentiality measures, policies, and its actual practices, Allied

25   Universal clearly treats its EEO-1 reports and the employee information underlying such reports as

26   strictly confidential. Such efforts have been successful thus far, as I am not aware of any instances of

27   such reports or data being improperly disclosed or made public.

28        <u>Allied Provided the EEO-1 Reports to the Government with Express and Implied Assurances of</u>

DECLARATION OF HELENE BAXTER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                                    7     ER-369

Confidentiality

25.     Allied Universal maintains that it has been provided with both express and implied assurances of confidentiality with respect to the information that Allied Universal has submitted in its EEO-1 reporting.

26.     When Allied Universal submitted the EEO-1 reports at issue in the above-captioned case, the Joint Reporting Committee advised Allied Universal that the data will be protected to the maximum extent permitted by law.  Specifically, at that time, the EEO-1 instruction booklet stated: "OFCCP will notify contractors of any Freedom of Information Act (FOIA) requests that are made to obtain any of the data provided on the EEO-1 report and *will protect the confidentiality of EEO-1 data to the maximum extent possible* consistent with FOIA and the Trade Secrets Act" (emphasis added). Allied Universal has reasonably considered the OFCCP's promise that it will "protect the confidentiality of EEO-1 data to the maximum extent possible" as definitively expressing an assurance of confidentiality with respect to the EEO-1 reporting provided by Allied Universal. Allied Universal relies on this assurance when submitting its EEO-1 data.

27.     Further, Allied Universal has relied on the fact that Section 709(e) of Title VII of the Civil Rights Act of 1964 imposes criminal penalties and makes it unlawful for any officer or employee of the Equal Employment Opportunity Commission ("EEOC") to make the employment data derived from any of its compliance surveys public prior to the institution of any proceeding under the EEOC's authority involving such information. Allied Universal understands that the EEOC and OFCCP jointly collect the EEO-1 data through the EEO-1 Joint Reporting Committee. From Allied Universal's perspective, because the EEO-1 Joint Reporting Committee is housed at the EEOC, Allied Universal submits its EEO-1 reporting to the EEOC as a practical matter. These facts create a baseline assumption, on which Allied Universal has relied, that the employment data provided by employers in the EEO-1 process will be subject to protection from ultimate disclosure by the government as well as express and implied assurances of confidentiality to employers such as Allied Universal. The OFCCP's potential disclosure of such data via the FOIA process effectively upends this reasonable assumption.

28.     Moreover, under the DOL regulation at 29 CFR § 70.26, the OFCCP has engaged in a practice of informing EEO-1 submitters and providing them with an opportunity to object when such

1    reporting becomes subject to a FOIA request. This regulation and the OFCCP's practice further creates

2    an implied assurance of confidentiality from the OFCCP, as such notification is only required when the

3    agency believes that the information is protectable as confidential and would serve no purpose unless

4    there was some baseline assumption and assurance of confidentiality.

5        Allied Universal's Commercial and Economic Interests Would be Harmed by the Release of its

6    EEO-1 Type 2 Data

7        29.    As noted herein, Allied Universal is a federal contractor whose EEO-1 Type 2 data could

8    be subject to disclosure in this case. However, many other companies in the security guard industry,

9    both in local markets and nationally, are not federal contractors. As such, their EEO-1 Type 2 data

10   would remain protected and would not be subject to disclosure as a result of this case. If disclosure of

11   the EEO-1 Type 2 data is ordered in this case, such a ruling would create a patently unfair dynamic that

12   would impact Allied Universal, and potentially open its valuable commercial information up to its

13   competitors but would not impact its competitors that are not federal contractors. This would allow

14   competitors to unilaterally scrutinize and evaluate Allied Universal's workforce data. The end result of

15   this dynamic effectively creates an intra-industry penalty that would be borne as a result of Allied

16   Universal's decision to do business with the federal government. Such disincentives would have to be

17   taken into account in future business decisions involving federal contracting and could dissuade Allied

18   Universal from engaging in federal contracting in the future.

19       30.    As outlined herein, the employee headcount by job category and employee diversity

20   information by job category data as contained in Allied Universal's EEO-1 Type 2 data provides

21   valuable commercial insight into Allied Universal's primary profit center: its staffing of security guards

22   and how it structures its workforce, including key ratios between categories of employees. Allied

23   Universal's competitors could easily measure Allied Universal's total security guard staffing capability

24   and capacity, as well as its near-term security guard forecasting and strategy, from this information. This

25   is particularly true given that the "Service Workers" job category would effectively reveal, to a precise

26   degree, the total number and scale of Allied Universal's security guard workforce. Moreover, the EEO-1

27   Type 2 data would also reveal how Allied Universal balances its profit center employees with its client

28   support and overhead-related employment costs. Such ratios provides a key metric whereby a competitor

1   could easily ascertain or estimate Allied Universal's confidential internal business structures and cost

2   information.

3         31.    In addition, the disclosure of race/ethnicity and sex data by job category information

4   would also reveal Allied Universal's successes in the critically competitive area of female and minority

5   recruitment and advancement, particularly given the historical underrepresentation of such groups in the

6   security industry, and the resulting high level of competition for such candidates.

7         32.    The disclosure of Allied Universal's EEO-1 Type 2 reporting would further harm Allied

8   Universal given that such disclosure would effectively constitute the disclosure of Allied Universal's

9   valuable commercial trade secrets and other information protected by the Trade Secrets Act. Under 18

10   U.S.C. § 1905, the government's ability to disclose certain trade secret information is specifically

11   limited where such information

12         [C]oncerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to

13         the identity, confidential statistical data, amount or source of any income, profits, losses, or

14         expenditures of any person, firm, partnership, corporation, or association . . . .

15   *See* 18 U.S.C. § 1905. Based on the facts outlined herein, this definition clearly encompasses Allied

16   Universal's employee headcount information by job category and employee diversity information by job

17   category as expressed in its EEO-1 Type 2 reports. This is because such information is "confidential

18   statistical data" and because it also reveals the "amount or source of any income, profits, losses, or

19   expenditures of any person, firm, partnership, corporation, or association," given the importance of this

20   information to Allied Universal's revenue and profitability potential. Given that such information

21   constitutes a protected trade secret of Allied Universal for 18 U.S.C. § 1905, no disclosure should be

22   permitted.

23         33.    Finally, if the OFCCP is required to disclose the EEO-1 Type 2 reports that Allied

24   Universal provided as a federal contractor, such an action could strain potential cooperative ties between

25   Allied Universal and the agency in the future. In addition to regulatory compliance reviews and other

26   oversight interactions between the OFCCP and Allied Universal, the company has also previously

27   engaged in various programs, educational efforts, and related initiatives with the OFCCP on a voluntary

28   basis. The OFCCP routinely touts the availability and effectiveness of such measures, and Allied

1   Universal has had good results in its prior participation. Requiring the OFCCP to disclose Allied

2   Universal's EEO-1 reports would not further future voluntary interactions of this nature, and in fact may

3   dissuade Allied Universal from such voluntary participation in the future.

4   I declare under penalty of perjury under the laws of the United States that the foregoing is true

5   and correct.

6   Executed this 16th day of August, 2023, at Palm Beach County, Florida.

7

8

9   HELENE BAXTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3 UNITED STATES DISTRICT COURT

4 NORTHERN DISTRICT OF CALIFORNIA

5

| | |
|---|---|
| 6 THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS, | ) Case No. 22-cv-07182-WHA |
| 7 | ) |
| Plaintiffs, | ) **DECLARATION OF JACK JASINOWSKI IN** |
| 8 | ) **SUPPORT OF DEFENDANT DEPARTMENT** |
| v. | ) **OF LABOR'S MOTION FOR SUMMARY** |
| 9 | ) **JUDGMENT** |
| UNITED STATES DEPARTMENT OF | ) |
| 10 LABOR, | ) |
| 11 | ) |
| Defendant. | ) |
| 12 | ) |

13

14 I, Jack Jasinowski, state as follows:

15 1. In support of the United States Department of Labor's Motion for Summary Judgment in

16 the above captioned matter, with personal knowledge of the matters below and competent to testify, I

17 submit the following declaration.

18 2. For the last 30 years I have worked at Brandenburg Industrial Service Co. in a variety of

19 roles. However, for the last 22 years I have been a Corporate Officer with the Company.

20 3. As a Corporate Officer I manage and oversee the complete range of business activities,

21 including Human Resources, for more than 800 union and non-union employees, nationwide.

22 Specifically, my oversite responsibilities include (1) Commercial and Project Management (2) Safety

23 and Environmental (3) Human Resources, which includes working with our Human Resource Manager

24 to (a) manage all training and records for Brandenburg methods, policies, safety, and quality programs,

25 (b) recruit, hire, and evaluate employee performance, including progressive discipline and terminations,

26 (c) manage drug screens and background check compliance, (d) manage employee benefits and DOT

27 compliance for all union and non-union employees, (e) delegate Brandenburg's Human Resource

28 Manager to serve as EEO Coordinator, (f) oversee the maintenance of all medical and training records,

DECLARATION OF JACK JASINOWSKI IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                        1     ER-374

licenses, and renewals for all employees, (g) assist in the development, implementation, and perform regular reviews of corporate standard operating procedures, and (h) oversee and review all prepared and submitted records for all Federal, State, and Local permits and plans, and review all prepared and submitted required notifications to government agencies.

4.      During my 30 year tenure at Brandenburg, I have developed a keen knowledge regarding Brandenburg's operations, its position in the industry and the market in which we operate, and its business policies and practices. This includes understanding Brandenburg's business structure, workforce, competitors, data and document retention practices. As part of my job responsibilities described above, I have personal knowledge of the facts in this declaration, as I am also responsible for overseeing the collection of data, filing, and maintaining the confidentiality of, Brandenburg's annual EEO-1 Reports.

5.      Brandenburg is one of the nation's premier firms specializing in demolition and environmental remediation, which includes asbestos abatement, hazardous material removal, soil remediation, asset recovery, and site preparation.

6.      With approximately 800 employees in the United States, Brandenburg completes over 200 projects on an annual basis for a wide spectrum of customers, including small businesses and elite Fortune 500 companies.  These customers represent many industries including automotive, chemical, commercial, entertainment, industrial, institutional, mining, nuclear and fossil power generation, oil and gas, pharmaceutical and steel production.  Brandenburg's proven track record, combined with an impressive safety program, has made the Company the number one choice among the most demanding organizations.

7.      During the years 2016 through 2020, Brandenburg was a federal contractor and was subject to EEO-1 reporting requirement.  Brandenburg submitted EEO-1 Type 2 reports during each of those years.

8.      Brandenburg learned in October of 2022 that the U.S. Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") had received a Freedom of Information Act (FOIA) request from a reporter, for the disclosure of all federal contractors' Type 2 EEO-1 Reports for 2016-2020.

9.      Brandenburg considers these documents to be confidential, commercial documents, and notified OFCCP in writing on October 19, 2022, that it objected to the release of its requested 2016-2020 EEO-1 Reports.

10.     Due to the size and unique nature of Brandenburg's business operation, disclosure of Brandenburg's 2016-2020 EEO-1 Reports would provide information regarding the size and specific structure of the Company's workforce. It would also reveal the staffing strategies and patterns the Company uses to be successful, and its business evolution from 2016 to 2020.

11.     Brandenburg is unaware of any competitors that disclose their EEO-1 Reports or EEO-1 demographic data, or that have disclosed such data for the period in question.

12.     Brandenburg does not know whether its competitors are OFCCP-covered federal contractor, and/or whether they may also be subject to this EEO-1 disclosure request. If they are not, and Brandenburg were compelled to disclose such data, Brandenburg would be subject to an unfair disadvantage compared to its non-federal contracting counterparts.

13.     To elaborate, Brandenburg has invested time and resources to determine and achieve the proper staffing levels needed to not only develop, but also grow and sustain, its business. The Type 2 EEO-1 Reports disclose those staffing levels, which is commercially valuable – and heretofore unpublished -- information. They provide a detailed breakdown of how Brandenburg stratified its workforce, including how many leaders (EEO Categories 1.1 and 1.2) are required to oversee Brandenburg's business functions. The comprehensive data in the Type 2 Reports also reflects how many employees in the other EEO-1 Occupational Categories (Professionals, Technicians, Sales Workers, Administrative Support Workers, Craft Workers, Operatives, Laborers and Helpers, and Service Workers) are required for Brandenburg to operate at peak efficiency and effectiveness.

14.     As the demolition and environmental remediation industry continues to evolve, Brandenburg has composed a workforce to evolve with it by organizing a workforce structure that allows the company to not only run well, but to embrace industry changes. The organization-wide employment numbers contained in the Type 2 EEO-1 Reports specifically show reflect Brandenburg's judgment as to how it can best allocate its workforce to have a well-run, profitable, and efficient business.

15.     Any release of this private organizational structure that is reflected in the Type 2 reports would be commercially valuable information to competitors, and could cause significant harm to Brandenburg.

16.     The Type 2 EEO-1 Reports also provide insights into Brandenburg's recruitment and retention strategies in a niche industry with intense and increasing competition for recruiting and retaining talent.  While the period of 2016-2020 is in the past, many of its employees remain the same, and the reports thus yield valuable current information.  And, of course, if the 2016-2020 reports are disclosed, this opens the door for the release of future/current reports also.

17.     Given the competitive nature of the demolition and environmental remediation industry, and the harm that would result if competitors raid its employees, Brandenburg keeps and has kept its EEO-1 information private. Brandenburg has systems in place, and takes necessary proactive measures, to protect its staffing strategies and its personnel decisions. These proactive measures were also in effect throughout 2016-2020.   This is because, if a competitor gained access to Brandenburg's EEO-1 data, the competitor would know how to inflict targeted harm on Brandenburg by soliciting certain employees for poaching/employment.  For instance, if the EEO-1 Report reveals a small number of workers in a certain EEO-1 category -- sales, technicians, etc. -- a competitor could try to impede Brandenburg's operations, by focusing its recruitment efforts on those individuals.

18.     Among the data protection practices in place is limiting access to Brandenburg's 2016-2020 EEO-1 Reports to individuals with a direct need to access the information in connection with their job duties at the Company. Of the roughly 800 employees in the Company, only four people, Corporate Officers and Human Resource Manager  positions with a need to know the information, have access to Brandenburg's EEO-1 Reports. This equates to less than 1% of the entire workforce. Those employees with access are aware and expressly informed of the confidential nature of the EEO-1 Reports.  The remaining 99.5% of employees at Brandenburg cannot access EEO-1 data.  It is blocked and secured through data protection measures in the Company's HRIS system.

19.     In addition, Brandenburg is committed to confidentiality, on its own behalf and that of its employees, with regard to voluntary self-identification information.  The Company takes the privacy of its employees seriously, and works to earn and maintain their trust. When employees are invited to

DECLARATION OF JACK JASINOWSKI IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                          4    ER-377

voluntarily respond to self-identification forms, which inquire about their gender, ethnicity and race, those invitations specifically say that any information provided by the employee will be kept confidential, and "will only be used in ways that are consistent with the law," to satisfy Brandenburg's governmental reporting and recordkeeping requirements. Once an employee provides this personal information to the Company, it is entered and stored into the system of record. Access is then strictly limited to the few personnel described above.

20. As part of its commitment to the confidentiality of its employees, Brandenburg has not publicly disclosed its 2016-2020 EEO-1 Reports. The Company has not otherwise released demographic details about its employees and workforce to the public.

21. Disclosing Brandenburg's 2016-2020 EEO-1 Reports unnecessarily risks the privacy of individual employees. During the 2016-2020 reporting timeframe, three of Brandenburg's EEO-1 categories had fewer than 10 employees. This makes it possible for colleagues, competitors, and the general public to discover the race and gender of specific individuals, and those individuals would have no control over their very personal identities being disclosed.

22. Further, releasing the EEO-1 Reports under these circumstances could have a chilling effect on EEO and affirmative action efforts. Employees rely on their employer's assurance of confidentiality when they self-disclose their gender, race or ethnicity. If that protection goes away, employees may become unwilling to share such details about themselves. They will be less likely to self-identify going forward, which will yield less accurate and more incomplete data for AAP and diversity purposes. That would have a direct, immediate, negative impact on the goals and enforcement priorities of the EEOC and OFCCP. It could similarly hinder Brandenburg's efforts to advance, develop, and maintain a diverse workforce.

23. Brandenburg relies on, and from 2016-2020 relied upon, the EEOC's and OFCCP's express and implied assurances of confidentiality when submitting its EEO-1 Reports. The EEO-1 Instruction Booklet states:

> "All reports and any information from individual reports are subject to the confidentiality provisions of Section 709(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-8(e), as amended (Title VII) and may not be made public by the EEOC prior to the institution of any proceeding under Title VII involving the EEO-1 Component 1 data. Any

1      EEOC employee who violates this prohibition may be found guilty of a
2      criminal misdemeanor and could be fined or imprisoned."

3      24.     It has been Brandenburg's fair and legitimate expectation that the EEOC and OFCCP will

4  treat its EEO-1 reports as confidential, to the greatest extent permitted by law, and will only be used in

5  connection with the administration of EO 11246 and Title VII.

6      25.     Disclosure of Brandenburg's EEO-1 Reports could readily cause foreseeable harm to

7  Brandenburg's economic and business interests, by allowing competitors to analyze the Company's

8  workforce trends over a five year period.  This could disclose patterns and notable changes within the

9  Company, and provide valuable insights into the direction of Brandenburg's business strategy.

10 Specifically, the EEO-1 reports would show competitors and the public the fluctuations in headcount

11 that Brandenburg experienced between 2016 and 2020.  They would similarly reveal which occupational

12 categories experienced the most change. Competitors could use this information to gain a commercial

13 advantage over Brandenburg, and to frustrate and hinder its business growth.

14     26.     Through the staffing numbers and trends reflected in the EEO-1 data, competitors could

15 see when and how Brandenburg increased its headcount, and in what job categories, for significant

16 projects that may have been publicly announced by Brandenburg at the time.  Competitors could then

17 use this information to refine and implement its own, similar, staffing strategies and workforce structure.

18 Reviewing EEO-1 data could also enable competitors to identify how many employees are needed in

19 each occupational category, to run its business successfully, profitably and efficiently in this highly

20 competitive industry.  Such actions could deprive Brandenburg of the strategic advantages it has

21 cultivated and result in both competitive and commercial harm.  If this results in a decrease in business

22 for Brandenburg, it could also in job loss, leaving fewer employment opportunities at the Company.

23 This would not just affect Brandenburg the entity; it could negatively affect its employees and

24 surrounding communities.

25     27.     While Brandenburg is commited to diversity and inclusion, it can be difficult to find

26 diverse candidates for certain positions within its industry, which is focused on demolition,

27 environmental remediation, and hazardous material removal. Without knowing how the Company

28

compares to its competitors, critics could use Brandenburg's EEO-1 Reports to create a narrative that presents Brandenburg in a negative light – such as by citing job categories with less diversity as an ostensible indication that the Company is not engaging in sufficient affirmative action and DEI efforts. Armed with such imprecise information, competitors and other stakeholders could make inaccurate (even incorrect) assumptions… assumptions that do not actually reflect Brandenburg's philosophies the diversity efforts or progress the Company has made.

28.    Although Brandenburg has provided workforce demographic data to the EEOC, as required by its EEO-1 reporting obligations, the Company objects to the disclosure of this commercially valuable, competitively useful, and highly sensitive, information for the 2016 to 2020 reporting periods.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 18th day of August, 2023, at Elmhurst, Illinois.

*Jack Jasinowski*

_____

JACK JASINOWSKI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS, | ) Case No. 22-cv-07182-WHA |
| Plaintiffs, | ) **DECLARATION OF JOSHUA BARCON IN SUPPORT OF DEFENDANT DEPARTMENT OF LABOR'S MOTION FOR SUMMARY JUDGMENT** |
| v. | ) |
| UNITED STATES DEPARTMENT OF LABOR, | ) |
| Defendant. | ) |

I, Joshua Barcon, state as follows:

1.      I am a Senior Legal Analyst, Labor & Employment, at DHL Global Business Services ("DHL").  I submit this declaration in support of the United States Department of Labor's Motion for Summary Judgment in the above-captioned matter.  I have personal knowledge of the following facts and if called to testify, I could and would competently testify thereto.

2.      As a Senior Legal Analyst, I am responsible for collecting data and filing DHL's annual EEO-1 Reports, handling small claims matters, investigating and responding to charges of discrimination, managing DHL's ADA and FMLA programing, and providing employment litigation support.  I have been a Senior Legal Analyst at DHL for twelve years.  I have personal knowledge of the facts in this declaration, as I am responsible for collecting data and filing DHL's annual EEO-1 Reports, and I am familiar with DHL's efforts to maintain the confidentiality of its EEO-1 Reports.

3.      DHL is the leading global brand in the logistics services industry. DHL offers an unrivalled portfolio of logistics services ranging from national and international parcel delivery, ecommerce shipping and fulfillment solutions, international express, road, air and ocean transport to industrial supply chain management.  DHL connects people and businesses securely and reliably,

1 enabling global sustainable trade flows.  DHL also provides specialized solutions for growth markets

2 and industries including technology, life sciences and healthcare, engineering, manufacturing & energy,

3 auto mobility and retail.

4      4.     DHL has over 600,000 employees worldwide, with approximately 18,000 employees in

5 the United States.  During 2016 to 2020, DHL was a federal contractor and submitted EEO-1 Reports

6 during those years.

7      5.     In August 2022, DHL was notified by the Office of Federal Contract Compliance

8 Programs ("OFCCP") that it received a Freedom of Information Act (FOIA) request for the disclosure of

9 all federal contractors' Type 2 EEO-1 Reports for the years 2016-2020.  DHL considers these

10 documents to be confidential, commercial documents and notified OFCCP in writing on October 18,

11 2022 that it objected to the release of its EEO-1 Reports.

12      6.     DHL's Type 2 EEO-1 Reports contain information regarding the size and specific

13 structure of DHL's workforce, and year-over-year data reveals its business evolution over the course of

14 five years.

15      7.     The organizational structure of DHL's workforce is private, commercially valuable

16 information that reveals the staffing levels DHL has determined are necessary to maintain and grow the

17 business. The Type 2 EEO-1 Reports provide a detailed breakdown of how DHL stratified its workforce,

18 including essential, unpublished details, such as how many Executive/Senior Level Officials and

19 Managers are required to oversee DHL's business functions. The comprehensive data in the Type 2

20 Reports also reflects how many First/Mid Level Officials and Managers, Professionals, Technicians,

21 Sales Workers, Administrative Support Workers, Craft Workers, Operatives and Service Workers are

22 required for DHL to operate efficiently and effectively.

23      8.     DHL has been constantly evolving to stay competitive and to be a leader in the logistics

24 services industry, and its workforce structure and composition has had to evolve along with it.  The way

25 DHL organizes its workforce year over year is a direct result of its substantial effort and innovation in

26 devising ways to make the company run effectively with the changing times.

27      9.     The organization-wide employment numbers contained in the Type 2 EEO-1 Reports tell

28 more than just the number of employees in each job category. They represent DHL's experience and

1   expertise in the field of workforce structuring.  The way DHL staffed its operations during 2016-2020 is

2   commercially valuable information.  It shows how DHL has determined it should structure its workforce

3   to have a well-run, profitable, and efficient business.

4       10.    The EEO-1 Report data is commercially valuable for DHL's recruitment and retention

5   strategies, as the competition for recruiting and retaining talent is intense.  Having a diverse workforce is

6   beneficial to DHL's commercial success, as it enhances the diversity of thought and perspectives in the

7   organization, helps boost innovation, and leads to the attraction, recruitment, and retention of more

8   diverse employees in the future.

9       11.    DHL customarily keeps its EEO-1 information private, and closely holds it within the

10   Company. DHL has not publicly disclosed its 2016-2020 EEO-1 Reports.  Given the competitive nature

11   of the logistics services industry, DHL has taken necessary measures to protect its staffing strategies and

12   its personnel activities during 2016-2020 to ensure that third parties do not have access to such

13   confidential information in the normal course of business.

14       12.    Access to DHL's 2016-2020 EEO-1 Reports is limited to individuals with a direct need to

15   access the information in connection with their respective positions at the Company. Of the roughly

16   18,000 U.S. employees in the Company, only 20 employees have access to DHL's EEO-1 Reports (*i.e.*,

17   only 0.1% of the workforce).  The limited individuals with access to EEO-1 Reports are those in Legal,

18   Talent Acquisition, and HR leadership positions with a need to know the information. Each of these

19   employees are aware and expressly informed of the confidential nature of the EEO-1 Reports.  For all

20   other employees -- including DHL executives, officials and managers -- access to the EEO-1 data is

21   blocked in the Company's HRIS system via a series of data protection security measures.

22       13.    DHL has taken appropriate steps to protect this information and to ensure that third

23   parties are not permitted to obtain such confidential information in the normal course of business. DHL

24   has not publicly disclosed any EEO-1 Report submitted to OFCCP since 2016, nor has it otherwise

25   released similar demographic information about its U.S. workforce publicly.

26       14.    DHL has also made a promise of confidentiality to its employees. Employees are invited

27   to voluntarily respond to self-identification forms inquiring about their gender, ethnicity and race. These

28   employee communications expressly state that any information provided by the employee will be kept

1    confidential and "will only be used in ways that are consistent with the law," consistent with DHL's

2    governmental recordkeeping and reporting requirements.

3        15.    DHL goes to great lengths to maintain the privacy and trust of its employees. Once the

4    employee provides this personal information -- with an understanding it will be used for government

5    statistical and affirmative action efforts -- it is entered into the system of record and access to the

6    information is strictly limited to the personnel described above.

7        16.    DHL submits its EEO-1 Reports to the EEOC with the understanding that by law, they

8    will not be disclosed to the general public.  DHL is aware of and relies on the EEO-1 Report instruction

9    booklet which states, "All reports and any information from individual reports are subject to the

10    confidentiality provisions of Section 709(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

11    2000e-8(e), as amended (Title VII) and may not be made public by the EEOC prior to the institution of

12    any proceeding under Title VII involving the EEO-1 Component 1 data. Any EEOC employee who

13    violates this prohibition may be found guilty of a criminal misdemeanor and could be fined or

14    imprisoned."

15        17.    DHL likewise expects that OFCCP will treat the EEO-1 reports as confidential to the

16    maximum extent permitted by law, and will only be used in connection with the administration of EO

17    11246 and Title VII.  Consistent with this understanding, DHL was notified by OFCCP that it received a

18    FOIA request for the disclosure of federal contractors' EEO-1 Reports and OFCCP provided DHL the

19    opportunity to submit written objections to having its EEO-1 Reports disclosed.  The notice specifically

20    acknowledged that the requested information may include "confidential trade secret, commercial, or

21    financial information that should be withheld pursuant to FOIA Exemption 4."  Through that notice,

22    OFCCP provided an additional assurance that DHL's EEO-1 Report information will be treated as

23    confidential and withheld to the extent permissible and appropriate under the law.

24        18.    DHL submits its EEO-1 Reports in reliance on the assurances of confidentiality made by

25    the EEOC and OFCCP.

26        19.    Disclosure of DHL's EEO-1 Reports will cause foreseeable harm to DHL's economic

27    and business interests. The demographic details in those Reports would permit the Company's direct

28    competitors to discern its workforce trends. With five (5) consecutive years of staffing data, competitors

DECLARATION OF JOSHUA BARCON IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                              4    ER-384

1   would gain valuable insight into DHL's business strategy and the direction in which DHL is moving,

2   resulting in competitive harm and disadvantage.

3   20.     DHL's presence has expanded in recent years throughout the United States. If released

4   publicly, the specific increase and/or decrease in headcounts from 2016 to 2020 would be available to

5   the public and to its competitors. During the five years in question, DHL experienced year over year

6   growth up to 35% and also experienced a decrease in headcount by over 15%.  The released EEO-1

7   reports would reveal the job categories that experienced the most change from year to year, providing

8   insight into DHL's business strategies and allocation of resources. The ability to discern macro trends

9   about DHL's workforce composition necessitates that this information be kept closely held, as it could

10  be used to gain a competitive advantage in the market.

11  21.     The EEO-1 Reports reveal how DHL has determined it should structure its workforce to

12  have a well-run, profitable and efficient business, and to respond to and anticipate developments in its

13  industry.  If made public, other companies and competitors could use the EEO-1 Report information as a

14  guideline for their staffing strategies, thereby depriving DHL of the competitive advantage it has

15  cultivated. Because the logistics services industry is quickly evolving, any advantage that DHL's

16  competitors gain could have a substantial effect on the competitive positions of DHL in the industry.

17  22.     The privacy of some DHL employees would also be threatened by potential disclosure of

18  DHL's EEO-1 Reports.  From 2016-2019, one of DHL's EEO-1 categories had 10 or fewer total

19  employees, and the same is true for another EEO-1 category from 2017-2020, making it possible for

20  colleagues, competitors, and the general public to discover the race and gender of specific employees,

21  especially with the public information available on websites such as LinkedIn.

22  23.     DHL would also suffer harm by release of the EEO-1 Reports because the report

23  information could be misinterpreted and used in a way that undermines DHL's ability to recruit female

24  and minority employees now and in the future.  How DHL measures its diversity goals does not align

25  with the limited format of the EEO-1 Reports, which categorizes employees into ten job categories

26  created by EEOC. Armed with imprecise information, competitors and other stakeholders could make

27  broad assumptions that do not accurately reflect DHL's diversity journey and which would undermine

28  its efforts and reverse its progress.

(125 of 273), Page 125 of 273
Case: 24-880, 05/09/2024, DktEntry: 9.4, Page 125 of 273
Case 3:22-cv-07182-WHA   Document 34-6   Filed 08/18/23   Page 6 of 7

1     24.    For example, competitors or other critics could use DHL's EEO-1 Reports to infer or

2  accuse DHL of not engaging in sufficient affirmative action and diversity, equity and inclusion ("DEI")

3  efforts by referencing certain job categories that may -- on their face -- lack diversity.  DHL's data may

4  also be compared the EEOC's published EEO-1 aggregated statistics that summarize data collected for a

5  variety of geographic areas and industries. DHL's employee demographic information contained in

6  EEO-1 Reports can be analyzed against these aggregated statistics to compare how DHL fares against

7  other businesses in its industry. Such analyses can be misleading without appropriate context,

8  particularly since they represent employee populations at only a single point in time each year.  They do

9  not accurately represent either the efforts or progress that DHL made with regard to minority and female

10  representation in its workforce.

11     25.    DHL's EEO-1 Report could be similarly criticized and challenged for what is perceived

12  as too much relative diversity in certain areas. DHL is aware of the letter issued to Fortune 100

13  companies by the Attorneys General from thirteen states last month, threatening "serious legal

14  consequences" for companies whose DEI efforts ostensibly incorporate racially discriminatory elements.

15  DHL is also aware of the response letter sent by the Attorneys General from twenty other states

16  encouraging corporate efforts to recruit diverse workforces and create inclusive work environments.

17  Through disclosure of its EEO-1 Reports, DHL risks facing unfounded criticism, negative press and

18  getting caught in the crosshairs of the current political debate over the lawfulness of DEI efforts, where

19  any diversity can be characterized as too much or too little, depending on the reader's point of view.

20     26.    Unwarranted and unfounded criticism of DHL's DEI efforts could negatively impact its

21  efforts to recruit and retain a diverse workforce and harm its relationships with its customers, especially

22  its larger e-Commerce customers who face similar market pressure and challenges in the DEI space.

23     27.    DHL has a strong commitment to diversity and inclusion and has made significant efforts

24  to recruit and retain a talented, diverse workforce. Given the commercial and sensitive nature of its DEI

25  information, DHL is in the best (and only) position to decide what information, if any, it would like to

26  share with the public and to provide the necessary and important context for the data disclosures, based

27  on its own workforce demographics and efforts.

28     28.    A workforce with diversity is critical to the success of DHL's business and its work

1   community, and it is vital that the Company retain its minority and female employees.  This is true even

2   in job categories with large numbers of incumbents.  Release of the EEO-1 Reports would show

3   competitors where DHL's diverse and highly talented workforce is concentrated. Where DHL has a

4   large number of minority and/or female employees in a particular type of job, the information would be

5   helpful to competitors because it reveals the areas they can most readily target to poach talented

6   minority or female employees with a particular skill set. Conversely, for the types of jobs where DHL

7   has few minority and/or female employees, competitors will know which type of jobs to target to cause

8   the greatest damage to DHL, it business, and its diversity representation.

9        29.     Maintaining diversity in its workforce is not only important to DHL, but also to the

10   Company's clients and business associates. Losing highly talented diverse staff that DHL has worked

11   hard to hire, train and retain would be costly, could cause reputational harm that would affect DHL's

12   commercial interests, and presents a competitive disadvantage to DHL.

13

14        I declare under penalty of perjury under the laws of the United States that the foregoing is true

15   and correct.

16        Executed this 18th day of August, 2023, at Plantation, Florida.

17                  *Joshua Barcon*

18                  NAME

19

20

21

22

23

24

25

26

27

28

1

2

3                        UNITED STATES DISTRICT COURT

4                      NORTHERN DISTRICT OF CALIFORNIA

5

6    THE CENTER FOR INVESTIGATIVE          )  Case No. 22-cv-07182-WHA
     REPORTING and WILL EVANS,             )
7                                          )
              Plaintiffs,                  )  **DECLARATION OF KAREN SOBIESKI IN**
8                                          )  **SUPPORT OF DEFENDANT DEPARTMENT**
        v.                                 )  **OF LABOR'S MOTION FOR SUMMARY**
9                                          )  **JUDGMENT**
     UNITED STATES DEPARTMENT OF           )
10   LABOR,                                )
                                           )
11            Defendant.                   )
                                           )
12   _____ )

13

14        I, Karen Sobieski, state as follows:

15        1.      I am Senior Director of Contracting at Network Management Resources Inc. d/b/a NMR

16   Consulting ("NMR" Consulting").  I submit this declaration in support of the United States Department

17   of Labor's Motion for Summary Judgment in the above-captioned matter.  I have personal knowledge of

18   the following facts and if called to testify, I could and would competently testify thereto.

19        2.      I have been an employee of NMR Consulting since January 2009, originally in Business

20   Development, and assumed responsibility for the contracting department in 2011. As Senior Director of

21   Contracting, my responsibilities include negotiation and maintenance of all contracting artifacts, as well

22   as management of awarded contracts/subcontracts through their full life-cycle – initial negotiation,

23   amendments and extensions, and contract/subcontract closeouts. I facilitate communications with NMR

24   Finance and Program delivery teams to enable effective contract cost management and to ensure NMR

25   is in full compliance with contract obligations. As NMR Consulting is a small business, employees often

26   wear many hats. I support NMR's business development efforts, aiding in capture opportunities, and

27   provide extensive proposal development support. The breadth of my roles and responsibilities has

28   provided significant insight into the challenges of competing and winning in the federal marketplace, the

DECLARATION OF KAREN SOBIESKI IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                          1     ER-388

1    strategic value of competitive intelligence to successful bids, and the difficulties in protecting

2    competitive-sensitive corporate information given the availability of so much information in the public

3    domain through the federal government's FPDS-NG (the Federal Procurement Data System) that

4    provides contract award information, industry news articles, and government contracting intelligence

5    tools such as GovWin IQ, GovTribe, Bloomberg Government (BGov).

6         3.      Headquartered in Huntsville, Alabama, NMR Consulting is a service disabled, veteran

7    owned small business focused on providing information technology, infrastructure, and procurement

8    services to the government and commercial entities. For example, NMR Consulting provides health

9    information technology services, information technology professional services, and order level materials

10    under the GSA Multiple Award Schedule.

11         4.      As a federal contractor, NMR pursues business, almost exclusively in the federal sector,

12    primarily with the Department of Defense and the Intelligence Community. We employ several

13    strategies to staff our contracts – 1) where advantageous to do so, or required, we "flip" or hire

14    incumbent staff performing the same work on the predecessor contract, 2) we recruit via the internet by

15    posting job vacancies to our Jobvite website or other opportunity websites (e.g., Monster, CareerBuilder,

16    ZipRecruiter) or via social media (e.g., LinkedIn), and 3) we leverage our employee referral program to

17    compensate our employees for referring successful candidates. We may also offer positions to our

18    subcontractors to fill. We typically do not use staffing firms given the cost.

19         5.      During the relevant period of 2016-2020, NMR was a federal contractor with more than

20    50 employees. As such, NMR was required by law to submit EEO-1 reports, providing demographic and

21    aggregated information about its workforce during that period.

22         6.      In 2022, NMR learned that the Department of Labor ("DOL") had received a FOIA

23    request seeking NMR's EEO-1 Type 2 reports from 2016 to 2020. NMR considers these documents to

24    be commercial documents that are confidential.

25         7.      On September 19, 2022, NMR notified DOL in writing that it objected to the release of

26    its documents.

27    <u>The EEO-1 Reports are Commercial</u>

28         8.      The EEO-1 Reports have material commercial value to companies in government

1    information technology industries, like NMR, and is used by our company for commercial purposes.

2         9.     EEO-1 Reports disclose workforce totals across ten job categories.  Although the purpose

3    of these reports is to disclose diversity information, they also necessarily reveal other key information

4    about NMR's commercial operations, such as total personnel numbers and workforce allocation across

5    job types.  This type of workforce data is fundamental commercial data.

6         10.     Indeed, the EEO-1 Reports reveal the year-by-year results of deliberate commercial

7    decisions about how to best structure and operate the company, including how NMR structures

8    workforce (e.g. number of managers, number of professionals, number of sales workers, etc.).

9         11.     As a contractor primarily performing service contracts, NMR's workforce is an important

10    component of NMR's basic operations.  The quantity of services that NMR provides is directly tied to

11    the size of its workforce.  The type of services that NMR provides is directly tied to its workforce

12    allocation.  Indeed, as a company that provides services to the federal government, the number and type

13    of employees directly reflects the amount and type of services NMR can provide at any given time.

14    NMR closely tracks these numbers as part of its commercial operations so that it has the ability to

15    compete for and perform contracts.  Put differently, NMR has a commercial interest in its headcount and

16    its personnel allocation among different categories.

17         12.     Beyond the numbers themselves, comparing the EEO-1 Reports year-over-year reveals

18    other commercial information about NMR, showing fluctuations in total employees overall and within

19    certain job categories.  For a company as small as NMR, these fluctuations provide significant insight

20    into NMR's staffing decisions on contracts and reflect labor costs and productivity.  For example, a

21    competitor could tie a recent contract award to an uptick in employees for the same period by comparing

22    two years of EEO-1 data. Because in many years, NMR receives only one government contract, any

23    meaningful change in employee data during that period could be fairly attributed to the new contract

24    award.  With that information, the competitor could conclude how many employees NMR's proposed as

25    part of its successful staffing solution for that contract—the size and composition of the workforce is

26    often a strategic decision unique to each company's proposal.

27         13.     In addition, NMR consults the overall information about the size, diversity, and

28    composition of its workforce when making commercial decisions, which means that type of information

1  is inherently commercial.  NMR's management tracks this information because procurement decisions

2  are based, in part, on workforce information.

3      14.    For example, NMR understands that the Federal government—NMR's largest

4  customer—considers diversity information, such as a contractor's compliance with EEO requirements

5  under Executive Order 11246, when making responsibility determinations—a step taken on every

6  federal contract awarded.  Similarly, President Biden recently promulgated Executive Order 13985,

7  which directs that agencies create plans to address "any barriers to full and equal participation in agency

8  procurement and contracting opportunities[.]" The private sector is no different and NMR understands

9  that more companies are starting to make procurement decisions based on diversity information.

10     15.    Along those same lines, a diverse workforce allows it to be more responsive to

11  customers. Numerous studies have shown that increased diversity boosts innovation and ensures

12  consideration of different perspectives.

13     16.    As a result, the information in the EEO-1 Reports is also commercially valuable as it

14  relates to recruitment and retention.  The competition for recruiting and retaining talent is intense.  Like

15  potential customers, current employees consider whether NMR has a diverse workforce across gender,

16  ethnic, and racial identities.  Moreover, a diverse workforce ensures that a wide variety of viewpoints

17  contribute to NMR's decision-making and it helps to make our workplace welcoming and tolerant of

18  employees of all identities and backgrounds. With this in mind, NMR uses its diversity data to allow

19  management to determine areas of opportunity to increase diversity so it can leverage these advantages.

20     <u>NMR Customarily and Actually Maintains the EEO-1 Reports Confidential</u>

21     17.    NMR does not release their EEO-1 Reports to the public and does not release data about

22  its aggregate workforce by job type or demographics.

23     18.    NMR's EEO-1 Reports are only accessible by the Human Resources Director, Human

24  Resources Manager, IT Manager, and President. The EEO-1 Reports are kept within a secure site within

25  NMR's Microsoft intranet that limits access to key individuals on a need-to-know basis. For non-key

26  individuals, they must receive permission to access the information from a site administrator after the

27  administrator has consulted with the data owner.

28     19.    NMR employs extensive security controls to protect our proprietary corporate data during

DECLARATION OF KAREN SOBIESKI IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                    4    ER-391

1  storage, processing, and transmission. All communications with our systems and servers are encrypted

2  using PKI certificates and the HTTPS protocol. Our data is stored within our local intranet web system,

3  Microsoft SharePoint. Only NMR employees have access to this system. Employees are authenticated

4  and authorized by our Microsoft Active Directory domain, integrated with SharePoint, to ensure only

5  authorized employees can access any document or record based on the need to know. All documents

6  and records are protected with explicit permissions based on individual user accounts or groups. Any

7  documents stored on our Microsoft Windows file server are also integrated with and secured by our

8  Active Directory, with file permissions set for the individual employee or group.

9      20. NMR employees receive regular training on the handling of company confidential and

10  other sensitive information. To that end, NMR's employee handbook has a detailed section listing the

11  type of data and communications that are considered confidential, such as personnel information which

12  includes the type of information contained in the EEO-1 Reports.

13      21. Furthermore, NMR requires all employees to sign a non-disclosure agreement that

14  prevents them from sharing confidential information, which includes personnel information such as the

15  EEO-1 Reports and the data contained therein. Similarly, before engaging with any third parties, NMR

16  requires those parties to execute non-disclosure agreements prohibiting the disclosure of any NMR

17  information received during the engagement. Although NMR does not share EEO-1 Reports or

18  diversity data with third parties, the third party would be prohibited from disclosing any such

19  information. In order to release sensitive information to a third party, NMR requires authorization from

20  the company's president.

21      22. To NMR's knowledge, its direct competitors also treat as private their employee

22  demographic information of the type included in the EEO-1 Reports. NMR routinely conducts

23  competitive intelligence research on publicly available information about its competitors, but has never

24  come across that type of information.

25      23. NMR policy is to avoid participating in marketing surveys and press releases involving

26  the information of the type contained in the EEO-1 Report, such as employee data demographics, salary

27  data or information regarding pricing. NMR does not post its diversity data publicly for recruiting or

28  procurement purposes. Before NMR releases any public facing document, the documents must be

1    reviewed internally for compliance with this policy.  Likewise, NMR's contract documents require

2    NMR's prior review and approval before another company can release NMR's information.

3            NMR Provided the EEO-1 Reports to the Government with Express and Implied Assurances of

4    Confidentiality

5            24.    When NMR submitted its EEO-1 Reports from 2016 to 2020, NMR understood that the

6    government recognizes the sensitivity of the data in these reports and would maintain the confidentiality

7    of that information. NMR relied on notices posted on the relevant agency websites, which indicated that

8    this information would be kept confidential. In addition, NMR understood other notices on the relevant

9    websites that the data would be transmitted using encryption as further evidence that NMR was

10   providing non-public information and that the information's confidentiality would be maintained.

11   Consistent with those notices, before receiving notice of the FOIA request at issue, neither OFCPP nor

12   the Department of Labor ever told NMR that it might release its EEO-1 Report data or in any way

13   suggested that it would not maintain the confidentiality of this sensitive, private information.

14          25.    NMR submitted its EEO-1 data using the EEOC's secure site, which requires approved

15   login user identification and password.  Since the EEO-1 data we submit is required by regulatory

16   mandate (based on both the employee size and contract dollar amounts), NMR understood and expected

17   that data of this proprietary and competitive-sensitive nature would be kept confidential and not shared

18   with the public.

19          26.    In support of that expectation, NMR understands that the Trade Secrets Act prohibits

20   government employees from releasing information that "concerns or relates to trade secrets, processes,

21   operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source

22   of any income, profits, losses, or expenditures of any person." 18 U.S.C. § 1905.

23          27.    NMR's EEO-1 Reports include information about NMR's operations (i.e., total employee

24   count by job classification) and confidential statistical data (i.e., aggregated employee counts by various

25   demographic and job classification)—both categories of information identified as protected by the Trade

26   Secrets Act.

27          28.    As a result, NMR believes that the Trade Secrets Act prohibits the government's release

28   of its EEO-1 Reports.

DECLARATION OF KAREN SOBIESKI IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 22-cv-07182-WHA                                     6     ER-393

1    <u>NMR would be harmed by the release of the EEO-1 data</u>.

2    29.    The release of the EEO-1 data would harm NMR's commercial and financial interests in

3    multiple ways.

4    30.    Competitors or other companies could use the data to determine NMR's average number

5    of employees on a year-to-year basis for the entire company as well as for particular job classifications.

6    This information provides insights into NMR's productivity and their hiring patterns. As a service

7    contractor, NMR's primary offering is its workers' skills and expertise and how much work NMR can

8    perform is a function of how many workers NMR employees.

9    31.    It can also be reverse engineered to allow competitors to form opinions about the work

10    force and corporate vulnerability of a company.  In other words, competitors could use this information

11    to decide whether to bid on contracts against NMR, to solicit NMR as a teaming partner, to determine if

12    NMR is well-positioned to bid on new opportunities, or to target NMR for a potential acquisition.

13    NMR's EEO-1 Reports are particularly vulnerable to this type of analysis because as a company with

14    around 100 employees, a shift of a modest number of employees either way (and even less in a

15    particular category) represents a significant percentage change, while at a larger company, those shifts

16    might be meaningless.

17    32.    NMR's EEO-1 data also could be used to reverse engineer NMR's bidding methodology.

18    NMR's resources are currently concentrated in a small number of prime contracts.  For example, NMR

19    was performing only one prime contract during the 2020 EEO-1 reporting year. It would be very easy to

20    extrapolate contract staffing for a specific contract and from there, using widely available data,

21    costs/pricing data during contract rebids.  If a competitor could reasonably determine how many

22    employees were assigned to a newly awarded task order, it could make reasonably strong assumptions

23    about how NMR planned to staff the contract and could use competitive intelligence data about locality

24    salary requirements and other sources about wage information (including Service Contract Act wage

25    determinations). Again, this is especially true because NMR's small size and few contracts makes even

26    modest changes to a particular category statistically meaningful.  This would harm NMR's ability to

27    compete for future contracts.

28    33.    NMR's harm would be compounded by releasing five years of data.  The wide swath of

1   data makes it more likely that a competitor could correlate NMR's employment data with publicly

2   available contract award information, showing how NMR's employment numbers (in the aggregate and

3   by category) track the award of contracts or task orders. Even worse, NMR understands that the public

4   release of its EEO-1 information from the 2016-2020 period would likely expose the same data from

5   other time periods to the same public release.

6       34.    NMR also would suffer harm to its financial and commercial interests if its raw EEO-1

7   data was released because of the potential for that data to be misrepresented or taken out of context.  For

8   example, a newspaper organization  could mischaracterize NMR's workplace and diversity culture,

9   based on incomplete information, to support their narrative.  Such negative publicity would harm

10  NMR's ability to recruit and retain talent, negatively affect relationships with potential customers and

11  teaming partners, or cause other harms with an impact on NMR's commercial efforts and financial

12  interests.

13      35.    Disclosure would also harm NMR's confidentiality interest in the data.  NMR spends

14  time and resources to ensure this information remains confidential.  As detailed above, NMR goes to

15  great lengths to secure this information and prevent its unauthorized disclosure, which underscores how

16  much NMR values the confidentiality of this sensitive information.  That confidentiality would be lost if

17  the information in the EEO-1 reports were released.

18      I declare under penalty of perjury under the laws of the United States that the foregoing is true

19  and correct.

20      Executed this 18th day of August, 2023, at Ellicott City, Maryland.

21

22                              _____

23                              KAREN SOBIESKI

24

25

26

27

28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES DEPARTMENT OF LABOR, | ) ) |
| Defendant. | ) ) ) |

Case No. 3:22-CV-07182-WHA

**Declaration of Kelechi Ahaghotu**

## <u>DECLARATION OF KELECHI AHAGHOTU</u>

I, Kelechi Ahaghotu, declare as follows:

1.     I am currently employed as the Branch Chief of Information Services for The Office of Federal Contract Compliance Programs ("OFCCP") with the United States Department of Labor ("DOL" or "Defendant"). I have been employed as a Supervisory Government Information Specialist since October of 2021. I have been employed with OFCCP overall for approximately one year and 7 months. I have been responsible for responding to Freedom of Information Act ("FOIA") requests and overseeing the Records Management Program throughout my tenure with OFCCP. I was not employed with OFCCP at the time the relevant FOIA requests were submitted but was made aware of the FOIA requests shortly after I onboarded. My responsibilities during the time of processing the relevant FOIA requests included responding to FOIA requests that were assigned to my agency component and administering Records Management guidance and trainings.

2.     The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and

determinations reached and made in accordance therewith.

3.      The purpose of this declaration is to provide the Court with information regarding DOL's responses to the four FOIA requests dated January 10, 2019; March 25, 2019; September 11, 2020; and May 10, 2021 and submitted by Will Evans, a reporter for the Center for Investigative Reporting ("CIR"; collectively "Plaintiffs"), to the DOL "FOIARequests" inbox and to the OFCCP's National Office ("NO") FOIA email inbox. As of June 3, 2022, these FOIA requests were modified into a single FOIA Request and seek the disclosure of consolidated (Type 2) EEO-1 reports for all federal contractors for the years 2016 through 2020.

4.      This declaration consists of: (1) a listing of the relevant correspondence related to Plaintiffs' FOIA requests; (2) an explanation of the search for records responsive to Plaintiffs' FOIA requests; (3) an explanation of the Executive Order 12600 notification process; (4) a description of the information released to requester; (5) an explanation of the Executive Order 12600 evaluation process; (6) a description of the information withheld under FOIA; and (7) the justification for the withholding of the information under FOIA.

## I. CORRESPONDENCE

5.      On January 10, 2019, Plaintiffs submitted a FOIA request dated January 10, 2019, to DOL's "FOIARequests" email inbox for:

      a.    "A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2016." FOIA Request #872421; Ex. A.

6.      On March 25, 2019, Plaintiffs submitted a FOIA request dated March 25, 2019, to DOL's "FOIARequests" email inbox for:

      a.    "A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2017." FOIA Request #875877; Ex. B.

7.      On July 18, 2019, OFCCP mailed a letter to Plaintiffs, acknowledging Plaintiffs' January 10, 2019 FOIA Request (#872421); stating that it had determined that there were over 100,000 responsive records; and notifying Plaintiffs that it was required under 29 C.F.R. §70.26 to notify submitters that their business information had been requested under FOIA and provide them with an opportunity to object in writing to the disclosure of specified portions of information. Ex. C. OFCCP's letter stated that the voluminous request would overwhelm the OFCCP FOIA unit for the foreseeable future, and the cost of notification by mailed letters would be unduly burdensome. *Id*. OFCCP offered Plaintiffs the opportunity to narrow their request. *Id*.

8.      On August 8, 2019, OFCCP received email correspondence from Plaintiffs responding to OFCCP's July 18, 2019 letter and declining to narrow his request. Ex. D.

9.      On September 11, 2020, Plaintiffs submitted a FOIA request dated September 11, 2020, to DOL's "FOIARequests" email inbox for:

      a.    "A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2018." FOIA Request #897123. Ex E.

10.     On September 18, 2020, OFCCP replied by email to Plaintiffs' September 11, 2020 FOIA Request, acknowledging the request and assigning it tracking number 897123. Ex. F.

11.     On October 2, 2020, OFCCP mailed a letter to Plaintiffs in reply to Plaintiffs' September 11, 2020 FOIA Request (#897123), acknowledging the request and reiterating the required 29 C.F.R. §70.26 notification procedures. Ex. G.

12.     On October 30, 2020, OFCCP received email correspondence from Plaintiffs, indicating it disagreed with OFCCP's statement that OFCCP was required to follow the 29 C.F.R. §70.26 notification procedures. Ex. H.

13.     On November 7, 2020, OFCCP acknowledged receipt of Plaintiffs' October 30th

email and stated that the correspondence was under review. *Id*.

14.     On December 11, 2020, OFCCP received email correspondence from Plaintiffs' counsel, requesting an update on FOIA Request #897123. *Id*.

15.     On December 18, 2020, OFCCP replied by email to Plaintiffs' counsel, reiterating the required 29 C.F.R. §70.26 notification procedures. Ex. I.

16.     On January 7, 2021, OFCCP received email correspondence from Plaintiffs' counsel, requesting additional information about the notification process. *Id*.

17.     On May 10, 2021, Plaintiffs submitted an amendment to FOIA request #872421 dated May 10, 2021, to OFCCP's National Office (NO) FOIA email inbox to:

> a.   withdraw FOIA request #897123 and consolidate it with FOIA request #872421 and "include a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2017 and 2018 as well as 2016." Ex. J.

18.     On May 11, 2021, OFCCP sent email correspondence to Plaintiffs, notifying them that it had combined FOIA Requests #872421, #875877, and #897123 into one request under tracking number 872421. *Id*.

19.     On May 23, 2022, OFCCP and the Solicitor of Labor received correspondence by letter from Plaintiffs, objecting to OFCCP's withholding of records while it followed the Executive Order 12600 and 29 C.F.R. §70.26 notification procedures. Ex. K.

20.     On June 2, 2022, Plaintiffs submitted a final amendment to FOIA request #872421 dated June 2, 2021, to OFCCP's National Office (NO) FOIA and DOL's "FOIARequest" email inbox to:

> a.   "include a spreadsheet of all consolidated (Type 2) EEO-1 reports for all

federal contractors for 2019 and 2020." Ex. L.

21.     On June 3, 2022, OFCCP replied by email to Plaintiffs, notifying them that it had modified FOIA Request No. 872421 to include data for the additional years requested, so that as of June 3, 2022, FOIA Request 872421 encompassed the consolidated (Type 2) EEO-1 reports for all federal contractors for the years 2016 through 2020. *Id*.

22.     On June 15, 2022, OFCCP replied by mail to Plaintiffs' May 23, 2022 letter, disagreeing with Plaintiffs' stated position regarding relevant case law and required OFCCP procedures. Ex. M.

23.     On June 16, 2022, OFCCP received email correspondence from Plaintiffs requesting a timeline for production of records, and a phone call with OFCCP. Ex. N.

24.     On June 22, 2022, OFCCP received email correspondence from Plaintiffs requesting a phone call with OFCCP. *Id*.

25.     On June 27, 2022, OFCCP replied by email to Plaintiffs and stated that the agency anticipated publishing a notice in the Federal Register in July 2022. *Id*. The purpose of the Federal Register Notice was to inform federal contractors that their data had been requested under FOIA, and to provide them with an opportunity to object to the release of EEO-1 reports requested under FOIA. *Id*.

26.     On June 30, 2022, OFCCP received email correspondence from Plaintiffs requesting a more specific timeline for publication of the Federal Register notice, and further information regarding the planned production process. *Id*.

27.     On July 6, 2022, OFCCP replied by email to Plaintiffs' June 30, 2022 email, notifying Plaintiffs that it intended to publish the Federal Register Notice by the end of July, and anticipated beginning production on a rolling basis starting 30 days after publication of the

notice. *Id*. OFCCP stated in its email that "until we see how many objections we receive and whether they are from individual submitters or trade associations on behalf of their members, we cannot provide precise details on what the rolling production will look like." *Id*. The OFCCP email further stated that OFCCP would need to conduct individual analyses of objections received, and that "[i]f OFCCP determines that the objections do not meet the standards for FOIA Exemption 4, OFCCP will notify the submitter that it intends to disclose. At that point, submitters may file reverse FOIA actions against OFCCP to prevent disclosure." *Id*.

28.     On July 20, 2022, by phone and email to Plaintiffs, Defendant sought to clarify the category of contractors (prime contractor or first-tier subcontractor) for the data requested. Ex. O.

29.     On July 22, 2022, by email, Plaintiffs provided clarification. Ex. N.

30.     On August 5, 2022, OFCCP received email correspondence from Plaintiffs requesting an update on the publication of the Federal Register Notice. [1] *Id*.

31.     On August 5, 2022, OFCCP notified Plaintiffs by email that the Federal Register Notice had been sent to the Federal Register for publication on August 4, 2022, and that Plaintiffs would be notified once OFCCP received a publication date. [2] *Id*.

32.     On October 18, 2022, OFCCP received an email from Plaintiffs requesting a "list of companies that objected to the release of their EEO-1 data." Ex. P.

33.     On October 20, 2022, by email, Plaintiffs inquired as to whether the agency

---

[1] A detailed summary of Defendant OFCCP's notices to and communications with federal contractors is provided in Section III of the Declaration.
[2] On or about September 23, 2022, OFCCP published its "Evans FOIA Correspondence Since 2019" to its online OFCCP FOIA Library. This release was in response to a FOIA request from a third party. OFCCP, Evans FOIA Correspondence since 2019, https://www.dol.gov/sites/dolgov/files/OFCCP/foia/files/EvansFOIACorrespondencesince2019.pdf (last visited Aug. 18, 2023).

would provide a list of companies that objected to the release of their EEO-1 data. *Id*.

34.    On November 1, 2022, OFCCP replied by email to Plaintiffs, stating that "[a]s part of its final response, OFCCP intends to release to you the names of those federal contractors that objected under an applicable FOIA exemption and whose data was removed from public release." *Id*.

35.    On November 15, 2022, CIR filed a lawsuit to compel OFCCP to promptly release all records responsive to the Request.[3] ECF No. 1.[4]

## II. SEARCH FOR RESPONSIVE RECORDS

36.    The EEO-1 report is a mandatory annual data collection that requires all private sector employers with 100 or more employees, and federal contractors with 50 or more employees meeting certain criteria, to submit demographic workforce data, including data by race/ethnicity, sex, and job categories.[5] Further information regarding the significance of the collected data; the collection of and security measures taken to protect the data by EEOC; and receipt of the secure data by OFCCP are provided in the Hodge Declaration. *See* Hodge Decl.

37.    In accordance with 41 CFR 60-1.7(a), OFCCP receives copies of EEO-1 Report data filed by federal contractors and subcontractors and retains joint ownership of the EEO–1 Reports with the EEOC. EEO–1 reports are stored in the Equal Employment Data System ("EEDS") and can be found in a desktop application within OFCCP.  EEDS is designed to

---

[3] *Center for Investigative Reporting v. U.S. Department of Labor*, Case No: 3:22-cv-07182-WHA (N.D. Cal. Nov. 15, 2022).
[4] On or about September 23, 2022, OFCCP published its "Evans FOIA Correspondence Since 2019" to its online OFCCP FOIA Library, https://www.dol.gov/sites/dolgov/files/OFCCP/foia/files/EvansFOIACorrespondencesince2019.pdf (last visited Aug. 18, 2023). This release was in response to a FOIA request from a third party.
[5] *See* EEOC, EEO-1 Component 1 Data Collection, https://www.eeoc.gov/data/eeo-1-data-collection (last visited August 17, 2023).

provide information to OFCCP staff on the EEO characteristics of the Supply and Service contractor universe. The OFCCP Division of Program Operations ("DPO") typically receives the EEO-1 data of federal contractors annually from EEOC at least a year after the reports are filed, after EEOC has had the opportunity to check the data for errors and assemble it for transmittal to OFCCP via the EEDS database.

38.     OFCCP's DPO establishes OFCCP jurisdiction over contracting companies, manages the Functional Affirmative Action Program, develops and monitors OFCCP's annual Operating Plan, and conducts various Quality Assurance activities and special studies to improve enforcement operations. For the purposes of fulfilling FOIA requests for EEO-1 data, DPO provides EEO-1 data on an as-needed basis. When providing the data, DPO pulls the requested subset of data from the EEDS database into an Excel spreadsheet, for efficiency in production. Records responsive to the consolidated requests, which were provided by DPO to me, in my capacity as the OFCCP FOIA Officer, are comprised of the consolidated (Type 2) EEO-1 reports for all federal contractors for the years 2016 through 2020 and are provided in an Excel spreadsheet.

39.     On June 8, 2022, Defendant OFCCP requested the EEO-1 data for reporting years 2016-2020 from OFCCP's DPO. Ex. Q.

    a.   The search for responsive documents produced:

        i.   The number of unique federal contractors that submitted Type 2 EEO-1 reports from 2016-2018. totaling 20,655.

    b.   The number of additional unique federal contractors that submitted Type 2 EEO-1 reports in 2019-2020, totaling 3,699.

    c.   The number of contractors for each year:

| Year(s) | Unique federal contractors that submitted Type 2 EEO-1 |
|---------|--------------------------------------------------------|
| 2016 | 15,144 |
| 2017 | 15,406 |
| 2018 | 16,908 |
| 2019 | 13,871 |
| 2020 | 13,670 |

## III. EXECUTIVE ORDER 12600 PROCESS - CORREPONDENCE WITH SUBMITTERS

40.     Pursuant to Executive Order 12600 and the U.S. Department of Labor FOIA regulations at 29 CFR § 70.26, OFCCP is required to notify third-party submitters of confidential commercial information whenever it "has reason to believe that the information requested under the FOIA may be protected from disclosure under Exemption 4, but has not yet determined whether the information is protected from disclosure under that exemption or any other applicable exemption."[6] The regulation requires that the submitters be provided a reasonable time to respond to the notice. *Id*. OFCCP therefore provides submitters with the opportunity to present objections to the disclosure of the requested EEO-1 data on the grounds that specific information contained therein is exempt from mandatory disclosure, such as under Exemption 4 of the FOIA. 5 U.S.C. § 522 (b)(4). [7] Exemption 4 protects "...trade secrets and commercial or

---

[6] *See* Ronald Reagan, Executive Order 12600--Predisclosure notification procedures for confidential commercial information, June 23, 1987, https://www.archives.gov/federal-register/codification/executive-order/12600.html; 29 CFR § 70.26, Confidential Commercial Information.

[7] The Hodge Declaration provides further information regarding the history of OFCCP's treatment of the EEO-1 data. In addition, OFCCP has posted detailed information regarding the FOIA Requests, OFCCP Correspondence, and Partial FOIA Releases online at OFCCP, Employment Information Reports (Standard Form 100), https://www.dol.gov/agencies/ofccp/foia/library/Employment-Information-Reports (last visited Aug. 18, 2023); and at OFCCP, EEO-1 Report Frequently Asked Questions at https://www.dol.gov/agencies/ofccp/faqs/eeo1-report (last visited Aug. 18, 2023).

financial information obtained from a person [that is] privileged or confidential." *Id*.

41.     OFCCP has devoted significant resources to implement a process to review the voluminous amount of material relevant to the consolidated FOIA Request and to satisfy the legal requirements of responding to the Request as expeditiously as possible.[8] The FOIA Request covers more than 24,000 unique contractors and 75,000 unique Type 2 EEO-1 reports.

42.     The processing of this request is a massive undertaking requiring the involvement of a number of DOL employees from OFCCP and the Office of the Solicitor.  In addition to existing staff, the FOIA Team added two highly experienced staff members with database and data analytic training from DOL's Branch of Expert Services and Division of Program Operations to dedicate their time and expertise in data management to ensure that the processing of this request and the sorting of data for release is accurate.

43.     DOL regulations promulgated to implement the requirements of Executive Order 12,600 provide that, when voluminous material that may be commercial or confidential in nature is sought by a FOIA requester, Department agencies must notify private entities by "posting and publishing the notice in a place reasonably calculated to accomplish notification."[9] OFCCP has met and exceeded this requirement through its numerous actions during this process to notify submitters in locations reasonably calculated to provide them with notice of the Request, including multiple postings on its website, publication in the Federal Register, distribution to hundreds of thousands of relevant stakeholders through its GovDelivery listserv, notification by USPS mail, and repeated individual notice through emails to thousands of affected contractors.[10]

---

[8] *See generally* 5 U.S.C. § 552(a)(6).
[9] Executive Order 12,600 (1987); 29 C.F.R. § 70.26(j).
[10] For multiple reasons, including the historical nature of the data requested and the failure of some contractors to register with the OFCCP Contractor Portal, OFCCP does not possess current

In addition, OFCCP has addressed contractor concerns regarding the deadline for objections by providing multiple extensions to that deadline and by allowing late-filed objections for good cause. [11]

44. On August 19, 2022, OFCCP published a notice on the Federal Register, informing all federal contractors that a FOIA request from Plaintiffs had been submitted for all Type 2 Consolidated EEO-1 report data for the years 2016 through 2020, and giving federal contractors "a period of time to object to the disclosure [of the diversity reports] and state their grounds for doing so." Notice of Request Under the Freedom of Information Act for Federal Contractors' Type 2 Consolidated EEO-1 Report Data, Federal Register, 87 Fed. Reg. 51145 (Aug. 19, 2022) https://www.federalregister.gov/documents/2022/08/19/2022-17882/notice-of-request-under-the-freedom-of-information-act-for-federal-contractors-type-2-consolidated. Contractors were given until September 19, 2022 to submit written objections to disclosure to OFCCP. The notice also states that OFCCP will make an independent evaluation of each company's objections regarding diversity reports before making a determination. *Id*.

45. On September 15, 2022, September 21, 2022, September 23, 2022, and September 28, 2022, OFCCP published notices extending the deadline for receipt of submitter objections, such that federal contractors had until October 19, 2022 to object to the disclosure of any portion of the EEO-1 Reports and to state all grounds upon which disclosure was opposed.

---

e-mail addresses for all federal contractors covered by the Request. However, the many measures taken by the agency to effectuate notice go beyond that required by relevant legal authorities. *See* 29 C.F.R. § 70.26(j) ("Where notification of a voluminous number of submitters is required, such notification may be accomplished by posting and publishing the notice in a place reasonably calculated to accomplish notification."); Executive Order 12,600 § 1. (*Id*).

[11] A detailed summary of all OFCCP correspondence regarding this consolidated FOIA request, including notices to submitters, is also provided within OFCCP's online FOIA Library, at https://www.dol.gov/agencies/ofccp/foia/library/Correspondence (last visited August 18, 2023).

OFCCP, Notice of Extension, Submitter Notice Response Portal

https://content.govdelivery.com/accounts/USDOLOFCCP/bulletins/32d2d50 (last visited Aug.

18, 2023). [12] These extensions were provided in light of numerous requests from contractors for

an extension and inquiries from companies regarding whether they were subject to the FOIA

request.

    46.    On November 22, 2022, OFCCP provided notice of the intent to disclose a

portion of the requested data that had been submitted by a subset of contractors for which no

objections had been received by October 19, 2022. OFCCP Correspondence (Nov. 22, 2022),

https://content.govdelivery.com/accounts/USDOLOFCCP/bulletins/3395260.

    47.    As of January 2, 2023, OFCCP had received objections from approximately 2,500

companies. It had also received responses indicating that over 100 reports corresponded to

companies that believed that they were not federal contractors.  OFCCP's jurisdiction team

analyzed these responses to determine if the assertions of non-contractor status were accurate.

OFCCP also undertook an initial sorting and processing of the objections to prepare a list of

companies that had not objected, and whose EEO-1 reports OFCCP intended to release.

    48.    On February 2, 2023, OFCCP provided via email and website posting a notice of

---

[12] OFCCP maintains that the Federal Register Notice it provided met its legal obligations for notice under FOIA and the relevant Executive Order and implementing regulations. However, OFCCP provided multiple extensions of the original response deadline via website, email, the GovDelivery listserv, and USPS mail, in response to various expressed concerns, including from a subset of federal contractors who indicated that they had not been aware of the original Federal Register Notice or had not received email notices due to data security protocols that block mass communications, as well as from Congresswoman Virginia Foxx, Chair of the House Committee on Education and the Workforce, who raised questions about OFCCP's processing of the FOIA request and concerns that OFCCP had not provided contractors sufficient time to object, and requested that OFCCP reopen the objection period for an additional 60 days. Ex. R. The objections have revealed that OFCCP's list of potentially responsive records continued to include non-federal contractors, whose records may not be disclosed.

the intent to disclose a portion of the requested data that had been submitted by a subset of

contractors for whom no objections had been received to date, and provided "one final

opportunity for entities to assert that their data should not be released because: (a) they were not

a federal contractor during the relevant time period; or (b) they believe they previously submitted

an objection to the disclosure of their EEO-1 data." OFCCP Correspondence (Feb. 2, 2023),

https://content.govdelivery.com/accounts/USDOLOFCCP/bulletins/3468912. The provided

deadline was February 8, 2023. *Id*.

49.     On February 7, 2023, OFCCP extended the previously posted deadline to

February 17, 2023.  OFCCP Correspondence (Feb. 7, 2023),

https://content.govdelivery.com/accounts/USDOLOFCCP/bulletins/3475fe6.

50.     On February 10, 2023, OFCCP updated its February 7, 2023, notice to include

information notifying objectors that if they were providing an objection on any other grounds

other than to notify OFCCP of being incorrectly listed on the non-objectors list, they must

provide good cause as to why they previously did not object. This notice was sent to all

contractors subject to the FOIA request. OFCCP Correspondence (Feb. 10, 2023),

https://content.govdelivery.com/accounts/USDOLOFCCP/bulletins/3481c4e.

51.     On February 14, 2023, OFCCP extended the previously posted deadline to March

3, 2023.  OFCCP Correspondence (Feb. 14, 2023),

https://content.govdelivery.com/accounts/USDOLOFCCP/bulletins/348c069.

52.     On February 16, 2023, OFCCP provided for federal contractors an updated list of

non-objectors whose EEO-1 Type 2 data the agency intended to release in response to the FOIA

Request, and reiterated the response deadline of March 3, 2023.  OFCCP Correspondence (Feb.

16, 2023), https://content.govdelivery.com/accounts/USDOLOFCCP/bulletins/3495276.

53.     On February 27, 2023, OFCCP provided a reminder notice regarding the March 3, 2023 objection deadline. OFCCP Correspondence (Feb. 27, 2023), https://content.govdelivery.com/accounts/USDOLOFCCP/bulletins/34b6161.

54.     On March 7, 2023, OFCCP provided by USPS mail a reminder notice regarding the submission of objections and extending the objection deadline to March 31. OFCCP Correspondence (March 7, 2023), https://www.dol.gov/sites/dolgov/files/OFCCP/foia/files/2023-03-07-MAIL-NOTICE-TO-CONTRACTORS.pdf.

55.     On March 10, 2023, OFCCP provided to federal contractors an updated list of non-objectors whose EEO-1 Type 2 data the agency intended to release in response to the FOIA Request, and provided a final response deadline of March 17, 2023.  OFCCP Correspondence (March 10, 2023), https://content.govdelivery.com/accounts/USDOLOFCCP/bulletins/34de614.

## IV. DESCRIPTION OF RECORDS RELEASED

56.     On March 2, 2023, Defendant provided Plaintiffs with the first partial release in response to the FOIA request. The release included responses from 21 contractors that voluntarily confirmed they had no objection to the release of their entities' EEO-1 data. OFCCP, Employment Information Reports (Standard Form 100), https://www.dol.gov/agencies/ofccp/foia/library/Employment-Information-Reports (last visited Aug. 18, 2023). The response was provided to Plaintiffs and also posted to OFCCP's online FOIA Library.

57.     On April 17, 2023, Defendant provided Plaintiffs with the second partial release in response to the FOIA request. The release included Type 2 EEO-1 data from 56,419 EEO-1 reports, corresponding to 19,289 unique federal contractors. Of the 19,289 contractors, 12 contractors voluntarily confirmed they had no objection to the release of their entities' Type 2

EEO1 data. For the remaining 19,277 contractors, OFCCP received no objection to the release of
their entities' Type 2 EEO-1 data by the expiration of the final deadline for objections. *Id*. The
response was provided to Plaintiffs and also posted to OFCCP's online FOIA Library.[13]

## V. EXECUTIVE ORDER 12600 PROCESS – EVALUATION OF OBJECTIONS

58.     In response to OFCCP's previously described notifications, OFCCP received
4,762 submitter objections. These objections, which encompassed a broad variety of federal
contractors, focused primarily on the FOIA-exempt nature of the requested information, and/or
other statutory protections for the data, including that the data is protected under the Trade
Secrets Act, 18 U.S.C. § 1905.

59.     In addition, a small subset of objections stated that their data was not responsive
to the FOIA Request because they were not federal contractors. OFCCP's Jurisdiction Team
determined if a company qualified as a federal contractor by confirming whether a company held
a single federal contract, subcontract, or federally assisted construction contract in excess of
$10,000.00 for the relevant reporting years. The Jurisdiction Team reviewed and resolved these
objections, and, if the objectors were found to be federal contractors, they were included in the
full set of objectors who provided objections on legal grounds. 621 of the potentially responsive
reports were determined to have been submitted by entities that were not federal contractors at
the time of the reports, and therefore not within OFCCP's jurisdiction.

60.     Subsequent to jurisdictional determinations, the full subset of objectors totaled

---

[13] OFCCP strives to provide accurate records in response to the FOIA Requests. In its endeavor
to do so, it has made minor corrections to the data posted in its online FOIA Library. On the
referenced page, OFCCP has provided a timeline regarding changes made to the posted data.
OFCCP, Employment Information Reports (Standard Form 100),
https://www.dol.gov/agencies/ofccp/foia/library/Employment-Information-Reports (last visited
Aug. 18, 2023).

4,141.

61.     Each federal contractor objection was individually evaluated by OFCCP for legal

sufficiency under the Exemption 4 legal standard established by the Supreme Court in *Food*

*Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ("*Argus Leader*"). The *Argus*

*Leader* standard established that, "[a]t least where commercial or financial information is both

customarily and actually treated as private by its owner and provided to the government under an

assurance of privacy, the information is 'confidential' under the meaning of (FOIA)." *Argus*

*Leader*, 139 S. Ct. at 2366.

62.     Objections that did not meet the *Argus Leader* legal standard were found to be

legally insufficient. OFCCP is in the process of notifying these submitters that it did not find the

submitters objections legally sufficient, and that their data will be released.

## VI. DESCRIPTION OF RECORDS WITHHELD

63.     Unless OFCCP determines that the EEO-1 report is not exempt from disclosure

under Exemption 4, OFCCP will not release any EEO-1 report.  All data for the submitters who

provided legally sufficient objections is being withheld under Exemption 4 of FOIA. 5 U.S.C. §

552(b)(4). These objectors' data was found to be commercial information that was, based on the

factual information provided by the federal contractors, both customarily and actually treated as

private by its owner and provided to the government under an assurance of privacy.

64.     OFCCP received objections from 4,796 unique federal contractors, corresponding

to 16,905 EEO-1 Reports. OFCCP completed its initial evaluation of those objections on July 5,

2023. Following its review, OFCCP concurred that the data from 4,757 unique contractors,

corresponding to 16,755 EEO-1 reports, was appropriately withheld from release under

Exemption 4. OFCCP notes that there are 4 unique federal contractors, corresponding to 20

EEO-1 reports, for which evaluation is pending due to jurisdictional questions and related issues that are still being resolved. OFCCP has withheld 16,755 EEO-1 reports based on its evaluation that these records are exempt under Exemption 4 of FOIA.

| Year(s) | Total Type 2 EEO-1 Filings (Raw Data) | Total Number of Objectors | Objections Pending Responses | Total Objectors W/Data Withheld Under Exemption 4 |
|---|---|---|---|---|
| | (a) | (b) | (c) | ( d) |
| 2016 | 15,144 | 3327 | 4 | 3302 |
| 2017 | 15,406 | 3342 | 4 | 3314 |
| 2018 | 16,908 | 3681 | 4 | 3650 |
| 2019 | 13,871 | 3291 | 4 | 3258 |
| 2020 | 13,670 | 3264 | 4 | 3231 |
| DATA ENTRIES | 74,999 | 16905 | 20 | 16755 |
| UNIQUE CONTRACTORS | 24,355 | 4796 | 4 | 4757 |

## VII. RATIONALE FOR WITHHOLDING RECORDS

65.     The paragraphs below explain DOL and OFCCP's rationale for withholding the information under FOIA Exemption 4, 5 U.S.C. § 552(b)(4).[14]

66.     Exemption 4 shields from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).

67.     The current legal test for determining the applicability of FOIA Exemption 4, as established by the Supreme Court in *Argus Leader*, is that, "[a]t least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' under the meaning of (FOIA)." *Argus Leader*, 139 S. Ct. at 2366.

68.     The data withheld under Exemption 4, information from EEO-1 forms, was

---

[14] 413 objectors, which constitutes approximately 37.5% of all objectors, and 39% of the objectors whose objections were found by OFCCP upon evaluation to be legally sufficient, also asserted that FOIA Exemption 6 applies to a portion of the relevant EEO-1 data. Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy" and when the individual's privacy interest outweighs the public interest in disclosure. 5 U.S.C. § 552(b)(6) (2018). Objectors expressed concerns that, especially within smaller entities, release of the EEO-1 data could infringe upon the privacy rights of individual employees. These assertions require additional evaluation by OFCCP on a case-by-case basis to determine whether Exemption 6 is applicable to a portion of the EEO-1 data. That evaluation process has not yet been completed.

obtained from a person and is confidential commercial or financial information within the meaning of Exemption 4.

69.    The data that was withheld is comprised of EEO-1 data for which the federal contractor objections were found legally sufficient under the FOIA Exemption 4 standard, because the objectors had established, based on the factual information provided, that the data was commercial information that was both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy.

70.    The objectors established that the EEO-1 data is information in which the provider has a "commercial interest" as defined by statute and in relevant case law.

71.    The relevant data was obtained from a person as required under FOIA Exemption 4. For the purposes of Exemption 4, "person" refers to individuals as well as to a wide range of entities, including corporations, banks, state governments, agencies of foreign governments, and Native American tribes or nations, who provide information to the government. Federal contractors are clearly included within this definition.

72.    Each of the objections that was found to be legally sufficient provided factual information indicating that the data was confidential information that was both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy.

## A. **BELLWETHER OBJECTORS**

73.    At a Case Management Conference held on April 13, 2023, the Court directed DOL to select six representative objecting contractors for a bellwether summary judgment motion to evaluate whether the requested data from their EEO-1 reports is exempt from disclosure under FOIA.

74.     Due to the breadth of objections received by OFCCP by federal contractors who are diverse in industry, size, and other metrics, it is difficult to address all objector concerns within a small sample size. However, in selecting its bellwether objectors ("Bellwether Objectors") OFCCP sought to identify federal contractors who were reasonably representative of the submitter-objectors.[15]

75.     The Bellwether Objectors are comprised of Brandenburg Industrial Service Co. ("Brandenburg"); DHL Global Business Services ("DHL"); Network Management Resources Inc. d/b/a NMR Consulting ("NMR" Consulting); NorthShore University HealthSystem ("NorthShore"); and Universal Services of America, LP d/b/a Allied Universal Security Services ("Allied Universal").

76.     OFCCP evaluated each of the Bellwether Objectors' objections and determined that, based on the facts provided in their objections and declarations, their EEO-1 Report data is subject to withholding under Exemption 4 because it is commercial information, obtained from a person, that was both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy. *See* Baxter Decl.; Barcon Decl.; Sobieski Decl.; Jasinowski Decl.; NorthShore Decl. Thus, each of these federal contractors' objections was found to be legally sufficient under FOIA Exemption 4, and their data is properly withheld under FOIA.

77.     Further, upon evaluation OFCCP determined that the Bellwether Objectors' EEO-1 data is "confidential statistical information" that is prohibited from disclosure under the Trade

---

[15] On August 18, 2023, the due date for the filing of this Motion for Summary Judgment with the Court, Defendant was notified that one of the six selected Bellwether Objectors, though it had previously committed to providing a supporting declaration, had opted not to submit a declaration after a new decisionmaker joined the process on August 18. Thus, Defendant proceeds with five Bellwether Objectors.

Secrets Act, 18 U.S.C. § 1905.

78.    Finally, upon evaluation OFCCP reasonably foresees that release of the

Bellwether Objectors' EEO-1 data would foreseeably harm their interests in the confidentiality

of the data, and the submitters' commercial or financial interests, including but not limited to by

allowing competitors to gain insights into the work force and corporate vulnerability of a

contractor; revealing a contractor's bidding methodology, staffing strategy, and business strategy;

showing how a contractor's numbers across several years track the award of contracts or task

orders; negatively affecting a contractor's efforts to recruit diverse employees; subjecting

contractors to potential negative publicity due to mischaracterization of raw data without

appropriate context; or disclosing a contractor's trade secrets. Hodge Decl. ¶¶ 20-26; Baxter

Decl. ¶¶ 29-33; Barcon Decl. ¶¶ 19-29; Sobieski Decl. ¶¶ 29-35; Jasinowski Decl. ¶¶ 15-27;

NorthShore ¶¶ 21-23; McKay ¶¶ 14-22; Roberson ¶¶ 24-30.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct hereto.

Executed this 18th day of August, 2023.

/s/

_____

Kelechi Ahaghotu
Branch Chief of Information Services
Office of Federal Contract Compliance
    Programs
U.S. Department of Labor
200 Constitution Ave., NW
Washington, DC 20210

# EXHIBIT A

**Karamoko, Arginia - SOL**

| | |
|---|---|
| **From:** | Will Evans <wevans@revealnews.org> |
| **Sent:** | Thursday, January 10, 2019 7:13 PM |
| **To:** | FOIARequests |
| **Cc:** | Victoria Baranetsky |
| **Subject:** | FOIA request - OFCCP |

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

## * A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2016.

I am requesting this data in electronic format, by email.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," as OFCCP has already determined that Type 2 EEO-1 reports are not subject to Exemption 4 of the Freedom of Information Act. (see CIR v USDOL, Case No. 3:18-cv-2008 JCS)

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or
wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608
--
Will Evans
reporter
o: 510-809-2209

1



www.revealnews.org



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: Acknowledgment

**Will Evans** <wevans@revealnews.org>                                        Thu, Oct 14, 2021 at 2:41 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **FOIARequests** <FOIARequests@dol.gov>
Date: Tue, Jan 15, 2019 at 2:35 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>


Hello:


Your request has been assigned to OFCCP with tracking number **872421**. When they begin processing it, you will be able to track its progress at www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking number in the Subject line of any submission to the agency or to have it available at the time of a call.


Sincerely,


**Arginia Karamoko**

Government Information Specialist, Office of Information Services

Office of the Solicitor | Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 | Washington, DC  20210

T: (202) 693-5531 | F: (202) 693-5389 |  E: karamoko.arginia@dol.gov


**From:** Will Evans <wevans@revealnews.org>
**Sent:** Thursday, January 10, 2019 7:13 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Cc:** Victoria Baranetsky <vbaranetsky@revealnews.org>
**Subject:** FOIA request - OFCCP

Dear FOIA Officer,

ER-419

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2016.**

I am requesting this data in electronic format, by email.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," as OFCCP has already determined that Type 2 EEO-1 reports are not subject to Exemption 4 of the Freedom of Information Act. (see CIR v USDOL, Case No. 3:18-cv-2008 JCS)

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608

--

Will Evans

reporter

o: 510-809-2209



www.revealnews.org


--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# EXHIBIT B

**Karamoko, Arginia - SOL**

| | |
|---|---|
| **From:** | Will Evans <wevans@revealnews.org> |
| **Sent:** | Monday, March 25, 2019 1:57 PM |
| **To:** | FOIARequests |
| **Subject:** | FOIA request - OFCCP |

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

## * A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2017.

I am requesting this data in electronic format, by email. Fulfilling this request is not unduly burdensome because there is no need to notify federal contractors.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," as OFCCP has already determined that Type 2 EEO-1 reports are not subject to Exemption 4 of the Freedom of Information Act. (see CIR v USDOL, Case No. 3:18-cv-2008 JCS)

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or
wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608

--
Will Evans
reporter
o: 510-809-2209

1



www.revealnews.org



**Shawn Musgrave <smusgrave@revealnews.org>**

---

## Fwd: Acknowledgment

**Will Evans** <wevans@revealnews.org>                                    Thu, Oct 14, 2021 at 2:38 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **Karamoko, Arginia - SOL** <Karamoko.Arginia@dol.gov>
Date: Mon, Mar 25, 2019 at 1:32 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>

Hello:

Your request has been assigned to OFCCP with tracking number **875877**. When they begin processing it, you will be able to track its progress at www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking number in the Subject line of any submission to the agency or to have it available at the time of a call.

Sincerely,

**Arginia Karamoko**

Government Information Specialist, Office of Information Services

Office of the Solicitor | Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 | Washington, DC  20210

T: (202) 693-5531 | F: (202) 693-5389 |  E: karamoko.arginia@dol.gov

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Monday, March 25, 2019 1:57 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Subject:** FOIA request - OFCCP

ER-425

10/14/21, 3:38 PM                                                                                                  Gmail - Federal contractors' EEO-1 reports show diversity

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2017.**

I am requesting this data in electronic format, by email. Fulfilling this request is not unduly burdensome because there is no need to notify federal contractors.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," as OFCCP has already determined that Type 2 EEO-1 reports are not subject to Exemption 4 of the Freedom of Information Act. (see CIR v USDOL, Case No. 3:18-cv-2008 JCS)

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608

--

Will Evans

reporter

o: 510-809-2209

ER-426

[www.revealnews.org](www.revealnews.org)

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
[www.revealnews.org](www.revealnews.org)

EXHIBIT C

**U.S. Department of Labor**

Office of Federal Contract
Compliance Programs
200 Constitution Avenue, N.W.
Washington, D.C. 20210



JUL 18 2019

Will Evans
The Center for Investigative Reporting
1400 65th Street, Suite 200
Emeryville, CA 94608

RE: Freedom of Information Act Request Acknowledgement – Tracking No. 872421

Dear Mr. Evans:

This letter is a follow-up to your Freedom of Information Act (FOIA) request submitted to the Office of Federal Contract Compliance Programs (OFCCP). Please refer to the above-referenced FOIA tracking number in any future correspondence regarding your FOIA request.

You requested a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2016. As you know from your earlier requests, in accordance with 29 CFR § 70.26, OFCCP is required to notify submitters that their business information has been requested under the FOIA to give them an opportunity to object in writing to disclosure of any specified portion of the requested information.

Though you request is reasonably described, we have determined that there are more than 100,000 responsive records. Reaching out to each of the companies affected by your voluminous request would overwhelm the OFCCP FOIA unit for the foreseeable future, and the cost in sending more than 100,000 letters would be unduly burdensome. If you wish to narrow the scope of your request, please send a revised request to the address referenced above or send an e-mail to OFCCP_NO_FOIA@dol.gov. In the event that we do not receive a response from you within thirty (30) days from the date of this letter, we will administratively close your request.

Should you have questions regarding your request, please contact this office at (202) 693-0101 or by email at OFCCP_NO_FOIA@dol.gov. If you need further assistance or would like to discuss any aspect of your request, please do not hesitate to contact the DOL FOIA Public Liaison, Thomas Hicks, at (202) 693-5427.

Alternatively, you may contact the Office of Government Information Services within the National Archives and Records Administration (OGIS) to inquire about the mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, MD 20740-6001. You can also reach that office by e-mail at ogis@nara.gov, by phone at (202) 741-5770, by fax at (202) 741-5769, or by calling toll-free at (877) 684-6448.

If you are not satisfied with the response to this request, you may administratively appeal by writing to the Solicitor of Labor within 90 days from the date of this letter. The appeal must state in writing the grounds for the appeal, and it may include any supporting statements or arguments, but such statements are not required. In order to facilitate processing of the appeal, please include your mailing address and daytime telephone number, as well as a copy of the initial request and copy of this letter. The envelope and letter of the appeal should be clearly marked "Freedom of Information Act Appeal." Any amendment to the appeal must be made in writing and received prior to a decision. The appeal should be addressed to the Solicitor of Labor, Division of Management and Administrative Legal Services, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N2420, Washington, DC 20210. Appeals may also be submitted by email to foiaappeal@dol.gov. Appeals submitted to any other email address will not be accepted.

Sincerely,

D. Lissette Geán
Special Assistant

EXHIBIT D



**Dara Gray <dgray@revealnews.org>**

---

### Fwd: re FOIA 872421
1 message

---

**Will Evans** <wevans@revealnews.org>                                    Wed, Nov 9, 2022 at 3:34 PM
To: Dara Gray <dgray@revealnews.org>

---

---------- Forwarded message ---------
From: **Will Evans** <wevans@revealnews.org>
Date: Thu, Aug 8, 2019 at 1:10 PM
Subject: re FOIA 872421
To: Bruce Andersen - OFCCP <Andersen.Bruce@dol.gov>
Cc: Victoria Baranetsky <vbaranetsky@revealnews.org>

Dear FOIA Officer,
This is in regards to your July 18, 2019 letter requesting that I narrow my original request because it would be unduly
burdensome to notify all affected companies. The notification requirements, however, do not apply here because no
exemption applies. The agency, in fact, has previously determined that no exemption applies and has released Type 2
EEO-1 reports in response to previous FOIA requests. Because the agency does not need to notify any companies,
providing a spreadsheet is not unduly burdensome, and there is no need to narrow the request.
Thank you for your work on this request.
Best,
Will Evans
--
Will Evans
reporter
o: 510-809-2209



www.revealnews.org

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
cell: 510-333-9584
www.revealnews.org

---

 **OFCCP FOIA 872421.pdf**
478K

# EXHIBIT E

| | |
|---|---|
| **From:** | Will Evans |
| **To:** | FOIARequests |
| **Subject:** | FOIA request - OFCCP |
| **Date:** | Friday, September 11, 2020 8:27:30 PM |
| **Attachments:** | Judge Westmore decision Dec 10 2019.pdf |

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**A  rea   heet of all con oli ate   T  e 2  EEO-1 re ort  for all fe eral contractor  for  201 .**

I am requesting this data in electronic format, by email. Fulfilling this request is not unduly burdensome because there is no need to notify federal contractors.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **nee   not  e follo  e**  if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **nee   not  e follo  e**  the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," **a  fe  eral contractor EEO-1 ha e  een eter ine  to  e  u lic recor   that   u t e  i clo e   not confi ential co    ercial infor ation**. Please see the Dec. 10, 2019 ruling by Judge Kandis Westmore in U.S. District Court for the Northern District of California, 4:19-cv-01843-KAW (attached).

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608



www.revealnews.org

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING, et al., | Case No. 4:19-cv-01843-KAW |
| Plaintiffs, | **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | Re: Dkt. Nos. 24, 29 |
| U.S. DEPARTMENT OF LABOR, | |
| Defendant. | |

On August 23, 2019, the U.S. Department of Labor filed a motion for summary judgment on the grounds that the Government was justified in withholding documents under the Freedom of Information Act's Exemption 4. On September 30, 2019, Plaintiffs, The Center for Investigative Reporting and Will Evans, filed a cross-motion for summary judgment.

On December 5, 2019, the Court held a hearing, and after careful consideration of the parties' arguments and the applicable legal authority, for the reasons set forth below, DENIES Defendant's motion for summary judgment, and GRANTS Plaintiffs' cross-motion for summary judgment.

## I.    BACKGROUND

Plaintiff the Center for Investigative Reporting ("CIR") is a nonprofit, investigative news organization that publishes *Reveal*, an online news site, and has a weekly public radio show with approximately one million listeners per week. (Compl., Dkt. No. 1 ¶ 13.)  Plaintiff, Will Evans, is a staff reporter for *Reveal* and an employee of CIR. (Compl. ¶ 14.)  Defendant U.S. Department of Labor ("DOL") oversees the Office of Federal Contract Compliance Programs ("OFCCP"). (Compl. ¶ 15.)

On January 4, 2018, Plaintiffs submitted a Freedom of Information Act ("FOIA") request

to DOL's OFCCP seeking disclosure of federal contractors' employment diversity reports (known as EEO-1 reports). (*See* Compl. ¶ 2; Decl. of D. Lissette Geán, "Geán Decl.," Dkt. No. 24-11 at ¶ 13, Ex. 1.)  The request explicitly sought the 2016 EEO-1 Consolidated Report (Type 2) for 55 named companies. (Geán Decl. ¶ 13.)

Companies with 50 or more employees that contract with the federal government must submit annual reports using Standard Form 100, commonly known as "EEO-1 report," to the Joint Reporting Committee ("JRC"). 41 C.F.R. § 60-1.7(a).  Companies that do business at two or more physical addresses (i.e. establishments) must file an EEO-1 Consolidated Report (Type 2) to that web portal. U.S. EQUAL EMP'T OPPORTUNITY COMM'N, Fact Sheet for EEO-1 Survey Filers, https://www.eeoc.gov/employers/eeo1survey/fact_sheet_filers.cfm (last visited Dec. 4, 2019). EEO-1 Type 2 reports require companies to report the total number of employees across all their establishments by race/ethnicity, gender, and job category. U.S. EQUAL EMP'T OPPORTUNITY COMM'N, Memorandum from EEO-1 Joint Reporting Committee on Computer Printed EEO-1 Reports- Required Format (Rev 3/2007) to Multi-establishment Private Employers (July 2007), https://www.eeoc.gov/employers/eeo1survey/upload/compfiling-multi.pdf (last visited Dec. 4, 2019). These reports help OFCCP monitor the contracting companies' compliance with Executive Order No. 11,246 which prohibits employment discrimination by government contractors. (Geán Decl. ¶ 5.)

The Equal Employment Opportunity Commission ("EEOC") collects similar data for employers with 100 or more employees. (Geán Decl. ¶ 8.)  To avoid duplication of efforts and reduce the administrative burden on companies, EEOC and OFCCP formed the JRC to administer the EEO-1 reporting system in a manner that establishes a single data collection to meet the statistical needs of both agencies. *See id.*  The JRC web portal is managed by the EEOC, which collects the information and shares with OFCCP the reports from the companies subject to OFCCP's jurisdiction. (Geán Decl. ¶ 9.)

On March 13, 2018, then-Special Assistant to the Deputy Director, D. Lissette Geán, informed Plaintiffs that OFCCP identified only 36 of the named 55 companies as federal

United States District Court
Northern District of California

United States District Court
Northern District of California

1  contractors subject to OFCCP's jurisdiction. (Geán Decl. ¶ 15, Ex. 3.)[1]  On March 14, 2018, Ms.

2  Geán, notified those 36 federal contractors of the plaintiffs' FOIA request for their EEO-1, Type 2

3  information. (Geán Decl. ¶ 16.) The notice was sent out pursuant to the notice requirement for

4  confidential commercial information as described in DOL's duly promulgated regulation, 29

5  C.F.R. § 70.26. (Geán Decl. ¶ 16.)  The letters informed the companies that they had 30 days from

6  receipt of the letter to object in writing, and that their failure to respond would result in the release

7  of their EEO-1, Type 2 data to Plaintiffs. (Geán Decl. ¶¶ 17-19, Ex. 4.)

8  On April 18, 2018, Ms. Geán sent a second notice to submitters who had not objected

9  within the initial 30 days. (Geán Decl. ¶ 20, Ex. 5.)  The April 18, 2018 letters referenced the

10  March 14, 2018 letters, and informed those submitters that if they failed to object by close of

11  business on May 31, 2018, their EEO-1 Type 2 data will be released to the plaintiff-requesters.

12  (Geán Decl. ¶ 21, Ex. 5.) Also on April 18, 2018, Ms. Geán separately informed Plaintiffs that, as

13  of the date of that letter, 14 of the 36 companies objected to the release of their data on the

14  grounds of FOIA Exemption 4. (Geán Decl. ¶ 22, Ex. 6.)

15  By May 31, 2018, a total of 20 of the 36 companies submitted written objections to DOL.

16  (Geán Decl. ¶ 23.) On April 18, 2018 and on July 5, 2018, DOL sent each of the 20 objecting

17  submitters a letter informing them that DOL "concurred with their assertions that their EEO-1

18  reports were exempt from mandatory disclosure pursuant to Exemption 4 of FOIA." (Geán Decl. ¶

19  24, Ex. 7.)  As such, DOL informed these objectors that it would not release their EEO-1 Type 2

20  data to Plaintiffs. *Ids.*

21  On August 14, 2018, Ms. Geán, sent a letter to Plaintiffs confirming that one of companies

22  in the original FOIA request, Trimble Navigation, had been removed from the request. (Geán

23  Decl. ¶ 25, Ex. 8.) In addition, by the date of the letter, Ms. Geán informed Plaintiffs that 15

24  submitters had not objected to the release of their EEO-1 Type 2 data. (Geán Decl. ¶ 26.)

25  Subsequently, on August 16, 2018, via e-mail, OFCCP released the EEO-1 Type 2 data for those

26

27  [1] The Court finds that the declaration makes a sufficient showing that DOL performed a proper

28  search to identify those companies that were currently federal contractors, so the Court will not
address Plaintiffs argument that a proper search was not performed.

United States District Court
Northern District of California

1    15 submitters who failed to timely object to the release of their EEO-1 data by May 31, 2018.

2    (Geán Decl. ¶ 27, Ex. 9.)

3         On February 22, 2019, OFCCP informed Plaintiffs that it would delay issuing a final

4    response to this FOIA request pending the outcome of the Supreme Court decision in *Argus*

5    *Leader*. (Geán Decl. ¶ 28, Ex. 10.)

6         On March 1, 2019, Plaintiffs submitted an administrative appeal pursuant to 29 C.F.R. §

7    70. (Geán Decl. ¶ 29, Ex. 11.)  On March 21, 2019, DOL acknowledged receipt of the appeal.

8    (Geán Decl. ¶ 30.)

9         On April 9, 2019, Plaintiffs filed this action.  After the case was filed, additional

10   companies decided to release the information. (Geán Decl. ¶ 32.)  As a result, the pending motions

11   only pertains to DOL's decision to withhold the EEO-1 Type 2 data for the following companies:

12   Xilinx, Applied Materials, Inc., Equinix, Gilead Sciences, Inc., Synopsys, Inc., Docusign, Inc.,

13   Agilent Technologies, Box, and Oracle America, Inc., and Fitbit, Inc. (Def.'s Mot. at 6.)

14        On August 23, 2019, Defendant filed a motion for summary judgment. (Def.'s Mot., Dkt.

15   No. 24.)  On September 30, 2019, Plaintiffs filed an opposition to the motion for summary

16   judgment and cross-motion for summary judgment. (Pls.' Opp'n, Dkt. No. 29.)  Also on

17   September 30, 2019, the Reporters Committee for Freedom of the Press filed an amicus curiae

18   brief. (Amicus Br., Dkt. No. 28-1.)  On October 28, 2019, Defendant filed an opposition to the

19   cross-motion and a reply in support of its motion for summary judgment. (Def.'s Reply, Dkt. No.

20   34.)  On November 12, 2019, Plaintiffs filed a surreply to Defendant's motion for summary

21   judgment and a reply in support of the cross-motion. (Pl.'s Surreply, Dkt. No. 35.)

## II.    LEGAL STANDARD

### A.    The Freedom of Information Act ("FOIA")

24        "Congress enacted FOIA to overhaul the public-disclosure section of the Administrative

25   Procedure Act (APA). . . ." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011).  The intent behind

26   the FOIA was to "clos[e] the loopholes which allow agencies to deny legitimate information to the

27   public." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150 (1989) (citations and quotations

28   omitted).  Its purpose was to "ensure an informed citizenry, vital to the functioning of a

United States District Court
Northern District of California

1  democratic society, needed to check against corruption and to hold the governors accountable to

2  the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152, (1989) (citations and

3  quotations omitted). Accordingly, FOIA mandates a "strong presumption in favor of disclosure,"

4  with "disclosure, not secrecy, [being its] . . . dominant objective . . . ." *U.S. Dep't of State v. Ray*,

5  502 U.S. 164, 173 (1991).

6  "At the same time, the FOIA contemplates that some information can legitimately be kept

7  from the public through the invocation of nine 'exemptions' to disclosure." *Yonemoto v. Dep't of*

8  *Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012) (citing 5 U.S.C. § 552(b)(1)-(9)); *see also Tax*

9  *Analysts*, 492 U.S. at 150-51 (agency must disclose records unless the records may be withheld

10  pursuant to one of the enumerated exemptions listed in § 552(b)); *Lion Raisins, Inc. v. U.S. Dep't*

11  *of Agriculture*, 354 F.3d 1072, 1079 (9th Cir. 2004) (the FOIA requires full agency disclosure

12  except where specifically exempted).

13     **B.    Motion for Summary judgment**

14  Summary judgment is the proper avenue for resolving a FOIA case. *See, e.g., Nat'l*

15  *Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114, 1115 (9th Cir. 1988). Summary judgment is

16  appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to

17  judgment as a matter of law." Fed. R. Civ. P. 56(a).

18  To prevail on a motion for summary judgment in a FOIA case, an agency must

19  demonstrate that, drawing all reasonable inferences in the light most favorable to the requester,

20  there is no genuine issue of material fact with regard to the agency's compliance with FOIA, both

21  in terms of conducting a search reasonably calculated to uncover all relevant documents and

22  withholding only those documents or pieces of information that fall within one of the specified

23  exemptions. *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009); *Kamman v. IRS*,

24  56 F.3d 46, 49 (9th Cir. 1995); *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).

25               **III.    DISCUSSION**

26  The instant motion pertains to DOL's decision to withhold ten EEO-1 reports pursuant to

27  FOIA's Exemption 4. (*See* Def.'s Mot. at 6.)

28

**A.** **Whether the Diversity Reports are Exempt from Disclosure under Exemption 4.**

"Exemption 4 shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.'" *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019) ("*Argus Leader*") (quoting 5 U.S.C. § 552(b)(4)). There is no dispute that the submitting companies constitute persons under FOIA, as the definition includes corporations. 5 U.S.C. § 551(2). Thus, the Court will address whether the information sought is commercial or financial in nature and whether it is privileged or confidential.

**i.** **Commercial or Financial**

Defendant argues that the documents sought are commercial in nature, because it relates to the contractors' respective business strategies, and could cause financial harm to the companies if the information is released. (*See* Def.'s Mot. at 10.) Plaintiffs argue that the information sought is not commercial or financial, rendering Exemption 4 inapplicable. (Pls.' Opp'n at 12.)

Courts "have consistently held that the terms 'commercial' and 'financial' in the exemption should be given their ordinary meanings." *Pub. Citizen Health Research Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (citations omitted). Generally, information is deemed commercial if it relates to the commercial activity of a business, but "not every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4[.]" *Id.* at 1290; *see also Bd. of Trade of City of Chicago v. Commodity Futures Trading Comm'n,* 627 F.2d 392, 403 n. 78 (D.C. Cir. 1980), abrogated on other grounds by *U. S. Dep't of State v. Washington Post Co.,* 456 U.S. 595, 102 S. Ct. 1957, 72 L. Ed. 2d 358 (1982). Indeed, a list of names and addresses of employees, which the employer was required to submit to the Government, was not considered financial or commercial under Exemption 4. *Getman v. N.L.R.B.,* 450 F.2d 670, 673 (D.C. Cir. 1971).

Here, the EEO-1 reports require federal contractors to furnish the composition of their workforce broken down by gender, race/ethnicity, and general job category. *See* U.S. EQUAL EMP'T OPPORTUNITY COMM'N, Sample EEO-1 Report, https://www.eeoc.gov/employers/eeo1survey/upload/eeo1-2-2.pdf (last visited Dec. 3, 2019). There is no salary information, sales figures, departmental staffing levels, or other identifying

United States District Court
Northern District of California

information in these reports. Rather, the diversity reports merely disclose the workforce

composition to ensure compliance with Executive Order 11,246, which prohibits employment

discrimination by federal contractors.

Even so, the Government contends that the information is "commercial." In support of this

assertion, Defendant submitted supporting declarations from several of the objecting submitters.

For example, Julie Crane of Applied Materials, contends that the information furnished in the

EEO-1 concerns

> its labor strategy, demographics, recruiting, and allocations of
> resources across its segments. Disclosing the EEO-1 information
> would provide its competitors insights into its strategy, operations,
> recruiting, and labor costs, creating substantial competitive harm.
> This would only grow over time if EEO-1 information were regularly
> released, as it would allow competitors to discern shifts and strategies
> for the business going forward, in a highly competitive field.

(Decl. of Julie Crane, "Crane Decl.," Dkt. No. 24-2 at ¶ 6.)  Similarly, Kelly Kayser, of Equinix,

also stated that Equinix's EEO-1 concerns

> its labor strategy, demographics, recruiting, and allocations of
> resources across its segments. Disclosing the EEO-1 information
> would provide its competitors insights into its strategy, operations,
> recruiting, and labor costs, creating substantial competitive harm.
> This would only grow over time if EEO-1 information were regularly
> released, as it would allow competitors to discern shifts and strategies
> for the business going forward, in a highly competitive field.

(Decl. of Kelly Kayser, "Kayser Decl.," Dkt. No. 24-3 at ¶ 6.) The Court notes that these

conclusory declarations have other similarities beyond the verbatim rationale that the requested

information are commercial.  The Court, however, notes that the EEO-1 form does not ask

submitting companies to explain how resources are allocated across a company's "segments."

Rather, the report is organized by job category, such as "Professionals," "Sales Workers,"

"Operatives," "Craft Workers," "Laborers and Helpers," etc.  It does not request demographic

information by division, department, or "segment." The data sought is companywide.

Another declaration claims that the workforce data provided could make the company

vulnerable to having its "diverse talent" poached by its competitors. (Decl. of Tania Barrios,

"Barrios Decl.," Dkt. No. 24-1 ¶ 4.)  Ms. Barrios attests that, when employees are lured away by

other companies, her employer, Xilinx, "lose[s] the talent and experience of the departing

United States District Court
Northern District of California

1    employees and it would lose the significant investment it has made in training those employees."

2    *Id.* at 4.  Additionally, Xilinx would incur substantial cost in attempting to fill the positions

3    vacated by those departed employees. *Id.*  While lost talent costs companies money, there is a

4    significant disconnect between access to workforce composition and poaching "diverse talent."

5    The Court finds the claim that the EEO-1 reports would make it easier for competitors to lure

6    away talent to be dubious, since the job categories are so general. For example, the "Professionals"

7    category includes most jobs that require a bachelors or graduate degree, including "accountants

8    and auditors; airplane pilots and flight engineers; architects; artists; chemists; computer

9    programmers; designers; dieticians; editors; engineers; lawyers; librarians; mathematical

10   scientists; natural scientists; registered nurses; physical scientists; physicians and surgeons; social

11   scientists; teachers; and surveyors." U.S. EQUAL EMP'T OPPORTUNITY COMM'N, EEO-1 Survey

12   Fact Sheet for Filers, https://www.eeoc.gov/employers/eeo1survey/2007instructions.cfm (last

13   visited Dec. 4, 2019).  Since there is no breakdown by department, the total number of

14   professionals reported not only includes the company's computer programmers and engineers, but

15   also its lawyers and accountants.  Moreover, even without access to general demographic

16   information, there is nothing stopping competitors from recruiting highly coveted female and

17   minority employees via headhunters or networking websites, such as LinkedIn or Dice. (*See*

18   Barrios Decl. ¶ 4.)  Regardless, concerns regarding poaching go more to the confidentiality

19   element of the exemption than the commercial one.

20        Without addressing every declaration submitted by the Government, the Court notes that

21   other declarations misrepresent the breadth of information contained in the EEO-1 reports. For

22   example, the declaration of Nancy Lewis-Treolo, Senior Director of HR Operations at Docusign,

23   states that the "EEO-1 report contains highly sensitive commercial information, including the

24   number of its employees, the types of positions they hold, the span of managerial control, and the

25   distribution of those employees within various teams." (Decl. of Nancy Lewis-Treolo, "Lewis

26   Treolo Decl.," Dkt. No. 24-6 at ¶ 6.)  As discussed above, the report does not provide information

27   regarding the distribution of employees within various divisions, departments, segments or

28   "teams."  Rather, the information sought is general job categories and the data provided is

companywide.

In its reply, Defendant cites to *100Reporters LLC v. United States Dep't of Justice*, 248 F. Supp. 3d 115, 137 (D.D.C. 2017), in support of its contention that the demographic information is commercial because "[i]nformation that is instrumental to a commercial interest is sufficiently commercial for the purpose of Exemption 4." (Def.'s Reply at 2.) In *100Reporters*, the court found that the Three Year Work Plan documents were commercial because they "set forth the steps the Monitor planned to take to evaluate Siemens' compliance programs… [and] reflect[ed] 'Siemens' business operations, structure, and compliance controls.'" *Id.* at 137. "For example, the Monitor's first work plan describes 'the number of Siemens employees in each country, new orders, new government orders, joint ventures and business partnerships, and Siemens' business development strategy across different sectors of the economy.'" *Id.* [2] In sum, the documents found to be commercial in *100Reporters* reflect a level of detail not contained in the EEO-1 reports at issue here. Thus, the Government's reliance on *100Reporters* is misplaced.

Finally, the Government argues that "[t]he various job categories as well as the number of people hired in each category contained in the EEO-1, Type 2 reports is instrumental to each submitter's ability to carry out its commercial interests. Businesses cannot engage in commerce without the sufficient personnel in specified job categories, which is thus related to the businesses' commercial enterprise." (Def.'s Reply at 2.) Essentially, the Government is asking the Court find exempt any statistical information pertaining to employees simply because the business is a commercial enterprise. This expansive interpretation has been rejected. *See Getman,* 450 F.2d at 673. At the hearing, the Court asked the Government how the demographic information was

---

[2] The Court notes that, after an *in camera* review to determine segregability, the district court found that most of the documents withheld were not exempt, because they "consist[ed] mostly of general descriptions of the Monitor's past and future activities with very few details about Siemens' business operations." *100Reporters LLC v. United States Dep't of Justice*, 316 F. Supp. 3d 124, 140 (D.D.C. 2018). The district court did, however, find the "Countries of Interest" section, which included "the number of Siemens employees in each country" to be exempt, but that section also included information pertaining to "new orders, new government orders, joint ventures and business partnerships, and Siemens' business development strategy across different sectors of the economy," so it is possible that the labor information was not easily segregated from the commercial information. *See id.* at 141 (internal quotations omitted). Nevertheless, the undersigned is not bound by the district court's decision.

United States District Court
Northern District of California

1   commercial, and the Government argued that the information would reveal each submitting

2   company's organization chart, corporate structure, and how it allocates resources. As discussed

3   above, it is impossible to discern a corporation's structure given the EEO-1's general job

4   categories, and the furnished information is companywide rather than by department.

5   　　Accordingly, in light of the absence of information pertaining to specific positions or

6   departments, the Court finds that the Government has failed to make a showing that the

7   demographic information contained in the EEO-1 reports is commercial. As a result, the

8   Government was not justified in applying Exemption 4 to the EEO-1 reports, and they must be

9   produced unredacted.

10   　　　　**ii.   Confidentiality**

11   　　Since the information sought is not commercial in nature, the Court need not address

12   whether the information is confidential under *Argus Leader.*

13   　　Nonetheless, the Court is not convinced that the information sought would be confidential.

14   In *Argus Leader*, the Supreme Court found that uncontested testimony established that the

15   information was not disclosed, or made "publicly available 'in any way[,]'" suggested that it was

16   confidential. 139 S. Ct. at 2363. To the contrary, here, at least one of the objecting companies,

17   Gilead, published a summary of the EEO-1 data in its annual report, and included a notation that

18   the information was based on the company's 2016 EEO-1 filing. (*See* Suppl. Decl. of D. Lissette

19   Geán, Dkt. No. 34-1 ¶¶ 13-15; Gilead Sciences, 2016 Year in Review report at 24,

20   http://investors.gilead.com/static-files/33588c5a-7f81-437a-b35a-379514d49eff (last visited Dec.

21   6, 2019).) While the Year in Review's demographic information did not provide all data points

22   from the EEO-1 report, the information disclosed was substantial enough to undermine the

23   Government's claim of confidentiality, and call into doubt the supporting declaration from

24   Gilead's corporate representative that the company treats this information as private and "does not

25   release its EEO-1 reports to the general public…." (Decl. of Mirelle King, Dkt. No. 24-4 at ¶ 5.)

26   　　Thus, while the Court need not determine whether the information sought is confidential,

27   there is a significant possibility that at least some of the reports may not be.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.**   **Whether the Foreseeable Harm Standard is Satisfied.**

Even if the information was exempt, the Government has failed to carry its burden of

showing that foreseeable harm would result should the documents be released.

In 2016, Congress passed the FOIA Improvement Act of 2016 ("FIA"), which amended

FOIA to limit the circumstances under which an agency may withhold records from the public.

Among other things, the FIA introduced the foreseeable harm standard, which agencies must

satisfy for all FOIA requests filed **after** the bill's enactment (June 30, 2016). P.L. 114-185, 130

Stat. 538 (2016) (emphasis added). The foreseeable harm standard prohibits agencies from

withholding information unless (1) the agency reasonably foresees that disclosure of the record

would harm an interest protected by an exemption, or (2) the disclosure is prohibited by law. 5

U.S.C. § 552(a)(8)(A)(i). Consequently, even if information falls within the scope of a

discretionary exemption, it cannot be withheld from the public unless the agency also shows that

disclosure will harm the interest protected by that exemption. *Id.*; *see also Judicial Watch, Inc. v.

U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019).

Here, Plaintiffs argue that even if the reports would be otherwise exempt under Exemption

4, the Government has failed to meet its burden under the FIA, because it has not shown that

foreseeable harm would result if the records were released. (Pl.'s Opp'n at 13; Amicus Br. At 4.)

Defendant argues that to impose the foreseeable harm standard would render *Argus Leader*

meaningless. (Def.'s Reply at 7.)  The Court disagrees. The substantial competitive harm test set

forth in *National Parks & Conservation Association v. Morton,* 498 F.2d 765, 768 (D.C. Cir.

1974)*,* was fashioned from legislative history, rather than statute, which was the grounds for its

abrogation. *Argus Leader*, 139 S. Ct. at 2364.  Post-FIA, the foreseeable harm standard applies to

all exemptions, and is not restricted to Exemption 4.  As discussed at the hearing, the FOIA

request in *Argus Leader* was filed before FIA was enacted, so the foreseeable harm standard was

not applicable. In fact, the Supreme Court did not address the validity of the foreseeable harm

standard.  Today, FIA codifies the requirement that the agency articulate a foreseeable harm to an

interest protected by an exemption that would result from disclosure. Here, the Government does

not attempt to make such a showing, and instead relies on *Argus Leader* as the reason why it need

1 | not do so.

2 |   Accordingly, the Court finds that the Government has failed to carry its burden under the

3 | FIA's foreseeable harm standard.

4 |   **C. Segregation**

5 |   Finally, if the agency determines that full disclosure is not possible, it is required to

6 | consider whether partial disclosure is possible and to "take reasonable steps necessary to segregate

7 | and release nonexempt information[.]" 5 U.S.C. § 552(a)(8)(ii).  Even if the Government showed

8 | that its application of Exemption 4 was justified, and there was some foreseeable harm, it would

9 | have to take reasonable steps to redact the documents.  It made no such attempt.

10 |   At the hearing, the Court asked Defendant why it could not, at the very least, redact the

11 | documents and produce the total numbers.  The Government did not have a response, and asked if

12 | it could "look into" that.  The Government is free to look into the feasibility of segregation;

13 | however, it had an obligation to segregate and release nonexempt information when the request

14 | was made, which it did not do.

15 |   Accordingly, the Court declines to delay its ruling for that purpose, and finds that the

16 | Government did not attempt to segregate nonexempt information as required by statute.

17 |     **IV. CONCLUSION**

18 |   In light of the foregoing, the Court DENIES the Government's motion for summary

19 | judgment and GRANTS Plaintiffs' cross-motion for summary judgment.  The Government shall

20 | produce the 10 remaining EEO-1 reports within 30 days of this order, and shall do so without

21 | redaction.

22 |   IT IS SO ORDERED.

23 | Dated: December 10, 2019

24 | KANDIS A. WESTMORE

25 | United States Magistrate Judge

*United States District Court*
*Northern District of California*

# EXHIBIT F



Shawn Musgrave <smusgrave@revealnews.org>

## Fwd: Acknowledgment

1 message

**Will Evans** <wevans@revealnews.org>                                    Fri, Oct 15, 2021 at 6:51 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **Karamoko, Arginia - SOL** <Karamoko.Arginia@dol.gov>
Date: Fri, Sep 18, 2020 at 12:50 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>

Hello:

Your request has been assigned to the Office of Federal Contract Compliance Programs (OFCCP) with
tracking number **897123**. When they begin processing it, you will be able to track its progress at
www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through
ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking
number in the Subject line of any submission to the agency or to have it available at the time of a call.

Sincerely,

## Arginia Karamoko

Government Information Specialist, Office of Information Services

Office of the Solicitor | Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 | Washington, DC  20210

T: (202) 693-5531 | F: (202) 693-5389 |  E: karamoko.arginia@dol.gov

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Friday, September 11, 2020 8:26 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Subject:** FOIA request - OFCCP

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2018.**

I am requesting this data in electronic format, by email. Fulfilling this request is not unduly burdensome because there is no need to notify federal contractors.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," **as federal contractor EEO-1s have been determined to be public records that must be disclosed, not confidential commercial information**. Please see the Dec. 10, 2019 ruling by Judge Kandis Westmore in U.S. District Court for the Northern District of California, 4:19-cv-01843-KAW (attached).

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608



www.revealnews.org

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# EXHIBIT G

**U.S. Department of Labor**

Office of Federal Contract Compliance Programs
200 Constitution Avenue, N.W.
Washington, D.C. 20210



October 2, 2020

Via Electronic Mail

Will Evans
The Center for Investigative Reporting
1400 65th Street, Suite 200
Emeryville, CA 94608

RE: Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Mr. Evans:

This letter is to acknowledge receipt of your Freedom of Information Act (FOIA) request
submitted to *foiarequest@dol.gov*.  The Office of the Solicitor assigned your request to the
Office of Federal Contract Compliance Programs (OFCCP) on September 18, 2020.  Please refer
to the above-referenced FOIA tracking number in any future correspondence regarding your
FOIA request.

You requested a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal
contractors for 2018.

We consider you to be a representative of the news media as defined by the U.S. Department of
Labor FOIA regulations at 29 CFR § 70.40(c)(3), therefore, only reproduction costs will be
assessed, excluding charges for the first 100 pages.  You will receive written notification if the
total estimated fee for processing your request exceeds $25.00.

OFCCP's National Office will process your request for EEO-1 data.  Once we compile the data,
we will send a letter to the submitters notifying them of the request for their EEO-1 data.

In accordance with 29 CFR § 70.26 and Executive Order 12600, because your request covers
information that may be protected from disclosure under FOIA Exemption 4, OFCCP is required
to notify submitters that their information has been requested under the FOIA to give them an
opportunity to object in writing to disclosure of any specified portion of the requested
information.  For those submitters who do not object, we will provide the information with any
necessary redactions consistent with FOIA.  For those submitters who do object, OFCCP will
evaluate any response provided by the submitter as to why the requested information should be
withheld and make its own determination as to whether the specific facts and relevant law
warrant disclosure or withholding of the requested information.

Due to the volume and complexity of the FOIA requests we have received, we anticipate that
providing a full response will take longer than 20 business days to fulfill. Accordingly, OFCCP
will take an additional 10 business days to fulfill your request as afforded by the FOIA at 5
U.S.C. § 552(a)(6)(B)(i). We will contact you if we are unable to fulfill your request in 30
business days.

We consider you a "news media" type of requestor. As a "news media" requestor, we charge
you for photocopying after the first 100 pages in accordance with the U.S. Department of Labor
FOIA regulations at 29 CFR § 70.40(c)(4). DOL's FOIA regulations at 29 CFR § 70.42(a) deem
that the filing of a FOIA constitutes an agreement by the requester to pay all fees up to $25.00.

If you need further assistance or would like to discuss any aspect of your request, please do not
hesitate to contact this office at (202) 693-0101 or by email at OFCCP_NO_FOIA@dol.gov.
Alternatively, you may wish to contact the DOL FOIA Public Liaison, Thomas Hicks, at (202)
693-5427 or by email at hicks.thomas@dol.gov.

You may also contact the Office of Government Information Services (OGIS), within the
National Archives and Records Administration (NARA), to inquire about the mediation services
they offer. The contact information for OGIS is as follows: Office of Government Information
Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, MD
20740-6001. You can also reach that office by email at ogis@nara.gov, by phone at (202)
741-5770, by fax at (202) 741-5769, or by calling toll-free at (877) 684-6448.

If you are not satisfied with the response to this request, you may administratively appeal by
writing to the Solicitor of Labor within 90 days from the date of this letter. In the appeal, you
must state in writing the grounds for the appeal, and may include any supporting statements or
arguments, but such statements are not required. To facilitate processing of the appeal, please
include your mailing address and daytime telephone number, as well as a copy of the initial
request and copy of this letter. Clearly mark "Freedom of Information Act Appeal" on the
envelope and letter of the appeal. You must make any amendment to the appeal in writing and
we must receive it prior to a decision. Address the appeal to the Solicitor of Labor, Division of
Management and Administrative Legal Services, U.S. Department of Labor, 200 Constitution
Avenue, NW, Room N2420, Washington, DC 20210. You may submit your appeal by email to
foiaappeal@dol.gov. The Department does not accept appeals submitted to any other email
address.

Sincerely,

DORIS GEAN    Digitally signed
              by DORIS GEAN

Doris Lissette Geán
FOIA Manager

2

EXHIBIT H



**Dara Gray <dgray@revealnews.org>**

---

## Fwd: Freedom of Information Act Request Acknowledgement – Tracking No. 897123

**Dara Gray** <dgray@revealnews.org>                                    Tue, Nov 15, 2022 at 3:55 PM
To: Dara Gray <dgray@revealnews.org>

---------- Forwarded message ---------
From: **Alexandra Gutierrez** <agutierrez@revealnews.org>
Date: Fri, Dec 11, 2020 at 4:41 PM
Subject: Re: Freedom of Information Act Request Acknowledgement – Tracking No. 897123
To: OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>
Cc: Victoria Baranetsky <vbaranetsky@revealnews.org>, Will Evans <wevans@revealnews.org>, Hicks, Thomas - SOL <Hicks.Thomas@dol.gov>


   VIA EMAIL

   Doris Lissette Geán
   FOIA Manager
   Department of Labor
   200 Constitution Avenue, N.W.
   Washington, D.C. 20210
   OFCCP_NO_FOIA@dol.gov


  Re:  Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Ms. Geán:

      We are following up on your e-mail correspondence dated November 7, 2020, and we write seeking an update as to the status of FOIA Request No. 897123.  We would also like to remind the Department that Judge Westmore's opinion remains in effect, *see Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771 (N.D. Cal. 2019), as a stay was granted only as to Synopsys's records, *see Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, No. 4:19-CV-01843-KAW, ECF No. 79 (July 20, 2020). Unless and "until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected."  *United States v. Mine Workers*, 330 U.S. 258, 294 (1947) (citation omitted).

      Again, thank you for your assistance for this matter.  We look forward to the expeditious fulfillment of the request and to the avoidance of unnecessary litigation.

Sincerely,


Alexandra M. Gutierrez

cc:   D. Victoria Baranetsky, General Counsel, Center for Investigative Reporting
     Will Evans, Report, Center for Investigative Reporting
     Thomas Hicks, DOL FOIA Public Liaison

ER-456

enc: PDF copy

On Sat, Nov 7, 2020 at 1:50 PM OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov> wrote:

Good afternoon Ms. Gutierrez,

We acknowledge receipt of your email/letter.  We are reviewing it and will get back to them shortly.

Thank you,

**D. Lissette Geán**

FOIA Manager

Office of Federal Contract Compliance Programs

---

**From:** Alexandra Gutierrez <agutierrez@revealnews.org>
**Sent:** Friday, October 30, 2020 8:56 PM
**To:** OFCCP NO FOIA <OFCCP_NO_FOIA@DOL.GOV>
**Cc:** Victoria Baranetsky <vbaranetsky@revealnews.org>; Will Evans <wevans@revealnews.org>; Hicks, Thomas - SOL <Hicks.Thomas@dol.gov>
**Subject:** Re: Freedom of Information Act Request Acknowledgement – Tracking No. 897123

CAUTION - The sender of this message is external to the DOL network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@dol.gov.

VIA EMAIL

Doris Lissette Geán

FOIA Manager

Department of Labor

200 Constitution Avenue, N.W.

Washington, D.C. 20210

OFCCP_NO_FOIA@dol.gov

Re:  Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Ms. Geán:

We received your letter dated October 2, 2020, acknowledging FOIA Request No. 897123 made by Center for Investigative Reporting ("CIR") reporter Will Evans. That request seeks a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2018, and it is a follow-on request to FOIA Request No. 875877 (seeking same for 2017) and 872421 (same for 2016).

CIR understands that the Department of Labor intends to act in contravention of a federal court decision and grant EEO-1 submitters the opportunity to object in writing to disclosure of information pertaining to them. CIR would like to remind DOL that, just last year, Judge Westmore addressed CIR's request for 2016 EEO-1 report data and concluded that the "Government was not justified in applying Exemption 4" to this information, requiring the EEO-1 reports to "be produced unredacted." *Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771, 779 (N.D. Cal. 2019).

The Government chose not to appeal this still-binding ruling. *See Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, No. 4:19-CV-01843-KAW, 2020 WL 554001, at *1 (N.D. Cal. Feb. 4, 2020) (noting DOL's decision "that it would not be appealing the December 10, 2019 order"). Moreover, all but one of the relevant EEO-1 submitters decided against intervention. Although the District Court has permitted a single third party, Synopsys, Inc., to intervene for the limited purpose of appealing the December 10, 2019 order, *see Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, No. 4:19-CV-01843-KAW, ECF No. 79 (July 20, 2020), the Government has indeed noticed an intention to cross-appeal and oppose that intervention, *see id.*, ECF No. 93 (Sept. 18, 2020). The December 10, 2019 order generally remains in effect, as the parties, including the Government, stipulated that it would only be stayed as to the "disclosure of the requested Synopsys information." *Id.*, ECF No. 87, ¶ 2 (July 28, 2020).

Given the continuing force of the December 10, 2019 order and the Government's current position on this litigation, CIR is perplexed by DOL's current plan of action as to FOIA Request No. 897123. We hope this clarifies any existing misunderstanding and allows us to avoid needless, repetitive litigation. We thank you in advance for your fulfillment of this request.

Sincerely,

Alexandra M. Gutierrez

cc:    D. Victoria Baranetsky, General Counsel, Center for Investigative Reporting
       Will Evans, Report, Center for Investigative Reporting
       Thomas Hicks, DOL FOIA Public Liaison

enc: PDF copy

--
Dara Gray
First Amendment Fellow
c: (404) 395-2356



📄 **FOIAReq897123_Dec112020Letter.pdf**
414K

# EXHIBIT I

10/14/21, 11:32 AM Case 3:22-cv-01082-WHA Document 35 mail.google.com/mail/u/0?ik=...quest - Tracking Nos. 872421 and 897123



Shawn Musgrave <smusgrave@revealnews.org>

## Fwd: Freedom of Information Act Requests – Tracking Nos. 872421 and 897123

**Will Evans** <wevans@revealnews.org>                                    Thu, Sep 30, 2021 at 10:30 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **Alexandra Gutierrez** <agutierrez@revealnews.org>
Date: Thu, Jan 7, 2021 at 9:13 AM
Subject: Re: Freedom of Information Act Requests – Tracking Nos. 872421 and 897123
To: Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov>
Cc: Victoria Baranetsky <vbaranetsky@revealnews.org>, Will Evans <wevans@revealnews.org>, Hicks, Thomas - SOL <hicks.thomas@dol.gov>

VIA E-MAIL

Doris Lissette Geán
FOIA Manager
Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C. 20210
OFCCP_NO_FOIA@dol.gov

Re:  Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Ms. Geán,

We are following up on your December 18, 2020 e-mail. While we are considering are options as to the Department of Labor's current position as to our reporter's request, we seek answers to the following questions:

1. When did the Department provide E.O. 12600 notices to submitters?
2. Have any submitters responded, either objecting or consenting?
3. For those submitters who have consented or have waived their opportunity to object due to the passage of a reasonable amount of time, would the Department be able to provide their submitted reports on a rolling basis.

We appreciate your attention to these inquiries.

Sincerely,

10/14/21, 11:32 AM Center for Investigative Reporting Mail - Fwd: FOIA requests 897121 and 897123

Case 3:22-cv-07182-WHA Document 35 Filed 05/03/23 Page 67 of 132

Alexandra M. Gutierrez

cc:    D. Victoria Baranetsky, General Counsel, Center for Investigative Reporting
       Will Evans, Reporter, Center for Investigative Reporting
       Thomas Hicks, DOL FOIA Public Liaison

On Fri, Dec 18, 2020 at 9:32 AM Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov> wrote:
    Via Electronic Mail

    Dear Ms. Gutierrez:

    We have received your December 11, 2020, e-mail inquiring about outstanding FOIA requests that,
    combined, seek two years (2016 and 2018) of EEO-1 consolidated (Type 2) reports for all federal
    contractors.

    As you are aware, we have complied with the district court's order and released the 2016 reports of the
    individual submitters who have not appealed the court's decision in the matter of *Ctr. for Investigative
    Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771, 779 (N.D. Cal. 2019). Your outstanding FOIA
    requests seek the EEO-1, Type 2 reports of well over 15,000, and possibly over 20,000 submitters from
    countless industries whose reports are not subject to that court order.

    We continue to be subject to Executive Order 12600 and are obligated to notify submitters of requests for
    their potentially confidential commercial information. *See* 29 C.F.R. § 70.26. Under Executive Order
    12600, we must afford submitters a reasonable period of time to object to the disclosure of any portion of
    the information and to state all grounds upon which disclosure is opposed.  The submitters that are the
    subject of your request have not had the opportunity to demonstrate whether their EEO-1, Type 2 reports
    contain confidential commercial information.  Moreover, while we do not believe that the Northern
    California's District Court's decision in *Center for Investigative Reporting* has precedential effect on all
    EEO-1, Type 2 reports, we note that this matter is currently on appeal before the U.S. Court of Appeals for
    the Ninth Circuit and there is still a chance that the district court's holding may be overturned.


    Sincerely,




    D. Lissette Geán

    FOIA Manager


--
Alexandra M. Gutierrez
First Amendment Fellow
**(c)** 907-209-1799



https://mail.google.com/mail/u/0?ik=65e5ad97f2&view=pt&search=all&permmsgid=msg-f%3A1712394047104629090&simpl=msg-f%3A1712394047104629090          2/3

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# EXHIBIT J

| From: | OFCCP NO FOIA |
|---|---|
| To: | "Will Evans" |
| Bcc: | Gean, Lissette - OFCCP |
| Subject: | RE: amendment request |
| Date: | Tuesday, May 11, 2021 12:05:00 PM |

Dear Mr. Evans,

We have modified request 872421 to include a spreadsheet of the consolidated (Type 2) EEO-1 reports for all federal contractors for the years 2016 through 2018.

We will administratively close request 897123.

Cordially,

Bruce Andersen
The OFCCP FOIA Team

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Monday, May 10, 2021 1:02 PM
**To:** OFCCP NO FOIA <OFCCP_NO_FOIA@DOL.GOV>
**Subject:** amendment request

> CAUTION - The sender of this message is external to the DOL network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@dol.gov.

Dear FOIA Officer,

I would like to amend my FOIA request #872421 to include a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2017 and 2018 as well as 2016.

If you agree to this amendment, I will withdraw my separate FOIA #897123 for the 2018 data.

Please let me know.
Thank you very much.
Best,
Will Evans
--
Will Evans
reporter
office: 510-809-2209
cell: 510-333-9584



www.revealnews.org

ER-465

EXHIBIT K



Secretary of Labor Martin J. Walsh
Office of the Secretary of Labor
200 Constitution Ave, NW
Room C-2318
Washington, DC 20210

Solicitor of Labor Seema Nanda
Office of the Solicitor of Labor
200 Constitution Ave, NW
Washington, DC 20210

Director Jenny R. Yang
Office of Federal Contract Compliance Programs
200 Constitution Ave, NW
Room C–3325
Washington, DC 20210


May 23, 2022


VIA ELECTRONIC DELIVERY


**Re: FOIA Request No. 872421 and DOL's Wrongful Withholding of EEO-1 Type 2 Forms That Should be Released and Published Prospectively**


To Whom It May Concern:

The Center for Investigative Reporting ("CIR") writes to object to the agency's withholding of records requested under the Freedom of Information Act ("FOIA") by our reporter, Mr. Will Evans.  Mr. Evans's FOIA request, which has been pending for *more than three years*, seeks disclosure of aggregate workforce diversity data submitted by federal contractors to the Department of Labor ("DOL")'s Office of Federal Contract Compliance Programs ("OFCCP").  This withholding is in contravention of legal authority.

According to OFCCP, the agency's extensive delay in responding to this request is due to its need to consult with thousands of federal contractors to ascertain whether they object to

1400 65th, Suite 200 Emeryville, CA 94608
PHONE 510 809 3160          TWITTER @reveal
WEB revealnews.org

ER-467

disclosure of their diversity data.  It is unclear whether OCFPP has attempted to initiate that process.  Nevertheless, CIR disputes that such consultation is appropriate or necessary in the first instance.  The agency's withholding is in direct contravention of law in light of recent court decisions, including a federal district court ordering disclosure of diversity data, an opinion which the DOL did not appeal and which the U.S. Ninth Circuit Court of Appeals left undisturbed, as discussed below.  These records should be disclosed immediately.  Regardless, even if the agency wanted to formalize this disclosure process moving forward, by proactively publishing these records on its website, it could provide a broad notice to companies, instead of reaching out to federal contractors individually.  According to agency rules, DOL has the authority to expedite its consultation process by publishing notices in the Federal Register.

In light of its obligations under FOIA, CIR demands DOL disclose the requested records and prospectively publish these records online.  If DOL fails to act and continues to withhold these records, CIR will be required to file suit under FOIA, yet a third time.

## I.  Background on EEO-1 Reports

Since 1966, certain federal contractors have been required to submit workforce demographic data to the U.S. Equal Opportunity Commission on an annual basis.[1]  OFCCP uses these diversity reports, the EEO-1 Consolidated Reports (Type 2) ("EEO-1 Type 2 reports") to evaluate contractors' compliance with anti-discrimination laws, particularly Executive Order 11246.[2]  For decades, momentum has been growing to make the diversity data in EEO-1 Type 2 reports accessible and keep federal contractors accountable to the public.  As far back as 1974, courts have required EEO-1 Type 2 reports to be disclosed under FOIA.[3]  Many companies now post their reports online as part of their own social responsibility commitments.[4]  Members of

---

[1] *See* 41 C.F.R. § 60-1.7(a).

[2] *See* 30 Fed. Reg. 12,319 (Sept. 28, 1965).

[3] As OFCCP explains on its website, "[C]ourts have ruled that the Title VII prohibition against disclosure does not apply to OFCCP's collection of EEO-1 data."  OFCCP, *Freedom of Information Act (FOIA) Frequently Asked Questions*, https://www.dol.gov/agencies/ofccp/ faqs/foia (citing *Sears Roebuck & Co. v. Gen. Servs. Admin.*, 509 F.2d 527, 529 (D.C. Cir. 1974) as one such ruling).

[4] For example, Intel proactively began posting diversity reports online in 2008.  Intel, *Workforce Demographics*, 2008, http://web.archive.org/web/20081224004419/http://www.intel.com/intel/ diversity/divpractice.htm.  Google began posting its diversity data in 2014 after a similar FOIA lawsuit, and Microsoft followed suit in 2015.  Murrey Jacobson, *Google finally discloses its diversity record, and it's not good*, PBS Newshour, May 28, 2014, https://www.pbs.org/ newshour/nation/google-discloses-workforce-diversity-data-good; Laura Lorenzetti, *Microsoft releases diversity stats: How the tech giant sizes up*, Fortune, Jan. 5, 2015, https://fortune.com/ 2015/01/05/microsoft-eeo-1-diversity-tech.

2

Congress[5] and legislative commissions,[6] civil rights activists,[7] and scholars have been calling for this data to be more accessible, including in response to CIR's reporting. In March 2019, after CIR sued DOL for diversity data the first time, Representative Emanuel Cleaver II wrote to the DOL stating this data should not be withheld under Exemption 4, as EEO-1 reports "enumerate the diversity of firms accepting the taxpayer money."[8]

As part of his reporting for CIR over the last decade, Mr. Evans has submitted numerous FOIA requests to OFCCP for EEO-1 Type 2 reports and data. In addition to the FOIA request addressed herein, Mr. Evans has previously requested EEO-1 Type 2 reports regarding specific companies and CIR has previously sued DOL twice over its refusal to release these reports on the basis of Exemption 4. The first of these lawsuits was voluntarily dismissed in 2018 after DOL reversed its prior determination that five companies' reports were exempt.[9] In the second lawsuit, the court granted summary judgment to CIR, ruling in December 2019, "the Government failed to make a showing that the demographic information contained in the EEO-1 reports is commercial.[10] As a result, the Government was not justified in applying Exemption 4 to the EEO-1 reports, and the court ruled they "must be produced unredacted."[11] The government chose not to appeal that ruling and the U.S. Ninth Circuit Court of Appeals recently

---

[5] Members of Congress have called for greater access to diversity reports, both via companies' proactive disclosures and via OFCCP's disclosures under FOIA. *See, e.g.*, Jessica Guyun, *Barbara Lee calls on Apple, tech holdouts to release diversity data*, USA TODAY, Aug. 4, 2015, https://www.usatoday.com/story/tech/2015/08/04/barbara-lee-black-caucus-federal-diversity-data- apple/31128479.

[6] The Federal Glass Ceiling Commission, created by the Civil Rights Act of 1991, stated in its 1995 report that the government should "explore the possibility of mandating public release of EEO-1 forms for Federal contractors and publicly-traded corporations." GLASS CEILING COMM'N, *A Solid Investment: Making Full Use of the Nation's Human Capital* 42-43, Nov. 1, 1995, https://ecommons.cornell.edu/handle/1813/79349.

[7] For example, civil rights activist Rev. Jesse Jackson has called on companies to release diversity statistics. *See* Salvador Rodriguez, *Jesse Jackson Gives Uber a Diversity Deadline*, INC.COM, Jan. 5, 2017, https://www.inc.com/salvador-rodriguez/uber-diversity-jesse-jackson.html.

[8] Letter from Emanuel Cleaver II, Member of Congress, U.S. House of Representatives, to Alexander Acosta, Secretary, U.S. Department of Labor (Mar. 6, 2019), https://cleaver.house.gov/sites/cleaver.house.gov/files/DOL FOIA.pdf.

[9] *Ctr for Investigative Reporting v. Dep't of Labor*, No. 3:18-cv-02008 (N.D. Cal. Dec. 21, 2018).

[10] *Ctr. for Investigative Reporting v. Dep't of Labor*, 424 F. Supp. 3d 771, 779 (N.D. Cal. Dec. 10, 2019).

[11] *Id.*

3

1400 65th, Suite 200 Emeryville, CA 94608
PHONE 510 809 3160                    TWITTER @CIRonline
WEB cironline.org

left it undisturbed following a belated challenge by the single holdout company whose data was at issue.[12]

OFCCP asserts that DOL regulations and Executive Order 12600 require notification to individual submitters to consult if this information qualifies as "confidential commercial information."[13]  First, the very same DOL regulations allow such notification "by posting or publishing notice reasonably likely to accomplish such notification" in cases where "notification to a voluminous number of submitters is required."[14]  Second, either time-consuming and burdensome notification process directly contradicts a federal court opinion requiring disclosure. Now that EEO-1 Type 2 reports have been ruled as outside the scope of Exemption 4, any such consultation is in contravention of a federal court decision.  The agency's own prior actions confirm this conclusion.  In a similar context, DOL released data online regarding workplace injuries and illnesses for tens of thousands of employers — without consulting with each company individually — after courts ruled this data is outside the scope of Exemption 4.[15]

## II.    Procedural History

Mr. Evans submitted the requested EEO-1 Type 2 data for all federal contractors more than three years ago, in January 2019.  He initially submitted three separate requests for annual data for the years 2016, 2017, and 2018.  *See* Exhibits A, B, and C.[16]  In May 2021, at OFCCP's request, Mr. Evans agreed to combine these requests into one FOIA request for all three years' worth of data.  *See* Exhibit D.  That combined request has been assigned OFCCP tracking number 872421.  *Id.*

On numerous occasions, OFCCP indicated that Mr. Evans's request required company-by-company consultation which posed logistical challenges due to the volume of federal contractors who might object to disclosure of their diversity data.  For example, in July 2019, the OFCCP FOIA office estimated that there were "more than 100,000 responsive records"

---

[12] *Evans v. Synopsys*, No. 20-16416 (9th Cir. May 12, 2022), https://cdn.ca9.uscourts.gov/ datastore/opinions/2022/05/12/20-16416.pdf (dismissing company's untimely appeal for lack of jurisdiction).

[13] 29 C.F.R. § 70.26; *see also* OFCCP FOIA website, *supra* note 3.

[14] 29 C.F.R. § 70.26(c); *see also* 29 C.F.R. § 70.26(j) ("Where notification of a voluminous number of submitters is required, such notification may be accomplished by posting and publishing the notice in a place reasonably calculated to accomplish notification.")

[15] DOL, *U.S. Department of Labor Releases Work-Related Injury and Illness Data*, Sept. 4, 2020, https://www.dol.gov/newsroom/releases/osha/osha20200904; *see also Ctr. for Investigative Reporting v. Dep't of Labor*, No. 4:18-cv-02414, 2020 WL 2995209 (N.D. Cal. June 4, 2020); *Public Citizen Foundation v. Dep't of Labor*, No. 1:18-cv-00117 (D.D.C. June 23, 2020).

[16] The FOIA request for the 2016 EEO-1 Type 2 data was submitted on January 10, 2019, and assigned tracking number 872421.  Ex. A.  The FOIA request for the 2017 data was submitted on March 25, 2019, and assigned tracking number 875877.  Ex. B.  The FOIA request for the 2018 data was submitted on September 11, 2020, and assigned tracking number 897123.  Ex. C.

4

1400 65th, Suite 200  Emeryville, CA 94608
PHONE  510 809 3160                    TWITTER  @CIRonline
WEB  cironline.org

pertaining to the 2016 data, and that "the cost in sending more than 100,000 letters would be unduly burdensome." *See* Exhibit E. Following the December 2019 ruling in CIR's favor, OFCCP suggested the court's ruling did not have any "precedential effect" and that it was obligated to consult individual federal contractors in response to Mr. Evans's request for aggregate data. *See* Exhibit F at 2. In December 2020, for example, OFCCP estimated that this request involved "the EEO-1, Type 2 reports of well over 15,000, and possibly over 20,000 submitters from countless industries." *Id.*

Since January 2021, OFCCP has not answered CIR's questions about what steps, if any, the agency has taken to date to consult with companies whose data is at issue in Mr. Evans's request. *Id.* at 1.

## III.  Discussion

The Freedom of Information Act seeks "to ensure an informed citizenry, vital to the functioning of a democratic society." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Under FOIA, "each agency . . . shall make the records promptly available." 5 U.S.C. § 552(a)(3)(A). "Congress underscored the importance it attached to prompt responses by allowing judicial recourse, bypassing administrative exhaustion, if an agency fails to meet statutory timetables for disclosure or to justify its delay in making nonexempt records available upon request." *Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770, 775–76 (D.C. Cir. 2018). "[A]n agency's compliance with FOIA depends upon its good faith effort and due diligence to comply with all lawful demands for records in as short a time as is possible." *Id.* at 781 (cleaned up).

Here, more than *three years* after receiving Mr. Evans's initial request, OFCCP has failed to fulfill it. OFCCP has justified this extensive delay based on its suggestion that the federal court's decision in the Northern District of California did not have precedential effect and the difficulty of notifying thousands of companies whose data is at issue. Ex. F at 2. CIR asserts that this position is faulty and to remedy the circumstances the agency should: 1) immediately disclose the requested records and 2) proactively notify all companies moving forward that these records will be disclosed.

### A.  OFCCP is Bound by Court Decisions Requiring Disclosure of EEO-1 Type 2 Reports.

By continuing to withhold the long-overdue diversity data, OFCCP is acting outside the bounds of law. Contrary to the agency's suggestion, Judge Westmore's ruling that diversity data is outside Exemption 4 does, in fact, have "precedential effect," particularly since the Ninth Circuit left that decision undisturbed. The plain text of FOIA "vests jurisdiction in federal district courts to enjoin an 'agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant,'" and agencies must comply with court disclosure orders. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). Under the "law of the circuit doctrine, a published decision of [a federal appellate] court constitutes binding authority which must be

1400 65th, Suite 200 Emeryville, CA 94608
PHONE 510 809 3160                          TWITTER @CIRonline
WEB cironline.org

followed unless and until overruled by a body competent to do so." *In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (cleaned up).

Here, both the district court and the appeals court decisions create binding law on the agency. Just two years ago, Judge Westmore ruled on CIR's request for 2016 EEO-1 report data and concluded that the "Government was not justified in applying Exemption 4" to this information, requiring the EEO-1 reports to "be produced unredacted." *Ctr. for Investigative Reporting v. Dep't of Labor*, 424 F. Supp. 3d 771, 779 (N.D. Cal. 2019). DOL elected not to appeal that decision, and subsequently the U.S. Ninth Circuit Court of Appeals found it lacked jurisdiction to disturb Judge Westmore's order. *Evans v. Synopsys*, No. 20-16416 (9th Cir. May 12, 2022). The December 10, 2019 order generally remains in effect, as the parties, including the Government, stipulated that it would only be stayed as to the "disclosure of the requested Synopsys information." *Ctr. for Investigative Reporting*, No. 4:19-cv-01843, ECF No. 87, ¶¶ 2-3 (N.D. Cal. July 28, 2020). Given that the December 10, 2019 order remains in force, that the Government chose not to appeal it, and that the Government opposed the company's attempt to intervene for the sole purpose of appealing it, CIR is perplexed by DOL's current plan of action as to FOIA Request No. 872421. According *Kissinger* and *In re Zermeno*, DOL must disclose the records and the agency has not presented any other to the contrary. We hope this clarifies any remaining confusion and that the agency will disclose the requested records immediately to avoid needless, repetitive litigation – for a third time.

### B. OFCCP Should Proactively Publish the Requested Records on Its Website.

The same DOL regulation OFCCP invokes to justify its delay also offers a solution for future requests involving EEO-1s: To mitigate the burden and expense of notifying a "voluminous number of submitters," OFCCP can notify all companies simultaneously by posting a notice on its website before proactively publishing these records on its website. 29 C.F.R. § 70.26(c); *see also* 29 C.F.R. § 70.26(j) ("Where notification of a voluminous number of submitters is required, such notification may be accomplished by posting and publishing the notice in a place reasonably calculated to accomplish notification.").

OFCCP has various options for notifying companies by publication. It could publish a notice in the Federal Register, as DOL previously did to alert companies about a FOIA lawsuit and underlying request.[17] Another agency with similar regulations about "voluminous" notifications recently published notices in the Federal Register.[18] Alternatively, OFCCP could

---

[17] 71 Fed. Reg. 20,732 (April 21, 2006), *available at* https://www.federalregister.gov/documents/2006/04/21/06-3795/freedom-of-information-act-notice-of-lawsuit (notice from the Occupational Health and Safety Administration regarding air sampling data). *See also Finkel v. Dep't of Lab.*, No. CIV A 05-5525, 2007 WL 1963163, at *2 (D.N.J. June 29, 2007).

[18] 81 Fed. Reg. 75,838 (Nov. 1, 2016), *available at* https://www.federalregister.gov/documents/2016/11/01/2016-26412/freedom-of-information-act-notice-of-lawsuit (notice from the U.S. Fish and Wildlife Service regarding FOIA request and lawsuit for data about import and export of wildlife specimens); 81 Fed. Reg. 85,255 (Nov. 25,

issue a press release, as DOL did regarding disclosure of its workplace injury data.[19]  Whatever the venue, DOL should avail itself of its regulatory authority to notify the "voluminous" number of companies – and begin to proactively publishing these records online, as other DOL components such as OSHA have done with comprehensive datasets after courts ruled that they could not be withheld.

## IV.    Conclusion

Rather than continue to delay Mr. Evans's long-overdue request for EEO-1 Type 2 data, DOL should disclose the requested records.  Moving forward it should exercise its authority to notify companies and begin proactive publication.  We request that OFCCP respond to this letter **within two weeks of receipt** to discuss any clarifying points and the agency's intended course of action to resolve this matter.  You may reach me at vbaranetsky@revealnews.org or (201) 306-4831.


Sincerely,



Victoria D. Baranetsky
General Counsel
The Center for Investigative Reporting


cc:     Will Evans, Senior Reporter and Producer, The Center for Investigative Reporting
        Shawn Musgrave, First Amendment Fellow, The Center for Investigative Reporting

---

2016), *available at* https://www.federalregister.gov/documents/2016/11/25/2016-28379/freedom-of-information-act-notice-of-lawsuit (same).  *See also* 43 C.F.R. § 2.27(b) ("If a voluminous number of submitters are involved, [a bureau of the Department of the Interior] may publish a notice in a manner reasonably calculated to reach the attention of the submitters (for example, in newspapers or newsletters, the bureau's Web site, or the Federal Register) instead of providing a written notice to each submitter.").
[19] *Supra* note 15.

7

# Exhibit A



**Shawn Musgrave <smusgrave@revealnews.org>**

---

## Fwd: Acknowledgment

**Will Evans** <wevans@revealnews.org>                    Thu, Oct 14, 2021 at 2:41 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **FOIARequests** <FOIARequests@dol.gov>
Date: Tue, Jan 15, 2019 at 2:35 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>

Hello:

Your request has been assigned to OFCCP with tracking number **872421**. When they begin processing it, you will be able to track its progress at www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking number in the Subject line of any submission to the agency or to have it available at the time of a call.

Sincerely,

**Arginia Karamoko**

Government Information Specialist, Office of Information Services

Office of the Solicitor I Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 I Washington, DC  20210

T: (202) 693-5531 I F: (202) 693-5389 I  E: karamoko.arginia@dol.gov

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Thursday, January 10, 2019 7:13 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Cc:** Victoria Baranetsky <vbaranetsky@revealnews.org>
**Subject:** FOIA request - OFCCP

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2016.**

I am requesting this data in electronic format, by email.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," as OFCCP has already determined that Type 2 EEO-1 reports are not subject to Exemption 4 of the Freedom of Information Act. (see CIR v USDOL, Case No. 3:18-cv-2008 JCS)

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608

--

Will Evans

reporter

o: 510-809-2209



www.revealnews.org


--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# Exhibit B

10/14/21, 3:38 PM    Case 3:21-cv-07182-WHA  Document 35  Filed 06/18/23  Page 84 of 132



**Shawn Musgrave <smusgrave@revealnews.org>**

---

## Fwd: Acknowledgment

**Will Evans** <wevans@revealnews.org>                    Thu, Oct 14, 2021 at 2:38 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---

---------- Forwarded message ---------
From: **Karamoko, Arginia - SOL** <Karamoko.Arginia@dol.gov>
Date: Mon, Mar 25, 2019 at 1:32 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>

Hello:

Your request has been assigned to OFCCP with tracking number **875877**. When they begin processing it, you will be able to track its progress at www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking number in the Subject line of any submission to the agency or to have it available at the time of a call.

Sincerely,

**Arginia Karamoko**

Government Information Specialist, Office of Information Services

Office of the Solicitor l Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 l Washington, DC  20210

T: (202) 693-5531 l F: (202) 693-5389 l  E: karamoko.arginia@dol.gov

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Monday, March 25, 2019 1:57 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Subject:** FOIA request - OFCCP

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:


**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2017.**


I am requesting this data in electronic format, by email. Fulfilling this request is not unduly burdensome because there is no need to notify federal contractors.


There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.


Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."


Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."


There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," as OFCCP has already determined that Type 2 EEO-1 reports are not subject to Exemption 4 of the Freedom of Information Act. (see CIR v USDOL, Case No. 3:18-cv-2008 JCS)


I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608


--

Will Evans

reporter

o: 510-809-2209

www.revealnews.org

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# Exhibit C



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: Acknowledgment
1 message

---

**Will Evans** <wevans@revealnews.org>                                                     Fri, Oct 15, 2021 at 6:51 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **Karamoko, Arginia - SOL** <Karamoko.Arginia@dol.gov>
Date: Fri, Sep 18, 2020 at 12:50 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>

Hello:

Your request has been assigned to the Office of Federal Contract Compliance Programs (OFCCP) with
tracking number 897123. When they begin processing it, you will be able to track its progress at
www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through
ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking
number in the Subject line of any submission to the agency or to have it available at the time of a call.

Sincerely,

**Arginia Karamoko**

Government Information Specialist, Office of Information Services

Office of the Solicitor | Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 | Washington, DC  20210

T: (202) 693-5531 | F: (202) 693-5389 |  E: karamoko.arginia@dol.gov

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Friday, September 11, 2020 8:26 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Subject:** FOIA request - OFCCP

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:


**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2018.**


I am requesting this data in electronic format, by email. Fulfilling this request is not unduly burdensome because there is no need to notify federal contractors.


There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.


Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."


Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."


There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," **as federal contractor EEO-1s have been determined to be public records that must be disclosed, not confidential commercial information**. Please see the Dec. 10, 2019 ruling by Judge Kandis Westmore in U.S. District Court for the Northern District of California, 4:19-cv-01843-KAW (attached).


I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608



www.revealnews.org

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

**U.S. Department of Labor**

Office of Federal Contract Compliance Programs
200 Constitution Avenue, N.W.
Washington, D.C. 20210



October 2, 2020

Via Electronic Mail

Will Evans
The Center for Investigative Reporting
1400 65th Street, Suite 200
Emeryville, CA 94608

RE: Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Mr. Evans:

This letter is to acknowledge receipt of your Freedom of Information Act (FOIA) request submitted to *foiarequest@dol.gov*. The Office of the Solicitor assigned your request to the Office of Federal Contract Compliance Programs (OFCCP) on September 18, 2020. Please refer to the above-referenced FOIA tracking number in any future correspondence regarding your FOIA request.

You requested a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2018.

We consider you to be a representative of the news media as defined by the U.S. Department of Labor FOIA regulations at 29 CFR § 70.40(c)(3), therefore, only reproduction costs will be assessed, excluding charges for the first 100 pages. You will receive written notification if the total estimated fee for processing your request exceeds $25.00.

OFCCP's National Office will process your request for EEO-1 data. Once we compile the data, we will send a letter to the submitters notifying them of the request for their EEO-1 data.

In accordance with 29 CFR § 70.26 and Executive Order 12600, because your request covers information that may be protected from disclosure under FOIA Exemption 4, OFCCP is required to notify submitters that their information has been requested under the FOIA to give them an opportunity to object in writing to disclosure of any specified portion of the requested information. For those submitters who do not object, we will provide the information with any necessary redactions consistent with FOIA. For those submitters who do object, OFCCP will evaluate any response provided by the submitter as to why the requested information should be withheld and make its own determination as to whether the specific facts and relevant law warrant disclosure or withholding of the requested information.

Due to the volume and complexity of the FOIA requests we have received, we anticipate that providing a full response will take longer than 20 business days to fulfill. Accordingly, OFCCP will take an additional 10 business days to fulfill your request as afforded by the FOIA at 5 U.S.C. § 552(a)(6)(B)(i). We will contact you if we are unable to fulfill your request in 30 business days.

We consider you a "news media" type of requestor. As a "news media" requestor, we charge you for photocopying after the first 100 pages in accordance with the U.S. Department of Labor FOIA regulations at 29 CFR § 70.40(c)(4). DOL's FOIA regulations at 29 CFR § 70.42(a) deem that the filing of a FOIA constitutes an agreement by the requester to pay all fees up to $25.00.

If you need further assistance or would like to discuss any aspect of your request, please do not hesitate to contact this office at (202) 693-0101 or by email at OFCCP_NO_FOIA@dol.gov. Alternatively, you may wish to contact the DOL FOIA Public Liaison, Thomas Hicks, at (202) 693-5427 or by email at hicks.thomas@dol.gov.

You may also contact the Office of Government Information Services (OGIS), within the National Archives and Records Administration (NARA), to inquire about the mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, MD 20740-6001. You can also reach that office by email at ogis@nara.gov, by phone at (202) 741-5770, by fax at (202) 741-5769, or by calling toll-free at (877) 684-6448.

If you are not satisfied with the response to this request, you may administratively appeal by writing to the Solicitor of Labor within 90 days from the date of this letter. In the appeal, you must state in writing the grounds for the appeal, and may include any supporting statements or arguments, but such statements are not required. To facilitate processing of the appeal, please include your mailing address and daytime telephone number, as well as a copy of the initial request and copy of this letter. Clearly mark "Freedom of Information Act Appeal" on the envelope and letter of the appeal. You must make any amendment to the appeal in writing and we must receive it prior to a decision. Address the appeal to the Solicitor of Labor, Division of Management and Administrative Legal Services, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N2420, Washington, DC 20210. You may submit your appeal by email to foiaappeal@dol.gov. The Department does not accept appeals submitted to any other email address.

Sincerely,

DORIS GEAN    Digitally signed
by DORIS GEAN

Doris Lissette Geán
FOIA Manager

2

# Exhibit D



**Shawn Musgrave <smusgrave@revealnews.org>**

---

## Fwd: amendment request

**Will Evans** <wevans@revealnews.org>                          Thu, Sep 30, 2021 at 10:28 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **OFCCP NO FOIA** <OFCCP_NO_FOIA@dol.gov>
Date: Tue, May 11, 2021 at 9:05 AM
Subject: RE: amendment request
To: Will Evans <wevans@revealnews.org>

Dear Mr. Evans,

We have modified request 872421 to include a spreadsheet of the consolidated (Type 2) EEO-1 reports for all federal
contractors for the years 2016 through 2018.

We will administratively close request 897123.

Cordially,

Bruce Andersen

The OFCCP FOIA Team

---

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Monday, May 10, 2021 1:02 PM
**To:** OFCCP NO FOIA <OFCCP_NO_FOIA@DOL.GOV>
**Subject:** amendment request

CAUTION - The sender of this message is external to the DOL network. Please use care when clicking on links and responding
with sensitive information. Send suspicious email to spam@dol.gov.

Dear FOIA Officer,

I would like to amend my FOIA request #872421 to include a spreadsheet of all consolidated (Type 2) EEO-1 reports for
all federal contractors for 2017 and 2018 as well as 2016.

ER-489

If you agree to this amendment, I will withdraw my separate FOIA #897123 for the 2018 data.


Please let me know.
Thank you very much.
Best,

Will Evans
--

Will Evans

reporter

office: 510-809-2209

cell: 510-333-9584



www.revealnews.org


--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# Exhibit E

(231 of 273), Page 231 of 273
Case: 24-880, 05/09/2024, DktEntry: 9.4, Page 231 of 273
Case 3:22-cv-07182-WHA Document 35 Filed 05/16/23 Page 97 of 132

**U.S. Department of Labor**

Office of Federal Contract
Compliance Programs
200 Constitution Avenue, N.W.
Washington, D.C. 20210



JUL 18 2019

Will Evans
The Center for Investigative Reporting
1400 65th Street, Suite 200
Emeryville, CA 94608

RE: Freedom of Information Act Request Acknowledgement – Tracking No. 872421

Dear Mr. Evans:

This letter is a follow-up to your Freedom of Information Act (FOIA) request submitted to the
Office of Federal Contract Compliance Programs (OFCCP). Please refer to the above-referenced
FOIA tracking number in any future correspondence regarding your FOIA request.

You requested a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal
contractors for 2016. As you know from your earlier requests, in accordance with 29 CFR §
70.26, OFCCP is required to notify submitters that their business information has been requested
under the FOIA to give them an opportunity to object in writing to disclosure of any specified
portion of the requested information.

Though you request is reasonably described, we have determined that there are more than
100,000 responsive records. Reaching out to each of the companies affected by your voluminous
request would overwhelm the OFCCP FOIA unit for the foreseeable future, and the cost in
sending more than 100,000 letters would be unduly burdensome. If you wish to narrow the scope
of your request, please send a revised request to the address referenced above or send an e-mail
to OFCCP_NO_FOIA@dol.gov. In the event that we do not receive a response from you within
thirty (30) days from the date of this letter, we will administratively close your request.

Should you have questions regarding your request, please contact this office at (202) 693-0101
or by email at OFCCP_NO_FOIA@dol.gov. If you need further assistance or would like to
discuss any aspect of your request, please do not hesitate to contact the DOL FOIA Public
Liaison, Thomas Hicks, at (202) 693-5427.

Alternatively, you may contact the Office of Government Information Services within the
National Archives and Records Administration (OGIS) to inquire about the mediation services
they offer. The contact information for OGIS is as follows: Office of Government Information
Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, MD
20740-6001. You can also reach that office by e-mail at ogis@nara.gov, by phone at (202) 741-
5770, by fax at (202) 741-5769, or by calling toll-free at (877) 684-6448.

If you are not satisfied with the response to this request, you may administratively appeal by writing to the Solicitor of Labor within 90 days from the date of this letter. The appeal must state in writing the grounds for the appeal, and it may include any supporting statements or arguments, but such statements are not required. In order to facilitate processing of the appeal, please include your mailing address and daytime telephone number, as well as a copy of the initial request and copy of this letter. The envelope and letter of the appeal should be clearly marked "Freedom of Information Act Appeal." Any amendment to the appeal must be made in writing and received prior to a decision. The appeal should be addressed to the Solicitor of Labor, Division of Management and Administrative Legal Services, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N2420, Washington, DC 20210. Appeals may also be submitted by email to foiaappeal@dol.gov. Appeals submitted to any other email address will not be accepted.

Sincerely,

D. Lissette Geán
Special Assistant

# Exhibit F

10/14/21, 11:32 AM    Case 3:22-cv-07182-WHA Document 35-1 filed on 10/21/21 Page 100 of 132    and 897123



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: Freedom of Information Act Requests – Tracking Nos. 872421 and 897123

**Will Evans** <wevans@revealnews.org>                                    Thu, Sep 30, 2021 at 10:30 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **Alexandra Gutierrez** <agutierrez@revealnews.org>
Date: Thu, Jan 7, 2021 at 9:13 AM
Subject: Re: Freedom of Information Act Requests – Tracking Nos. 872421 and 897123
To: Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov>
Cc: Victoria Baranetsky <vbaranetsky@revealnews.org>, Will Evans <wevans@revealnews.org>, Hicks, Thomas - SOL <hicks.thomas@dol.gov>

VIA E-MAIL

Doris Lissette Geán
FOIA Manager
Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C. 20210
OFCCP_NO_FOIA@dol.gov

Re:  Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Ms. Geán,

We are following up on your December 18, 2020 e-mail. While we are considering are options as to the Department of Labor's current position as to our reporter's request, we seek answers to the following questions:

1. When did the Department provide E.O. 12600 notices to submitters?
2. Have any submitters responded, either objecting or consenting?
3. For those submitters who have consented or have waived their opportunity to object due to the passage of a reasonable amount of time, would the Department be able to provide their submitted reports on a rolling basis.

We appreciate your attention to these inquiries.

Sincerely,

https://mail.google.com/mail/u/0?ik=65e5ad97f2&view=pt&search=all&permmsgid=msg-f%3A1712394047104629090&simpl=msg-f%3A1712394047104629090    1/3

10/14/21, 11:32 AM                                                                                              897133 and 897123

Alexandra M. Gutierrez

cc:   D. Victoria Baranetsky, General Counsel, Center for Investigative Reporting
      Will Evans, Reporter, Center for Investigative Reporting
      Thomas Hicks, DOL FOIA Public Liaison

On Fri, Dec 18, 2020 at 9:32 AM Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov> wrote:
Via Electronic Mail

Dear Ms. Gutierrez:

We have received your December 11, 2020, e-mail inquiring about outstanding FOIA requests that,
combined, seek two years (2016 and 2018) of EEO-1 consolidated (Type 2) reports for all federal
contractors.

As you are aware, we have complied with the district court's order and released the 2016 reports of the
individual submitters who have not appealed the court's decision in the matter of *Ctr. for Investigative
Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771, 779 (N.D. Cal. 2019). Your outstanding FOIA
requests seek the EEO-1, Type 2 reports of well over 15,000, and possibly over 20,000 submitters from
countless industries whose reports are not subject to that court order.

We continue to be subject to Executive Order 12600 and are obligated to notify submitters of requests for
their potentially confidential commercial information. *See* 29 C.F.R. § 70.26. Under Executive Order
12600, we must afford submitters a reasonable period of time to object to the disclosure of any portion of
the information and to state all grounds upon which disclosure is opposed.  The submitters that are the
subject of your request have not had the opportunity to demonstrate whether their EEO-1, Type 2 reports
contain confidential commercial information.  Moreover, while we do not believe that the Northern
California's District Court's decision in *Center for Investigative Reporting* has precedential effect on all
EEO-1, Type 2 reports, we note that this matter is currently on appeal before the U.S. Court of Appeals for
the Ninth Circuit and there is still a chance that the district court's holding may be overturned.


Sincerely,


D. Lissette Geán

FOIA Manager


--
Alexandra M. Gutierrez
First Amendment Fellow
**(c)** 907-209-1799



ER-496

10/14/21, 11:32 AM                          Case 3:22-cv-07182-WHA Document 35    Filed 03/13/23   Page 236 of 273  and 897123

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# EXHIBIT L



**Dara Gray <dgray@revealnews.org>**

---

## Fwd: FOIA 872421 - Amendment
1 message

---

**Will Evans** <wevans@revealnews.org>                          Wed, Nov 9, 2022 at 2:01 PM
To: Dara Gray <dgray@revealnews.org>

---------- Forwarded message ---------
From: **Office of Federal Contract Compliance Programs** <ofccp_no_foia@dol.gov>
Date: Fri, Jun 3, 2022 at 10:52 AM
Subject: RE: FOIA 872421 - Amendment
To: <wevans@revealnews.org>
Cc: <vbaranetsky@revealnews.org>

Dear Mr. Evans,

We have received your latest email. We will modify request 872421 to include both the 2019 and 2020 data. Your request is now for the consolidated (Type 2) EEO-1 reports for all federal contractors for the years 2016 through 2020.

Cordially,

Bruce Andersen

The OFCCP FOIA Team

**From:** Will Evans wevans@revealnews.org
**Sent:** Thursday, June 2, 2022 4:45 PM
**To:** FOIARequests FOIARequests@dol.gov
**Cc:** OFCCP NO FOIA OFCCP_NO_FOIA@DOL.GOV
**Subject:** FOIA request- OFCCP

CAUTION - The sender of this message is external to the DOL network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@dol.gov.

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2019 and 2020.**

I am requesting this data in electronic format, by email.

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting

PO Box 8307

Emeryville, CA 94608

--

Will Evans

reporter

Reveal from The Center for Investigative Reporting

cell: 510-333-9584

www.revealnews.org


--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
cell: 510-333-9584
www.revealnews.org

# EXHIBIT M

**U.S. Department of Labor**        Office of Federal Contract Compliance Programs
200 Constitution Avenue, N.W.
Washington, D.C. 20210



June 15, 2022


*Via Electronic Mail:* vbaranetsky@revealnews.org

Victoria D. Barenetsky
General Counsel
The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608

RE: Freedom of Information Act Request – Tracking No. 872421

Dear Ms. Baranetsky:

We are in receipt of your correspondence of May 23, 2022, (hereinafter "Baranetsky Correspondence) to Secretary Walsh, Solicitor Nanda, and Director Yang regarding FOIA Request #872421 from Will Evans of the Center for Investigative Reporting (CIR) to the Office of Federal Contract Compliance Programs (OFCCP) for consolidated Type 2 EEO-1 reports for all federal contractors from 2016-2018.[1]  This correspondence has been referred to the undersigned for response.

As an initial matter, the Department of Labor (Department) continues to strongly disagree with CIR's assertion that the Department is in "direct contravention of law" by not immediately disclosing the thousands of EEO-1 reports from 2016-2020 (hereinafter "EEO-1 reports") responsive to FOIA Request #872421.  The recent Northern District of California decision referenced in your letter[2] addressed only 10 EEO-1 reports of select companies from 2016 and does not have any binding effect as to the other EEO-1 reports for which CIR now demands immediate disclosure.  Furthermore, the subsequent Ninth Circuit decisions[3] were limited to purely jurisdictional issues and explicitly did not reach the merits of the district court decision.

We also disagree with CIR's position that OFCCP can proactively publish the requested EEO-1 reports without providing submitters an opportunity to object to disclosure.  The Department's disclosure regulations at 29 C.F.R. part 70, consistent with Executive Order 12600, require the Department to provide notice to submitters "whenever it has reason to believe that the information requested under the FOIA may be protected from disclosure under Exemption 4, but

---

[1] Within the last month, CIR sent a new FOIA request to the Department for Type 2 EEO-1 reports for all federal contractors for the years 2019 and 2020 as well.  As agreed to by Mr. Evans, OFCCP has combined this request with FOIA Request #872421 for processing.
[2] *Ctr. For Investigative Reporting v. Dep't of Labor*, 424 F. Supp. 3d 771 (N.D. Cal. 2019).
[3] *Evans v. Synopsis*, 34 F.4th 762 (9th Cir. 2022); *Synopsis v. Dep't of Labor*, Nos. 20-16414 and 20-16416, Dkt. No. 53-1 (9th Cir. May 12, 2022).

has not yet determined whether the information is protected from disclosure…,"[4] and to provide submitters with a reasonable period of time to object to the disclosure and state their grounds for doing so. Indeed, were the Department to immediately release all Type 2 EEO-1 reports as CIR recommends, it would be at risk of substantial liability in reverse FOIA actions if the reviewing court(s) found that Exemption 4 did apply to the EEO-1 records, and that in releasing them to the public the Department had violated its own regulations and improperly disclosed the confidential commercial information of thousands of federal contractors.

We do, however, agree with CIR that the Department may effectuate notice to all federal contractors via "posting and publishing the notice in a place reasonably calculated to accomplish notification."[5] The Department will publish a notice in the Federal Register and on the Department's public-facing website that it has received FOIA requests seeking Type 2 EEO-1 records from all federal contractors that filed them from 2016-2020, and pursuant to its regulations,[6] the Department will provide an opportunity for the submitters to respond.

If you have any questions, please contact us via email at OFCCP_NO_FOIA@dol.gov, or by telephone at (202) 693-0101.

Sincerely,


Kelechi Ahaghotu
Branch Chief of Information Services
Division of Management and Administrative Programs

---

[4] 29 C.F.R. § 70.26(d)
[5] 29 C.F.R. § 70.26(j)
[6] *Id.* at § 70.26(e) ("A component will allow a submitter a reasonable time to respond to the notice described in [29 C.F.R. § 70.26(c)]…."

# EXHIBIT N

(244 of 273), Page 244 of 273 Case: 24-880, 05/09/2024, DktEntry: 9.4, Page 244 of 273
11/15/22, 3:35 PM
Case 3:22-cv-07182-WHA Document 35, Mailed 03/16/23 Page 1 of 132



Dara Gray <dgray@revealnews.org>

### FOIA 872421 OFCCP Response to CIR
1 message

**Dara Gray** <dgray@revealnews.org>
To: Dara Gray <dgray@revealnews.org>



Victoria Baranetsky <vbar

### FOIA 872421 OFCCP Response to CIR
9 messages

**Office of Federal Contract Compliance Programs** <ofccp_no_foia@dol.gov>
Wed, Jun 15, 2022 at 12:50 PM
To: vbaranetsky@revealnews.org
Cc: wevans@revealnews.org, smusgrave@revealnews.org

June 15, 2022

*Via Electronic Mail:* vbaranetsky@revealnews.org

Victoria D. Barenetsky

General Counsel

The Center for Investigative Reporting

1400 65th, Suite 200

Emeryville, CA 94608

RE: Freedom of Information Act Request – Tracking No. 872421


Dear Ms. Baranetsky:


We are in receipt of your correspondence of May 23, 2022, (hereinafter "Baranetsky Correspondence) to Secretary Walsh, Solicitor Nanda, and Director Yang regarding FOIA Request #872421 from Will Evans of the Center for Investigative Reporting (CIR) to the Office of Federal Contract Compliance Programs (OFCCP) for consolidated Type 2 EEO-1 reports for all federal contractors from 2016-2018. [1] This correspondence has been referred to the undersigned for response.


As an initial matter, the Department of Labor (Department) continues to strongly disagree with CIR's assertion that the Department is in "direct contravention of law" by not immediately disclosing the thousands of EEO-1 reports from 2016-2020 (hereinafter "EEO-1 reports") responsive to FOIA Request #872421. The recent Northern District of California decision referenced in your letter[2] addressed only 10 EEO-1 reports of select companies from 2016 and does not have any binding effect as to the other EEO-1 reports for which CIR now demands immediate disclosure. Furthermore, the subsequent Ninth Circuit decisions[3] were limited to purely jurisdictional issues and explicitly did not reach the merits of the district court decision.

We also disagree with CIR's position that OFCCP can proactively publish the requested EEO-1 reports without providing submitters an opportunity to object to disclosure. The Department's disclosure regulations at 29 C.F.R. part 70, consistent with Executive Order 12600, require the Department to provide notice to submitters "whenever it has reason to believe that the information requested under the FOIA may be protected from disclosure under Exemption 4, but has not yet determined whether

ER-505

(245 of 273), Page 245 of 273
11/15/22, 3:35 PM
Case: 24-880, 05/09/2024, DktEntry: 9.4, Page 245 of 273
Case 3:22-cv-07182-WHA Document 35 Filed 03/15/23 Page 51 of 132

the information is protected from disclosure…,"[4] and to provide submitters with a reasonable period
of time to object to the disclosure and state their grounds for doing so.  Indeed, were the Department
to immediately release all Type 2 EEO-1 reports as CIR recommends, it would be at risk of substantial
liability in reverse FOIA actions if the reviewing court(s) found that Exemption 4 did apply to the EEO-1
records, and that in releasing them to the public the Department had violated its own regulations and
improperly disclosed the confidential commercial information of thousands of federal contractors.

We do, however, agree with CIR that the Department may effectuate notice to all federal contractors via
"posting and publishing the notice in a place reasonably calculated to accomplish notification."[5]  The
Department will publish a notice in the Federal Register and on the Department's public-facing website
that it has received FOIA requests seeking Type 2 EEO-1 records from all federal contractors that filed
them from 2016-2020, and pursuant to its regulations,[6] the Department will provide an opportunity for
the submitters to respond.

If you have any questions, please contact us via email at OFCCP_NO_FOIA@dol.gov, or by telephone
at (202) 693-0101.


Sincerely,

Kelechi Ahaghotu

Branch Chief of Information Services
Division of Management and Administrative Programs

---

[1] Within the last month, CIR sent a new FOIA request to the Department for Type 2 EEO-1 reports for all federal contractors
for the years 2019 and 2020 as well.  As agreed by Mr. Evans, OFCCP has combined this request with FOIA Request
#872421 for processing.

[2] *Ctr. For Investigative Reporting v. Dep't of Labor*, 424 F. Supp. 3d 771 (N.D. Cal. 2019).

[3] *Evans v. Synopsis*, 34 F.4th 762 (9th Cir. 2022); *Synopsis v. Dep't of Labor*, Nos. 20-16414 and 20-16416, Dkt. No. 53-1
(9th Cir. May 12, 2022).

[4] 29 C.F.R. § 70.26(d)

[5] 29 C.F.R. § 70.26(j)

[6] *Id.* at § 70.26(e) ("A component will allow a submitter a reasonable time to respond to the notice described in
[29 C.F.R. § 70.26(c)]…."

---

📄 **FOIA 872421 OFCCP Response to CIR 2022-06-15.pdf**
317K

---

**Victoria Baranetsky** <vbaranetsky@revealnews.org>
Thu, Jun 16, 2022 at 10:12 AM
To: Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov>
Cc: wevans@revealnews.org, smusgrave@revealnews.org

Dear OFCCP,

Thank you for your email. CIR was disappointed the Office did not provide a production timeline or more concrete
idea of when these records would be released - given how much time has elapsed since the request was filed.
CIR also strongly disagrees with the agency's interpretation of the case law in the Ninth Circuit.

To avoid needless next steps, please let me know your when you and counsel are available to speak early next
week to provide a clearer timeline on this matter.

Kind regards,
Victoria

[Quoted text hidden]

ER-506

[Quoted text hidden]

**Victoria Baranetsky** <vbaranetsky@revealnews.org>
Wed, Jun 22, 2022 at 2:32 PM
To: Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov>, "Bickerstaffe, Keir - SOL" <Bickerstaffe.Keir@dol.gov>, "cc: Whitten, Emily S - SOL" <Whitten.Emily.S@dol.go
Cc: wevans@revealnews.org, smusgrave@revealnews.org

Hello,

I'd like to follow up and again, request if there is a time we can speak about this matter.

Regards,
Victoria

[Quoted text hidden]

**Office of Federal Contract Compliance Programs** <ofccp_no_foia@dol.gov>
Mon, Jun 27, 2022 at 2:36 PM
To: vbaranetsky@revealnews.org
Cc: wevans@revealnews.org, smusgrave@revealnews.org

*By Electronic Mail*

Dear Ms. Baranetsky,

This email responds to yours of June 16, 2022, and specifically your request for a clearer timeline regarding FOIA

#872421, which, as revised, requests that OFCCP disclose Type 2 EEO-1 data for all federal contractors from 2015-2020.

In July, the Department anticipates publishing a notice in the Federal Register to inform contractors of the FOIA request

for contractors' EEO-1 data.  This notice will provide contractors with 30 days to submit written objections to the

disclosure of their EEO-1 data pursuant to Exemption 4 of FOIA.  At the conclusion of that 30 days, OFCCP will

ascertain which contractors have objected to disclosure, and which have not.  As soon as possible thereafter, OFCCP

will disclose to CIR the EEO-1 data for all contractors that have not objected to disclosure.  In addition to the Federal

Register notice, OFCCP will also announce this FOIA request through other means, such as its GovDelivery listserv,

which includes a large number of federal contractors.


For those contractors that have submitted written objections, OFCCP will review the objections submitted and make an

 independent assessment for each as to whether the information should be withheld under FOIA Exemption 4.  At this time,

 we cannot estimate how long this process will take.  We do not know how many contractors will object, but given that there

were approximately 25,000 unique filers of Type 2 EEO-1 data from 2015-2020, we anticipate that the number of objectors

will be in the thousands.  OFCCP will devote significant resources to review and assess these objections as quickly as

possible, but we note that the scope of this request, and the number of objections that OFCCP will receive and need to

evaluate, is unprecedented.


We hope that this clarifies for CIR the agency's timeline with regard to this matter.  If you have any questions,

please contact us via email at OFCCP_NO_FOIA@dol.gov, or by telephone at (202) 693-0101.

[Quoted text hidden]

---

**Victoria Baranetsky** <vbaranetsky@revealnews.org>
Thu, Jun 30, 2022 at 11:38 AM
To: Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov>
Cc: wevans@revealnews.org, smusgrave@revealnews.org
Bcc: Brendan Gilligan <bgilligan@revealnews.org>

Thank you for your response. I would like to confirm: **(1) when in July** does the agency anticipate publishing
this announcement on the federal register?; (2) will the agency be producing the records on a rolling basis **or**

ER-507

basis?'; and, (3) can the agency please point to the agency regulations it is using for guidance on its
procedure in this case.

While we appreciate the attention and resources now allocated to this matter, I will note that this request
is now *multiple years old.* And given the decision from N.D. Cal is on point, we are dismayed and
confused by the agency's decision to withhold these records claiming that they have no "binding effect."
See OFCCP Letter to CIR, dated June 15, 2022 (stating only 10 EEO-1 reports of
select companies from 2016 and does not have any binding effect as to the other EEO-1 reports"). The
agency has provided absolutely no reasoning as to why identical forms should not be released simply
because they are more numerous and from a different calendar year that those at issue in Judge
Westmore's order. I cannot imagine the Northern District of California would find a meaningful distinction,
but instead would only see this decision as the agency ignoring the law of the circuit. *See Gonzalez v.
Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc), aff'd sub nom. Arizona v. Inter Tribal Council of
Ariz., Inc., 570 U.S. 1 (2013) (discussing law of the circuit); *see also Barapind v. Enomoto*, 400 F.3d 744, 751
(9th Cir. 2005) (en banc).

Regards,
Victoria

On Mon, Jun 27, 2022 at 2:34 PM Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov> wrote:
[Quoted text hidden]

[Quoted text hidden]

---

**Office of Federal Contract Compliance Programs** <ofccp_no_foia@dol.gov>
Wed, Jul 6, 2022 at 8:49 AM
To: vbaranetsky@revealnews.org
Cc: wevans@revealnews.org, smusgrave@revealnews.org

Dear Ms. Baranetsky,

Thank you for your email dated June 30, 2022. We write to address the questions you
raised.  We plan to publish our announcement on the Federal Register by the end of
July.  The Federal Register controls its own publication schedule, so it is difficult to
provide more precision than that.

We anticipate beginning production on a rolling basis starting 30 days after publication
of the Federal Register notice.  However, until we see how many objections we receive and
whether they are from individual submitters or trade associations on behalf of their members,
we cannot provide precise details on what the rolling production will look like. As we indicated
in our earlier email, we will begin production of the Type 2 reports of those EEO-1 submitters
who do not object, or do not have objections raised on their behalf within 30 days of the
publication of the notice in the Federal Register. For submitters that do object, as we said in our
email, OFCCP will need to do individualized analyses of the objections.  If OFCCP determines
that the objections do not meet the standards for FOIA Exemption 4, OFCCP will notify the
submitter that it intends to disclose.  At that point, submitters may file reverse FOIA actions
against OFCCP to prevent disclosure.

The relevant agency regulations regarding these procedures are found at 29 C.F.R. § 70.26.

[Quoted text hidden]

---

**Shawn Musgrave** <smusgrave@revealnews.org>
Fri, Aug 5, 2022 at 10:49 AM
To: Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov>
Cc: vbaranetsky@revealnews.org, wevans@revealnews.org

Hello,

Please advise on the status of OFCCP's publication to the Federal Register on this matter. In prior correspondence,
the government indicated it would publish a notice by the end of July. To our knowledge, this notice has not been
published.

Best,
Shawn

[Quoted text hidden]

--
Shawn Musgrave
First Amendment Fellow
*Admitted in California*
*Pronouns: he/him/his*
c: (510) 809-3165



---

**OFCCP NO FOIA** <OFCCP_NO_FOIA@dol.gov>
Fri, Aug 5, 2022 at 12:37 PM
To: Shawn Musgrave <smusgrave@revealnews.org>, OFCCP NO FOIA
<OFCCP_NO_FOIA@dol.gov>
Cc: "vbaranetsky@revealnews.org" <vbaranetsky@revealnews.org>,
"wevans@revealnews.org" <wevans@revealnews.org>

Good afternoon,

We would like to inform you that OFCCP sent our Federal Register Notice to the Federal Register

for publication yesterday.  Once we receive a publication date, we will contact

you with that information.

Respectfully,

Kelechi Ahaghotu | Supervisory Government Information Specialist

Branch Chief of Information Services

Department of Labor

Office of Federal Contract Compliance Programs

Division of Management and Administrative Programs

---

**From:** Shawn Musgrave <smusgrave@revealnews.org>
**Sent:** Friday, August 5, 2022 1:50 PM
**To:** OFCCP NO FOIA <OFCCP_NO_FOIA@DOL.GOV>
**Cc:** vbaranetsky@revealnews.org; wevans@revealnews.org
**Subject:** Re: FOIA 872421 OFCCP Response to CIR

CAUTION - The sender of this message is external to the DOL network.

Please use care when clicking on links and responding with sensitive information.

Send suspicious email to spam@dol.gov.

Hello,

Please advise on the status of OFCCP's publication to the Federal Register on this matter.

In prior correspondence, the government indicated it would publish a notice by the end of July.

To our knowledge, this notice has not been published.

Best,

Shawn

On Wed, Jul 6, 2022 at 8:46 AM Office of Federal Contract Compliance Programs

<ofccp_no_foia@dol.gov> wrote:

Dear Ms. Baranetsky,

Thank you for your email dated June 30, 2022. We write to address the questions
you raised. We plan to publish our announcement on the Federal Register by the
end of July. The Federal Register controls its own publication schedule, so it is
difficult to provide more precision than that.

We anticipate beginning production on a rolling basis starting 30 days after publication
of the Federal Register notice. However, until we see how many objections we receive
and whether they are from individual submitters or trade associations on behalf of their
members, we cannot provide precise details on what the rolling production will look like.
As we indicated in our earlier email, we will begin production of the Type 2 reports of
those EEO-1 submitters who do not object, or do not have objections raised on their behalf
within 30 days of the publication of the notice in the Federal Register. For submitters
that do object, as we said in our email, OFCCP will need to do individualized analyses
of the objections. If OFCCP determines that the objections do not meet the standards
for FOIA Exemption 4, OFCCP will notify the submitter that it intends to disclose.
At that point, submitters may file reverse FOIA actions against OFCCP to prevent disclosure.
The relevant agency regulations regarding these procedures are found at 29 C.F.R. § 70.26.
If you have any questions, please contact us via email at OFCCP_NO_FOIA@dol.gov,
or by telephone at (202) 693-0101.

Sincerely,
Kelechi Ahaghotu
Branch Chief of Information Services
Division of Management and Administrative Programs

--
Dara Gray
First Amendment Fellow
c: (404) 395-2356



EXHIBIT O

| From Email : ofccp_no_foia@DOL.GOV |
|---|
| To Email : wevans@revealnews.org; |
| Cc Email : smusgrave@revealnews.org; vbaranetsky@revealnews.org |
| Bcc Email : ofccp_no_foia@DOL.GOV |
| Subject : FOIA 872421 Evans - Clarification |
| Date Sent : 7/20/2022 2:23:59 PM |
| Attachments : |
| Email Body : Dear Will, Per my phone call, I am seeking a bit of clarification.  EEO-1 filers indicate on the EEO-1 form whether they are a "prime contractor or first-tier subcontractor." Your request asked for EEO-1 data from "contractors." Can you confirm that your request intended to seek all Type 2 EEO-1 data from 2016-2020 in OFCCP's possession, that is, for prime contractors and first-tier subcontractors? If so, can you please send us confirmation in writing (i.e., email)? This will help expedite publishing the notice in the Federal Register. Many thanks, Bruce |

# EXHIBIT P



**Dara Gray** <dgray@revealnews.org>

---

## RE: FOIA 872421
1 message

---

**Dara Gray** <dgray@revealnews.org>                      Tue, Nov 15, 2022 at 3:39 PM
To: Dara Gray <dgray@revealnews.org>

---

---------- Forwarded message ---------
From: **Office of Federal Contract Compliance Programs** <ofccp_no_foia@dol.gov>
Date: Tue, Nov 1, 2022 at 9:34 AM
Subject: RE: FOIA 872421
To: <Wevans@revealnews.org>

Dear Mr. Evans:

As part of its final response, OFCCP intends to release to you the names of those
federal contractors that objected under an applicable FOIA exemption and whose
data was removed from public release.

Cordially,

Bruce Andersen

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Tuesday, October 18, 2022 4:56 PM
**To:** OFCCP NO FOIA <OFCCP_NO_FOIA@DOL.GOV>
**Subject:** re: FOIA 872421

**CAUTION: This email originated from outside of the Department of Labor. Do not click
(select) links or open attachments unless you recognize the sender and know the content
is safe. Report suspicious emails through the "Report Phishing" button on your email
toolbar.**

Dear Mr. Andersen,

When providing responsive records for my previous requests of EEO-1 data, your office's past practice has been to
provide a list of companies that objected to the release of their EEO-1 data. We expect that you will do so for request
#87242 as well. Please let me know if that's correct.

Thank you,

Will

--

Will Evans

ER-514

reporter

Reveal from The Center for Investigative Reporting

cell: 510-333-9584

www.revealnews.org

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
cell: 510-333-9584
www.revealnews.org

EXHIBIT Q

| From: | Eltoweissy, Somayah M - OFCCP |
|---|---|
| To: | Ahaghotu, Kelechi U - OFCCP |
| Cc: | Spalding, Candice - OFCCP |
| Subject: | FW: EEO-1 (Type 2) Data for FOIA Requests |
| Date: | Friday, July 15, 2022 2:31:50 PM |
| Attachments: | Type 2 EEO-1.zip |
| | image001.jpg |

**From:** Eltoweissy, Somayah M - OFCCP
**Sent:** Friday, June 10, 2022 12:26 PM
**To:** Andersen, Bruce - OFCCP <Andersen.Bruce@dol.gov>; Spalding, Candice - OFCCP <Spalding.Candice@dol.gov>
**Cc:** Kaiser, Javaid - OFCCP <Kaiser.Javaid@dol.gov>; Smith, Kelley - OFCCP <Smith.Kelley.J@dol.gov>; Ahaghotu, Kelechi U - OFCCP <Ahaghotu.Kelechi.U@dol.gov>; Fort, Harvey D - OFCCP <Fort.Harvey.D@dol.gov>; Lutz, Alissa S - OFCCP <Lutz.Alissa.S@dol.gov>
**Subject:** RE: EEO-1 (Type 2) Data for FOIA Requests

Good afternoon,

Please see attached zip folder with EEO-1 data (Type 2 reports) for federal contractors for 2016 – 2020. Only respondents who responded Yes to Question C3 (below) are included. The files were prepared as CSVs, as requested, so leading zeroes for these variables are dropped: COMPANY, UNIT, ZIPCODE, and DUNS.

> *Question C3. Does the company or any of its establishments (a) have 50 or more employees (2) are prime contractors or first-tier subcontractors; (3) have a contract, subcontract, or purchase order amounting to $50,000 or more AND (4) are not exempt as provided for by 41 CFR 60-1.5; OR serve as depositories of Government funds in any amount; or are financial institutions which are issuing and paying agents for U.S. Savings Bonds and savings notes?*

The number of unique federal contractors that submitted Type 2 EEO-1s from 2016-2018 is **20,655**. The number of additional unique federal contractors that submitted Type 2 EEO-1s in 2019-2020 is **3,699**.
The number of contractors by year:

| Year(s) | Unique federal contractors that submitted Type 2 EEO-1 |
|---|---|
| 2016 | 15,144 |
| 2017 | 15,406 |
| 2018 | 16,908 |
| 2019 | 13,871 |
| 2020 | 13,670 |

Thank you,

**Somayah Eltoweissy**

Scheduling and Jurisdiction Branch Chief

U.S. Department of Labor

Division of Program Operations | Office of Federal Contract Compliance Programs

Tel.  (202) 803-0197 | eltoweissy.somayah.m@dol.gov

---

**From:** Andersen, Bruce - OFCCP <Andersen.Bruce@dol.gov>
**Sent:** Wednesday, June 8, 2022 12:54 PM
**To:** Eltoweissy, Somayah M - OFCCP <Eltoweissy.Somayah.M@dol.gov>; Spalding, Candice - OFCCP <Spalding.Candice@dol.gov>
**Cc:** Kaiser, Javaid - OFCCP <Kaiser.Javaid@dol.gov>; Smith, Kelley - OFCCP <Smith.Kelley.J@dol.gov>; Ahaghotu, Kelechi U - OFCCP <Ahaghotu.Kelechi.U@dol.gov>; Fort, Harvey D - OFCCP <Fort.Harvey.D@dol.gov>; Lutz, Alissa S - OFCCP <Lutz.Alissa.S@dol.gov>
**Subject:** RE: EEO-1 (Type 2) Data for FOIA Requests

I will contact you later this afternoon.

---

**From:** Eltoweissy, Somayah M - OFCCP <Eltoweissy.Somayah.M@dol.gov>
**Sent:** Wednesday, June 8, 2022 12:30 PM
**To:** Spalding, Candice - OFCCP <Spalding.Candice@dol.gov>
**Cc:** Kaiser, Javaid - OFCCP <Kaiser.Javaid@dol.gov>; Smith, Kelley - OFCCP <Smith.Kelley.J@dol.gov>; Ahaghotu, Kelechi U - OFCCP <Ahaghotu.Kelechi.U@dol.gov>; Andersen, Bruce - OFCCP <Andersen.Bruce@dol.gov>; Fort, Harvey D - OFCCP <Fort.Harvey.D@dol.gov>; Lutz, Alissa S - OFCCP <Lutz.Alissa.S@dol.gov>
**Subject:** RE: EEO-1 (Type 2) Data for FOIA Requests

Good afternoon,

Dr. Kaiser forwarded the email below to me.

Can you share what parameters are required for the EEO-1 data (Type 2 reports) data pull? Or, if you could provide an example of a prior release so that we can ensure formatting and fields generated are consistent since we have new staff, much appreciated.

DPO is working on Keir's request.

Thank you,

**Somayah Eltoweissy**
Scheduling and Jurisdiction Branch Chief
U.S. Department of Labor
Division of Program Operations | Office of Federal Contract Compliance Programs
Tel.  (202) 803-0197 | eltoweissy.somayah.m@dol.gov

**From:** Spalding, Candice - OFCCP <Spalding.Candice@dol.gov>
**Sent:** Wednesday, June 08, 2022 10:21 AM
**To:** Kaiser, Javaid - OFCCP <Kaiser.Javaid@dol.gov>
**Cc:** Smith, Kelley - OFCCP <Smith.Kelley.J@dol.gov>; Ahaghotu, Kelechi U - OFCCP <Ahaghotu.Kelechi.U@dol.gov>; Andersen, Bruce - OFCCP <Andersen.Bruce@dol.gov>
**Subject:** EEO-1 (Type 2) Data for FOIA Requests

Hi Javaid,

As you are aware, we have a pending lawsuit with one of our FOIA requesters, Will Evans.  The request entails EEO-1 data (Type 2 reports) for **all federal contractors** for fiscal years 2016 – 2018, and most recently, Mr. Evans amended his request to include the years 2019-2020. Per Director Yang and the Office of the Solicitor, we were advised to have the data ready to be released based on the district court's decision while a related case is pending before the Ninth Circuit. We could be asked at any point to release the data so we have to be ready to release it if asked.

Mai performed these searches in the past. However, DPO is the record custodian of the data and we are asking that DPO generate the reports. Additionally, the individual who generates the report should be the same individual who pulls the data for all the years involved in this FOIA request since they may have to explain how they pulled the data in litigation if the issue comes up in a proceeding. As we would like to stay consistent with the formatting and fields generated in prior releases, to the extent possible, please ensure that the format and fields generated are the same for all data pulls.

Also, Keir has asked for the number of unique filers of Type 2 EEO-1 data from 2016 – 2018, and will eventually ask for 2019-2020.  We will need the same person to provide us with these numbers and it is important that **any duplicate filers are removed in the calculations**.

Please ask the responsible person in your division to prepare the data for fiscal years 2016 - 2020. If they have any questions, please ask them to contact Kelechi and Bruce.

Thanks,

Candice Spalding | Deputy Director
Division of Management and Administrative Programs
U.S. Department of Labor, OFCCP
202.693.1169


ofccp logo

# EXHIBIT R



MAJORITY MEMBERS:

VIRGINIA FOXX, NORTH CAROLINA,
*Chairwoman*

JOE WILSON, SOUTH CAROLINA
GLENN THOMPSON, PENNSYLVANIA
TIM WALBERG, MICHIGAN
GLENN GROTHMAN, WISCONSIN
ELISE M. STEFANIK, NEW YORK
RICK W. ALLEN, GEORGIA
JIM BANKS, INDIANA
JAMES COMER, KENTUCKY
LLOYD SMUCKER, PENNSYLVANIA
BURGESS OWENS, UTAH
BOB GOOD, VIRGINIA
LISA C. MCCLAIN, MICHIGAN
MARY E. MILLER, ILLINOIS
MICHELLE STEEL, CALIFORNIA
RON ESTES, KANSAS
JULIA LETLOW, LOUISIANA
KEVIN KILEY, CALIFORNIA
AARON BEAN, FLORIDA
ERIC BURLISON, MISSOURI
NATHANIEL MORAN, TEXAS
JOHN JAMES, MICHIGAN
LORI CHAVEZ-DEREMER, OREGON
BRANDON WILLIAMS, NEW YORK
ERIN HOUCHIN, INDIANA

MINORITY MEMBERS:

ROBERT C. "BOBBY" SCOTT, VIRGINIA,
*Ranking Member*

RAÚL M. GRIJALVA, ARIZONA
JOE COURTNEY, CONNECTICUT
GREGORIO KILILI CAMACHO SABLAN,
  NORTHERN MARIANA ISLANDS
FREDERICA S. WILSON, FLORIDA
SUZANNE BONAMICI, OREGON
MARK TAKANO, CALIFORNIA
ALMA S. ADAMS, NORTH CAROLINA
MARK DESAULNIER, CALIFORNIA
DONALD NORCROSS, NEW JERSEY
PRAMILA JAYAPAL, WASHINGTON
SUSAN WILD, PENNSYLVANIA
LUCY MCBATH, GEORGIA
JAHANA HAYES, CONNECTICUT
ILHAN OMAR, MINNESOTA
HALEY M. STEVENS, MICHIGAN
TERESA LEGER FERNÁNDEZ,
  NEW MEXICO
KATHY E. MANNING, NORTH CAROLINA
FRANK J. MRVAN, INDIANA
JAMAAL BOWMAN, NEW YORK

# COMMITTEE ON
# EDUCATION AND THE WORKFORCE

U.S. HOUSE OF REPRESENTATIVES
2176 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6100

February 10, 2023

The Honorable Jenny R. Yang
Director
Office of Federal Contract Compliance Programs
U.S. Department of Labor
200 Constitution Ave., NW
Washington, DC 20210

Re:     Release of EEO-1 Data

Dear Director Yang:

I have serious concerns that the Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) has not provided federal contractors, especially smaller employers, with sufficient information and time to object to having their confidential data released pursuant to a *Freedom of Information Act* (FOIA) request from the Center for Investigative Reporting, a left-of-center journalism organization. OFCCP's failures could result in disclosing employers' and employees' sensitive, confidential information without due process.

The Employer Information Report (EEO-1) requires federal contractors with 50 or more employees to submit demographic workforce data to the Equal Employment Opportunity Commission (EEOC) and OFCCP, including data by race, ethnicity, sex, and job categories. The Type 2 Consolidated EEO-1 report combines data from employers with different locations into one report, and these reports can reveal the private information of individual employees, especially for smaller employers. It is a crime for any EEOC officer or employee to disclose this information, and OFCCP may not have the authority to make such disclosures.[1]

Last week, OFCCP published a list of 13,521 employers who are recorded by the agency as not objecting to the disclosure of Type 2 EEO-1 data for the years 2016-2020 (non-objector list) in response to the FOIA request. On February 7, OFCCP extended the deadline to February 17 for

---

[1] 42 U.S.C. § 2000e-8(e).

The Honorable Jenny R. Yang
February 10, 2023
Page 2

employers to notify OFCCP that they are wrongly on the non-objector list.[2] However, I am
concerned OFCCP has not taken the necessary steps to notify federal contractors, especially
smaller employers, that the non-objector list may have errors or that employers were required to
submit objections previously to prevent their sensitive data from being released.

It has come to my attention that an alarming number of employers on the list have submitted
objections to OFCCP but are still included as non-objectors. This alone shows that much more
time is needed to correct the list and for employers to ensure their non-objector status is
recorded.

It further appears that many employers were not aware of the pending FOIA request at OFCCP.
The agency must do a much better job of informing federal contractors, especially smaller
employers, about their rights and obligations. I am also aware that OFCCP has not provided
information to all relevant employers about what data will be disclosed in response to the FOIA
request. These employers could not determine whether to submit objections because they did not
know what information OFCCP would turn over. Employers who were unaware of the FOIA
request or were not provided sufficient information about the potential disclosure should be
allowed additional time to submit objections regarding their Type 2 EEO-1 data being disclosed.

For these reasons, I request that OFCCP re-open the period for employers to submit objections to
the Type 2 EEO-1 data being released for **60 days**. I also request that OFCCP extend the
deadline for employers to notify the agency they are wrongly on the non-objector list by **60 days**.
I further request that OFCCP immediately ensure that every employer on the non-objector list is
notified of their status as a non-objector and of what they must do to submit objections or correct
the record if they are wrongly on the list. Please respond by **February 14** indicating whether
OFCCP will reopen the period for submitting objections and extend the deadline for notifying
the agency that the non-objector list has an error.

In addition, to understand more fully the process OFCCP has undertaken in response to the FOIA
request, please respond to the following requests and questions in writing by **February 24**:

1. Provide all notices and communications from OFCCP to employers regarding their
   potential obligations to submit objections with respect to the FOIA request.

2. What percentage of employers on the non-objector list have been informed that they are
   on the list? How many employers on the list have not been informed about the FOIA
   request and their potential obligations?

3. What steps did OFCCP take to inform employers that they needed to submit objections so
   that their sensitive Type 2 EEO-1 data is not disclosed? When did OFCCP take those
   actions?

---

[2] OFCCP EXTENDS DEADLINE FROM FEBRUARY 7, 2023, TO FEBRUARY 17, 2023, FOR FEDERAL CONTRACTORS TO
ASSERT TYPE 2 EEO-1 DATA SHOULD NOT BE RELEASED, https://www.dol.gov/agencies/ofccp/submitter-notice-
response-portal.

The Honorable Jenny R. Yang
February 10, 2023
Page 3

4.  What actions is OFCCP planning to take to ensure employers are fully informed of their
    rights and obligations with respect to the FOIA request?

Thank you for your attention to these requests.

Sincerely,

Virginia Foxx
Chairwoman

Enclosure

## Responding to Committee Document Requests

1. In complying with this request, you should produce all responsive documents that are in your agency's possession, custody, or control, whether held by you or other past or present employees of the executive branch, or a representative acting on your behalf. Your response should also produce documents that you have a legal right to obtain, that the agency has a right to copy or to which you have access, or that you have placed in the temporary possession, custody, or control of any third party. Requested records, documents, data or information should not be destroyed, modified, removed, transferred or otherwise made inaccessible to the Committee on Education and the Workforce (the "Committee").

2. If any entity, organization or individual denoted in this request has been, or is also known by any other name than that herein denoted, the request shall be read also to include that alternative identification.

3. The Committee's preference is to receive documents in electronic form (i.e., email, CD, memory stick, or thumb drive) in lieu of paper productions.

4. Documents produced in electronic format should also be organized, identified, and indexed electronically.

5. Electronic document productions should be prepared according to the following standards:

   (a) The production should consist of single page Tagged Image File ("TIF"), files accompanied by a Concordance-format load file, an Opticon reference file, and a file defining the fields and character lengths of the load file.

   (b) Document numbers in the load file should match document Bates numbers and TIF file names.

   (c) If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

6. Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box, or folder should contain an index describing its contents.

7. Documents produced in response to this request shall be produced together with copies of file labels, dividers or identifying markers with which they were associated when they were requested.

8. When you produce documents, you should identify the paragraph, question number or request number in the Committee's request to which the documents respond.

9.  It shall not be a basis for refusal to produce documents that any other person or entity—either inside or outside of the executive branch—also possesses non-identical or identical copies of the same documents.

10. If any of the requested information is only reasonably available in machine-readable form (such as on a computer server, hard drive, or computer backup tape), the agency's staff should consult with the Committee staff to determine the appropriate format in which to produce the information.

11. If compliance with the request cannot be made in full, compliance shall be made to the extent possible and shall include a written explanation of why full compliance is not possible.

12. In the event that a document or portion of a document is withheld on the basis of privilege, provide a privilege log containing the following information concerning any such document or redaction: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, and addressee; and (e) the relationship of the author and addressee to each other.

13. If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances under which the document ceased to be in your possession, custody, or control.

14. If a date or other descriptive detail set forth in this request referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or other agency employees, or is otherwise apparent from the context of the request, you should produce all documents which would be responsive as if the date or other descriptive detail were correct.

15. The time period covered by this request is included in the attached request. To the extent a time period is not specified, produce relevant documents from January 20, 2021 to the present.

16. This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data or information, not produced because it has not been located or discovered by the return date, shall be produced immediately upon subsequent location or discovery. Such submission shall include an explanation as to why the information was not produced originally.

17. All documents shall be Bates-stamped sequentially and produced sequentially.

18. If physical documents are to be delivered, two sets of documents should be delivered, one set to the Majority Staff in Room 2176 of the Rayburn House Office Building and one set to the Minority Staff in Room 2101 of the Rayburn House Office Building during Committee office hours (9am-5pm, unless other arrangements are made) and signed by members of the respective staffs upon delivery.

19. Upon completion of the document production, the agency's written response should include a written certification, signed by the Secretary or his or her designee, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control which reasonably could contain responsive documents; and (2) all documents located during the search that are responsive have been produced to the Committee.

20. If the agency does not expect to produce all documents responsive to this letter by the date requested, the agency's staff shall consult with the Committee as soon as it is known the agency cannot meet the deadline, but no later than 24 hours before the due date to explain: (1) what will be provided by the due date, (2) why the agency believes certain materials cannot be produced by the due date, and (3) the agency's proposed timeline for providing any omitted information.

21. The agency's response to questions and request should be answered or provided in separate document and not included inside a narrative response.

## Definitions

1. The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, inter-office and intra-office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, email, regular mail, telexes, releases, or otherwise.

3. The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neuter genders.

4. The terms "person" or "persons" mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

5. The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; and (b) the individual's business address and phone number.

6. The term "referring or relating," with respect to any given subject, means anything that constitutes, contains, embodies, reflect s, identifies, states, refers to, deals with or is pertinent to that subject in any manner whatsoever.

7.  The term "agency" means any department, independent establishment, or corporation of the federal government. For the purposes of responding to oversight requests, the Committee expects information to be provided from all sub-agencies of an agency and not just the information that is immediately available to the addressee or the addressee's immediate sub-agency.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,<br><br>   Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>   Defendant. | Case No. 22-cv-07182-WHA<br><br>**DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT DEPARTMENT OF LABOR'S MOTION FOR SUMMARY JUDGMENT** |

I, Shivani Bautista, state as follows:

1. I submit this declaration in support of the United States Department of Labor's Motion for Summary Judgment in the above-captioned matter.  I have personal knowledge of the following facts and if called to testify, I could and would competently testify thereto.

2. I am Chief Legal Officer and Corporate Secretary for NorthShore University Health System where I have been employed since 2018.  Within my role and responsibilities at NorthShore, I oversee and manage all legal and compliance matters, advise on the System's governance and organizational documents and engage outside counsel and advisors related to the same. I have been in this role since April 1, 2023 and served in related roles including serving as General Counsel since October 2018. In my capacity as Chief Legal Officer and Corporate Secretary, I have knowledge and insight into the strategic operations of the company and oversee our compliance related reporting obligations including the annual submission of EEO-1 reports.

3. NorthShore University Health System is a community-based healthcare system based in the northwest suburbs of Chicago, Illinois.  The Company is headquartered in Evanston and consists of six (6) hospitals and an approximately 900 physician multispecialty group practice, with more than 140

DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

No. 22-cv-07182-WHA       1  ER-528

DocuSign Envelope ID: B4CFA6A4-33A6-42A3-8CFF-FBD7C8DAD97F

1   locations in the Chicagoland area.

2        4.     NorthShore University Health System submitted EEO-1 Type 2 Reports in 2016, 2017,

3   2018, 2019, and 2020.  The Company identified itself as a federal contractor in each of those EEO-1

4   Reports.

5        5.     The Company first became aware of the FOIA Request for Type 2 EEO-1 Reports via

6   email from OFCCP on or around September 21, 2022.

7        6.     NorthShore considers its EEO-1 Reports to be confidential, commercial documents.

8   Accordingly, the Company submitted written objections to the release of its EEO-1 Reports through

9   OFCCP's established portal on October 19, 2022.

10       7.     NorthShore's Type 2 EEO-1 Reports contain details of the organizational structure of its

11   workforce, which it considers to be private, commercially valuable information.  These Reports reveal

12   the types and amount of employees the Company utilizes to remain successful and competitive.

13       8.     NorthShore's EEO-1 Reports not only detail the overall headcount year-over-year, but

14   also reveal NorthShore's strategic structuring of its workforce at each level and how that has changed

15   over time. How NorthShore structures its workforce is part of its strategic business plan.  For example,

16   NorthShore's EEO-1 Reports from 2016 through 2020 show a significant change in the composition of

17   its workforce and in the proportion of leadership to employees. The ratio of Executives to Managers to

18   Professionals to Technicians to Service Workers is commercially valuable information, which shows

19   how a company could stratify its workforce to be successful and profitable. Strategic changes in the

20   Company's workforce structuring is commercially valuable information.

21       9.     Some of NorthShore's strategic business decisions can also be revealed when comparing

22   its EEO-1 Reports from before and after recent acquisitions.  Specifically, these Reports show how the

23   Company structured its workforce and the types of employees it employed in the years leading up to the

24   acquisitions and how it restructured, reorganized, and staffed its operations post-acquisitions. These can

25   create a roadmap for other similar competing organizations on how to efficiently and effectively operate

26   and grow.

27       10.    Recognizing the commercial value, and confidential nature of its EEO-1 Reports,

28

DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

No. 22-cv-07182-WHA          2   

1    NorthShore has taken steps to protect the security and confidentiality of its EEO-1 data and restricts

2    access to these documents both internally and externally.  NorthShore has not publicly released any

3    EEO-1 Report submitted to OFCCP since 2016, nor has it released general demographic information

4    about its workforce to the public.

5         11.    Internally, NorthShore restricts access to its EEO-1 Reports only to employees in its

6    Human Resources Department.  These employees receive training on the confidential nature of the

7    information that they are entrusted with in connection with their respective positions at NorthShore.  For

8    all other employees, access to the EEO-1 data is blocked in the Company's HRIS system via a series of

9    data protection security measures.

10        12.    To further ensure the confidentiality of the EEO-1 Reports, the Company does not

11   maintain paper copies.

12        13.    NorthShore takes the privacy of its employees seriously, and goes to great lengths to earn

13   and maintain their trust.  When soliciting the self-identification information used to prepare the EEO-1

14   Reports, NorthShore makes a promise to its employees that any information provided by the employee

15   will be kept confidential.  Once provided, this self-identification data is treated as confidential and

16   housed securely on NorthShore's HRIS with access restricted only to the HRIS team and individuals

17   who prepare the EEO-1 Reports.

18        14.    If NorthShore's EEO-1 data is disclosed, that will directly contradict and undermine the

19   assurances provided to employees. This is no small matter, and could have both practical and economic

20   impact if NorthShore's relationship with its workforce is undermined.  Further, despite NorthShore's

21   commitment to keeping demographic data confidential and its many efforts to do so, the demographic

22   information of particular employees may be apparent and made public if the EEO-1 Reports are

23   released.  This is particularly true in job categories with only a few incumbents. For example,

24   NorthShore's 2020 EEO-1 Report shows only one employee in a particular category, making this

25   employee and their race/ethnicity and gender easily identifiable.  Similarly, the Report shows four

26   employees in another EEO-1 Category, three of whom are women and one of whom is a man.  This, at

27   the very least, makes the man's race/ethnicity readily apparent to any viewer of the Report. Release of

28

DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

No. 22-cv-07182-WHA                          3     ER-530

DocuSign Envelope ID: B01CC5E9-C395-445C-BB4A-71B8A9180A9F

1    the EEO-1 Reports would not only negate NorthShore's efforts to maintain the confidentiality of this

2    sensitive data, but also threaten these individuals' privacy rights.

3         15.    OFCCP has expressly assured federal contractors like NorthShore that its EEO-1 Reports

4    will be kept confidential.  As a federal contractor, NorthShore is required to file EEO-1 Reports; it is not

5    optional or discretionary.  Per OFCCP's regulations, reports filed will be used only in connection with,

6    or in furtherance of, the administration of the Executive Order and the Civil Rights Act of 1964. Thus,

7    OFCCP represents to federal contractors like NorthShore that the EEO-1 Reports will only be used for

8    specific, limited purposes, which do not include releasing the reports to third-parties, including the

9    media. The release of NorthShore's EEO-1 Reports will not further the purposes of Executive Order

10   11246 or any other laws enforced by OFCCP.  To the contrary, such a release may have a chilling effect

11   on compliance by eroding the business community's trust in the Agency.  It may likewise deter

12   employees from self-reporting, which is, certainly, why OFCCP provides this assurance of

13   confidentiality in the first place.

14        16.    A public disclosure could cause significant commercial and operational damage to the

15   organization. The healthcare industry in which NorthShore operates is highly competitive and large

16   regional health systems dominate the market, creating competition for patient populations.  In this

17   environment, NorthShore must be constantly evolving to obtain and retain talent with the specialized

18   skillsets needed to succeed.

19        17.    As part of its strategy to remain competitive, NorthShore has undergone significant

20   growth since 2016.  This steady, strategic growth can easily be seen when comparing NorthShore's

21   EEO-1 Reports between 2016 and 2020. If released, competitors could not only see the overall increase

22   in headcount, but also gain insight into which job categories the majority of the growth occurred.

23        18.    The EEO-1 Reports could also reveal to NorthShore's competitors details about its recent

24   acquisitions and workforce restructuring not elsewhere made public.  For example, NorthShore acquired

25   Swedish Covenant Hospital in 2020.  If NorthShore's EEO-1 Reports are released, confidential and

26   proprietary information related to the impact the acquisition had on NorthShore's workforce overall, as

27   well as specifically what types of employees were acquired, and how the workforce was structured

28

DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

No. 22-cv-07182-WHA                           4    ER-531

1   before and after this acquisition would be apparent. Simply comparing NorthShore's 2019 and 2020

2   EEO-1 Reports would reveal to NorthShore's competitors that the majority of the acquired employees

3   were in certain EEO-1 categories, and resulted in NorthShore acquiring certain types of employees not

4   previously employed by the organization.

5       19.     Competitors could use this information as insight into the Company's growth strategies

6   and staffing patterns and use the information as a model to drive success for their own initiatives and

7   acquisitions, thereby depriving NorthShore of the competitive advantage that it has cultivated. This

8   competitive disadvantage is magnified by releasing multiple years of EEO-1 Reports. Because the

9   healthcare industry is quickly evolving, any advantage that NorthShore's competitors gain will have a

10  substantial effect on the competitive positions of the Company within the industry.

11      20.     Because the instant FOIA request is limited to companies who identified as federal

12  contractors on their EEO-1 Reports, release of those Reports will put companies like NorthShore whose

13  major competitors may not be federal contractors at a competitive disadvantage.  While NorthShore's

14  competitors will gain the advantage of viewing NorthShore's sensitive, confidential workforce and

15  staffing data, NorthShore will not share that same advantage and will not be able to view the data of

16  their competitors.

17      21.     Even releasing NorthShore's Type 2 EEO-1 Report for a single year could cause the

18  Company competitive disadvantage. In addition to occupational categories, the EEO-1 Reports reflect

19  demographic data for the Company's overall workforce.  If its competitors successfully lure away any of

20  NorthShore's employees, NorthShore will lose the talent and experience with the departing employees

21  and will incur additional costs to recruit, hire, train, and retain additional talent. This potential for

22  competitive disadvantage is particularly harmful for a company like NorthShore whose entire workforce

23  is concentrated in one state, rather than some of its competitors whose employees may be spread across

24  the country and more difficult to identify and locate through publicly available information.

25      22.     Because EEO-1 Reports present an incomplete and skewed picture of a company's

26  diversity and the data can easily be misconstrued, the public release of these Reports can cause harm to

27  NorthShore.  The EEO-1 data for Northshore may easily be compared to the aggregate industry data

28

DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    published by EEOC to make comparisons that -- without meaningful context -- are incomplete and

2    inaccurate.  These comparisons may include analyses that suggest statistically significant differences in

3    workforce representation on the basis of gender and/or race/ethnicity by EEO-1 category, based solely

4    on comparisons to the EEO-1 aggregate industry data published by EEOC.  The ability to conduct such

5    an analysis raises concerns because of how such information could be presented negatively portrayed by

6    uninformed third parties and competitors.

7          23.    The EEO-1 data is also subject to distortion and misrepresentation by outsiders, since it

8    does not reflect the job categories or process used by NorthShore internally for staffing and diversity

9    purposes.  Further, the EEO-1 Reports may even hide diversity because of the race and ethnicity

10   categories and definitions mandated by the EEOC.  For example, stakeholders may not view "White"

11   employees listed on the EEO-1 Report as diverse.  However, the EEOC's definition of "White" includes

12   people "having origins in any of the original people of Europe, the Middle East, or North Africa,"

13   groups that are otherwise considered by NorthShore as "diverse."  Further, many of those "White"

14   employees may also be individuals with disabilities, protected veterans, identify as LGBTQ+, or be a

15   part of other groups that add to NorthShore's diversity.

16         24.    The category of "Two or More Races," which includes all persons who identify with

17   more than one of the following races: White, Black or African American, Native Hawaiian or Other

18   Pacific Islander, Asian, American Indian or Alaska Native, is also misleading.  If those unfamiliar with

19   these categories attempt to use the EEO-1 Reports to draw conclusions about NorthShore's Black or

20   African American representation, for example, the conclusions may be negatively skewed because some

21   Black or African American employees may also identify another race category as well and will be

22   included in the Two or More Races category, artificially deflating the Black or African American

23   representation.  Without additional context, this type of skewed conclusion could cause significant

24   reputational and, in turn, financial and competitive harm to NorthShore.  Commercial or economic harm

25   to NorthShore is, by extension, harm to its employees.  If business goes down, NorthShore may not

26   maintain its current level of staffing and might need to eliminate positions.

27         25.    NorthShore's EEO-1 data is commercially valuable, competitively useful, and highly

28

DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

No. 22-cv-07182-WHA                                6    ER-533

1  sensitive information. The Company should not be hampered in its ability to make decisions about

2  growth, assignments, and staffing because its EEO-1 data may be subject to disclosure.  To remain

3  commercially profitable and competitive in the industry, NorthShore must be able to evolve its business

4  using its specialized knowledge and judgment, without being forced to share indicia of those decisions

5  publicly.

6         I declare under penalty of perjury under the laws of the United States that the foregoing is true

7  and correct.

8         Executed this ___ day of August, 2023, at _____.
                         22                               3:40pm

DocuSigned by:

*Shivani Bautista*

9E099B8038494E1...

9                                                                NAME

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF SHIVANI BAUTISTA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

No. 22-cv-07182-WHA                          7      ER-534