No. 24-880

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS

*Plaintiffs-Appellees,*

v.

UNITED STATES DEPARTMENT OF LABOR

*Defendant-Appellant.*

On Appeal from the United States District Court for the Northern District of California, Case No. 22-cv-07182-WHA, Honorable William Alsup, Presiding

## PLAINTIFF-APPELLEES' ANSWERING BRIEF

D. VICTORIA BARANETSKY
THE CENTER FOR
INVESTIGATIVE REPORTING
222 Sutter St., Ste. 200
San Francisco, CA 91608
Telephone:  (510) 982-2890
vbaranetsky@revealnews.org

THERESE Y. CANNATA
AARON R. FIELD
ZACHARY COLBETH
CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111
Telephone:  (415) 409-8900
tcannata@cofolaw.com
afield@cofolaw.com
zcolbeth@cofolaw.com

*Attorney for Plaintiff-Appellee*
*The Center for Investigative*
*Reporting*

*Attorneys for Plaintiffs-Appellees*
*The Center for Investigative*
*Reporting and Will Evans*

# CORPORATE DISCLOSURE STATEMENT

This statement is made pursuant to Federal Rules of Appellate Procedure 26.1 and 28(a)(1). Plaintiff Center for Investigative Reporting does not have a parent corporation, and there are no publicly held corporations that own more than 10% of its stock. Plaintiff Will Evans is an individual.

DATE: July 10, 2024

/s/ *D. Victoria Baranetsky*
D. VICTORIA BARANETSKY
Attorney for Plaintiff-Appellee
CENTER FOR INVESTIGATIVE
REPORTING

/s/ *Aaron R. Field*
AARON R. FIELD
Attorney for Plaintiffs-Appellees
CENTER FOR INVESTIGATIVE
REPORTING and WILL EVANS

## TABLE OF CONTENTS

I.    INTRODUCTION…………………………………………………...1

II.    STATEMENT OF JURISDICTION …………………………..………….5

III.   STATEMENT OF THE ISSUES ..…………………………………………..5

IV.   STATEMENT OF THE CASE …………………………………………...6

     A.    FEDERAL CONTRACTORS ARE REQUIRED TO SUBMIT EEO-1 REPORTS TO DOL………………………………………………………6

     B.    CIR'S FOIA REQUESTS FOR EEO-1 REPORTS IN THIS CASE …………8

     C.    DOL'S PARTIAL RELEASE AND PARTIAL WITHHOLDING OF EEO-1 DATA ……………………………………………………………..12

     D.    PUBLISHING WORKFORCE EEO-1 DATA IS AN INDUSTRY TREND …...12

     E.    THE CURRENT APPEAL – THE DISTRICT COURT ORDERS DISCLOSURE OF RECORDS ………………………………………………………14

V.    SUMMARY OF THE ARGUMENT…………………………………18

VI.   STANDARD OF REVIEW……………………………………………..20

VII.  ARGUMENT………………………………………………22

     A.    THE DISTRICT COURT CORRECTLY HELD THAT EEO-1 DATA IS NOT COMMERCIAL INFORMATION UNDER FOIA EXEMPTION 4 ………….. 22

          1.    EEO-1 Reports Are Not of a "Commercial Nature" ………...24

          2.    EEO-1 Reports Are Not "Commercial" Under the *Excelsior* Cases .…………………………………………………...33

          3.    EEO-1 Reports Do Not Serve a "Commercial Function"……35

ii

B.    EEO-1 REPORTS SHOULD BE DISCLOSED BECAUSE DOL FAILED TO SHOW THAT DISCLOSURE WOULD CAUSE A "FORESEEABLE HARM" UNDER THE FOIA IMPROVEMENT ACT OF 2016 ………..……………..38

    1.   DOL Failed to Meet Its Burden under the FOIA Improvement Act to Prove that Disclosure Would Cause Foreseeable Harm ……...41

    2.   The Trade Secrets Act § 1905 Does Not Apply and Therefore DOL's Burden to Meet the FIA Survives………..…………….…47

VIII.  CONCLUSION ..…………………………………………………..54

STATEMENT OF RELATED CASES…………………………………………..55

CERTIFICATE OF COMPLIANCE .…………………………………………56

CERTIFICATE OF SERVICE ……………………………………………..57

iii

# TABLE OF AUTHORITIES
## CASES

*A.C.L.U. v. U.S. D.O.J.*
   880 F.3d 473 (9th Cir. 2018) ...............................................................21

*Amadis v. United States Dep't of State*
   971 F.3d 364 (D.C. Cir. 2020).............................................................45

*American Airlines, Inc. v. Nat. Mediation Bd.*
   588 F.2d 863 (2d Cir. 1978) ...............................................................27

*Animal Legal Def. Fund v. U.S. Food and Drug Admin*
   836 F.3d 987 (9th Cir. 2016) .......................................................20, 23

*Besson v. U.S. Dep't of Commerce*
   480 F. Supp. 3d 105 (D.D.C. 2020)............................................. *passim*

*Brockway v. Dep't of Air Force*
   518 F.2d 1184 (8th Cir. 1975) .............................................................27

*CNA Fin. Corp. v. Donovan*
   830 F.2d 1132 (D.C. Cir. 1987)...........................................................49

*Carlson v. U.S. Postal Serv.*
   504 F.3d 1123 (9th Cir. 2007) .................................................... *passim*

*Citizens Comm'n on Human Rights v. F.D.A.*
   No. 92-CV-5313, 1993 WL 1610471 (C.D. Cal. May 10, 1993)......................52

*Citizens for Resp. and Ethics in Washington v. United States Dep't of Just.*
   58 F.4th 1255 (D.C. Cir. 2023)………………………………………………...53

*Clark v. Bear Stearns & Co., Inc.*
   966 F.2d 1318 (9th Cir.1992) .............................................................23

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*

436 F. Supp. 3d 90 (D.D.C. 2019) ....................................................41

*Ctr. for Investigative Reporting v. U.S. Dep't of Labor*
Case No. 3:18-cv-02008 (N.D. Cal. Dec. 21, 2008) .............................3

*Ctr. for Investigative Reporting v. U.S. Dep't. of Labor ("CIR I")*
424 F. Supp. 3d 771 (N.D. Cal. 2019) ....................................... *passim*

*Davin v. U.S. Dep't of Justice*
60 F.3d 1043 (3d Cir. 1995) ...............................................26

*Ellis v. Salt River Project Agricultural Improvement & Power Dist.*
24 F.4th 1262 (9th Cir. 2022) .............................................21

*Evans v. Synonsys, Inc.*
34 F.4th 762, 772 (9th Cir. 2022) .........................................3

*Excelsior Underwear, Inc.*
156 N.L.R.B. 1236 (1966) ..................................................33

*Food Marketing Inst. v. Argus Leader Media*
588 U.S. 427 (2019)..................................................... *passim*

*GC Micro Corp. v. Def. Logistics Agency*
33 F.3d 1109 (9th Cir. 1994) ..............................................23

*Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n*
750 F.2d 1394 (7th Cir. 1984) .............................................49

*General Motors Corp. v. Marshall*
654 F.2d 294, 297 (4th Cir. 1981) .....................................55, 58

*Getman v. N.L.R.B.*
450 F.2d 670 (D.C. Cir. 1971)....................................... *passim*

*Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*
643 F. Supp. 3d (D.D.C. 2022)..............................................45

v

*JCI Metal Production v. U.S. Dep't of the Navy*
    No. 09-CV-2139-IEG, 2010 WL 2925436, at *8 (S.D. Cal. July 23, 2010).49, 54

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*
    375 F. Supp. 3d (D.D.C. 2019) …………………..…………..…….....40, 45

*Kentucky v. King*
    563 U.S. 452 (2011) ..........................................................................41

*Martech USA, Inc. v. Reich*
    No. C-93-4137 EFL, 1993 WL 1483700 (N.D. Cal. Nov. 24, 1993)................44

*McClellan Ecological Seepage Situation v. Carlucci*
    835 F.2d 1282 (9th Cir. 1987) ...........................................................24

*Merit Energy Co. v. U.S. Dep't of Interior*
    180 F. Supp. 2d 1184 (D. Colo. 2001)............................................19, 35

*Nat'l Ass'n of Home Builders v. Norton*
    309 F.3d 26 (D.C. Cir. 2002)..................................................18, 24, 25

*Nat'l Bus. Aviation Ass'n, Inc. v. F.A.A.*
    686 F.Supp.2d 80 (D.D.C. 2010).............................................27, 28, 31

*Nat'l Parks and Conservation Ass'n v. Kleppe*
    547 F.2d 673 (D.C. Cir. 1976)...........................................................49

*Nat'l Treas. Employees Union v. I.R.S.*
    765 F.2d 1174 (D.C. Cir. 1985) ........................................................22

*New Hampshire Right to Life v. U.S. Dep't of Health and Human Servs.*
    778 F.3d 43 (1st Cir. 2015)........................................................ *passim*

*New York Times Co.*
    No. 19 CIV. 1424 (KPF), 2021 WL 371784 (S.D.N.Y. Feb. 3, 2021). ...... *passim*

*News Grp. Boston, Inc. v. Nat'l R.R. Passenger Corp.*
   799 F. Supp. 1264 (D. Mass. 1992) ...................................................27

*Pac. Architects and Eng'rs Inc. v. U.S. Dep't of State*
   906 F.2d 1345 (9th Cir. 1990) ...........................................................51

*Pub. Citizen Health Research Grp. v. F.D.A.*
   704 F.2d 1280 (D.C. Cir. 1983)……………….…..…………………………*passim*

*Pub. Citizen Health Research Grp. v. U.S. Dep't of Health, Ed. and Welfare*
   477 F. Supp. 595 (D.D.C. 1979)..........................................................28

*Rosenberg v. DOD*
   342 F. Supp. 3d (D.D.C. 2018)....................................................20, 40

*Ruckelshaus v. Monsanto Co.*
   467 U.S. 986 (1984)..........................................................................52

*Sears, Roebuck & Co. v. General Services Admin.*
   509 F.2d 527 (D.C. Cir. 1974).......................................................8, 46

*Seife v. FDA*
   43 F.4th 231, 242 (2d Cir. 2022) ............................................. *passim*

*Sierra Club Inc. v. U.S. Fish & Wildlife Serv.*
   925 F.3d 1000, 1010 n.7 (9th Cir. 2019) ............................................39

*Skybridge Spectrum Found. v. Federal Commc'ns Comm'n*
   No. 10-01496, 2012 WL 336160 (D.C.C. 2012)...........................19, 35

*Starkey v. U.S. Dep't of Interior*
   238 F. Supp. 2d 1188 (S.D. Cal. 2002)...............................................26

*Synopsys, Inc. v. U.S. Dep't of Labor*
   No. 20-16414, 2022 WL 1501094 (9th Cir. May 12, 2022) ...................... *passim*

*Taylor v. Babbitt*

760 F. Supp. 2d 80 (D.D.C. 2011) ....................................................52

*United Techs. Corp. v. U.S. Dep't of Defense*
   601 F.3d 557 (D.C. Cir. 2010) .................................................44

*U.S. v. Mendoza*
   464 U.S. 154 (1984) ........................................................14, 23

*Van Bourg, Allen, Weinberg and Roger v. NLRB*
   728 F.2d 1270 (9th Cir. 1984) ..............................................32

*Washington Research Project, Inc. v. HEW*
   504 F.2d 238 (1974) ..........................................................27

*Watkins v. U.S. Bureau of Customs and Border Prot.*
   643 F.3d 1189 (9th Cir. 2011) .................................... *passim*

*Williams v. Taylor*
   529 U.S. 362 (2000) ........................................................23, 25

## STATUTES

29 C.F.R. § 1602.7 ...............................................................1, 6

29 C.F.R. § 1602.8 ................................................................. 1

29 C.F.R. § 1602.9 ................................................................. 1

29 C.F.R. § 1602.10 ............................................................... 1

29 C.F.R. § 1602.11 ............................................................... 1

29 C.F.R. § 1602.12 ............................................................... 1

29 C.F.R. § 1602.13 ...............................................................1

29 C.F.R. § 1602.14 ............................................................... 1

41 C.F.R. § 60-1.7 ............................................................................1, 6

87 F.R. § 51145 ..............................................................................8, 11

FOIA Improvement Act of 2016 ("FIA")
    Pub. L. No. 114-185, 130 Stat. 538 ......................................... *passim*

Freedom of Information Act ("FOIA")
    5 U.S.C. § 552……….................................................................*passim*

    5 U.S.C. § 552 (a)(8)(A) ........................................................ *passim*

    5 U.S.C. § 552(a)(8)(A)(i) ..................................................... *passim*

    5 U.S.C. § 552(b)(3) .....................................................................49

    5 U.S.C. § 552(b)(4) ............................................................. *passim*

Trade Secrets Act ("TSA")
    18 U.S.C. § 1905 ...................................................................*passim*

Civil Rights Act ("CRA")

    42 U.S.C. § 2000e-8(c) .....................................................................1

    42 U.S.C. § 2000e-8(e) .....................................................................8

## <u>OTHER AUTHORITIES</u>

114 Cong. Rec. S1494 (Mar. 15, 2016), *available at* https://perma.cc/KQW7-655R
    (statement of Sen. Grassley) ..............................................................40

Lyndon Johnson, *Remarks upon Signing the Civil Rights Act of 1964* (July 2,
    1964), *available at* https://shorturl.at/cikzN.......................................2

ix

*Notice of Request Under the Freedom of Information Act for Federal Contractors'*
*Type 2 Consolidated EEO-1 Report Data*, 87 Fed. Reg. 51145 (Aug. 19, 2022),
*available at* https://bit.ly/3ThtEzw ....................................................................11

*Final Notice Re: Disclosure of Type 2 EEO-1 Data in Response to Freedom of*
*Information Act Request*, Department of Labor (Mar. 7, 2023), *available at*
https://shorturl.at/goS29 ........................................................................................12

U.S. Government Accountability Office, *A Snapshot of Government-Wide*
*Contracting for FY 2023 (interactive dashboard)* (gao.gov June 25, 2024),
*available at* https://www.gao.gov/blog/snapshot-government-wide-contracting-
fy-2023-interactive-dashboard ................................................................................2

# I. INTRODUCTION

This is the second time Plaintiffs/Appellees Center for Investigative Reporting and Will Evans (collectively, "CIR" or "Plaintiffs" or "Plaintiffs/Appellees") have appeared before this Court and the third time they have filed a lawsuit to enforce compliance with a Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") request for diversity statistic reports (EEO-1 Consolidated Reports (Type 2) or "EEO-1 reports") submitted to Defendant/Appellant Department of Labor ("DOL" or "Defendant" or "Defendant/Appellant") by large federal contractors. These government-created forms, with generalized diversity data, are required by DOL from all federal contractors with 50 or more employees annually pursuant to Title VII of the Civil Rights Act ("CRA") of 1964.[1] DOL is continuing to withhold at least 16,755 EEO-1 Reports from 4,796 contractors under FOIA Exemption 4, necessitating this lawsuit.

EEO-1 Reports are of immense public importance. They facilitate compliance and enforcement of the Civil Rights Act.[2] But perhaps even more

---

[1] Section 709(c) of the Civil Rights Act, as amended, 42 U.S.C. § 2000e-8(c), and can be found in 29 CFR 1602.7-.14 and 41 CFR 60-1.7(a). The express purpose of the statute that authorizes DOL's regulations requiring EEO-1 Reports is to facilitate "enforcement" of the equal employment opportunity protection provisions of the Civil Rights Act, 42 U.S.C. § 2000e–8(c).

[2] When President Johnson signed the Civil Rights Act into law, he explained that it was meant to place all as on more equal footing in various aspects of their daily

1

importantly, they permit the public to verify that publicly funded large federal contractors[3] are complying with the law, and to ensure that DOL is taking meaningful steps to further ensure compliance by large federal contractors hired with taxpayer dollars, often at great expense. Because of this public interest, CIR, along with many other newsrooms and academics, has requested, obtained, and reported on this data multiple times over the years. 1-SER-89-90.

This lawsuit is the third time Plaintiffs/Appellees Center for Investigative Reporting and Will Evans have gone to court to enforce their right of access to EEO-1 Reports. CIR has been forced to file two prior lawsuits to obtain the same EEO-1 Reports at issue here, which ended in one settlement resulting in the disclosure of all records and one district court opinion ordering full disclosure of EEO-1 Reports under FOIA Exemption 4 and the FOIA Improvement Act of 2016,

---

lives, including in the workplace. Lyndon Johnson, *Remarks upon Signing the Civil Rights Act of 1964* (July 2, 1964), *available at* https://shorturl.at/cikzN.

[3] Large federal contractors are required to submit EEO-1 Reports for good reason: they receive staggering sums of taxpayer money each year. According to the U.S. Government Accountability Office, in FY 2023 alone, "***the federal government committed about $759 billion on contracts***, an increase of about $33 billion from Fiscal Year 2022 after adjusting for inflation." U.S. Government Accountability Office, *A Snapshot of Government-Wide Contracting for FY 2023 (interactive dashboard)* (gao.gov June 25, 2024), *available at* https://www.gao.gov/blog/snapshot-government-wide-contracting-fy-2023-interactive-dashboard (emphasis added).

2

5 U.S.C. § 552(a)(8)(A)(i)(I) ("FIA").[4] Subsequently, the district court in this case once more ordered disclosure of EEO-1 Reports and held Exemption 4 did not apply. Despite the unison in these lower court decisions, CIR has been forced to use its resources and time to litigate this issue on appeal yet again in this case, five years after it made its first request for EEO-1 Reports to DOL, CIR seeks to obtain an order requiring DOL to comply with these decisions and enforce its and the public's right of access.

In this case, as in Plaintiffs/Appellees' previous cases against DOL seeking access to EEO-1 Reports, DOL withheld the requested EEO-1 Reports under FOIA's Exemption 4, which allows federal agencies to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). DOL argued in the district court, as it had unsuccessfully in its previous case against CIR and Mr. Evans involving access to EEO-1 Reports, that the high-level diversity information in EEO-1 Reports is exempt from disclosure under Exemption 4 because it is "confidential"

---

[4] In *Ctr. for Investigative Reporting v. Dep't of Labor*, Case No. 3:18-cv-02008 (N.D. Cal. Dec. 21, 2008), DOL disclosed EEO-1 Reports without a court order to settle the case. 1-SER-89. And, in *Center for Investigative Reporting v. Department of Labor* ("*CIR I*"), 424 F. Supp. 3d 771, 776-79 (N.D. Cal. 2019), *aff'd sub. nom. Evans v. Synopsys, Inc.*, 34 F.4th 762, 772 (9th Cir. 2022), this court ordered DOL to disclose EEO-1 Reports because they are not "commercial" under FOIA Exemption 4 and disclosure would not cause foreseeable harm. 1-SER-89-90. DOL chose not to appeal, and an intervenor's appeal was dismissed. *Id.*

3

"commercial" information. The district court rejected DOL's Exemption 4 claim and largely granted Plaintiffs/Appellees' summary judgment motion.

This Court should affirm the district court's summary judgment ruling, for several independent reasons. *First*, FOIA's Exemption 4 applies to information that is commercial and confidential. The district court was correct when it held that DOL has not met, and cannot meet, its burden to prove EEO-1 Reports are "commercial information" under Exemption 4 because there is too tenuous a connection — if any — between the demographics of a contractor's workforce and its profit-making activities. DOL had the burden to prove otherwise, but failed to meet that burden. *Second*, the summary judgment order should be affirmed for the reason (not reached by Judge Alsup) that DOL fell far short of meeting its burden to prove that any reasonably foreseeable harm would result from disclosure of the EEO-1 reports, as required by the FIA. The reasonably-foreseeable-harm requirement is a separate and independent requirement from the Exemptions, created by the FIA, and must be satisfied. DOL failed to meet its burden under the FIA because it barely attempted to articulate a reasonably foreseeable harm that would result from disclosure, and the harms that it did identify were not sufficiently specific nor objectively reasonable, nor were they the types of harms that Exemption 4 was intended to prevent, as the FIA requires. While the district court's ruling did not analyze the FIA, this Court can, and should, hold that DOL's

4

failure to meet its burden of proof under the FIA separately and independently justifies affirming the district court's Exemption 4 ruling.

## II.  STATEMENT OF JURISDICTION

Appellees and Plaintiffs Center for Investigative Reporting and Will Evans agree with the statement of jurisdiction by Appellant and Defendant Department of Labor.

## III.  STATEMENT OF THE ISSUES

1.      Whether DOL failed to meet its burden to prove that EEO-1 Reports are "commercial information" within the meaning of Exemption 4 of the Freedom of Information Act, 5 U.S.C. § 552(b)(4), as decided by the district court, 1-ER-6-10, and in *Center for Investigative Reporting v. Department of Labor* ("*CIR I*"), 424 F. Supp. 3d 771, 776-79 (N.D. Cal. 2019).

2.      Whether DOL met its additional burden to prove, under the FIA, that disclosing EEO-1 Reports would cause reasonably foreseeable harm to the interests protected by Exemption 4, and whether the Trade Secrets Act excuses DOL from meeting that requirement. *See* 1-ER-10–13; *CIR I*, 424 F. Supp. 3d at 780.

A copy of pertinent statutes has been provided in the Addendum to Appellant/Defendant Department of Labor's Brief for Appellant.

5

## IV.  STATEMENT OF THE CASE

### A.  FEDERAL CONTRACTORS ARE REQUIRED TO SUBMIT EEO-1 REPORTS TO DOL

Each year, companies that qualify as federal contractors are required to submit demographic data on their employees to the DOL under section 709(c) of the CRA. These companies must annually file an Employment Information Report, also known as a Standard Form 100, ("EEO-1 Form") with the EEO-1 Joint Reporting Committee, a committee comprised of the two sub-agencies within DOL, the Office of Federal Contract Compliance Programs ("OFCCP") and the Equal Employment Opportunity Commission ("EEOC"). 1-SER-203 – 3-SER-732 (OFCCP Manual); 41 C.F.R. § 60-1.7 (OFCCP regulations); 29 C.F.R. §1602.7 (EEOC regulations). The EEOC and the OFCCP jointly administer the EEO-1 reporting process under the authority of the CRA, and "in the interests of consistency, uniformity and economy" they jointly developed the EEO-1 Form "as a single form [that] meets the statistical needs of both programs." 3-SER-733-750 (EEO-1 instructions).

The EEO-1 Form is a mandatory annual survey that requires demographic workforce data from federal contractors using specific predetermined categories. 3-SER-751-753 (sample of form). The three categories of information called for by the EEO-1 Form are (1) two sex options, (2) six race/ethnicity categories, and (3) ten general job classifications. *Id*. If a federal contractor fails to file an EEO-1

6

Form, under section 709(c) of the CRA, the EEOC may compel the contractor to file an EEO-1 form by obtaining a court order and imposing further penalties, including termination of and debarment from future contracts. 3-SER-735.

Two types of reports are created from the EEO-1 Form and filed with DOL: Type 1 Component Reports (for employers "doing business at only one establishment") and Type Consolidated 2 Reports (for "employers doing business at more than one establishment"). 3-SER-737. The *only* reports at issue here are Type 2 Consolidated Reports ("Type 2 Reports" or "EEO-1 Reports"). EEO-1 Reports include demographic data on *all* employees across *all* of a federal contractor's offices in a single report. 3-SER-737-738.

Type 2 Reports contain high-level, aggregate data, as opposed to the more particularized data in Type 1 Reports. 3-SER-751-753. The three broad categories of diversity data (sex, race/ethnicity, and ten job classifications) that they contain were selected "to simplify and standardize the method of reporting." 3-SER-740; 3-SER-751-753. Their ten job classifications make EEO-1 Reports even more abstract, since *all* jobs "are considered to belong[] in one of the broad job categories." *Id*.

Marc Bendick, an expert economist, broke down the information contained in EEO-1 Reports as follows:

    (1) The company's total number of employees.
    (2) The number of company employees in 10 broad occupational

7

categories (for example, "professionals," "craft workers," and "service workers").

(3) The number of employees in each of those categories by race/ethnicity and gender.

(4) How total employment at the company changed from year to year in recent years.

(5) How the distribution of the company's workforce by those 10 categories changed from year to year in recent years.

(6) How the race/ethnic and gender composition of employees in these categories changed from year to year in recent years.

1-ER-115-116; *see also, e.g.*, 3-SER-751-753 (example of previously obtained EEO-1 Report).

Though the EEOC and OFCCP jointly collect EEO-1 data, the two agencies are permitted to use the data differently. 3-SER-754-757 (OFCCP FAQ). The EEOC "is prohibited from making public" EEO-1 data, *Id.*; § 709(e) of CRA, whereas the OFCCP is permitted to make EEO-1 Reports public under FOIA. *Id.* Since 1974, courts have ruled that the CRA "prohibition against disclosure does not apply to OFCCP." *See* 42 U.S.C. § 2000e-8(e); *Sears, Roebuck & Co. v. General Services Admin.*, 509 F.2d 527, 529 (D.C. Cir. 1974). OFCCP has stated as much, online and in the federal register, 87 F.R. § 51145, and has previously released EEO-1s to CIR, 1-SER-89-90, and other news organizations, 4-SER-1059-1066.

## B.    CIR'S FOIA REQUESTS FOR EEO-1 REPORTS IN THIS CASE

On January 10, 2019, Mr. Evans on behalf of CIR, submitted a FOIA request to the OFCCP for workforce data from all Consolidated EEO-1, Type 2

Reports submitted by all federal contractors in 2016. 1-SER-91; 3-SER-758-766.

Over the next year, Mr. Evans filed two updates to the January 2019 FOIA

request with the OFCCP, requesting years 2017 and 2018. 1-SER-91; 3-SER-

767-772. DOL responded on October 2, 2020. 1-SER-91; 3-SER-773-778. DOL

took the position that it had to notify each federal contractor who had submitted

an EEO-1 Report and provide an opportunity to object under its own regulations

and Executive Order 12600, as the data "may be protected from disclosure under

FOIA Exemption 4." *Id.*

On October 30, 2020, CIR responded, citing *CIR I*. 1-SER-91; 3-SER-779-

781. In *CIR I*, on December 10, 2019, another judge of this court denied DOL's

identical summary-judgment motion and granted summary judgment for CIR. *See

generally CIR I*, 424 F. Supp. 3d 771. The court concluded that the demographic

data contained in the EEO-1 reports was not commercial or financial information

and that the reports therefore did not fall within Exemption 4. *Id.* at 776-79. The

court acknowledged the declarations DOL had submitted, which claimed that

EEO-1 reports contain "highly sensitive commercial information" that could be

used to poach talent or gain a competitive advantage. *Id.* But by examining the

actual EEO-1 form, the district court was able to recognize that these declarations

misrepresented what information is required in an EEO-1 report. *Id.* The forms'

"companywide" data and "EEO-1 Report's general job categories" made it

9

"impossible to discern a corporation's structure." *Id.* at 779. Because the EEO-1 reports did not contain commercial or financial information, the district court did not rule on Exemption 4's third prong (the confidentiality requirement). *See id.* at 779-80. Separately, *CIR I* held that DOL had failed to satisfy the independent requirement imposed by the FOIA Improvement Act of 2016 ("FIA"). *Id.* at 780. The FIA requires agencies to disclose documents subject to FOIA requests unless disclosure would violate another law or lead to foreseeable harm of the type that a FOIA exemption was intended to prevent. 5 U.S.C. § 552(a)(8)(A)(i). DOL did not appeal, but an intervenor did and the Ninth Circuit dismissed an appeal by an intervenor. *See* 1-SER-89-90.

On December 18, 2020, DOL restated its contention that it was "obligated to notify submitters of the requests" due to the possibility that Exemption 4 might apply, despite *CIR I*. 1-SER-91; 3-SER-782-785. DOL wrote that it did "not believe that the Northern California's District Court's decision in [*CIR I*] has precedential effect on all EEO-1, Type 2 reports." *Id.* Further, DOL estimated that CIR's requests involved well "over 20,000 submitters from countless industries," but did not say whether it had conducted a search and did not provide a lawful determination on CIR's requests, despite the determination requirement of FOIA. *Id.*

In the months after DOL's December 2020 email, CIR sought additional

10

information on how DOL planned to move forward with processing CIR's requests, but DOL offered little, if any, information. 1-SER-91. CIR, through Mr. Evans, then updated the initial FOIA, and OFCCP consolidated all four requests, covering the years 2016-2020. 1-SER-91-92; 3-SER-790-795.

On May 23, 2022, CIR General Counsel, D. Victoria Baranetsky, sent a letter to the Solicitor of Labor and OFCCP Director that called attention to DOL's wrongful withholding of EEO-1 Reports and requested an immediate determination on CIR's FOIA requests. 1-SER-92; 3-SER-796-827. The letter reiterated CIR's position that OFCCP was and is bound by *CIR I*, but DOL continued "to strongly disagree" that the *CIR I* had "any binding effect." *Id.*

On August 19, 2022, three years after CIR's initial FOIA request in this case, OFCCP published a notice in the Federal Register identifying CIR to all federal contractors and informing them of CIR's requests. 1-SER-92. DOL required any objections to disclosure by September 19, 2022,[5] but then extended that deadline twice, without further regulation, first to October 2022, then to March 2023.[6] *Id.* DOL told CIR that it intended to publish non-objecting

---

[5] *Notice of Request Under the Freedom of Information Act for Federal Contractors' Type 2 Consolidated EEO-1 Report Data*, 87 Fed. Reg. 51145 (Aug. 19, 2022), *available at* https://bit.ly/3ThtEzw; 1-SER-92-93; 3-SER-828-833.
[6] *Final Notice Re: Disclosure of Type 2 EEO-1 Data in Response to Freedom of Information Act Request*, Department of Labor (Mar. 7, 2023), *available at* https://shorturl.at/goS29.

11

contractors' EEO-1 Reports and name the objectors, but provided no disclosure date. *Id.* CIR's counsel called DOL repeatedly to try to clarify, to no avail. *Id.* Finally, CIR filed this lawsuit understanding DOL would not comply with *CIR I*, nor provide a basic timeline. *Id.*

## C.    DOL'S PARTIAL RELEASE AND PARTIAL WITHHOLDING OF EEO-1 DATA

At the Case Management Conference, held April 13, 2023, DOL provided an approximate timeline for the release of *some* EEO-1 Reports (from non-objecting contractors) and a tentative schedule for when determinations would be made for objecting contractors. DOL did not provide a list of objecting contractors. 1-SER-92. On April 17, 2023, OFCCP released all EEO-1 Reports for non-objecting federal contractors. *Id.* This disclosure comprised of 56,419 EEO-1 Reports from 19,289 federal contractors. *Id.* (In total 75,000 reports were found, regarding a total of 24,355 contractors.) Subsequent to release, CIR published a story with USAToday on this disclosure. 1-SER-92-93; 3-SER-834-838. To date, a significant number of responsive EEO-1 Reports are withheld (16,905 corresponding to 4,796 objecting contractors). OFCCP determined the data from 16,755 of reports was properly withheld under FOIA Exemption 4. 1-SER-93.

## D.    PUBLISHING WORKFORCE EEO-1 DATA IS AN INDUSTRY TREND

A substantial – and growing – number of U.S. employers now voluntarily

12

release their EEO-1 report data annually. 3-ER-117. Typically, they release this data in their corporate annual reports, other annual diversity reports, or on their website. *Id*. "The releasing firms include 50 of the 100 largest publicly-traded firms." *Id.* These include contractors "broadly distributed across public utilities, finance, consumer services, manufacturing, and other sectors." *Id.* For example, Intel began posting EEO-1 Reports online in 2008. 1-SER-93; 3-SER-839-840. Google began posting its data in 2014, after a similar FOIA lawsuit, and Microsoft followed in 2015. 1-SER-93; 3-SER-841-848; 4-SER-1067-1071.

This trend reflects a growing recognition among companies, investors, and other stakeholders that publishing EEO-1 Reports is in the public interest. *See* 4-SER-1118-1122. Companies recognize it builds public trust and helps ensure a diverse workforce. 1-SER-93; 3-SER-849-853. News outlets, including CIR, and academics have used EEO-1 Reports in numerous articles about diversity. 1-SER-93; 3-SER-854-870. Congressmembers have called for greater access to EEO-1 Reports, including through FOIA.[7]

---

[7] *See, e.g.*, 3-SER-871-873. In March 2019, a member of Congress wrote to the DOL stating that EEO-1 Reports should not be withheld under Exemption 4, as they "enumerate the diversity of firms accepting the taxpayer money." 3-SER-874-876 (letter from Emmanuel Cleaver II, Member of Congress, U.S. House of Representatives, to Alexander Acosta, Secretary of U.S. Department of Labor).

**E.      THE CURRENT APPEAL – THE DISTRICT COURT ORDERS DISCLOSURE OF RECORDS**

On December 22, 2023, the district court entered an order that, while it did not resolve all of the issues presented in the case, required the Department of Labor to produce the overwhelming majority of the requested EEO-1 reports, holding that EEO-1 reports are not covered by FOIA Exemption 4. 1-ER-14. DOL filed a notice of appeal on February 15, 2024. 4-ER-633.

In its December 22, 2023 Order, the district court granted in part and denied in part the parties' cross-motions for summary judgment, after addressing a number of issues related to the disclosure of records. 1-ER-14. First, regarding the issue of collateral estoppel and whether DOL's contentions under Exemption 4 and the Trade Secrets Act are barred because the issues were already litigated in *Center for Investigative Reporting v. U.S. Department of Labor*, 424 F.Supp.3d 771 (N.D. Cal. 2019) (*i.e.*, *CIR I*), the court ruled that collateral estoppel did not apply against DOL because it was a government entity, citing *U.S. v. Mendoza*, 464 U.S. 154. 162 (1984). 1-ER-5.

Second, regarding FOIA's Exemption 4 and the "commercial requirement" of Exemption 4, the district court held that the EEO-1 reports are not "commercial in nature for the purpose of Exemption 4 of FOIA." 1-ER-9. The district court held that such reports "do not relate operational or financial information in a direct way" and that they "cannot … yield any commercial insight that is specific to the

14

operations of the federal contractor" because the form identifies employees in a broad manner using "broadly sweeping categories." 1-ER-7. The district court also held that "diversity data" is not commercial, stating that "[l]ike names or birthdays, the demographic background of employees does not speak to the commercial contributions of a company's workforce." 1-ER-9. The court also rejected the notion that disclosing five years' worth of information may reveal insight into a contractor's operations that may not be revealed by any single EEO-1 report, stating that "[b]ecause this order does not find that there is a commercial gain to be found in the headcount or demographic data within the EEO-1 report, so too does it not find a compounded effect by releasing five years' worth of data to plaintiffs" and that "[e]ven if an objector could plausibly establish that five years' worth of information would reveal commercial information, that data would probably be stale by the time it was disclosed." 1-ER-9.

Third, the district court briefly addressed the "confidential" requirement of Exemption 4, but ultimately concluded that "[b]ecause the EEO-1 reports are not commercial in nature, this order need not decide whether the information is confidential under *Argus Leader*,"[8] and the district court denied DOL's motion for EEO-1 reports to be exempt under Exemption 4 "[s]ince defendant was not able to demonstrate that the EEO-1 reports were commercial in nature." 1-ER-10.

---

[8] *Food Marketing Institute v. Argus Leader Media*, 588 U.S. 427, 435-40 (2019).

15

Similarly, with regard to the FOIA Improvement Act of 2016 (where "Congress amended FOIA to add the 'foreseeable harm' standard in which agencies 'shall withhold information' under the FOIA 'only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption' or 'disclosure is prohibited by law[]'"), the district court held that it did not need to decide whether the FOIA Improvement Act applies to require the disclosure of otherwise exempt material because of its earlier holdings that "the Trade Secrets Act is inapplicable in this context and defendant does not meet the standard for Exemption 4." 1-ER-11–12.

With regard to the Trade Secrets Act, 18 U.S.C. § 1905, which "prevents the government from disclosing 'to any extent not authorized by law' any information concerning 'trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association[,]" the district court held that the Trade Secrets Act does not prohibit disclosure of the EEO-1 reports as "confidential statistical data." 1-ER-10–11. The district court, in making its ruling, stated that DOL's "contention that 'confidential statistical data' under the Trade Secrets Act is simply governed by the plain meaning of the terms, is made without any substantive support from caselaw and could possibly render the language of the Act meaningless." 1-ER-11.

16

The district court then addressed the issue of declaratory relief. 1-ER-13. It noted that while DOL "did not provide plaintiffs with a timely determination" of their FOIA requests, the "large scope" of the FOIA requests and that DOL's actions were not found to be "intentional, persistent, and extreme" meant that "declaratory judgment is not appropriate here." 1-ER-13.

Finally, with regard to DOL's withholding of 621 EEO-1 reports for entities that DOL claims were not federal contractors subject to OFCCP's jurisdiction at the time of the reports, the district court held that there were genuine issues of material fact regarding Plaintiffs' allegation that DOL incorrectly withheld those 621 EEO-1 reports. 1-ER-13. Because of "[t]his disagreement over whether the submitter of these 621 reports were federal contractors or under the jurisdiction of the OFCCP when the reports were submitted" and the genuine issues of material fact regarding those entities, the district court denied that part of Plaintiffs' cross-motion. 1-ER-13.

Given the above-referenced rulings, the district court ultimately ordered DOL to produce the remaining withheld EEO-1 reports. 1-ER-14.1 DOL then eventually moved for a stay of the disclosure order pending appeal, and the district court issued a *temporary* stay pending resolution of the Department's motion (which remains pending to date). 2-ER-16; *see* 1-SER-2-47.

This appeal stems from the district court's December 22, 2023 Order on the Parties' cross motions for summary judgment.

## V.  SUMMARY OF ARGUMENT

A.1.   The District Court correctly held that EEO-1 Reports are not "commercial information within the meaning of FOIA Exemption 4. 5 U.S.C. § 552(b)(4). While FOIA Exemption 4 does not define "commercial," courts have "consistently held" that the term "commercial. . . in the exemption [4 context] should be given [its] ordinary meaning[]". *Pub. Citizen Health Research Grp. v. F.D.A.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983); *accord Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011). According to that ordinary meaning, courts limit "commercial" to only include information "*of a commercial nature*" or information that serves "*a commercial function*." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002). This requires more than just that the records be related to a business, as DOL asserts. Instead, the information must be intrinsically commercial to qualify. *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1129 (9th Cir. 2007). Applying this standard, the district court correctly held that EEO-1 Reports are not "commercial.".

A.2.   The decades-old *Excelsior* line of cases also demands that EEO-1 Reports *cannot* be found commercial in nature. The result in those cases, beginning with *Getman* in 1971, which held that a list of *all* employees eligible to vote in an

election was not commercial information, has been upheld by Circuits around the country for more than half a century. *See Getman v. N.L.R.B.*, 450 F.2d 670 (D.C. Cir. 1971). To rule that EEO-1 reports qualify as commercial information would undo fifty years of precedent.

A.3.  Documents serving a "commercial function" is an even more limited category, usually relating only to internal company records that document a company's finances. *See, e.g.*, *Skybridge Spectrum Found. v. Fed. Commc'ns Comm'n*, No. 10-01496, 2012 WL 336160 at *12 (D.D.C. 2012); *Merit Energy Co. v. U.S. Dep't of Interior*, 180 F. Supp. 2d 1184, 1188 (D. Colo. 2001); *New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43 (1st Cir. 2015). EEO-1 Reports are standardized government forms, that according to DOL, aid a government agency, OFCCP, in enforcing compliance with anti-discrimination rules, not a commercial purpose.

B.1.  The District Court's decision should be affirmed on the independent basis that DOL did not meet the foreseeable harm standard required by the FIA. This is an independent "requirement that agencies must meet before exempting material from disclosure." *Id.* "[A]n agency must release a record—*even if it falls within a FOIA exemption*—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018). The

19

harms asserted by DOL here do not meet DOL's burden under this requirement; they are too speculative, too general, and insufficiently supported by evidence.

B.2.   DOL's attempt to do an end run around the foreseeable harm standard by invoking the TSA is misplaced and should be rejected by this Court. TSA does not prohibit disclosure within the meaning of the FIA, so it does not allow an agency to avoid the FIA's foreseeable harm requirement. Also, the EEO-1 Reports at issue here are not covered by the TSA. DOL's argument that EEO-1 Reports are covered by the TSA's confidential statistical data language is similarly misplaced, as it is unsupported by the structure of the statute and would incorrectly expand its scope.

## VI.  STANDARD OF REVIEW

This Court should review the district court's summary-judgment order de novo. *Transgender Law Center v. Immigration and Customs Enforcement*, 46 F.4th 771, 778-79 (9th Cir. 2022) (citing *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016) (en banc) (per curiam)). Further, the district court's order should be affirmed on any ground supported by the record, even if it was not addressed or adopted by the district court. *See, e.g.*, *Ellis v. Salt River Project Agricultural Improvement & Power Dist.*, 24 F.4th 1262, 1268 (9th Cir. 2022).

"FOIA was enacted 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *A.C.L.U. v. U.S. D.O.J.*, 880 F.3d 473, 482-83 (9th Cir. 2018) (citation omitted). FOIA creates a presumption of disclosure, but contains nine exemptions that are "narrowly construed"[9] given the plain text, structure, and purpose of the statute. *Id.*; *see also Transgender Law Center*, 46 F.3d at 783 ("The Supreme Court has 'consistently stated that FOIA exemptions are to be narrowly construed.' ") (quoting *Dep't of Just. v. Julian*, 486 U.S. 1, 8 (1988)). "The burden of proving that withheld documents fit into the exemptions falls on the agencies." *Id.* (citing *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

---

[9] DOL contends that *Food Marketing Institute* disapproved this longstanding rule of interpretation. Dkt. No. 8.1 at 32-33. Not so. The rule of has been endorsed by the Supreme Court repeatedly. *See, e.g.*, *U.S. Dep't of Just. v. Tax Analysis*, 492 U.S. 136, 151 (1989) (explaining that FOIA was meant to limit agency discretion to withhold information, and that, "[c]onsistent with [FOIA's] goal of broad disclosure," FOIA's "exemptions have been consistently given a narrow Compass"); *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (holding that FOIA's "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of" FOIA and that its "exemptions are explicitly made exclusive, 5 U.S.C. s 552(c)" "and must be narrowly construed") (internal citations and quotation marks omitted). Even in a decision that *Food Marketing Institute*, 588 U.S. at 439, cited with approval on the importance of exemptions, the Supreme Court reiterated its narrow construction guidance for FOIA cases. *F.B.I. v. Abramson*, 456 U.S. 615, 630 (1982). And, in *Transgender Law Center*, 46 F.3d at 783, this Court applied the narrow construction rule after *Food Marketing Institute*. The guidance remains good law, in the Supreme Court and in this Circuit, and this Court should follow it.

# VII.  ARGUMENT

## A.  THE DISTRICT COURT CORRECTLY HELD THAT EEO-1 DATA IS NOT COMMERCIAL INFORMATION UNDER FOIA EXEMPTION 4

This Court should uphold Judge Alsup's finding that EEO-1 records are not commercial, a ruling which was already reached by another district court (J. Westmore) and tacitly adopted by this Court. *Center for Investigative Reporting v. Department of Labor* ("*CIR I*"), 424 F. Supp. 3d 771 (N.D. Cal. 2019) *upheld by Synopsys, Inc. v. U.S. Dep't of Labor*, No. 20-16414, 2022 WL 1501094 (9th Cir. May 12, 2022).[10] The government tries to relitigate those arguments, yet again, by

---

[10] Given *CIR I* and this Court's decision in *Synopsys, Inc. v. U.S. Dep't of Labor*, No. 20-16414, 2022 WL 1501094 (9th Cir. May 12, 2022), Plaintiffs/Appellees also maintain that, as they stated before the district court, DOL should not have been permitted to contest this nearly identical case under the doctrine of "collateral estoppel" because *CIR I* was decided on the same two issues that are now before this Court, even though the EEO-1 Reports there covered different fiscal years. *See Nat'l Treas. Employees Union v. I.R.S.* ("*NTEU*"), 765 F.2d 1174 (D.C. Cir. 1985) (Ginsburg, J.) (holding that a prior case sustaining the IRS's FOIA exemption claim as to forms for calendar years 1980-1981 collaterally estopped plaintiff from prevailing in a later case seeking the same forms for 1981-1982). The issues in *CIR I* were "actually litigated" and finally resolved in Plaintiffs/Appellees' favor, and they comprised not just "a necessary part of the judgment," but an explicit basis for it, consistent with this Court's "collateral estoppel" case law. *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir.1992).

Here, the District Court declined to apply collateral estoppel based on an exception created in *United States v. Mendoza*, 464 U.S. 154, 162 (1984). However, in *Mendoza*, the Supreme Court held that "*non-mutual* collateral estoppel does not apply against the federal government." *See* 1-ER-5 (citing *Mendoza*, 464 U.S. at 162) (emphasis added), but this is a mutual collateral estoppel case as identical issues were actually litigated and finally resolved in a

trying to employ the invented and potentially dangerous "related to" test, that no Circuit has upheld, as it would render the term "commercial" meaningless. *Cf. Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("the cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute").

FOIA Exemption 4 states that FOIA "does not apply to matters that are . . . commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).[11] While FOIA Exemption 4 does not define "commercial," courts have "consistently held" that the term "commercial. . . in the exemption [4 context] should be given [its] ordinary meaning[.]" *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983); *accord Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011). According to that ordinary meaning, courts limit "commercial" to only include information "*of a commercial nature*" or information that serves "*a commercial function.*" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002). Unlike the Government's repeated contention that records are

---

prior case that involved identical parties. Collateral estoppel applies and is a separate and independent reason why this Court should affirm.

[11] This exemption "balance[s] the strong public interest in favor of disclosure against the right of private businesses to protect sensitive information." *GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1115 (9th Cir. 1994), *overruled on other grounds by Animal Legal Def. Fund*, 836 F.3d 987.

23

commercial so long as they are "related to" the business, Dkt. No. 8.1 at 19, this

Court and others have repeatedly stated that records of a commercial nature must

be *more than* related to, and instead, must involve intimate aspects of business'

"commerce, trade or profit" to qualify as commercial. *Carlson*, 504 F.3d at 1129.

Similarly, records with a commercial function are also limited in nature. *New*

*Hampshire Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43 (1st

Cir. 2015). The district court assiduously followed this rule and correctly found

that neither of these two categories apply here: EEO-1 reports are not of a

commercial nature; nor do they serve a commercial function. 1-ER-7-9, 14.

    **1.**    **EEO-1 Reports Are Not of a "Commercial Nature"**

Consistent with this common understanding, courts, including this one, have

repeatedly held that records are "of a commercial nature" only where they disclose

"intimate aspects of a business" or are "intrinsically related to" commerce or

"plainly commercial." *Watkins*, 643 F.3d at 1194. This Circuit only further

underscored this need for something more than "related to" commerce in *Carlson*

*v. U.S. Postal Serv.*, 504 F.3d 1123, 1129 (9th Cir. 2007) (quoting *McClellan*

*Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987)

(holding information is commercial if it is closely related "to commerce, trade, or

profit"); *see also Besson v. U.S. Dep't of Commerce*, 480 F. Supp. 3d 105, 113

(D.D.C. 2020) (stating the company must have a meaningful commercial stake in

the material). DOL interestingly chooses to ignore these precedents from this and

other courts, and instead relies on dictionary definitions and a single Ninth Circuit

case admittedly "interpreting a separate (and unrelated) provision of FOIA," Dkt.

No. 8.1 at 19, to dilute the Exemption 4 test for "commercial" to any records

*related to* a business.[12]

        Regardless, *Watkins*, *Carlson*, and other cases around the country support

the idea that records are commercial if they relate to the **products** or the **finances**

of the companies, which DOL cannot and does not claim here. For instance, this

Court in *Watkins*, found documents disclosing "supply chains and fluctuations of

demand for merchandise" were commercial. *Watkins*, 643 F.3d at 1195. Lower

courts in this Circuit have therefore similarly found articles of commerce or

obvious business plans commercial, but have often drawn the line there. *See*

*Starkey v. U.S. Dep't of Interior*, 238 F. Supp. 2d 1188, 1195 (S.D. Cal. 2002)

---

[12] While DOL tries to employ a sweeping legal test for commerciality which
simply depends on whether records "relate[] to" the commercial aspects of a
business, Dkt. No. 8.1 at 19, that test is not supported by caselaw of this Circuit nor
the DC Circuit, nor any other Circuit. *Cf. Nat'l Ass'n of Home Builders v. Norton*,
309 F.3d 26, 38 (D.C. Cir. 2002). Moreover, such a test would render the
commercial prong obsolete because *any* documents a company would
hypothetically submit to the government would ostensibly be "related to"
commerce – thus there would be no need for the test. Converse to basic principles
of statutory interpretation, a construction that renders a provision meaningless is
prohibited. *Cf. Williams v. Taylor*, 529 U.S. 362, 364 (2000) ("the cardinal
principle of statutory construction that courts must give effect, if possible, to every
clause and word of a statute").

(finding records of a Native American tribe's water supply was "commercial or financial in nature" because it pertained to well water, "an article of commerce"); *see Besson*, 480 F. Supp. 3d at 113 (a company must have a *meaningful* commercial stake in the material); *see also Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1050 (3d Cir. 1995) (requiring a "logical connection" between the information and the claimed exemption).

Here, the records are not meaningfully commercial or intimately related to the bottom line as they only *potentially* disclose some putative commercial indicators, which DOL even admits in its brief only "*tend to*" show a commercial impact, such as "the ability to produce . . . more goods." Dkt. No. 8.1 at 21 (emphasis added). But such tentative indicators show nothing meaningfully or definitively commercial, as the lower court correctly found. 1-ER-9 ("These declarations posit a vague connection between the data and the commercial success of each company but do not demonstrate the inherently commercial nature of the diversity data. Like names or birthdays, the demographic background of employees does not speak to the commercial contributions of a company's workforce and cannot be imposed simply because the bellwether objectors deem it so").

Indeed, courts — including this one — have repeatedly held that records that simply *indicate* a commercial value are too attenuated from the commercial aspects of a business to be considered commercial in nature. For instance, in *Carlson v.*

26

*U.S. Postal Serv.*, this Circuit found that even though mail is "*essential* to commerce and trade" and the requested postal information, including "names, addresses, telephone numbers, and regular business hours of post offices" had a putative commercial value, it "is not commercial information[.]" 504 F.3d at 1129. So, even if records might provide some "insight into the nature of a company's business dealings," that is not sufficient to "convert the [records] into commercial" data. *Nat'l Bus. Aviation Ass'n, Inc. v. F.A.A.*, 686 F.Supp.2d 80, 86–7 (D.D.C. 2010); *see also New York Times Co.*, No. 19 CIV. 1424 (KPF), 2021 WL 371784, at *13 (S.D.N.Y. Feb. 3, 2021) (same); *American Airlines, Inc. v. Nat. Mediation Bd.*, 588 F.2d 863, 868 (2d Cir. 1978) (citing *Washington Research Project, Inc. v. HEW*, 504 F.2d 238, 244-45 (D.C. Cir. 1974) (information research projects funded by HEW were not commercial and upholding that commerciality is a circumscribed definition)); *Brockway v. Department of Air Force*, 518 F.2d 1184, 1188 (8th Cir. 1975) (confidential witness's statements about airplane crash, were not exempt because not sufficiently commercial information); *News Grp. Boston, Inc. v. Nat'l R.R. Passenger Corp.*, 799 F. Supp. 1264, 1269 (D. Mass. 1992) (Amtrak *salary* information was not even considered commercial); *Pub. Citizen*

27

*Health Research Grp. v. U.S. Dep't of Health, Ed. & Welfare*, 477 F. Supp. 595, 605 (D.D.C. 1979) (health-related studies are not commercial).[13]

DOL attempts to avoid this case law and its obvious conclusion that EEO-1 Reports are not commercial by hammering at four claims: that EEO-1 reports disclose datapoints which make the records commercial, including: (1) "headcount" numbers, (2) "allocation of personnel across job categories", (3) "sexual and racial makeup", and (4) year-to-year "changes". Dkt. No. 8.1 at 20, 22, 24, 26. Each of these arguments together and separately, fail for two reasons.

First, the law of this Circuit, as stated in *Watkins* and *Carlson*, prevents holding that any of these four datapoints of EEO-1 Reports is "commercial in nature" because the data is too attenuated from the commercial aspects of the business. *Cf. New York Times Co.*, 2021 WL 371784, at *8 ("commercial or

---

[13] In essence, courts find not everything "related to" the business qualifies it as being "commercial in nature." *See New York Times Co.*, 2021 WL 371784, at *12 (comprehensively delineating: "information is commercial ***only when intertwined with other*** [commercial] information…such as (i) sales statistics, profits and losses, and inventories; (ii) references to finance functions, mergers and acquisitions practices, and sales and marketing, or information about country operations, projects, contracts, and bids; (iii) information about interactions between the companies' salespeople and customers, or how the companies promote their products; and (iv) extensive information about the [company's] marketing and sales programs…") (citations omitted). Here, just as in *Nat'l Bus. Aviation Ass'n, Inc.* and *New York Times Co.*, none of the EEO-1 data is commercial in itself, nor is it intertwined with other commercial data, like payroll data, or production data, or other key financial markers that would "convert" it to commercial data.

financial . . . at its core are records that reveal basic commercial operations . . . or relate to the income-producing aspects of a business" [citation omitted]). These four types of data are do not disclose meaningful commercial information about a company's business, but only possibly indicate some commercial information. For instance, to the extent that headcount data, diversity information, job allocation, and year-to-year changes are cognizable from these forms, even DOL's declarant admits to their vagueness and lack of commercial meaning.

A) **Headcount data**: DOL admits that headcount data is not determinative, but just a possible "indicator" of commercial information. Dkt. No. 8.1 at 21. Indeed, DOL states, that such data "will *tend*" to signify a company's ability to make more goods. Dkt. No. 8.1 at 21 (emphasis added). But *tending* to show something is not the same as showing it. Headcount data is simply too attenuated to make it commercial, as that data may inaccurately suggest commercial productivity, especially in a world of artificial intelligence and robotic technology. For instance, countering the government's suggestion that a higher headcount suggests more commercial value, it is possible a smaller headcount (in a company using algorithmic intelligence or robotic technology) suggests more commercial value.

B) **Job Allocation**: The claim that EEO-1's job allocation data is somehow intrinsically commercial is similarly unfounded, as the categories of jobs are

simply too vague to be commercially meaningful, which *CIR I* and the lower court both held, and DOL's own declarant admits. The district court in *CIR I* and this Court by default has previously already reached this conclusion. *See CIR I*, 424 F. Supp. 3d at 777 (stating "the EEO-1 form does not [show] how resources are allocated across a company's . . . [but] organized by [generalized] job category[ies], such as 'Professionals,' 'Sales Workers,' 'Operatives.'"); *id.* at 778–79 (contrasting "the documents found to be commercial in *100Reporters* reflect a level of detail not contained in the EEO-1 reports."); *see also* 1-ER-7 ("The EEO-1 form contains broadly sweeping categories such as 'professionals' and 'senior officials' . . . As a result, the report cannot itself yield any commercial insight that is specific to the operations of the federal contractor."). DOL's own declarant admitted EEO-1 data "does not . . . explain resource allocation across its segments" and "without context" leaves room for "misinterpretation." 2-ER-229-230.

C) **Diversity Statistics**: Once again, DOL's own brief admits that "sexual and racial makeup" data is only "*correlated* with . . . *performance outcomes*." Dkt. No. 8.1 at 24-25. Appellees' expert, who has studied these reports, also clearly evidenced that diversity numbers are not commercial in nature. 2-ER-114-130; *see id.* 2-ER-116 ("Economists, other business, analysts, and business managers *do not generally consider such broad descriptive workforce data to be commercially-valuable* managerial or financial information or trade secrets.")

D) **Yearly Changes**: Any claims that year-to-year changes are commercial in nature are similarly unfounded. It will be eight years since the data was first requested, and therefore any disclosure would be too stale to disclose meaningful information. As Judge Alsup already held, "Even if an objector could plausibly establish that five years' worth of information would reveal commercial information, that data would probably be stale by the time it was disclosed." 1-ER-9.

Second, even if any of these four categories of data listed by the government are tangentially commercial, the district court correctly ruled the records were not commercial, because even if EEO-1s offer "insight into the nature of the business dealings," that is insufficient to "convert [the EEO-1 report] into commercial information." *Compare Nat'l Bus. Aviation Ass'n*, 686 F. Supp. 2d at 86–87 *with* 1-ER-9 ("These declarations posit a vague connection between the data and the commercial success of each company but do not demonstrate the inherently commercial nature of the diversity data.") Courts have clearly stated that to be commercial in nature such data must be "intertwined" with more clearly financial data to qualify as commercial." *See New York Times Co.*, 2021 WL 371784, at *12 ("information is commercial *only when* intertwined *with other* [commercial] information . . . such as (i) sales statistics, profits and losses, and inventories; (ii) references to finance functions, mergers and acquisitions . . ."). As the Court

31

explained in *CIR I*, the EEO-1 form does not call for or contain "salary

information, sales figures, departmental staffing levels, or other identifying

information in these reports." *CIR I*, 424 F. Supp. 3d at 777. Applying these courts

holdings and the holdings of *Watkins* and *Carlson*, EEO-1 reports simply should

not be categorized as commercial because they are too attenuated from the

commercial aspects of the business.

Instead, this case is similar more similar to a recent case in the D.C. Circuit,

*Besson*, 480 F. Supp. 3d at 113, where the names of employees were disclosed.

Names of employees often can reveal gender, race, and ethnicity. But as the Court

found in *Besson*, "it is not clear what commercial consequences [are] risk[ed] from

disclosure of its employees' names." *Id.* DOL "has not, for example, shown that . .

. . disclosure would create insight into [contractor's] business strategy or

capabilities or any unique risk of poaching remains unexplained." *Id*. at 113.

Information about a company's employees without sales numbers or payroll data

does not suffice. *See, e.g.*, *Van Bourg, Allen, Weinberg and Roger v. NLRB*, 728

F.2d 1270, 1272–73 (9th Cir. 1984).

For this reason, the records are not commercial in nature. To rule otherwise

would be inconsistent with the law of this Circuit and others.

### 2.    EEO-1 Reports Are Not "Commercial" Under the *Excelsior* Cases

In addition to this Circuit's decisions in *Watkins* and *Carlson* and other

Circuits requiring EEO-1 Reports not be found commercial in nature, the decades-

old *Excelsior* line of cases also demands that EEO-1 Reports *cannot* be found

commercial. Those cases, beginning with *Getman* in 1971, which held that a list of

*all* employees eligible to vote in an election was not commercial information, has

been upheld by Circuits around the country for more than half a century. *See*

*Getman v. N.L.R.B.*, 450 F.2d 670 (D.C. Cir. 1971).[14] DOL has difficulty

distinguishing this line of cases, and therefore chooses to ignore them *entirely* in

their brief on appeal. But Courts, including this one, for decades have relied on

these cases to find that records containing employee data is not commercial in

nature. *See, e.g.*, *Van Bourg*, 728 F.2d at 1272–73.

In *Getman*, the D.C. Circuit held that even though an *Excelsior* list contains

detailed information about a companies' employees (namely their identities and

locations), Exemption 4 was "simply inapplicable" to such information, *id.* at 673,

because employee data could not "be fairly characterized as . . . 'financial' or

---

[14] An *Excelsior* list contains the names and home addresses of all employees eligible to vote in certain representation elections." *Getman*, 450 F.2d at 671. So was named for the decision requiring their maintenance, *Excelsior Underwear, Inc.*, 156 N.L.R.B. 1236 (1966).

33

'commercial' information" and were "[o]bviously . . . not exempted from disclosure by [Exemption] 4." *Id.*

The Ninth Circuit has adopted the D.C. Circuit's reasoning on this point wholesale, *Van Bourg*, 728 F.2d at 1272–73 ("the [data] cannot fairly be characterized as either 'trade secrets' or 'commercial or financial'"), and other courts have recently reaffirmed it. *See, e.g.*, *Besson*, 480 F. Supp. 3d at 113 (stating employee data "did not create insight into [a company's] business strategy or capabilities or any unique risk of poaching.").

The *Excelsior* cases dictate the same result here. A report on the demographics of a company's workforce, like a list of employee names and addresses, is not commercial because it concerns employees, not "commerce, trade, or profit." *See Carlson*, 504 F.3d at 1129.

Finding EEO-1 reports are commercial would upend the decades-long line of *Excelsior* cases, particularly given that an *Excelsior* list also reveals exactly who and how many people the company employs, as does an EEO-1 Report. If anything, an *Excelsior* list arguably reveals more about "business plans and growth," showing where the employees live and perhaps their tax advantages

34

and/or distance from work. So, to rule that EEO-1 reports qualify as commercial information would undo fifty years of precedent.[15]

### 3.    EEO-1 Reports Do Not Serve a "Commercial Function"

Last, documents serving a "commercial function" is an even more limited category, usually relating only to internal company records that document a company's finances. *See, e.g.*, *Skybridge Spectrum Found. v. Fed. Commc'ns Comm'n*, No. 10-01496, 2012 WL 336160 at *12 (D.D.C. 2012); *Merit Energy Co. v. U.S. Dep't of Interior*, 180 F. Supp. 2d 1184, 1188 (D. Colo. 2001); *New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs*., 778 F.3d 43 (1st Cir. 2015). For instance, courts have held that company records about revenue, service pricing, and checking accounts serve a "commercial function" where those records assist in compiling a budget or a financial statement. But internal company records containing general information about personnel or employees does not serve a sufficiently commercial function to fall within Exemption 4. *See, e.g.*, *New*

---

[15] In addition to its flailing legal analysis, DOL relies on *Argus Leader* to argue that the district court's analysis "imposes a standard similar to the one the Supreme Court rejected in *Argus* Leader" Dkt. No. 8.1 at 32. However, *Argus Leader* had nothing to do with Exemption 4's commerciality prong. It instead focused on the confidentiality prong, alone. 588 U.S. at 432-40. DOL wrongly tries to sweep in the significance of that case to this analysis. Regardless, even examining *Argus Leader*, that case supports Plaintiffs/Appellees' position because it involved food stamp data which is innately and intrinsically commercial in nature, as food stamps are exchanged in commerce for goods, unlike diversity data. *Id.* at 430-32.

35

*Hampshire Right to Life*, 778 F.3d at 47 (personnel policies lacked a commercial function).

Here, EEO-1 reports are standardized government issued forms, that according to DOL, admittedly serve a primary purpose to aid a government agency, OFCCP, in enforcing compliance with anti-discrimination rules, not a commercial purpose. DOL admits it uses EEO-1 Reports exclusively for a government, non-commercial purpose: to evaluate discrimination, not profitability. *See* Dist. Ct. Dkt. No. 34 at 5; 3-ER-267 (stating EEO-1s are only used to help OFCCP target potential investigations).[16] The court in *CIR I* already acknowledged this fact. *See CIR I*, 424 F. Supp. 3d at 777-79.

Still, the Government argues that the data collected in an EEO-1 report also fulfills a commercial function because it reveals information about company employees and their staffing decisions. But EEO-1 reports are simply too attenuated from any commercial meaning to serve a commercial function. 1-ER-7 (explaining the EEO-1 reports cannot have been used for a commercial "use" as the "report cannot itself yield any commercial insight that is specific to the operations of the federal contractor"). Instead, "[e]mployers filing EEO-1 reports typically regard those reports as nothing more than a necessary cost of doing

---

[16] Even if diversity ostensibly benefits profitability, a company would likely create a different, more precise form that would accurately calculate profit.

business, to be completed solely because they are legally required...In short, the standard practice among these employers concerning their EEO-1 reports is, 'File 'em and forget 'em.'" 2-ER-117. That is why none of DOL's declarants were able to sufficiently describe either how they use EEO-1 Reports in a commercial manner or how they could even theoretically use such generalized, anonymous, employee data for a commercial function. *See generally CIR I*, 424 F. Supp. 3d at 777-79; 1-ER-7. Indeed, this is why a substantial and growing number of U.S. employers now voluntarily release their EEO-1 Reports, further demonstrating how these records have no commercial function, or they would not be freely shared on the companies' open websites. 2-ER-117.

Moreover, endorsing the Government's position that an EEO-1 report serves a commercial function would mean accepting a definition that would make *any* government form filled out by business fall under Exemption 4, but courts have rejected this argument. *But see Pub. Citizen Health Rsch. Grp.*, 704 F.2d at 1290 (stating that "not every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4"). Similarly, the District of D.C. has rejected as "plainly incorrect" a "broad[] construction of Exemption 4," that "a company has a 'commercial interest' in all records that relate to every aspect of the company's trade or business." *Pub. Citizen v. United States Dep't of Health & Hum. Servs.*, 975 F. Supp. 2d 81, 100 (D.D.C. 2013); *see*

*also New York Times Co.*, 2021 WL 371784, at *9–14 (rejecting argument that all information for VW's program is "commercial.").

Because DOL fails to show that the records are sufficiently commercial – a legal argument – this Court should affirm the district court's decision and provide finality to this issue once and for all. In one last ditch effort, DOL asks this court to extend this matter one more time, and remand this legal question to the district court trying to state that there remain "issues of fact," Dkt. No. 8.1 at 37, but that claim is entirely unfounded. First, the agency is required to "draw[] all reasonable inferences in the light most favorable to the *requester*" and show "there is no genuine issue of material fact." *CIR I*, 424 F. Supp. 3d at 776 (citations omitted). Here, the DOL has failed to do so in any manner. Instead, now two district courts have reviewed this legal question and issued legal opinions on the matter. *See, e.g.,* 1-ER-4. Instead, as multiple cases have now clarified: where records are not commercial in nature and are not used for commercial purpose they cannot be found to be commercial. We ask this court to provide finality and affirm.

**B.    EEO-1 Reports Should Be Disclosed Because DOL Failed To Show That Disclosure Would Cause A "Foreseeable Harm" Under the FOIA Improvement Act of 2016**

This Court should also affirm summary judgment on an independent ground: that DOL failed to meet its separate burden to show that reasonably foreseeable harm to an interest protected by Exemption 4 would result from disclosure of the

38

EEO-1 report. *See CIR I*, 424 F.Supp.3d at 780; 1-ER-11-12 (stating "[t]he 'foreseeable harm' standard applies here"). In 2016, Congress passed and the President signed the FIA, which amended FOIA to state: "an agency 'shall withhold information' under the FOIA 'only if the agency *reasonably foresees* that *disclosure would harm an interest* protected by an exemption' or [if] 'disclosure is prohibited by law.' " *Sierra Club Inc. v. U.S. Fish & Wildlife Serv.*, 925 F.3d 1000, 1010 n.7 (9th Cir. 2019) (quoting 5 U.S.C. § 552(a)(8)(A)(i)) (emphasis in original).

The " 'foreseeable harm' requirement" is an independent "requirement that agencies must meet before exempting material from disclosure." *Id.* The FIA's legislative history confirms that it codifies a "presumption of openness" and "mandates that an agency may withhold information *only if* it reasonably foresees a specific identifiable harm to an interest protected by an exemption, or if disclosure is prohibited by law." S. Rep. 114-4 at 7–8 (Feb. 23, 2015) (statement of Sen. Grassley, emphasis added).[17] "[A]n agency must release a record—*even if it falls*

---

[17] As relevant to this case, a statement on the FIA by Senator Grassley stated "concerns that some agencies [were] overusing FOIA exemptions" and about "a growing and troubling trend towards relying on these discretionary exemptions to withhold large swaths of Government information, even though no harm would result from disclosure." *Id.* He explained that codifying a presumption of openness, as the FOIA Improvements Act does, meant "Agencies should note that mere ''speculative or abstract fears,'' or fear of embarrassment, are an insufficient basis for withholding information." *Id.* at 8. Senator Leahy similarly stated that the new

*within a FOIA exemption*—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018). The FIA's new, separate prerequisite for withholding records is referred to as the "foreseeable harm" test.[18] 5 U.S.C. § 552 (a)(8)(A). As always under FOIA, the agency bears "the burden of justifying any withholding" under the foreseeable harm standard. *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019).

Here, the foreseeable harm test, as the court held in *CIR I*, is an independent reason to affirm summary judgment in Plaintiffs/Appellees' favor because DOL has not met its burden to prove that any qualifying harm will result from disclosing the EEO-1 reports sought here. *See* Dkt. No. 8-1 at 35-38. None of the harms DOL identifies in its Appellant's Brief, Dkt. No. 8-1 at 36-37, nor in its District Court Brief, *e.g.*, Dist. Ct. Dkt. No. 38 at 22-23, meet this heavy burden.

Perhaps recognizing the shortcomings of its foreseeable harm showing, DOL instead focuses its argument on its misplaced claim that the foreseeable harm test

---

standard was designed to "reduce the perfunctory withholding of documents through the overuse of FOIA's exemptions." 114 Cong. Rec. S1496 (Mar. 15, 2016).

[18] This standard, "codif[ies] a presumption of openness for agencies to follow when they respond to FOIA requests." 114 Cong. Rec. S1494 (Mar. 15, 2016), https://perma.cc/KQW7-655R (statement of Sen. Grassley).

does not apply because the TSA does. Dist. Ct. Dkt. No. 34 at 23 (citing 18 U.S.C.

§ 1905). However, as the district court stated, and as explained *infra*, the Trade

Secrets Act does not apply in this case.

### 1. DOL Failed to Meet Its Burden Under the FOIA Improvement Act to Prove That Disclosure Would Cause Foreseeable Harm

Under the FIA, to withhold records based on a discretionary exemption, an

agency must meet an "independent and meaningful burden." It must "identify

specific harms to the relevant protected interests that it can reasonably foresee

would actually ensure from disclosure of the withheld materials" and "connect the

harms in a meaningful way to the information withheld." *CIR v. U.S. Customs &*

*Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019); *see also id.* at 106 (holding

that "general explanations" and "boiler plate language" were insufficient to prove

foreseeable harm) (internal citation and quotation marks omitted).  Moreover, 5

U.S.C. § 552(a)(8)(i)(I)'s requirement that an agency must "*reasonably* foresee[]"

harm renders this test objective, *Kentucky v. King*, 563 U.S. 452, 464 (2011), and

thus readily susceptible to judicial review. In this Exemption 4 case, and especially

in its Appellant's Brief in this Court, DOL has failed to meet this burden or prove

that disclosure would harm a qualifying "commercial or financial interest." *See*

*Seife v. FDA*, 43 F.4th 231, 242 (2d Cir. 2022); *see also CIR*, 436 F. Supp. 3d at

113 (observing in dicta that the foreseeable harm test requires causing "genuine

harm to [the submitter's] economic or business interests" [citation omitted]). Here, none of DOL's asserted harms meet these requirements.

First, before the District Court, the DOL argued that disclosure would harm submitters' interest in confidentiality, and that this qualified under the FIA. But harm to any interest in confidentiality is not, and cannot be, sufficient. Dist. Ct. Dkt. No. 38 at 22. As previously explained, the harm must be related to the particular exemption. Here, the ordinary meaning of Exemption 4 makes clear that it protects against the specific harm caused by a breach of the confidentiality of commercial or financial information, not of information of *any kind*. *See Milner v. Dep't of Navy*, 562 U.S. 562, 569 (2011) ("'Statutory construction must begin must begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose.'") (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)); *Seife v. U.S. Food and Drug Admin.*, 43 F.4th 231, 240-41 (2d Cir. 2022) ("We examine the ordinary meaning and structure of Exemption 4, looking at the words themselves, the specific context in which the words appear, 'and the broader context of the statute as a whole.'") (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Accordingly, the Second Circuit rightly held, in one recent case, that

> . . . the interests protected by Exemption 4 are the submitter's commercial or financial interests in information that is of a type held in

42

confidence and not disclosed to any member of the public by the person to whom it belongs. An agency in a FOIA case can therefore meet the foreseeable harm requirement of the FIA by showing foreseeable commercial or financial harm to the submitter upon release of the contested information.

*Seife*, 43 F.4th 231, 240-41. As the Second Circuit explained in *Seife*, this is also consistent with both "the structure of the statute and common sense." *Id.* at 241. Reading Exemption 4 as protecting all "confidentiality" interests would essentially remove FIA from any Exemption 4 analysis as well. *Id.*; *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (rule against surplusage); *Bennett v. Spear*, 520 U.S. 154, 173 (1997) (refusing to read statute in a way that would "emasculate an entire section"). It is consistent with the purpose of the FIA, and of FOIA more broadly, as well – and with the rule that to effectuate the FIA's and FOIA's purpose, FOIA's exemptions should be construed narrowly. *See Dep't of Air Force*, 425 U.S. at 362. Accordingly, DOL's "confidentiality" foreseeable harm theory fails as a matter of law.[19]

---

[19] Additionally, CIR maintains, as it did in the district court, that DOL has not met its burden to prove the requested EEO-1 Reports are "confidential" under Exemption 4. *See* Dist. Ct. Dkt. No. 39 at 15-19. DOL has not proven EEO-1 Report information was or is actually or customarily kept private, or that DOL gave sufficient assurances of privacy. *Id.* As a result, EEO-1 Reports are not covered by Exemption 4 for yet another independent reason. And, relevant here, this fatally undermines DOL's claim that disclosure would harm a confidentiality interest. The District Court has not yet ruled on that issue, as it rightly held the requested EEO-1 Reports were not "confidential" under Exemption 4. 1-ER-8-9.

43

Second, DOL speculated that disclosing EEO-1 Reports could result in negative publicity for contractors and harm contractors' hiring and retention efforts. 2-ER-114-127; 4-SER-1119-1121. But this speculative harm does not meet DOL's burden, especially as it has long been the rule, that generating "negative impressions," without more, does not harm Exemption 4-protected interests. *Seife*, 43 F.4th at 242. As multiple Circuits and this Court have previously agreed "Exemption 4 does not guard against mere embarrassment in the marketplace or reputational injury." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 564 (D.C. Cir. 2010); *Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n*, 750 F.2d 1394, 1402-03 (7th Cir. 1984) ("any embarrassing disclosure is not the sort of thing that triggers exemption 4"); *Martech USA, Inc. v. Reich*, No. C-93-4137 EFL, 1993 WL 1483700, at *2 (N.D. Cal. Nov. 24, 1993) (same); *Pub. Citizen Health Rsch. Grp.*, 704 F.2d at 1291 (same).

Third, DOL alluded to disclosure possibly harming a company's "hiring practices" and retention "strategies" – but DOL failed to identify with any reasonably objective, specificity what these possible harms might be. For instance, the declarations offered by OFCCP discuss only *speculative* harms that "disclosing the EEO-1 information would "create a wealth of data that *can be used* by companies looking to recruit." Dist. Ct. Dkt. No. 34 at 27. These generalized assertions of harm offered by DOL are insufficient under the FOIA Improvements

44

Act. Dist. Ct. Dkt. No. 34 at 26-27. *Amadis v. United States Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (agency "cannot simply rely on 'generalized' assertions that disclosure 'could' chill deliberations"); *Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*, 643 F. Supp. 3d 176, 186 (D.D.C. 2022) (agency must provide a focused and concrete demonstration of foreseeable harm).

Fourth, DOL ambiguously contended that disclosure would reveal "human resources management strategies," "labor productivity," and "forecasting" information, as well as "workforce data and trends," which could be used to evaluate the "strength or vulnerability" of a company. Dist. Ct. Dkt. No. 38 at 23-24. Again, DOL's argument consists of buzzwords, not specific evidence of reasonably foreseeable harm; the specific nature of the harm asserted is absent. 4-SER-1119. DOL has not identified these harms adequately, has not proven any such harms would occur, and has not proven these harms would impact protected interests under Exemption 4. *See Judicial Watch*, 375 F. Supp. 3d at 100 (quoting H.R. Rep. 114-391, at 9 (2016) ("general explanations of the possibility of a 'chilling effect' fall short of articulating 'a link between the specified harm and specific information contained in the material withheld.'")); 2-ER-120-121 (¶¶ 18-20) (EEO-1 data cannot cause even remote harm to companies).

Sixth, DOL speculated that "some" privacy interests could be "threatened" by disclosure, since disclosure could lead to the identification of "some" listed

employees who might then be contacted by recruiters about new potential opportunities. Dist. Ct. Dkt. No. 38 at 24. First, Exemption 4 does not protect against such harms, but moreover DOL has not proven and cannot prove anything "reasonably foreseeable" with this generalized, vague string of hypotheticals.

Last, DOL asserted, in a grasping effort that foreseeable harm can be inferred from the fact that "Congress has made it a crime for EEOC employees to disclose [EEO1s]." Dist. Ct. Dkt. No. 34 at 26. But this statutory provision does not apply to OFCCP, as DOL admits, and OFCCP has been permitted for decades to disclose this information through FOIA, so one cannot infer harm from disclosure by OFCCP on this basis. *See* Dkt. No. 8.1 at 7; *Sears Roebuck & Co. v. Gen. Serv. Admin.*, 509 F.2d 527, 529 (D.C. Cir. 1974). DOL also asserted that companies might elect not to contract with the federal government if they had to disclose EEO-1 reports to the public. That assertion was and is unsupported by DOL's evidence, is inconsistent with the highly abstract content of EEO-1 Reports. Further, any conceivable harm from disclosing EEO-1 Reports would be significantly mitigated by the age of the requested EEO-1 Reports and the fact that much of the data is already public. [20]

---

[20] A search into the employee statistics of several of the bellwether objectors reveals that this type of information is already in the public domain. For instance, a Google search of Allied Universal yielded: (1) an organizational breakdown listing all the business leaders in regional, business, and functional areas (complete with

Thus, this Court should affirm the District Court's order on the separate and independent ground that Defendant/Appellant has not met its burden to prove that disclosure will cause reasonably foreseeable harm.

## 2. The Trade Secrets Act § 1905 Does Not Apply and Therefore DOL's Burden to Meet the FIA Survives

Perhaps recognizing that it cannot meet its burden to prove foreseeable harm, DOL's Brief doubles down on a novel attempt to use another statute, the TSA, to do an end run around its requirements. Because the FIA does not require an agency to prove foreseeable harm when "'disclosure is prohibited by law[,]'" 5 U.S.C. § 552(a)(8)(A), DOL simply contends that the Trade Secret Act "prohibits disclosure" of the EEO-1 Reports, and so the FIA does not apply. Dkt. No. 8.1 at 38. This last-ditch attempt, too, fails. DOL confoundingly claims in the same paragraph that it does "not" raise the TSA to "extend the reach of Exemption 4" or to advocate for an alternative basis for withholding records" under Exemption 3. But its argument, if adopted, would essentially do one of these two things by

photos & bios on each individual) and (2) publicly available Environmental, Social and Governance reports that provide progress updates on the company's continuing DEI measures. 2-ER-123-124. A search of the smaller privately owned bellwether objectors, Brandenberg Industries, 2-ER-124, also showed just how publicly accessible generalized diversity information of the company's workforce is. Within minutes, this research provided "a 23 page report which included: (1) counts of employees…more detailed…than the…Type 2 Consolidated EEO-1; (2) an organization chart…; (4) names, job titles, locations, telephone numbers, and recently-verified email addresses for 124 key employees; (5) financial data and other indicators [of] stability." *Id.*

47

cutting foreseeable harm out of the equation entirely in every Exemption 4 case. Such faulty logic must fail. *Compare* Dkt. No. 8.1 at 38 (the "Trade Secrets Act does not extend the reach of Exemption 4 and is not an alternative basis for withholding records requested under FOIA"), *with id.* (the "Trade Secrets Act is a statute that prohibits disclosure"). In this case, the district court ruled on the TSA correctly, and therefore the FIA's foreseeable harm test applies, for two main reasons.

First, DOL is right about a crucial point that should guide the Court's analysis:  it is well-settled that the Trade Secrets Act is not a withholding statute that allows nondisclosure under FOIA Exemption 3. DOL makes a passing reference, without quotation marks, to key language in the Trade Secrets Act that has led courts to this conclusion. *See* Dkt. No. 8.1 at 39 (stating that the TSA "prohibits unauthorized disclosure" of covered information). The Trade Secrets Act contains an explicit limitation: it prohibits only disclosure of covered information "in any manner or to any extent *not authorized by law*." 18 U.S.C. § 1905 (emphasis added). This has led courts to hold that the Trade Secrets Act is not covered by Exemption 3, which applies to records "specifically exempted from disclosure by statute . . . if that statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be

48

withheld." 5 U.S.C. § 552(b)(3). As the D.C. Circuit Court of Appeals reasoned decades ago,

> The third exemption requires that matters be "specifically exempted from disclosure by statute," 5 U.S.C. s 552(b)(3) (1970) (emphasis added), yet section 1905 by its own terms is a statute of general applicability and not one that specifically defines or categorizes the information to be exempted within the meaning of the third exemption.

*Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 686 (D.C. Cir. 1976); *accord., e.g.*, *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1141-42 (D.C. Cir. 1987)*; Gen. Elec. Co. v. U.S. Nuclear Regulatory Comm'n*, 750 F.2d 1394, 1401–02 (7th Cir.1984) ("[T]he Trade Secrets Act has no independent force in cases where the Freedom of Information Act is involved. . . ."); *JCI Metal Prod. v. U.S. Dep't of the Navy*, No. 09-CV-2139-IEG, 2010 WL 2925436, at *8 (S.D. Cal. July 23, 2010) ("Section 1905, however, cannot override the FOIA's obligatory disclosure provisions."). These cases make clear that, just as the TSA does not require that matters be withheld from the public or exempt matters within the meaning of FOIA Exemption 3, it does not "prohibit" disclosure "by law" within the meaning of the FIA such that the foreseeable harm standard does not apply.

Furthermore, reading the FIA in a way that allows DOL to evade the FIA would be inconsistent with its structure, which excludes Exemption 3 from the foreseeable harm requirement explicitly. 5 U.S.C. § 552(a)(8)(B); *see also Seife*, 43 F.4th at 240-41 (considering structure and context in interpreting statute).

Finally, DOL's reading of the FIA is inconsistent with rulings of this Court and the Supreme Court that have repeatedly held FOIA must be construed in favor of access.purpose of FOIA. *See supra* at n. 9 (collecting cases).[21]

Here, the plain language of the FIA and the TSA controls. *See Food Mktg. Inst.*, 588 U.S. at 436 ("Where a court's careful examination of the ordinary meaning and structure of a statute yields a clear answer, judges must stop.").

While the Court need analyze the issue no further to deny DOL's attempt to evade the FIA, DOL's TSA argument also fails because DOL has not proven, and cannot prove, that EEO-1 Reports are subject to the TSA. DOL cites case law, including from this Circuit, which holds the TSA and section 1905 have been held to be "co-extensive." Dkt. No. 8.1 at 37 (citing *Pac. Architects & Eng'rs Inc. v. U.S. Dep't of State*, 906 F.2d 1345, 1347 (9th Cir. 1990) (quoting *General Motors Corp. v. Marshall*, 654 F.2d 294, 297 (4th Cir. 1981)).[22] But as previously argued

---

[21] DOL cites a stray reference to the Trade Secrets Act in a statement by Senator Grassley about the FOIA Improvements Act as evidence that the Trade Secrets Act prohibits disclosure for purposes of the FOIA Improvement Act – even though, as DOL concedes, as a literal matter it does not prohibit disclosure under FOIA. *See* Dkt. No. 8.1 at 38 (citing S. Rep. No. 114-4, at 8 & n. 11). That reference falls far short of justifying adopting DOL's extraordinary position.

[22] DOL acknowledges that this case law may not be consistent with current law given *Food Marketing Institute*'s expansion of Exemption 4. *See Synopsys, Inc. v. Dep't of Lab.*, Nos. 20-16414, 20-16416, 2022 WL1501094 (9th Cir. May 12, 2022) (stating that it was possible *Food Marketing Institute* had "expanded the scope of Exemption 4" such that "the exemption is now broader" than the TSA); Dkt. No. 8.1 at 40. *See also Chrysler Corp. v. Brown*, 441 U.S. 281, 319 n.49

in *CIR I*, before this Court, in *Synopsys, Inc. v. U.S. Dep't of Labor*, Nos. 20-16414, 20-16416, 2022 WL 1501094 (9th Cir. May 12, 2022), and in the court below, EEO-1 Reports plainly do not fall within the narrow definition of a "trade secret" covered by section 1905.

Here, Exemption 4 notwithstanding, the TSA does not cover the diversity data in EEO-1 Reports. EEO-1 data does not meet the narrow definition of "trade secret" in Exemption 4 or Section 1905. Information qualifies as a "trade secret" under these statutes only if it is inherently "secret," economically valuable, and directly related to "the productive process," not "collateral matters of business." *Pub. Citizen Health Rsch. Grp.*, 704 F.2d at 1287. The term is limited to a "plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort," not "tangential" information. *Id.* at 1288-90. EEO-1 information certainly does not qualify as a "trade secret." Nor does it qualify as confidential information of any kind, as Plaintiffs/Appellants argued in the District Court as a further basis for repudiating DOL's Exemption 4 claim, as DOL has disclosed them. *See Taylor v. Babbitt*, 760 F. Supp. 2d 80, 86 (D.D.C.

_____

(1979) (acknowledging, in a pre-*Food Marketing Institute* case, the "theoretical possibility that material might be outside Exemption 4 yet within the substantive provisions of § 1905, and that therefore the FOIA might provide the necessary 'authoriz[ation] by law' for purposes of § 1905" to allow disclosure under the statute).

2011); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 n.15 (1984). Second, contractors also regularly publish EEO-1 Report data themselves or otherwise allow it to become available online. 2-ER-125-127; 4-SER-1121. Third, the information in EEO-1 Reports lacks a "direct relationship" to the "productive process," *Cf. Pub. Citizen*, 704 F.2d at 1288, and EEO-1 Reports are not commercially valuable, for the reasons stated by Plaintiffs/Appellees' experts. 2-ER-114-123; 4-SER-1119-1121. Finally, to argue that this test applies, contractors would have to take the implausible position that the race and gender of its employees is a "plan, formula, process, or device . . . used for the making, preparing, compounding, or processing of trade commodities" – a bizarre if not disturbing conclusion. *Id. See also Citizens Comm'n on Human Rights v. F.D.A.*, No. 92-CV-5313, 1993 WL 1610471 at *7 (C.D. Cal. May 10, 1993), *aff'd in part and remanded in part on other grounds*, 45 F.3d 1325 (9th Cir. 1995).

DOL attempts to get around this narrow definition of "trade secret" in this case, just as it attempts to get around the foreseeable harm standard.:  . Rather than arguing that EEO-1 Report data qualifies for TSA protection, it instead argues that EEO-1 Report data constitutes "confidential statistical data," which it argues is an independent path to coverage by the statute." Dkt. No. 8.1 at 40-41. But this language does not, change result of the TSA analysis. It requires confidentiality, and DOL has not proven EEO-1 Reports are legitimately confidential. Further,

"confidential statistical data" should be construed consistent with its context, as covering statistics with inherent commercial value, not statistics with any relation to a business, no matter how distant or tenuous. *Seife*, 43 F.4th at 240-41; *see also Yates v. United States*, 574 U.S. 528, 529 (2015) (applying *noscitur a sociis* and *ejusdem generis* to interpret one of a list of terms, "tangible object," as referring to "the subset of tangible objects used to record or preserve information" the context in which it appeared).  Second, courts in this Circuit, and others, have rejected an expansive interpretation of Section 1905 in similar cases. *See CIR I*, 424 F. Supp. 3d at 779 (not considering the TSA argument); *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*, 58 F.4th 1255, 1266-69 (D.C. Cir. 2023) (stating that the names of contractors were not trade secrets nor "commercial" information under FOIA); *see also* 2-ER-124-130; 4-SER-1119-1121. Last, if "confidential statistical data" could be read as broadly as DOL contends, it would swallow much of the rest of the statute and dramatically expand the statute's reach, as the district court in this case thoughtfully explained in his summary judgment order. *See* 1-ER-10 (stating "This order is not convinced by defendant's superficial argument that diversity data within an EEO-1 report is protected under the Trade Secrets Act . . . it is made without any substantive support from caselaw and could possibly render the language of the Act meaningless."); *accord TRW Inc.*, 534 U.S. at 31 (rule against surplusage).

53

In sum, the TSA does not allow DOL to escape requirement, under the FIA, that it prove disclosure will cause reasonably foreseeable harm in order to prevail. *See JCI Metal Prod.*, 2010 WL 2925436, at *8 (TSA "cannot override the FOIA's obligatory disclosure provisions"). DOL's inability to do so is an independent basis for affirming the district court.

## VIII.  CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

DATE: July 10, 2024

/s/ *D. Victoria Baranetsky*
D. VICTORIA BARANETSKY
Attorneys for Plaintiff-Appellee
CENTER FOR INVESTIGATIVE
REPORTING

/s/ *Aaron R. Field*
AARON R. FIELD
Attorney for Plaintiffs-Appellees
CENTER FOR INVESTIGATIVE
REPORTING and WILL EVANS

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiffs/Appellees state that they know of no related case pending in this Court.

DATE: July 10, 2024

/s/ *D. Victoria Baranetsky*
D. VICTORIA BARANETSKY
Attorney for Plaintiff-Appellee
CENTER FOR INVESTIGATIVE
REPORTING

/s/ *Aaron R. Field*
AARON R. FIELD
Attorney for Plaintiffs-Appellees
CENTER FOR INVESTIGATIVE
REPORTING and WILL EVANS

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a) and Ninth Circuit

Rule 32-1, this answering brief is: proportionally spaced, has a typeface of 14

points or more, and contains 13,250 words.

DATE: July 10, 2024

/s/ *D. Victoria Baranetsky*
D. VICTORIA BARANETSKY
Attorney for Plaintiff-Appellee
CENTER FOR INVESTIGATIVE
REPORTING

/s/ *Aaron R. Field*
AARON R. FIELD
Attorney for Plaintiffs-Appellees
CENTER FOR INVESTIGATIVE
REPORTING and WILL EVANS

56

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATE: July 10, 2024

/s/ *D. Victoria Baranetsky*
D. VICTORIA BARANETSKY
Attorney for Plaintiff-Appellee
CENTER FOR INVESTIGATIVE
REPORTING

/s/ *Aaron R. Field*
AARON R. FIELD
Attorney for Plaintiffs-Appellees
CENTER FOR INVESTIGATIVE
REPORTING and WILL EVANS

57