No. 24-880

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS

*Plaintiffs-Appellees,*

v.

UNITED STATES DEPARTMENT OF LABOR

*Defendant-Appellant.*

On Appeal from the United States District Court for the Northern District of
California, Case No. 22-cv-07182-WHA, Honorable William Alsup, Presiding

## SUPPLEMENTAL EXCERPTS OF RECORD
## VOLUME 3 OF 4

D. VICTORIA BARANETSKY
THE CENTER FOR
INVESTIGATIVE REPORTING
222 Sutter St., Ste. 200
San Francisco, CA 91608
Telephone:  (510) 982-2890
vbaranetsky@revealnews.org




*Attorney for Plaintiff-Appellee
The Center for Investigative
Reporting*

THERESE Y. CANNATA
AARON R. FIELD
ZACHARY COLBETH
CANNATA, O'TOOLE & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111
Telephone:  (415) 409-8900
tcannata@cofolaw.com
afield@cofolaw.com
zcolbeth@cofolaw.com


*Attorneys for Plaintiffs-Appellees
The Center for Investigative
Reporting and Will Evans*

Federal Contract Compliance Manual (FCCM)

## V. SECTION 503 UTILIZATION ANALYSIS AND OUTREACH ASSESSMENT

**Utilization Analysis.** Identify whether the contractor met the 7 percent disability utilization goal in each of its AAP job groups or, if the contractor has fewer than 100 employees, in the contractor's workforce as a whole. If the goal was not met, the contractor must take steps to determine whether and where impediments to equal employment opportunity exist. If any problem areas are identified, the contractor must develop and execute action-oriented programs designed to correct them. Identify the steps the contractor took to determine if impediments exist, and the action-oriented programs developed to correct any identified problem areas. Identify whether the issue needs to be investigated on-site. Provide an explanation of any findings, indicating whether and how the problem was resolved, and what remedial action(s) was taken. Also, explain any progress the contractor is making in the current year, if the contractor is six months or more into its current year AAP.

| # | UTILIZATION GOAL PROBLEM AREAS – MORE THAN 100 EMPLOYEES | On-site ☑ |
|---|---|---|
| | If contractor set goals by job group, did the contractor meet the 7% utilization goal in each job group? Yes ☐  No ☐  N/A ☐  If no, identify the job group(s) where the goal was not met (including percent achieved by the contractor), the steps taken to identify problem areas and the action-oriented programs to correct identified problem areas. Add more rows as needed. | |
| 1 | **JOB GROUP & PERCENT ACHIEVED:** | |
| | **STEPS TAKEN:** | |
| | **PROBLEM AREAS IDENTIFIED:** | ☐ |
| | **ACTION-ORIENTED PROGRAMS:** | |
| | **FINDINGS & RESOLUTION:** | |
| | **CURRENT YEAR PROGRESS:** | |
| 2 | **JOB GROUP & PERCENT ACHIEVED:** | |
| | **STEPS TAKEN:** | |
| | **PROBLEM AREAS IDENTIFIED:** | ☐ |
| | **ACTION-ORIENTED PROGRAMS:** | |
| | **FINDINGS & RESOLUTION:** | |
| | **CURRENT YEAR PROGRESS:** | |
| 3 | **JOB GROUP & PERCENT ACHIEVED:** | |
| | **STEPS TAKEN:** | |
| | **PROBLEM AREAS IDENTIFIED:** | ☐ |
| | **ACTION-ORIENTED PROGRAMS:** | |
| | **FINDINGS & RESOLUTION:** | |
| | **CURRENT YEAR PROGRESS:** | |
| 4 | **JOB GROUP & PERCENT ACHIEVED:** | ☐ |
| | **STEPS TAKEN:** | |
| | **PROBLEM AREAS IDENTIFIED:** | |

Federal Contract Compliance Manual (FCCM)

| # | UTILIZATION GOAL PROBLEM AREAS – MORE THAN 100 EMPLOYEES | On-site ☑ |
|---|---|---|
| | **ACTION-ORIENTED PROGRAMS:** | |
| | **FINDINGS & RESOLUTION:** | |
| | **CURRENT YEAR PROGRESS:** | |
| 5 | **JOB GROUP  & PERCENT ACHIEVED:** | |
| | **STEPS TAKEN:** | |
| | **PROBLEM AREAS IDENTIFIED:** | ☐ |
| | **ACTION-ORIENTED PROGRAMS:** | |
| | **FINDINGS & RESOLUTION:** | |
| | **CURRENT YEAR PROGRESS:** | |

| UTILIZATION GOAL PROBLEM AREAS – FEWER THAN 100 EMPLOYEES | On-site ☑ |
|---|---|
| If contractor opted to set goal for entire workforce, did the contractor meet its 7% utilization goal?<br><br>Yes ☐   No ☐   N/A ☐   (if no, identify problem area(s))<br><br>If no, identify the percent achieved by the contractor for its workforce as a whole, the steps taken to identify problem areas and the action-oriented programs to correct identified problem areas. | |
| **PERCENT ACHIEVED:** | |
| **STEPS TAKEN:** | |
| **PROBLEM AREAS IDENTIFIED:** | ☐ |
| **ACTION-ORIENTED PROGRAMS:** | |
| **FINDINGS & RESOLUTION:** | |
| **CURRENT YEAR PROGRESS:** | |

Federal Contract Compliance Manual (FCCM)

**SECTION 503 Outreach Assessment.** Indicate whether the contractor evaluated the effectiveness of each outreach and positive recruitment effort, and whether the contractor concluded that the totality of its efforts were effective in identifying and recruiting qualified individuals with disabilities. Also, indicate whether the contractor's conclusion is reasonable and, if not, explain why. If the contractor concludes that its efforts were not effective, list the alternative efforts that it has identified. Identify any additional information that will be requested and whether the issue needs to be investigated on-site. Provide an explanation of any findings, indicating whether and how the problem was resolved, and what remedial action(s) was taken.

| SECTION 503 OUTREACH ASSESSMENT | On-site ☑ |
|---|---|
| Did the contractor evaluate the effectiveness of each outreach and positive recruitment effort it undertook, and draw a conclusion as to whether the totality of its efforts were effective in identifying and recruiting qualified individuals with disabilities? If not, explain in the Findings section below.<br><br>Yes ☐  No ☐ | ☐ |
| Was the contractor's conclusion reasonable? If no, explain why in the Findings section below.<br><br>Yes ☐  No ☐ | ☐ |
| Additional Information to be Requested: | ☐ |
| Findings: | ☐ |

Federal Contract Compliance Manual (FCCM)

## VI. VEVRAA OUTREACH ASSESSMENT

**VEVRAA Outreach Assessment.** Indicate whether the contractor evaluated the effectiveness of each outreach and positive recruitment effort, and whether the contractor concluded that the totality of its efforts were effective in identifying and recruiting qualified protected veterans. Also, indicate whether the contractor's conclusion is reasonable and, if not, explain why. If the contractor concludes that its efforts were not effective, list the alternative efforts that it has identified. Identify any additional information that will be requested and whether the issue needs to be investigated on-site. Provide an explanation of any findings, indicating whether and how the problem was resolved, and what remedial action(s) was taken.

| VEVRAA OUTREACH ASSESSMENT | On-site ☑ |
|---|---|
| Did the contractor evaluate the effectiveness of each outreach and positive recruitment effort it undertook, and draw a conclusion as to whether the totality of its efforts were effective in identifying and recruiting qualified protected veterans? If not, explain in the Findings section below. <br><br> Yes ☐  No ☐ | ☐ |
| Was the contractor's conclusion reasonable? If no, explain why not in the Findings section below. <br><br> Yes ☐  No ☐ | ☐ |
| Additional Information to be Requested: | ☐ |
| Findings: | ☐ |

Federal Contract Compliance Manual (FCCM)

## VII. EMPLOYMENT ACTIVITY DATA ANALYSES

**Desk Audit Analyses.** **S**ummarize any potential systemic or individual discrimination found under any legal authority during the desk audit from analyzing employment activity data, including compensation, hires, terminations and promotions (*e.g.,* statistical indicators showing disparate impact against minorities or women).  Include a discussion of the nature of any indicators of discrimination, relevant evidence collected and reviewed at desk audit, actions (if any) taken to resolve the indicators, and whether and how the problem was resolved.  If the discrimination indicator could not be resolved through additional data analysis during pre-on-site or early resolution procedures, check the box to indicate if the compliance evaluation will continue with an on-site investigation.

| EMPLOYMENT DATA ANALYSES RESULTS | On-site ☑ |
|---|---|
| **HIRING ANALYSIS RESULTS:** | ☐ |
| **TERMINATION ANALYSIS RESULTS.** | ☐ |
| **PROMOTION ANALYSIS RESULTS.** | ☐ |
| **COMPENSATION ANALYSIS RESULTS.** | ☐ |

Federal Contract Compliance Manual (FCCM)

## VIII. OTHER PROBLEMS FOR ON-SITE INVESTIGATION

Identify any other problems that require additional information and/or require an on-site review, such as a pay secrecy policy or minority and female representation, as applicable within departments/units; possible lines of progression (within department or across department lines); grade or salary levels; supervisory positions vs. those supervised, etc.  Provide an explanation of any findings, indicating how the problem was resolved and what remedial action(s) was taken.  If the problems could not be resolved through additional records requests during pre-on-site or early resolution procedures, check the on-site box.  Desk audit discrimination indicators are reported in Part B, VII.

| # | PROBLEM AREAS | On-site ☑ |
|---|---|---|
| 1 | PROBLEM AREA: <br> ADDITIONAL INFO: <br> FINDINGS: <br> RESOLUTION: | ☐ |
| 2 | PROBLEM AREA: <br> ADDITIONAL INFO: <br> FINDINGS: <br> RESOLUTION: | ☐ |
| 3 | PROBLEM AREA: <br> ADDITIONAL INFO: <br> FINDINGS: <br> RESOLUTION: | ☐ |
| 4 | PROBLEM AREA: <br> ADDITIONAL INFO: <br> FINDINGS: <br> RESOLUTION: | ☐ |
| 5 | PROBLEM AREA: <br> ADDITIONAL INFO: <br> FINDINGS: <br> RESOLUTION: | ☐ |

Federal Contract Compliance Manual (FCCM)

## PART C: ON-SITE INVESTIGATION

### I. IMPLEMENTATION: EQUAL OPPORTUNITY CLAUSE AND OTHER REQUIREMENTS
### UNDER EXECUTIVE ORDER 11246, SECTION 503, VEVRAA AND EXECUTIVE ORDER 13496

Determine whether the contractor complied with the following requirements (Yes/No). If "Yes," indicate how this was confirmed. If "No," explain the problem, whether it was resolved and, if resolved, indicate how. If requirements are not resolved, they must be included in the **Case Summary and Recommendations** section**.**

| Applicable under Executive Order 11246, Section 503 and VEVRAA |
|---|
| **INCLUDED EQUAL OPPORTUNITY CLAUSE IN SUBCONTRACTS AND PURCHASE ORDERS** (41 CFR 60- 1.4, 41 CFR 60-300.5, 41 CFR 60-741.5) |
| |
| **POSTED CURRENT NOTICES, INCLUDING THE "EEO IS THE LAW" POSTER AND ANY REQUIRED SUPPLEMENT IN CONSPICUOUS PLACES, ELECTRONICALLY WHERE REQUIRED** (41 CFR 60- 1.4, 41 CFR 60-300.5, 41 CFR 60-741.5) |
| |
| **NOTIFIED PARTIES WITH WHICH IT HAS A CBA OF ITS EEO OBLIGATIONS** (41 CFR 60- 1.4, 41 CFR 60-300.5, 41 CFR 60-741.5) |
| |
| **INCLUDED EEO LANGUAGE IN JOB ADVERTISEMENTS** (41 CFR 60-1.4, 41 CFR 60-300.5, 41 CFR 60-741.5) |
| |

| Applicable under Executive Order 11246 only |
|---|
| **POSTED PAY TRANSPARENCY NONDISCRIMINATION PROVISION (PHYSICALLY OR ELECTRONICALLY) AND INCLUDED IT IN CURRENT EMPLOYEE MANUALS AND HANDBOOKS** (41 CFR 60-1.35(c)) |
| |

Appendix A-1 | 386

Federal Contract Compliance Manual (FCCM)

| **Applicable under Section 503 and VEVRAA** |
|---|
| **MADE AAPS AVAILABLE FOR INSPECTION, AND POSTED LOCATION AND HOURS** (41 CFR 60-300.41, 41 CFR 60-741.41) |
| |
| **COMPLIED WITH REQUIREMENTS RELATED TO DISABILITY-RELATED QUESTIONS AND MEDICAL EXAMINATIONS** (41 CFR 60-300.23, 41 CFR 60-741.23) |
| |
| **COMPLIED WITH THE REQUIREMENTS RELATED TO CONFIDENTIALITY AND USE OF MEDICAL INFORMATION** (41 CFR 60-300.23(d), 41 CFR 60-741.23(d) |
| |
| **COMPLIED WITH REQUIREMENTS RELATED TO THE INVITATION TO SELF-IDENTIFY AS A PROTECTED VETERAN AND THE INVITATION TO SELF-IDENTIFY AS AN INDIVIDUAL WITH A DISABILITY (FORM CC-305)** (41 CFR 60-300.42, 41 CFR 60-741.42) |
| |

| **Applicable under Executive Order 13496 only** |
|---|
| **POSTED NOTICE OF EMPLOYEE RIGHTS UNDER THE NATIONAL LABOR RELATIONS ACT** (Required poster and electronic posting, if applicable) (29 CFR 471.2) |
| |
| **INCLUDED NOTICE OF EXECUTIVE ORDER 13496 OBLIGATIONS IN SUBCONTRACTS** (29 CFR 471, Subpart A, app.  A) |
| |

Appendix A-1 | 387

Federal Contract Compliance Manual (FCCM)

## II. IMPLEMENTATION OF REGULATIONS
## PROHIBITING DISCRIMINATION ON THE BASIS OF SEX

Verify the contractor's implementation of the regulations prohibiting discrimination on the basis of sex at 41 CFR Parts 60-1 and 60-20. If the contractor is in compliance, describe below how this determination was made (*e.g.,* specifically reference documentation and other evidence reviewed that is relevant to the determination, and describe/summarize relevant interview statements). If not, explain the problem, whether it has been resolved and, if so, how. If you identify a potential discrimination problem, include the issue in Part C, V – Problems Identified During the On-site Investigation.

| SEX DISCRIMINATION REGULATIONS, 41 CFR PART 60-20 VIOLATION?<br>YES / NO   EXPLAIN |
|---|
| **Discrimination Based on Pregnancy, Childbirth and Related Medical Conditions** (41 CFR 60-20.5)<br><br>Review the contractor's job policies and practices with regard to pregnancy, childbirth and related medical conditions. Does the contractor treat employees and applicants affected by pregnancy, childbirth and related medical conditions the same as employees affected by other medical conditions who are similar in their ability or inability to work? Examine the contractor's policies and practices related to:<br><br>   (a)  Health insurance;<br>   (b)  Job accommodations; and<br>   (c)  Leave<br><br>If such policies or practices are the same for pregnancy-related conditions and other medical conditions that are similar in their effect on employees' ability to work, examine whether such policies or practices have an adverse impact on the basis of sex and, if so, whether the contractor has shown that such policies or practices are job-related and consistent with business necessity. |
| **Sexual Harassment and Hostile Work Environments** (41 CFR 60-20.8)<br><br>Is there evidence of unwelcome sexual advances, requests for sexual favors, offensive remarks about a person's sex, or other verbal or physical conduct of a sexual nature under any of the following circumstances?<br><br>   1)  Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment;<br>   2)  Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or<br>   3)  Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance; or creating an intimidating, hostile or offensive working environment. |

SER-610

Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 522 of 1025

Federal Contract Compliance Manual (FCCM)

## III. IMPLEMENTATION OF THE GUIDELINES ON DISCRIMINATION BECAUSE OF RELIGION OR NATIONAL ORIGIN

Verify the contractor's implementation of the regulations prohibiting discrimination on the basis of religion and national origin at 41 CFR Part 60-1, and the Guidelines on Discrimination Because of Religion or National Origin at 41 CFR Part 60-50. If the contractor is in compliance, describe below how this determination was made (*e.g.,* reference documentation and other evidence that was reviewed, and describe statements made during interviews). If not, explain the problem, whether it has been resolved and, if so, how. If you identify a potential discrimination problem, include the issue in Part C, V –Problems Identified During the On-site Investigation.

| GUIDELINES ON DISCRIMINATION BECAUSE OF RELIGION, 41 CFR PART 60-50 VIOLATION? YES/ NO EXPLAIN |
|---|
| **Equal Employment Policy** (41 CFR 60-50.2) |
| 1.  Contractor does/does not discriminate on the basis of religion. If discrimination is found, please explain the problem in Part C, V – Problems Identified During the On-site Investigation, and describe any related violation findings in the Case Summary and Recommendations section. |
| 2.  Describe any outreach efforts made by the contractor, if required to address EEO disparities based on religion. |
| **Accommodations to Religious Observance and Practice** (41 CFR 60-50.3) |
| Contractor provides requested accommodations for religious observances and practices unless it can demonstrate that providing an accommodation would cause an undue hardship on the contractor's business. If accommodations were wrongly denied, please explain. |

| GUIDELINES ON DISCRIMINATION BECAUSE OF NATIONAL ORIGIN, 41 CFR PART 60-50 VIOLATION? YES/ NO EXPLAIN |
|---|
| **Equal Employment Policy** (41 CFR 60-50.2) |
| 1.  Contractor does/does not discriminate on the basis of national origin. If discrimination is found, please explain the problem in Part C, V – Problems Identified During the On-site Investigation, and describe any related violation findings in the Case Summary and Recommendations section. |
| 2.  Describe any outreach efforts made by the contractor, if required to address EEO disparities based on national origin. |

Federal Contract Compliance Manual (FCCM)

## IV. INVESTIGATING POTENTIAL DISCRIMINATION
## IDENTIFIED DURING DESK AUDIT

**Discrimination Investigative Results.**  Record the on-site investigative findings for any potential systemic or individual discrimination that was identified during desk audit and recorded in Part B, VII of the SCER (*e.g.,* statistical indicators showing disparate impact against minorities or women in hiring or compensation, evidence of disparate treatment).  Include a discussion of the nature of the problem, relevant evidence collected and reviewed, actions (if any) taken to resolve the problem, and whether and how the problem was resolved.  Also include any findings of violation in **Case Summary and Recommendations** section.

| SUMMARY OF PROBLEMS, ACTIONS TAKEN AND RESOLUTION |
| (Add additional sheets as an attachment to the SCER, if needed) |
| --- |
| |
| |
| |

Federal Contract Compliance Manual (FCCM)

## V. PROBLEMS IDENTIFIED DURING THE ON-SITE INVESTIGATION

**Investigating Problems Identified On-site.** Record the on-site investigative findings for any problems discovered during the on-site investigation (*e.g.,* anecdotal evidence describing discrimination or harassment against employees based on disability, protected veterans' status, sexual orientation or gender identity, or suggesting that the contractor prohibits employees from discussing their pay). Include a discussion of the nature of the problem, relevant evidence collected and reviewed, actions (if any) taken to resolve the problem, and whether and how the problem was resolved. Also include any findings of violation in **Case Summary and Recommendations** section.

| SUMMARY OF PROBLEMS, ACTIONS TAKEN AND RESOLUTION<br>(Add additional sheets as an attachment to the SCER, if needed) |
|:---:|
|  |
|  |
|  |

Appendix A-1 | 391

Federal Contract Compliance Manual (FCCM)

# PART D: CORPORATE MANAGEMENT
# EVALUATION (CMCE) NARRATIVE
### (Only complete when conducting a CMCE)

When conducting a CMCE, this part of the SCER must be completed in addition to the Case Summary and Recommendations section; and Parts A, B and C. Compliance officers should use the Consolidated EEO-1 Report (Type 2) and Headquarters Report (Type 3) for completing the information related to corporate establishment representation.

This document must be attached to all CMCE SCERS. If using the Adobe format and the narrative extends beyond the space available on the form, then tab and file the document, and list the tab with the location in the space the question (*e.g.,* see Tab File 1-A – Hires). While this is a guide, all questions listed should be answered; however, you are not limited to only to the questions listed. See the FCCM, Chapter 4 and 41 CFR 60-2.30 for additional information.

| Introduction: | Describe the corporate background, structure, observations concerning corporate culture and values. Also, describe any previous OFCCP reviews or complaints, or complaints filed with other agencies that specifically address management jobs or "glass ceiling" issues. |
|---|---|
| AAP Development: | Did the contractor develop and maintain an AAP at each facility (yes/no). If "no" explain how employees are accounted for in the contractor's AAPs? |
| Corporate AAP: | List the positions at lower-level establishments that are rolled-up into the Corporate AAP? |
| Scope: | Did the evaluation only cover the corporate headquarters? Yes/No <br> If no because the evaluation was extended beyond the corporate headquarters to an intermediate headquarters or lower-level establishment, please explain the circumstances for the decision. |
| Focus Level and Areas: | Describe the company's pay and management structure. |

Federal Contract Compliance Manual (FCCM)

| | |
|---|---|
| **Outreach Efforts:** | Describe and assess the effectiveness of recruitment programs the company has in place at various levels. For upper-level management, do they use executive search firms or informal referrals from current executive level employees, or both? If executive search firms, what type? Were they informed of EEO/AA policy? |
| **Jobs Filled at and above the Focus Level:** | Describe the representation at the focus levels and during the evaluation period. Determine what jobs have been filled at the mid- and senior corporate management levels, and how were they filled (hire, promotion, transfer). Describe external and internal opportunities. |
| **Internal Development - Specific Programs:** | Does the company have development programs/opportunities for top management positions in the following areas and, if so, describe the participation (minorities, women, individuals with disabilities and protected veterans) in the programs: 1) Succession and Related Planning, 2) Performance Appraisals, 3) Visibility (Special Projects/Task Forces, Committees, Special Assistants/Executive Assistants), 4) Management Training and Executive Development Programs, and 5) Mentoring and Networking. Identify whether any of these programs/opportunities are designed for a particular group. During the review period, how many employees have gone through training and development programs? How many of those employees are males, females, various races, individuals with disabilities and/or protected veterans. How many have been promoted after completing the program? Describe the benefits of the program and the relationship to promotions. What happens if someone does not complete the program and their eligibility for future advancement? What is the contractor's policy and procedures on promotions, transfers and training opportunities? |
| **Total Compensation:** | Describe the compensation system, including any findings with regard to 1) Bonuses, 2) Stock, 3) Perks, and 4) Award and Honor Programs. What are the names of bonus/incentive plan(s)? Who is eligible? What are the criteria for eligibility, *e.g.,* length of service, minimum performance level, designation as a critical or high-potential employee? How is the final award determined, reviewed and approved? |
| **Terminations:** | Have there been any terminations among the mid- and senior level corporate management? What are the termination policies and practices? Are they evenhandedly applied? |

Federal Contract Compliance Manual (FCCM)

### APPENDIX A-2:  STANDARD COMPLIANCE EVALUATION REPORT (SCER) INSTRUCTIONS

**OVERALL SCER STRUCTURE**

This SCER is used to document the results of a compliance evaluation, including the findings of the desk audit review of the contractor's Affirmative Action Programs (AAP).

How much of the SCER is completed during each particular desk audit or on-site review, or both, will depend on the type of evaluation being performed, the extent of investigation required and the data submitted by the contractor.

The SCER provides space for the compliance officer (CO) to enter narratives describing any problems identified, action(s) taken to resolve the problems, any finding(s) of violation, the evidence examined and the basis for the finding(s), and recommended corrective action.

The specific parts of the SCER are: Contractor Information, Case Summary and Recommendations: Part A: Preparation, Part B: Desk Audit, Part C: On-site Investigation, Part D: Corporate Management Compliance Evaluation (CMCE) Narrative.

**INSTRUCTIONS**

At the top of each page described below, there may be a "continued" box.  Check it to indicate when additional pages have been inserted for the section.

**CONTRACTOR INFORMATION**

Item 1 – Establishment Name/Functional Unit, Address and Case Management System (CMS) Control #: Enter the name and address of the establishment or functional unit being reviewed. Also enter the CMS Control number assigned to this review.

Item 2 – Parent Name and Address: If the establishment or functional unit being reviewed is part of a larger firm, enter the name and address of the parent firm.

Item 3 – Complaints Investigated During Review: Enter the complaint number of each complaint you plan to investigate as part of the compliance evaluation, if any.  At the end of the evaluation, check [ ] those complaints that have been resolved.  If, during the course of a compliance evaluation, a complaint arises and is investigated, that information will be noted here.

Item 4 – Contract Coverage: Indicate whether contract information is in CMS and if it covers the entire evaluation period.  If the contract information is not in CMS or if you are conducting an on-site review and find more contracts, fill in the boxes with the following items: awarding agency, name of prime contractor if evaluation is being conducted of a subcontractor, the contract or purchase order number, dollar amount of the contract, and contract begin and end dates (or indicate if contract is indefinite).  There are spaces for at least three contracts.  More may be referenced on a separate page in the case file, if necessary.

Federal Contract Compliance Manual (FCCM)

Item 5 – Company Contacts and Outside Representation: List the name, title, phone number and e-mail address of the corporate and establishment Chief Executive Officer (CEO) (or other highest ranking executive), and the corporate and establishment contact persons for Equal Employment Opportunity and Affirmative Action (EEO and AA) matters. Also list the name, e-mail address and phone number of the outside representative (*e.g.,* attorney), if applicable.

Item 6 – Background Information: To the degree known, this item will include, but not be limited to, type of industry (*e.g.,* construction materials) and specific facility function (*e.g.,* manufacturing A-frames).

Item 7 – Compliance Evaluation Information: This item contains basic information pertinent to the start of a compliance evaluation. First, indicate if the evaluation is a Functional Affirmative Action Program (FAAP) review, Focused Review or CMCE. Then, fill in the charts with the requested information regarding important dates, whether the contractor is unionized and the North American Industrial Classification System (NAICS) code. After that, enter the geographic area in which the establishment or functional unit is located or, if it is not in a Metropolitan Statistical Area (MSA), enter the name of the appropriate labor area in which it is located. Then, enter the percent of the labor force within the named geographic area that is female and the percent that is minority (in the aggregate and by each minority group listed).

Charts are also provided for the CO to enter the contractor's workforce data, total and percentage, by race/ethnicity, veteran status and disability status. The charts allow for a rough sketch of the workforce composition for COs at the beginning of the compliance evaluation. They are not intended to replace the other analyses conducted during the compliance evaluation. To populate the charts, use data from AAP sources, such as the Executive Order 11246 organizational profile, VETS-4212 database and Section 503 utilization analysis. The data source(s) you choose should be noted on the SCER.

**CASE SUMMARY AND RECOMMENDATIONS**

After the evaluation has been completed, provide a brief summary of the findings to include: all unresolved violations and the recommendations for corrective action. For findings of violation, include for each violation: the time period of the violation; applicable law and regulation; evidence obtained, reviewed and the analyses conducted; and recommended corrective action(s) and the documents that will be prepared (*e.g.,* Notice of Violation(s), and Conciliation Agreement (CA)). If there is no finding of a violation and a closure letter is to be issued, provide a brief description of the basis for this recommended action.

*On-site Box*: The CO will indicate whether an on-site occurred and, if so, the reason for the on-site.

*Early Resolution Procedures Box*: The CO will check "yes" if the contractor engaged in early resolution procedures.

*Signature Blocks:* The CO must sign and date the report in the space provided. Upon approval of the report, the Assistant District Director and District Director must also sign and date it.

Federal Contract Compliance Manual (FCCM)

**PART A: PREPARATION:** Past Problems, Known Complaints or Enforcement Proceedings, and Collaboration with Other Agencies

1. Past Problems: Determine whether this establishment, or functional or business unit, has been subject to past compliance evaluations or OFCCP complaint investigations. If there have been no prior evaluations or complaint investigations, check the box at the top of the page and skip to item 2 (Known Complaints or Enforcement Proceedings). If a CA was issued in previous evaluations or investigations, attach a copy. In addition, complete this Part with the following information:

   a. Past Problems – Give the date of any past compliance evaluation or complaint investigation and list any major problems identified (*e.g.,* recordkeeping, etc.).

   b. Recurrence – At whatever point in the evaluation you have evidence that a past problem has recurred, describe the problem and evidence of recurrence. If you find that it did not recur, note "no" in this space.

2. Known Complaints/Enforcement Proceedings: Review responses received from other agencies on any complaints filed or ongoing enforcement proceedings against this establishment. If there are no such pending complaints or ongoing enforcement proceedings, state this and no further entries are needed in this part. If there are such complaints or proceedings, complete this Part as follows:

   a. List Known Complaints or Enforcement Proceedings – For each complaint or enforcement proceeding, indicate with what agency it was filed, its basis (including whether it is an individual or class complaint), issue, current status and the part of the workforce or establishment department it appears to concern (*e.g.,* clerical, professional, entry-level blue-collar, etc.).

   b. Related Problem Not Investigated in Known Complaint or Enforcement Proceeding – As you review the responses from the agencies, be alert for any indications of potential systemic discrimination or individual disparate treatment problems (*e.g.,* discrimination based on sexual orientation or gender identity) that should be investigated. Note those here.

3. Collaboration or Referrals to other Agencies (*e.g.,* EEOC, WHD or OSHA): If collaboration occurred during the investigation, list agency and basis for collaboration, and describe the issue and collaboration. If a referral was made to another agency, list agency, basis for referral the issue and the part of the workforce or establishment department it appears to concern.

**PART B: DESK AUDIT**

I. INITIAL REVIEW OF AAPS AND SUPPORT DATA SUBMISSIONS

Complete this section once you have received and reviewed the contractor's initial

Federal Contract Compliance Manual (FCCM)

AAP and support data submissions, following instructions in the Federal Contract Compliance Manual. Complete this section as follows:

*Included:* Review the Executive Order, Section 503 and VEVRAA AAP(s), as applicable, and the itemized listing data for each, to ensure that all required elements are present (complete). Beside each item, enter a "Y" for "yes" if it is included, or an "N" for "no" if it is missing.

*Acceptable:* Beside each listed element, enter a "Y" or "N" to indicate whether the AAP components and support data are acceptable. This determination of acceptability is limited to the evaluation that COs can conduct during the desk audit. If any item is not acceptable, list it in Part B. II of the SCER and describe the specific problem and actions taken. For compensation data, ensure that the data includes all employees, including, but not limited to, full-time, part-time, contract, per diem or day labor, and temporary employees, as of the date of the organizational display or workforce analysis (*i.e.*, the organizational profile).

## II. SUMMARY OF AAP ACCEPTABILITY

The CO must provide a detailed explanation of each AAP and support data problem. Each problem area must be described separately. If the problem is not resolved at the desk audit and on-site verification of compliance is necessary, the on-site box must be checked. The AAP and Supporting Data Problems description should include:

*Problem:* Provide a brief description of the identified problem and whether the problem concerns the Executive Order 11246, Section 503, VEVRAA AAPs, or support data.

*Action Taken:* The steps that were taken to resolve the problem, or the steps that will be taken (Plan to Resolve) if the action is to take place during or after an on-site review.

*Findings:* Indicate whether problems were identified based on an off-site analysis or whether an on-site review was conducted. Note any finding(s) and briefly describe the basis for the finding(s).

*Resolution:* If the problem is resolved, explain how it was resolved. If the problem is not resolved, the issue must be included in the Case Summary and Recommendations section of the SCER.

## III. EEO-1 WORKFORCE AND TREND ANALYSIS

The purpose of this preparation is to identify whether there is a difference in the totals between the most recent EEO-1 report and AAP workforce totals to determine if more information and clarification is needed before proceeding to more complex analyses. If there is a difference, COs should look at personnel activity data to see if activities such as hires and terminations explain the difference. If not, clarification is needed from the contractor to ensure the entire workforce is included in the AAP and to ensure that all personnel activity has been reported.

The EEO Trend Analysis is to examine employment trends and patterns in the contractor's workforce. Specifically, the trend analysis identifies underrepresentations and concentrations of employees by EEO-1 category. Provide a narrative of the results of the trend analysis.

Federal Contract Compliance Manual (FCCM)

## IV. EVALUATION OF GOOD FAITH EFFORTS – EXECUTIVE ORDER 11246

Identify goal areas where Executive Order 11246 goals were established but not met and indicate if an on-site investigation is needed. For each goal area that was not met, include the following:

*Goal Area:* Identify job group; indicate whether goals were for minorities, females or both; identify whether the goals were for the prior year (PY), the current year (CY) or both; and identify the expected goal and actual goal.

*Explanation and Commitments:* If there is a difference between the expected and actual goals, provide the contractor's explanation for the difference and pertinent AAP commitments.

*Additional Information:* Note any information that will be requested. If an on-site is needed to obtain the information or to address the problem, check the on-site box.

*Findings:* Indicate whether problems were identified based on an off-site analysis or whether an on-site review was conducted. Note any finding(s) and briefly describe the basis for the finding(s).

*Resolution:* If the problem is resolved, explain how it was resolved. If the problem is not resolved and remedial action must be taken, include a description of the recommended action in the Case Summary and Recommendations section of the SCER.

## V. SECTION 503 UTILIZATION ANALYSIS AND OUTREACH ASSESSMENT

For the utilization analysis, identify whether the contractor established the seven percent utilization goal for each job group or, if fewer than 100 employees, for the entire workforce. Describe what steps were taken to determine whether impediments to equal opportunity exist, any problem areas identified, and the action-oriented programs designed to correct any problem areas. If further investigation is needed on site, indicate by checking the box. Also, provide an explanation of any findings, indicating whether the problem was resolved and what remedial action (s) was taken. For contractors more than six months into the current AAP year, indicate any progress it has made toward meeting the seven percent goal.

For the outreach assessment, review the AAP to determine if the contractor evaluated the effectiveness of each outreach and positive recruitment effort it undertook. Also, determine if the contractor drew a conclusion as to whether the totality of the efforts were effective in identifying and recruiting qualified individuals with disabilities. If so, indicate whether the contractor's conclusion was reasonable. If the conclusion was not reasonable, explain why not. Finally, list any additional information that you need to request from the contractor.

## VI. VEVRAA OUTREACH ASSESSMENT

For the outreach assessment, review the AAP to determine if the contractor evaluated the effectiveness of each outreach and positive recruitment effort it undertook. Also, determine if the contractor drew a conclusion as to whether the totality of the efforts was effective in identifying and recruiting qualified veterans. If so, indicate whether the contractor's conclusion

Federal Contract Compliance Manual (FCCM)

was reasonable.  If the conclusion was not reasonable, explain why not.  Finally, list any additional information that you need to request from the contractor.

## VII.  EMPLOYMENT ACTIVITY DATA ANALYSES

In this section, the compliance officer describes any potential systemic or individual discrimination found during the desk audit.  Using the employment activity data submitted by the contractor, discuss any indicators or relevant evidence uncovered at desk audit during the hiring analysis, termination analysis, promotion analysis and compensation analysis, and efforts to resolve the indicators before proceeding to an on-site investigation.  Indicate whether an on-site investigation is needed to resolve any identified issues.

## VIII.  OTHER PROBLEMS FOR ON-SITE INVESTIGATION

Indicate any other problems that require additional information and/or an on-site review, such as pay secrecy policies found at desk audit, problems in minority and female representation, as applicable within departments/units, possible lines of progression (within department or across department lines), supervisory positions vs. those supervised, etc.  Provide an explanation of any findings, indicating how the problem was resolved and what remedial action(s) was taken.  For each identified problem include the following:

*Problem Area:* Provide a brief description of the identified problem.

*Additional Information:* Note any information requested.  If an on-site was needed to obtain the information or to address the problem, check the on-site box.

*Findings:* Indicate whether problems were identified based on an off-site analysis or whether an on-site review was conducted.  Note any finding(s) and briefly describe the basis for the finding(s).

*Resolution:* Provide an explanation of any findings, indicating how the problem was resolved and what remedial action(s) was taken.  Indicators of discrimination are reported in Part B VII.

## PART C: ON-SITE INVESTIGATION

## I.  IMPLEMENTATION: EQUAL OPPORTUNITY CLAUSE AND OTHER REQUIREMENTS UNDER EXECUTIVE ORDER 11246, SECTION 503, VEVRAA AND EXECUTIVE ORDER 13496

During the on-site review, evaluate whether the listed requirements under EO

11246, Section 503 and VEVRAA, and Executive Order 13496 have been met.  For each of these elements, indicate whether the action was taken by the contractor and how this was evidenced (*e.g.,* identify or summarize the CO's observation, review of the documentation and interview statements that are responsive) and whether any problems exist.  If problems exist, indicate how the problems were resolved.  If any requirements are not met despite attempts to resolve the problem, include the violation requiring corrective action in the Case Summary and Recommendations section.

Federal Contract Compliance Manual (FCCM)

## II. IMPLEMENTATION OF REGULATIONS PROHIBITING DISCRIMINATION ON THE BASIS OF SEX

During the on-site review, verify the contractor's implementation of the regulations prohibiting discrimination on the basis of sex. For each of the specified elements, indicate what action was taken by the contractor and how this was evidenced (*e.g.,* identify or summarize the documentation and interview statements that are responsive), and whether any problems exist. If problems exist, indicate how the problems were resolved. If there is a potential finding of discrimination, the information must be included in Part C IV of the SCER.

## III. IMPLEMENTATION AND GUIDELINES ON DISCRIMINATION BECAUSE OF RELIGION OR NATIONAL ORIGIN

During the on-site review, verify the contractor's implementation of the guidelines on discrimination based on religion and national origin. For each of the specified elements, indicate what action was taken by the contractor and how this was evidenced (*e.g.,* identify or summarize the documentation and interview statements that are responsive), and whether any problems exist. If problems exist, indicate how the problems were resolved. If there is a potential finding of discrimination, the information must be included in Part C IV of the SCER.

## IV. INVESTIGATING POTENTIAL DISCRIMINATION IDENTIFIED DURING DESK AUDIT

Record all identified potential areas of discrimination that have been resolved or that require corrective action in order to be resolved. Include a description of the potential discrimination identified, actions taken to resolve the problem (if any) and whether the problem was resolved. If the problem was not resolved and will require corrective action, the problem must be included in the Case Summary and Recommendations section of the SCER.

## V. PROBLEMS IDENTIFIED DURING THE ON-SITE INVESTIGATION

Record investigative findings for any problems discovered during the on-site investigation that were not previously identified during the desk audit (*e.g.,* anecdotal evidence describing discrimination or harassment against employees based on disability, protected veterans' status, sexual orientation or gender identity, or suggesting that the contractor prohibits employees from discussing their pay). Include a discussion of the nature of the problem, relevant evidence collected and reviewed, actions (if any) taken to resolve the problem, and whether and how the problem was resolved.

## PART D: CMCE NARRATIVE

When conducting a CMCE, this part must be completed in addition to completing all other parts of the SCER. Supplement the Case Summary and Recommendations section with findings specific to a CMCE. For additional information regarding CMCEs, see Chapter 4 of the Federal Contract Compliance Manual.

SER-622

Federal Contract Compliance Manual (FCCM)

**APPENDIX A-3: INDEX FOR A SUPPLY AND SERVICE REVIEW**

**Remember to Index and Tab the Materials.**

**File 1: SCER and Data pertaining to SCER Findings:** This file contains the SCER and data pertaining to the findings. This includes worksheets, interviews, contractor records, etc., pertinent to issues investigated. Include all relevant material bearing either for or against the conclusions reached. Cross reference other files, as applicable, for example: collective bargaining agreement in File 3.

Right Side of Folder

- SCER
- Worksheets
- Supporting documents
- Interviews
- Etc.

Left Side of Folder

- Form CC-100
- Extension requests and responses
- Contractor research form and supporting jurisdiction information

**File 2: Case Chronology, Correspondence and Meeting Notes:** This file will contain all correspondence, including attachments submitted and meeting notes. Correspondence includes any material resulting from contacts with the contractor, union, attorneys, consultants, Congress persons and memos to file (not investigative notes). The closure document will be tabbed. Note that a copy of the closure document is also placed in File 6.

Right Side: Correspondence – The correspondence must be in reverse chronological order (latest correspondence on top). As applicable, cross reference other files.

Left Side: Case Chronology Log – CC-53 (in chronological order and legible).

**File 3: Employee Handbooks, Collective Bargaining Agreement and Miscellaneous:** This file will contain a copy of any employee handbooks, collective bargaining agreements, fringe benefit information, leave policy booklets, applications, personnel records and any other similar contractor documents. Any documents that do not fit the description of materials to be included in any other file will be placed here.

**File 4: SOL Opinions, JRC Memoranda and Post-SCER Update:** This file will contain any Solicitor's (SOL) opinions and Joint Review Committee (JRC) memoranda associated with this review.

Federal Contract Compliance Manual (FCCM)

Also include in this file any material generated after the CO submits the review, for example: transmittal memoranda, additional conciliation efforts, etc. These materials are other than progress reports (File 5).

**File 5: Progress Reports:** This file will contain:

Right Side: Any progress reports submitted under a conciliation agreement or consent decree, or other court order, and OFCCP's evaluation of the report and the summary of the reports submitted.

**File 6: Historical Review Results:** This file will contain a copy of any available closure letters and documents generated by reviews of this establishment, and a copy of the closure letter or document for the current review. If reports are required under the conciliation agreement (CA), this file will also contain a copy of the Summary of Progress Reports.

NOTE: The historical file will be retained in the area office (AO) or district office (DO) pursuant to the agency's records management schedule. If another review of this establishment is scheduled before this case file is retired, the historical file will be pulled from the old case file and moved to the new file. If another review has not been scheduled, the historical file will be pulled and retained in the AO or DO when the rest of the case is retired.

**File 7: AAP and Itemized Support Data:** This file will contain the contractor's AAP (s) (Affirmative Action Program) and AAP support data evaluated in this review (including the EEO-1 Reports)

Federal Contract Compliance Manual (FCCM)

**APPENDIX A-4:   SAMPLE ON-SITE REVIEW PLAN**

PAGE INTENTIONALLY LEFT BLANK

Federal Contract Compliance Manual (FCCM)

**APPENDIX A-5:   INDEX FOR A CONSTRUCTION REVIEW**

PAGE INTENTIONALLY LEFT BLANK

Federal Contract Compliance Manual (FCCM)

**APPENDIX A-6:** **STANDARD COMPLIANCE EVALUATION REPORT (CONSTRUCTION)**

PAGE INTENTIONALLY LEFT BLANK

Appendix A-6 | 405

Federal Contract Compliance Manual (FCCM)

## APPENDIX A-7:  SPECIAL REMEDIAL CONSIDERATIONS APPLICABLE TO STOCK

**(Reference Section 4I00(b))**

When there is a finding of discrimination in the awarding of stock or stock options, the following considerations apply to remedy.

## I. STOCK AWARDS - VESTED

When the discrimination was in the awarding of vested stock and the vesting date has not yet occurred, the victim is simply awarded the number of shares he or she would have received, absent discrimination, with the same vesting date as other stock recipients.

> Example:  Absent discrimination, on June 1, 2021, the victim would have received 100 shares of stock with a vesting period of three years.  The remedy would be to immediately award the victim 100 shares of stock with a vesting date of June 1, 2021.

Where the vesting date has passed, the remedy will be calculated as indicated in II below, with the vesting date considered the date the victim would have received the stock, absent discrimination.

## II. STOCK AWARDS - ONE-TIME BONUS

1. <u>Shares of Stock:</u>

   a.  Establish the number of shares (or additional number of shares) the discriminatee would have received, absent discrimination, and the date(s) he or she would have received them.

   b.  Find the dollar value of that number of shares as of the date, absent discrimination, the discriminatee would have the shares and the current dollar value.  Take the higher of the two figures, expressed as the number of current shares.

   > Example:  Absent discrimination, the discriminatee would have received 100 additional shares of stock.  On the date he or she should have received the stock, the share price was $20, for a total dollar value of $2,000.

   > Scenario A:  The stock has gone down to $10 a share, so the 100 shares are now worth only $1,000.  The discriminatee should receive $2,000 worth of stock at the current price; *i.e.*, 200 shares of stock.

   > Scenario B: The stock has gone up to $30 per share, so the 100 shares are now worth $3,000.  The discriminatee should receive 100 shares at the current price.

2. <u>Dividends:</u>

Federal Contract Compliance Manual (FCCM)

*a.* Determine the dollar amount of stock dividends (or additional stock dividends) the discriminatee would have received, absent discrimination, and add simple interest (see Appendix 7A).

Example:  Determine the dollar amount of dividends that would have been paid on the 100 shares of stock from the date the discriminatee should have received the stock to present and add simple interest.

## III. STOCK OPTIONS

When the discrimination was in the awarding of stock options, the remedy will include awarding the discriminatee the number of stock options he or she would have received, absent discrimination.  The period of time he or she would have had to exercise those options will be calculated from the date he or she actually receives the options.

Example:  On January 1, 2018, absent discrimination, the victim would have received an option to buy 100 shares of stock at any time over the following four years.  If settlement occurred on October 1, 2018, the victim would be able to exercise an option on the 100 shares of stock up until October 1, 2022.

CO's should consult with the national office for specific help and guidance on stock valuation.

Federal Contract Compliance Manual (FCCM)

**APPENDIX A-8:   INDEX FOR A COMPLAINT FILE**

**Remember to Index and Tab the Materials.**

**File 1: Complaint and Data Submitted by Complainant:** This file contains any information submitted by the complainant, including the envelope.  Materials include:

Right Side of Folder

- Complaint Form (CC-4) or letter of allegations
- Complainant's witness list
- Documents provided to support the allegation
- Interview of Complainant

Left Side of Folder

- CMS forms associated with the investigation
- Extension requests and responses

**File 2: Case Chronology, Correspondence and Meeting Notes:**  This file will contain all correspondence (e.g. letters and emails), including attachments submitted and meeting notes.  Correspondence includes any material resulting from contacts with the contractor, union, witnesses, consultants and memos to file (not investigative notes).

Right Side: Correspondence – The correspondence must be placed in reverse chronological order (latest correspondence on top).  As applicable, cross reference other files.

Left Side: Case Chronology Log – CC-53 (in chronological order and legible).

**File 3: Investigative Material:** This file will contain all investigative material pertaining to complaint findings.  Such data may include:

- The Investigative Plan
- The Investigative Report (on top)
- Interview (witness) statements
- Investigative notes
- Applications
- Personnel records
- Statistical evidence
- Comparative evidence
- Anecdotal evidence

**File 4: Medical/Veterans Documentation:** This file will contain any medical/veterans documentation, only if applicable.  Such data may include:

- Medical release
- Medical and disabled veteran status (e.g. DD-214)

Federal Contract Compliance Manual (FCCM)

- Medical coverage information
- Diagnosis or medical description of disabling condition
- Work restrictions
- For veterans, other coverage information, as needed (e.g. Armed Forces campaign badge information)

**File 5: Legal:** This file will contain any documents related to legal activity including:

- Notice of Results Investigation (NORI) (on top unless there is a Conciliation Agreement)
- Conciliation Agreements (on top if completed)
- Solicitor's opinions
- Joint Review Committee meeting notes and/or report
- Freedom of Information Act and Privacy Act determinations
- Enforcement recommendations
- Jurisdictional and contract coverage information (on the bottom)

**File 6: Employee Handbooks, Collective Bargaining Agreement and Miscellaneous:**  On the right side, this file will contain copies of any employee handbooks, collective bargaining agreements, fringe benefit information, leave policy booklets and any other similar contractor documents.  Any documents that do not fit the description of materials to be included in any other file will be placed here.

**File 7: Historical Review Results:**  This file will contain copies of any available closure letters and documents generated during previous complaint investigations of this establishment.  The closure letter for the current investigation will also be included here.

Federal Contract Compliance Manual (FCCM)

**APPENDIX A-9:   RETALIATION AND INTERFERENCE: COMPLAINT
PROCESSING OUTLINE AND CHECKLIST**

The OFCCP regulations implementing Executive Order 11246, Section 503 and VEVRAA, titled
"Intimidation and Interference"[427] state that a contractor "shall not harass, intimidate, threaten,
coerce or discriminate against any individual because the individual has engaged in or may
engage in" a protected activity.  This not only encompasses protection against retaliation but it
also provides protection against intimidation and interference that may not give rise to a
retaliation claim.  As such, examine complaint allegations to determine whether Title VII
principles regarding retaliation claims apply or the broader protection of OFCCP's regulations
against intimidation and interference is applicable.

Additionally, there is a difference in available remedies.  Compensatory and punitive damages
are not available under the laws OFCCP enforces but may be under Title VII and the ADA.
Complaints filed with OFCCP that could also be brought under Title VII or the ADA, as
enforced by EEOC, are dual filed for the purpose of complaint processing.

**A. RETALIATION**

When assessing possible retaliation under Executive Order 11246, Section 503 and VEVRAA,
OFCCP applies the same concepts, standards and analyses as EEOC.  There are three essential
elements of a retaliation claim: protected activity (opposition to discrimination or participation in
the filing or investigation of a complaint, compliance evaluation, hearing or other activity),
materially adverse action taken by the contractor, and causal connection between the protected
activity and the materially adverse action.  Each of these three elements is discussed below.

**1.  Protected Activity (participation in an EEO process or opposition to discrimination)**

    a.  Did the Complainant oppose discrimination?

- Did the Complainant explicitly or implicitly communicate to the contractor or another
  covered entity a belief that its activity constituted unlawful discrimination under E.O.
  11246, Section 503 or VEVRAA?

- If the protest was broad or ambiguous, would the complainant's protest reasonably
  have been interpreted as opposition to such unlawful discrimination?

- Did someone closely related to, or associated with, the Complainant oppose
  discrimination?

    b.  Was the manner of opposition reasonable?  Or was the manner of opposition done in so
       disruptive or excessive a manner as to be unreasonable?

---

[427] 41 CFR 60-1.32; 60-300.69; and 60-741.69.

Federal Contract Compliance Manual (FCCM)

- If the manner of opposition was not reasonable, the complainant is not protected under the anti-retaliation clauses.

c.  Did the Complainant have a reasonable good faith belief that the opposed practice violated the anti-discrimination laws or could do so if repeated?

- If so, the complainant is protected against retaliation, even if he or she was mistaken about the unlawfulness of the challenged practices.

- If not, the complainant is not protected under the anti-retaliation clauses.

d.  Did the Complainant participate in the complaint process or did the Complainant or someone closely related to or associated with the Complainant file a charge, or testify, assist, or participate in any manner in an investigation, proceeding, hearing, or lawsuit under the laws enforced by OFCCP?

- If so, the Complainant is protected against retaliation regardless of the validity or reasonableness of the original allegation of discrimination.

- The Complainant is protected against retaliation by a contractor for participating in the complaint process or other proceedings under the laws enforced by OFCCP even if that complaint involved a different contractor.

## 2.  Materially Adverse Action

a.  Did the contractor subject the Complainant to any kind of adverse treatment?

- Adverse actions undertaken after the Complainant's employment relationship with the contractor ended, such as negative job references, can be challenged.

- Although trivial annoyances are not actionable, more significant retaliatory treatment that is reasonably likely to deter protected activity is unlawful.  There is no requirement that the adverse action affect the terms, conditions or privileges of employment.

## 3.  Causal Connection

The causation standard requires the evidence to show that "but for" a retaliatory motive, the contractor would not have taken the adverse action.  The but-for causation standard does not require retaliation to be the sole cause of the action.  There can be multiple but-for causes and retaliation need be only one of the but-for causes of the materially adverse action in order to establish unlawful retaliation.

a.  Is there direct evidence that retaliation was a but-for cause of the adverse action?

i.  Did the company official admit that it undertook the adverse action because of the protected activity?

Federal Contract Compliance Manual (FCCM)

   ii. Did the company official express bias against the Complainant based on the protected activity? If so, is there evidence linking that statement of bias to the adverse action?

- Such a link would be established if, for example, the statement was made by the decision-maker at the time of the challenged action.

b. Is there circumstantial evidence that retaliation was a but-for cause of the adverse action?

c. Is there evidence raising an inference that retaliation was a but-for cause of the adverse action?

- Such an inference is raised, for example, if the adverse action took place shortly after the protected activity, as long as the decision-maker was aware of the protected activity before undertaking the adverse action.

- If there was a long period of time between the protected activity and the adverse action, determine whether there is other evidence raising an inference that a but-for cause of the adverse action was retaliation.

d. Has the contractor produced evidence of a legitimate reason for the adverse action unrelated to the protected activity?

e. Is the contractor's explanation a pretext designed to hide retaliation?

- Did the contractor treat similarly situated employees who did not engage in protected activity differently from the Complainant?

- Did the contractor subject the Complainant to heightened scrutiny after he or she engaged in protected activity?

- If, on the basis of all of the evidence, the CO is persuaded that retaliation was for a but-for cause of the adverse action, then "cause" must be found.

f. OFCCP must be able to show that the contractor would not have taken the same action, absent its retaliatory motive. If it cannot demonstrate that, then causation has not been established.

## B. SPECIAL REMEDIES ISSUES

a. Is it appropriate to seek temporary or preliminary relief pending final disposition of the complaint?

b. Is there a substantial likelihood that the challenged action will be found to constitute unlawful retaliation?

c. Will the retaliation cause irreparable harm to the Complainant and/or the OFCCP?

Federal Contract Compliance Manual (FCCM)

- Will the Complainant likely incur irreparable harm beyond financial hardship because of the retaliation?

- If the retaliation appears to be based on the Complainant's filing of a prior EEO complaint, will that retaliation likely cause irreparable harm to OFCCP's ability to investigate the Complainant's original complaint of discrimination?

- If there is a substantial likelihood that the challenged action will constitute retaliation and that retaliation will cause irreparable harm to the Complainant or the OFCCP, or both, contact the Regional Solicitor's (RSOL) office to ask about pursuing temporary or preliminary relief.

d. If the complaint is dually filed under Title VII or the ADA (or both), consult your RSOL to help determine whether compensatory and punitive damages are available and appropriate.

- Compensatory and punitive damages may be available for retaliation claims under all of the statutes enforced by the EEOC.

Federal Contract Compliance Manual (FCCM)

**APPENDIX A-10: INVESTIGATIVE REPORT**

(Name of complainant) v. (CMS #)

(Name of contractor)

1. **Basis:** Insert one or more as appropriate: Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended; or the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended.
2. **Contractor:** Insert the company name and address, the name of contractor's representative and that individual's contact telephone number.
3. **Contract Coverage:** Insert the contract number, agency name, date of award, duration of contract period, and place of performance, and attach copy of the contract.
4. **On-site Investigation:** Insert the date or dates.

**For Each Allegation:**

5. **Allegation(s):** Provide a statement of the allegation(s) under OFCCP's authority based on what the complainant alleged happened to him/her. Include the circumstances of the action as the complainant expressed them in the complaint and in the interview.
6. **Issue(s):** Identify the alleged discriminatory action(s) which gave rise to the complaint and the applicable regulatory citations.
7. **Rebuttal:** Include the contractor's explanation of what happened and why it happened, including the circumstances of the action.

8. **Findings of Fact:**
   a. Provide a description of contractor's relevant personnel policies and practices, and relevant union rules. Reference case file location of copies;
   b. Provide the results of review of documentary evidence and records. Reference case file location of copies;
   c. Summarize the relevant facts obtained from interviews of contractor officials. Reference case file location of interview notes; and
   d. Summarize the relevant facts obtained from interviews of other witnesses. Reference the case file location of interview notes.

9. **Analysis:** Provide an explanation of how and why the findings of fact confirm or refute the allegations.
10. **Conclusion:** Insert a statement as to whether the contractor has or has not committed a violation. Include a citation to the appropriate regulation.
11. **Remedy:** Use this section when a violation by the contractor is found to:
    a. Describe all the remedies the complainant should receive; and
    b. Describe the corrective actions the contractor must take regarding its policies and practices.

Federal Contract Compliance Manual (FCCM)

### APPENDIX A-11:  INFORMATION RELATED TO FILING SUIT UNDER TITLE VII OF THE CIVIL RIGHTS ACT, TITLE I OF THE ADA AND THE EQUAL PAY ACT

This information relates to filing suit in Federal or State court under Federal law.  If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.

**PRIVATE SUIT RIGHTS –**  **Title VII of the Civil Rights Act of 1964, as amended (Title VII) or the Americans with Disabilities Act of 1990, as amended (ADA)**

In order to pursue this matter further, you must file a lawsuit against the contractor(s) named in the complaint you submitted to the Office of Federal Contract Compliance Programs (OFCCP) **within 90 days of the date you receive the Notice of Right to Sue.**  Once this 90-day period is over, your right to sue based on the complaint covered by this Notice of Right to Sue will be lost. If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice of Right to Sue.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing the Notice of Right to Sue is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in your complaint to OFCCP or, to the extent permitted by court decisions, matters like or related to the matters alleged in your complaint to OFCCP.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the contractor has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS – Equal Pay Act (EPA)

EPA suits must be filed in court within two years (three years for willful violations) of the alleged EPA underpayment; back pay due for violations that occurred **more than two years (three years for willful violations) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from July 1, 2016 to December 1, 2016, you should file suit before July 1, 2018 (not December 1, 2018) in order to recover unpaid wages due for July 2016.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII or the ADA referred to above.  Therefore, if you also plan to sue under Title VII or the ADA, in addition to suing on the EPA claim, your suit must be filed within 90 days of the Notice of Right to Sue and within the two or three year EPA back pay recovery period.

Federal Contract Compliance Manual (FCCM)

**ATTORNEY REPRESENTATION – Title VII and the ADA**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do *not* relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND ASSISTANCE – All Statutes**

If you have any questions about your legal rights, including advice on which U.S. District Court can hear your case, you may contact an OFCCP representative at [*insert the name and phone number of OFCCP district or area office that investigated complaint*], who will coordinate with the Equal Employment Opportunity Commission (EEOC) to promptly obtain that information for you.  If you need help in finding a lawyer, we recommend contacting the bar association in your state and an OFCCP representative can also assist you with that in coordination with EEOC.  If you need to inspect or obtain a copy of information in OFCCP's file on your complaint, please request it promptly in writing and provide the OFCCP complaint number (as shown on your Notice of Right to Sue).  If you file suit and want to review the OFCCP complaint file, **please make your review request within six months of the Notice of Right to Sue.**  (Before filing suit, any request should be made within the next 90 days.)

If you file suit, please send a copy of your Court complaint to [*insert the name and address of EEOC office to which a copy of the dually filed complaint was sent, and which was notified of issuance of Notice of Right-to-Sue*].

Federal Contract Compliance Manual (FCCM)

### APPENDIX A-12:   "MACMILLAN" FACTORS CONCERNING SUCCESSOR EMPLOYER LIABILITY

Requests for a determination of successor liability should include responses to the factors listed below.  Responses should cite the source of the information and, where the source is written material, a copy of the relevant page(s) should be attached.  Information on these factors may be obtained from a number of sources, including the contractor, Standard and Poor's and other corporate guides, trade magazines, annual reports, collective bargaining agreements and the business section of local newspapers.

1.  Whether the Successor Company had Notice of the Charge.

    The date the alleged discriminatory act occurred, the date the complaint was filed and the dates concerning the transfer (announcement date, effective date of merger, acquisition, etc.).

2.  The Ability of the Predecessor to Provide Relief.

    Whether the predecessor continues to operate, and the extent and location of its new operations; whether the predecessor maintained any of its assets (what percentage and type); whether the transfer resulted from a bankruptcy action; and whether the predecessor could provide seniority, reinstatement, hiring, back pay, etc.

3.  Whether there has been a Substantial Continuity of Business Operations.

    The percentage of operating assets that were transferred to the successor; the status of the predecessor's patents, trademarks and operating name; whether there are corporate officers and members of the board of directors who are common to both the predecessor and the successor, etc.

4.  Whether the Successor Uses the Same Plant.

5.  Whether the Successor Uses the Same or Substantially the Same Workforce.

6.  Whether the Successor Uses the Same or Substantially the Same Supervisory Personnel.

7.  Whether the Same Jobs Exist Under Substantially the Same Working Conditions.

    Whether the organization of the departments, sections, etc., remain substantially the same; the percentage of old jobs maintained; whether personnel practices are substantially the same; and the status of any collective bargaining agreements, etc.

8.  Whether the Successor Uses the Same Machinery, Equipment and Methods of Production.

9.  Whether the Successor Produces the Same Product.

Federal Contract Compliance Manual (FCCM)

## APPENDIX A-13: TRANSMITTAL MEMORANDUM FOR AN ENFORCEMENT RECOMMENDATION

**(Compliance Evaluations)**

The memorandum transmitting a recommendation for enforcement arising from a compliance review will contain the following sections:

1. CONTRACTOR'S IDENTITY

   a. State the establishment's or functional unit's full name and mailing address, including the county in which it is located, and the names and titles of primary establishment, construction or functional unit contact persons (*i.e.*, top establishment or functional unit official, legal representative, EEO and Affirmative Action Coordinator).

   b. If the establishment or functional unit is part of a multi-establishment corporation, also state the corporate name and address, the names and titles of primary contact persons (as above), and describe the relationship between the establishment/functional unit and corporation, *e.g.,* unincorporated division or wholly owned subsidiary. The description of this relationship is critical when the establishment/functional unit itself does not hold a federal contract.

   c. Give any known information on the ownership makeup of the business and its legal address in the state in which it is incorporated. This information is often available in industrial directories and databases or from the Secretary of State's office (corporations).

2. CONTRACTOR'S BUSINESS

   Describe the contractor's main product(s), basic structure, total employment and major types of jobs.

3. PRIOR HISTORY

   Indicate whether and when the establishment or functional unit, or both, were previously reviewed or subjected to an OFCCP complaint investigation. Also note the outcome of any such review or investigation. Reference any relevant legal actions against the establishment or functional unit, or both (*e.g.,* pending Title VII suit, consent decree, etc.).

4. CONTRACT COVERAGE

   Describe the basis for OFCCP jurisdiction. For basic coverage requirements, under the Executive Order (EO) 11246, see 41 CFR 60-1.5(a); under Section 503, see 41 CFR 60-741.4; and under VEVRAA, see 41 CFR 300.4. If a violation asserted relates to a written AAP, for Executive Order 11246, see 41 CFR 60-2.1 (supply and service) and 41 CFR 60-4.1 (construction); for Section 503, see 41 CFR 60-741.40(b); and for VEVRAA, see 41 CFR 60-300-.40(a).

SER-640

Federal Contract Compliance Manual (FCCM)

As used below, the term federal contracts means federal prime contracts, subcontracts and federally assisted construction contracts and subcontracts.

a. Basic Contract Information (All Cases): List here (or in an attachment if voluminous) all known federal contracts held by the contractor during the review period and continuing to the present. For each such contract, give the information requested on page 2, item 5 of the Supply and Service SCER plus the goods, services, lease arrangements, etc. provided under the contract and any available information on whether there was a break or modification during the period the contract was in effect.

b. If coverage is based on contracts for indefinite quantities (for example, a blanket purchase order, a rate agreement, etc.) note: (1) the amounts ordered in each business year during the review period and continuing to the present, and (2) the identity and location of contracting officers and others who may be able to provide copies of invoices and other documents verifying coverage.

c. Additional Contract Information Where Actual or Potential Coverage Dispute: If coverage is or is anticipated to become an issue, state the grounds on which the contractor claims not to be covered, and any grounds you believe the contractor might assert. Then analyze the claim asserted and/or any potential claim. If you have questions or need assistance, consult with your Regional Solicitor (RSOL).

    i. Separate Entity Issue: If the contractor claims to be or not to be covered based on the fact it is a separate entity from the company holding the federal contract, it is critical to include information on the following factors concerning the relationship – whether:

- The entities have common ownership;

- The entities have common directors and/or officers;

- One entity has de facto day-to-day control over the other through policies, management or supervision of the entity's operations;

- The personnel policies of the entities emanate from a common or centralized source; and

- The operations of the entities are dependent on each other, *e.g.,* services are provided principally for the benefit of one entity by another and/or both entities share management, offices or other services.

    ii. Subcontract Issue: If coverage is based on a subcontract relationship with a prime government contractor, include:

- The identity of the prime contractor, including the contracting agency and the goods or services involved in the prime contract;

- Information demonstrating that the prime contractor is covered; and

Federal Contract Compliance Manual (FCCM)

- An analysis of how the subcontract meets at least one of the two prongs of the regulatory definition of covered subcontract.

iii. Serious Jurisdictional Question: If a serious question about jurisdiction is present or anticipated, obtain a complete copy of at least one contract which establishes coverage for the review period and continuing to the present from the contracting agency or the contractor. RSOL will not approve an enforcement recommendation without this documentation. A copy of the contract(s) establishing coverage must be included in the case file.

5. SUMMARY OF EVENTS

Indicate how the company was selected for review, and then list major review events, including current status. Major events include, for example, the date the AAP was received; the dates of the on-site; the dates of any Predetermination Notice, Notice of Violation, Show Cause Notice and 15-Day Notice; the period during which conciliation was attempted; and the date conciliation was terminated. In the case of a denial of access claim, OFCCP must show that the contractor was selected in accordance with a neutral plan.

6. LIST OF VIOLATIONS FOR WHICH ENFORCEMENT IS SOUGHT

List each violation for which enforcement is being sought under the subheadings of "Affirmative Action" or "Discrimination."

7. ANALYSIS OF VIOLATIONS

For each violation for which enforcement is sought, give the following analysis, specifically referring to the case file location by file and page number of the relevant portions of documents and interviews.

Note, however, that violations may be grouped in such a way as to result in a clearer and more succinct presentation of the case. For example, many affirmative action violations are interrelated and can more easily be described together, *e.g.,* problems with job group formation usually result in problems with utilization analysis, underutilization determinations and goals.

a. Violation: State the practice or action that constitutes the violation and identify the sections of the regulations and/or laws violated. In the case of a systemic discrimination finding, state the specific group affected, job(s) at issue, level of disparity in standard deviations, if there is relevant statistical data, and any relevant shortfall. Also, in appropriate cases, identify the component(s) of the selection process that caused the adverse impact.

b. Facts: Summarize factual findings. Reference the file and page location of data such as worksheets, statistical analyses, cohort analyses, salary analyses, medical evidence and contractor documents which are the basis for each factual finding.

SER-642

Federal Contract Compliance Manual (FCCM)

c. Analysis: Conduct an analysis to determine why the facts lead to a conclusion of violation. Where discrimination is the issue, analysis should be done using the appropriate theory and burden of proof.

Review the contractor's position and any data provided in support of its position (referencing file location), giving the reasons (referencing supporting documentation) for concluding that the contractor has not adequately responded to evidence of violation and/or that its position is a pretext for discrimination. Also determine if there are other contractor positions that could be raised in the future, and the overall strengths and weaknesses of the case.

d. Remedy: Describe the proposed remedy. Indicate the basis and support for the type of remedy proposed. Describe the contractor's position on remedy if this has been discussed with the contractor.

   i. Individually-based back pay: If a proposed remedy includes individually-based back pay, indicate the pay rate used (and, if from other than payroll records, its source), the method of computation and applicable interest rates. Include or attach a summary list of back pay due with the name of each affected class member, the period covered and amount due (referencing the file location of individual computation sheets).

   ii. Formula relief: If a proposed remedy includes a formula for relief, indicate the rationale for a formula approach, the basis for calculating the total amount due, including components of the calculations, and the method of allocating the total amount among class members.

e. SOL, JRC, RO and NO Opinions: If applicable, reference the tabbed file location of and summarize any Solicitor's, Joint Review Committee, regional and national office opinions and recommendations, and the action taken with respect to them.

8. CONCILIATION

Describe the conciliation efforts undertaken. Describe significant aspects of those efforts, *e.g.,* what was offered, by whom, rationale for rejecting and issues at impasse. Identify dates conciliation was attempted, the participant(s) and summarize the results, referencing the file location of meeting notes, pertinent correspondence, etc.

If, however, there has already been some discussion of conciliation with respect to particular violations earlier in the Transmittal Memorandum, (*e.g.,* the contractor's position on the violation/remedy, etc.), that discussion may be referenced in the memorandum section on conciliation efforts.

IMPORTANT: If conciliation sessions continue after the Transmittal Memorandum is prepared, it is critical that, at a minimum, an addendum be attached updating the status of negotiations (including any additional violations resolved (see item 10 below) and referencing the file location of pertinent meeting notes and correspondence. RSOL must receive all correspondence and other documents generated during these negotiations and be included in all settlement negotiations.

Appendix A-13 | 421

Federal Contract Compliance Manual (FCCM)

9.  CONCLUSIONS/RECOMMENDATIONS

Indicate the action being recommended.

10. ATTACHMENT – VIOLATIONS FORMALLY CITED BUT RESOLVED

In an Attachment to the Transmittal Memorandum, list any violations cited in one or more of the following documents that have been resolved as of the date the Transmittal Memorandum is prepared: Predetermination Notice, Notice of Violation, Show Cause Notice, Amended Show Cause Notice and 15-Day Notice.

Briefly describe the resolution, referencing the file location of documents that provide more information on the issue and its resolution.

CONTACT PERSONNEL

List the contacts for the contractor and OFCCP.

Federal Contract Compliance Manual (FCCM)

## Figures 1 –6

| Figure Number | Figure Title |
| --- | --- |
| F-1 | Compliance Check Control Sheet |
| F-2 | Case Chronology Log (CC-53) |
| F-3 | Combined Scheduling Letter and Itemized Listing |
| F-4 | Scheduling Letter and Itemized Listing for Section 503 Focused Review |
| F-5 | Form for Complaint Involving Employment Discrimination by Federal Government Contractors or Subcontractors |
| F-6 | Standard Text for Conciliation Agreement |

Federal Contract Compliance Manual (FCCM)

**FIGURE F-1: COMPLIANCE CHECK CONTROL SHEET**

**GENERAL INFORMATION**        **CMS Control #:**

**Establishment Name:**                    **Corporate Name:**

**Street Address:**                           **Street Address:**

**City, State, Zip Code:**                   **City, State, Zip Code:**

| Company Contacts | | Name | Title | Telephone Number |
|---|---|---|---|---|
| **Establishment** | CEO | | | |
| | EEO/AA | | | |
| **Corporate** | CEO | | | |
| | EEO/AA | | | |

| Outside Representation | Firm | Telephone Number |
|---|---|---|
| | | |

| Total Employees | Total Minority | Total Female |
|---|---|---|
| | | |

| **Type of Review** | **Multiple Facility** | **Last Review Date** |
|---|---|---|
| ___ Initial ___ Follow-Up | ____ Yes ____ No | /    / |

**DATES**

| Compliance Check Letter Mailed | On-site | Closure Letter Issued |
|---|---|---|
| /    / | /    / | /    / |

**FINDINGS**

| Inspected Items | Yes | No | N/A |
|---|---|---|---|
| • Information on prior year report | ___ | ___ | ___ |
| • Job advertisements, including evidence of job listings with the appropriate employment service delivery system (the state workforce agency job bank or the local employment service delivery system where the opening occurs) | ___ | ___ | ___ |
| • Accommodations for individuals with disabilities | ___ | ___ | ___ |

If an item is not applicable, indicate the reason here:

Figure F-1 | 424

Federal Contract Compliance Manual (FCCM)

**RECOMMENDATION FOR CLOSURE**

- If no items missing, leave blank.

- If prior year report missing (unless contractor was not covered in prior year), check under column #1.

- If job listings information missing, check under column #2.

- If accommodations information missing, check under column #3.

- If contractor refuses to grant access, check appropriate space.

| | #1<br><br>Prior Year Report | #2<br><br>Job Listings | #3<br><br>Accommodations |
|---|---|---|---|
| **Recordkeeping** | | | |

(Checking one of the above spaces will place the contractor into a pool for further evaluation.)

| **Failure to Grant Access (Explain)** | |
|---|---|

(Checking the space above will indicate the contractor will be selected for another compliance evaluation method.)

**Technical Assistance Needed:** __Yes __No

**Additional Pertinent Information:**

| | Compliance Officer | ADD | DD |
|---|---|---|---|
| **Signature** | | | |
| **Date** | | | |

Federal Contract Compliance Manual (FCCM)

**FIGURE F-2: CASE CHRONOLOGY LOG (CC-53)**

| NAME & ADDRESS OF CONTRACTOR/COMPLAINANT | | CASE EVALUATION No. |
|---|---|---|
| **NAME OF CHIEF EXECUTIVE OFFICER & PHONE NUMBER** | **NAME OF EEO COORDINATOR & PHONE NUMBER** | |

| DATE | PERSON CONTACTED Name and Title (*as appropriate*) | CHRONOLOGY Summary of Discussion or Action | OFCCP STAFF Name and Title (*as appropriate*) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Figure F-2 | 426

Federal Contract Compliance Manual (FCCM)

**FIGURE F-3:   COMBINED SCHEDULING LETTER AND ITEMIZED LISTING**

OMB NO. 1250-0003
Expires 03/31/2020

VIA CERTIFIED MAIL
(NUMBER)
RETURN RECEIPT REQUESTED

(Name of contractor official)
(Title of contractor official)
(Establishment Name)
(Street Address)
(City, State, Zip Code)

Dear (Name of contractor official):

The U.S. Department of Labor, Office of Federal Contract Compliance Programs (OFCCP),
selected your _____ [**Insert:** establishment located at (address), functional unit
(name or description of functional unit), or corporate headquarters located at (address)] for a
_____ [**Insert:** compliance review, functional affirmative action program (FAAP)
compliance review, or corporate management compliance evaluation (CMCE)]. We are
conducting this _____ [**Insert:** compliance review, FAAP compliance review, or
CMCE] under the authority of Executive Order (EO) 11246, Section 503 of the Rehabilitation
Act of 1973 (Section 503), the Vietnam Era Veterans' Readjustment Assistance Act of 1974
(VEVRAA) and their implementing regulations in 41 CFR Chapter 60.[428]  In addition to
determining your compliance with these authorities, we will also verify your compliance with the
regulations issued by the Veterans' Employment and Training Service (VETS) requiring
contractors and subcontractors covered by VEVRAA to file an annual report on their
employment and hiring of protected veterans.[429]

The compliance review may progress in three phases: a desk audit, an on-site review, and an off-
site analysis.  OFCCP describes the phases of a compliance review in its regulations at 41 CFR
Chapter 60.[430]  For the desk audit, please submit the following information:

---

[428] Executive Order 11246, 30 FR 12319, 3 CFR 339 (1964-1965), *as amended by* E.O. 11375, 32 FR 14303, 3
CFR, 1966-1970 Comp., p. 684, E.O. 12086, 43 FR 46501, 1978 Comp., p. 230 and E.O. 13279, 67 FR 77141, 3
CFR, 2002 Comp., p. 258, E.O. 13665, 79 FR 20749 and E.O. 13672, 79 FR 42971; Section 503 of the
Rehabilitation Act of 1973, *as amended,* 29 U.S.C. § 793; Vietnam Era Veterans' Readjustment Assistance Act
of 1974, *as amended*, 38 U.S.C. § 4212.

[429] 41 CFR Part 61-300 implements 38 U.S.C. § 4212(d), as amended by the Jobs for Veterans Act. The
implementing regulations require covered federal contractors to submit, at least annually, a report on veterans'
hiring and workforce representation to the Department of Labor. In addition, 41 CFR 60-300.60(c) provides that
if a contractor has not complied with any such reporting requirement, OFCCP will notify VETS.

[430] 41 CFR 60-1.20(a), 60-300.60(a), and 60-741.60(a).

Federal Contract Compliance Manual (FCCM)

1. a copy of your current Executive Order Affirmative Action Program (AAP) prepared in accordance with the requirements of 41 CFR § 60-1.40, and 41 CFR § 60-2.1 through § 60-2.17;

2. a copy of your current Section 503 AAP prepared in accordance with the requirements of 41 CFR § 60-741.40 through § 60-741.47;

3. a copy of your current VEVRAA AAP prepared in accordance with the requirements of 41 CFR § 60-300.40 through § 60-300.45; and

4. the support data specified in the enclosed Itemized Listing.

Please submit your AAP(s) and the Itemized Listing support data to the address listed on page one of this letter as soon as possible, but no later than 30 days from the date you receive this letter. Pursuant to 41 CFR §§ 60-1.12(e), 60-300.80(c), and 741.80(c), failure to preserve complete and accurate records constitutes noncompliance with your obligations as a federal contractor or subcontractor. Once the evaluation begins, you are required to maintain all personnel and employment records described in the regulations enforced by OFCCP until the final disposition of the evaluation.[431]

We encourage you to submit your information in an electronic format to reduce the amount of time it takes to complete our evaluation of your [Insert establishment, functional unit, or corporate headquarters]. Should you opt to email your submissions, use email address _____.

You should be aware that OFCCP may initiate enforcement proceedings if you fail to submit AAPs and support data that represent a reasonable effort to meet the requirements of the regulations in 41 CFR Chapter 60.

Please also be aware that OFCCP may use the information you provide during a compliance evaluation in an enforcement action. We may also share that information with other enforcement agencies within DOL, as well as with other federal civil rights enforcement agencies with which we have information sharing agreements.

Finally, the public may seek disclosure of the information you provide during a compliance evaluation. Under current law and regulations, OFCCP is required to comply with Freedom of Information Act, the Trade Secrets Act, the Privacy Act, and the 1987 Executive Order governing the disclosure of confidential commercial information.[432]

Please contact _____ at _____ if you have any questions concerning the compliance evaluation.

---

[431] 41 CFR 60-1.12(a), 60-300.80(a), and 60-741.80(a).
[432] 41 CFR 60-1.20(g); 60-300.81; 60-741.81; Freedom of Information Act, *as amended*, 5 U.S.C. § 552 (2009).

Federal Contract Compliance Manual (FCCM)

Sincerely,


(Name of District Director)
District Director

Enclosure (1)
Itemized Listing

Federal Contract Compliance Manual (FCCM)

**ITEMIZED LISTING**

**Executive Order 11246**

1. An organizational display or workforce analysis prepared according to 41 CFR § 60-2.11.

2. The formation of job groups (covering all jobs) consistent with criteria given in 41 CFR § 60-2.12.

3. For each job group, a statement of the percentage of minority and female incumbents as described in 41 CFR § 60-2.13.

4. For each job group, a determination of minority and female availability that considers the factors given in 41 CFR § 60-2.14(c)(1) and (c)(2).

5. For each job group, the comparison of incumbency to availability as explained in 41 CFR § 60-2.15.

6. Placement goals for each job group in which the percentage of minorities or women employed is less than would be reasonably expected given their availability as described in 41 CFR § 60-2.16.

**Section 503**

7. Results of the evaluation of the effectiveness of outreach and recruitment efforts that were intended to identify and recruit qualified individuals with disabilities as described in 41 CFR § 60-741.44(f).

8. Documentation of all actions taken to comply with the audit and reporting system requirements described in 41 CFR § 60-741.44(h).

9. Documentation of the computations or comparisons described in 41 CFR § 60-741.44(k)for the immediately preceding AAP year and, if you are six months or more into your current AAP year when you receive this listing, provide the information for at least the first six months of the current AAP year.

10. The utilization analysis evaluating the representation of individual with disabilities in each job group, or, if appropriate, evaluating the representation of individuals with disabilities in the workforce as a whole, as provided in 41 CFR § 60-741.45.  If you are six months or more into your current AAP year on the date you receive this listing, please also submit information that reflects current year progress.

**VEVRAA**

11. Results of the evaluation of the effectiveness of outreach and recruitment efforts that were intended to identify and recruit qualified protected veterans as described in 41 CFR § 60-300.44(f).

Federal Contract Compliance Manual (FCCM)

12. Documentation of all actions taken to comply with the audit and reporting system requirements described in 41 CFR § 60-300.44(h).

13. Documentation of the computations or comparisons described in 41 CFR § 60-300.44(k)for the immediately preceding AAP year and, if you are six months or more into your current AAP year when you receive this listing, provide the information for at least the first six months of the current AAP year.

14. Documentation of the hiring benchmark adopted, the methodology used to establish it if using the five factors described in § 60-300.45(b)(2). If you are six months or more into your current AAP year on the date you receive this listing, please also submit current year hiring data to measure against your benchmark.

**Support Data**

15. Copies of your Employer Information Report EEO-1 (Standard Form 100 Rev.) for the last three years.[433]

16. A copy of your collective bargaining agreement(s), if applicable. Include any other documents you prepared, such as policy statements, employee notices or handbooks, etc. that implement, explain, or elaborate on the provisions of the collective bargaining agreement.

17. Information on your affirmative action goals for the immediately preceding AAP year and, where applicable (see below), progress on your goals for the current AAP year.[434]

    For the immediately preceding AAP year, this report must include information that reflects:

    a. job group representation at the start of the AAP year (*i.e.*, total incumbents, total minority incumbents, and total female incumbents);

    b. the percentage placement rates (percent goals) established for minorities and women at the start of the AAP year; and

    c. the actual number of placements (hires plus promotions) made during the AAP year into each job group with goals (*i.e.*, total placements, total minority placements, and total female placements). For goals not attained, describe the specific good faith efforts made to remove identified barriers, expand equal employment opportunity, and produce measurable results.

If you are six months or more into your current AAP year on the date you receive this Scheduling Letter and Itemized Listing, please also submit information that reflects progress on

---

[433] 41 CFR 60-1.7.
[434] CFR 60-1.12(a), 60-2.1(c), and 60-2.16.

Figure F-3 | 431

Federal Contract Compliance Manual (FCCM)

goals established in your current AAP year, and describe your implementation of action-oriented programs designed to achieve these goals.[435]

18. Data on your employment activity (applicants, hires, promotions, and terminations) for the immediately preceding AAP year and, if you are six months or more into your current AAP year when you receive this listing, provide the information in (a) through (c) below for at least the first six months of the current AAP year. You should present this data by job group (as defined in your AAP) or by job title.[436]

   a. Applicants: For each job group or job title, this analysis must consist of the total number of applicants identified by gender and by race/ethnicity.[437]  For each job group or job title, applicants for whom race and/or gender is not known should be included in the data submitted.  However, if some of your job groups or job titles (most commonly, entry-level) are filled from the same applicant pool, you may consolidate your applicant data for those job groups or titles.  For example, where applicants expressly apply for or would qualify for a broad spectrum of jobs (such as "Production," "Office," etc.) that includes several job groups, you may consolidate applicant data.

   b. Hires: For each job group or job title, this analysis must consist of the total number of hires identified by gender and race/ethnicity.

   c. Promotions: For each job group or job title, provide the total number of promotions by gender and race/ethnicity.  Also, include a definition of "promotion" as used by your company and the basis on which they were compiled (e.g. promotions to the job group, from and/or within the job group, etc.).  If it varies for different segments of your workforce, please define the term as used for each segment.  If you present promotions by job title, include the department and job group from which and to which the person(s) was promoted.

   d. Terminations: For each job group or job title, provide the total number of employee terminations by gender and race/ethnicity. When presenting terminations by job title, include the department and job group from which the person(s) terminated.

19. Employee level compensation data for all employees (including but not limited to full-time, part-time, contract, per diem or day labor, and temporary employees) as of the date of the organizational display or workforce analysis.  Provide gender and race/ethnicity information and hire date for each employee as well as job title, EEO-1 Category and job group in a single file.[438]  Provide all requested data electronically, if maintained in an electronic format.  See Note 1, below.

---

[435] 41 CFR 60-1.12 and 60-2.17(c).

[436] 41 CFR 60-1.12, 60-2.11-12, 60-2.17(b)(2)and(d)(1), 60-3.4, and 60-3.15.

[437] The term "race/ethnicity" as used throughout the Itemized Listing includes these racial and ethnic groups: African-American/Black, Asian/Pacific Islander, Hispanic, American Indian/Alaskan Native, and White. You also have the option of submitting the requested data using the race and ethnic categories on the EEO-1 survey.

[438] 41 CFR 60-2.17(b)(3) and (d).

Federal Contract Compliance Manual (FCCM)

    a.  For all employees, compensation includes base salary and or wage rate, and hours worked in a typical workweek. Other compensation or adjustments to salary such as bonuses, incentives, commissions, merit increases, locality pay or overtime should be identified separately for each employee.

    b.  You may provide any additional data on factors used to determine employee compensation, such as education, past experience, duty location, performance ratings, department or function, and salary level/band/range/grade.

    c.  Documentation and policies related to compensation practices of the contractor should also be included in the submission, particularly those that explain the factors and reasoning used to determine compensation.

20. Copies of reasonable accommodation policies, and documentation of any accommodation requests received and their resolution, if any.

21. Your most recent assessment of your personnel processes, as required by 41 CFR § 60-300.44(b) and § 60-741.44(b), including the date the assessment was performed, any actions taken or changes made as a result of the assessment, and the date of the next scheduled assessment.

22. Your most recent assessment of physical and mental qualifications, as required by 41 CFR § 60-300.44(c)and § 60-741.44(c), including the date the assessment was performed, any actions taken or changes made as a result of the assessment, and the date of the next scheduled assessment.

**<u>NOTES</u>**

Note 1: If any of the requested information is computerized, you must submit it in an electronic format that is complete, readable, and useable. Please use caution when submitting large electronic files. Check with the OFCCP Compliance Officer and your system administrator to ensure adherence to administrative and system guidelines.

Note 2: According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 1250-0003. We estimate that the average time required to complete this information collection is 27.9 hours per response, including the time for evaluating instructions, searching existing data sources, gathering and maintaining the data needed, and completing and evaluating the collection of information.

Send any comments concerning this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the Office of Federal Contract Compliance Programs, Room C-3325, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

Federal Contract Compliance Manual (FCCM)

**FIGURE F-4:    SCHEDULING LETTER AND ITEMIZED LISTING FOR SECTION 503 FOCUSED REVIEW**

OMB No. 1250-0003
Expires 03/31/2020

Dear (Name of contractor official):

The U.S. Department of Labor, Office of Federal Contract Compliance Programs (OFCCP), selected your _____ [Insert: establishment located at (address), functional unit (name or description of functional unit), or corporate headquarters located at (address)] for a focused compliance review.  We are conducting this focused review under the authority of Section 503 of the Rehabilitation Act of 1973 (Section 503) and its implementing regulations in 41 CFR Chapter 60.[439]

A compliance evaluation may consist of any one or any combination of investigative procedures. OFCCP describes the phases of a compliance evaluation in its regulations at 41 CFR Chapter 60. For the purposes of this focused review desk audit, you are only required to submit the following information:

1.   A copy of your current Executive Order 11246 Affirmative Action Program (AAP) prepared in accordance with the requirements of 41 CFR 60-1.40, and 41 CFR 60-2.1 through 60-2.17;

2.   A copy of your current Section 503 AAP prepared in accordance with the requirements of 41 CFR 60-741.40 through 60-741.47;

3.   The formation of job groups (covering all jobs) consistent with criteria given in 41 CFR 60-2.12;

4.   Results of the evaluation of the effectiveness of outreach and recruitment efforts that were intended to identify and recruit qualified individuals with disabilities as described in 41 CFR  60-741.44(f);

5.   Documentation of all actions taken to comply with the audit and reporting system requirements described in 41 CFR 60-741.44(h);

6.   Documentation of the computations or comparisons described in 41 CFR 60-741.44(k)for the immediately preceding AAP year and, if you are six months or more into your current

---

[439] 41 CFR 60-741 – Affirmative Action and Nondiscrimination Obligations of Federal Contractors and Subcontractors Regarding Individuals with Disabilities

Federal Contract Compliance Manual (FCCM)

AAP year when you receive this listing, provide the information for at least the first six months of the current AAP year;

7.   The utilization analysis evaluating the representation of individual with disabilities in each job group, or, if appropriate, evaluating the representation of individuals with disabilities in the workforce as a whole, as provided in 41 CFR 60-741.45.  If you are six months or more into your current AAP year on the date you receive this listing, please also submit information that reflects current year progress;

8.   Copies of your Employer Information Report EEO-1 (Standard Form 100 Rev.) for the last three years;

9.   A copy of your collective bargaining agreement(s), if applicable.  Include any other documents you prepared, such as policy statements, employee notices or handbooks, etc. that implement, explain, or elaborate on the provisions of the collective bargaining agreement;

10.  Copies of reasonable accommodation policies, and documentation of any accommodation requests received and their resolution, if any;

11.  Your most recent assessment of your personnel processes, as required by 41 CFR 60-741.44(b), including the date the assessment was performed, any actions taken or changes made as a result of the assessment, and the date of the next scheduled assessment; and,

12.  Your most recent assessment of physical and mental qualifications, as required by 41 CFR 60-741.44(c), including the date the assessment was performed, any actions taken or changes made as a result of the assessment, and the date of the next scheduled assessment.

Please submit your AAP(s) and support data to the address listed on page one of this letter as soon as possible, but no later than 30 days from the date you receive this letter.  Pursuant to 41 CFR 60-1.12(e) and 741.80(c), failure to preserve complete and accurate records constitutes noncompliance with your obligations as a federal contractor or subcontractor.  Once the evaluation begins, you are required to maintain all personnel and employment records described in the regulations enforced by OFCCP until the final disposition of the evaluation.

We encourage you to submit your information in an electronic format to reduce the amount of time it takes to complete our evaluation of your [Insert establishment, functional unit, or corporate headquarters].  Should you opt to email your submissions, use email address _____.

You should be aware that OFCCP may initiate enforcement proceedings if you fail to submit AAPs and support data that represent a reasonable effort to meet the requirements of the regulations in 41 CFR Chapter 60.

Please also be aware that OFCCP may use the information you provide during a compliance evaluation in an enforcement action. We may also share that information with other enforcement agencies within DOL, as well as with other federal civil rights enforcement agencies with which we have information sharing agreements.

Federal Contract Compliance Manual (FCCM)

Finally, the public may seek disclosure of the information you provide during a compliance evaluation. Under current law and regulations, OFCCP is required to comply with Freedom of Information Act, the Trade Secrets Act, the Privacy Act, and the 1987 Executive Order governing the disclosure of confidential commercial information.

Please contact _____ at _____ if you have any questions concerning the compliance evaluation.

Sincerely,

(Name of District Director)
District Director

Case 3:22-cv-07182-WHA Document 39-1 Filed 10/18/23 Page 570 of 1025

Federal Contract Compliance Manual (FCCM)

**FIGURE F-5:** **FORM FOR COMPLAINT INVOLVING EMPLOYMENT DISCRIMINATION BY FEDERAL GOVERNMENT CONTRACTORS OR SUBCONTRACTORS**

THE MOST CURRENT VERSION OF THE COMPLAINT FORM IS AVAILABLE ON THE OFCCP WEBSITE.

Federal Contract Compliance Manual (FCCM)

**FIGURE F-6:  STANDARD TEXT FOR CONCILIATION AGREEMENT**

PAGE INTENTIONALLY LEFT BLANK

Figure F-6 | 438

Federal Contract Compliance Manual (FCCM)

## LETTERS L-1 – L-41

| Letter Number | Letter Title |
|---|---|
| L-1 | Sample Administrative Closure Letter for Supply & Service and Construction Compliance Evaluations |
| L-2 | Sample Inquiry Letter for Requesting Complaint Data From EEOC, and State and Local FEPs |
| L-3 | Sample Letter for Requesting Job Listing from Employment Service Delivery Systems |
| L-4 | Sample Inquiry Letter for Requesting Information on Pending Review from Veterans Employment and Training Service |
| L-5 | Notice of Closing: Compliance Evaluation (No Violations Found) |
| L-6 | Notice of Closing: Violations Found and Resolved |
| L-7 | Supply & Service On-site Confirmation Letter |
| L-8 | Sample Linkage Letter |
| L-9 | Construction Compliance Evaluation Notice |
| L-10 | Construction Outreach Letter for New Projects |
| L-11 | 10-Day Notice to Employer/Contractor |
| L-12 | 10-Day Notice to Complainant |
| L-13 | Letter to EEOC (Full or Partial Transfer of Complaint) |
| L-14 | Authorization for Release of Medical Information |
| L-15 | Letter Notifying Contractor of Investigation |
| L-16 | Letter Notifying Complainant of Investigation |
| L-17 | Inquiry Letter to U.S. Department of Justice or the U.S. Department of State |
| L-18 | Confirmation of Scheduling of On-site Investigation |
| L-19 | Letter to Contractor Confirming Complaint Resolution |
| L-20 | Letter to Complainant Confirming Complaint Resolution |
| L-21 | Notification of Results of Investigation: No Violation (Executive Order 11246, Section 503, or VEVRAA Complaint (Not Dual Filed - No Notice of Right to-Sue)) |
| L-22 | Notification of Results of Investigation and Notice of Right-to-Sue under Title I of the ADA or Title VII of the Civil Rights Act of 1964: No Violation (Dual Filed) |
| L-22A | Enclosure: Notice of Right-to-Sue Under Title I of the ADA or Title VII of the Civil Rights Act of 1964 |
| L-23 | Notice of Right-to-Sue Under Title I of the ADA or Title VII of the Civil Rights Act of 1964 (Issued Upon Request) |
| L-24 | Notice of Right-to-Sue Under Title I of the ADA or Title VII of the Civil Rights Act of 1964 (Administrative Closure) |
| L-25 | Notice of Results of Investigation: Violation |
| L-26 | Show Cause Notice: Failure to Submit Executive Order 11246, Section 503 or VEVRAA AAP(s) (Supply & Service) |

Federal Contract Compliance Manual (FCCM)

| Letter Number | Letter Title |
|---|---|
| L-27 | Show Cause Notice: Failure to Submit Acceptable Executive Order 11246, Section 503 or VEVRAA AAP(s) (Supply & Service) |
| L-27A | Sample Enclosure to Letter L-27 |
| L-28 | Show Cause Notice: Failure to Submit Employment Activity or Compensation Data for Desk Audit (Supply & Service Executive Order Compliance Evaluations) |
| L-29 | Show Cause Notice:  Failure to Submit Corrected Employment Activity and/or Compensation Data (Supply & Service Executive Order Compliance Evaluations) |
| L-30 | Show Cause Notice: Unresolved Violations (Compliance Evaluations) |
| L-30A | Sample Enclosure to Letter L-30 |
| L-31 | Show Cause Notice: Unresolved Violations (Complaint Investigations) |
| L-32 | Amended Show Cause Notice for Unresolved Violations (Compliance Evaluations) |
| L-33 | Show Cause Notice for Denial of Access (Compliance Evaluations & Complaint Investigations) |
| L-34 | Rescission of an Erroneously Issued Show Cause Notice |
| L-35 | Predetermination Notice |
| L-36 | Notice of Violation |
| L-37 | 15-Day Notice: Violation of a Conciliation Agreement |
| L-37A | Sample Enclosure to Letter L-37 |
| L-38 | Rescission of the 15-Day Notice |
| L-39 | Progress Report Response Letter |
| L-40 | Closure Letter for Substantive Violations (Where a Show Cause Notice was Issued) |
| L-41 | Closure Letter for Substantive Violations (No Show Cause Notice Issued) |

Federal Contract Compliance Manual (FCCM)

**LETTER L-1:  SAMPLE ADMINISTRATIVE CLOSURE LETTER FOR SUPPLY & SERVICE AND CONSTRUCTION COMPLIANCE EVALUATIONS**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Name of Establishment CEO or Construction Work Site CEO*]
[*Title of CEO*]
[*Establishment Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*Name of CEO*]:

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), recently scheduled a compliance evaluation of the equal employment opportunity policies and practices at your (*insert as appropriate:* establishment or construction work sites) located at (*insert establishment address or name of the geographic area for construction sites*).

This review has been administratively closed because (*insert reason for administrative closure such as "it has been less than 24 months since OFCCP completed its review of your establishment"*).

OFCCP appreciates the cooperation of you and your staff.

Sincerely,


(*insert name of district director*)
District Director

cc: [*insert name of the corporate CEO*]
    [*insert name of the designated representative*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-2: SAMPLE INQUIRY LETTER FOR REQUESTING COMPLAINT DATA FROM EEOC AND STATE AND LOCAL FEPS**

[*Date*]

[*Name/Title*]
[*Agency or Organization Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear_____:

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), scheduled a compliance evaluation for (*insert name of contractor*).

Our evaluation will assess the contractor's compliance with Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 793; the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, 38 U.S.C. 4212; and the implementing regulations for these authorities. These legal authorities prohibit employment discrimination and require affirmative action to provide equal employment opportunity without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, disability, or status as a protected veteran. Additionally, Executive Order 11246 prohibits federal contractors and subcontractors from taking adverse employment actions against applicants and employees for asking about, discussing, or sharing information about their pay or, in certain circumstances, the pay of their co-workers.

Please forward any information you have concerning complaints, charges or litigation filed against this contractor. We are also seeking any other information you may have concerning the EEO attitudes, policies and practices of the contractor that you believe we should consider during the compliance evaluation.

The evaluation will begin in approximately 30 calendar days. Therefore, OFCCP would appreciate receiving your prompt response to this inquiry. Please contact me at (*insert phone number*) should you have any questions or require additional information.

Sincerely,

(*insert name of compliance officer*)
Compliance Officer

Federal Contract Compliance Manual (FCCM)

**LETTER L-3:  SAMPLE LETTER FOR REQUESTING JOB LISTING FROM EMPLOYMENT SERVICE DELIVERY SYSTEMS (INCLUDING AMERICAN JOB CENTERS)**

[*Date*]

[*Name/Title*]
[*Agency or Organization Name*]
[*Street Address*]
[*City, State, Zip Code*]


Re: Request for Job Listings

Dear (*insert name*):

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), scheduled the below-listed company for a compliance evaluation under Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended (29 U.S.C. 793); and the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended (38 U.S.C. 4212); and the implementing regulations at 41 CFR chapter 60.

(*insert contractor's name and mailing address*)

As a part of the compliance evaluation, OFCCP must determine whether the company named above listed suitable job openings with the appropriate employment service delivery system, as required (this includes state workforce agencies and local American Job Centers).  To determine the contractor's compliance with the mandatory job listing requirements, we are requesting that you provide this office with the below information.

- The specific job orders placed with your office by the contractor for the past two years; and

- Confirmation that the contractor provided information about its openings in a manner and format that allowed your office to provide priority referral of veterans.

Also, provide us with any other information related to the contractor's compliance with its job listing obligations of which you may be aware.  Please contact me at (*insert phone number*) should you have any questions or require additional information.

Thank you for your cooperation.

Sincerely,


(*insert name of compliance officer*)
Compliance Officer

---

Federal Contract Compliance Manual (FCCM)

**LETTER L-4:  SAMPLE INQUIRY LETTER FOR REQUESTING INFORMATION ON PENDING REVIEW FROM VETERANS EMPLOYMENT AND TRAINING SERVICE**

[*Date*]

[*Name/Title*]
[*DOL VETS Regional Office*]
[*Street Address*]
[*City, State, Zip Code*]


Dear (*insert name*):

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), is conducting a compliance review of (*insert name of contractor*).

As a federal contractor, this company assumed obligations and responsibilities under the laws enforced by OFCCP requiring contractors to take affirmative action to employ protected veterans, and to list all employment openings as defined at 41 CFR 60-300.5 with the appropriate employment service delivery system.

Please provide any information you have concerning (*insert name of contractor*) compliance with its obligations including, but not limited to, information on complaints and job listings for the past year.  Your information should be sent to me at the above address or by email to (*insert email address*).

If you have any questions, please contact me at (*insert phone number*).  Thank you for your assistance in this matter.

Sincerely,


(*insert name of compliance officer*)
Compliance Officer

Federal Contract Compliance Manual (FCCM)

## LETTER L-5:  NOTICE OF CLOSING: COMPLIANCE EVALUATION (NO VIOLATIONS FOUND)

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of CEO*]
[*Title of CEO*]
[*Establishment Name*]
[*Street Address*]
[*City, State, Zip Code*]


Dear (*insert name of contractor's official*):

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), recently completed a compliance evaluation of your equal employment opportunity policies and practices at (*insert name and location of the establishment, construction work sites in the economic area under review or functional unit reviewed*).

During the compliance evaluation process, we found no apparent violations of Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended; the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended; or Executive Order 13496.

[*If applicable, commend the contractor for meeting EEO goals or using best practices.  For example:* We would like to recognize and commend (*insert contractor name*) for exceeding the hiring benchmark for protected veterans and disability utilization goal.  Please accept the attached listing of local recruitment sources to utilize as you continue to conduct positive outreach and recruitment.]

OFCCP appreciates the cooperation of you and your staff during the conduct of the compliance evaluation.

Sincerely,


(*insert name of district director*)
District Director

cc: [*insert names*]

SER-667

Federal Contract Compliance Manual (FCCM)

**LETTER L-6:  NOTICE OF CLOSING: VIOLATIONS FOUND AND RESOLVED**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of CEO*]
[*Title of CEO*]
[*Establishment Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear (*insert name of contractor's official*):

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), recently completed a compliance evaluation of your equal employment opportunity policies and practices at (*insert name and location of the establishment, construction work sites in the economic area under review or functional unit reviewed*).

During the compliance evaluation process, we identified and resolved the following violation(s): [*insert the technical violation(s) resolved during the compliance evaluation, including the appropriate regulatory citation and specific remedy*].  It is understood that this/these violation(s) will not recur.

There were no other apparent violations of Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended; or the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended; or Executive Order 13496.

OFCCP appreciates the cooperation of you and your staff during the conduct of the compliance evaluation.

Sincerely,

(*insert name of district director*)
District Director

cc: [*insert names*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-7:  SUPPLY & SERVICE ON-SITE CONFIRMATION LETTER**

*Sent Certified Mail, Return Receipt Requested*

*[Date]*
*[Name of Contractor Official]*
*[Title]*
*[Street Address]*
*[City, State, Zip Code]*

RE: *[Name of company/facility]*

Dear *(contractor official)*:

This letter confirms that the U. S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) will begin the on-site phase of the compliance evaluation of your facility located at [*facility address*] on [*date*] at [*time*].

During a preliminary review of [*name of company/facility*]'s scheduling letter submission, OFCCP identified at least the following areas for further investigation:

(1) [*e.g.*, *Hiring practices in the Technician I job group*]; and

(2) [*e.g., Compensation policies and practices for women in the following job groups: Engineer I, Project Architect, and Principal*].

Please note that these areas of investigation are based on preliminary indicators of potential violations identified during the desk audit.  OFCCP has not determined that [*name of company/facility*] is in violation of any laws.  Identification of these preliminary indicators does not limit the scope of OFCCP's authority to confirm compliance with other requirements or investigate other potential violations that it discovers during this compliance evaluation.

The on-site will begin with an entrance conference.  At a minimum, this should be attended by the highest-ranking official at the facility as well as the human resources official and, if separate, the equal employment opportunity official.  Upon the conclusion of the on-site, an exit conference will be conducted with the same participants present at the entrance conference.

As explained by [*compliance officer*] the initial on-site will include a facility inspection, interviews with managers, company officials and employees, and the review and collection of records and documents.  A private area will be required for conducting interviews and reviewing records.  Specific individuals to be interviewed as well as records required for review are identified in the attachment to this letter.

Since all requested information will become part of the official case file, it is crucial that photocopies of the original documents be made available to us during the on-site investigation.  The only exception would be actual personnel files.  Provided documents

Federal Contract Compliance Manual (FCCM)

should not have been redacted or edited in any way, and all provided personnel files should be original and complete.

Please be aware that these requests are not intended to be all-inclusive and could be expanded.  Furthermore, due to the limited amount of time that will be spent on-site at the facility, it is crucial that all of the information be prepared before the commencement of the on-site and submitted in an organized manner.

If you have any questions, please contact [*compliance officer*] at [*telephone number*] or [*e-mail address*].

Sincerely,

[*signature block of signing official*]

Attachment [*Note: no template is being provided for attachment as the information is specific to each contractor*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-8:  SAMPLE LINKAGE LETTER**

[*Date*]

[*Name of Resource Head or Contact*]
[*Title of Resource Head or Contact*]
[*Resource Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear (*insert name*):

(*Select either Paragraphs 1 and 3 or Paragraphs 2 and 3*)

*Paragraph 1:*

As we discussed on (*insert date*), the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) recommended and (*insert name and location of the establishment reviewed*) agreed to use your services to recruit applicants as part of their effort to meet their federal contractor affirmative action goals or needs as established under laws enforced by OFCCP. The specific job titles for which applicants are sought and the number of projected vacancies are listed below:

| Job Title | Projected Vacancies |
|---|---|
| (job title name) | (insert #) _____ |
| (job title name) | (insert #) _____ |

**OR**

*Paragraph 2:*

During a recent compliance review, the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) recommended and (*insert name and location of the establishment reviewed*) agreed to use your services to recruit applicants as part of their effort to meet their federal contractor affirmative action goals or needs as established under laws enforced by OFCCP.  The specific job titles for which applicants are sought and the number of projected vacancies are listed below:

| Job Title | Projected Vacancies |
|---|---|
| (job title name) | (insert #) _____ |
| (job title name) | (insert #) _____ |

*Paragraph 3:*

The company is a covered federal contractor that engages in affirmative action to ensure equal employment opportunity for all applicants and employees regardless of race, color, religion, sex, sexual orientation, gender identity, national origin, disability or protected veteran status.  All qualified applicants referred by you will be considered.

Federal Contract Compliance Manual (FCCM)

We hope that you will engage in a collaborative working relationship with (*insert name of the establishment reviewed*).  Ideally, this relationship should benefit the company seeking workers, as well as qualified individuals who are seeking meaningful work.  We request that you contact (*insert contact name*) with (*insert name of the establishment reviewed*) at (*insert phone number*) to discuss how you can assist with their employment needs.

Sincerely,


(*insert name of compliance officer*)
Compliance Officer

cc:  (*insert name of the OFCCP regional linkage coordinator*)
     (*insert name of the contractor*)

Federal Contract Compliance Manual (FCCM)

**LETTER L-9:  CONSTRUCTION COMPLIANCE EVALUATION NOTICE**

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

(*Date*)

(*Name of Senior Contractor Official*)
(*Title of Senior Contractor Official*)
(*Contractor Name*)
(*Street Address*)
(*City, State, Zip Code*)

Dear (*Name of Senior Contractor Official*):

The U.S. Department of Labor, Office of Federal Contract Compliance Programs (OFCCP), selected your construction projects located in the *(as appropriate, insert either 1) the name(s) of Standard Metropolitan Statistical Area(s) (SMSA) **or** 2) the name of the non-SMSA(s))* for a compliance evaluation.  The purpose of this evaluation is to determine if your company is in compliance with its equal employment opportunity (EEO) obligations under Executive Order 11246, as amended.

As you are aware from your previous communications with OFCCP, the on-site compliance evaluation will begin on (*insert date*) at your (*insert address or other location*) and it covers your employment policies, practices and EEO activities during the review period of (*insert date*) through (*insert date*).  The compliance evaluation will cover all of your construction projects, *i.e.*, nonfederal, federal and federally assisted projects within the geographic area(s) described above.

While on-site, you should expect OFCCP to request to review and copy various documents, in the form in which you maintain them, related to your employment policies, practices and EEO activities.  This information is needed in order for OFCCP to assess your compliance with Executive Order 11246, including the affirmative action steps required to provide equal opportunity in each trade employed on your construction projects within the geographic area(s) described above. You can find more details about these affirmative action obligations at 41 CFR Part 60-4.  This evaluation will assess your efforts to prevent discrimination and take affirmative action, and the records you maintain to document these efforts.

[*INSERT THIS PARAGRAPH IF THE CONTRACTOR IS SUBJECT TO SECTION 503 and VEVRAA*] The evaluation will also assess the state of your company's compliance with its affirmative action and nondiscrimination obligations under Section 503 of the Rehabilitation Act of 1973, as amended (Section 503), and the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended (VEVRAA).  You can find more details about these obligations at 41 CFR Part 60-300 (VEVRAA) and 41 CFR Part 60-741 (Section 503).

You can facilitate the compliance evaluation process by making the personnel responsible for your employment processes, including assessing EEO compliance, and an officer of (*name of company*) available during our on-site review.  Provided with this letter is an attachment,

Federal Contract Compliance Manual (FCCM)

*Attachment A: Sample On-site Documents*.  This attachment is a nonexhaustive list of some of the documents OFCCP could request during the on-site portion of the compliance evaluation. Please do not generate, collect, copy and send any documents listed on this attachment to our office because the attachment is not a records production request.  It is, however, informational in that it should provide you some idea of what information OFCCP could request during the on-site review.

During the on-site visit, an OFCCP compliance officer will specifically request documents and records to review and copy, as necessary.  In addition, the compliance officer will visit one or more of your construction sites and interview some of your employees.  Additional records pertaining to the requirements of 41 CFR Chapter 60 may be requested at a later point in the compliance evaluation.

If you have any questions, please contact compliance officer (*insert name of the compliance officer*) in the (*insert name of field office*) office of OFCCP at (*insert telephone number*).

Sincerely,


(*Name of district director*)
District Director

Enclosure

Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 586 of 1025

Federal Contract Compliance Manual (FCCM)

**ENCLOSURE: SAMPLE ON-SITE DOCUMENTS**

1) Original payroll records for the specified review period.

   a) Payroll records that identify the total hours worked by each trade in the geographic area(s), either the Standard Metropolitan Statistical Area(s) (SMSA) or the non-SMSA(s), and include the sex, race and ethnicity of each employee.

   b) Payroll records that identify the overtime hours worked by each trade in the geographic area(s) described above, and include the sex, race and ethnicity of each employee.

2) Personnel records for the specified review period.

   a) Personnel records that list the apprentices working in the applicable geographic area(s) during the specified review period, including the name of each apprentice employee, job classification, sex, race and ethnicity of the employee.

   b) Personnel records that list applicants (including referrals from any source), hires, promotions, layoffs, recalls and terminations (voluntary or involuntary) of construction trade employees during the review period in the applicable geographic area(s).  The list should also include the name, job classification, sex, race and ethnicity of each employee.

3) Documents demonstrating how the company implements each of the specific affirmative action steps outlined in 41 CFR 60-4.3(a) paragraph 7(a-p).

4) Subcontracts more than $10,000 for federal and federally assisted contracts for the review period.

5) EEO Policy statement used by your company.

6) Notifications sent to OFCCP of subcontract awards of more than $10,000.

7) Records of notices to the company's subcontractors about their EEO obligations.

8) EEO-1 Reports for the last two years.

9) A list of all construction projects (federal, nonfederal and federally assisted) by name and location in the applicable geographic area(s) during the specified review period, including identifying whether each project is commercial or residential.  For each federally funded project, OFCCP may seek additional information such as:

   a) Funding agency;

   b) Amount of contract;

   c) Date of award;

   d) Date construction started;

   e) Percent completed; and

Federal Contract Compliance Manual (FCCM)

    f)   Estimated completion date.

10) Communications with unions and community organizations regarding the company's EEO obligations and recruitment efforts to hire women and minorities, qualified individuals with disabilities if the company is subject to Section 503 and protected veterans if the company is subject to VEVRAA.

11) Records identifying trade organization affiliations and unions that provide workers for the company's construction contracts, including a copy of any applicable collective bargaining agreements.

12) Written affirmative action programs for individuals with disabilities and protected veterans, if the company is subject to Section 503 and VEVRAA.

13) Copies of purchase orders.

14) Copies of employment advertisements.

Federal Contract Compliance Manual (FCCM)

## LETTER L-10: CONSTRUCTION OUTREACH LETTER FOR NEW PROJECTS

VIA REGULAR MAIL

[*Date*]

[*Name of Senior Contractor Official*]
[*Title of Senior Contractor Official*]
[*Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*Name of Senior Contractor Official*]:

Your company, [*insert name of company*], was awarded a contract or subcontract to work on the [*insert name of the construction project or location of the project*] construction project funded by the federal government. As a result, your company falls under the enforcement jurisdiction of the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP). This letter is to provide you information regarding your obligations as an employer working on federal contracts concerning equal employment opportunity (EEO) and affirmative action.

As a civil rights enforcement agency, OFCCP administers and enforces three equal employment opportunity laws that apply to federal contractors and subcontractors: Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 793 (Section 503); and the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, 38 U.S.C. 4212 (VEVRAA). These EEO laws prohibit federal contractors from discriminating on the basis of race, color, religion, sex, sexual orientation, gender identity, national origin, disability and status as a protected veteran. Additionally, Executive Order 11246 prohibits federal contractors and subcontractors from taking adverse employment actions against applicants and employees for asking about, discussing or sharing information about their pay or the pay of their co-workers, subject to certain limitations.

You are required to retain personnel and employment records for a certain amount of time. If requested, you must also grant OFCCP access to these records and your worksite. You must prominently post the *EEO is the Law* poster and supplement, and the *Employee Rights under the National Labor Relations Act* posters informing your applicants and employees of their rights. In addition, you must post the *Pay Transparency Nondiscrimination Provision* either physically or electronically and include it in your employee handbook or manual.

Federal construction contractors are required to comply with affirmative action specifications for minorities and women related to outreach and recruitment, employee development and training. These specifications can be found in the Code of Federal Regulations (CFR) at Title 41, Part 60-4. Federal construction contractors with a contract that meets the coverage threshold requirements also have affirmative action obligations concerning protected veterans and qualified individuals with disabilities under VEVRAA and Section 503. You can find more details about these obligations at 41 CFR Part 60-300 (VEVRAA) and 41 CFR Part 60-741 (Section 503).

Federal Contract Compliance Manual (FCCM)

In addition, our Help Desk (1-800-397-6251) and district offices are available to answer questions or to provide compliance assistance.  If you have any further questions, please contact our office at [*insert office phone number and address*] and please visit our website at https://www.dol.gov/ofccp/ .

Sincerely,


[*Name of district director*]
District Director

Federal Contract Compliance Manual (FCCM)

## LETTER L-11: 10-DAY NOTICE TO EMPLOYER/CONTRACTOR

[*Date*]

[*Name and address of employer*]

Complaint Reference Number: [*number*]

Dear [*insert name of Employer/Contractor Official*]:

This is to notify you that on [*insert date*] we received a complaint from [*insert as appropriate: name of complainant - or - authorized representative*] alleging a violation of [*insert: Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended (Section 503); or the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended (VEVRAA)*].

[*Insert for Executive Order 11246 and/or Section503 complaints only: Under the provisions of a Memorandum of Understanding Between the Office of Federal Contract Compliance Programs (OFCCP) and the U.S. Equal Employment Opportunity Commission (EEOC) effective November 7, 2011, and/or regulations at 41 CFR Part 60-742*], the complaint is deemed simultaneously dual filed as a charge under [*insert as appropriate: Title VII of the Civil Rights Act of 1964, as amended (Title VII); and/or Title I of the Americans with Disabilities Act, as amended (ADA)*].

The complainant alleges that [*insert the name of the employer, and the alleged discriminatory actions or practices, including the date(s) of occurrence and relevant place and circumstances*].

[*Insert for Executive Order 11246 and/or Section 503 complaints only: Title VII and/or the ADA*] requires us to send you notice of the filing within 10 calendar days of our receipt of a complaint.

*Insert whichever of the following statements are applicable:*

- We have determined that OFCCP has jurisdiction to address the allegations of employment discrimination stated in the complaint and will proceed with an investigation.

- [*Insert for full transfer –EEOC better suited to investigate*] We have closed the complaint because it contains matters better suited to investigation and resolution by the EEOC under one or more of the laws it enforces. The complaint, in its entirety, has been transferred to the EEOC for investigation.

- [*Insert for full transfer – no jurisdiction*] We have closed the complaint because we are unable to establish jurisdiction. The complaint has been referred to the [*EEOC or other appropriate agency*] for consideration.

- [*Insert for partial transfer*] We have determined that OFCCP has jurisdiction over and will retain for investigation the following allegations: [*insert description of retained allegations and their bases*]. However, OFCCP has transferred to [*insert EEOC or other appropriate agency*] the following allegations: [*insert description of allegations being transferred*].

SER-679

Federal Contract Compliance Manual (FCCM)

- We have not yet determined whether OFCCP has jurisdiction to investigate the complaint.  If we establish jurisdiction over the employer, OFCCP will investigate the complaint under [*insert: Executive Order 11246, Section 503 and/or VEVRAA; or, if complaint is dual filed, insert:  Executive Order 11246 and Title VII and/or Section 503 and the ADA*].  If we are unable to establish jurisdiction over all or part of the complaint, we will inform you.

Please be advised that both OFCCP and EEOC regulations require that you retain all records pertinent to this complaint and ensure that there is no retaliation because of this complaint.

In the event this complaint was filed with the EEOC under [*insert: Title VII and/or the ADA*], you may receive a similar 10-day notice from the EEOC.  If so, please contact [*name*] at [*telephone number*] immediately and we will resolve the matter with the EEOC.

Sincerely,


[*Name of regional director*]
Regional Director

Federal Contract Compliance Manual (FCCM)

**LETTER L-12:  10-DAY NOTICE TO COMPLAINANT**

[*Date*]

[*Name and address of
Complainant or
Authorized Representative*]

Complaint Reference Number: [*number*]

Dear [*insert Name of Complainant or Authorized Representative*]:

This is to acknowledge receipt of your complaint against [*insert: name of employer*] [*insert if appropriate: on behalf of (name of person)] alleging a violation of [insert: Executive Order 11246, as amended; and/or Section 503 of the Rehabilitation Act of 1973, as amended (Section 503); and/or Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended (VEVRAA)*].

[*Insert for Executive Order 11246 and/or Section503 complaints only: Under the provisions of a Memorandum of Understanding Between the Office of Federal Contract Compliance Programs (OFCCP) and the U.S. Equal Employment Opportunity Commission (EEOC) effective November 7, 2011; and/or regulations at 41 CFR Part 60-742*], the complaint is deemed simultaneously dual filed as a charge under [*insert as appropriate:* Title VII of the Civil Rights Act of 1964, as amended (Title VII); and/or Title I of the Americans with Disabilities Act, as amended (ADA)].

[*Insert for Executive Order 11246 and/or Section 503 complaints only: Title VII and/or the ADA*] requires us to provide the employer against whom a complaint is filed with a notice of filing within 10 calendar days of our receipt of a complaint.  Enclosed is a copy of the notice forwarded to [name of employer] concerning your complaint.

[*Insert whichever of the following statements are applicable*]

- We have determined that OFCCP has jurisdiction to address all of the allegations of employment discrimination stated in your complaint and will proceed with an investigation.

- [*Insert for full transfer*] We have closed your complaint because [*the complaint alleges individual discrimination covered by Title VII; the complaint alleges a violation of the Age Discrimination in Employment Act; or the complaint alleges a violation of the ADA and individual discrimination covered by Title VII and/or the Age Discrimination in Employment Act; and/or the complaint alleges discrimination under Title II of the Genetic Information Nondiscrimination Act of 2008.*]  The complaint, in its entirety, has been transferred to the EEOC for investigation.

- [*Insert for full transfer*] We have closed your complaint because we are unable to establish jurisdiction.  Your complaint has been referred to the [*EEOC or other appropriate agency*] for consideration.

Federal Contract Compliance Manual (FCCM)

- [*For partial transfer*] We have determined that OFCCP has jurisdiction over and will retain for investigation the following allegations: [*insert description of retained allegations and their bases*]. However, OFCCP has transferred to [*insert EEOC or other appropriate agency*] the following allegations: [*insert description of allegations being transferred*].

- We have not yet determined whether OFCCP has jurisdiction to investigate your complaint. We will notify you immediately if we establish jurisdiction over the employer. OFCCP will investigate your complaint under [*insert: Executive Order 11246, Section 503, and/or VEVRAA; or, if complaint is dual-filed, insert: Executive Order 11246 and Title VII and/or Section 503 and the ADA*]. If we are unable to establish jurisdiction over all or part of the complaint, we will inform you.

Please be sure to contact [*compliance officer*] at [*telephone number*] if you change your address or telephone number.

Sincerely,


[*Name of regional director*]
Regional Director

Enclosure: 10-Day Notice to Employer/Contractor

Federal Contract Compliance Manual (FCCM)

**LETTER L-13:   LETTER TO EEOC (FULL OR PARTIAL TRANSFER OF COMPLAINT)**

[*Date*]

[*Name and Address of
Equal Employment Opportunity Commission Office*]

Complaint Reference Number: [*number*]

[*EEO Representative*]:

Enclosed for your consideration is a complaint filed under [*insert: Title VII of the Civil Rights Act of 1964, as amended (Title VII); Title I of the Americans with Disabilities Act, as amended; the Age Discrimination in Employment Act of 1967, as amended; and/or Title II of the Genetic Information Nondiscrimination Act of 2008.*]

[*Insert for full transfer of complaint*] The Office of Federal Contract Compliance Programs (OFCCP) has closed the complaint because [*Insert, as appropriate: we are unable to establish jurisdiction or it is better suited to investigation and resolution by EEOC*]. With this letter, OFCCP is transferring the complaint, in its entirety, to EEOC.

[*Insert for partial transfer of complaint*]: With this letter, OFCCP is transferring the following complaint allegation(s) to EEOC for investigation and processing: [*insert: descriptions of each allegation being transferred*].  OFCCP has retained and will investigate the following complaint allegation(s) [*insert; descriptions of each allegation being retained.*]

We have enclosed, for your information, copies of the letters sent to the employer and the complainant informing them of the transfer of [*insert: this matter or the referenced allegations*] to your office.

If you have any questions, please call me at [*phone number*].

Sincerely,


[*Insert regional director or designee's name*]
Regional Director

Enclosures: Complaint Form CC-4
Notices to Complainant and Employer

Federal Contract Compliance Manual (FCCM)

**LETTER L-14: AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION**

Re: Complaint against [*insert name of contractor*]
    OFCCP CMS #

I hereby authorize the release to the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), of any medical information needed by OFCCP in its investigation of the complaint of discrimination which I filed on [*insert date*]) against the above-named contractor.


_____

PRINTED/TYPED NAME OF PATIENT


_____   _____

SIGNATURE OF PATIENT           DATE

Federal Contract Compliance Manual (FCCM)

**LETTER L-15:   LETTER NOTIFYING CONTRACTOR OF INVESTIGATION**

*Certified Mail, Return Receipt Requested*

[*Date*]

[*Name of CEO*]
[*Title of CEO*]
[*Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear (*insert name of contractor official*):

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), received a complaint filed under the provisions of (*insert one or more of the appropriate legal authorities enforced by OFCCP*).  A copy of the complaint is enclosed.

This office has been assigned the complaint for investigation under the (*insert the name of one or more of the appropriate legal authorities enforced by OFCCP underlying the complaint*) and its implementing regulations at (*insert the appropriate CFR part and section citations for the complaint*).  The applicable regulations may be found on the U.S. Department of Labor's website at https://www.dol.gov/general/cfr/title_41 (see Chapter 60).  The laws and regulations enforced by OFCCP prohibit federal contractors and subcontractors from discriminating in employment because of race, color, religion, sex, sexual orientation, gender identity, national origin, disability or status as a protected veteran.  They also require federal contractors and subcontractors to take affirmative action to employ and advance in employment individuals from these particular groups.  In addition, contractors and subcontractors are prohibited from discriminating against applicants or employees because they inquired about, discussed or disclosed their compensation or that of others, subject to certain limitations.

As required by OFCCP's regulations, please retain full, accurate records relevant to this complaint and ensure that there is no harassment, intimidation, threat, coercion or discrimination against the complainant, or any participant in the investigation [*insert the appropriate citations:* 41 CFR 60-741.69 and 60-741.80-.81, 41 CFR 60-300.69 and 60-300.80-.81, 41 CFR 60-1.32 and 1.43].

This letter is a notice that OFCCP is investigating the complaint; it neither prejudges the issues nor implies that your company violated any law.  It is also a notice to retain information that will later permit an expeditious investigation and resolution of this matter.

You may wish to review and attempt to resolve this complaint internally and, if you are successful in resolving it to the satisfaction of the complainant, we will need verification from the complainant.  However, OFCCP reserves the option to conduct its own investigation if, in its judgment, the circumstances warrant.

If you do not wish to make an attempt to resolve this matter, or you are unsuccessful in doing so, you may wish to send us a statement of position or evidence concerning the complaint.  Any

Federal Contract Compliance Manual (FCCM)

material you submit will be included in the case file, and will be considered when the complaint is investigated.  Please note that during our investigation, we may need to examine your current Affirmative Action Program required under 41 CFR [*insert appropriate citations:*  41 CFR 60-741, Subpart C; 41 CFR Part 60-300, Subpart C; 41 CFR Part 60-2].

If you have any questions, you may contact [*insert name of compliance officer*] at [*insert telephone number*].

Sincerely,


[*insert name of district director*]
District Director

Enclosure: Complaint of [*insert name of complainant and CMS#*]

Federal Contract Compliance Manual (FCCM)

## LETTER L-16: LETTER NOTIFYING COMPLAINANT OF INVESTIGATION

*Certified Mail, Return Receipt Requested*

[*Date*]

[*Name of Complainant*]
[*Street Address*]
[*City, State, Zip Code*]

Re: Complaint against [insert name of company and CMS #]

Dear [*insert name of complainant*]:

This letter is to inform you that your complaint has been assigned to this office for investigation by the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP). We have notified the contractor of your complaint, provided the contractor a copy of the complaint, and advised the contractor of the opportunity to attempt to resolve the complaint if it wishes to do so. We also informed the contractor that our regulations require that all relevant records be retained; and that there be no harassment, intimidation, coercion or retaliation against you.

Please let us know immediately if the contractor and you resolve the complaint to your satisfaction, preferably in writing. In the meanwhile, we will schedule your complaint for investigation.

Please be sure to keep us advised of any change in your address or telephone number. If you have any questions, you may contact [*insert name of compliance officer*] at [*insert telephone number*].

Sincerely,


[*Name of district director*]
District Director

Enclosure: Copy of complaint for [*insert name of complainant and CMS#*] provided to the contractor

Federal Contract Compliance Manual (FCCM)

**LETTER L-17:   INQUIRY LETTER TO U.S. DEPARTMENT OF JUSTICE OR THE U.S. DEPARTMENT OF STATE**

[*Date*]

[*Name/Title*]
[*Agency or Organization Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear_____:

The U.S. Department of Labor' Office of Federal Contract Compliance Programs (OFCCP), recently received a complaint alleging employment discrimination based on (*insert protected basis)*  by (*insert name of contractor*).

OFCCP enforces Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 793; the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, 38 U.S.C. 4212.  These legal authorities prohibit employment discrimination and require affirmative action to provide equal employment opportunity without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, disability, or status as a protected veteran.  Additionally, Executive Order 11246 prohibits federal contractors and subcontractors from taking adverse employment actions against applicants and employees for asking about, discussing, or sharing information about their pay or, in certain circumstances, the pay of their co-workers.

Specifically, the complaint made the following allegations:

- (*Bullet out the allegations made by the complainant that OFCCP will investigate).*

Please forward any pertinent information you have concerning complaints, charges or litigation filed against this contractor. We are also seeking any other information you may have concerning the EEO attitudes, policies and practices of the contractor that you believe we should consider during the compliance evaluation.

OFCCP would appreciate receiving your prompt response to this inquiry.  Please contact me at (*insert phone number*) should you have any questions or require additional information.

Sincerely,


(*insert name of compliance officer*)
Compliance Officer

Federal Contract Compliance Manual (FCCM)

## LETTER L-18:   CONFIRMATION OF SCHEDULING OF ON-SITE INVESTIGATION

*Certified Mail, Return Receipt Requested*


[*Date*]

[*Name of Contractor Official*]
[*Title*]
[*Street Address*]
[*City, State, Zip Code*]

Re: Complaint of [*insert complainant's name and CMS #*]

Dear [*insert name of contractor official*]:

This letter confirms the telephone call of [*insert date*] between Compliance Officer [*insert name*] with the U.S. Department of Labor, Office of Federal Contract Compliance Programs (OFCCP) and [*insert name of contractor official*] scheduling the investigation of the above complaint filed under [*insert one or more of these authorities: Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended; or the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended*].

As agreed, the investigation is to begin on [*insert date*] at [*insert time and location*].  In the telephone call mentioned above, [*insert compliance officer's name and title*] requested that certain records and individuals be available during the visit.  These are listed in the attachment to this letter.

If you have any questions, please contact [*insert name of compliance officer*] at [*insert telephone number*].

Sincerely,


[*Name of district director*]
District Director

Attachment

Federal Contract Compliance Manual (FCCM)

**LETTER L-19:   LETTER TO CONTRACTOR CONFIRMING COMPLAINT RESOLUTION**

*Certified Mail, Return Receipt Requested*


[*Date*]

[*Name of Contractor Official*]
[*Title*]
[*Street Address*]
[*City, State, Zip Code*]


Re: Complaint of [*insert name of complainant and CMS #*]

Dear [*insert name of contractor official*]:

On behalf of the U.S. Department of Labor, Office of Federal Contract Compliance Programs, this correspondence confirms [*insert as appropriate: your letter or our telephone conversation*] of [*insert date of the letter or telephone call*] in which you informed us that the above complaint was resolved to the satisfaction of the complainant.  We have been in contact with the complainant who acknowledges that the parties reached a satisfactory resolution of the complaint.

We appreciate your efforts in resolving this matter.

Sincerely,


[*Name of district director*]
District Director

Federal Contract Compliance Manual (FCCM)

**LETTER L-20:   LETTER TO COMPLAINANT CONFIRMING COMPLAINT RESOLUTION**

*Certified Mail, Return Receipt Requested*

[*Date*]

[*Name of Complainant*]
[*Street Address*]
[*City, State, Zip Code*]

Re: Complaint against [*insert the name of company and CMS #*]

Dear [*insert name of complainant*]:

On behalf of the U.S. Department of Labor's Office of Federal Contract Compliance Programs, this correspondence confirms [*insert as appropriate: your letter or our telephone conversation*] of [*insert date*].  During the [*insert as appropriate: in your letter or during the call*] you stated that your complaint against the above company was resolved to your satisfaction.

If you are satisfied with the resolution of your complaint, please sign on the line indicated below and return this letter to us in the enclosed stamped envelope.

Sincerely,


[*Name of district director*]
District Director

Enclosure: Self-addressed stamped envelope

There has been a satisfactory resolution to my complaint filed against [*insert name of contractor*].  I have not been forced or coerced by the contractor, or any of its agents, into making this statement.

Signature _____

Date _____

Federal Contract Compliance Manual (FCCM)

**LETTER L-21:   NOTIFICATION OF RESULTS OF INVESTIGATION: NO
VIOLATION**

**(Executive Order 11246, Section 503, or VEVRAA Complaint (Not Dual Filed - no Notice
of Right-to-Sue))**

*Certified Mail, Return Receipt Requested*

[*Date*]

[*Complaint No.*]

COMPLAINANT

[*Complainant's Name*]
[*Street Address*]
[*City, State, Zip Code*]

CONTRACTOR

[*Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

On (*insert date*), the U.S. Department of Labor's Office of Federal Contract Compliance
Programs (OFCCP) investigated the allegations of (*insert type of discrimination*) made in the
complaint of (*insert name of the complainant*) filed on (*insert date*).  The investigation resulted
in the following findings:

1.  (*Insert name of contractor*) is a nonexempt government contractor subject to the
    requirements of (*insert one or more as appropriate:* Executive Order 11246, as amended;
    Section 503 of the Rehabilitation Act of 1973, as amended (Section 503); the Vietnam Era
    Veterans' Readjustment Assistance Act of 1974, as amended (VEVRAA)).

2.  (*Insert name of complainant*) is (*insert description of the relevant protected basis, e.g.,
    applicant, employee, African-American, protected veteran, individual with a disability,
    lesbian, transgender, etc.*) within the meaning of (*insert appropriate legal authority:
    Executive Order 11246, Section 503, VEVRAA*) and the regulations at (*insert as appropriate:*
    41 CFR parts 60-1 to 60-50, 41 CFR part 60-300, 41 CFR part 60-741).

3.  The complainant alleges the contractor violated its obligations under the nondiscrimination
    and/or affirmative action provisions of its federal contracts by (*insert description of
    employment action taken by contract: terminating, not promoting, not hiring, retaliation,
    disclosing pay, etc.*).

4.  The contractor's position is that the complainant was (*insert description of employment
    action: terminated, not hired, not promoted, not retaliated against, etc.*) because (*insert
    description of the contractor's reasons or position*).

Federal Contract Compliance Manual (FCCM)

5. Our investigation indicates that the contractor (*insert description of findings/evidence related to contractor's employment actions*).

OFCCP's investigation found insufficient evidence that the contractor violated its obligations under the nondiscrimination and affirmative action provisions of (*insert one or more as appropriate:* Executive Order 11246, Section 503, VEVRAA). This determination concludes the processing of this complaint by OFCCP.

On behalf of the United States Department of Labor.

_____     _____
Regional Director                                    Date

cc:  (*insert name of complainant's attorney*)
      (*insert name of the contractor's attorney*)

---

Letter L-21 | 471

Federal Contract Compliance Manual (FCCM)

**LETTER L-22: NOTIFICATION OF RESULTS OF INVESTIGATION AND NOTICE OF RIGHT-TO-SUE UNDER TITLE I OF THE ADA OR TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: NO VIOLATION (Dual filed)**

*Certified Mail, Return Receipt Requested*

U.S. DEPARTMENT OF LABOR
OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS

[*Complaint No.*]


[*Complainant's Name*]                                                COMPLAINANT
[*Street Address*]
[*City, State, Zip Code*]


[*Contractor's Name*]                                                CONTRACTOR
[*Street Address*]
[*City, State, Zip Code*]


On [*insert date*], the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) conducted an investigation of the allegation(s) of [*insert basis of complaint*] discrimination made in the complaint of [*insert name of complainant*], filed on [*insert date*] following procedures for complaints of employment discrimination filed against employers holding government contracts or subcontracts. Here are the results of our investigation:

1. [*Insert name of contractor*] is a nonexempt government contractor subject to the requirements of [*insert one or more as appropriate:* Executive Order 11246, as amended, and an employer of 15 or more persons subject to Title VII of the Civil Rights Act of 1964, as amended; Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended (VEVRAA); Section 503 of the Rehabilitation Act of 1973, as amended (Section 503) and an employer of 15 or more persons subject to Title I of the Americans with Disabilities Act of 1990, as amended (ADA)].

2. [*Insert name of complainant*] is [*insert description of the relevant protected basis, e.g., applicant, employee, African-American, individual with a disability, lesbian, transgender, etc.*] covered or protected by [*insert one or more as appropriate:* Executive Order 11246 and Title VII; Section 503 and the ADA].

3. The complainant alleges the contractor violated its obligations under the nondiscrimination and/or affirmative action provisions of its federal contracts and under the nondiscrimination provisions of [*insert as appropriate:* Title VII or the ADA] by [*insert a description of the adverse personnel action or practice of the employer: terminating, not promoting, paying less, retaliation, etc.*].

Federal Contract Compliance Manual (FCCM)

4. The contractor's position is that the complainant was [*insert description of the adverse personnel action or practice of the employer: terminated, not hired, etc.*] because [*insert a description of the contractor's position or defense*].

5. Our investigation indicates that the contractor [*insert a description of what the contractor did or did not do*].

OFCCP's investigation found insufficient evidence that the contractor violated its obligations under the nondiscrimination and affirmative action provisions of [*insert one or more as appropriate:* Executive Order 11246 or Section 503] or under the nondiscrimination provisions of the [*insert one or more as appropriate:* Title VII or the ADA]. This determination concludes the processing of this complaint by OFCCP.

On behalf of the United States Department of Labor,

_____    _____
[Regional Director or Designee]                          [Date]


Enclosures: Information Related to Filing Suit under Title VII and the ADA
                   Notice of Right to Sue

cc:    [*insert name of complainant's attorney*]
        [*insert name of contractor's attorney*]
        [*insert name of the EEOC field office contact*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-22A:  ENCLOSURE: NOTICE OF RIGHT-TO-SUE UNDER TITLE I OF THE ADA OR TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

U.S. DEPARTMENT OF LABOR
OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS

TO: [Complainant's Name          FROM: [OFCCP Office Name
     and Address]                         and Address]

[___] On behalf of a person whose          OFCCP Representative
identity is confidential
(29 CFR 1601.7(a))


Complaint Number:

**TO THE COMPLAINANT:**  You may file a lawsuit against the contractor under [*insert as appropriate:* Title VII or ADA] in federal or state court.  **Your lawsuit must be filed within 90 calendar days of receipt of this notice or your right to sue will be lost.**  Please see the enclosed information sheet on filing lawsuits for further information.

With the issuance of this Notice of Right-to-Sue, OFCCP is terminating its processing of your complaint.

An information copy of this Notice has been sent to the below employer as named in your complaint.

[*insert employer's name and address*]

On behalf of the United States Department of Labor,


_____          _____
[Regional Director or Designee]               [Date]
[*insert appropriate OFCCP office address*]


Enclosures (2):   Information Related to Filing Suit under Title VII and the ADA
                        Copy of Complaint

cc: [*insert name of complainant's attorney*]
     [*insert name of the contractor's attorney*]
     [*insert name of the EEOC field office contact*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-23:   NOTICE OF RIGHT-TO-SUE UNDER TITLE I OF THE ADA OR TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (Issued Upon Request)**

*Certified Mail, Return Receipt Requested*

U.S. DEPARTMENT OF LABOR
OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS

TO: [Complainant's Name                    FROM: [OFCCP Office Name
       and Address]                                        and Address]

[__] On behalf of a person whose            OFCCP Representative
identity is confidential
(29 CFR 1601.7(a))

Complaint Number:

**TO THE COMPLAINANT:  This is your NOTICE OF RIGHT-TO-SUE under [Title I of the Americans with Disabilities Act of 1990, as amended] [Title VII of the Civil Rights Act of 1964, as amended] in reference to the complaint number indicated above.  This Notice is issued at your request.  If you intend to file a lawsuit against the employer named in your complaint, YOU MUST DO SO <u>WITHIN 90 DAYS</u> OF YOUR RECEIPT OF THIS NOTICE.  OTHERWISE, YOUR RIGHT TO SUE IS LOST. (The time limit for filing suit based on a state claim may be different.)**

[Select all that apply]

[__]   More than 180 days have elapsed since you filed your complaint.

[__]   Less than 180 days have elapsed since you filed your complaint, but it has been determined that OFCCP will be unable to complete its processing within 180 days from the date you filed your complaint.  (Note:  This reason is not acceptable to federal courts within the District of Columbia.)

[__]   With the issuance of this Notice of Right-to-Sue, OFCCP is terminating its processing of your complaint.

[__]   OFCCP will continue to investigate the following allegations in your complaint which are uniquely within OFCCP jurisdiction: [*list any allegation(s) not subject to ADA or Title VII, which are still under investigation*].

An informational copy of this Notice has been sent to the below employer as named in your complaint.

[*insert employer's name and address*]

Letter L-23 | 475

Federal Contract Compliance Manual (FCCM)

For the United States Department of Labor,

_____          _____
Regional Director or Designee          Date


Enclosures (2):   Information Related to Filing Suit under Title VII and the ADA
                          Copy of Complaint

cc: [*insert name of complainant's attorney*]
      [*insert name of contractor's attorney*]
      [*insert name of EEOC field office contact*]

SER-698

Federal Contract Compliance Manual (FCCM)

**LETTER L-24:  NOTICE OF RIGHT-TO-SUE UNDER TITLE I OF THE ADA OR TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (Administrative Closure)**

*Certified Mail, Return Receipt Requested*

U.S. DEPARTMENT OF LABOR
OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS

TO: [Complainant's Name            FROM: [OFCCP Office Name
    and Address]                                   and Address]

[__] On behalf of a person whose        OFCCP Representative
identity is confidential
(29 CFR 1601.7(a))

Complaint Number:

**TO THE COMPLAINANT: This is your NOTICE OF RIGHT-TO-SUE under [Title I of the Americans with Disabilities Act of 1990, as amended] [Title VII of the Civil Rights Act of 1964, as amended] based on the above-numbered complaint.  It is issued because OFCCP has dismissed your complaint for the following reason:**

[Select all that apply]

[__]  OFCCP has closed your complaint because, even if proven to be true, the allegation(s) raised in the complaint would not be a violation of the laws enforced by OFCCP.

[__]  Your complaint was not filed in a timely manner.  [*Insert as applicable: Executive Order 11246 requires that a complaint be filed within 180 calendar days from the date of the alleged discriminatory act or Complaints filed under VEVRAA and Section 503 must be filed within 300 calendar days from the date of the alleged discriminatory act to be timely.*]  [*Insert if an extension had been requested: Your request for extension of the filing requirement and the additional information provided did not meet the criteria necessary to allow an extension for good cause for your delayed filing.*]  Accordingly, we have closed your complaint.

[__]  You failed to provide requested necessary information, failed to appear or refused to be available for necessary interviews or conferences; or otherwise refused to cooperate to the extent that OFCCP is unable to complete its investigation of your complaint.

[__]  You refused to enter into a conciliation agreement, the terms of which OFCCP determined to be reasonable.

[__]  OFCCP has made reasonable efforts to locate you and has been unable to do so.  You have had at least 60 calendar days in which to respond to a notice sent to your last known address. OFCCP has closed the complaint because we are unable to proceed without your cooperation.

Federal Contract Compliance Manual (FCCM)

The issuance of this NOTICE OF RIGHT-TO-SUE concludes OFCCP processing of your complaint.  If you wish to pursue your complaint further, you have the right to sue the employer named in your complaint in federal or state court.  IF YOU DECIDE TO SUE, YOU MUST DO SO WITHIN 90 DAYS OF YOUR RECEIPT OF THIS NOTICE.  OTHERWISE, YOUR RIGHT TO SUE IS LOST.  (The time limit for filing suit based on a state claim may be different.)

An informational copy of this Notice has been sent to the following employer named in your complaint:

[*insert employer's name and address*]



For the United States Department of Labor,


_____     _____
Regional Director or Designee           Date


Enclosures (2):   Information Related to Filing Suit under Title VII and the ADA
                           Copy of Complaint

cc: [*insert name of complainant's attorney*]
      [*insert name of contractor's attorney*]
      [*insert name of EEOC field office contact*]

Federal Contract Compliance Manual (FCCM)

## LETTER L-25:  NOTIFICATION OF RESULTS OF INVESTIGATION: VIOLATION

*Certified Mail, Return Receipt Requested*

[Complaint No.]

[*Complainant's Name*]                                               COMPLAINANT
[*Street Address*]
[*City, State, Zip*]


[*Company name*]                                                     CONTRACTOR
[*Street Address*]
[*City, State, Zip*]

On [*insert date*], the U.S. Department of Labor's the Office of Federal Contract Compliance Programs (OFCCP) investigated the allegation(s) of [*insert the type of discrimination*] discrimination made in the complaint of [*insert name of complainant*] filed on [*insert date*].  Our investigation has resulted in the following findings:

1.  [*Insert name of contractor*] is a nonexempt government contractor subject to the requirements of [*insert one or more as appropriate:* Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973, as amended (Section 503); Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended (VEVRAA); Title VII of the Civil Rights Act of 1964, as amended (Title VII); Title I of the Americans with Disabilities Act of 1990, as amended (ADA)].

2.  [*Insert name of complainant*] is [*insert description of the relevant protected basis, e.g., applicant, employee, African-American, protected veteran, individual with a disability, lesbian, transgender, etc.*] within the meaning of [*insert one or more as appropriate:* Executive Order 11246, Section 503, VEVRAA, Title VII, the ADA] and the regulations at 41 CFR Part [*insert one or more, as appropriate:* 60-1 to 60-50, 60-300 and 60-741].

3.  The complainant alleges the contractor violated its obligations under the nondiscrimination and affirmative action provisions of its federal contracts by [*insert description of the actions the complaint describes that are attributed to the employer, e.g., terminating, not promoting, not hiring, retaliation, disclosing pay, etc.*].

4.  The contractor's position is that the complainant was [*insert the action taken against the complainant, e.g., terminated, not hired, etc.*] because [*insert a description of the contractor's position*].

5.  Our investigation indicates [*insert all specifics details relevant to the complainant's status and the contractor's actions*].

6.  The action(s) described in Paragraph 5 violated the contractor's obligations under the regulations as follows:

[*insert a list of the sections violated and describe violation*].

Federal Contract Compliance Manual (FCCM)

Under the regulations implementing [*insert as appropriate:* Executive Order 11246 at 41 CFR 60-1.24(c)(2) and Title VII at 29 CFR 1601.24, Section 503 at 41 CFR 60-741.62 and ADA at 29 CFR 1601.24, VEVRAA at 41 CFR 60-300.62], the U.S. Department of Labor's OFCCP invites [*insert name of contractor*] to resolve this matter through conciliation by informal means.  A compliance officer from this office will be in contact with [*insert name of contractor*] by [*insert date*] to begin the conciliation process.

On behalf of the United States Department of Labor,

_____    _____
Regional Director or Designee        Date


cc: [*insert name of the complainant's representative*]
    [*insert name of the contractor's representative*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-26:   SHOW CAUSE NOTICE: FAILURE TO SUBMIT EXECUTIVE
ORDER 11246, SECTION 503 OR VEVRAA AAP(S)**

**(Supply & Service)**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment CEO*]
[*Title of CEO*]
[*Establishment Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*Name of CEO*]:

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), by letter dated [*insert date*], requested that you submit to this office within 30 calendar days a copy of your [*insert as appropriate:* establishment's or functional unit's] Affirmative Action Programs (AAPs) and itemized listing documentation prepared under our regulations implementing:

- Executive Order 11246 , as amended (41 CFR Part 60-2)

- Section 503 of the Rehabilitation Act of 1973 (Section 503), as amended (41 CFR Part 60-741)

- Vietnam Era Veterans' Readjustment Assistance Act of 1974 (VEVRAA), as amended (41 CFR Part 60-300)

We have yet to receive your [*insert as appropriate:* Executive Order 11246, Section 503 or VEVRAA] AAP(s).  Due to your organization's failure to submit the requested AAP(s) required under [*insert as appropriate:* Executive Order 11246, Section 503, VEVRAA], we are issuing this Notice to Show Cause.  Within 30 calendar days of receiving this Notice, you must either submit the AAP(s) and itemized listing specified in our original request or demonstrate, in writing, why enforcement proceedings should not be initiated under [*insert as appropriate:* Sections 208 and 209 of the Executive Order 11246, as implemented by 41 CFR 60-1.26; 41 CFR 60-741.65 (Section 503) and 41 CFR 60-300.65 (VEVRAA)].  A copy of our original request is enclosed.

The submission of the AAP(s) and itemized listing data does not preclude the identification of further violations, based either upon a finding during the desk audit or subsequent on-site review, that your AAPs do not meet the requirements of 41 CFR Part 60-2, Part 60-741 or Part 60-300 or that your [*insert as appropriate:* establishment or functional unit] is not in compliance with one or more of the requirements of the Executive Order 11246, Section 503 or VEVRAA and their implementing regulations.

Federal Contract Compliance Manual (FCCM)

Should you have any questions or wish to discuss a resolution to the issues raised herein, please contact [*insert name of compliance officer*] or [*insert appropriate pronoun: his or her*] supervisor, [*insert name of supervisor*], at [*insert telephone number*] to schedule a meeting or telephone conference.

Sincerely,


[*Name of regional or district director*]
Regional Director or District Director

Enclosure

cc: [*insert name of the corporate CEO*]
   [*insert name of the designated representative*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-27:   SHOW CAUSE NOTICE: FAILURE TO SUBMIT ACCEPTABLE EXECUTIVE ORDER 11246, SECTION 503 OR VEVRAA AAP(S)**

**(Supply & Service)**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment CEO*]
[*Title of CEO*]
[*Establishment Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*Name of CEO*]:

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), reviewed your Affirmative Action Program (AAP) and itemized listing documentation prepared under [*insert one or more as appropriate:* Executive Order 11246 (Executive Order 11246), as amended; Section 503 of the Rehabilitation Act of 1973 (Section 503), as amended; the Vietnam Era Veterans' Readjustment Assistance Act of 1974 (VEVRAA), as amended] and submitted for desk audit.  The results of this review indicate that your AAP does not meet the requirements of our regulations at [*insert one or more as appropriate:* 41 CFR Part 60-2, 41 CFR Part 60-300 Subpart C, 41 CFR Part 60-741 Subpart C].  Consequently, we are issuing this Notice to Show Cause why enforcement proceedings should not be initiated under [*insert one or more as appropriate:* 41 CFR 60-1.26, 41 CFR 60-741.65 (Section 503) and/or 41 CFR 60-300.65 (VEVRAA)].

The specific elements of your [*insert one or more as appropriate:* Executive Order 11246, Section 503, VEVRAA] AAP(s) which do not meet the regulatory requirements cited above are listed in the enclosure.  You are required to correct these violations, as indicated, within 30 calendar days of your receipt of this Notice or we shall recommend that enforcement proceedings be initiated.

Submission of a corrected [*insert one or more as appropriate:* Executive Order 11246, Section 503, VEVRAA] AAP(s) does not preclude the identification of further violations, based on a finding during the desk audit or subsequent on-site review, that your AAPs do not meet the requirements of *[insert one or more as appropriate:* 41 CFR Part 60-2, 41 CFR Part 60-300, 41 CFR Part 60-741] or that your [*insert as appropriate:* establishment or functional unit] is not in compliance with the requirements of the Executive Order 11246, Section 503 or VEVRAA and their implementing regulations.

Should you have any questions or wish to discuss a resolution to the issues raised herein, please contact [*insert name of compliance officer*] or [*insert appropriate pronoun: his or her*] supervisor, [*insert name of supervisor*], at [*insert telephone number*] to schedule a meeting or telephone conference.

Federal Contract Compliance Manual (FCCM)

Sincerely,


[*insert name of the regional or district director*]
Regional Director or District Director

Enclosure

cc: [*insert name of the corporate CEO*]
[*insert name of designated representative*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-27A: SAMPLE ENCLOSURE TO LETTER L-27**

1. **Violation:** ABC Company's affirmative action program did not include an organizational profile required by 41 CFR 60-2.10(b)(1)(i).

   **Corrective Action:** Develop and include in the AAP an organizational profile that depicts staffing patterns within its establishment.

2. **Violation:** In four of the job groups identified in ABC Company's Executive Order 11246 utilization analysis as underutilized, ABC Company failed to set placement goals required by 41 CFR 60-2.15(b) or to explain why it did not do so. The job groups are Design Engineers (minority and women), Health Scientists (minorities), Electronic Technicians (women), and Tool and Die Makers (minorities and women).

   **Corrective Action:** In the job groups specified above, either establish goals at least equal to the availability for minorities, women or both as noted, or explain in the AAP why such goals cannot be established.

Federal Contract Compliance Manual (FCCM)

**LETTER L-28:   SHOW CAUSE NOTICE: FAILURE TO SUBMIT EMPLOYMENT
ACTIVITY OR COMPENSATION DATA FOR DESK AUDIT**

**(Supply & Service Executive Order Compliance Evaluations)**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment CEO*]
[*Title of CEO*]
[*Establishment Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*insert name of CEO*]:

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), by letter dated [*insert date*], requested that you submit the below listed [*insert as appropriate: employment activity or compensation*] data as support data for your Affirmative Action Program (AAP) prepared under Executive Order 11246, as amended.  The data was due to this office within 30 calendar days.

[*Specify the data that were not submitted for desk audit*]

The submission of this data is required by 41 CFR 60-1.12(c)(2).  Additionally, 41 CFR 60-2.17(b), (c) and (d) require that your AAP include an analysis of your employment process to identify and correct problem areas.  This obligation cannot be adequately fulfilled without maintenance of the referenced data.

We have not yet received the data we requested.  Consequently, we are issuing this Notice to Show Cause why enforcement proceedings should not be initiated.  You are required to submit the data as specified in our original request within 30 calendar days of your receipt of this Notice or we will recommend that enforcement proceedings be initiated under Sections 208 and 209 of the Executive Order 11246, as implemented by 41 CFR 60-1.26.  A copy of our original request is enclosed.

The submission of these support data does not preclude the identification of additional violations, based upon a finding during the desk audit or a subsequent on-site review, that your AAPs do not meet the requirements of 41 CFR Parts 60-2, 60-741 and/or 60-300, or that your [*insert as appropriate:* establishment or functional unit] is not in compliance with the requirements of the Executive Order 11246; Section 503 of the Rehabilitation Act, as amended; or the Vietnam Era Veterans' Readjustment Assistance Act, as amended, and their implementing regulations, as appropriate.

Should you have any questions or wish to discuss a resolution to the issues raised herein, please contact [insert name of compliance officer] or [*insert appropriate pronoun: his or her*]

Federal Contract Compliance Manual (FCCM)

supervisor, [*insert name of supervisor*], at [*insert telephone number*] to schedule a meeting or telephone conference.

Sincerely,


[*insert name of the regional or district director*]
Regional Director or District Director

Enclosure

cc: [*insert name of the corporate CEO*]
    [*insert name of the designated representative*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-29:   SHOW CAUSE NOTICE: FAILURE TO SUBMIT CORRECTED EMPLOYMENT ACTIVITY AND/OR COMPENSATION DATA**

**(Supply & Service Executive Order Compliance Evaluations)**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment CEO*]
[*Title of CEO*]
[*Establishment Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*insert name of CEO*]:

On [*insert date*], the U.S. Department of Labor's Office of Federal Contract Compliance (OFCCP), contacted you by phone to request that you resubmit certain [*insert as appropriate:* employment activity or compensation] data which we determined to be unacceptable during the desk audit of your Affirmative Action Program (AAP).  The desk audit of your AAP was prepared according to Executive Order 11246, as amended. We asked you to provide the corrected data within 10 calendar days.  Further, we identified the unacceptable data, stated how they are unacceptable, and specified the required correction(s).

To date, we have not received the corrected [*insert as appropriate:* employment activity or compensation] data.  Consequently, we are issuing this Notice to Show Cause why enforcement proceedings should not be initiated under 41 CFR 60-1.26.  You are required to submit the corrected data, as specified above, within 30 calendar days of receiving this Notice or we will recommend initiating enforcement proceedings following 41 CFR 60-1.26.

The submission of these data does not preclude the identification of further violations based upon a finding during the desk audit, or subsequent on-site review, that your AAP(s) does not meet the requirements of 41 CFR Parts 60-2, 60-741, or 60-300, or that your [*insert as appropriate:* establishment or functional unit] is not in compliance or has failed to comply in the past with the requirements of the Executive Order, Section 503 of the Rehabilitation Act of 1973, as amended and/or the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, and their implementing regulations.

Should you have any questions or wish to discuss a resolution to the issues raised herein, please contact [insert name of compliance officer] or [*insert appropriate pronoun: his or her*] supervisor, [*insert name of supervisor*], at [*insert telephone number*] to schedule a meeting or telephone conference.

Sincerely,

[*insert name of the regional or district director*]

Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 622 of 1025

Federal Contract Compliance Manual (FCCM)

Regional Director

cc:  [*insert name of the corporate CEO*]
     [*insert name of the designated representative*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-30:   SHOW CAUSE NOTICE: UNRESOLVED VIOLATIONS**

**(Compliance Evaluations)**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment/Construction Contractor CEO*]
[*Title of CEO*]
[*Establishment/Construction Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*insert name of CEO*]:

On [*insert date*], the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) sent you a Notice of Violation based on the findings of our recent compliance evaluation of your [*insert as appropriate:* establishment or functional unit].

[*If the contractor did not respond to the NOV, include the sentence: "To date, you have not responded to that Notice or otherwise indicated your willingness to remedy those violations."*]

[If the contractor did respond to the NOV, include the next two sentences: "On [*insert date*], OFCCP met with [*insert name of contractor representative*] to conciliate a resolution of the violations(s) listed in that Notice.  Our conciliation efforts, however, failed to resolve the violation(s)."

Consequently, we are issuing this Notice to Show Cause. You have 30 calendar days from the date you receive this Notice to show why enforcement proceedings should not be initiated under [insert one or more as appropriate: Sections 208 and 209 of Executive Order 11246, as amended, as implemented by 41 CFR 60-1.26; Section 503 of the Rehabilitation Act of 1973, as amended, as implemented by 41 CFR 60-741.65; the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, as implemented by 41 CFR 60-300-65].

A list of the violations at issue is enclosed.  You are required to correct these violations, as indicated, within 30 calendar days of your receipt of this Notice or we shall recommend that enforcement proceedings be initiated.

Should you have any questions or wish to discuss a resolution to the issues raised herein, please contact [*insert name of compliance officer*] or [*insert appropriate pronoun: his or her*] supervisor, [*insert name of supervisor*], at [*insert telephone number*] to schedule a meeting or telephone conference.

Sincerely,


[*insert name of the regional or district director*]

Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 624 of 1025

Federal Contract Compliance Manual (FCCM)

Regional Director or District Director

Enclosure

cc:  [*insert name of corporate CEO*]
     [*insert name of designated representative*]

Case 3:22-cv-07182-WHA Document 39-1 Filed 10/18/23 Page 625 of 1025

Federal Contract Compliance Manual (FCCM)

## LETTER L-30A:   SAMPLE ENCLOSURE TO LETTER L-30

1. **Violation:**  In violation of 41 CFR 60-1.4(a)(1), ABC Company discriminated against qualified African American applicants in its hiring and selection procedures for the Laborer positions from January 1, 2018 through December 31, 2018.  During this period, the qualified pool of applicants for the Laborer positions consisted of 176 white applicants and 111 African American applicants.  From that pool, 17 white applicants and no African American applicants were hired.  Comparison of the selection rates of white and African American applicants showed an adverse impact (0% African Americans hired) and a shortfall of six.  The disparity in the selection rates is statistically significant, with a standard deviation of 3.38.  Analysis of the steps in the selection process showed an adverse impact at each step in the process affecting African American applicants.  ABC Company did not demonstrate that the steps in its selection process that had an adverse impact were job-related and consistent with business necessity.  Absent discrimination, six African American applicants would have been selected given their representation in the qualified applicant pool.

   **Corrective Action:** ABC Company must agree to revise and maintain selection policies and procedures designed to eliminate unlawful disparate impact on African American applicants, and to ensure that all African American applicants are given an equal employment opportunity in its selection process.

   ABC Company must agree to provide make-whole relief to the 111 qualified African American applicants who applied for employment from January 1, 2018 through December 31, 2018.  The relief covers the Laborer position and consists of employment opportunities for six qualified African American applicants, and monetary relief (including back pay, interest and benefits) to all African American applicants who can be located.

2. **Violation:** In violation of 41 CFR 60-1.4(a)(1), ABC Company discriminated against two African American female applicants who applied for promotion into Inspection jobs.

   Specifically, ABC Company was unable to provide a legitimate, nondiscriminatory reason for rejecting Sandra Jones and Barbara Rogers (African American); both applicants were better qualified under ABC Company's stated selection criteria than two similarly situated white male applicants the company selected for Inspector positions on September 23, 2018.  ABC Company's reason for rejecting Ms. Jones and Ms. Rogers was pretextual and the company did not equally apply it to the two white males promoted into Inspector positions.  Ms. Jones and Ms. Rogers would have been promoted into Inspector positions on September 23, 2018, but for being disparately treated.

   **Corrective Action:** ABC must make bona fide offers of employment to Ms. Rogers and Ms. Jones into the next two Inspector openings, and provide all wages, seniority and employment-related benefits they would have received had they not been subjected to discrimination.  Such relief shall be retroactive to the date each would have been promoted absent the discrimination and shall include: (a) back pay, plus interest; (b) retroactive seniority; (c) all employment benefits; and (d) any other appropriate make-whole relief, including all wages, seniority and employment-related benefits they would have received had they not been subjected to discrimination.  Additionally, ABC Company will provide Ms.

Federal Contract Compliance Manual (FCCM)

Rogers and Ms. Jones with front pay from the date this violation is resolved until they are promoted to Inspector positions or refuse bona fide promotion offers.

3. **Violation:** In violation of 41 CFR 60-2.17(c), ABC Company did not make good faith efforts to remove identified barriers, expand employment opportunities, and produce measurable results for females and minorities in underutilized job groups.

   **Corrective Action:** ABC Company must agree to make good faith efforts to remove identified barriers, expand employment opportunities, and produce measurable results for females and minorities in underutilized job groups. To accomplish this, ABC Company must agree to the following actions:

   a. ABC Company must agree to establish a working relationship with referral organizations by taking the following actions:

      • Provide regular job listings of vacancies which have not been filled internally for all underutilized job groups; and

      • Contact the referral organization within 45 calendar days of the execution of this Agreement. The purpose of the contact is to arrange for the referral of applicants, and to provide follow-up and feedback to the recruitment sources on the disposition of its referrals.

   b. ABC Company must agree to maintain documentation that demonstrates its good faith efforts.

4. **Violation:** In violation of 41 CFR 60-1.12(a), ABC Company failed to collect and maintain personnel and employment records for the appropriate period. ABC Company failed to collect and maintain documentation of the application process and selection decisions, and did not maintain all of the applications, interview notes and other applicant records.

   **Corrective Action:** ABC Company must agree to collect and maintain personnel and employment records for the appropriate period, including documentation of the application process and selection decisions.

5. **Violation:** ABC failed to list its jobs with the appropriate employment service delivery system, in violation of 41 CFR 60-300.5(a)(2) through (6).

   **Corrective Action:** ABC Company will list all suitable jobs with the Metropolis State Employment Service office. Reports to OFCCP on these listings will be required.

6. **Violation:** In violation of 41 CFR 60-300.44(f), ABC Company failed to take appropriate outreach and positive recruitment activities for protected veterans.

   **Corrective Action:** ABC Company must agree to take appropriate outreach and positive recruitment activities for protected veterans, and to document and evaluate the effectiveness of these activities under 41 CFR 60-300.44(f).

Federal Contract Compliance Manual (FCCM)

## LETTER L-31:  SHOW CAUSE NOTICE: UNRESOLVED VIOLATIONS

## (Complaint Investigations)

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment/Construction Contractor CEO*]
[*Title of CEO*]
[*Establishment/Construction Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*insert name of CEO*]:

On [*insert date*], the U.S. Department of Labor's Office of Federal Contract Compliance Programs sent you a Notice of Results of Investigation specifying violations found during our investigation of the complaint filed by [*insert complainant's name*] against your company.  On [*insert date*] we met with [*insert name of contractor representative*] to conciliate a resolution of those violations.  Our conciliation efforts, however, failed to resolve the violations.

Consequently, we are issuing this Notice to Show Cause (SCN).  You have 30 calendar days from the date that you received this SCN to show why enforcement proceedings should not be initiated under [*insert one or more as appropriate:* Sections 208 and 209 of Executive Order 11246, as amended, as implemented by 41 CFR 60-1.26; Section 503 of the Rehabilitation Act of 1973, as amended, as implemented by 41 CFR 60-741.65; and/or of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, as implemented by 41 CFR 60-300.65].

The violations at issue are listed in the enclosure.  You are required to correct these violations within 30 calendar days of your receipt of this Notice or we shall recommend the initiation of enforcement proceedings.

Should you have any questions or wish to discuss a resolution to the issues raised herein, please contact [*insert name of compliance officer*] or [*insert appropriate pronoun: his or her*] supervisor, [*insert name of supervisor*], at [*insert telephone number*] to schedule a meeting or telephone conference.

Sincerely,


[*insert name of the regional or district director*]
Regional Director or District Director

Enclosure

cc: [*insert name of corporate CEO*]
    [*insert name of designated representative*]

(117 of 300), Page 117 of 300
Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 117 of 300
Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 628 of 1025

Federal Contract Compliance Manual (FCCM)

**LETTER L-32:   AMENDED SHOW CAUSE NOTICE FOR UNRESOLVED
VIOLATIONS**

**(Compliance Evaluations)**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment/Construction Contractor CEO*]
[*Title of CEO*]
[*Establishment/Construction Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*insert name of CEO*]:

On [*insert date*], the U.S. Department of Labor's Office of Federal Contract Compliance
Programs (OFCCP), issued your company a Notice to Show Cause which listed specific
violations of [*insert one or more as appropriate:* Executive Order 11246, as amended; Section
503 of the Rehabilitation Act of 1973 (Section 503), as amended; the Vietnam Era Veterans'
Readjustment Assistance Act of 1974 (VEVRAA), as amended] and offered you 30 calendar
days in which to show why enforcement should not be initiated.

We have completed our subsequent review of your company's equal employment
opportunity policies and practices.  [*Insert this sentence if the contractor is a construction
contractor:* "Our review was of your construction work sites in the [*insert name of
geographic area."*]] Additional violations of the [*insert one or more as appropriate:*
Executive Order 11246, Section 503, VEVRAA] were identified.

Consequently, we are issuing this Amended Notice to Show Cause.  You have 30 calendar days
from the date you receive this Notice to show why enforcement proceedings should not be
initiated under [*insert one or more as appropriate:* Sections 208 and 209 of the Executive Order
11246, as implemented by 41 CFR 60-1.26; Section 503, as implemented by 41 CFR 60-741.65;
and/or VEVRAA, as implemented by 41 CFR 60-300.65].

The enclosure lists the most recently identified violations, along with those specified in the
[*insert date*] Notice to Show Cause. You are required to correct these violations, as indicated,
within 30 calendar days of your receipt of this Notice or we shall recommend that enforcement
proceedings be initiated.

Should you have any questions or wish to discuss a resolution to the issues raised herein,
please contact [*insert name of compliance officer*] or [*insert appropriate pronoun: his or her*]
supervisor, [*insert name of supervisor*], at [*insert telephone number*] to schedule a meeting or
telephone conference.

Federal Contract Compliance Manual (FCCM)

Sincerely,


[*insert name of the regional or district director*]
Regional Director or District Director

Enclosure

cc: [*insert name of corporate CEO*]
    [*insert name of designated representative*]

(119 of 300), Page 119 of 300
Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 119 of 300
Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 630 of 1025

Federal Contract Compliance Manual (FCCM)

## LETTER L-33: SHOW CAUSE NOTICE FOR DENIAL OF ACCESS

### (Compliance Evaluations & Complaint Investigations)

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment/Construction Contractor CEO*]
[*Title of CEO*]
[*Establishment/Construction Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*insert name of CEO*]:

In our letter dated [*insert date*], the U.S. Department of Labor, Office of Federal Contract Compliance Programs (OFCCP), requested that [*insert contractor or establishment name*]:

[*CHOOSE ONE OR BOTH OF THE FOLLOWING OPTIONS*]

(1) Submit to the on-site portion of a [*compliance evaluation or complaint investigation*] as described at [*insert one or more as appropriate:* 41 CFR 60-1.20(a)(1)(ii), 41 CFR 60-741.60, 41 CFR 60-300.60] at its [*facility or construction work site(s)*] located at [*street address, city, state*]. The on-site was to begin on [*insert date*].

 [*and/or*]

(2) Submit records requested by OFCCP, under [*insert one or more as appropriate:* 41 CFR 60-1.43, 41 CFR 60-300.81, and 41 CFR 60-741.81].

On [*insert date*], your representative, [*insert name*], responded to our request by denying access to [*the facility, construction work site(s) and/or records*]. Consequently, we are issuing this Notice to Show Cause why enforcement proceedings should not be initiated under [*insert one or more as appropriate:* Sections 208 and 209 of Executive Order 11246 , as amended, as implemented by 41 CFR 60-1.26; Section 503 of the Rehabilitation Act of 1973 (Section 503), as amended, as implemented by 41 CFR 60-741.64; the Vietnam Era Veterans' Readjustment Assistance Act of 1974 (VEVRAA), as amended; as implemented by 41 CFR 300.65].

[*CHOOSE ONE OR BOTH OF THE FOLLOWING OPTIONS*]

(1) [*Insert contractor's name*] is required to allow OFCCP access to the [*facility or construction work site(s)*] so that we can conduct an on-site [*compliance evaluation or complaint investigation*] of your [*facility or construction work site(s)*] located at [*insert location*] within 30 calendar days of your receipt of this Notice or we shall recommend that enforcement proceedings be initiated in accordance with the above citations. In those proceedings, you will have an opportunity to request a hearing before any sanctions are imposed.

Letter L-33 | 497

SER-719

Federal Contract Compliance Manual (FCCM)

[*and/or*]

(2) [*Insert contractor's name*] is [*also*] required to allow OFCCP access to records requested for purposes of its [*compliance evaluation or complaint investigation*].

Allowing OFCCP access to the [*facility, construction work site(s), or records and other information*] to conduct the [*compliance evaluation or complaint investigation*] does not preclude the identification of further violations, based either upon a finding during the desk audit or subsequent on-site review, that your AAPs do not meet the requirements of 41 CFR Part 60-2, Part 60-741 and Part 60-300, or that your establishment is not in compliance or has failed to comply in the past with the requirements of the Executive Order 11246, Section 503 and VEVRAA, and their implementing regulations. We will not withdraw this Notice to Show Cause until all deficiencies cited in this Notice (or subsequently identified in an Amended Show Cause Notice incorporating any additional violations found during the desk audit or on-site review) have been fully and satisfactorily resolved in a written Conciliation Agreement.

We wish to avoid enforcement proceedings, if possible. Therefore, you are asked to contact [*insert name of compliance officer*] at [*insert phone number*] within five business days of receipt of this Notice to arrange a mutually acceptable time to conciliate a resolution of this violation.

Sincerely,


[*Name of regional or district director*]
Regional Director or District Director

Enclosure

cc: [*insert name of corporate CEO*]
    [*insert name of designated representative*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-34:   RESCISSION OF AN ERRONEOUSLY ISSUED SHOW CAUSE NOTICE**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment/Construction Contractor CEO*]
[*Title of CEO*]
[*Establishment/Construction Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear (*insert name of CEO*):

On (*insert date*), the U.S. Department of Labor's Office of Federal Contract Compliance Programs issued a (*insert as appropriate:* Notice to Show Cause or Amended Notice to Show Cause) to your company.  That Notice gave you 30 calendar days to show why enforcement proceedings should not be initiated under (*insert one or more as appropriate:* Sections 208 and 209 of Executive Order 11246, as amended, as implemented by 41 CFR 60-1.26; Section 503 of the Rehabilitation Act of 1973, as amended, as implemented by 41 CFR 60-741.65; the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, as implemented by 41 CFR 60-300.65).

After issuing the Notice, we subsequently determined that it was erroneously issued because (*insert as appropriate:* your company has demonstrated that it is exempt from our requirements or your company demonstrated that the allegations giving rise to the Notice are incorrect). Therefore, we are rescinding the (*insert as appropriate:* Notice to Show Cause or the Amended Notice to Show Cause).

Sincerely,


(*Name of regional director*)
Regional Director

cc: (*insert the name of the corporate CEO*)
    (*insert the name of the designated representative*)

Federal Contract Compliance Manual (FCCM)

## LETTER L-35:  PREDETERMINATION NOTICE

*Note: To be mailed by certified mail, return receipt requested.*

[*Date*]

[*Name of CEO*]
[*Title of CEO*]
[*Company name*]
[*Street Address*]
[*City, State, Zip Code*]

Re:   Compliance Evaluation of (*insert name of contractor*)
      OFCCP No. _____

Dear [*insert name of CEO*]:

On (*insert date*), the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) began a compliance evaluation of (*insert name of contractor*) to review compliance with Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973 (Section 503), as amended; and/or the Vietnam Era Veterans' Readjustment Assistance Act of 1974 (VEVRAA), as amended; and their implementing regulations at 41 Code of Federal Regulations (CFR) Chapter 60.  (*Insert name of contractor*), hereinafter referred to as the "contractor," is a federal contractor under Executive Order 11246, Section 503 and/or VEVRAA, and their implementing regulations at 41 CFR Chapter 60.

The purpose of this Notice is to inform you of the findings which, if not adequately rebutted, will establish that discrimination occurred (or is occurring) at the contractor's establishment.

*(Present the evidence of discrimination.)*

*(If there are additional violations or deficiencies, including technical violations, present them here.)*

Please be advised that this is a preliminary determination based on available information.  You now have the opportunity to provide additional information or documentation that you believe we should consider before a final determination is made.

We ask that you respond to this Notice within 15 calendar days from receipt of this letter.  If you do not respond, we will incorporate the preliminary finding(s) made in this Notice into a final Notice of Violation (NOV).  You will receive the NOV by certified mail.  If you have any questions, please call Compliance Officer, (*insert name of compliance officer*), or his or her immediate supervisor, (*insert name of district director or assistant district director*), at (*insert district office or regional office phone number*).

Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 634 of 1025

Federal Contract Compliance Manual (FCCM)

Sincerely,


(*insert name of the district director or assistant district director*)
District Director

cc: [*insert name of the head of establishment/construction contractor official over the geographical area under review*]
[*insert name of the designated representative*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-36:  NOTICE OF VIOLATION**

*Note: To be mailed by certified mail, return receipt requested.*

[*Date*]

[*Name of CEO*]
[*Title of CEO*]
[*Company name*]
[*Street Address*]
[*City, State, Zip Code*]

Re:   Compliance Evaluation of (*insert name of contractor*)
        OFCCP No. _____

Dear [*insert name of CEO*]:

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) is reviewing [*insert name of contractor*] compliance with one or more of these authorities and their implementing regulations at 41 CFR Chapter 60:  Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973 (Section 503), as amended; or the Vietnam Era Veterans' Readjustment Assistance Act of 1974 (VEVRAA), as amended.

The review indicates that [*insert name of contractor*] is not in compliance with [*insert one or more of the following:*  Executive Order 11246, Section 503, and/or VEVRAA.]  Consequently, we are issuing this Notice of Violation.  The violation(s) and corrective action(s) needed are set forth below:

**A.  VIOLATION(S):**

*(List and describe the violations)*

**B.  CORRECTIVE ACTION(S):**

*(After each violation describe the needed corrective actions)*

To come into compliance, [*insert name of contractor*] must enter into a binding Conciliation Agreement with OFCCP that encompasses all of the corrective actions described above.  It is our sincere desire to avoid enforcement proceedings.  Therefore, we ask that you contact (*insert assistant district director name here*], or compliance officer [*insert name here*], or me within five business days of receiving this letter at [*insert office phone number*] to begin conciliation and resolution of the specified violations.

Sincerely,

[*Name of district director*]
District Director

SER-724

Federal Contract Compliance Manual (FCCM)

cc: [*insert name of the head of the establishment*]
    [*insert name of the designated representative*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-37:  15-DAY NOTICE: VIOLATION OF A CONCILIATION AGREEMENT**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment/Construction Contractor CEO*]
[*Title of CEO*]
[*Establishment/Construction Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*insert name of CEO*]:

On [*insert date*], the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), entered into a Conciliation Agreement (CA) with your company.  The CA sets forth your company's specific commitments to remedy violations found during a [*insert as appropriate:* compliance review or complaint investigation].

We completed a review of your compliance with the CA on [*insert date*] that indicates that your company failed to comply with commitments outlined in the CA.  The facts and circumstances of each violation of the CA are outlined in the enclosure.

Accordingly, under the CA referenced above [insert one or more as appropriate: and 41 CFR 60-1.34, 41 CFR 60-300.63 and 41 CFR 60-741.63], you have 15 calendar days from the date you received this Notice to demonstrate that you are in compliance with the specified provisions of the CA.  You may demonstrate your compliance through a written presentation of facts and evidence.  However, if you fail to do so within the specified period, we will recommend the initiation of enforcement proceedings under 41 CFR [*insert as appropriate:* 60-1.26, 60-300.65 or 60-741.65].  Should this matter proceed to enforcement, you will have an opportunity for a hearing before any sanctions are imposed.

Should you have any questions or wish to discuss this matter, please contact [*insert name of compliance officer*] or [*insert appropriate pronoun: his or her*] supervisor, [*insert name of supervisor*], at [*insert telephone number*].

Sincerely,


[*insert name of the regional director*]
Regional Director

Enclosure

cc: [*insert name of the corporate CEO*]
    [*insert name of the designated representative*]

---

Federal Contract Compliance Manual (FCCM)

**LETTER L-37A:   SAMPLE ENCLOSURE TO LETTER L-37**

**Remedy:** Provide affected class members an opportunity to bid on any position in the Finishing Department, utilizing their company seniority.

**Facts and Circumstances:** An examination of bid postings and interviews with Finishing Department supervisors and affected class members indicates that the employees that were discriminated against were allowed to bid only on entry-level positions in the Finishing Department.  The company continues to use job seniority, instead of company seniority, when determining the successful bidders for positions above the entry-level.

Federal Contract Compliance Manual (FCCM)

## LETTER L-38: RESCISSION OF THE 15-DAY NOTICE

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment/ Construction Contractor CEO*]
[*Title of CEO*]
[*Establishment/ Construction Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*Name of CEO*]:

On [*insert date*], the U.S. Department of Labor's Office of Federal Contract Compliance Programs issued your company a 15-Day Notice under [*insert as appropriate:* 41 CFR 60-1.34, Executive Order 11246, as amended; 41 CFR 60-741.63, Section 503 of the Rehabilitation Act of 1973, as amended; and 41 CFR 60-300.63, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended]. We received your written reply on [*insert date*] and it stated that the allegations giving rise to the Notice were incorrect.

We examined the evidence you presented and concluded that the allegations are, in fact, incorrect. Therefore, we are rescinding the 15-Day Notice.

Sincerely,


[*Name of regional director*]
Regional Director

cc: [*insert name of corporate CEO*]
    [*insert name of designated representative*]

Federal Contract Compliance Manual (FCCM)

## LETTER L-39:  PROGRESS REPORT RESPONSE LETTER

[*Date*]

[*Name of CEO*]
[*Title of CEO*]
[*Company Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*insert name of CEO*]:

On [*insert date*], the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) received your progress report under a [*insert as appropriate:* Conciliation Agreement or insert the name of the report causing the progress report] entered into by [*insert name of contractor*] on [*insert date*].

The terms of the [*insert as appropriate:* Conciliation Agreement or the name of the appropriate report] require that [*insert name of contractor*] submit certain items as a part of its progress report.  Your submission must include [*list items required here*] and you provided the below listed items.

[*List items submitted*]

This office reviewed and conducted the appropriate analyses on [*insert the date analysis done*] on the items you submitted.  [*Explain whether the progress report is acceptable or whether the CO needs additional information.*]

[*Insert one of the below paragraphs as appropriate*]

#1: Use if it is a final progress report:

This is your final progress report.  However, as long as [*insert contractor name*] is a federal contractor, [*insert contractor name*] is required to comply with all regulatory provisions of Executive Order 11246, as amended; Section 503 of the Rehabilitation Act of 1973 (Section 503), as amended; the Vietnam Era Veterans' Readjustment Assistance Act of 1974 (VEVRAA), as amended; and implementing regulations at 41 CFR Chapter 60.

#2: Use if it is an interim progress report:

This is not a final progress report.  Therefore, we remind you that the next progress report is due on [*insert date*].  As long as [*insert contractor name*] is a federal contractor, [*insert contractor name*] is required to comply with all regulatory provisions of Executive Order 11246, Section 503, VEVRAA and implementing regulations at 41 CFR Chapter 60.

If you have any questions, please contact [*insert name of compliance officer*], compliance officer, at [*insert contact information*] to schedule a meeting or telephone conference.

Federal Contract Compliance Manual (FCCM)

Sincerely,

[*insert name of the District Director or Assistant District Director*]
District Director or Assistant District Director

cc: [*insert the name of the corporate CEO*]
   [*insert the name of the designated representative*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-40:  CLOSURE LETTER FOR SUBSTANTIVE VIOLATIONS**

**(Where a Show Cause Notice was Issued)**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Date*]

[*Name of Establishment/Construction Contractor CEO*]
[*Title of CEO*]
[*Establishment/Construction Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*insert the name of CEO*]:

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) recently completed a compliance evaluation of your equal employment opportunity policies and practices at [*insert as appropriate: establishment or construction work sites*] in the [*insert name of the geographic area*].

On [*insert date*], based on violations found during the evaluation, we issued your company a [*insert one or more as appropriate:* Notice to Show Cause or Amended Notice to Show Cause]. Based on this notice, you had 30 calendar days to show why OFCCP should not initiate enforcement proceedings under [*insert one or more as appropriate:* Sections 208 and 209 of Executive Order 11246, as amended, as implemented by 41 CFR 60-1.26; Section 503 of the Rehabilitation Act, as amended, as implemented by 41 CFR 60-741.65; or the Vietnam Era Veterans' Readjustment Assistance Act, as amended, as implemented by 41 CFR 60-300.65].

However, on [*insert date*], representatives of your company and this office reached a Conciliation Agreement that addresses each of the violations cited in the [*insert as appropriate:* Notice to Show Cause or Amended Notice to Show Cause].

Subject to the implementation of commitments detailed in the Conciliation Agreement dated [*insert date*], this office determined that no other apparent violations of the laws that OFCCP enforces exist.  The Conciliation Agreement is effective as of the day it is signed by the Regional Director.

This determination does not preclude a future determination of noncompliance based on a finding that the commitments in the Conciliation Agreement are insufficient to achieve compliance.

Sincerely,

[*Name of district director*]
District Director

cc: [*insert name of the corporate CEO*]
    [*insert name of designated representative*]

Federal Contract Compliance Manual (FCCM)

**LETTER L-41:  CLOSURE LETTER FOR SUBSTANTIVE VIOLATIONS**

**(No Show Cause Notice Issued)**

*Certified Mail, Return Receipt Requested AND Electronic Mail*

[*Name of Establishment/Construction Contractor CEO*]
[*Title of CEO*]
[*Establishment/Construction Contractor Name*]
[*Street Address*]
[*City, State, Zip Code*]

Dear [*insert name of CEO*]:

The U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) recently completed a compliance evaluation of the equal employment opportunity policies and practices at your (*insert as appropriate:* establishment or construction work sites) in the (insert name of the geographic area).

Subject to the implementation of commitments detailed in our Conciliation Agreement dated (*insert date*), this office determined that no other apparent violations of the regulations that OFCCP enforces exist.  The Conciliation Agreement is effective as of the day it is signed by the regional director.  If OFCCP takes no action to modify the Conciliation Agreement within the timeframe provided, the agreement is deemed approved.

This determination does not preclude a future determination of noncompliance based on a finding that the commitments in the Conciliation Agreement are insufficient to achieve compliance.

Sincerely,


(*Name of regional director*)
Regional Director

Enclosure

cc: [*insert name of the corporate CEO*]
    [*insert name of the designated representative*]

# EXHIBIT G



**U.S. Equal Employment Opportunity Commission**

EEOC Headquarters
131 M Street, NE
Washington, DC 20507
EEO-1 Component 1 Instruction Booklet

# 2019 and 2020 EEO-1 Component 1 Data Collection Instruction Booklet



EEO-1 Component 1
**Data Collection**

Equal Employment Opportunity Commission
OMB Number 3046-0049 Exp: 06/30/2023

OMB Control No. 3046-0049
Expiration Date: June 30, 2023

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**COLLECTION OF 2019 AND 2020 EEO-1 COMPONENT 1 DATA**

**STANDARD FORM 100, Employer Information Report (EEO-1)**

**INSTRUCTION BOOKLET**

**The Employer Information Report (EEO-1 Component 1) (EEO-1 Report), Standard Form 100**, is collected annually under the authority of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq.*, as amended (Title VII).  All employers with 15 or more employees are covered by Title VII and are required to keep employment records as specified by Commission regulations.  Based on the number of employees and federal contract activities, certain employers are required to file an EEO-1 Component 1 Report on an annual basis under the Equal Employment Opportunity Commission (EEOC) and the U.S. Department of Labor Office of Federal Contract Compliance Programs (OFCCP) regulations.

See the Appendix of this document for the applicable provisions of Section 709(c) of Title VII, and the applicable EEOC regulations, Sections 1602.7-1602.14, Chapter XIV, Title 29 of the Code of Federal Regulations (CFR). State and local governments, public school systems, educational institutions, and local referral unions are covered by other employment reports and are excluded from the Employer Information Report (EEO-1), Standard Form 100.

In the interests of consistency, uniformity and economy, Standard Form 100 has been jointly developed by the EEOC and OFCCP, as a single form which meets the statistical needs of both programs.

As stated above, the filing of the Employer Information Report (EEO-1), Standard Form 100, is required by law; it is not voluntary. Under Section 709(c) of Title VII, the Equal Employment Opportunity Commission may compel an employer to file this form by obtaining an order from the United States District Court.

Under Section 209(a) of Executive Order 11246, the penalties for failure by a federal contractor or subcontractor to comply may include termination of the federal government contract and debarment from future federal contracts.

––––––––––––––––––––

**For ease of navigation,** this document includes hyperlinks to help navigate between the table of contents and each section. To visit a section of the document, click on the relevant title in the table of contents. You will be able to click the return to Table of Contents link at the top of each page to return to the table of contents.

# Table of Contents

Summary Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    1. Who Must File . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    2. How to File . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        a. EEO-1 Component 1 Electronic Filing Requirement . . . . . . . . . . . . . . . . . . . . . . 4

        b. Single-establishment employers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        c. Multi-establishment employers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    3. When to File . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    4. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    5. Requests for Information and Special Procedures . . . . . . . . . . . . . . . . . . . . . . . . 5

    6. Burden Estimate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

EEO-1 Terms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Type of Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Single-Establishment Company – Required Report . . . . . . . . . . . . . . . . . . . . . . . . 6

    Multi-Establishment Company – Required Reports . . . . . . . . . . . . . . . . . . . . . . . . 6

    Company Identification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Employers Who Are Required To File . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Employment Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Occupational Data. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Establishment Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Remarks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Appendix 1 – Definitions Applicable to All Employers . . . . . . . . . . . . . . . . . . . . . . . . 8

Appendix 2 – Definitions Applicable Only to Government Contractors
        Subject to Executive Order 11246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Appendix 3 – Responsibilities of Prime Contractors . . . . . . . . . . . . . . . . . . . . . . . . . 10

Appendix 4 – Race, Ethnicity, and Sex Identification . . . . . . . . . . . . . . . . . . . . . . . . 10

Appendix 5 – Description of Job Categories . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Appendix 6 – Legal Basis for Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

EEO-1 Component 1 Data Collection

Return to Table of Contents

**Summary Information**

## 1.   WHO MUST FILE

The Employer Information Report (EEO-1), Standard Form 100, Component 1, must be filed by –

(A) All private employers who are (1) subject to Title VII of the Civil Rights Act of 1964, as amended, with 100 or more employees EXCLUDING State and local governments, public primary and secondary school systems, institutions of higher education, American Indian or Alaska Native tribes and tax-exempt private membership clubs other than labor organizations; OR (2) subject to Title VII who have fewer than 100 employees if the company is owned or affiliated with another company, or there is centralized ownership, control or management (such as central control of personnel policies and labor relations) so that the group legally constitutes a single enterprise, and the entire enterprise employs a total of 100 or more employees.

AND

(B) All federal contractors who (1) are not exempt as provided for by 41 CFR 60-1.5; (2) have 50 or more employees; (3) are prime contractors or first-tier subcontractors; and (4) have a contract, subcontract, or purchase order amounting to $50,000 or more; OR serve as depositories of Government funds in any amount; or are financial institutions which are issuing and paying agents for U.S. Savings Bonds and savings notes.

Establishments located in the District of Columbia and the 50 states are required to submit Employer Information Report (EEO-1), Standard Form 100. No reports should be filed for establishments in Puerto Rico, the Virgin Islands, or other American Protectorates.

## 2.   HOW TO FILE

### a.       EEO-1 Component 1 Electronic Filing Requirement:

EEO-1 Component 1 reporting is an electronic, online application. The EEOC requires that EEO-1 Component 1 Reports be submitted via the *EEO-1 Component 1 Online Filing System*. Data can be entered directly into the online application or submitted as an electronically transmitted data file.

### b.       Single-establishment employers, i.e., employers doing business at only one establishment complete a single EEO-1 Component 1 online data record.

### c.       Multi-establishment employers, i.e., employers doing business at more than one establishment must complete online: (1) a report covering the principal or headquarters office (Type 3 Report or Headquarters Report); (2) a separate establishment report (Type 4 Report) for **each** establishment employing 50 or more persons; and (3) a separate establishment report (Type 8 Report) for **each** establishment employing fewer than 50 employees, OR an "Establishment List" (Type 6 Report), showing the name, address, and total employment for **each** establishment employing fewer than 50 persons.  For the *EEO-1 Component 1 Online Filing System*, employers using "Establishment" List reports (Type 6 Report), must enter all employment data into the "Consolidated" Report (Type 2 Report). In

---

4

EEO-1 Component 1 Data Collection

the *EEO-1 Component 1 Online Filing System*, all keyed employment data including data from the establishment Type 8 "Establishment" Reports will automatically transfer to populate the overall Consolidated Report (Type 2 Report).

The total number of employees indicated on the Headquarters Report, **PLUS** the establishment reports, **PLUS** the list of establishments employing fewer than 50 employees, **MUST** equal the total number of employees shown on the Consolidated Report.  Employment data for multi-establishment companies, including parent corporations and their subsidiary holdings, must report all employees working at each company establishment or subsidiary establishment. For the purposes of this report, the term **parent corporation** refers to any corporation which owns all or the majority stock of another corporation so that the latter relates to it as a subsidiary.

### 3.   WHEN TO FILE

The EEO-1 Component 1 Report for calendar years 2019 and 2020 must be filed no later than October 25, 2021. This filing deadline date is posted on the EEOC's dedicated website for its EEO data collections at www.EEOCdata.org, and on the EEOC's public website at www.eeoc.gov. For the workforce snapshot pay period, employment figures from any one pay period between October 1st and December 31st in the applicable calendar year may be used as the workforce snapshot pay period.

### 4.   CONFIDENTIALITY

All reports and any information from individual reports are subject to the confidentiality provisions of Section 709(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-8(e), as amended (Title VII) and may not be made public by the EEOC prior to the institution of any proceeding under Title VII involving the EEO-1 Component 1 data.  Any EEOC employee who violates this prohibition may be found guilty of a criminal misdemeanor and could be fined or imprisoned.  The confidentiality requirements allow the EEOC to publish only aggregated data, and only in a manner that does not identify any particular filer or reveal any individual employee's personal information.

### 5.   REQUESTS FOR INFORMATION AND SPECIAL PROCEDURES

Pursuant to 29 CFR § 1602.10, if an employer claims that the preparation or filing of the report would create undue hardship, the employer may apply to the Commission for an exemption. Employers must submit requests in writing to Filersupport@eeocdata.org. Requests for special reporting procedures or alternative reporting under 29 CFR § 1602.10 should also be submitted to the Commission in writing to Filersupport@eeocdata.org. Requests under 29 CFR § 1602.10 should be submitted to the Commission prior to the filing deadline for the report. For the 2019 and 2020 EEO-1 Component 1 data collection, the filling deadline is Monday, October 25, 2021.

### 6.   BURDEN ESTIMATE

Comments regarding this collection of information, including suggestions for reducing burden, can be sent at any time to:  Filersupport@EEOCdata.org and:

EEO-1 Component 1 Data Collection

Paperwork Reduction Act (3046-0049)
Office of Management and Budget
Washington, DC 20503.

The full text of the OMB regulations on the Paperwork Reduction Act may be found at 5 CFR Part 1320.

## EEO-1 TERMS

### Type of Report

### Single-Establishment Company – Required Report

(1) Single-establishment Report (Type 1 Report)

### Multi-Establishment Company – Required Reports

(2) Consolidated Report (Type 2 Report)
(3) Headquarters Report (Type 3 Report)
(4) Establishment Report (Type 4 Report) (Establishments with 50 or more employees)
(8) Establishment Report (Type 8 Report) (Establishments with less than 50 employees (Option 1)
(6) Establishment List Report (Type 6 Report) (Establishments with less than 50 employees (Option 2)

### Company Identification

Refers to the company name and address of the headquarters office of the multi-establishment company (Type 2 and Type 3 Reports); or the establishment name and address.

### Employers Who Are Required To File

All employers required to file the EEO-1 Component 1 Report MUST answer these four questions in reference to the "workforce snapshot" pay period (i.e., employment figures from any pay period between October 1st and December 31st of the reference year):

1. Did the company or any of its establishments have 50 or more employees, have a federal contract, subcontract or purchase order amounting to $50,000 or more AND was not exempt as provided for by 41 CFR 60-1.5?

2. Did the company or any of its establishments have 50 or more employees, serve as depositories of Government funds in any amount; or are financial institutions which are issuing and paying agents for U.S. Savings Bonds and savings notes?

3. Did the company employ 100 or more employees?

4. Was the company affiliated through common ownership and/or centralized management with other entities in an enterprise with a total employment of 100 or more?

If the answer is "Yes" to Questions 1 or 2, please provide the company's Dun and Bradstreet identification number. If the answer is 'Yes' to any of these questions, complete the EEO-1 Component 1 Report. Otherwise, the company is not required to file.  The online filing

system will indicate that the company is ineligible, and the filer will then be directed to the Certification page to certify that the company is indeed ineligible to file.

### Employment Data

Employment data must include ALL full-time and part-time employees **who were employed during the pay period selected by the employer between October 1 and December 31 of the reference year (i.e., workforce snapshot pay period)**, except those employees specifically excluded as indicated in the Appendix.  Employees must be counted by sex and race/ethnicity for each of the ten occupational categories. See Appendix for detailed explanation of the job categories and race and ethnicity identification.

Employers must report total employees in the workforce snapshot pay period for each job category. Additionally, each employee must be counted in only one of the race/ethnicity and sex combinations, and only in one of the ten job categories.

The total reported employees for each job category should equal the sum of each employee reported for that job category across the race/ethnicity and sex categories. Further, the total number employees for a particular race/ethnicity and sex category should equal the sum of that group across all of the job categories.

### Occupational Data

Employment data must be reported by job category. Report each employee in only one job category.  In order to simplify and standardize the method of reporting, all jobs are considered as belonging in one of the broad job categories shown in the EEO-1 Component 1 Report. A description of the EEO-1 job categories can be found in the 'Appendix' section of this document. You can also find information on the most recent SOC codes and a crosswalk between the older and newer versions of the SOC codes on the Census Bureau website (Standard Occupation Codes).

### Establishment Information

The major activity should be sufficiently descriptive to identify the industry and product produced or service provided. If an establishment is engaged in more than one activity, describe the activity at which the greatest number of employees work. Information about the industry codes can be found on the Census Bureau's website (https://www.census.gov/naics/) as well as a crosswalk between the 2012 and 2017 NAICS codes (Industry and Occupation Code Lists & Crosswalks).

The description of the major activity indicated on the Headquarters Report (Type 3 Report) must reflect the dominant economic activity of the company in which the greatest numbers of employees are engaged.

### Remarks

Include in this section any remarks, explanations, or other pertinent information regarding this report.

Return to Table of Contents

## Certification

Once all reports have been completed for the company, the name and contact information for the Certifying Official and the person to contact regarding the report should be entered. The Certifying Official should check the box on the screen verifying that the information is accurate and that all statements were prepared in accordance with these instructions.

## Appendix 1. DEFINITIONS APPLICABLE TO ALL EMPLOYERS

*a.* **"Commission"** refers to the Equal Employment Opportunity Commission.

*b.* **"OFCCP"** refers to the Office of Federal Contract Compliance Programs, U.S. Department of Labor, established to implement Executive Order 11246, as amended.

*c.* **"Employer"** under Section 701(b), Title VII of the Civil Rights Act of 1964, as amended, Means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include the United States, a corporation wholly owned by the government of the United States, American Indian or Alaska Native tribes, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5 of the United States Code), or a bona fide private membership club (other than a labor organization) which is exempt from taxation under Section 501(c) of the Internal Revenue Code of 1954; OR any person or entity subject to Executive Order 11246 who is a federal government prime contractor or subcontractor at any tier (including a bank or other establishment serving as a depository of federal government funds, or an issuing and paying agent of U.S. Savings Bonds and savings notes, or a holder of a federal government bill of lading) or a federally-assisted construction prime contractor or subcontractor at any tier.

*d.* **"Employee"** means any individual on the payroll of an employer who is an employee for purposes of the employers withholding of Social Security taxes except insurance sales agents who are considered to be employees for such purposes solely because of the provisions of 26 USC 3121 (d)(3)(B) (the Internal Revenue Code). Leased employees are included in this definition.

*e.* **"Leased Employee"**, for EEO-1 Component 1 reporting only, means a permanent employee provided by an employment agency for a fee to an outside company for which the employment agency handles all personnel tasks including payroll, staffing, benefit payments and compliance reporting. The employment agency shall include leased employees in its EEO-1 report. **For EEO-1 Component 1 reporting purposes only**, the term "employee" shall not include persons who are hired on a casual basis for a specified time, or for the duration of a specified job (for example, a person at a construction site whose employment relationship is expected to terminate with the end of the employee's work at the site); persons temporarily employed in any industry other than construction, such as temporary office workers, mariners, stevedores, lumber yard workers, etc., who are hired through a hiring hall or other referral arrangement, through an employee contractor or agent, or by some individual hiring arrangement, or persons (**EXCEPT** leased employees) on the payroll of an employment agency who are referred by such agency for work to be performed on the premises of another

Return to Table of Contents

employer under that employers direction and control.  These definitions are only for purposes of clarifying who reports these individuals on the EEO-1 and do not have legal ramifications as to the analysis of whether a particular individual is an employee or an independent contractor.  That is done under the factors enumerated by the Supreme Court in *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318 (1992).

f. **"Commerce"** means trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof.

g. **"Industry Affecting Commerce"** means any activity, business or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry affecting commerce within the meaning of the Labor Management Reporting and Disclosure Act of 1959. Any employer of 15 or more persons is presumed to be in an industry affecting commerce.

h. **"Establishment"** is generally a single physical location where business is conducted or where services or industrial operations are performed (e.g., factory, mill, store, hotel, movie theater, mine, farm, airline terminal, sales office, warehouse, or central administrative office (definition adapted from the North American Industry Classification System, 2012).

Units at different physical locations, even though engaged in the same kind of business operation, must be reported as separate establishments. For locations involving construction, transportation, communications, electric, gas, and sanitary services, oil and gas fields, and similar types of physically dispersed industrial activities, however, it is not necessary to list separately each individual site, project, field, line, etc., unless it is treated by you as a separate legal entity. For these types of activities, list as establishments only those relatively permanent main or branch offices, terminals, stations etc., which are either:  (a) directly responsible for supervising such dispersed activities (where employees work from home, they should be reported as if working at the establishment where their supervisor is reported to work); or (b) the base from which personnel and equipment operate to carry out these activities. (Where these dispersed activities cross State lines, at least one such establishment should be listed for each State involved.)

i. **"Major Activity"** means the major product or group of products produced or handled, or services rendered by the reporting unit (e.g., manufacturing airplane parts, retail sales of office furniture) in terms of the activity at which the greatest number of all employees work. The description includes the type of product manufactured or sold or the type of service provided.  "Major Activity" is based on the industrial definitions developed by the federal government as adopted by the EEOC (For example, the *North American Industry Classification System*, 2017).

It is the opinion of the Commission that Section 702 of Title VII of the Civil Rights Act of 1964, as amended, does not authorize a complete exemption of religious organizations from the coverage of the Act or of the reporting requirements of the Commission.  The exemption for religious organizations applies to their employment of individuals of a particular religion

to perform work connected with the organization's activities. Therefore, since the Standard Form 100 does not provide for information as to the religion of employees, religious organizations must report all information required by this report.

### Appendix 2. DEFINITIONS APPLICABLE ONLY TO GOVERNMENT CONTRACTORS SUBJECT TO EXECUTIVE ORDER 11246

a) **"Order"** means Executive Order 11246, as amended.

b) **"Contract"** means any government contract or any federally-assisted construction contract.

c) **"Prime Contractor"** means any employer having a government contract or any federally-assisted construction contract, or any employer serving as a depository of federal government funds.

d) **"Subcontractor"** means any employer having a contract with a prime contractor or another subcontractor calling for supplies or services required for the performance of a government  contract or federally assisted construction contract.

e) **"Contracting Agency"** means any department, agency and establishment in the executive branch of the government, including any wholly-owned government corporation, which enters into contracts.

f) **"Administering Agency"** means any department, agency and establishment in the executive branch of the government, including any wholly-owned government corporation, which administers a program involving federally-assisted construction contracts.

### Appendix 3. RESPONSIBILITIES OF PRIME CONTRACTORS

a) At the time of an award of a subcontract subject to these reporting requirements, the prime  contractor shall inform the subcontractor of its responsibility to submit annual EEO-1 Component 1 employment data in accordance with these instructions.

b) If prime contractors are required by their Contracting Officer or subcontractors by their prime contractors, to submit notification of filing, they shall do so by ordinary correspondence. However, such notification is not required by and should not be sent to the EEOC.

### Appendix 4. RACE, ETHNICITY, AND SEX IDENTIFICATION

Self-identification is the preferred method of identifying the race and ethnicity information necessary for the EEO-1 Component 1 report. Employers are required to attempt to allow employees to use self-identification to complete the EEO-1 Component 1 report.

As to the method of collecting data, the basic principles for ethnic and racial self-identification for purposes of the EEO-1 report are:

(1) Offer employees the opportunity to self-identify.

(2) Provide a statement about the voluntary nature of this inquiry for employees. For example, language such as the following may be used (employers may adapt this language):

---

Return to Table of Contents

"The employer is subject to certain governmental recordkeeping and reporting requirements for the administration of civil rights laws and regulations. In order to comply with these laws, the employer invites employees to voluntarily self-identify their race or ethnicity. Submission of this information is voluntary and refusal to provide it will not subject you to any adverse treatment. The information obtained will be kept confidential and may only be used in accordance with the provisions of applicable laws, executive orders, and regulations, including those that require the information to be summarized and reported to the federal government for civil rights enforcement. When reported, data will not identify any specific individual."

If an employee declines to self-identify his or her race and/or ethnicity, employment records or observer identification may be used.  Where records are maintained, it is recommended that they be kept separately from the employee's basic personnel file or other records available to those responsible for personnel decisions.

Race and ethnicity designations as used by the Equal Employment Opportunity Commission for the EEO-1 Component 1 do not denote scientific definitions of anthropological origins.  In addition, such designations do not control who is protected by Title VII's prohibitions against employment discrimination based on race or national origin.

**Definitions of the EEO-1 race and ethnicity categories are as follows:**

**Hispanic or Latino** - A person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin regardless of race.

**White** - A person having origins in any of the original peoples of Europe, the Middle East, or North Africa.

**Black or African American**  - A person having origins in any of the black racial groups of Africa.

**Native Hawaiian or Other Pacific Islander** - A person having origins in any of the peoples of Hawaii, Guam, Samoa, or other Pacific Islands.

**Asian** - A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian Subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam.

**American Indian or Alaska Native** - A person having origins in any of the original peoples of North and South America (including Central America), and who maintain tribal affiliation or community attachment.

**Two or More Races** - All persons who identify with more than one of the above five races (White, Black or African American, Native Hawaiian or Other Pacific Islander, Asian, American Indian or Alaska Native). For the purposes of this group, identifying as Hispanic or Latino and only one of the listed 5 race groups does NOT qualify.

**Instructions for assigning employees into the race/ethnicity categories:**

Return to Table of Contents

**Hispanic or Latino** - Include all employees who answer "YES" to the question, "Are you Hispanic or Latino?" in the appropriate category for both males and females as indicated.

**White (Not Hispanic or Latino)** - Include all employees who identify as White and no other race, and who did not answer "YES" to the question "Are you Hispanic or Latino?" for both males and females as indicated in the appropriate category.

**Black or African American (Not Hispanic or Latino)** - Include all employees who identify as Black or African American and no other race, and who did not answer "YES" to the question "Are you Hispanic or Latino?" for both males and females as indicated in the appropriate category.

**Native Hawaiian or Other Pacific Islander (Not Hispanic or Latino)** - Include all employees who identify as Native Hawaiian or Other Pacific Islander and no other race, and who did not answer "YES" to the question "Are you Hispanic or Latino?" for both males and females as indicated in the appropriate category.

**Asian (Not Hispanic or Latino)** - Include all employees who identify as Asian and no other race, and who did not answer "YES" to the question "Are you Hispanic or Latino?" for both males and females as indicated in the appropriate category.

**American Indian or Alaska Native (Not Hispanic or Latino)** - Include all employees who identify as American Indian or Alaska Native and no other race, and who did not answer "YES" to the question "Are you Hispanic or Latino?" for both males and females as indicated in the appropriate category.

**Two or More Races (Not Hispanic or Latino)** - Include all employees who identify with more than one of the above five races, and who did not answer "YES" to the question "Are you Hispanic or Latino?" for both males and females as indicated in the appropriate category.

## Appendix 5. DESCRIPTION OF JOB CATEGORIES

The major job categories are listed below, including a brief description of the skills and training required for occupations in that category and examples of the job titles that fit each category. The examples shown below are illustrative and not intended to be exhaustive of all job titles in a job category. These job categories are primarily based on the average skill level, knowledge, and responsibility involved in each occupation within the job category.

The "Officials and Managers" category as a whole is to be divided into the following two subcategories: "Executive/Senior Level Officials and Managers," and "First/Mid-Level" Officials and Managers." These subcategories are intended to mirror the employers own well established hierarchy of management positions. Small employers who may not have two well-defined hierarchical steps of management should report their management employees in the appropriate categories.

***Executive/Senior Level Officials and Managers.*** Individuals who plan, direct and formulate policies, set strategy and provide the overall direction of enterprises/organizations for the development and delivery of products or services, within the parameters approved by boards

EEO-1 Component 1 Data Collection

Return to Table of Contents

of directors or other governing bodies. Residing in the highest levels of organizations, these executives plan, direct or coordinate activities with the support of subordinate executives and staff managers. They include, in larger organizations, those individuals within two reporting levels of the CEO, whose responsibilities require frequent interaction with the CEO. Examples of these kinds of managers are: chief executive officers, chief operating officers, chief financial officers, line of business heads, presidents or executive vice presidents of functional areas or operating groups, chief information officers, chief human resources officers, chief marketing officers, chief legal officers, management directors and managing partners.

**First/Mid-Level Officials and Managers.** Individuals who serve as managers, other than those who serve as Executive/Senior Level Officials and Managers, including those who oversee and direct the delivery of products, services or functions at group, regional or divisional levels of organizations. These managers receive directions from the Executive/Senior Level management and typically lead major business units. They implement policies, programs and directives of executive/senior management through subordinate managers and within the parameters set by Executive/Senior Level management. Examples of these kinds of managers are: vice presidents and directors, group, regional or divisional controllers; treasurers; human resources, information systems, marketing, and operations managers. The "First/Mid-Level Officials and Managers" subcategory also includes those who report directly to middle managers. These individuals serve at functional, line of business segment or branch levels and are responsible for directing and executing the day-to-day operational objectives of enterprises/organizations, conveying the directions of higher level officials and managers to subordinate personnel and, in some instances, directly supervising the activities of exempt and non-exempt personnel. Examples of these kinds of managers are: first-line managers; team managers; unit managers; operations and production mangers; branch managers; administrative services managers; purchasing and transportation managers; storage and distribution managers; call center or customer service managers; technical support managers; and brand or product managers.

**Professionals.** Most jobs in this category require bachelor and graduate degrees, and/or professional certification. In some instances, comparable experience may establish a person's qualifications. Examples of these kinds of positions include: accountants and auditors; airplane pilots and flight engineers; architects; artists; chemists; computer programmers; designers; dieticians; editors; engineers; lawyers; librarians; mathematical scientists; natural scientists; registered nurses; physical scientists; physicians and surgeons; social scientists; teachers; and surveyors.

**Technicians.** Jobs in this category include activities that require applied scientific skills, usually obtained by post-secondary education of varying lengths, depending on the particular occupation, recognizing that in some instances additional training, certification, or comparable experience is required. Examples of these types of positions include: drafters; emergency medical technicians; chemical technicians; and broadcast and sound engineering technicians.

**Sales Workers.** These jobs include non-managerial activities that wholly and primarily involve direct sales. Examples of these types of positions include: advertising sales agents;

EEO-1 Component 1 Data Collection

insurance sales agents; real estate brokers and sales agents; wholesale sales representatives; securities, commodities, and financial services sales agents; telemarketers; demonstrators; retail salespersons; counter and rental clerks; and cashiers.

***Administrative Support Workers.*** These jobs involve non-managerial tasks providing administrative and support assistance, primarily in office settings. Examples of these types of positions include: office and administrative support workers; bookkeeping; accounting and auditing clerks; cargo and freight agents; dispatchers; couriers; data entry keyers; computer operators; shipping, receiving and traffic clerks; word processors and typists; proofreaders; desktop publishers; and general office clerks.

***Craft Workers*** (formerly Craft Workers (Skilled)). Most jobs in this category include higher skilled occupations in construction (building trades craft workers and their formal apprentices) and natural resource extraction workers. Examples of these types of positions include: boilermakers; brick and stone masons; carpenters; electricians; painters (both construction and maintenance); glaziers; pipe layers, plumbers, pipefitters and steamfitters; plasterers; roofers; elevator installers; earth drillers; derrick operators; oil and gas rotary drill operators; and blasters and explosive workers. This category also includes occupations related to the installation, maintenance and part replacement of equipment, machines and tools, such as: automotive mechanics; aircraft mechanics; and electric and electronic equipment repairers. This category also includes some production occupations that are distinguished by the high degree of skill and precision required to perform them, based on clearly defined task specifications, such as: millwrights; etchers and engravers; tool and die makers; and pattern makers.

***Operatives*** (formerly Operatives (Semi-skilled)). Most jobs in this category include intermediate skilled occupations and include workers who operate machines or factory-related processing equipment. Most of these occupations do not usually require more than several months of training. Examples include: textile machine workers; laundry and dry cleaning workers; photographic process workers; weaving machine operators; electrical and electronic equipment assemblers; semiconductor processors; testers, graders and sorters; bakers; and butchers and other meat, poultry and fish processing workers. This category also includes occupations of generally intermediate skill levels that are concerned with operating and controlling equipment to facilitate the movement of people or materials, such as: bridge and lock tenders; truck, bus or taxi drivers; industrial truck and tractor (forklift) operators; parking lot attendants; sailors; conveyor operators; and hand packers and packagers.

***Laborers and Helpers*** (formerly Laborers (Unskilled)). Jobs in this category include workers with more limited skills who require only brief training to perform tasks that require little or no independent judgment. Examples include:  production and construction worker helpers; vehicle and equipment cleaners; laborers; freight, stock and material movers; service station attendants; construction laborers; refuse and recyclable materials collectors; septic tank servicers; and sewer pipe cleaners.

***Service Workers.*** Jobs in this category include food service, cleaning service, personal service, and protective service activities. Skill may be acquired through formal training, job- related training or direct experience. Examples of food service positions include: cooks; bartenders;

(148 of 300), Page 148 of 300 Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 148 of 300
Case 3:22-cv-07182-WHA Document 39-1 Filed 10/18/23 Page 659 of 1025

Return to Table of Contents

and other food service workers. Examples of personal service positions include: medical assistants and other healthcare support positions; hairdressers; ushers; and transportation attendants. Examples of cleaning service positions include: cleaners; janitors; and porters. Examples of protective service positions include: transit and railroad police and fire fighters; guards; private detectives and investigators.

## Appendix 6. LEGAL BASIS FOR REQUIREMENTS

### SECTION 709(c), TITLE VII, CIVIL RIGHTS ACT OF 1964, AS AMENDED

Execution, retention, and preservation of records; reports to Commission; training program records; appropriate relief from regulation or order for undue hardship; procedure for exemption; judicial action to compel compliance.

Every employer, employment agency, and labor organization subject to this subchapter shall: (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom as the Commission shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this title or the regulations or orders thereunder. The Commission shall, by regulation, require each employer, labor organization, and joint labor-management committee subject to this subchapter which controls an apprenticeship or other training program to maintain such records as are reasonably necessary to carry out the purposes of this subchapter, including, but not limited to, a list of applicants who wish to participate in such program, including the chronological order in which applications were received, and to furnish to the Commission upon request, a detailed description of the manner in which persons are selected to participate in the apprenticeship or other training program. Any employer, employment agency, labor organization, or joint labor-management committee which believes that the application to it of any regulation or order issued under this section would result in undue hardship may apply to the Commission for an exemption from the application of such regulation or order, and, if such application for an exemption is denied, bring a civil action in the United States District Court for the district where such records are kept. If the Commission or the court, as the case may be, finds that the application of the regulation or order to the employer, employment agency, or labor organization in question would impose an undue hardship, the Commission or the court, as the case may be, may grant appropriate relief. If any person required to comply with the provisions of this subsection fails or refuses to do so, the United States District Court for the district in which such person is found, resides, or transacts business, shall, upon application of the Commission, or the Attorney General in a case involving a government, governmental agency or political subdivision, have jurisdiction to issue to such person an order requiring him to comply.

### TITLE 29, CHAPTER XIV CODE OF FEDERAL REGULATIONS

*Subpart B -- Employer Information Report*

### §1602.7 Requirement for filing of report.

On or before September 30th of each year, every employer that is subject to Title VII of the

Civil Rights Act of 1964, as amended, and that has 100 or more employees, shall file with the Commission or its delegate executed copies of Standard Form 100, as revised (otherwise known as "Employer Information Report EEO-1"), in conformity with the directions set forth in the form and accompanying instructions. Notwithstanding the provisions of §1602.14, every such employer shall retain at all times at each reporting unit, or at company or divisional headquarters, a copy of the most recent report filed for each such unit and shall make the same available if requested by an officer, agent, or employee of the Commission under the authority of section 710 of Title VII. Appropriate copies of Standard Form 100 in blank will be supplied to every employer known to the Commission to be subject to the reporting requirements, but it is the responsibility of all such employers to obtain necessary supplies of the form from the Commission or its delegate prior to the filing date.

**§1602.8 Penalty for making of willfully false statements on report.**

The making of willfully false statements on Report EEO-1 is a violation of the United States Code, Title 18, section 1001, and is punishable by fine or imprisonment as set forth therein.

**§1602.9 Commission's remedy for employers failure to file report.**

Any employer failing or refusing to file Report EEO-1 when required to do so may be compelled to file by order of a U.S. District Court, upon application of the Commission.

**§1602.10 Employer's exemption from reporting requirements.**

If an employer claims that the preparation or filing of the report would create undue hardship, the employer may apply to the Commission for an exemption from the requirements set forth in this part, according to instruction 5. If an employer is engaged in activities for which the reporting unit criteria described in section 5 of the instructions are not readily adaptable, special reporting procedures may be required. If an employer seeks to change the date for filing its Standard Form 100 or seeks to change the period for which data are reported, an alternative reporting date or period may be permitted. In such instances, the employer should so advise the Commission by submitting to the Commission or its delegate a specific written proposal for an alternative reporting system prior to the date on which the report is due.

**§1602.11 Additional reporting requirements.**

The Commission reserves the right to require reports, other than that designated as the Employer Information Report EEO-1, about the employment practices of individual employers or groups of employers whenever, in its judgment, special or supplemental reports are necessary to accomplish the purposes of Title VII, the ADA, or GINA.  Any system for the requirement of such reports will be established in accordance with the procedures referred to in section 709(c) of Title VII, section 107 of the ADA, or section 207(a) of GINA and as otherwise prescribed by law.

*Subpart C--Recordkeeping by Employers*

**§1602.12 Records to be made or kept.**

The Commission has not adopted any requirement, generally applicable to employers, that records be made or kept. It reserves the right to impose recordkeeping requirements

Return to Table of Contents

upon individual employers or groups of employers subject to its jurisdiction whenever, in its judgment, such records (a) are necessary for the effective operation of the EEO-1 reporting system or of any special or supplemental reporting system as described above; or (b) are further required to accomplish the purposes of title VII, the ADA, or GINA. Such recordkeeping requirements will be adopted in accordance with the procedures referred to in section 709(c) of title VII, section 107 of the ADA, or section 207(a) of GINA, and otherwise prescribed by law.

### §1602.13 Records as to racial or ethnic identity of employees.

Employers may acquire the information necessary for completion of items 5 and 6 of Report EEO-1 either by visual surveys of the work force, or at their option, by the maintenance of post-employment records as to the identity of employees where the same is permitted by State law. In the latter case, however, the Commission recommends the maintenance of a permanent record as to the racial or ethnic identity of an individual for purpose of completing the report form only where the employer keeps such records separately from the Employee's basic personnel form or other records available to those responsible for personnel decisions, e.g., as part of an automatic data processing system in the payroll department.

### §1602.14 Preservation of records made or kept.

Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of termination. Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII, the ADA, or GINA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring an action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the Commission, or by the Attorney General, the date on which such litigation is terminated.

# EXHIBIT H

Joint Reporting
Committee

● **Equal Employment
Opportunity Com-
mission**

● **Office of Federal
Contract Compli-
ance Programs (Labor)**

# EQUAL EMPLOYMENT OPPORTUNITY

## EMPLOYER INFORMATION REPORT EEO—1

Standard Form 100
REV. 01/2008

O.M.B.No. 3048-0007
FORM APPROVAL: www.reginfo.gov/public/do/PRAMain
100-214

---

### Section A—TYPE OF REPORT
Refer to instructions for number and types of reports to be filed.

1. Indicate by marking in the appropriate box the type of reporting unit for which this copy of the form is submitted. (MARK ONLY ONE BOX).

(1) ☐ Single-establishment Employer Report

Multi-establishment Employer:
(2) ☒ Consolidated Report (Required)
(3) ☐ Headquarters Unit Report (Required)
(4) ☒ Individual Establishment Report (submit one for each establishment with 50 or more employees)
(5) ☒ Special Report

2. Total number of reports being filed by this Company (Answer on Consolidated Report only) _____

| Section B—COMPANY IDENTIFICATION (To be answered by all employers) | OFFICE USE ONLY |
|---|---|
| 1. Parent Company | |
| a. Name of parent company (owns or controls establishment in item 2) omit if same as label | a. |
| Address (Number and street) | b. |
| City or town                State                ZIP code | c. |
| 2. Establishment for which this report is filed. (Omit if same as label) | * |
| a. Name of establishment | d. |
| Address (Number and street)    City or Town    County    State    ZIP code | e. |
| b. Employer identification No. (IRS 9-DIGIT TAX NUMBER) | f. |

c. Was an EEO–1 report filed for this establishment last year? ☐ Yes ☐ No

### Section C—EMPLOYERS WHO ARE REQUIRED TO FILE (To be answered by all employers)

| | | |
|---|---|---|
| ☐ Yes ☐ No | 1. | Does the entire company have at least 100 employees in the payroll period for which you are reporting? |
| ☐ Yes ☐ No | 2. | Is your company affiliated through common ownership and/or centralized management with other entities in an enterprise with a total employment of 100 or more? |
| ☐ Yes ☐ No | 3. | Does the company or any of its establishments (a) have 50 or more employees <u>AND</u> (b) is not exempt as provided by 41 CFR 60–1.5, <u>AND</u> either (1) is a prime government contractor or first-tier subcontractor, and has a contract, subcontract, or purchase order amounting to $50,000 or more, or (2) serves as a depository of Government funds in any amount or is a financial institution which is an issuing and paying agent for U.S. Savings Bonds and Savings Notes? <br> If the response to question C–3 is yes, please enter your Dun and Bradstreet identification number (if you have one): ☐☐☐☐☐☐☐☐☐ |

NOTE: If the answer is yes to questions 1, 2, or 3, complete the entire form, otherwise skip to Section G.

**Section D-EMPLOYMENT DATA**

Employment at this establishment -- Report all permanent full- and part-time employees including apprentices and on-the-job trainees unless specifically excluded as set forth in the instructions. E and in all columns. Blank spaces will be considered as zeros.

| Job Categories | | Number of Employees (Report employees in only one category) | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Race/Ethnicity | | | | | | | | | | | | |
| | | Hispanic or Latino | | Not-Hispanic or Latino | | | | | | | | | | |
| | | | | Male | | | | | | Female | | | | |
| | | Male | Female | White | Black or African American | Native Hawaiian or Other Pacific Islander | Asian | Aamerican Indian or Alaska Native | Two or more races | White | Black or African American | Native Hawaiian or Other Pacific Islander | Asian |
| | | A | B | C | D | E | F | G | H | I | J | K | L |
| Executive/Senior Level Officials and Managers | 1.1 | | | | | | | | | | | | |
| First/Mid-Level Officials and Managers | 1.2 | | | | | | | | | | | | |
| Professionals | 2 | | | | | | | | | | | | |
| Technicians | 3 | | | | | | | | | | | | |
| Sales Workers | 4 | | | | | | | | | | | | |
| Administrative Support Workers | 5 | | | | | | | | | | | | |
| Craft Workers | 6 | | | | | | | | | | | | |
| Operatives | 7 | | | | | | | | | | | | |
| Laborers and Helpers | 8 | | | | | | | | | | | | |
| Service Workers | 9 | | | | | | | | | | | | |
| TOTAL | 10 | | | | | | | | | | | | |
| PREVIOUS YEAR TOTAL | 11 | | | | | | | | | | | | |

1. Date(s) of payroll period used: _____ (Omit on the Consolidated Report.)

**Section E - ESTABLISHMENT INFORMATION (Omit on the Consolidated Report.)**

1.    What is the major activity of this establishment? (Be specific, i.e., manufacturing steel castings, retail grocer, wholesale plumbing supplies, title ins Include the specific type of product or type of service provided, as well as the principal business or industrial activity.)

**Section F - REMARKS**

Use this item to give any identification data appearing on the last EEO-1 report which differs from that given above, explain major changes in compositio pertinent information.

**Section G - CERTIFICATION**

Check 1 ☐ All reports are accurate and were prepared in accordance with the instructions. (Check on Consolidated Report only.)
one  2 ☐ This report is accurate and was prepared in accordance with the instructions.

| Name of Certifying Official | Title | Signature | |
|---|---|---|---|
| Name of person to contact regarding this report | Title | Address (Number and Street) | |
| City and State | Zip Code | Telephone No. (including Area Code and Extension) | En |

All reports and information obtained from individual reports will be kept confidential as required by Section 709(e) of Title VII.
WILLFULLY FALSE STATEMENTS ON THIS REPORT ARE PUNISHABLE BY LAW, U.S. CODE, TITLE 18, SECTION 1001

# EXHIBIT I

(155 of 300), Page 155 of 300 Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 155 of 300

10/18/23, 6:51 PM    Case 3:22-cv-07182-WHA    Document 39    Freedom of Information Act (FOIA) Frequently Asked Questions | U.S. Department of L



**U.S. DEPARTMENT OF LABOR**

**Office of Federal Contract Compliance Programs**

# Freedom of Information Act (FOIA) Frequently Asked

1. Why is OFCCP providing FAQs on this topic?
2. What are EEO-1 Report data?
3. Are EEO-1 data protected from public disclosure?
4. Are EEO-1 data received by OFCCP subject to the provisions of the Freedom of Information Act (FOIA)?
5. What is FOIA Exemption 4?
6. How does OFCCP determine to release or withhold EEO-1 data?
7. What is the Executive Order 12600 process?
8. Has OFCCP changed its policy with regard to the processing of FOIA requests for EEO-1 information?
9. What information regarding an employer can I request from OFCCP under Freedom of Information Act?

## Why is OFCCP providing FAQs on this topic?

OFCCP is committed to full compliance with the Freedom of Information Act (FOIA), including its exemptions. OFCCP is well aware that it possesses sensitive and confidential information from contractors, including confidential commercial and proprietary information that could be protected from disclosure by Exemption 4. OFCCP recognizes the importance of protecting such confidential commercial and proprietary information where permitted and is committed to doing so in accordance with applicable law. OFCCP is issuing these FAQs to make its process for considering requests to protect information under Exemption 4, and the information needed from contractors as part of that process, as transparent as possible. OFCCP believes it would be instructive to do so in the context of EEO-1 data, which can include such information and may be subject to protection under Exemption 4 under appropriate circumstances.

Back to Top

## What are EEO-1 Report data?

The EEO-1 Report is a compliance survey mandated by federal statute and regulations. The survey requires company employment data to be categorized by race/ethnicity, gender and job category.[1]

Back to Top

## Are EEO-1 data protected from public disclosure?

EEOC is prohibited by federal statute[2] from making public the employment data derived from any of its compliance surveys unless a Title VII charge has been filed. However, courts have ruled that the Title VII prohibition against disclosure does not apply to OFCCP's collection of EEO-1 data because such data is collected under the authority of Executive Order 11246.[3] Unlike Title VII, Executive Order 11246 has no language specifically prohibiting the disclosure of EEO-1 information, but other protections from disclosure may apply.

Back to Top

## Are EEO-1 data received by OFCCP subject to the provisions of the Freedom of Information Act (FOIA)?

10/18/23, 6:51 PM

Freedom of Information Act | OFCCP Frequently Asked Questions | U.S. Department of L...

OFCCP recognizes the importance of protecting confidential commercial and proprietary information of contractors where permitted and is committed to doing so in accordance with applicable law. OFCCP is committed to making its process for considering requests to protect information under Exemption 4, and the information needed from contractors as part of that process, as transparent as possible.

Back to Top

---

## What is the Executive Order 12600 process?

Executive Order 12600 established a formal, procedural structure for notifying persons who submit "confidential commercial information" to the United States when that information becomes the subject of a FOIA request. That term is defined in Executive Order 12600 as "records provided to the government by a submitter that arguably contain material exempt from release under Exemption 4 of the [FOIA], because disclosure could reasonably be expected to cause substantial competitive harm." Executive Order 12600 is based on the principle that companies are entitled to such notification and an opportunity to object to disclosure before an agency makes a possible disclosure determination.

The Executive Order 12600 process begins with a certified notification to the business. OFCCP grants the company 30 calendar days from the date of receipt of the notification to agree to the release of the EEO-1 data or to object. If a company objects to the release of the data, OFCCP responds confirming or rejecting the company's request after conducting an analysis (or requesting an independent review) on a case by case basis. If the company does not respond, OFCCP sends a second notification advising the company that the agency will release the EEO-1 data in 30 calendar days from the date of receipt of the second notification. OFCCP releases the data if the company does not respond to the second notification.

Back to Top

---

## Has OFCCP changed its policy with regard to the processing of FOIA requests for EEO-1 information?

No. As mentioned earlier, OFCCP continues to follow the procedures and standards required by Executive Order 12600, its regulations, and FOIA, including engaging in a case specific analysis when determining whether or not to release information that a company asserts is protected by Exemption 4 of the FOIA.

Back to Top

---

## What information regarding an employer can I request from OFCCP under Freedom of Information Act?

The U.S. Department of Labor (DOL) is required, under the Freedom of Information Act (FOIA), to disclose records requested in writing. However, OFCCP may withhold information pursuant to nine exemptions and three exclusions contained in the FOIA. Consult the Guide for Requesting FOIA Records and list of Individual Components & Responsible FOIA Officials for FOIA requests. Links to DOL's FOIA resources and other FOIA resources can be found at the DOL website.

Back to Top

---

[1] https://www.eeoc.gov/employers/eeo-data-collections

[2] Section 709(e) of Title VII of the Civil Rights Act of 1964, as amended.

[3] See, e.g., Sears Roebuck & Co. v. Gen. Servs. Admin., 509 F.2d 527, 529 (D.C. Cir. 1974)..

[4] https://www.archives.gov/federal-register/codification/executive-order/12600.html

10/18/23, 6:51 PM   Case 3:22-cv-07182-WHA   Document 39   Filed 10/27/23   Frequently Asked Questions | U.S. Department of L...

Site Map    |    Important Website Notices    |    Privacy & Security Statement

# EXHIBIT J

JS-CAND 44 (Rev. 10/2020)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

The Center for Investigative Reporting and Will Evans

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

D. Victoria Baranetsky, General Counsel, The Center for

## DEFENDANTS

U.S. Department of Labor

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II.   BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III.   CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.   NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | **LABOR** | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 710 Fair Labor Standards Act | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 720 Labor/Management Relations | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 740 Railway Labor Act | 835 Patent—Abbreviated New Drug Application | 460 Deportation |
| | 350 Motor Vehicle | 371 Truth in Lending | 751 Family and Medical Leave Act | 840 Trademark | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | | **IMMIGRATION** | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 462 Naturalization Application | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | 465 Other Immigration Actions | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | 864 SSID Title XVI | 891 Agricultural Acts |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | 865 RSI (405(g)) | 893 Environmental Matters |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | 871 IRS–Third Party 26 USC § 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V.   ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation–Transfer    ☐ 8 Multidistrict Litigation–Direct File

## VI.   CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Freedom of Information Act 5 U.S.C. 552
Brief description of cause:
Action under the Freedom of Information Act for injunctive and other appropriate relief.

## VII.   REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.     **DEMAND $**     CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☐ No

## VIII.   RELATED CASE(S), IF ANY *(See instructions)*:

JUDGE                              DOCKET NUMBER

## IX.   DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

(Place an "X" in One Box Only)    ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☐ EUREKA-MCKINLEYVILLE

**DATE**  11/15/2022          **SIGNATURE OF ATTORNEY OF RECORD**          /s/ Victoria Baranetsky

Print          Save As...          **SER-759**          Reset

# EXHIBIT J-1



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: Acknowledgment

**Will Evans** <wevans@revealnews.org>                                    Thu, Oct 14, 2021 at 2:38 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **Karamoko, Arginia - SOL** <Karamoko.Arginia@dol.gov>
Date: Mon, Mar 25, 2019 at 1:32 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>

Hello:

Your request has been assigned to OFCCP with tracking number **875877**. When they begin processing it, you will be able to track its progress at www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking number in the Subject line of any submission to the agency or to have it available at the time of a call.

Sincerely,

**Arginia Karamoko**

Government Information Specialist, Office of Information Services

Office of the Solicitor | Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 | Washington, DC  20210

T: (202) 693-5531 | F: (202) 693-5389 |  E: karamoko.arginia@dol.gov

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Monday, March 25, 2019 1:57 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Subject:** FOIA request - OFCCP

(162 of 300), Page 162 of 300
10/14/21, 3:38 PM
Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 162 of 300
Case 3:23-cv-07182-WHA Document 38-1 Filed 10/18/23 Page 73 of 4025

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2017.**

I am requesting this data in electronic format, by email. Fulfilling this request is not unduly burdensome because there is no need to notify federal contractors.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," as OFCCP has already determined that Type 2 EEO-1 reports are not subject to Exemption 4 of the Freedom of Information Act. (see CIR v USDOL, Case No. 3:18-cv-2008 JCS)

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608

--

Will Evans

reporter

o: 510-809-2209

www.revealnews.org

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# EXHIBIT J-2

**U.S. Department of Labor**

Office of Federal Contract
Compliance Programs
200 Constitution Avenue, N.W.
Washington, D.C. 20210



JUL 18 2019

Will Evans
The Center for Investigative Reporting
1400 65th Street, Suite 200
Emeryville, CA 94608

RE: Freedom of Information Act Request Acknowledgement – Tracking No. 872421

Dear Mr. Evans:

This letter is a follow-up to your Freedom of Information Act (FOIA) request submitted to the
Office of Federal Contract Compliance Programs (OFCCP). Please refer to the above-referenced
FOIA tracking number in any future correspondence regarding your FOIA request.

You requested a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal
contractors for 2016. As you know from your earlier requests, in accordance with 29 CFR §
70.26, OFCCP is required to notify submitters that their business information has been requested
under the FOIA to give them an opportunity to object in writing to disclosure of any specified
portion of the requested information.

Though you request is reasonably described, we have determined that there are more than
100,000 responsive records. Reaching out to each of the companies affected by your voluminous
request would overwhelm the OFCCP FOIA unit for the foreseeable future, and the cost in
sending more than 100,000 letters would be unduly burdensome. If you wish to narrow the scope
of your request, please send a revised request to the address referenced above or send an e-mail
to OFCCP_NO_FOIA@dol.gov. In the event that we do not receive a response from you within
thirty (30) days from the date of this letter, we will administratively close your request.

Should you have questions regarding your request, please contact this office at (202) 693-0101
or by email at OFCCP_NO_FOIA@dol.gov. If you need further assistance or would like to
discuss any aspect of your request, please do not hesitate to contact the DOL FOIA Public
Liaison, Thomas Hicks, at (202) 693-5427.

Alternatively, you may contact the Office of Government Information Services within the
National Archives and Records Administration (OGIS) to inquire about the mediation services
they offer. The contact information for OGIS is as follows: Office of Government Information
Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, MD
20740-6001. You can also reach that office by e-mail at ogis@nara.gov, by phone at (202) 741-
5770, by fax at (202) 741-5769, or by calling toll-free at (877) 684-6448.

If you are not satisfied with the response to this request, you may administratively appeal by writing to the Solicitor of Labor within 90 days from the date of this letter. The appeal must state in writing the grounds for the appeal, and it may include any supporting statements or arguments, but such statements are not required. In order to facilitate processing of the appeal, please include your mailing address and daytime telephone number, as well as a copy of the initial request and copy of this letter. The envelope and letter of the appeal should be clearly marked "Freedom of Information Act Appeal." Any amendment to the appeal must be made in writing and received prior to a decision. The appeal should be addressed to the Solicitor of Labor, Division of Management and Administrative Legal Services, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N2420, Washington, DC 20210. Appeals may also be submitted by email to foiaappeal@dol.gov. Appeals submitted to any other email address will not be accepted.

Sincerely,

D. Lissette Geán
Special Assistant

# EXHIBIT K

10/14/21, 3:39 PM Case 3:23-cv-07182-WHA Document 98-1 Filed 10/18/23 Page 79 of 1025



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: Acknowledgment

**Will Evans** <wevans@revealnews.org>                                    Thu, Oct 14, 2021 at 2:41 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **FOIARequests** <FOIARequests@dol.gov>
Date: Tue, Jan 15, 2019 at 2:35 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>

Hello:

Your request has been assigned to OFCCP with tracking number **872421**. When they begin processing it, you will be able to track its progress at www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking number in the Subject line of any submission to the agency or to have it available at the time of a call.

Sincerely,

**Arginia Karamoko**

Government Information Specialist, Office of Information Services

Office of the Solicitor | Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 | Washington, DC  20210

T: (202) 693-5531 | F: (202) 693-5389 |  E: karamoko.arginia@dol.gov

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Thursday, January 10, 2019 7:13 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Cc:** Victoria Baranetsky <vbaranetsky@revealnews.org>
**Subject:** FOIA request - OFCCP

Dear FOIA Officer,

(169 of 300), Page 169 of 300
10/14/21, 3:39 PM Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 169 of 300
Case 3:23-cv-07182-WHA Document 38-1 Filed 10/18/23 Page 180 of 1025

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2016.**

I am requesting this data in electronic format, by email.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," as OFCCP has already determined that Type 2 EEO-1 reports are not subject to Exemption 4 of the Freedom of Information Act. (see CIR v USDOL, Case No. 3:18-cv-2008 JCS)

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608

--

Will Evans

reporter

o: 510-809-2209



10/14/21, 3:39 PM

www.revealnews.org

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 171 of 300

Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 682 of 1025

# EXHIBIT L



**Dara Gray <dgray@revealnews.org>**

---

### Fwd: re FOIA 872421
1 message

---

**Will Evans** <wevans@revealnews.org>                                    Wed, Nov 9, 2022 at 3:34 PM
To: Dara Gray <dgray@revealnews.org>


---------- Forwarded message ---------
From: **Will Evans** <wevans@revealnews.org>
Date: Thu, Aug 8, 2019 at 1:10 PM
Subject: re FOIA 872421
To: Bruce Andersen - OFCCP <Andersen.Bruce@dol.gov>
Cc: Victoria Baranetsky <vbaranetsky@revealnews.org>


Dear FOIA Officer,
This is in regards to your July 18, 2019 letter requesting that I narrow my original request because it would be unduly
burdensome to notify all affected companies. The notification requirements, however, do not apply here because no
exemption applies. The agency, in fact, has previously determined that no exemption applies and has released Type 2
EEO-1 reports in response to previous FOIA requests. Because the agency does not need to notify any companies,
providing a spreadsheet is not unduly burdensome, and there is no need to narrow the request.
Thank you for your work on this request.
Best,
Will Evans
--
Will Evans
reporter
o: 510-809-2209



www.revealnews.org


--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
cell: 510-333-9584
www.revealnews.org

---

 **OFCCP FOIA 872421.pdf**
478K

# EXHIBIT M

5/17/22, 10:24 AM    Case 3:23-cv-07182-WHA    Document 8-4    Filed 10/18/23    Page 85 of 1025



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: Acknowledgment
1 message

**Will Evans** <wevans@revealnews.org>                                    Fri, Oct 15, 2021 at 6:51 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---

---------- Forwarded message ---------
From: **Karamoko, Arginia - SOL** <Karamoko.Arginia@dol.gov>
Date: Fri, Sep 18, 2020 at 12:50 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>

Hello:

Your request has been assigned to the Office of Federal Contract Compliance Programs (OFCCP) with
tracking number **897123**. When they begin processing it, you will be able to track its progress at
www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through
ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking
number in the Subject line of any submission to the agency or to have it available at the time of a call.

Sincerely,

**Arginia Karamoko**

Government Information Specialist, Office of Information Services

Office of the Solicitor | Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 | Washington, DC  20210

T: (202) 693-5531 | F: (202) 693-5389 |  E: karamoko.arginia@dol.gov

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Friday, September 11, 2020 8:26 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Subject:** FOIA request - OFCCP

Dear FOIA Officer,

(175 of 300), Page 175 of 300
5/17/22, 10:24 AM    Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 175 of 300
Case 3:23-cv-07182-WHA    Document 33-4    Filed 04/15/24    Page 86 of 1025

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2018.**

I am requesting this data in electronic format, by email. Fulfilling this request is not unduly burdensome because there is no need to notify federal contractors.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," **as federal contractor EEO-1s have been determined to be public records that must be disclosed, not confidential commercial information**. Please see the Dec. 10, 2019 ruling by Judge Kandis Westmore in U.S. District Court for the Northern District of California, 4:19-cv-01843-KAW (attached).

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608



www.revealnews.org

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

**U.S. Department of Labor**    Office of Federal Contract Compliance Programs
200 Constitution Avenue, N.W.
Washington, D.C. 20210



October 2, 2020

Via Electronic Mail

Will Evans
The Center for Investigative Reporting
1400 65th Street, Suite 200
Emeryville, CA 94608

RE: Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Mr. Evans:

This letter is to acknowledge receipt of your Freedom of Information Act (FOIA) request
submitted to *foiarequest@dol.gov*.  The Office of the Solicitor assigned your request to the
Office of Federal Contract Compliance Programs (OFCCP) on September 18, 2020.  Please refer
to the above-referenced FOIA tracking number in any future correspondence regarding your
FOIA request.

You requested a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal
contractors for 2018.

We consider you to be a representative of the news media as defined by the U.S. Department of
Labor FOIA regulations at 29 CFR § 70.40(c)(3), therefore, only reproduction costs will be
assessed, excluding charges for the first 100 pages.  You will receive written notification if the
total estimated fee for processing your request exceeds $25.00.

OFCCP's National Office will process your request for EEO-1 data.  Once we compile the data,
we will send a letter to the submitters notifying them of the request for their EEO-1 data.

In accordance with 29 CFR § 70.26 and Executive Order 12600, because your request covers
information that may be protected from disclosure under FOIA Exemption 4, OFCCP is required
to notify submitters that their information has been requested under the FOIA to give them an
opportunity to object in writing to disclosure of any specified portion of the requested
information.  For those submitters who do not object, we will provide the information with any
necessary redactions consistent with FOIA.  For those submitters who do object, OFCCP will
evaluate any response provided by the submitter as to why the requested information should be
withheld and make its own determination as to whether the specific facts and relevant law
warrant disclosure or withholding of the requested information.

Due to the volume and complexity of the FOIA requests we have received, we anticipate that providing a full response will take longer than 20 business days to fulfill. Accordingly, OFCCP will take an additional 10 business days to fulfill your request as afforded by the FOIA at 5 U.S.C. § 552(a)(6)(B)(i). We will contact you if we are unable to fulfill your request in 30 business days.

We consider you a "news media" type of requestor. As a "news media" requestor, we charge you for photocopying after the first 100 pages in accordance with the U.S. Department of Labor FOIA regulations at 29 CFR § 70.40(c)(4). DOL's FOIA regulations at 29 CFR § 70.42(a) deem that the filing of a FOIA constitutes an agreement by the requester to pay all fees up to $25.00.

If you need further assistance or would like to discuss any aspect of your request, please do not hesitate to contact this office at (202) 693-0101 or by email at OFCCP_NO_FOIA@dol.gov. Alternatively, you may wish to contact the DOL FOIA Public Liaison, Thomas Hicks, at (202) 693-5427 or by email at hicks.thomas@dol.gov.

You may also contact the Office of Government Information Services (OGIS), within the National Archives and Records Administration (NARA), to inquire about the mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, MD 20740-6001. You can also reach that office by email at ogis@nara.gov, by phone at (202) 741-5770, by fax at (202) 741-5769, or by calling toll-free at (877) 684-6448.

If you are not satisfied with the response to this request, you may administratively appeal by writing to the Solicitor of Labor within 90 days from the date of this letter. In the appeal, you must state in writing the grounds for the appeal, and may include any supporting statements or arguments, but such statements are not required. To facilitate processing of the appeal, please include your mailing address and daytime telephone number, as well as a copy of the initial request and copy of this letter. Clearly mark "Freedom of Information Act Appeal" on the envelope and letter of the appeal. You must make any amendment to the appeal in writing and we must receive it prior to a decision. Address the appeal to the Solicitor of Labor, Division of Management and Administrative Legal Services, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N2420, Washington, DC 20210. You may submit your appeal by email to foiaappeal@dol.gov. The Department does not accept appeals submitted to any other email address.

Sincerely,

DORIS GEAN   Digitally signed by DORIS GEAN

Doris Lissette Geán
FOIA Manager

2

# EXHIBIT N

**U.S. Department of Labor**          Office of Federal Contract Compliance Programs
200 Constitution Avenue, N.W.
Washington, D.C. 20210



October 2, 2020


Via Electronic Mail

Will Evans
The Center for Investigative Reporting
1400 65th Street, Suite 200
Emeryville, CA 94608

RE: Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Mr. Evans:

This letter is to acknowledge receipt of your Freedom of Information Act (FOIA) request
submitted to *foiarequest@dol.gov*.  The Office of the Solicitor assigned your request to the
Office of Federal Contract Compliance Programs (OFCCP) on September 18, 2020.  Please refer
to the above-referenced FOIA tracking number in any future correspondence regarding your
FOIA request.

You requested a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal
contractors for 2018.

We consider you to be a representative of the news media as defined by the U.S. Department of
Labor FOIA regulations at 29 CFR § 70.40(c)(3), therefore, only reproduction costs will be
assessed, excluding charges for the first 100 pages.  You will receive written notification if the
total estimated fee for processing your request exceeds $25.00.

OFCCP's National Office will process your request for EEO-1 data.  Once we compile the data,
we will send a letter to the submitters notifying them of the request for their EEO-1 data.

In accordance with 29 CFR § 70.26 and Executive Order 12600, because your request covers
information that may be protected from disclosure under FOIA Exemption 4, OFCCP is required
to notify submitters that their information has been requested under the FOIA to give them an
opportunity to object in writing to disclosure of any specified portion of the requested
information.  For those submitters who do not object, we will provide the information with any
necessary redactions consistent with FOIA.  For those submitters who do object, OFCCP will
evaluate any response provided by the submitter as to why the requested information should be
withheld and make its own determination as to whether the specific facts and relevant law
warrant disclosure or withholding of the requested information.

Due to the volume and complexity of the FOIA requests we have received, we anticipate that providing a full response will take longer than 20 business days to fulfill. Accordingly, OFCCP will take an additional 10 business days to fulfill your request as afforded by the FOIA at 5 U.S.C. § 552(a)(6)(B)(i). We will contact you if we are unable to fulfill your request in 30 business days.

We consider you a "news media" type of requestor. As a "news media" requestor, we charge you for photocopying after the first 100 pages in accordance with the U.S. Department of Labor FOIA regulations at 29 CFR § 70.40(c)(4). DOL's FOIA regulations at 29 CFR § 70.42(a) deem that the filing of a FOIA constitutes an agreement by the requester to pay all fees up to $25.00.

If you need further assistance or would like to discuss any aspect of your request, please do not hesitate to contact this office at (202) 693-0101 or by email at OFCCP_NO_FOIA@dol.gov. Alternatively, you may wish to contact the DOL FOIA Public Liaison, Thomas Hicks, at (202) 693-5427 or by email at hicks.thomas@dol.gov.

You may also contact the Office of Government Information Services (OGIS), within the National Archives and Records Administration (NARA), to inquire about the mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, MD 20740-6001. You can also reach that office by email at ogis@nara.gov, by phone at (202) 741-5770, by fax at (202) 741-5769, or by calling toll-free at (877) 684-6448.

If you are not satisfied with the response to this request, you may administratively appeal by writing to the Solicitor of Labor within 90 days from the date of this letter. In the appeal, you must state in writing the grounds for the appeal, and may include any supporting statements or arguments, but such statements are not required. To facilitate processing of the appeal, please include your mailing address and daytime telephone number, as well as a copy of the initial request and copy of this letter. Clearly mark "Freedom of Information Act Appeal" on the envelope and letter of the appeal. You must make any amendment to the appeal in writing and we must receive it prior to a decision. Address the appeal to the Solicitor of Labor, Division of Management and Administrative Legal Services, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N2420, Washington, DC 20210. You may submit your appeal by email to foiaappeal@dol.gov. The Department does not accept appeals submitted to any other email address.

Sincerely,

DORIS GEAN  Digitally signed
by DORIS GEAN

Doris Lissette Geán
FOIA Manager

2

# EXHIBIT O

10/14/21, 11:32 AM                   Case 3:22-cv-... Mail - Reveal Mail - Fwd: Freedom of Information Act Requests – Tracking Nos. 872421 and 897123



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: Freedom of Information Act Requests – Tracking Nos. 872421 and 897123

**Will Evans** <wevans@revealnews.org>                         Thu, Sep 30, 2021 at 10:30 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **Alexandra Gutierrez** <agutierrez@revealnews.org>
Date: Thu, Jan 7, 2021 at 9:13 AM
Subject: Re: Freedom of Information Act Requests – Tracking Nos. 872421 and 897123
To: Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov>
Cc: Victoria Baranetsky <vbaranetsky@revealnews.org>, Will Evans <wevans@revealnews.org>, Hicks, Thomas - SOL <hicks.thomas@dol.gov>

VIA E-MAIL

Doris Lissette Geán
FOIA Manager
Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C. 20210
OFCCP_NO_FOIA@dol.gov

Re:  Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Ms. Geán,

We are following up on your December 18, 2020 e-mail. While we are considering are options as to the Department of Labor's current position as to our reporter's request, we seek answers to the following questions:

1. When did the Department provide E.O. 12600 notices to submitters?
2. Have any submitters responded, either objecting or consenting?
3. For those submitters who have consented or have waived their opportunity to object due to the passage of a reasonable amount of time, would the Department be able to provide their submitted reports on a rolling basis.

We appreciate your attention to these inquiries.

Sincerely,

Alexandra M. Gutierrez

cc:    D. Victoria Baranetsky, General Counsel, Center for Investigative Reporting
       Will Evans, Reporter, Center for Investigative Reporting
       Thomas Hicks, DOL FOIA Public Liaison

On Fri, Dec 18, 2020 at 9:32 AM Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov> wrote:
Via Electronic Mail

Dear Ms. Gutierrez:

We have received your December 11, 2020, e-mail inquiring about outstanding FOIA requests that,
combined, seek two years (2016 and 2018) of EEO-1 consolidated (Type 2) reports for all federal
contractors.

As you are aware, we have complied with the district court's order and released the 2016 reports of the
individual submitters who have not appealed the court's decision in the matter of *Ctr. for Investigative
Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771, 779 (N.D. Cal. 2019). Your outstanding FOIA
requests seek the EEO-1, Type 2 reports of well over 15,000, and possibly over 20,000 submitters from
countless industries whose reports are not subject to that court order.

We continue to be subject to Executive Order 12600 and are obligated to notify submitters of requests for
their potentially confidential commercial information. *See* 29 C.F.R. § 70.26. Under Executive Order
12600, we must afford submitters a reasonable period of time to object to the disclosure of any portion of
the information and to state all grounds upon which disclosure is opposed.  The submitters that are the
subject of your request have not had the opportunity to demonstrate whether their EEO-1, Type 2 reports
contain confidential commercial information.  Moreover, while we do not believe that the Northern
California's District Court's decision in *Center for Investigative Reporting* has precedential effect on all
EEO-1, Type 2 reports, we note that this matter is currently on appeal before the U.S. Court of Appeals for
the Ninth Circuit and there is still a chance that the district court's holding may be overturned.


Sincerely,




D. Lissette Geán

FOIA Manager


--
Alexandra M. Gutierrez
First Amendment Fellow
**(c)** 907-209-1799

10/14/21, 11:32 AM

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# EXHIBIT O-1

| From: | Alexandra Gutierrez |
|-------|----------------------|
| To: | Office of Federal Contract Compliance Programs |
| Cc: | Victoria Baranetsky; Will Evans; Hicks, Thomas - SOL |
| Subject: | Re: Freedom of Information Act Requests – Tracking Nos. 872421 and 897123 |
| Date: | Thursday, January 7, 2021 9:13:12 AM |

VIA E-MAIL

Doris Lissette Geán
FOIA Manager
Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C. 20210
OFCCP_NO_FOIA@dol.gov

Re:  Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Ms. Geán,

We are following up on your December 18, 2020 e-mail. While we are considering are options as to the Department of Labor's current position as to our reporter's request, we seek answers to the following questions:

1. When did the Department provide E.O. 12600 notices to submitters?
2. Have any submitters responded, either objecting or consenting?
3. For those submitters who have consented or have waived their opportunity to object due to the passage of a reasonable amount of time, would the Department be able to provide their submitted reports on a rolling basis.

We appreciate your attention to these inquiries.

Sincerely,


Alexandra M. Gutierrez


cc:    D. Victoria Baranetsky, General Counsel, Center for Investigative Reporting
       Will Evans, Reporter, Center for Investigative Reporting
       Thomas Hicks, DOL FOIA Public Liaison

On Fri, Dec 18, 2020 at 9:32 AM Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov> wrote:

> Via Electronic Mail
>
> Dear Ms. Gutierrez:
>
> We have received your December 11, 2020, e-mail inquiring about outstanding FOIA requests that, combined, seek two years (2016 and 2018) of EEO-1 consolidated (Type 2) reports for all federal contractors.
>
> As you are aware, we have complied with the district court's order and released the 2016 reports of the individual submitters who have not appealed the court's decision in the matter of *Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771, 779 (N.D. Cal. 2019). Your outstanding FOIA requests seek the EEO-1, Type 2 reports of well over 15,000, and possibly over 20,000 submitters from countless industries whose reports are not subject to that court order.
>
> We continue to be subject to Executive Order 12600 and are obligated to notify submitters of requests for their potentially confidential commercial information. *See* 29 C.F.R. § 70.26. Under Executive Order 12600, we must afford submitters a reasonable period of time to object to the disclosure of any portion of the information and to state all grounds upon which disclosure is opposed.  The submitters that are the subject of your request have not had the opportunity to demonstrate whether their EEO-1, Type 2 reports contain confidential commercial information.  Moreover, while we do not believe that the Northern California's District Court's decision in *Center for Investigative Reporting* has precedential effect on all EEO-1, Type 2 reports, we note that this matter is currently on appeal before the U.S. Court of Appeals for the Ninth Circuit and there is still a chance that the district court's holding may be overturned.
>
>
> Sincerely,
>
>
>
>
> D. Lissette Geán
>
> FOIA Manager

--
Alexandra M. Gutierrez
First Amendment Fellow
(c) 907-209-1799





# EXHIBIT P



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: amendment request

**Will Evans** <wevans@revealnews.org>                      Thu, Sep 30, 2021 at 10:28 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **OFCCP NO FOIA** <OFCCP_NO_FOIA@dol.gov>
Date: Tue, May 11, 2021 at 9:05 AM
Subject: RE: amendment request
To: Will Evans <wevans@revealnews.org>

Dear Mr. Evans,

We have modified request 872421 to include a spreadsheet of the consolidated (Type 2) EEO-1 reports for all federal contractors for the years 2016 through 2018.

We will administratively close request 897123.

Cordially,

Bruce Andersen

The OFCCP FOIA Team

---

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Monday, May 10, 2021 1:02 PM
**To:** OFCCP NO FOIA <OFCCP_NO_FOIA@DOL.GOV>
**Subject:** amendment request

CAUTION - The sender of this message is external to the DOL network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@dol.gov.

Dear FOIA Officer,

I would like to amend my FOIA request #872421 to include a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2017 and 2018 as well as 2016.

If you agree to this amendment, I will withdraw my separate FOIA #897123 for the 2018 data.


Please let me know.
Thank you very much.
Best,

Will Evans
--

Will Evans

reporter

office: 510-809-2209

cell: 510-333-9584



www.revealnews.org


--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# EXHIBIT Q



**Dara Gray <dgray@revealnews.org>**

---

## Fwd: FOIA 872421 - Amendment
1 message

**Will Evans** <wevans@revealnews.org>                                Wed, Nov 9, 2022 at 2:01 PM
To: Dara Gray <dgray@revealnews.org>

---------- Forwarded message ---------
From: **Office of Federal Contract Compliance Programs** <ofccp_no_foia@dol.gov>
Date: Fri, Jun 3, 2022 at 10:52 AM
Subject: RE: FOIA 872421 - Amendment
To: <wevans@revealnews.org>
Cc: <vbaranetsky@revealnews.org>


Dear Mr. Evans,

We have received your latest email. We will modify request 872421 to include both the 2019 and 2020 data. Your request is now for the consolidated (Type 2) EEO-1 reports for all federal contractors for the years 2016 through 2020.

Cordially,

Bruce Andersen

The OFCCP FOIA Team


**From:** Will Evans wevans@revealnews.org
**Sent:** Thursday, June 2, 2022 4:45 PM
**To:** FOIARequests FOIARequests@dol.gov
**Cc:** OFCCP NO FOIA OFCCP_NO_FOIA@DOL.GOV
**Subject:** FOIA request- OFCCP


   CAUTION - The sender of this message is external to the DOL network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@dol.gov.

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:



**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2019 and 2020.**



I am requesting this data in electronic format, by email.

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting

PO Box 8307

Emeryville, CA 94608

--

Will Evans

reporter

Reveal from The Center for Investigative Reporting

cell: 510-333-9584

www.revealnews.org


--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
cell: 510-333-9584
www.revealnews.org

# EXHIBIT R



Secretary of Labor Martin J. Walsh
Office of the Secretary of Labor
200 Constitution Ave, NW
Room C-2318
Washington, DC 20210

Solicitor of Labor Seema Nanda
Office of the Solicitor of Labor
200 Constitution Ave, NW
Washington, DC 20210

Director Jenny R. Yang
Office of Federal Contract Compliance Programs
200 Constitution Ave, NW
Room C–3325
Washington, DC 20210


May 23, 2022


VIA ELECTRONIC DELIVERY


**Re: FOIA Request No. 872421 and DOL's Wrongful Withholding of EEO-1 Type 2 Forms
That Should be Released and Published Prospectively**


To Whom It May Concern:

The Center for Investigative Reporting ("CIR") writes to object to the agency's
withholding of records requested under the Freedom of Information Act ("FOIA") by our
reporter, Mr. Will Evans.  Mr. Evans's FOIA request, which has been pending for *more than
three years*, seeks disclosure of aggregate workforce diversity data submitted by federal
contractors to the Department of Labor ("DOL")'s Office of Federal Contract Compliance
Programs ("OFCCP").  This withholding is in contravention of legal authority.

According to OFCCP, the agency's extensive delay in responding to this request is due to
its need to consult with thousands of federal contractors to ascertain whether they object to

1400 65th, Suite 200  Emeryville, CA 94608
PHONE  510 809 3160                          TWITTER  @reveal
WEB  revealnews.org

disclosure of their diversity data.  It is unclear whether OCFPP has attempted to initiate that process.  Nevertheless, CIR disputes that such consultation is appropriate or necessary in the first instance.  The agency's withholding is in direct contravention of law in light of recent court decisions, including a federal district court ordering disclosure of diversity data, an opinion which the DOL did not appeal and which the U.S. Ninth Circuit Court of Appeals left undisturbed, as discussed below.  These records should be disclosed immediately.  Regardless, even if the agency wanted to formalize this disclosure process moving forward, by proactively publishing these records on its website, it could provide a broad notice to companies, instead of reaching out to federal contractors individually.  According to agency rules, DOL has the authority to expedite its consultation process by publishing notices in the Federal Register.

In light of its obligations under FOIA, CIR demands DOL disclose the requested records and prospectively publish these records online.  If DOL fails to act and continues to withhold these records, CIR will be required to file suit under FOIA, yet a third time.

## I.  Background on EEO-1 Reports

Since 1966, certain federal contractors have been required to submit workforce demographic data to the U.S. Equal Opportunity Commission on an annual basis.[1]  OFCCP uses these diversity reports, the EEO-1 Consolidated Reports (Type 2) ("EEO-1 Type 2 reports") to evaluate contractors' compliance with anti-discrimination laws, particularly Executive Order 11246.[2]  For decades, momentum has been growing to make the diversity data in EEO-1 Type 2 reports accessible and keep federal contractors accountable to the public.  As far back as 1974, courts have required EEO-1 Type 2 reports to be disclosed under FOIA.[3]  Many companies now post their reports online as part of their own social responsibility commitments.[4]  Members of

---

[1] *See* 41 C.F.R. § 60-1.7(a).

[2] *See* 30 Fed. Reg. 12,319 (Sept. 28, 1965).

[3] As OFCCP explains on its website, "[C]ourts have ruled that the Title VII prohibition against disclosure does not apply to OFCCP's collection of EEO-1 data."  OFCCP, *Freedom of Information Act (FOIA) Frequently Asked Questions*, https://www.dol.gov/agencies/ofccp/ faqs/foia (citing *Sears Roebuck & Co. v. Gen. Servs. Admin.*, 509 F.2d 527, 529 (D.C. Cir. 1974) as one such ruling).

[4] For example, Intel proactively began posting diversity reports online in 2008.  Intel, *Workforce Demographics*, 2008, http://web.archive.org/web/20081224004419/http://www.intel.com/intel/ diversity/divpractice.htm.  Google began posting its diversity data in 2014 after a similar FOIA lawsuit, and Microsoft followed suit in 2015.  Murrey Jacobson, *Google finally discloses its diversity record, and it's not good*, PBS NEWSHOUR, May 28, 2014, https://www.pbs.org/ newshour/nation/google-discloses-workforce-diversity-data-good; Laura Lorenzetti, *Microsoft releases diversity stats: How the tech giant sizes up*, FORTUNE, Jan. 5, 2015, https://fortune.com/ 2015/01/05/microsoft-eeo-1-diversity-tech.

2

Congress[5] and legislative commissions,[6] civil rights activists,[7] and scholars have been calling for this data to be more accessible, including in response to CIR's reporting. In March 2019, after CIR sued DOL for diversity data the first time, Representative Emanuel Cleaver II wrote to the DOL stating this data should not be withheld under Exemption 4, as EEO-1 reports "enumerate the diversity of firms accepting the taxpayer money."[8]

As part of his reporting for CIR over the last decade, Mr. Evans has submitted numerous FOIA requests to OFCCP for EEO-1 Type 2 reports and data. In addition to the FOIA request addressed herein, Mr. Evans has previously requested EEO-1 Type 2 reports regarding specific companies and CIR has previously sued DOL twice over its refusal to release these reports on the basis of Exemption 4. The first of these lawsuits was voluntarily dismissed in 2018 after DOL reversed its prior determination that five companies' reports were exempt.[9] In the second lawsuit, the court granted summary judgment to CIR, ruling in December 2019, "the Government failed to make a showing that the demographic information contained in the EEO-1 reports is commercial.[10] As a result, the Government was not justified in applying Exemption 4 to the EEO-1 reports, and the court ruled they "must be produced unredacted."[11] The government chose not to appeal that ruling and the U.S. Ninth Circuit Court of Appeals recently

---

[5] Members of Congress have called for greater access to diversity reports, both via companies' proactive disclosures and via OFCCP's disclosures under FOIA. *See, e.g.*, Jessica Guyun, *Barbara Lee calls on Apple, tech holdouts to release diversity data*, USA TODAY, Aug. 4, 2015, https://www.usatoday.com/story/tech/2015/08/04/barbara-lee-black-caucus-federal-diversity-data- apple/31128479.

[6] The Federal Glass Ceiling Commission, created by the Civil Rights Act of 1991, stated in its 1995 report that the government should "explore the possibility of mandating public release of EEO-1 forms for Federal contractors and publicly-traded corporations." GLASS CEILING COMM'N, *A Solid Investment: Making Full Use of the Nation's Human Capital* 42-43, Nov. 1, 1995, https://ecommons.cornell.edu/handle/1813/79349.

[7] For example, civil rights activist Rev. Jesse Jackson has called on companies to release diversity statistics. *See* Salvador Rodiguez, *Jesse Jackson Gives Uber a Diversity Deadline*, INC.COM, Jan. 5, 2017, https://www.inc.com/salvador-rodriguez/uber-diversity-jesse-jackson.html.

[8] Letter from Emanuel Cleaver II, Member of Congress, U.S. House of Representatives, to Alexander Acosta, Secretary, U.S. Department of Labor (Mar. 6, 2019), https://cleaver.house.gov/sites/cleaver.house.gov/files/DOL FOIA.pdf.

[9] *Ctr for Investigative Reporting v. Dep't of Labor*, No. 3:18-cv-02008 (N.D. Cal. Dec. 21, 2018).

[10] *Ctr. for Investigative Reporting v. Dep't of Labor*, 424 F. Supp. 3d 771, 779 (N.D. Cal. Dec. 10, 2019).

[11] *Id.*

3

1400 65th, Suite 200 Emeryville, CA 94608
PHONE 510 809 3160          TWITTER @CIRonline
WEB cironline.org

left it undisturbed following a belated challenge by the single holdout company whose data was at issue.[12]

OFCCP asserts that DOL regulations and Executive Order 12600 require notification to individual submitters to consult if this information qualifies as "confidential commercial information."[13]  First, the very same DOL regulations allow such notification "by posting or publishing notice reasonably likely to accomplish such notification" in cases where "notification to a voluminous number of submitters is required."[14]  Second, either time-consuming and burdensome notification process directly contradicts a federal court opinion requiring disclosure. Now that EEO-1 Type 2 reports have been ruled as outside the scope of Exemption 4, any such consultation is in contravention of a federal court decision.  The agency's own prior actions confirm this conclusion.  In a similar context, DOL released data online regarding workplace injuries and illnesses for tens of thousands of employers — without consulting with each company individually — after courts ruled this data is outside the scope of Exemption 4.[15]

## II.     Procedural History

Mr. Evans submitted the requested EEO-1 Type 2 data for all federal contractors more than three years ago, in January 2019.  He initially submitted three separate requests for annual data for the years 2016, 2017, and 2018.  *See* Exhibits A, B, and C.[16]  In May 2021, at OFCCP's request, Mr. Evans agreed to combine these requests into one FOIA request for all three years' worth of data.  *See* Exhibit D.  That combined request has been assigned OFCCP tracking number 872421.  *Id.*

On numerous occasions, OFCCP indicated that Mr. Evans's request required company-by-company consultation which posed logistical challenges due to the volume of federal contractors who might object to disclosure of their diversity data.  For example, in July 2019, the OFCCP FOIA office estimated that there were "more than 100,000 responsive records"

---

[12] *Evans v. Synopsys*, No. 20-16416 (9th Cir. May 12, 2022), https://cdn.ca9.uscourts.gov/ datastore/opinions/2022/05/12/20-16416.pdf (dismissing company's untimely appeal for lack of jurisdiction).

[13] 29 C.F.R. § 70.26; *see also* OFCCP FOIA website, *supra* note 3.

[14] 29 C.F.R. § 70.26(c); *see also* 29 C.F.R. § 70.26(j) ("Where notification of a voluminous number of submitters is required, such notification may be accomplished by posting and publishing the notice in a place reasonably calculated to accomplish notification.")

[15] DOL, *U.S. Department of Labor Releases Work-Related Injury and Illness Data*, Sept. 4, 2020, https://www.dol.gov/newsroom/releases/osha/osha20200904; *see also Ctr. for Investigative Reporting v. Dep't of Labor*, No. 4:18-cv-02414, 2020 WL 2995209 (N.D. Cal. June 4, 2020); *Public Citizen Foundation v. Dep't of Labor*, No. 1:18-cv-00117 (D.D.C. June 23, 2020).

[16] The FOIA request for the 2016 EEO-1 Type 2 data was submitted on January 10, 2019, and assigned tracking number 872421.  Ex. A.  The FOIA request for the 2017 data was submitted on March 25, 2019, and assigned tracking number 875877.  Ex. B.  The FOIA request for the 2018 data was submitted on September 11, 2020, and assigned tracking number 897123.  Ex. C.

4

1400 65th, Suite 200 Emeryville, CA 94608
PHONE 510 809 3160                          TWITTER @CIRonline
WEB cironline.org

pertaining to the 2016 data, and that "the cost in sending more than 100,000 letters would be unduly burdensome."  *See* Exhibit E.  Following the December 2019 ruling in CIR's favor, OFCCP suggested the court's ruling did not have any "precedential effect" and that it was obligated to consult individual federal contractors in response to Mr. Evans's request for aggregate data.  *See* Exhibit F at 2.  In December 2020, for example, OFCCP estimated that this request involved "the EEO-1, Type 2 reports of well over 15,000, and possibly over 20,000 submitters from countless industries."  *Id.*

Since January 2021, OFCCP has not answered CIR's questions about what steps, if any, the agency has taken to date to consult with companies whose data is at issue in Mr. Evans's request.  *Id.* at 1.

## III.   Discussion

The Freedom of Information Act seeks "to ensure an informed citizenry, vital to the functioning of a democratic society."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  Under FOIA, "each agency . . . shall make the records promptly available."  5 U.S.C. § 552(a)(3)(A).  "Congress underscored the importance it attached to prompt responses by allowing judicial recourse, bypassing administrative exhaustion, if an agency fails to meet statutory timetables for disclosure or to justify its delay in making nonexempt records available upon request."  *Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770, 775–76 (D.C. Cir. 2018).  "[A]n agency's compliance with FOIA depends upon its good faith effort and due diligence to comply with all lawful demands for records in as short a time as is possible."  *Id.* at 781 (cleaned up).

Here, more than *three years* after receiving Mr. Evans's initial request, OFCCP has failed to fulfill it.  OFCCP has justified this extensive delay based on its suggestion that the federal court's decision in the Northern District of California did not have precedential effect and the difficulty of notifying thousands of companies whose data is at issue.  Ex. F at 2.  CIR asserts that this position is faulty and to remedy the circumstances the agency should: 1) immediately disclose the requested records and 2) proactively notify all companies moving forward that these records will be disclosed.

### A.   OFCCP is Bound by Court Decisions Requiring Disclosure of EEO-1 Type 2 Reports.

By continuing to withhold the long-overdue diversity data, OFCCP is acting outside the bounds of law.  Contrary to the agency's suggestion, Judge Westmore's ruling that diversity data is outside Exemption 4 does, in fact, have "precedential effect," particularly since the Ninth Circuit left that decision undisturbed.  The plain text of FOIA "vests jurisdiction in federal district courts to enjoin an 'agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant,'" and agencies must comply with court disclosure orders.  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)).  Under the "law of the circuit doctrine, a published decision of [a federal appellate] court constitutes binding authority which must be

1400 65th, Suite 200  Emeryville, CA 94608
PHONE  510 809 3160          TWITTER  @CIRonline
WEB  cironline.org

5

followed unless and until overruled by a body competent to do so." *In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (cleaned up).

Here, both the district court and the appeals court decisions create binding law on the agency. Just two years ago, Judge Westmore ruled on CIR's request for 2016 EEO-1 report data and concluded that the "Government was not justified in applying Exemption 4" to this information, requiring the EEO-1 reports to "be produced unredacted." *Ctr. for Investigative Reporting v. Dep't of Labor*, 424 F. Supp. 3d 771, 779 (N.D. Cal. 2019). DOL elected not to appeal that decision, and subsequently the U.S. Ninth Circuit Court of Appeals found it lacked jurisdiction to disturb Judge Westmore's order. *Evans v. Synopsys*, No. 20-16416 (9th Cir. May 12, 2022). The December 10, 2019 order generally remains in effect, as the parties, including the Government, stipulated that it would only be stayed as to the "disclosure of the requested Synopsys information." *Ctr. for Investigative Reporting*, No. 4:19-cv-01843, ECF No. 87, ¶¶ 2-3 (N.D. Cal. July 28, 2020). Given that the December 10, 2019 order remains in force, that the Government chose not to appeal it, and that the Government opposed the company's attempt to intervene for the sole purpose of appealing it, CIR is perplexed by DOL's current plan of action as to FOIA Request No. 872421. According *Kissinger* and *In re Zermeno*, DOL must disclose the records and the agency has not presented any other to the contrary. We hope this clarifies any remaining confusion and that the agency will disclose the requested records immediately to avoid needless, repetitive litigation – for a third time.

### B. OFCCP Should Proactively Publish the Requested Records on Its Website.

The same DOL regulation OFCCP invokes to justify its delay also offers a solution for future requests involving EEO-1s: To mitigate the burden and expense of notifying a "voluminous number of submitters," OFCCP can notify all companies simultaneously by posting a notice on its website before proactively publishing these records on its website. 29 C.F.R. § 70.26(c); *see also* 29 C.F.R. § 70.26(j) ("Where notification of a voluminous number of submitters is required, such notification may be accomplished by posting and publishing the notice in a place reasonably calculated to accomplish notification.").

OFCCP has various options for notifying companies by publication. It could publish a notice in the Federal Register, as DOL previously did to alert companies about a FOIA lawsuit and underlying request.[17] Another agency with similar regulations about "voluminous" notifications recently published notices in the Federal Register.[18] Alternatively, OFCCP could

---

[17] 71 Fed. Reg. 20,732 (April 21, 2006), *available at* https://www.federalregister.gov/documents/2006/04/21/06-3795/freedom-of-information-act-notice-of-lawsuit (notice from the Occupational Health and Safety Administration regarding air sampling data). *See also Finkel v. Dep't of Lab.*, No. CIV A 05-5525, 2007 WL 1963163, at *2 (D.N.J. June 29, 2007).

[18] 81 Fed. Reg. 75,838 (Nov. 1, 2016), *available at* https://www.federalregister.gov/documents/2016/11/01/2016-26412/freedom-of-information-act-notice-of-lawsuit (notice from the U.S. Fish and Wildlife Service regarding FOIA request and lawsuit for data about import and export of wildlife specimens); 81 Fed. Reg. 85,255 (Nov. 25,

6

1400 65th, Suite 200 Emeryville, CA 94608
PHONE 510 809 3160 ████████ TWITTER @CIRonline
████ WEB cironline.org

issue a press release, as DOL did regarding disclosure of its workplace injury data.[19]  Whatever
the venue, DOL should avail itself of its regulatory authority to notify the "voluminous" number
of companies – and begin to proactively publishing these records online, as other DOL
components such as OSHA have done with comprehensive datasets after courts ruled that they
could not be withheld.

## IV.    Conclusion

Rather than continue to delay Mr. Evans's long-overdue request for EEO-1 Type 2 data,
DOL should disclose the requested records.  Moving forward it should exercise its authority to
notify companies and begin proactive publication.  We request that OFCCP respond to this letter
**within two weeks of receipt** to discuss any clarifying points and the agency's intended course of
action to resolve this matter.  You may reach me at vbaranetsky@revealnews.org or (201) 306-
4831.


Sincerely,


Victoria D. Baranetsky
General Counsel
The Center for Investigative Reporting


cc:    Will Evans, Senior Reporter and Producer, The Center for Investigative Reporting
       Shawn Musgrave, First Amendment Fellow, The Center for Investigative Reporting

---

2016), *available at* https://www.federalregister.gov/documents/2016/11/25/2016-
28379/freedom-of-information-act-notice-of-lawsuit (same).  *See also* 43 C.F.R. § 2.27(b) ("If a
voluminous number of submitters are involved, [a bureau of the Department of the Interior] may
publish a notice in a manner reasonably calculated to reach the attention of the submitters (for
example, in newspapers or newsletters, the bureau's Web site, or the Federal Register) instead of
providing a written notice to each submitter.").
[19] *Supra* note 15.

7

1400 65th, Suite 200  Emeryville, CA 94608
PHONE  510 809 3160                    TWITTER @CIRonline
              WEB cironline.org

# Exhibit A

(205 of 300), Page 205 of 300 Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 205 of 300
Case 3:22-cv-07625-WHA Document 38-1 Filed 01/16/23 Page 16 of 1025
10/14/21, 3:39 PM



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: Acknowledgment

**Will Evans** <wevans@revealnews.org>                                    Thu, Oct 14, 2021 at 2:41 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **FOIARequests** <FOIARequests@dol.gov>
Date: Tue, Jan 15, 2019 at 2:35 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>

Hello:

Your request has been assigned to OFCCP with tracking number **872421**. When they begin processing it, you will be able to track its progress at www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking number in the Subject line of any submission to the agency or to have it available at the time of a call.

Sincerely,

### Arginia Karamoko

Government Information Specialist, Office of Information Services

Office of the Solicitor | Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 | Washington, DC  20210

T: (202) 693-5531 | F: (202) 693-5389 |  E: karamoko.arginia@dol.gov

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Thursday, January 10, 2019 7:13 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Cc:** Victoria Baranetsky <vbaranetsky@revealnews.org>
**Subject:** FOIA request - OFCCP

Dear FOIA Officer,

(206 of 300), Page 206 of 300
10/14/21, 3:39 PM    Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 206 of 300
Case 3:22-cv-07182-WHA    Document 89-1    Filed 10/16/23    Page 17 of 25

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2016.**

I am requesting this data in electronic format, by email.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," as OFCCP has already determined that Type 2 EEO-1 reports are not subject to Exemption 4 of the Freedom of Information Act. (see CIR v USDOL, Case No. 3:18-cv-2008 JCS)

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608

--

Will Evans

reporter

o: 510-809-2209



www.revealnews.org


\--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# Exhibit B



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: Acknowledgment

**Will Evans** <wevans@revealnews.org>                           Thu, Oct 14, 2021 at 2:38 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **Karamoko, Arginia - SOL** <Karamoko.Arginia@dol.gov>
Date: Mon, Mar 25, 2019 at 1:32 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>

Hello:

Your request has been assigned to OFCCP with tracking number **875877**. When they begin processing it, you will be able to track its progress at www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking number in the Subject line of any submission to the agency or to have it available at the time of a call.

Sincerely,

**Arginia Karamoko**

Government Information Specialist, Office of Information Services

Office of the Solicitor | Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 | Washington, DC  20210

T: (202) 693-5531 | F: (202) 693-5389 |  E: karamoko.arginia@dol.gov

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Monday, March 25, 2019 1:57 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Subject:** FOIA request - OFCCP

Dear FOIA Officer,

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2017.**

I am requesting this data in electronic format, by email. Fulfilling this request is not unduly burdensome because there is no need to notify federal contractors.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," as OFCCP has already determined that Type 2 EEO-1 reports are not subject to Exemption 4 of the Freedom of Information Act. (see CIR v USDOL, Case No. 3:18-cv-2008 JCS)

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608


--

Will Evans

reporter

o: 510-809-2209

www.revealnews.org


--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# Exhibit C

5/17/22, 10:24 AM    Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 213 of 300
Case 3:22-cv-07182-WHA Document 38-1 Filed 01/18/23 Page 24 of 1025



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: Acknowledgment
1 message

**Will Evans** <wevans@revealnews.org>                                   Fri, Oct 15, 2021 at 6:51 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **Karamoko, Arginia - SOL** <Karamoko.Arginia@dol.gov>
Date: Fri, Sep 18, 2020 at 12:50 PM
Subject: Acknowledgment
To: Will Evans <wevans@revealnews.org>
Cc: Oliver, Ramona - SOL <Oliver.Ramona@dol.gov>, OFCCP NO FOIA <OFCCP_NO_FOIA@dol.gov>

Hello:

Your request has been assigned to the Office of Federal Contract Compliance Programs (OFCCP) with
tracking number **897123**. When they begin processing it, you will be able to track its progress at
www.dol.gov/foia. If you need to contact them about it for any reason, please submit your inquiry through
ofccp_no_foia@dol.gov or phone 202-693-0101. In addition, it would be helpful to include the tracking
number in the Subject line of any submission to the agency or to have it available at the time of a call.

Sincerely,

**Arginia Karamoko**

Government Information Specialist, Office of Information Services

Office of the Solicitor | Management & Administrative Legal Services

U.S. DEPARTMENT OF LABOR

200 Constitution Ave., N.W., N-2420 | Washington, DC  20210

T: (202) 693-5531 | F: (202) 693-5389 |  E: karamoko.arginia@dol.gov

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Friday, September 11, 2020 8:26 PM
**To:** FOIARequests <FOIARequests@dol.gov>
**Subject:** FOIA request - OFCCP

Dear FOIA Officer,

(214 of 300), Page 214 of 300
Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 214 of 300
5/17/22, 10:24 AM    Case 3:22-cv-07182-WHA    Document 33-1    Filed 01/03/23    Page 25 of 1025

Under the Freedom of Information Act, I am requesting a copy of the following records from OFCCP:

**\* A spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2018.**

I am requesting this data in electronic format, by email. Fulfilling this request is not unduly burdensome because there is no need to notify federal contractors.

There is an exception to the notice requirements of 29 CFR 70.26 and Executive Order 12600 that applies here, as will be explained below. Notice to the contractors is not required.

Under 29 CFR 70.2(G)(5) and Executive Order 12600 Sec.8(e), the notice requirements **need not be followed** if the information has not been designated by the submitter, unless OFCCP "has reason to believe that disclosure of the information would result in substantial competitive harm."

Under 29 CFR 70.2(G)(6) and Executive Order 12600 Sec.8(f), the notice requirements **need not be followed** the designation made by the submitter "appears obviously frivolous."

There is no substantial reason to believe that disclosure of the information would result in competitive harm, so the information should be released without notice for any contractor. Even if a contractor has designated it as confidential, that designation should be considered "obviously frivolous," **as federal contractor EEO-1s have been determined to be public records that must be disclosed, not confidential commercial information**. Please see the Dec. 10, 2019 ruling by Judge Kandis Westmore in U.S. District Court for the Northern District of California, 4:19-cv-01843-KAW (attached).

I am a representative of the news media as a reporter with Reveal from The Center for Investigative Reporting, a non-profit investigative journalism organization. This request is made as part of news gathering and not for a commercial use. I respectfully ask that you waive fees related to this request. Please notify me of any charges before fulfilling this request.

Please contact me with any questions at 510-809-2209 or

wevans@revealnews.org

Thank you for your attention to this request.

Sincerely,
Will Evans
Reveal / The Center for Investigative Reporting
1400 65th, Suite 200
Emeryville, CA 94608



www.revealnews.org

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

**U.S. Department of Labor**

Office of Federal Contract Compliance Programs
200 Constitution Avenue, N.W.
Washington, D.C. 20210



October 2, 2020

Via Electronic Mail

Will Evans
The Center for Investigative Reporting
1400 65th Street, Suite 200
Emeryville, CA 94608

RE: Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Mr. Evans:

This letter is to acknowledge receipt of your Freedom of Information Act (FOIA) request submitted to *foiarequest@dol.gov*. The Office of the Solicitor assigned your request to the Office of Federal Contract Compliance Programs (OFCCP) on September 18, 2020. Please refer to the above-referenced FOIA tracking number in any future correspondence regarding your FOIA request.

You requested a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2018.

We consider you to be a representative of the news media as defined by the U.S. Department of Labor FOIA regulations at 29 CFR § 70.40(c)(3), therefore, only reproduction costs will be assessed, excluding charges for the first 100 pages. You will receive written notification if the total estimated fee for processing your request exceeds $25.00.

OFCCP's National Office will process your request for EEO-1 data. Once we compile the data, we will send a letter to the submitters notifying them of the request for their EEO-1 data.

In accordance with 29 CFR § 70.26 and Executive Order 12600, because your request covers information that may be protected from disclosure under FOIA Exemption 4, OFCCP is required to notify submitters that their information has been requested under the FOIA to give them an opportunity to object in writing to disclosure of any specified portion of the requested information. For those submitters who do not object, we will provide the information with any necessary redactions consistent with FOIA. For those submitters who do object, OFCCP will evaluate any response provided by the submitter as to why the requested information should be withheld and make its own determination as to whether the specific facts and relevant law warrant disclosure or withholding of the requested information.

Due to the volume and complexity of the FOIA requests we have received, we anticipate that providing a full response will take longer than 20 business days to fulfill. Accordingly, OFCCP will take an additional 10 business days to fulfill your request as afforded by the FOIA at 5 U.S.C. § 552(a)(6)(B)(i). We will contact you if we are unable to fulfill your request in 30 business days.

We consider you a "news media" type of requestor. As a "news media" requestor, we charge you for photocopying after the first 100 pages in accordance with the U.S. Department of Labor FOIA regulations at 29 CFR § 70.40(c)(4). DOL's FOIA regulations at 29 CFR § 70.42(a) deem that the filing of a FOIA constitutes an agreement by the requester to pay all fees up to $25.00.

If you need further assistance or would like to discuss any aspect of your request, please do not hesitate to contact this office at (202) 693-0101 or by email at OFCCP_NO_FOIA@dol.gov. Alternatively, you may wish to contact the DOL FOIA Public Liaison, Thomas Hicks, at (202) 693-5427 or by email at hicks.thomas@dol.gov.

You may also contact the Office of Government Information Services (OGIS), within the National Archives and Records Administration (NARA), to inquire about the mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, MD 20740-6001. You can also reach that office by email at ogis@nara.gov, by phone at (202) 741-5770, by fax at (202) 741-5769, or by calling toll-free at (877) 684-6448.

If you are not satisfied with the response to this request, you may administratively appeal by writing to the Solicitor of Labor within 90 days from the date of this letter. In the appeal, you must state in writing the grounds for the appeal, and may include any supporting statements or arguments, but such statements are not required. To facilitate processing of the appeal, please include your mailing address and daytime telephone number, as well as a copy of the initial request and copy of this letter. Clearly mark "Freedom of Information Act Appeal" on the envelope and letter of the appeal. You must make any amendment to the appeal in writing and we must receive it prior to a decision. Address the appeal to the Solicitor of Labor, Division of Management and Administrative Legal Services, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N2420, Washington, DC 20210. You may submit your appeal by email to foiaappeal@dol.gov. The Department does not accept appeals submitted to any other email address.

Sincerely,

DORIS GEAN   Digitally signed by DORIS GEAN

Doris Lissette Geán
FOIA Manager

2

# Exhibit D



**Shawn Musgrave <smusgrave@revealnews.org>**

---

# Fwd: amendment request

**Will Evans** <wevans@revealnews.org>                                    Thu, Sep 30, 2021 at 10:28 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **OFCCP NO FOIA** <OFCCP_NO_FOIA@dol.gov>
Date: Tue, May 11, 2021 at 9:05 AM
Subject: RE: amendment request
To: Will Evans <wevans@revealnews.org>

Dear Mr. Evans,

We have modified request 872421 to include a spreadsheet of the consolidated (Type 2) EEO-1 reports for all federal
contractors for the years 2016 through 2018.

We will administratively close request 897123.

Cordially,

Bruce Andersen

The OFCCP FOIA Team

---

**From:** Will Evans <wevans@revealnews.org>
**Sent:** Monday, May 10, 2021 1:02 PM
**To:** OFCCP NO FOIA <OFCCP_NO_FOIA@DOL.GOV>
**Subject:** amendment request

> CAUTION - The sender of this message is external to the DOL network. Please use care when clicking on links and responding
> with sensitive information. Send suspicious email to spam@dol.gov.

Dear FOIA Officer,

I would like to amend my FOIA request #872421 to include a spreadsheet of all consolidated (Type 2) EEO-1 reports for
all federal contractors for 2017 and 2018 as well as 2016.

10/14/21, 11:29 AM   Case 3:22-cv-07182-WHA Document 85-1 Filed 04/18/23 Page 325 of 1025

If you agree to this amendment, I will withdraw my separate FOIA #897123 for the 2018 data.


Please let me know.
Thank you very much.
Best,

Will Evans
--

Will Evans

reporter

office: 510-809-2209

cell: 510-333-9584




[www.revealnews.org](http://www.revealnews.org)


--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
[www.revealnews.org](http://www.revealnews.org)

# Exhibit E

**U.S. Department of Labor**

Office of Federal Contract
Compliance Programs
200 Constitution Avenue, N.W.
Washington, D.C. 20210



JUL 18 2019

Will Evans
The Center for Investigative Reporting
1400 65th Street, Suite 200
Emeryville, CA 94608

RE: Freedom of Information Act Request Acknowledgement – Tracking No. 872421

Dear Mr. Evans:

This letter is a follow-up to your Freedom of Information Act (FOIA) request submitted to the Office of Federal Contract Compliance Programs (OFCCP). Please refer to the above-referenced FOIA tracking number in any future correspondence regarding your FOIA request.

You requested a spreadsheet of all consolidated (Type 2) EEO-1 reports for all federal contractors for 2016. As you know from your earlier requests, in accordance with 29 CFR § 70.26, OFCCP is required to notify submitters that their business information has been requested under the FOIA to give them an opportunity to object in writing to disclosure of any specified portion of the requested information.

Though you request is reasonably described, we have determined that there are more than 100,000 responsive records. Reaching out to each of the companies affected by your voluminous request would overwhelm the OFCCP FOIA unit for the foreseeable future, and the cost in sending more than 100,000 letters would be unduly burdensome. If you wish to narrow the scope of your request, please send a revised request to the address referenced above or send an e-mail to OFCCP_NO_FOIA@dol.gov. In the event that we do not receive a response from you within thirty (30) days from the date of this letter, we will administratively close your request.

Should you have questions regarding your request, please contact this office at (202) 693-0101 or by email at OFCCP_NO_FOIA@dol.gov. If you need further assistance or would like to discuss any aspect of your request, please do not hesitate to contact the DOL FOIA Public Liaison, Thomas Hicks, at (202) 693-5427.

Alternatively, you may contact the Office of Government Information Services within the National Archives and Records Administration (OGIS) to inquire about the mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, MD 20740-6001. You can also reach that office by e-mail at ogis@nara.gov, by phone at (202) 741-5770, by fax at (202) 741-5769, or by calling toll-free at (877) 684-6448.

If you are not satisfied with the response to this request, you may administratively appeal by writing to the Solicitor of Labor within 90 days from the date of this letter. The appeal must state in writing the grounds for the appeal, and it may include any supporting statements or arguments, but such statements are not required. In order to facilitate processing of the appeal, please include your mailing address and daytime telephone number, as well as a copy of the initial request and copy of this letter. The envelope and letter of the appeal should be clearly marked "Freedom of Information Act Appeal." Any amendment to the appeal must be made in writing and received prior to a decision. The appeal should be addressed to the Solicitor of Labor, Division of Management and Administrative Legal Services, U.S. Department of Labor, 200 Constitution Avenue, NW, Room N2420, Washington, DC 20210. Appeals may also be submitted by email to foiaappeal@dol.gov. Appeals submitted to any other email address will not be accepted.

Sincerely,

D. Lissette Geán
Special Assistant

# Exhibit F

10/14/21, 11:32 AM Case 3:22-cv-07739-WHA Document 89-1 Filed 10/18/23 Page 236 of 325 and 897123



Shawn Musgrave <smusgrave@revealnews.org>

---

## Fwd: Freedom of Information Act Requests – Tracking Nos. 872421 and 897123

**Will Evans** <wevans@revealnews.org>                    Thu, Sep 30, 2021 at 10:30 PM
To: Shawn Musgrave <smusgrave@revealnews.org>

---------- Forwarded message ---------
From: **Alexandra Gutierrez** <agutierrez@revealnews.org>
Date: Thu, Jan 7, 2021 at 9:13 AM
Subject: Re: Freedom of Information Act Requests – Tracking Nos. 872421 and 897123
To: Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov>
Cc: Victoria Baranetsky <vbaranetsky@revealnews.org>, Will Evans <wevans@revealnews.org>, Hicks, Thomas - SOL <hicks.thomas@dol.gov>

VIA E-MAIL

Doris Lissette Geán
FOIA Manager
Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C. 20210
OFCCP_NO_FOIA@dol.gov

Re:  Freedom of Information Act Request Acknowledgement – Tracking No. 897123

Dear Ms. Geán,

We are following up on your December 18, 2020 e-mail. While we are considering are options as to the Department of Labor's current position as to our reporter's request, we seek answers to the following questions:

1. When did the Department provide E.O. 12600 notices to submitters?
2. Have any submitters responded, either objecting or consenting?
3. For those submitters who have consented or have waived their opportunity to object due to the passage of a reasonable amount of time, would the Department be able to provide their submitted reports on a rolling basis.

We appreciate your attention to these inquiries.

Sincerely,

Alexandra M. Gutierrez

cc:    D. Victoria Baranetsky, General Counsel, Center for Investigative Reporting
       Will Evans, Reporter, Center for Investigative Reporting
       Thomas Hicks, DOL FOIA Public Liaison

On Fri, Dec 18, 2020 at 9:32 AM Office of Federal Contract Compliance Programs <ofccp_no_foia@dol.gov> wrote:
Via Electronic Mail

Dear Ms. Gutierrez:

We have received your December 11, 2020, e-mail inquiring about outstanding FOIA requests that, combined, seek two years (2016 and 2018) of EEO-1 consolidated (Type 2) reports for all federal contractors.

As you are aware, we have complied with the district court's order and released the 2016 reports of the individual submitters who have not appealed the court's decision in the matter of *Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, 424 F. Supp. 3d 771, 779 (N.D. Cal. 2019). Your outstanding FOIA requests seek the EEO-1, Type 2 reports of well over 15,000, and possibly over 20,000 submitters from countless industries whose reports are not subject to that court order.

We continue to be subject to Executive Order 12600 and are obligated to notify submitters of requests for their potentially confidential commercial information. *See* 29 C.F.R. § 70.26. Under Executive Order 12600, we must afford submitters a reasonable period of time to object to the disclosure of any portion of the information and to state all grounds upon which disclosure is opposed. The submitters that are the subject of your request have not had the opportunity to demonstrate whether their EEO-1, Type 2 reports contain confidential commercial information. Moreover, while we do not believe that the Northern California's District Court's decision in *Center for Investigative Reporting* has precedential effect on all EEO-1, Type 2 reports, we note that this matter is currently on appeal before the U.S. Court of Appeals for the Ninth Circuit and there is still a chance that the district court's holding may be overturned.


Sincerely,




D. Lissette Geán

FOIA Manager


--
Alexandra M. Gutierrez
First Amendment Fellow
**(c)** 907-209-1799

--
Will Evans
reporter
Reveal from The Center for Investigative Reporting
office: 510-809-2209
cell: 510-333-9584
www.revealnews.org

# EXHIBIT S

**Your donation helps protect democracy.**   DONATE

**SILICON VALLEY DIVERSITY**

# We Forced the Government to Share Corporate Diversity Data. It's Giving Companies an Out Instead.

by **Will Evans**

August 29, 2022



10/18/23, 7:18 PM    We Forced the Government to Share Corporate Diversity Data. It's Giving Companies an Out Instead - Reveal

Jenny Yang, director of the Labor Department's Office of Federal Contract Compliance Programs, gave contractors 30 days to object to the release of their diversity reports. Credit: U.S. Department of Justice

The federal government is inviting thousands of companies to fight the public release of their diversity numbers, even after a judge ruled that the workplace demographics reports shouldn't be kept secret.

For years, Reveal from The Center for Investigative Reporting has battled in court to make public the diversity reports of companies that get government contracts, so that all journalists and the public can scrutinize the data. We won, but the fight isn't over.

Some companies – and the federal government – continue to push back against transparency, despite the court loss.

Government contractors must file diversity reports that show their overall workforce by race, gender and job category. Called EEO-1s, the reports offer a starting point for comparing diversity across similar companies and addressing inequality. Contractors, as recipients of taxpayer money to do work for the public, are required to meet a **higher standard** to guarantee equal opportunity and eliminate discrimination in their employment practices.

The U.S. Department of Labor refused to release most reports to Reveal even after **a federal judge ruled in 2019** that the reports weren't confidential business information. After we **threatened** to sue again earlier this year, it proactively offered contractors a 30-day window to argue for keeping their diversity data secret instead of releasing the records.

Civil rights **activists**, members of **Congress** and **scholars** have long called for the reports to be made public, and after many years of pressure, an increasing number of companies disclose them voluntarily. Reveal used those voluntary reports in a **series of stories** quantifying the severe lack of diversity in the tech industry, where **less than 2% of professionals at the largest companies were Black or Latina women** in 2016. Other **news organizations** have used the reports to hold companies accountable as well.

But the public still doesn't know how diverse the workforces are at the majority of companies that contract with the federal government. Reveal has requested diversity reports for all federal contractors from 2016 to 2020.

Jenny Yang, director of the Labor Department's Office of Federal Contract Compliance Programs, **published** a notice Aug. 19 that federal contractors have 30 days to object to the release of their diversity reports, giving them the opportunity to block their disclosure. The agency estimates that 15,000 companies could be affected.

10/18/23, 7:18 PM    We Forced the Government to Share Corporate Diversity Data. It's Giving Companies an Out Instead. – Reveal

Even though a federal judge **struck down** the department's previous attempt to keep such records secret, Yang's notice said the agency "has reason to believe that the information requested may be protected from disclosure" and has "not yet determined" whether it is. The agency set up a **portal** to accept objections from companies. The portal also made clear who made the request for the records: It names me and links to my bio page.

Reveal has been fighting for the release of diversity reports for five years, through various requests under the Freedom of Information Act, direct requests to companies and legal filings.

When we first requested the reports for Silicon Valley tech companies, several claimed their diversity numbers were trade secrets. Some of them **argued** that releasing the numbers would hurt their competitive position, leading to a "raiding of minority or female employees" or even "public relations harm."

The government sided with the companies, but after we sued, it **reversed course** and released the EEO-1 reports. It turned out companies' diversity stats were just **embarrassing**. Palantir, for example, had no female executives at the time and no women of color in management at all – particularly bad representation even for the tech industry.

When we asked for more recent data for the tech companies, the government **backtracked**, siding again with the companies that argued their diversity numbers were confidential commercial information. So we sued again.

A federal judge eventually **ruled** that the companies' objections didn't hold up, that EEO-1s are not confidential business information and that "the Government was not justified" in withholding them. The Labor Department didn't appeal the decision. A **tech company** did, but its appeal failed for procedural reasons.

Now, after years of dragging its feet, the government is sidestepping the court ruling, claiming it's still not clear whether the records should be public, inviting companies to object and offering them a list of points to address in requesting the government withhold the records.

Reveal general counsel D. Victoria Baranetsky **argued** in a letter to the agency that inviting companies to object goes against the court opinion and that the agency should publish all of the diversity data online. Baranetsky's proposal has precedent: The Labor Department **published** workplace injury data online, without consulting companies, after Reveal **won a ruling** that the records must be made public. Now that data is being used by other journalists and advocacy groups.

(232 of 300), Page 232 of 300

Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 232 of 300

10/18/23, 7:18 PM          We Forced the Government to Share Corporate Diversity Data. It's Giving Companies an Out Instead - Reveal

Case 3:22-cv-07182-WHA Document 60-6 Filed 08/22/23 Page 43 of 105

In this case, the agency **maintains** it has to give companies a chance to object. It could, of course, have started that process more than three years ago when we first requested the data.

Meanwhile, corporate lawyers and consultants who represent contractors are sounding the alarm to their clientele.

"If there is information in your EEO-1 Reports that you would prefer to keep out of your competitors' hands and the public eye, you should act quickly," **wrote one firm**.

"Employers have a number of reasons to fear their EEO-1 data becoming public," **wrote another**, including that Reveal "could use the data to call out employers who they believe have underperformed in their diversity efforts, or worse yet, engaged in discrimination."

A third **wrote** that the government's general notice was "woefully inadequate" and that failing to alert each individual company "sets concerning precedent."

The agency states that it will make an independent evaluation of companies' objections before deciding whether to disclose their diversity reports. In the past, it has often rubber-stamped those objections.

Years ago, when Reveal requested PayPal's diversity numbers, the company offered a common **objection**: "PayPal has taken great care to ensure the confidentiality of its EEO-1 Reports" and releasing them "would cause substantial competitive harm." The government immediately wrote back that it agreed with PayPal, in a **letter** dated the same day.

The day after Reveal wrote a **story about that**, PayPal posted its EEO-1s publicly online, and it **continues** to do so each year. By the time USA Today asked companies for EEO-1s in 2021, PayPal CEO Dan Schulman had become an advocate for disclosure, **saying**, "The more transparent we can be as a company, the more we can fix issues and the more we can inspire others to do the same."

The fact that some companies disclose their numbers without a problem shows that the arguments for secrecy don't hold up, said Joseph Bryant Jr., who leads the Rainbow PUSH Silicon Valley Diversity Project. The group's founder, the Rev. Jesse Jackson Sr., has been **pressuring** tech companies to share their EEO-1 numbers since 2014.

"Whatever the excuse may be has a lot to do with companies not wanting to be caught with their pants down," Bryant said. "I think there are some companies that are too embarrassed and too lazy to do any better. And it's easier to deflect than to adjust."

10/18/23, 7:18 PM    Case 3:22-cv-07182-WHA    We forced the government to share corporate diversity data. It's giving companies an out instead - Reveal

Asked how the government will handle objections going forward and how the public can trust its determinations, a spokesperson for the Office of Federal Contract Compliance Programs declined to comment.

But one thing is clear: It follows a long pattern of deference to private companies – unless faced with a lawsuit.

*This story was edited by Kate Howard and Andrew Donohue and copy edited by Nikki Frick.*
*Will Evans can be reached at* **wevans@revealnews.org**. *Follow him on Twitter:* **@willCIR**.

---

## Related



**We sued the government for Silicon Valley diversity data**



**Judge backs Reveal's suit to end secrecy around Silicon Valley's diversity**



**How we analyzed Silicon Valley tech companies' diversity data**



**Here's the clearest picture of Silicon Valley's diversity yet: It's bad. But some companies are doing less bad**

---

© 2023 The Center for Investigative Reporting.

Proudly powered by Newspack by Automattic

# EXHIBIT T



**Workplace diversity**    Add Topic

# At mega-contractors like Raytheon, Moderna and Lockheed, diversity remains a challenge

**Jayme Fraser and Nick Penzenstadler, USA TODAY and Will Evans, Reveal**
Published 6:00 a.m. ET April 19, 2023 │ **Updated 12:27 p.m. ET April 19, 2023**

Executives at companies that receive billions of dollars in federal contracts were less likely to reflect America's diversity than their employees, according to a first-ever analysis by USA TODAY and Reveal from The Center for Investigative Reporting. Some have been sued for workplace discrimination.

In 2020, 21 companies each were paid more than $3 billion by the federal government, including defense contracting giants like Lockheed Martin and pharmaceutical companies like Moderna, one of the pioneers of the COVID-19 vaccine.

People of color were underrepresented among executives at these corporations compared with the rest of their workforce, the analysis showed. And women were less likely than men to break into top ranks, particularly those of color.

Such disparities have long been documented by researchers and in the historically limited public information about demographics at American companies, including a USA TODAY database of S&P 100 corporations.

## Why does the diversity of companies receiving public dollars matter?

The disparities highlight how tax dollars can reinforce gaps in wealth and opportunity for women and people of color.

Dr. Joseph Bryant Jr., who leads the Rainbow PUSH Silicon Valley Diversity Project founded by the Rev. Jesse Jackson, said public money should advance equity in the country.

"Either the government should be giving more money to minority businesses or the government should be giving money to businesses that make diversity and inclusion a priority," he said.

Donald Tomaskovic-Devey, who runs the Center for Employment Equity, said making the data public allows people to compare companies and hold them accountable for their hiring practices. He said diversity, equity and inclusion officers also could use the data to benchmark their companies' performance against competitors.

"I hope that in the long run this empowers the DEI staff in these firms to push their firms to do better," said the sociology professor from the University of Massachusetts, Amherst.

Why is this the first time this information has been available about federal contractors?

The data is the largest trove of corporate diversity information ever made public after a yearslong legal battle by Reveal seeking the reports filed by government contractors each year to the Equal Employment Opportunity Commission. It includes more than 19,000 federal contractors. More than 4,000 others have objected, and their information remains in limbo pending further litigation.

The Department of Labor has argued it can't release contractor diversity reports without notifying each company. It has so far sided with companies that argue the reports should be considered confidential business information — even though a federal judge has ruled those records should be made public.

## Could this lead to more public information about company demographics?

Researchers say Monday's release could be a crucial step toward the public being able to see all summary diversity data collected on this federal form, not just the demographics of government contractors.

"This could be what breaks the logjam," Tomaskovic-Devey said. "If the vast majority of firms were willing to release these data, what does that say about the defense that this is a trade secret? "

**Progress stalls at the top:**Few white women and people of color lead S&P 100 companies.
**'If I can do it, I know you can:'**Meet the Black CEO fighting for diversity.

**Racial justice:** How George Floyd's murder could change corporate culture.

## What does the new data show about the diversity of federal contractors?

Many of the companies receiving the most money from federal contracts do work for the Department of Defense.

Topping that list in 2020 at more than $51 billion in public money is Lockheed Martin, the Washington, D.C.-based aerospace and security giant. That figure does not include its subsidiaries. For instance, Sikorsky Aircraft received $4.6 billion in federal contracts that year, ranking 11th.

Neither company appeared in the five years of data released Monday by federal officials. But Lockheed Martin has published a copy of its demographic report online since its 2020 filing. That document shows white, non-Hispanic men held 68% of executive jobs despite being 34% of the U.S. workforce. They had no executives who were Pacific Islander or American Indian. And Hispanic women held just two of the 356 executive jobs despite accounting for 7% of the U.S. workforce.

"At Lockheed Martin, we believe that our commitment to diversity and inclusion is a business imperative, helping to drive our innovation and global leadership," wrote company spokesman Richard Sant.

USA TODAY found similar trends — white men holding a disproportionate number of top jobs and women of color having the least representation — at other companies receiving billions of dollars, such as Boeing, Raytheon, Humana, General Electric and Honeywell.

A Texas father-daughter attorney team of Elizabeth "BB" and Brian Sanford represent employees suing major defense contractors.

Brian Sanford says the Pentagon should do more to audit employment relations from its largest contracts.

"Just hold them to the basic standard. It's our tax dollars — they should be following the law," Sanford said. "There is a lot of power in saying 'You don't get this $1 billion contract if you do this.' They'll listen to that."

## What do companies have to say about this release?

Few of the 21 companies that received the most federal contract money in 2020 returned a request for comment about their diversity track record.

Companies often argue that the reports must be kept secret because they could give competitors valuable information about their workforce, even allowing other firms to lure away diverse talent.

For example, Oracle has objected to the release of its data in the past by saying it could lead to a "raiding of minority or female employees," though the company posted a more recent copy of its federal report online.

*Contributing: Jessica Guynn. This article was produced in collaboration with Reveal from The Center for Investigative Reporting, a nonprofit investigative newsroom.*

*Have a tip? Reach Jayme Fraser at jfraser@gannett.com or on Twitter @jaymekfraser, Nick Penzenstadler at npenz@usatoday.com or @npenzenstadler, or on Signal at (720) 507-5273, Jessica Guynn at jguynn@usatoday.com, or Will Evans at wevans@revealnews.org or on Signal at (510) 255-0865.*

# EXHIBIT U

The Wayback Machine - http://web.archive.org/web/20081224004419/http://www.intel.co...



**Diversity at Intel**

Our Vision

Our Commitment

Our People

Community Connections

Workforce Demographics

Awards and Recognition

Home › About Intel › Diversity ›

# Workforce Demographics

Intel's efforts to be a workplace of choice and a good neighbor in our communities are driven by a combination of social responsibility and principles of ethical business practices. These policies and practices help our employees achieve their personal and professional goals, while supporting Intel initiatives that make technology more accessible for everyone.

## Equal employment opportunity

Intel respects and values the unique perspectives and opportunities that a diverse workforce provides. We also welcome diversity in our customers, our suppliers and the global marketplace.

Our Principles for Responsible Business reflect our commitment to provide equal employment opportunity for all applicants and employees without regard to non-job-related factors, such as:

- Age
- Disability
- Gender
- Gender identity
- Marital status
- National origin or ancestry
- Race or color
- Religion
- Sexual orientation

This policy applies to all areas of employment, including recruitment, hiring, training, promotion, compensation, benefits, transfer and social and recreational programs. Intel prohibits harassment of any individual on any of the bases listed above.

## Affirmative action objectives

As a government contractor, Intel is committed to ensuring that women, minorities, people with disabilities, Vietnam Era veterans and disabled veterans are appropriately represented in the workplace. Intel prepares an Affirmative Action Plan each year at each site. The plans assess the utilization of minorities and women in the workforce and set forth our commitment to make good faith efforts to overcome any under-representation that has been identified.



**Wrong !**
**(**

Ruffle failed to load the required ".wasm" file component.

Access to fetch has likely been blocked by CORS policy.

If you are the server administrator, please consult the Ruffle wiki for help.

**Related resources**

Awards and News

Corporate Responsibility

Environment

Grants and Donations

Intel® Innovation in Education

Intel in Your Community

Supplier Diversity Program

Back to Top ^

Site Map    RSS    Jobs    Investor Relations    Press Room    Contact Us

Terms of Use    *Trademarks    Privacy    ©Intel Corporation

# EXHIBIT V



# PBS NEWS HOUR

# Google finally discloses its diversity record, and it's not good

Nation   May 28, 2014 6:00 PM EDT

## GOOGLE'S WORKFORCE — PBS NEWSHOUR

| GLOBAL TOTALS | OVERALL | TECH | NON-TECH | LEADERSHIP |
|---|---|---|---|---|
| **MEN** | 70% | 83% | 52% | 79% |
| **WOMEN** | 30% | 17% | 48% | 21% |

| U.S. TOTALS | OVERALL | TECH | NON-TECH | LEADERSHIP |
|---|---|---|---|---|
| **WHITE** | 61% | 60% | 65% | 72% |
| **ASIAN** | 30% | 34 | 23% | 23% |
| **BLACK** | 2% | 1% | 3% | 1.5% |
| **HISPANIC** | 3% | 2% | 4% | 1% |
| **OTHER*** | <1% | <1% | <1% | <1% |
| **TWO OR MORE**** | 4% | 3% | 5% | 1.5% |

Source: Google Inc.

Totals and % denominators do not include unknown, null, or "decline-to-state" fields.
* "Other" category includes: Native Hawaiian, Native American, and Pacific Islander.
** "Two or more races" category includes all Googlers who identify with more than one race.

In an industry that has been famously guarded about its workplace diversity, Google on Wednesday disclosed its record when it comes to hiring women, African-Americans and Hispanics. The data reveals statistics that the company itself admits are too low and strikingly below other industry averages.

Women comprise just 17 percent of its global tech workforce, according to data Google published on its website and released exclusively to the PBS NewsHour. When it comes to leadership, women only account for 21 percent of the top positions in the company,

which has a workforce of just under 50,000 people.

Google, which has been under rising pressure along with other tech companies to release diversity data, also reported that blacks comprise just one percent of all tech employees in the U.S. Hispanics account for two percent of the tech workforce in the U.S. Asians account for 34 percent of the company's U.S. tech workforce.

When it came to its overall workforce around the world, 30 percent of Google's employees are women. But in the U.S., racial and ethnic data show that 61 percent of the workforce is white, 30 percent are Asian, three percent are Hispanic and two percent are black. Four percent are two or more races.

The data shows that Google trails others when it comes to the tech workforce in particular.

Hiring numbers are generally considered a closely guarded secret among Silicon Valley companies and **reliable numbers are hard to come by**, but prior reports have shown that fewer than six percent of tech engineers are either black or Hispanic. Other reports have found the industry's norm of women employed in the technical workforce are roughly 20 percent or a bit higher. When it comes to engineers, one survey of 133 startups done by an engineer at Pinterest found 12 percent of engineers were women.

"We're not where we want to be when it comes to diversity," Laszlo Bock, Google's senior vice president of "people operations," told the NewsHour in a statement prior to a broadcast interview Wednesday. "It is hard to address these kinds of challenges if you're not prepared to discuss them openly, and with the facts. All our diversity efforts, including going public with these numbers, are designed to ensure Google recruits and retain many more women and minorities in the future."

Google and other major tech companies have been the target of increasing pressure to hire more women and minorities — and to become far more transparent about whom they have hired until now. Companies with more than 100 employees are required to file that information with the U.S. Equal Employment Opportunity Commission but the EEOC says it is legally prohibited from making that data public. The employers are not under any obligation to make that data public in most cases.

Past efforts to obtain that data — including a **major effort by CNN** back in 2011 — have only yielded partial information about a handful of companies. When CNN tried to persuade leading tech companies to disclose its hiring numbers, 17 of them refused. Until Google's disclosure Wednesday, only a few major technology companies, including **Intel**, have publicly posted that information. Google's own record on this issue has been the focus of articles in the **New York Times** and the **San Jose Mercury News**, among others.

But public campaigns have stepped up the pressure — just this spring, **Jesse Jackson visited Google's shareholder meetings** in Silicon Valley. Google officials told the NewsHour that the company had been "working toward disclosing this for the better part of the year" and said Google invited Jackson to its meeting last month where the company promised for the first time to release the numbers.

The tech giant was praised for its new commitment to transparency but its record on diversity was criticized.



Most technology companies have guarded their hiring information but on Wednesday Google released its data for the first time. Photo by David Paul Morris/Bloomberg/Getty Images

Vivek Wadhwa, an entrepreneur and <u>vocal critic of the Silicon Valley's hiring practices</u>, said he was disappointed by Google's record and contends the company had "no excuses" for it.

"About a quarter of today's pool of highly experienced software developers is female, and a company such as Google — which has its pick of the crop of new graduates as well as experienced engineers — should have far greater diversity," Wadhwa wrote in a post for the NewsHour.

Telle Whitney, the president and CEO of the Anita Borg Institute, a not-for-profit that works to foster a more welcoming culture for women in tech, said Google's disclosure is a significant step.

But she told the NewsHour in a statement, the numbers themselves are below what they should be.

"We are delighted that Google and other companies are being more transparent about the percentage of women in their workforce," Whitney said. "That being said, the numbers are not good. Google's technical workforce is made up of only 17 percent women, which is lower even than the abysmal norm of 20-24 percent."

Wednesday's announcement comes amid other developments of late that are casting a harsher spotlight on how the tech sector deals with women and minorities. Companies are increasingly criticized for a culture that too frequently fails to recruit, promote and retain women, especially at the leadership levels. In some cases, companies have are being accused of fostering a kind of "bro culture" that is unwelcoming to women. And there are several high profile stories of late that paint a picture of workplaces where outright sexism and misogyny persist. Engineer Julie Horvath **accused Github of gender discrimination** and intimidation after announcing her resignation last month, triggering an internal investigation. Just last week, several female tech leaders posted an **open letter** blasting parts of the culture, citing the Github case and other offenses in the industry.

Google itself has not been publicly accused of any of those kinds of allegations. But it has been called to disclose more information about its hiring record and particularly what has happened to the role of women. Company officials say today's announcement is the first of a number of moves to attract and retain more female talent in tech and engineering.

Wadhwa says he believes Google's decision to disclose is another important chapter in a story that may be starting to move in a different direction.

"I think this will put pressure on other companies to release their gender data — which is good because it will lead to change," Wadhwa said. "Look at all the companies that are now adding women to their boards because they were shamed into it.Things are changing. Silicon Valley can be arrogant and insular, but at the end of the day, it does listen."

*PBS NewsHour's coverage online includes guest columns by both Vivek Wadhwa and Telle Whitney — along with an article about the state of STEM education, how the gender gap has grown and what approaches are being tested to reduce it.*

*By –* **Murrey Jacobson**

---

 **@MurreyJacobson**

# EXHIBIT W

# Microsoft releases diversity stats: How the tech giant sizes up

Microsoft's CEO Satya Nadella kept his promise and released the tech giant's federally-mandated diversity numbers to public scrutiny.

In mid-December, Microsoft (MSFT) quietly released its EEO-1 form, a federal filing that outlines employment data by race and gender according to job type. While Microsoft has diversity in its highest ranks, including an African-American board chairman, an Indian CEO and a female CFO, the overall statistics are less flattering: the company is 60.6% white and 71% male, according to its EEO-1 form.

Under the Civil Rights Act of 1964, every company is required to file file an EEO-1 form, listing employment data by race/ethnicity, gender and job category. The federal government is prohibited from making any of the compliance surveys public.

*Learn more about diversity in tech from Fortune's video team:*

A host of tech companies have revealed their diversity numbers in the last year, although some big name firms have remained stubbornly silent, including Amazon (AMZN), IBM (IBM) and Oracle (ORCL).

At Microsoft's annual meeting on Dec. 3, Nadella vowed to publicize EEO-1 numbers after Rev. Jesse Jackson called on the tech industry to improve its diversity. Microsoft had released only certain diversity data points since 2006.

So, how does Microsoft compare to other tech companies?

Fortune.com examined the data released so far, which includes 10 tech companies' federal EEO-1 filings, some company blog posts and annual corporate reports. That means there could be slight differences to how the information was collected and categorized. It's not an entirely parallel comparison, but it does provide some insights.

Here's how Microsoft stacks up.

## Not the most male-dominated

Overall, the Microsoft staff is heavily male, with just 29% of the staff female. But that is not the most male-dominated company. That award goes to Intel, which is 23% male. However, Microsoft's stat is still impressive (in a negative way), considering that the company has 128,000 employees worldwide.

"We have work to do at Microsoft and across the industry," wrote Nadella in an internal memo prior to the EEO-1 release. "These numbers are not good enough, especially in a world in which our customers are diverse and global."

## Few women at the top

Even getting more women in the door at tech companies doesn't mean they will advance into managerial roles within the firm. There are few women in leadership roles at companies like Google (GOOG), Microsoft and Facebook (FB).

Nadella and other tech CEOs have created various initiatives to hire more women and minorities, such as prioritizing diversity when recruiting and developing training programs to promote inclusion.

## Even fewer women in STEM jobs

The gender imbalance is even more pronounced when you examine the technical ranks; only 17% of programmers, coders and other engineering-type roles are held by women at Microsoft. Microsoft's standing -- though average for the industry -- is still better than Twitter's (TWTR) 10% female tech headcount.

In part, the problem starts long before the hiring process even begins, as women account for only 18.2% of computer science graduates, according to the National Science Foundation.

## An obvious racial and diversity gap

When it comes to overall racial and ethnic diversity, Microsoft falls toward the back of the pack, with 61% of employees identifying as Caucasian. Yahoo (YHOO) has a 50% Caucasian headcount, though Apple (AAPL) has a greater percentage of minority workers, especially among Hispanic (11%) and black (7%) employees.

## The diversity gap in the executive ranks

Microsoft does a bit better than its peers when it comes to having a racially and ethnically-diverse leadership. Whites hold 72.2% of all leadership roles at Microsoft, compared to about 78% at Yahoo.  Facebook also has a similar diversity gap, with about 74% of leadership identifying as white.

Tech companies know that their numbers aren't anything to be too proud of: Apple's stats, which were revealed in a blog post, came with a sort of apology from CEO Tim Cook: "As CEO, I'm not satisfied with the numbers on this page. They're not new to us, and we've been working hard for quite some time to improve them."

Execs at other tech companies issued similar statements with their diversity revelations. "Put simply, Google is not where we want to be when it comes to diversity," Laszlo Bock, Google's senior vice president of people operations, said.

Nadella also has acknowledged that Microsoft still has work to do: "I envision a company composed of more diverse talent. I envision more diverse executive staff and a more diverse Senior Leadership Team. Most of all, I envision a company that builds products that an expansive set of diverse and global customers love."

*Watch more about Microsoft from Fortune:*

[fortune-brightcove videoid=3921421258001]

# EXHIBIT X

(250 of 300), Page 250 of 300 Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 250 of 300
Case 3:22-cv-07182-WHA    Document 39-1    Filed 10/18/23    Page 761 of 1025
9/12/2019                                    Diversity Annual Reports Yield Business Benefits



**BETTER WORKPLACES**
**BETTER WORLD™**

# Diversity Annual Reports Yield Business Benefits

By Rebecca R. Hastings, SPHR

October 10, 2012

Few organizations have the resources available to publicize their diversity and inclusion efforts in a glossy, full-color diversity annual report, experts say. However, there are good business reasons for small employers to consider sharing their diversity story and ways to do so that won't break the bank.

Diversity annual reports are most common among *Fortune* 50 or other large organizations, according to Jennifer Brown, president and owner of a New York City-based leadership and diversity consultancy. That's because organizations must have a track record in diversity and inclusion, as well as commitment from the top, to produce such a document, Brown told *SHRM Online*. After all, such reports are "shared externally with the world," she said, and must therefore be produced and vetted like a marketing piece.

To justify the time and resources needed to produce a diversity annual report, an organization needs to be clear about the report's purpose.

Some companies use their diversity annual report to communicate their employment brand to prospective applicants. For example, on Aug. 28, 2012, Kellogg Company issued a news statement announcing the release of its third **diversity and inclusion report** (http://www.kelloggdiversityandinclusion.com/). The report, titled "Features," outlines "the company's efforts toward building a diverse workforce reflective of the consumers it serves and the communities in which it operates," according to the statement.

"Fostering diversity within our workforce and our supplier base is not just the right thing to do; it's critical for helping us achieve our strategic vision," said John Bryant, president and chief executive officer, Kellogg Company, in the statement announcing the report. "An actively inclusive, welcoming and respectful work environment promotes employee engagement, drives innovation, improves retention and boosts productivity—all of which contribute directly to our bottom line."

Similarly, on Dec. 7, 2011, Sodexo Inc., a global provider of "quality of daily life solutions," announced the release of its **diversity and inclusion annual report for North America** (http://viewer.zmags.com/publication/26069029#/26069029/1). The report "reveals the business rationale for Sodexo's commitment to diversity and inclusion by providing examples of how it drives the company's ability to attract, develop, and retain the best talent, foster an engaged and committed workforce, and deliver innovative quality of life solutions to their clients and customers," according to the news release.

Few companies achieve this level of clarity, however. "Most companies have not considered incorporating diversity into the development of their employer brand," according to a presentation posted on the *Employer Branding Today* website on Sept. 12, 2012. This is problematic, it added, because companies that do not manage part of their employment brand through diversity "will be at a disadvantage in the war for talent."

**Should You Produce a Diversity Annual Report?**

Feedback

(251 of 300), Page 251 of 300
9/12/2019

Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 251 of 300
Case 3:22-cv-07182-WHA    Document 39-1    Filed 10/18/23    Page 762 of 1025
Diversity Annual Reports Yield Business Benefits

Experts say there are a number of factors to consider before publicizing diversity results.

Eric C. Peterson, MSOD, manager of diversity & inclusion (D&I) for the Society for Human Resource Management (SHRM) said that an organization's decision to publish a diversity annual report—or to include D&I in its main annual report—will depend on whether the organization sees any inherent value in diversity and inclusion or has a good story to tell.

If the organization meets these criteria, "there's no reason to not put something out there," Peterson told *SHRM Online*. "If they have enough good stuff going on that can be backed up with data, it could make a real difference for consumers, job seekers, potential suppliers and members of the surrounding community," he explained.

If an organization's D&I story is not a good one, however, it's not going to tout it too strongly, he added.

Even if an organization does publish a report of some kind, "it doesn't mean that the story is a perfect one ... it's likely there's something that they aren't telling us," Peterson noted.

"The value of a diversity annual report depends upon the extent to which it complements the organization's overall diversity and inclusion strategic framework," Peter Bye, president of MDB Group Inc., a New Jersey-based diversity and intercultural consultancy, wrote *SHRM Online* in an e-mail. "To be effective, a diversity annual report should be part of an internal and external communication plan that is itself an integral part of the D&I strategy."

"It should communicate strategic goals, progress and accomplishments in all areas of focus in the strategy," Bye explained. "If, for example, a [D&I] strategy focuses on workforce diversity, supplier diversity, community relationships, philanthropy, investments and reputation, then these should be included in the report. Used in this strategic way the diversity annual report provides useful information, conveys commitment and business purpose, and helps build the organization's reputation."

## Deciding What to Include

Diversity annual reports are fairly easy to find online. Some of the examples reviewed for this article include **Citi's 2011 Global Diversity Report** (http://www.citigroup.com/citi/citizen/people/diversity/annualreport.htm), **Warner, Norcross and Judd, LLP's 2011 Diversity and Inclusion Annual Report** (http://www.wnj.com/About-Us/Diversity/Diversity-Annual-Report) and **Deloitte's Diversity & Inclusion Annual Report** (http://www.deloitte.com/assets/Dcom-UnitedStates/Local%20Assets/Documents/DAR_sm%20FINAL.pdf).

Reports vary in length, though 24-36 pages is common.

The following are some of the elements found in various reports:

- The organization's business case or rationale for diversity and inclusion.
- A history of the organization's diversity journey.
- The diversity and inclusion vision, mission and strategy.
- Diversity goals and progress toward achieving those goals, often depicted in colorful tables or charts.
- A list of employee resource groups and how they are structured.
- A description of programs and events held that year.
- A list of internal diversity council members or external diversity advisory group members, or both.
- A list of outside groups with whom the organization partners, such as veteran support groups.
- Descriptions of programs that demonstrate a focus on either the local community or that have a direct link to the organization's purpose, such as health care.
- Information on the organization's efforts to support diverse suppliers or reach diverse market segments.
- A list of diversity-related awards and honors the organization received that year.

## Use Photos to Demonstrate Visible Diversity

SER-851

(252 of 300), Page 252 of 300
9/12/2019
Diversity Annual Reports Yield Business Benefits
Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 763 of 1025
Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 252 of 300

Most diversity reports include photographs of employees, often accompanied by testimonials or stories and a statement by a top leader of the organization. Although the use of stock photos in annual reports is an accepted practice, experts suggest organizations select photographs carefully for diversity reports.

Joyce Bender, CEO of Bender Consulting Services Inc. and chair of the American Association of People with Disabilities' board of directors, encourages organizations to use photographs of employees or other people with disabilities, rather than able-bodied models posing as people with disabilities. In addition, she recommends the use of photographs of people who are blind or deaf, as well as those who live with epilepsy, autism or an intellectual disability. "I would also include veterans with disabilities," she wrote *SHRM Online* in an e-mail.

"If the company doesn't have personal photos of people that demonstrate different aspects of diversity you should get them," Brown added. "You should have a constant refresh of pictures."

**Add Numbers to Demonstrate Results**

Many diversity annual reports contain statistics on the workforce representation of individuals from various demographic groups. Some reports contain several years' worth of company data to show progress over time, while others compare the organization's results to national or global workforce demographics.

This presents a dilemma for some organizations, Brown noted, especially when the data shows that the organization hasn't made as much numerical progress as it would like. This might result in an attempt to downplay poor results and emphasize positive ones.

"Most annual reports are more of a public relations tool than a real measure of a company's diversity efforts and success," Dr. Denise Ajeto, principal of a Seattle-based diversity consultancy, wrote *SHRM Online* in an e-mail message. Thus, organizations can highlight a few areas in which they are doing well, even as they make relatively little progress in what she considers the "real measures" of diversity and inclusion, such as the representation of women and people of color in certain job classifications and higher levels of management, employee satisfaction survey scores and employee retention, she noted.

"Representation numbers are lagging indicators," Brown explained. "They show up after an inclusive environment is created. There are many things that need to be in place in order to move those representation numbers."

"It's like taking a snapshot of a moving target," she added.

Because there's an expectation that an annual report will include numbers, Brown suggested that organizations redefine the numbers they use and find different ways to measure success. For example, an organization can focus on the growth of employee resource groups or share promotion rates by group, rather than simply counting the number of people they have.

**Other Ways to Use a Diversity Annual Report**

Knowing that the organization will need to publish a diversity annual report summarizing a year's worth of work could motivate business leaders to use such a tool strategically. "Design your annual report a year ahead and use it as an aspirational tool—a starting point—for planning and accountability," Brown suggested. Ask "What don't we have organizationally that we need to put into place to achieve the results we want?" she added.

It's just as important for annual reports to capture where the company is going as it is to capture where the company has gone, Brown noted.

Organizations should not ignore the opportunity to recognize employee efforts, Brown said, such as acknowledging that a sale was made because a diverse group leveraged their network or **that a group made a notable contribution to a marketing campaign** (www.shrm.org/publications/hrnews/pages/60secondsofsilence.aspx).

In addition, organizations can use their report to help solve a particular problem, such as attracting recent college graduates. "Always keep the audience in mind," Brown said.

SER-852

Feedback

Smaller companies might have to be a bit more creative, she acknowledged, because they'll have fewer resources to work with. In that case they might want to broaden the focus of the report by adding corporate social responsibility or innovation, she said.

"It's a clarifying exercise," she added. "It gets everyone together to ask 'What are we most proud of? What is most essential?'"

*Rebecca R. Hastings, SPHR, is an online editor/manager for SHRM.*

**Related Resources:**

**Creating a Strategic Diversity Management Plan**

(www.shrm.org/hrdisciplines/Diversity/Articles/Pages/StrategicDiversityManagementPlan.aspx)

**Mine Diversity Awards for Program Ideas** (www.shrm.org/hrdisciplines/Diversity/Articles/Pages/Mine-Diversity-Awards-for-Program-Ideas.aspx), *SHRM Online* Diversity Discipline,September 2012

**Quick Links:**

*SHRM Online* **Diversity page** (www.shrm.org/hrdisciplines/Diversity/Pages/default.aspx)

**SHRM Connect Diversity & Inclusion community** (http://community.shrm.org/SHRM/Communities/ViewCommunities/CommunityDetails/?CommunityKey=42bb115c-5dea-4fc7-ac40-616b4ebbafa1)

Keep up with the **latest Diversity news** (www.shrm.org/Publications/E-mailNewsletters/Pages/default.aspx).

## HR DAILY NEWSLETTER

News, trends and analysis, as well as breaking news alerts, to help HR professionals do their jobs better each business day.

Email Address

Feedback

**CONTACT US (WWW.SHRM.ORG/ABOUT-SHRM/PAGES/CONTACT-US.ASPX) | 800.283.SHRM (7476)**

© 2019 SHRM. All Rights Reserved

SHRM provides content as a service to its readers and members. It does not offer legal advice, and cannot guarantee the accuracy or suitability of its content for a particular purpose.

Disclaimer (www.shrm.org/about-shrm/Pages/Terms-of-Use.aspx#Disclaimer)

# EXHIBIT Y

Your donation helps protect democracy.    DONATE

**INEQUALITY, SILICON VALLEY DIVERSITY, WORKED OVER**

# Hidden figures: How Silicon Valley keeps diversity data secret

by **Will Evans** and **Sinduja Rangarajan**

October 19, 2017



As Silicon Valley struggles with inclusion and discrimination, most of the area's tech companies won't share raw numbers on workforce demographics with the public. Slack is one of 188 Silicon Valley tech companies surveyed by Reveal that have not released the numbers they report to the government on employee diversity. Instead, Slack and some other companies create their own diversity reports, such as the 2017 report pictured here. Credit: Photo illustration by Gabriel Hongsdusit/Reveal

When the popular messaging platform Slack won a fastest-rising startup award last year, the company sent four black female engineers to accept it.

Onstage at the TechCrunch awards show, one of the women praised Slack's diversity, **citing** a statistic from the company's **2016 diversity report**: 9 percent of Slack's engineering team were black, Latina or Native American women.

"THIS Is What Diversity In Tech Should Look Like," said one **HuffPost headline**.



At the 2016 TechCrunch awards in San Francisco, four black female engineers at Slack – from left to right, Megan Anctil, Erica Joy Baker, Kiné Camara (at microphone) and Duretti Hirpa – accept the award for fastest-rising startup. In her speech, Camara cited a number from a Slack employee diversity survey that the company later acknowledged was flawed. Credit: TechCrunch Credit: Reveal

It turns out that number came from an anonymous employee survey that Slack later acknowledged was flawed. While the company had said 6.9 percent of its technical team was black, for example, this year's **diversity report** admitted the number should have been 4.3 percent. No mention was made of women of color this year.

How many women of color do work at Slack? The answer is on a one-page form Slack and all companies with 100 or more employees send to the federal government each year. The forms – called **EEO-1 reports** – show

hard numbers of employees broken down by race, gender and job categories such as professionals, managers and executives. But Slack won't make it public.

Even as California's Silicon Valley struggles with diversity and discrimination, most of the area's tech companies won't share that basic data with the public. Reveal from The Center for Investigative Reporting sought the government-mandated **EEO-1 reports** from 211 of the biggest San Francisco Bay Area-based tech companies as part of an ongoing project examining diversity data in Silicon Valley.

The requests included the **top 150 publicly traded tech companies,** as compiled by The Mercury News in San Jose, and dozens of Bay Area "unicorns," or private companies worth at least $1 billion, as estimated by research firms **Crunchbase** and **CB Insights**. Of the 211 companies surveyed by Reveal, only 23 released their most recent reports. One of those 23, Clover Health, now says its report might be inaccurate.

Still, the 23 reports represent the **largest public collection** of EEO-1 figures that name Silicon Valley tech companies. A few private companies – **Pinterest**, **23andMe**, **View** and **Clover Health** – released their raw numbers for the first time. So did public companies **Square**, a payment processing platform, and **MobileIron**, which specializes in mobile security. Chipmaker **Nvidia** also released its latest report exclusively to Reveal.

Companies are under no legal obligation to release the reports, and the government keeps them confidential. But a recent push for transparency led some tech giants, including **Google** and **Facebook**, to share their raw numbers.

Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 769 of 1025

# Silicon Valley employees by race

**Professionals** | Managers/executives | All employees

Reveal from The Center for Investigative Reporting compiled data from 22* Silicon Valley tech companies that publicly released their government-mandated EEO-1 reports for 2016. "Underrepresented minorities" includes all employees, excluding those who are white or Asian. Reveal counted Asian employees separately because they tend to be more represented than other minority groups in Silicon Valley. Read more on Reveal's methodology.

Sort by:

| Underrepresented minorities | Asian | White |



Credit: Scott Pham, Sinduja Rangarajan, Bethney Bonilla and Will Evans/Reveal

Source: Reveal research

Note: Clover Health released its EEO-1 form, but a company spokeswoman said she thinks the company's data may be incorrect. We have excluded it from our charts.

Most others – including name brands such as Dropbox, Instacart, Netflix, PayPal, Pandora Media, Reddit and Tesla – still resist or put out basic pie charts that can be misleading, difficult to verify and impossible to compare. Three companies the federal government has accused of discriminatory hiring – **<span style="color:red">Oracle</span>**, **<span style="color:red">Palantir Technologies</span>** and **<span style="color:red">Splunk</span>** – also failed to disclose their demographics.



Since 2004, Alex Karp has led Palantir Technologies, a data analysis company that paid nearly $1.7 million earlier this year to settle government claims that it discriminated against Asian applicants. Palantir is one of many tech companies that have not made their EEO-1 forms public. Credit: Alex Brandon/Associated Press Credit: Alex Brandon/Associated Press

For tech firms that did disclose, the numbers were particularly stark for executives. **<span style="color:red">Twitter</span>**, **<span style="color:red">Square</span>** and **<span style="color:red">23andMe</span>** did not report a single black, Latino or multiracial executive in 2016. Female executives who were black, Latina or multiracial were nonexistent at eight of the 23 companies, including Adobe Systems, Google and Lyft.

The EEO-1 reports often are criticized for using clunky, outmoded categories. The multiracial option, for example, doesn't specify races. And the "professional" job category **<span style="color:red">includes</span>** both tech workers such as software engineers and non-tech employees such as lawyers, accountants and human resources specialists. Still, the raw numbers are the only standardized way to compare companies.

Among professionals, Google and Apple had some of the lowest proportions of women, with 25 percent or less. Nvidia sat at the bottom, with 16 percent. Google **<span style="color:red">fired</span>** an engineer in August over a memo arguing that biological differences make women less suited to tech or management. For all of the firms, the vast majority of female professionals – 80 percent or more – were white and Asian.

For black professionals, Hewlett Packard Enterprise had the highest proportion at 6.4 percent, compared with 1.7 percent at Apple and less than 1 percent at eBay. The online auction company also had the lowest proportion of Latino professionals. Underrepresented minorities — including black, Latino, Native American, Pacific Islander and multiracial employees — made up 8.7 percent of Uber's professional workforce, compared to 14.2 percent for Lyft.

Asian employees generally were much better represented among professionals than managers or executives, where the ranks were usually whiter.

**A tight hold on data**

**Read**

**Silicon Valley diversity data: Who released theirs, who didn't**

The battle over disclosing demographics is old news to veteran diversity advocates such as Erica Joy Baker. She argues that tech firms should share much more: promotions, departures, salaries and company ownership – all broken down by race and gender.

"We're still having a fight about step one, we're still having a fight about the bare minimum," she said.

Baker was onstage as a senior engineer at Slack when the company won the startup award last year. But she couldn't move up the ladder, she said.

"I started getting really demoralized and thinking maybe I shouldn't be a manager," she said.

Baker got several outside offers and ended up as a senior engineering manager at the startup Patreon.

"So, OK, it wasn't me," Baker said of hitting a ceiling at Slack. "Who else is involved in that equation?"

Slack declined to say how many of its employees or managers are women of color. Its EEO-1 report would answer that question.

"As we continue to understand and pursue best practices for advancing inclusive environments and reporting diversity data, we may consider publishing our EEO-1 reports in the future, but we are not planning to do so at this point," a Slack spokeswoman wrote in an email to Reveal.

Fast-growing startups rarely have good processes for fairly evaluating and promoting engineers, which can hit people of color hardest, said Leslie Miley, a former engineering director at Slack and former engineering manager at Twitter. It's important, though, for companies to share their raw numbers, he said.

"How can you get better unless you are truthful about what the situation is?" he said. "I don't understand why companies don't share those publicly."

Diversity numbers rarely generate positive headlines, but they can make companies confront reality.

"Internally, it's that, 'Oh man, our numbers are coming out again, how do we look?' " said Judith Williams, who was head of diversity at Dropbox and a diversity manager at Google. "It forces a conversation both externally and internally."

## Relying on percentages

If they disclose any numbers at all, most companies offer limited pie charts on diversity webpages or in corporate diversity reports. They say the government reports don't reflect how they view their own workforce. The firms invariably use percentages instead of raw numbers.

"I think they don't want people checking their math," Williams said.

Some companies won't disclose numbers because they're afraid they'll get sued, said Pat Gillette, who was a defense lawyer for decades and is now a San Francisco-based mediator and speaker on gender diversity.

"They feel like if they put it out there, they open themselves up to potential class actions based on the numbers," she said, "which probably means they have a problem."

Corporate diversity reports, she said, are easier to control than the EEO-1 form.

"They can massage their numbers by how they define things. Because that's our job, that's what we do," Gillette said. "A lawyer can make pretty much anything look pretty good."

The CEO of cybersecurity company Lookout said on the company's diversity webpage that its numbers were "**on par with our peers in the tech industry**." But its stated percentage of black employees, 0.4 percent, is lower than all 23 companies that disclosed their raw numbers to Reveal. Lookout removed the "on par with our peers" language after questions from Reveal.

Lookout's diversity page said the company was "making our diversity metrics public to keep ourselves accountable for change." But Lookout wouldn't provide the numbers it reports to the government, calling it sensitive information.

San Jose-based Synaptics called the aggregated, nameless statistics "personal and confidential information." The subject is so sensitive that one prominent startup wrote in an email: "Off the record, I can tell you (the company) is proud of it's (sic) inclusivity."

Oracle – which is facing **government allegations** that it favored Asian job candidates and paid white male employees more than others with the same job title – provides a **basic gender breakdown** of its workforce but ignores race. Palantir Technologies, which **paid nearly $1.7 million** earlier this year to settle charges that it discriminated against Asian applicants, has a **diversity webpage** without any numbers. Tesla, fighting suits over **sexual** and **racial** harassment, doesn't share basic demographics either.

Instead of releasing raw numbers, Varian Medical Systems pointed to a **company report** that included percentages for only its 2016 summer intern program, which it said was 42 percent female and "54% ethnically diverse."

San Francisco-based Sunrun referred to a solar industry **diversity report** – paid for in part by Sunrun – that said the company was building a "belonging culture" without any specific numbers.

Even companies that pat themselves on the back for diversity didn't want to talk about numbers. Workday, an HR software company, stated that it "views diversity as a business imperative" in **announcing** a new director of belonging and diversity in 2016. But a spokeswoman declined to provide Workday's EEO-1 report.

When asked for an interview about the company's diversity efforts, spokeswoman Allison Kubota said in an email: "We don't have the resources."

Two years ago, Udacity, which provides online courses, **announced** that it had commissioned a study to "determine how we stack up when it comes to diversity matters."

A **company blog post** in December 2015 said, "In our next post in our diversity series, we'll share with you the results of this study." Then the company has been silent for nearly two years: no new diversity posts, no study results.

Udacity spokeswoman Amy Lester said the company has been too busy: "We've had a ton of growth and many product launches over the past few years and had planned to post something sooner." This month, Lester wrote by email that Udacity would publish an update "in the next month or so."

The company wouldn't release its demographic numbers. "We don't believe the past EEO reports reflect the current state of the company at this time," Lester wrote.

**A blind eye to women of color**

**Read**

**How we analyzed Silicon Valley tech companies' diversity data**

Even when companies put out diversity reports, they almost always have a big blind spot: **women of color**. There's usually a pie chart for race and another for gender, but rarely anything mentioning the representation of nonwhite women. (GitHub is a **rare exception**.)

"Women of color experience the most bias and most marginalization," said Erica Joy Baker, of Patreon. "That's a good metric for people to see and know, especially if you're using those data points to see where you're going to work."

Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 775 of 1025

# Female employees in Silicon Valley by race

**Professionals** | Managers/executives | All employees

Corporate diversity reports usually leave out any mention of female employees of color. Reveal used EEO-1 data released by 22* Silicon Valley tech companies to show how these companies compare in their representation of female employees. Read more on Reveal's methodology.

Sort by:

Underrepresented minorities | Asian | White



Credit: Scott Pham, Sinduja Rangarajan, Bethney Bonilla and Will Evans/Reveal

Source: Company websites, submissions to Reveal

Clover Health released its EEO-1 form, but a company spokeswoman said she thinks the company's data may be incorrect. We have excluded it from our charts.

It's part of a larger problem with diversity programs, said Y-Vonne Hutchinson, founder of ReadySet, a diversity solutions firm in Oakland.

"Because they are not thinking of women of color, they are not addressing the problems they face," she said. "Disproportionately, the beneficiaries of these initiatives tend to be white women."

The government-mandated reports do account for women of color. But the reports have their own pitfalls. The only gender options are male and female, excluding those with a nonbinary gender identity. There's no accounting for diversity of age, sexual orientation or disability. And social media companies employ different kinds of professionals from chipmakers, ride-hailing companies or health startups. Clover Health, for example, employs nurses and social workers in addition to software engineers.

There's another fundamental hitch: The numbers include guesswork. For all employees who decline to fill out forms identifying their race and gender, the company has to guess by looking at them. Judith Williams, the former Dropbox and Google diversity manager, said she's occasionally been called on for input when someone can't decide what race to label an employee.

"It can be, 'I have a thousand people I have to identify, I have to get it done by the end of this week, I am just going through as quickly as I can,' " Williams said. "They may have a when-in-doubt-just-click-this-box kind of thing. The problem is you just don't know."

Even people who self-identify might check the wrong box as a joke or protest, though that happens rarely, Williams said.

As with any data, there may be errors. Clover Health reported to the government that more than half of its executives were black women. It turns out that 31 black female administrative support workers were accidentally classified as executives, according to a spokeswoman. Also, 10 professional male employees classified as Pacific Islander should have been labeled Asian.

Yet the official government numbers are the only reliable way to compare demographics across companies and years. Journalists have been **asking tech companies** for their numbers for years, but were mostly **rebuffed**. (Newsrooms have their **own problems** with **diversity**.)

Then, in 2013, a Pinterest software engineer named Tracy Chou **called for hard numbers** on female engineers and started a spreadsheet to track it, causing some companies to open up. The next year, the Rev. Jesse Jackson Sr. started showing up at Silicon Valley **shareholder meetings** and **writing letters** to major tech companies, demanding that they release their EEO-1 reports.

"My leader saw that letter and got nervous, because we know what Jesse can do when he gets organizing," said Rachel Williams, Yelp's head of diversity and inclusion. "He can embarrass an organization."

Yelp released its **EEO-1 report** in 2014, but hasn't done it since then. In a phone interview, Williams indicated that she would provide a more recent report, then failed to do so despite repeated follow-up requests.



She criticized the government-mandated numbers as out of date and "probably not very interesting." She said the government forms were invented by "mostly white men" and can "perpetuate a system." More important, she said, is whether people of color are "feeling as though they're included, that they belong."

Under the leadership of Jeremy Stoppelman, Yelp in 2014 made public its EEO-1 survey – an annual report to the federal government that shows hard numbers of employees broken down by race, gender and job categories. It hasn't released the report since. Credit: Eric Risberg/ Associated Press
Credit: Eric Risberg/ Associated Press, File

"We're missing a lot when we make people choose a particular box that's designated by the government," she said. "If you talk to real people who are part black, part Hispanic – whatever 'Hispanic' actually means – part Irish, what box do you think you're supposed to choose?"

Yet when Yelp put out a **diversity report** this month, the company used the same government categories – with a lot less detail. Like so many other Silicon Valley firms, Yelp didn't account for women of color at all.

Jackson, in an interview with Reveal, called Rachel Williams' criticisms of the EEO-1 report "nonsense." "That's a diversion," he said.

Some companies, Jackson said, have slipped backward instead of making progress since his initial campaign. "We'll have to intensify our actions," he said. "TBD."

***Editor's note:*** *The Center for Investigative Reporting receives funding from Google News Lab. All editorial decisions* ***are made independently****; donors receive no preferential coverage and do not influence the direction or findings of our reporting.*

*Journalism organizations have their own problems with diversity. CIR doesn't file an EEO-1 report because we have fewer than 100 employees, but you can find our demographics **here**. They were compiled as part of **a survey** by the American Society of News Editors on race and gender in the newsroom. We're also working to increase the ranks of investigative journalists of color through the **Reveal Investigative Fellows** program.*

*Data fellow Bethney Bonilla contributed to this story. It was edited by Ziva Branstetter and copy edited by Nadia Wynter and Nikki Frick.*

*Will Evans can be reached at **wevans**@**revealnews.org**, and Sinduja Rangarajan can be reached at **srangarajan**@**revealnews.org**. Follow them on Twitter: **@willCIR** and **@cynduja**.*

---

### Related



**How we analyzed Silicon Valley tech companies' diversity data**



**Tesla and beyond: Hidden problems of Silicon Valley**



**We sued the government for Silicon Valley diversity data**



**How we analyzed Silicon Valley tech companies' diversity data**

---

© 2023 The Center for Investigative Reporting.

Proudly powered by Newspack by Automattic

# EXHIBIT Z

# Apple leadership is more than 80% white and male



SAN FRANCISCO — Apple's leadership remains mostly white and male despite growing pressure on technology companies to diversify their workforces from the board room to the rank-and-file.

Some 81% of the company's senior officials are men and 82% of them are white, according to a 2016 government filing Apple released Thursday.

Of 107 leaders in the Silicon Valley company, 10 are Asian men, four are Asian women, two are black men, one is a black woman and two are Hispanic men. There are no Hispanic women in the Apple leadership, according to the EEO-1, an annual report that Apple makes to the federal government.

Apple has faced and rejected shareholder proposals to increase the diversity of its executives and board.

**More:**Congressional Hispanic Caucus calls out Apple, Google, Facebook for hiring practices

**More:**Silicon Valley's race gap is getting worse, not better, new research shows

**More:**It's called the 'Pao effect' — Asian women in tech are fighting deep-rooted discrimination

Less than a third — 33% — of its global workforce and 23% of its technical staffers are women, according to Apple's estimates. It says 9% of its technical staffers are African American and 13% of them are Hispanic.

Apple says it's making progress. Some 29% percent of its leaders are women, up one percentage point from July 2016 to July 2017, the company said.

And, Apple says half of all new hires are from historically underrepresented groups in tech: women, African Americans, Hispanics, Native Americans, and Native Hawaiian and Pacific Islanders.

These efforts aside, white and Asian men still make up the majority of Apple's workforce.

Major technology companies such as Apple, Facebook and Google release pie charts to illustrate the demographics of their workforces. They also release a form they file with the federal government called the EEO-1.

In a statement, Apple said "The EEO-1 has not kept pace with changes in industry or the American workforce over the past half century. We believe the information we report elsewhere on this site is a far more accurate reflection of our progress toward diversity."

Since 2014 when Google released its demographics for the first time, technology companies have pledged to close the gender and racial gaps in Silicon Valley yet the gaps have been stubborn.

In fact, black and Hispanic representation is declining in San Francisco Bay Area technology companies, according to research published last month by the non-profit Ascend Foundation, which advocates for Asians in business.

The employment data from 2007 to 2015 examined by the Ascend Foundation showed that people of color are being denied opportunities from the entry level to the executive suite and are losing ground in the tech industry.

Thursday's diversity report was the first released by Apple since Denise Young Smith was named vice president of diversity and inclusion in May. Previously she served as head of human resources.

Last month, Smith apologized for controversial remarks she made during a panel discussion in Colombia.

"I focus on everyone," Smith said at a summit in Bogota when asked about whether she would focus on black women at Apple.

"Diversity is the human experience," she continued. "I get a little bit frustrated when diversity or the term diversity is tagged to the people of color, or the women, or the LGBT."

"There can be 12 white, blue-eyed, blonde men in a room and they're going to be diverse too because they're going to bring a different life experience and life perspective to the conversation."

In an email to her team at Apple that was obtained by TechCrunch, Smith wrote: "I regret the choice of words I used to make this point. I understand why some people took offense. My comments were not representative of how I think about diversity or how Apple sees it."

# EXHIBIT AA

# Barbara Lee calls on Apple, tech holdouts to release diversity data



SAN FRANCISCO — Rep. Barbara Lee, D-Calif., called on holdouts among the nation's technology companies to release federal data on the diversity of their work forces.

Lee was in Silicon Valley this week with two other members of the Congressional Black Caucus to turn up the heat on the tech industry to hire more African Americans.

"We have asked them all to release the data," Lee said in an interview on Tuesday.

Asked about major tech companies that have not yet released the information such as Apple, Lee said: "If they believe in inclusion, they have to release the data so the public knows that they are being transparent and that they are committed to doing the right thing."

Major technology companies such as Facebook and Google release their federal diversity data along with pie charts that illustrate the demographics of their workforces and recently did so for the second straight year. Intel has been releasing its federal diversity data to the public for years.

Amazon.com, which did not respond to requests from USA TODAY to release its diversity data in December, has now released the data, said company spokesman Ty Rogers.

Apple, one of technology's most powerful companies, has refused to make public that data that it routinely supplies to the U.S. Department of Labor on the demographics of their workers.

In December Apple spokeswoman Kristin Huguet declined to comment on why Apple would not release the data.

Huguet did not respond to requests for comment on Apple's federal diversity data.

Apple's global human resources chief Denise Young Smith pledged last month that Apple's upcoming diversity report would have "more transparency" than last year and would show an increase in hiring of women, African-Americans and Latinos.

"We did have some movement in our hiring or women and hiring of minorities," Young Smith said during the Fortune Brainstorm Tech conference in July.

Black lawmakers met on Monday with Apple CEO Tim Cook. Joining Lee was the caucus' chairman G.K. Butterfield, D-N.C., and Rep. Hakeem Jeffries, D-N.Y. The three also met with executives from Intel, Google, Pandora and SAP to discuss how to improve the troubling hiring record of tech companies.

"Apple seems to be moving in the right direction. Tim Cook wants his company to look like the country and I think they are very committed to doing everything they can do," Lee said.

For years, technology companies fought sharing any demographic information about their employees, claiming the information was a trade secret. Only in the past year or so have the industry's top companies opened up about the lack of diversity in their ranks.

Civil rights leader Jesse Jackson is urging all companies including high-profile start-ups such as Uber, Square, Dropbox, Airbnb and Spotify to release the federal diversity data, saying the tech industry must usher in a new era of transparency.

"Last year, Rainbow PUSH challenged over 25 tech companies to release their workforce diversity data. The data showed an abysmal record where Blacks and Latinos typically comprised just 2% of the overall workforce," Jackson said.

American companies collect and report information about their work forces to the federal government each year in a form called the EEO-1.

The EEO-1 is a standard form that breaks down race, ethnicity and gender of work forces by job classification.

EBay, Yahoo, LinkedIn, Microsoft and Twitter are among the major technology companies that have made public their EEO-1s.

But other companies chose instead to provide less detailed broad strokes information such as the percentage of tech workers or company managers who are women or minorities. Chief among those companies is Apple.

*Follow USA TODAY senior technology writer Jessica Guynn on Twitter: @jguynn*

# EXHIBIT AB

**EMANUEL CLEAVER, II**
FIFTH DISTRICT, MISSOURI

FINANCIAL SERVICES COMMITTEE
HOUSING AND INSURANCE SUBCOMMITTEE
RANKING MEMBER

OVERSIGHT AND INVESTIGATIONS SUBCOMMITTEE



http://WWW.HOUSE.GOV/CLEAVER

TWITTER.COM/REPCLEAVER

FACEBOOK.COM/EMANUELCLEAVER II

## Congress of the United States
## House of Representatives

March 6, 2019

The Honorable Alexander Acosta
Secretary
United States Department of Labor
200 Constitution Avenue, NW
Washington, DC 20210

Dear Secretary Acosta:

The Freedom of Information Act (FOIA) provides that any person has a right, enforceable in court, to obtain access to federal agency records, except to the extent that such records are protected from public disclosure by exemption or by special law enforcement record exclusion.[1] The United States Supreme Court has affirmed that the purpose of the FOIA is to ensure an informed citizenry which is both vital to democracy and a necessary tool for those who wish to hold their government accountable.[2] As much of the government's work continues to be delegated to private contractors, it is important that the spirit of accountability through transparency prevails, and that citizens retain the right to access information related to the oversight and compliance of private contractors in whom the United States has bestowed the public's trust.

It has come to my attention that several government contractors have asserted that data regarding the racial and gender makeup of their workforces, information critical to contract oversight, qualifies as a trade secret and/or privileged commercial information under exemption 4 of the FOIA.[3] These reports tread on the heels of a long history of firms seeking to enshroud information of public concern into well-guarded vaults of secrecy. Often seeking to avoid public scrutiny, it is my concern that the government could fortify the efforts of relevant contractors through interpretations of the FOIA that favor the presumption of non-disclosure. Specifically, I write out of concern that required EEO-1 forms, which enumerate the diversity of firms accepting the taxpayer money, may potentially be denied disclosure under Department of Labor Office of Contract Compliance Programs interpretation of the FOIA.[4,5]

I am respectfully requesting the following information before April 1, 2019:

- The number of and precise instances where the Department of Labor has released an EEO-1 report following the objection of a federal contractor pursuant to 29 CFR § 70.26 since January 1, 2017.

---

[1] Department of Justice. "The Department of Justice & The Freedom of Information Act," Updated October 30, 2018.
https://www.justice.gov/archives/open/foia
[2] *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)
[3] Williams, Jamillah Bowman. "Why Companies Shouldn't Be Allowed to Treat Their Diversity Numbers as Trade Secrets," February 15, 2019.
https://hbr.org/2019/02/why-companies-shouldnt-be-allowed-to-treat-their-diversity-numbers-as-trade-secrets
[4] Evans, Will. "We Sued the Government for Silicon Valley Diversity Data," April 26, 2018. https://www.revealnews.org/blog/we-sued-the-government-for-silicon-valley-diversity-data/
[5] Rangarajan, Sinduja and Will Evans. "We Got the Government to Reverse its Longtime Policy to Get Silicon Valley Diversity Data," November 15, 2018. https://www.revealnews.org/blog/we-got-the-government-to-reverse-its-longtime-policy-to-get-silicon-valley-diversity-data/

PLEASE REPLY TO:

| | | | |
|---|---|---|---|
| ☐ **2335 RAYBURN HOB** WASHINGTON, DC 20515 (202) 225-4535 (PHONE) (202) 225-4403 (FAX) | ☐ **101 WEST 31ST STREET** KANSAS CITY, MO 64108 (816) 842-4545 (PHONE) (816) 471-5215 (FAX) | ☐ **211 WEST MAPLE AVENUE** INDEPENDENCE, MO 64050 (816) 833-4545 (PHONE) (816) 833-2991 (FAX) | ☐ **1923 MAIN STREET** HIGGINSVILLE, MO 64037 (660) 584-7373 (PHONE) (660) 584-7227 (FAX) |

PRINTED ON RECYCLED PAPER

- Copies of letters of objection submitted by relevant technology companies relating to The Center of Investigative Reporting's 2017 Freedom of Information Act requests to the Department of Labor's Office of Federal Contract Compliance Programs.
- Whether or not the Department of Labor has decisively determined that consolidated EEO-1 reports for multi-establishment employers demands the same protections under exemption 4 of 5 U.S. Code § 552 as do other required EEO-1 submissions.
- Any established case law, rules, or regulations the Department of Labor believes would exempt consolidated EEO-1 reports from public disclosure.

While the disclosure of specific information about internal business strategies and initiatives may be determined to be privileged, it is my strong conviction that neither the spirit or letter of commercial information protections, or regulation of trade secrets as defined in 18 U.S. Code § 1839, would prevent the Department of Labor from disclosing consolidated government contractor demographic data under the FOIA. Several companies in competitive industries have voluntarily released consolidated EEO-1 forms, or diversity reports, lending scrutiny to the oppositional idea that disclosure of such information would create a significant competitive disadvantage in the hands of competitors. Further, the idea that non-consolidated forms provide competitors with insight of value into other protectable information begs evidentiary demonstration of the actual possibility and likelihood of significant harm. Also demanding further evaluation are private-sector claims that the disclosure of diversity information on required EEO-1 forms would deter employees from voluntarily reporting such information, thereby inhibiting the governments ability to collect reliable information, which pivot on arguments of derisory impact and dubious assumptions.[6]

It is my hope that the public and private interests entitled by the FOIA are receiving the appropriate balance, and I look forward to continued dialogue on this important issue.

Sincerely,

Emanuel Cleaver, II
Member of Congress

---

[6] https://www.documentcloud.org/documents/5448961-Palantir-Objection-to-FOIA-838133.html

# EXHIBIT AC

# After history of discrimination, these federal contractors fought to hide diversity data

As the only woman on a 10-person sales team at Dell Inc., Marsha Cipollone said she was pushed down and pushed out while less-experienced men were handed the plum accounts.

Cipollone said she was denied the training and support her male colleagues received and was set up to fail. She was fired in 2017 and sued, alleging discrimination, according to court records. She said she settled with the company in 2018.

That same year, the U.S. Labor Department's anti-discrimination office also documented systemic inequality at the company, finding that women and Black employees earned less than men and white workers in similar positions.

"Dell has very much typically been a white guy company," Cipollone said.

**More:** Broken promises: Federal contractors made diversity pledges. They didn't keep them.

But exactly how diverse Dell is – how many women and people of color it employs at all levels of the organization and how that stacks up against other companies – remains obscured.

When the federal government released a historic data set last month detailing employee diversity at more than 19,000 of its contractors, Dell was one of more than 4,000 companies missing because they objected to the release. And the Labor Department's anti-discrimination office – the same one that found inequality at Dell – has so far allowed the objectors to keep their diversity data secret.

USA TODAY and Reveal from The Center for Investigative Reporting compared the new diversity data with federal contractors receiving at least a billion dollars in contracts in 2020, according to federal spending records. A majority of those companies were left out of the data release, indicating they objected, despite accounting for more than $180 billion in federal spending in 2020. That includes at least a dozen companies – collectively reaping more than $100 billion – that paid to settle Labor Department findings of job discrimination over the last decade.

Companies that receive taxpayer-funded contracts are supposed to be held to a higher standard, and they're subject to audits by the Labor Department office charged with making sure contractors provide equal employment opportunities.

Dell agreed to pay nearly $10 million in back wages after repeated government findings of discrimination. The company called itself a "leader in pay equity and inclusion" and retained its status as a major federal contractor, with at least $2 billion in federal contracts to Dell or its subsidiaries in 2020 alone.

Dell didn't respond directly to questions about why it objected to releasing its diversity numbers. The company pointed instead to its own curated diversity report, which says its "people leaders" are 72% male and 71% white and doesn't include the standardized data that would allow it to be compared to similar companies, such as Apple, HP, IBM or Intel, which didn't object. "We believe in fair treatment in the workplace, regardless of race, gender identity, sexual orientation or religion," the company said in an emailed statement.

# Secret Reports Stymie Comparison Across Industries

Unlike subjective reports that can be manipulated to present a rosier picture of diversity, the data that federal contractors are required to submit to the Equal Employment Opportunity Commission shows the actual numbers of employees broken down by race and gender, for broad job categories like executives, professionals and service workers. The numbers allow for standardized comparison. They also show, for example, how many women of color are employed at different levels of a company, which many companies leave out of their customized reports.

Until recently, most companies didn't share standardized numbers with the public. Some companies say the job categories on the reports are too broad or misleading, and their annual diversity reports better reflect their workforce. Others are reluctant to be cast in a negative light or invite litigation.

In 2019, when Reveal sued the government for diversity data submitted by a group of tech companies, some argued they'd be vulnerable to rivals learning sensitive information or luring away their diverse talent. A federal judge disagreed, ruling that the diversity reports known as EEO-1s are not confidential business information. The Labor Department released those tech company records but has chosen not to apply that ruling to requests for more data. Several of those companies, including fitness company Fitbit and software company DocuSign, no longer object to the data's release. Others, such as PayPal, initially fought the data release but now share the annual reports publicly.

**Corporate diversity database:** A USA TODAY investigative series inside the nation's most powerful companies

Last month, in response to more requests and a lawsuit from Reveal, the department released five years of diversity data from companies that didn't object. An analysis of the data by USA TODAY found that federal contractors are failing to live up to the promise of equal opportunity, with white men dominating their executive ranks. Companies that did not fight public disclosure include defense contractors Raytheon and Boeing, which ranked among the highest recipients of federal contract dollars in 2020, as well as familiar names like Moderna, Pfizer, A&E Television Network and Sherwin-Williams.

Labor Department spokesperson Edwin Nieves said the agency hasn't allowed any companies to opt out of providing their EEO-1 numbers. Instead, Nieves said the department is required to give all contractors a chance to object and is withholding their data while evaluating those objections. Reveal is still pushing in court for the release of all contractors' data.

While the government gave contractors repeated opportunities to object over several months, lawyers warned companies to object or face the potentially brand-damaging consequences of transparency.

Lawyers advising contractors on meeting government anti-discrimination requirements are often focused on minimum compliance, not transforming company culture, said Mary-Frances Winters, CEO of The Winters Group, which provides diversity consulting to companies.

And company lawyers often don't want to reveal anything that could put the company at risk. That can pit the diversity team against the legal team, Winters said.

"We fight with lawyers all the time," Winters said. "The DEI office is saying, 'Let's be transparent,' because for them, it's about, where are the opportunities to be better? The legal people, while they're not necessarily against that, they're saying, 'Let's not share our weaknesses.' "

# After Discrimination, Promises About Equity and Inclusion, But No Data

As they gobble government money, big federal contractors are at different points on their diversity and transparency journey. Some, such as engineering and construction company Bechtel and health care company McKesson, didn't respond to any questions. Government services contractor Amentum said it would disclose EEO-1 data at some point: "Target date is unknown," a spokesperson said. And the pharmaceutical company Merck objected because the company considers those numbers confidential and not representative of the firm's diversity efforts, said spokesperson Bob Josephson. But when asked about its objection, the company provided Reveal all five years of data anyway.

Lockheed Martin's data would have shown how many people of color the company employed at different levels back in 2017 and 2018, when the Labor Department's anti-discrimination office found the defense contractor had discriminated against Asian, Black and Latino or Hispanic job seekers. But Lockheed objected to the Labor Department's release.

In 2020, Lockheed denied wrongdoing and expressed its commitment to diversity, but agreed to pay $700,000 and hire 34 of the rejected applicants.

In an emailed statement, the company noted that it posted its 2021 EEO-1 report online and that "our commitment to diversity and inclusion is a business imperative, helping to drive our innovation and global leadership." Lockheed was awarded more than $51 billion in federal contracts in 2020, the biggest dollar figure to any single company.

A a Lockheed spokesperson didn't explain why the company objected.

Washington D.C.- based consulting firm Chemonics International did. Chemonics spokesperson Martha James said the company blocked releasing its own diversity data because it considers that confidential commercial information, said Chemonics spokesperson Martha James.

"Furthermore, we don't frame our diversity, equity and inclusion strategy or measure our progress through the lens of EEO-1 data, which lacks the additional variables and context that allow us to fully analyze our workforce data," James said in an email.

The company launched a diversity effort in 2017 after a Labor Department audit flagged a time when the firm rejected every single one of 124 Black applicants for entry-level professional jobs. Chemonics agreed to pay $482,000 to the rejected job seekers and to hire eight of them. James said the company has been in compliance with anti-discrimination regulations ever since.

Chemonics claims some progress: Its first diversity report says its ranks of people of color increased from 36% in 2017 to 40% in 2021, without a detailed breakdown. How many Black people does Chemonics employ and at what level in the company? The proof would be in EEO-1 numbers Chemonics wouldn't disclose.

Cipollone, the former Dell employee who sued for discrimination, said she didn't see a lot of diversity there, so she's not surprised Dell objected to releasing its numbers. But she thinks all companies should come clean and face the consequences.

"It's not 2000 anymore. It's 2023," she said. "You're just going to have to take the hit for it and you're going to have to get on board with everybody else."

*This article was produced in collaboration with Reveal from The Center for Investigative Reporting, a nonprofit investigative newsroom.*

*Contributing: Jessica Guynn, USA TODAY*

*Will Evans can be reached at wevans@revealnews.org. Follow him on Twitter: @WillCIR. Reach Jayme Fraser at jfraser@gannett.com or on Twitter @jaymekfraser. Reach Jessica Guynn at jguynn@usatoday.com.*

# EXHIBIT AD



# WE KEEP DELIVERING

2022 ANNUAL REPORT

**Deutsche Post DHL Group**

## Key figures

| | | 2018 | 2019 | 2020 adjusted |
|---|---|---|---|---|
| **Financial figures** | | | | |
| Revenue | €m | 61,550 | 63,341 | 66,716 |
| Profit from operating activities (EBIT) | €m | 3,162 | 4,128 | 4,847 |
| Return on sales[1] | % | 5.1 | 6.5 | 7.3 |
| EBIT after asset charge (EAC) | €m | 716 | 1,509 | 2,199 |
| Consolidated net profit for the period[2] | €m | 2,075 | 2,623 | 2,979 |
| Net cash from operating activities | €m | 5,796 | 6,049 | 7,699 |
| Free cash flow | €m | 1,059 | 867 | 2,535 |
| Capex[3] | €m | 2,648 | 3,617 | 2,999 |
| Equity ratio[4] | % | 27.5 | 27.6 | 25.5 |
| Net debt[5] | €m | 12,303 | 13,567 | 12,928 |
| Net gearing[6] | % | 47.0 | 48.2 | 47.9 |
| **Stock data** | | | | |
| Basic earnings per share[7] | € | 1.69 | 2.13 | 2.41 |
| Diluted earnings per share[8] | € | 1.66 | 2.09 | 2.36 |
| Cash flow per share[7,9] | € | 4.71 | 4.90 | 6.22 |
| Dividend per share | € | 1.15 | 1.15 | 1.35 |
| Dividend distribution | €m | 1,419 | 1,422 | 1,673 |
| Number of shares as at 31 December | millions | 1,236.5 | 1,236.5 | 1,239.1 |
| Year-end closing price | € | 23.91 | 34.01 | 40.50 |
| **ESG figures** | | | | |
| GHG emissions[12] | million tonnes of $CO_2$e | 35.63 | 33.20 | 33.64 |
| Realised Decarbonisation Effects | kilotonnes of $CO_2$e | – | – | – |
| Energy consumption (Scopes 1 and 2) | million kWh | 26,437 | 26,199 | 27,427 |
| of which from renewable sources[13] | million kWh | – | – | – |
| Number of employees[14] | headcount | 547,459 | 546,924 | 571,974 |
| Staff costs | €m | 20,825 | 21,610 | 22,234 |
| Employee Engagement: Approval rate in the annual survey | % | 76 | 77 | 83 |
| Share of women in middle and upper management | % | 22.1 | 22.2 | 23.2 |
| Lost time injury frequency rate (LTIFR)[15] | | 4.3 | 4.2 | 3.9 |
| Share of valid compliance-relevant training certificates[16] | % | – | – | – |
| Cybersecurity rating | points | – | – | – |

[1] EBIT/revenue.  [2] After deduction of non-controlling interests.  [3] Capex relating to assets acquired.  [4] Equity (including non-controlling interests)/total equity and liabilities.  [5] Calculation, ⟩ Comb and equity (including non-controlling interests).  [7] The average weighted number of shares outstanding is used for the calculation.  [8] The average weighted number of shares outstanding is adjusted f [9] Cash flow from operating activities.  [10] Proposal.  [11] Estimate.  [12] Well-to-wheel.  [13] Including consumption by electric vehicles.  [14] At year-end, including trainees.  [15] Work-related accidents pe working day of lost time for the affected person following the accident.  [16] Middle and upper management.

# CONTENTS

| | |
|---|---|
| 4 | **EDITORIAL** |
| | |
| 6 | **BOARDS AND COMMITTEES** |
| 6 | Members of and mandates held by the Board of Management |
| 7 | Members of and mandates held by the Supervisory Board |
| | |
| 9 | **REPORT OF THE SUPERVISORY BOARD** |
| | |
| 13 | **REPORTING PRACTICE** |
| | |
| 14 | **COMBINED MANAGEMENT REPORT** |
| | |
| 14 | **GENERAL INFORMATION** |
| 14 | Business model |
| 24 | Strategy |
| 25 | Research and development |
| 26 | Steering metrics |
| | |
| 29 | **REPORT ON ECONOMIC POSITION** |
| 29 | Forecast/actual comparison |
| 29 | Overall assessment |
| 29 | Economic parameters |
| 30 | Significant events |
| 30 | Results of operations |
| 33 | Divisions |
| 40 | Financial position |
| 45 | Net assets |

| | |
|---|---|
| 46 | **DEUTSCHE POST AG (HGB)** |
| 46 | Deutsche Post AG as parent company |
| 46 | Employees |
| 46 | Results of operations |
| 47 | Net assets and financial position |
| 48 | Expected developments, opportunities and risks |
| | |
| 49 | **NON-FINANCIAL STATEMENT** |
| 49 | Strategic orientation |
| 53 | Environment |
| 56 | Workforce |
| 60 | Corporate citizenship |
| 61 | Corporate governance |
| 65 | EU Taxonomy |
| | |
| 70 | **EXPECTED DEVELOPMENTS, OPPORTUNITIES AND RISKS** |
| 70 | Forecast period |
| 70 | Future economic prospects |
| 71 | Expected developments |
| 72 | Opportunity and risk management |
| 75 | Opportunity and risk categories |
| 81 | Internal control system |
| 83 | Overall assessment |
| | |
| 84 | **GOVERNANCE** |
| 84 | Annual Corporate Governance Statement |
| 92 | Disclosures required by takeover law |

| | |
|---|---|
| 94 | **CONSOLID... STATEMEN...** |
| | |
| 94 | **INCOME STAT...** |
| | |
| 94 | **STATEMENT O...** |
| | |
| 95 | **BALANCE SHE...** |
| | |
| 96 | **CASH FLOW S...** |
| | |
| 98 | **STATEMENT O...** |
| | |
| 99 | **NOTES TO THE... STATEMENTS** |
| 99 | Company inform... |
| 99 | Basis of prepara... |
| 115 | Segment reporti... |
| 118 | Income stateme... |
| 124 | Balance sheet di... |
| 144 | Lease disclosure... |
| 145 | Cash flow disclo... |
| 146 | Other disclosure... |
| | |
| 165 | **RESPONSIBILI...** |
| | |
| 165 | **INDEPENDEN...** |
| | |
| 171 | **INDEPENDEN...** |
| | |
| 174 | **FINANCIAL CA...** |
| | |
| 174 | **CONTACTS** |

Deutsche Post DHL Group –

EDITORIAL

# We have demonstrated many times over that we can respond flexibly to challenges, and we see the **best conditions for further growth** in the coming years.

**Frank Appel**

**Dear Readers, our aspiration has always been to continue delivering reliably – even in volatile times. We managed this once again in 2022: in times of war, inflation and an energy crisis, Deutsche Post DHL Group stayed the course in remarkable fashion.**

This was made possible by our broad and well-balanced portfolio of international logistics services, which makes us resilient in the challenging environment. Our Strategy 2025 has bolstered us and equipped us for external crises: it safeguards our focus on the profitable core business as well as our status as an employer, provider and investment of choice.

We achieved outstanding results again in 2022: thanks to our strong international business, revenue improved to €94.4 billion, and Group EBIT reached a new record mark of €8.4 billion.

Accordingly, our finan[...] us, among other thing[...] gramme by up to €1 [...] been increased to up t[...]

**De[...]**
**in vo[...]**

Of course, even we a[...] developments: in the [...] impact of the slowing[...] continue to look ahea[...] jection of €6.0 billion [...] year makes it clear tha[...] earnings at a new leve[...]

Deutsche Post DHL Group –

growth. We have demonstrated many times over that we can respond flexibly to challenges, and we see the best conditions for further growth in the coming years.

Our around 600,000 employees around the world are the foundation of our success. I would like to express my thanks to them in particular. Especially in an operational business like ours, it is our people who make the difference, which is why we are dedicated to ensuring a motivating, safe and inclusive working environment. I am pleased that, in 2022, DHL Express was named the best workplace worldwide for the second consecutive year in the Great Place to Work® annual list. In addition, Deutsche Post DHL Group as a whole received the distinction as a Top Employer in Europe at the beginning of 2023 for the first time. This honour was bestowed due to, amongst other factors, the importance of ethics and integrity in all divisions.

For us, business success also means that we make a positive contribution to the world with sustainable actions and a dedication to society and the environment. With our ESG Roadmap, we pursue ambitious and measurable targets for climate-friendly logistics as well as for social responsibility

and corporate governance. These are also reflected in the remuneration of the Board of Management and executives. Amongst other measures, we will invest a total of up to €7 billion through 2030 to significantly reduce our greenhouse gas emissions and thereby actively contribute to limiting global warming to 1.5 degrees Celsius. We made further progress on this journey in the year under review. Here are a few examples:

- We nearly doubled additional expenditure for decarbonisation measures compared to the previous year, and in doing so avoided around one million tonnes of $CO_2$e.
- After thorough examination, the independent Science Based Targets Initiative (SBTi) officially confirmed that our targets to reduce greenhouse gas emissions are aligned with the most recent climate science findings.
- With GoGreen Plus, our customers can make a conscious decision for sustainable transport solutions or the use of sustainable fuels.

We are a pioneer in the industry with our dedication to the environment, and we take on this role with full conviction – because climate change remains one of the greatest threats facing humanity.

**Fo**
**also**
**p**
**the w**
**acti**
**societ**

Finally, after more th
take this opportunit
for your trust and su
I will pass on respons
hands of my successo
Deutsche Post DHL G
under his guidance.

Sincerely yours, Frank
Chief Executive Office

# BOARDS AND COMMITTEES

## Members of and mandates held by the Board of Management

### Members

**Dr Frank Appel**
Chief Executive Officer (until 4 May 2023)
Global Business Services (until 30 June 2022)
Born in 1961, nationality German
Board member since November 2002
CEO since February 2008
Appointed until May 2023

**Oscar de Bok**
Supply Chain
Born in 1967, nationality Dutch
Board member since October 2019
Appointed until September 2027

**Pablo Ciano**
eCommerce Solutions (since 1 August 2022)
Born in 1969, nationality Argentinian and US American
Board member since August 2022
Appointed until July 2025

**Nikola Hagleitner**
Post & Parcel Germany (since 1 July 2022)
Born in 1973, nationality Austrian
Board member since July 2022
Appointed until June 2025

**Melanie Kreis**
Finance
Born in 1971, nationality German
Board member since October 2014
Appointed until May 2027

**Dr Tobias Meyer**
Post & Parcel Germany (until 30 June 2022)
Global Business Services (since 1 July 2022)
Chief Executive Officer (from 4 May 2023)
Born in 1975, nationality German
Board member since April 2019
Appointed until March 2027

**Dr Thomas Ogilvie**
Human Resources
Born in 1976, nationality German
Board member since September 2017
Appointed until August 2025

**John Pearson**
Express
Born in 1963, nationality British
Board member since January 2019
Appointed until December 2026

**Tim Scharwath**
Global Forwarding, Freight
Born in 1965, nationality German
Board member since June 2017
Appointed until May 2025

### Left the company during the year under review

**Ken Allen**
eCommerce Solutions (until 31 July 2022)
Born in 1955, nationality British
Board member from February 2009 to July 2022

### Additional mandates

**Membership of statutory s**

**Dr Frank Appel**
Fresenius Management SE
Deutsche Telekom AG (Sup
(since 7 April 2022)

**Membership of comparabl**

**Pablo Ciano**
FarEye Technologies Privat

**Ken Allen**
Skysports Ltd., UK (Non-Ex
(since 8 March 2022)

You can find more information on our **⊙ Website.**

Deutsche Post DHL Group –

# Members of and mandates held by the Supervisory Board

## Members

### Shareholder representatives

**Dr Nikolaus von Bomhard** (Chair)
Chair of the Supervisory Board and former Chair of the Board of Management, Münchener Rückversicherungs-Gesellschaft AG (Munich Re)

**Dr Günther Bräunig**
(until 6 May 2022)
Former Chair of the Board of Management, KfW Bankengruppe

**Dr Mario Daberkow**
Member of the Managing Board of Volkswagen Financial Services AG (until 31 March 2023)
Head of Group Infrastructure, VW AG (from 1 April 2023)

**Ingrid Deltenre**
Member of various boards of directors, former Director General of the European Broadcasting Union

**Dr Heinrich Hiesinger**
Member of various supervisory boards, former Chair of the Board of Management, thyssenkrupp AG

**Prof. Dr Luise Hölscher**
(since 30 March 2022)
State Secretary, Federal Ministry of Finance

**Dr Jörg Kukies**
(until 9 March 2022)
State Secretary, Federal Chancellery

**Simone Menne**
Member of various supervisory boards, former member of the Board of Managing Directors of Boehringer Ingelheim GmbH

**Lawrence Rosen**
Member of various supervisory boards, former member of the Board of Management, Deutsche Post AG

**Dr Stefan Schulte**
Chair of the Executive Board of Fraport AG

**Prof. Dr-Ing. Katja Windt**
Member of the Managing Board of SMS group GmbH

**Stefan B. Wintels**
(since 6 May 2022)
Chair of the Board of Management, KfW Bankengruppe

### Employee representatives

**Andrea Kocsis** (Deputy Chair)
Deputy Chair of ver.di National Executive Board and Head of Postal Services, Forwarding Companies and Logistics Department on the ver.di National Executive Board

**Jörg von Dosky**
Chair of the Group and Company Executive Representation Committee, Deutsche Post AG

**Gabriele Gülzau**
Chair of the Works Council, Deutsche Post AG, Hamburg Operations Branch

**Thomas Held**
Chair of the Central Works C

**Mario Jacubasch**
Chair of the Group Works Co

**Thorsten Kühn**
Head of Postal Services, Co-
National Postal Services Gro

**Ulrike Lennartz-Pipenbache**
Deputy Chair of the Central

**Yusuf Özdemir**
Deputy Chair of the Group W
Central Works Council, Deut

**Stephan Teuscher**
Head of Wage, Civil Servant
Services, Forwarding Comp
National Administration

**Stefanie Weckesser**
Deputy Chair of the Works C
Operations Branch

BOARDS AND COMMITTEES

## Additional mandates

### Shareholder representatives

#### Membership of statutory supervisory boards

**Dr Nikolaus von Bomhard** (Chair)
Münchener Rückversicherungs-Gesellschaft AG (Munich Re) (Chair)

**Dr Günther Bräunig**
(until 6 May 2022)
Deutsche Pfandbriefbank AG (Chair)

Deutsche Telekom AG

**Dr Heinrich Hiesinger**
BMW AG

Fresenius Management SE

ZF Friedrichshafen AG (Chair)

**Prof. Dr Luise Hölscher**
(since 30 March 2022)
Deutsche Investitions- und Entwicklungsgesellschaft mbH

**Dr Jörg Kukies**
(until 9 March 2022)
KfW IPEX-Bank GmbH (until 14 February 2022)

**Simone Menne**
Henkel AG & Co. KGaA

**Lawrence Rosen**
Lanxess AG

Lanxess Deutschland GmbH[1]

**Prof. Dr-Ing. Katja Windt**
Fraport AG

**Stefan B. Wintels**
(since 6 May 2022)
Deutsche Telekom AG (since 7 April 2022)

### Membership of comparable bodies

**Dr Nikolaus von Bomhard** (Chair)
Athora Holding Ltd., Bermuda (Board of Directors, Chair)

**Dr Mario Daberkow**
Softbridge-Projectos Tecnológicos S.A., Portugal (Board of Directors)[2]
(until 16 March 2023)

Volkswagen Participações Ltda., Brazil (Supervisory Board)[2]
(until 1 July 2022)

Volkswagen Financial Service France S.A., France (Supervisory Board)[2]
(until 30 June 2022)

VW Credit, Inc., USA (Board of Directors)[2] (until 16 March 2023)

Volkswagen Payments S.A., Luxembourg – renamed J.P. Morgan Mobility Payments Solutions S.A. on 17 October 2022 (Supervisory Board, Chair until 8 April 2022) (until 16 March 2023)

**Ingrid Deltenre**
Givaudan SA, Switzerland (Board of Directors)

Banque Cantonale Vaudoise SA, Switzerland (Board of Directors)

Agence France Presse, France (Board of Directors) (until 20 April 2022)

Akara Funds AG, Switzerland (Board of Directors) (until 12 August 2022)

SPS Holding AG, Switzerland (Board of Directors) (since 13 April 2022)

**Simone Menne**
Johnson Controls International plc, Ireland (Board of Directors)

Russell Reynolds Associates Inc., USA (Board of Directors)

**Lawrence Rosen**
Qiagen N.V., Netherlands (Supervisory Board, Chair)

**Dr Stefan Schulte**
Fraport Ausbau Süd GmbH (Supervisory Board, Chair)[3]

Fraport Regional Airports of Greece A S.A., Greece (Board of Directors, Chair)[3]

Fraport Regional Airports of (Board of Directors, Chair)[3]

Fraport Regional Airports of Greece (Board of Directors,

Fraport Brasil S.A. Aeroporto (Supervisory Board, Chair)[3]

Fraport Brasil S.A. Aeroporto (Supervisory Board, Chair)[3]

**Prof. Dr-Ing. Katja Windt**
Ford Otomotiv Sanayi A.S., T (since 1 June 2022)

**Stefan B. Wintels**
(since 6 May 2022)
KfW Capital GmbH & Co. KG

### Employee representati

#### Membership of statutory su

**Jörg von Dosky**
PSD Bank München eG (Dep

**Stephan Teuscher**
DHL Hub Leipzig GmbH (De

#### Membership of comparabl

**Andrea Kocsis**
KfW Bankengruppe (Board o

---

[1] Group mandate, Lanxess.   [2] Group mandates, Volkswagen.   [3] Group mandates, Fraport.   [4] Group mandate, KfW Bankengruppe.

You can find more information on our ⊚ **Website.**

Deutsche Post DHL Group –

# REPORT OF THE SUPERVISORY BOARD

## Dear Shareholders,

In spite of numerous challenges, the strong growth continued also in the year under review, and important supply chains around the world were maintained. The foundation of the company's success was its strong focus on the core business and the extraordinary dedication of the Board of Management and the employees.

The Board of Management and the Supervisory Board worked together in a spirit of trust and held in-depth discussions on the situation of the company in light of current developments on a regular basis. Necessary measures were taken swiftly and the Supervisory Board was kept up to date regarding the implementation of these measures. The members of the Supervisory Board were involved early on in all decisions of material importance.

### Attendance at plenary and committee meetings as well as investor talks

Attendance of the members of the Supervisory Board at the meetings of the plenary and of the committee is shown individually in the following table. The meetings took place in person, with individual members joining virtually depending on the situation.

All members of the Board of Management participated in the four plenary meetings and reported on the business performance in the divisions for which they are responsible. Meetings of the Supervisory Board were held without the Board of Management members, for example on matters regarding the Board of Management and to review the efficiency of the Supervisory Board's work.

The CEO and the members of the Board of Management responsible for the respective committee attended the 22 committee meetings. Executives from the tier immediately below the Board of Management and the auditors were also invited to attend for individual agenda items. The members of the Financial and Audit Committee and the auditor also discussed individual matters without the Board of Management members.

In the autumn of […] eral investors and pro[…] included the require[…] bers of the Supervis[…] Audit Committee in pa[…] qualifications of the in[…] sented in a table in the[…] going forward. The ad[…]

### Attendance at plenary and committee meetings 2022

| Supervisory Board members | Supervisory Board meetings | | |
| --- | --- | --- | --- |
| | Attendance/meetings | Attendance % | Att[…] |
| Dr Nikolaus von Bomhard (Chair) | 4/4 | 100 | |
| Andrea Kocsis (Deputy Chair) | 4/4 | 100 | |
| Dr Günther Bräunig (until 6 May 2022) | 1/1 | 100 | |
| Dr Mario Daberkow | 4/4 | 100 | |
| Ingrid Deltenre | 4/4 | 100 | |
| Jörg von Dosky | 4/4 | 100 | |
| Gabriele Gülzau | 4/4 | 100 | |
| Thomas Held | 4/4 | 100 | |
| Dr Heinrich Hiesinger | 4/4 | 100 | |
| Prof. Dr Luise Hölscher (since 30 March 2022) | 3/3 | 100 | |
| Mario Jacubasch | 4/4 | 100 | |
| Thorsten Kühn | 4/4 | 100 | |
| Dr Jörg Kukies (until 9 March 2022) | 1/1 | 100 | |
| Ulrike Lennartz-Pipenbacher | 4/4 | 100 | |
| Simone Menne | 3/4 | 75 | |
| Yusuf Özdemir | 4/4 | 100 | |
| Lawrence Rosen | 4/4 | 100 | |
| Dr Stefan Schulte | 4/4 | 100 | |
| Stephan Teuscher | 3/4 | 75 | |
| Stefanie Weckesser | 4/4 | 100 | |
| Prof. Dr-Ing. Katja Windt | 4/4 | 100 | |
| Stefan B. Wintels (since 6 May 2022) | 3/3 | 100 | |

Financial and Audit Committee was a welcome development in the talks. The intention to convene the 2023 Annual General Meeting as an in-person meeting was also positively received by the investors.

**Key topics addressed in plenary meetings**
Discussions in all plenary meetings involved the company's financial position and business performance as well as reports on committee meetings.

The Supervisory Board discussed both the risks and opportunities for the company associated with environmental, social and governance (ESG) aspects, as well as the environmental and social impact of the company's own operations. The implementation of the sustainability strategy and the targets set regarding $CO_2$ emissions, the reduction of the lost time injury frequency rate, increasing the share of women in executive positions and employee engagement values, as well as strengthening the compliance standards, were additional significant topics in the year under review.

In March 2022, we discussed the annual and consolidated financial statements, including the management report and the non-financial statement. Following the report by the auditor regarding the findings of the audit, we approved the financial statements at the recommendation of the Finance and Audit Committee. We concurred with the Board of Management's proposed resolution on the appropriation of the net retained profit.

As successor to Ken Allen, who retired at the end of July 2022 after many years as a member of the Board of Management, we appointed Pablo Ciano to the Board of Management on the basis of the candidate interviews as the member responsible for eCommerce Solutions effective from 1 August 2022 to 31 July 2025 and determined the content of his employment contract. The Customer

Solutions & Innovation function was transferred to the responsibility of John Pearson.

In the same meeting, we discussed the updated finance strategy and approved the withdrawal of up to 50 million shares which will be bought back as part of the current share buy-back programme and not used for other purposes. Approval of the remuneration report, the report of the Supervisory Board to the Annual General Meeting and the proposed resolutions on the agenda items of the Annual General Meeting, including the election of Luise Hölscher and Stefan B. Wintels to the Supervisory Board for a four-year term, were also the subject of the meeting in March, as well as the determination of the annual bonus of Board of Management members on the basis of the degree of target achievement and corresponding recommendations of the Executive Committee.

In the meeting in June, we discussed the reports from the committees and the report on the situation of the Group and the divisions, and focused on the organisation and the challenges of Corporate Procurement.

In September, we approved the acquisition of a Dutch company which operates in the e-commerce fulfilment sector and offers its customers the integration of online platforms and web shops for logistics services. Without the presence of the Board of Management, we discussed at length the effectiveness and efficiency of our activities in the plenary meetings and in the committees. The subject of our discussion included collaboration with the members of the Board of Management, collaboration within the Supervisory Board, the skills profile of the Supervisory Board, the work in the committees and the strategic direction of the company. The latter was discussed in particular against the backdrop of growth opportunities, dealing with digitalisation and innovation, the state of IT and contingency planning. We concluded

that the Supervisory
advisory duties prop

In our final Supe
in December, we app
2023 after intense dis
targets for the Board
addressed the Declara
dations of the German
this meeting.

**Key topics addressed**
The six committees
the discussions and d
meetings. They have a
decisions regarding a
property transactions
Management members
vided by the auditor.
extensively in the plen
mittees. The composi
the ▶ Annual Corporate

The Executive Co
mainly with Board o
to succession plannin
discussion of the rem
ondary activities, the
for the previous year
following year.

The Personnel C
cussions focused on
pandemic, promoting
Group-wide corpora
ment, recruiting and
the development of t
skilled workers.

The Finance and Audit Committee met eight times. It examined the financial statements and the combined management report for the company and the Group. The committee also discussed the half-yearly financial report following the review by the auditor and the quarterly financial statements with the CEO, the Board member for finance and the auditor prior to publication. In addition, it issued the audit engagement for the audit firm elected by the Annual General Meeting. Also covered at the meetings were the non-audit services provided by the audit firm, the accounting process, risk management, the findings of internal audits and the quality of the financial statement audit. Moreover, the committee also discussed the updated finance strategy and tax-related matters. It obtained detailed reports from the Chief Compliance Officer on important aspects of compliance and on updates to the compliance organisation and compliance management. The effectiveness and development of the internal control and risk management system were regular topics of discussion at the meetings.

The Strategy and Sustainability Committee met four times, primarily addressing the strategic positioning of the individual business units in their respective market segments and the implementation of our Strategy 2025, as well as the acquisition and sale of equity investments. In addition, the committee deals with the company's strategy with regard to ESG aspects and their implementation in detail and on an ongoing basis.

The Nomination Committee, which is comprised exclusively of shareholder representatives, held two meetings. Following in-depth deliberation regarding the available candidates for the Supervisory Board, the committee proposed Luise Hölscher in March to succeed Jörg Kukies – who stepped down on 9 March 2022 – on the Supervisory Board based on the skills profile it had defined. In December, the committee recommended Katrin Suder to the Supervisory

Board to succeed Katja Windt as well as the reappointment of Mario Daberkow, each for a period of four years. Moreover, the committee recommended to declare to the Annual General Meeting that, in the estimation of the Supervisory Board, there are no personal and business relationships between Katrin Suder and Mario Daberkow, who have been proposed for appointment to the Supervisory Board, and Deutsche Post AG or its Group companies, the executive bodies of Deutsche Post AG or a shareholder holding a material interest in Deutsche Post AG that an objective shareholder would consider decisive for their vote.

The Mediation Committee did not meet in the year under review.

### Support of the members of the Supervisory Board

The company supports the members of the Supervisory Board in their activities on an ongoing basis. Newly elected members of the Supervisory Board receive a customised introduction in the form of individual meetings with the members of the Board of Management and the Chair of the Supervisory Board; additional measures include the provision of informational materials, access to a digital data room specially designed for the Supervisory Board and the offer of reimbursement for the cost of attending selected external training events as well as for subscribing to industry publications. In addition, walk-throughs guided by Board of Management members at operating units of the company are offered. These provide Supervisory Board members with an in-depth look at operational workflows and conditions on the ground. Directors' Day, which takes place twice per year, also enables the members of the Supervisory Board to deepen their understanding of current topics and developments which are relevant to the company. In 2022, the agenda comprised the topic of data analytics at Deutsche Post DHL Group, an

additional presentati
Diligence Act *(Liefer*
EU Taxonomy and the
Directive (CSRD).

**Changes to the Boar**
Tobias Meyer, who w
lowing the 2023 Annu
helm of the Global Bu
July 2022.

As his successor r
Nikola Hagleitner wa
ment effective from
company since 2005
in three of the five di
for example in opera
ness development.

Effective from 1
head of the Corpora
appointed as the suc
Management with res
He has also worked f
played a crucial role
2025, including the S

We are pleased t
tions were filled from
ified and internationa

**Changes to the Supe**
With regard to shareh
with the end of his du
Ministry of Finance, .
Supervisory Board ef
Bräunig resigned his
Annual General Meet

resignation from the KfW Banking Group. The Supervisory Board thanks both of them for their valuable support of the work of the Supervisory Board. Luise Hölscher, State Secretary in the Federal Ministry of Finance, and Stefan B. Wintels, CEO of KfW Banking Group, were appointed to the Supervisory Board on 6 May 2022 by the Annual General Meeting for a period of four years on the recommendation of the Supervisory Board. We will recommend to this year's Annual General Meeting that Katrin Suder be appointed to succeed Katja Windt and Mario Daberkow be reappointed, each for a period of four years. The main skills of the members of the Supervisory Board can be found in the qualification matrix in the ❯ **Annual Corporate Governance Statement.**

There were no changes to the employee representatives during the reporting period. The term of office for employee representatives on the Supervisory Board ends as scheduled following the Annual General Meeting planned for 4 May 2023.

An overview of current Supervisory Board members is provided in ❯ **Boards and committees.**

### Managing conflicts of interest

Supervisory Board members neither hold positions on the governing bodies of, nor provide consultancy services to, the Group's main competitors, nor do they maintain personal relationships with them. No conflicts of interest were reported in the year under review.

### Company in compliance with all recommendations of the German Corporate Governance Code

In December 2022, the members of the Board of Management and the Supervisory Board issued a statement declaring that all recommendations of the German Corporate Governance Code as amended on 16 December 2019 had

been complied with up to the issue of the last declaration of conformity in December 2021. This did not include the reserved partial limitation with regard to recommendation C.5. In future, all recommendations of the German Corporate Governance Code as amended on 28 April 2022 are to be complied with. Frank Appel is permitted to chair the Supervisory Board of Deutsche Telekom AG until the end of his term in May 2023. The statements from past years can be accessed on the company's website. Further information regarding corporate governance within the company can be found in the ❯ **Annual Corporate Governance Statement.**

### 2022 annual and consolidated financial statements examined

The auditors elected by the AGM, PricewaterhouseCoopers GmbH Wirtschaftsprüfungsgesellschaft (PwC), Düsseldorf, audited the annual and consolidated financial statements for the 2022 financial year, including the combined management report, and issued unqualified audit opinions. The German Public Auditor responsible for the engagement is Dietmar Prümm. PwC also conducted the voluntary review of the half-yearly financial report without issuing any objections. The joint remuneration report for the Board of Management and the Supervisory Board for the 2022 financial year was given an audit opinion in accordance with section 162(3) AktG.

After prior examination by the Finance and Audit Committee, occasionally without the Board of Management members, the Supervisory Board in its meeting today discussed the annual and consolidated financial statements, including the Board of Management's proposal on the appropriation of the net retained profit and the combined management report including the combined non-financial statement for the 2022 financial year in depth with the Board of Management. PwC reported on the results

of the audit before th[e]
plenary session [...]
The Supervisory Boa[rd]
audit and approved t[he]
statements for the 2[0...]
by the Finance and A[...]
raised on the basis of [...]
by the Supervisory B[o...]
mittee of the annual a[...]
the combined manage[ment...]
non-financial stateme[nt...]
ation of the net retai[n...]

The Supervisory B[...]
ment's proposal for t[he]
and the payment of a [...]

The Supervisory [...]
all employees and B[...]
their extraordinary e[...]
special thanks also g[...]
company upon the cl[...]
General Meeting, for [...]
cessfully led the Gro[...]
expertise. Under his [...]
global leader in logis[...]
kets and enables of g[...]

Bonn, 8 March 2023
The Supervisory Boar[d]

Nikolaus von Bomhar[d]
Chairman

REPORTING PRACTICE                                                                    Deutsche Post DHL Group –

# REPORTING PRACTICE

This publication contains both financial and non-financial information about the results for the 2022 financial year. It was published on 9 March 2023 in German and English and is available ◉ **Online** and as a ◉ **PDF**. The report sections that are subject to publication requirements are published in the company register, in due consideration of the European Single Electronic Format (ESEF).

### Applied reporting standards

As a listed company, Deutsche Post AG has prepared its consolidated financial statements in accordance with Section 315e *Handelsgesetzbuch* (HGB – German Commercial Code) in compliance with International Financial Reporting Standards (IFRSs) and the corresponding Interpretations of the International Accounting Standards Board (IASB) as adopted in the European Union.

The combined management report comprises the Group Management Report of Deutsche Post DHL Group and the Management Report of Deutsche Post AG. Unless otherwise noted, the information presented refers to the Group. Information pertaining solely to Deutsche Post AG is identified as such.

The combined management report also includes the combined non-financial statement for Deutsche Post AG and for the Group in accordance with Sections 289b(1) and 315b(1) HGB. The non-financial key performance indicators used for steering the Group were determined on the basis of their materiality in accordance with the German Commercial Code and the German Accounting Standards (GASs), **Steering metrics.** The Global Reporting Initiative (GRI) standards are taken as the framework for determining material topics, supplemented by HGB requirements. The non-financial statement also includes information aimed at facilitating sustainable investment (EU Taxonomy) in accord-ance with Article 8 of Regulation 2020/852 of the European Parliament and of the European Council as well as Delegated Regulation 2021/2178 of the European Commission. In the interest of avoiding repetition, we refer to other sections of the management report for reporting on mandatory disclo-sures, provided that they are explained in greater detail there. Information regarding employees applies to all of the Group's staff; exceptions are noted as such.

### Independent audit

The consolidated financial statements of Deutsche Post AG and its subsidiaries and the combined management report for the financial year from 1 January to 31 Decem-ber 2022 were audited by PricewaterhouseCoopers GmbH Wirtschaftsprüfungsgesellschaft (PwC) in a reasonable assurance engagement, **Auditor's report.**

The combined non-financial statement was audited separately by PwC on behalf of the Supervisory Board in a limited and, for certain indicators, reasonable assurance engagement, **Practitioner's report.**

The contents of the **Annual Corporate governance statement** pursuant to Section 289f and 315d HGB have not been audited.

### Forward-looking statements

This report contains forward-looking statements which are not historical facts and which also include statements con-cerning expectations and assumptions based upon current plans, estimates and projections, and the information avail-able to Deutsche Post AG at the time this report was com-pleted. They should not be considered to be assurances of future performance and results contained therein. Instead, they depend on a number of factors and are subject to var-ious risks and uncertainties (particularly those described in the "Expected developments, opportunities and risks" section) and are based on assumptions that may prove to be inaccurate. It is possible that actual performance and results may differ fro[…]

made in this report […]

obligation to update t[…]

tained in this report c[…]

If Deutsche Post AG u[…]

statements, no assu[…]

ment(s) in question c[…]

will be updated regula[…]

### Disclosures unrelate[…]

The German Corporat[…]

sures related to the in[…]

system which go bey[…]

management report a[…]

auditor's review of the[…]

These disclosures are[…]

separate paragraphs[…]

### Additional informati[…]

**❯** Refers to informati[…]

◉ Indicates a hyperli[…]

not part of this report[…]

### Separate remunerat[…]

According to Section[…]

(AktG), listed compan[…]

a joint remuneration […]

and Supervisory Boar[…]

the ◉ **Company's websi[…]**

### Translation

The English version of[…]

Post DHL Group con[…]

German version. Only[…]

ing, insofar as this do[…]

in other countries.

Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 296 of 300
Case 3:22-cv-07182-WHO   Document 39-1   Filed 10/18/23   Page 807 of 1025

# GENERAL INFORMATION

## Business model

**An international service portfolio**

Deutsche Post AG is a listed German corporation domiciled in Bonn. Deutsche Post DHL Group unites two strong brands: DHL offers a comprehensive portfolio of services consisting of parcel shipment, international express delivery, freight transport, supply chain management and e-commerce solutions; Deutsche Post is Europe's leading mail and parcel provider. The Group is organised into five operating divisions: Express; Global Forwarding, Freight; Supply Chain; eCommerce Solutions; and Post & Parcel Germany. Each of the divisions is managed by its own divisional headquarters and subdivided into functions, business units or regions for reporting purposes.

Group management functions are centralised in the Corporate Center. The internal services that support the entire Group are consolidated in our Global Business Services unit. Customer Solutions & Innovation (CSI) is DHL's cross-divisional account management and innovation unit.



**Corporate structure as at 31 December 2022**

[1] Note 11 to the consolidated financial statements.

COMBINED MANAGEMENT REPORT GENERAL INFORMATION

Deutsche Post DHL Group –

**Organisational changes**

Effective as of 1 July 2022, Nikola Hagleitner assumed responsibility on the Board of Management for Post & Parcel Germany from Tobias Meyer, who has since been responsible for Global Business Services.

Ken Allen left the company upon the expiration of his term of appointment on 31 July 2022. As a new member of the Board of Management, Pablo Ciano assumed responsibility for the eCommerce Solutions division as of 1 August 2022.

John Pearson has been responsible for CSI since 1 August 2022.

**A presence that spans the globe**

Our locations can be found in the 🌐 **List of shareholdings.** The following description of the divisions shows market shares and market volumes – where available and useful – in the most important regions.

## EXPRESS DIVISION

### A global express network



Around
**120,000**
employees

Around
**3**
million
customers

Around
**148,000**
service points

Around
**3,5**
facili

**22**
hubs

(298 of 300), Page 298 of 300
Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 298 of 300
Case 3:22-cv-07182-WHO   Document 39-1   Filed 10/18/23   Page 809 of 1025

**Time-definite international shipments**

In the Express division, we transport urgent documents and goods reliably and on time from door to door. International time-definite shipments are our core business. The division's main product is Time Definite International (TDI), a cross-border transport and delivery service. Our TDI services enable delivery at predefined times, and our expertise in customs clearance keeps shipments moving as a prerequisite in ensuring fast and reliable door-to-door service. We also provide industry-specific services to round out our TDI product. For example, our Medical Express transport solution, which is tailored specifically to companies in the life sciences and healthcare sector, offers various types of thermal packaging for temperature-controlled, chilled and frozen contents.

Around 296 million TDI shipments were transported worldwide in 2022. We estimate our market share at 43% on the basis of a recent survey (2021).

**Our virtual airline**

Our global air freight network is operated by multiple airlines, some of which are wholly owned by the Group. The combination of our own and purchased capacities allows us to respond flexibly to fluctuating demand. The following graphic illustrates how our available freight capacity is organised and offered on the market. Most of the freight capacity is used for TDI, our main product. If any cargo space remains on our own flights, we sell it to customers in the air freight sector. The largest buyer of remaining capacity is the DHL Global Forwarding business unit.

**Available capacity**



**Core**
Express TDI core product – capacity based upon average utilisation, adjusted on a daily basis

**BSA**
Block Space Agreement – guaranteed air cargo product

**ACS**
Air Capacity Sales, average total spare capacity that is not slated to be utilised for BSA or TDI core volumes

**Keeping our custom**

In order to keep our c global network opera changing requiremen Customer Centric Cu Promoter Approach.

At our quality c across the globe and required. All premiun delivered.

We conduct reg compliance with star facilities in co-opera Approximately 415 l Transported Asset Pr us a leader in this are

(299 of 300), Page 299 of 300    Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 299 of 300

COMBINED MANAGEMENT REPORT   GENERAL INFORMATION   Case 3:22-cv-07182-WHA   Document 39-1   Filed 10/18/23   Page 810 of 1025   Deutsche Post DHL Group —

## GLOBAL FORWARDING, FREIGHT DIVISION

**Air, ocean and overland freight**



More than
**250,000**
customers

Around
**200**
freight terminals

More than
**150**
countries and
territories

Around
**49,000**
employees

**Air, ocean and overla**

Air, ocean and overlan
core business. They in
as multimodal and se
customised industria
business model is bas
between customers a
of our network allows
modal transport optic
divisions, our operatio

**Volumes in air freigh
market conditions**

Despite the somewha
we reached around 1.9
2.1 million tonnes) of

**Ocean freight marke**

With around 3.3 milli
ous year: around 3.1 n
increase the ocean fr
cumstances of 2022,
acquisition of Hillebra

(300 of 300), Page 300 of 300 Case: 24-880, 07/10/2024, DktEntry: 16.4, Page 300 of 300
Case 3:22-cv-07182-WHO Document 39-1 Filed 10/18/23 Page 811 of 1025
COMBINED MANAGEMENT REPORT GENERAL INFORMATION
Deutsche Post DHL Group –

**Air and ocean freight market 2022: relevant volumes**

| | Asia Pacific | Americas | Middle East/Africa | Europe | Other | Global |
|---|---|---|---|---|---|---|
| Air freight (m tonnes)[1] | 10.7 | 5.8 | 1.0 | 6.0 | 0.8 | **24.3** |
| Ocean freight (m TEUs)[2] | 40.1 | 8.5 | 4.7 | 7.6 | 1.1 | **62.0** |

[1] Data based solely on export freight tonnes. Source: estimate by Seabury Consulting.   [2] Twenty-foot container units; estimated part of overall market controlled by forwarders. Data based solely on export volumes. Source: company estimates, Seabury Consulting.

**Weaker growth in the European road freight market**

After the European road freight market benefited from a significant increase in volumes in the previous year, the market developed more slowly in 2022. We recorded a decline in volumes by 4.8%. Capacity shortages, higher personnel costs, changes to commercial road freight and the significant rises in the diesel prices have led to a considerable increase in costs.

**Satisfied customers and the digitalisation roadmap**

We aim to design our services to be as user-friendly as possible. To do so, we systematically record customer feedback by calculating Net Promoter Scores and conducting annual satisfaction surveys. Based upon the information received, we define initiatives and actions aimed at steadily improving our products and services.

The global network of the Global Forwarding, Freight division meets the highest safety standards demanded by customers and authorities, including TAPA and CTPAT; we therefore have the most advanced ISO-certified business continuity management programme in the industry.

With a global Transport Management System, we laid the foundation for further scaling of global applications and processes in the Global Forwarding business unit. We further implemented a standardised Transport Management System in the Freight business unit as well. Meanwhile, we are continually registering new user groups in our myDHLi portal and see increasing activity on our digital customer interaction tools, such as Saloodo! – our digital marketplace for road freight – and the Freight Customer Portal which is successfully running in Sweden.