No. 24-880

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CENTER FOR INVESTIGATIVE REPORTING and WILL EVANS,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF LABOR,

Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of California

**REPLY BRIEF FOR APPELLANT**

*Of Counsel:*

SEEMA NANDA
*Solicitor of Labor*

EMILY S. WHITTEN
*Attorney*

*United States Department of Labor*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

ISMAIL J. RAMSEY
*United States Attorney*

PAMELA JOHANN
*Assistant United States Attorney*

MARK B. STERN
JOSHUA M. KOPPEL
*Attorneys, Appellate Staff
Civil Division, Room 7212
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-4820*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................ii

INTRODUCTION .........................................................................................1

ARGUMENT .................................................................................................3

I.      EEO-1 Reports Contain Commercial Information .......................................3

        A.      EEO-1 Data Is Commercial Information Under The Ordinary
                Meaning Of The Statute .........................................................3

        B.      Plaintiffs' Arguments Would Arbitrarily Constrict Exemption 4
                By Adding Limitations Found Nowhere In Its Terms .............................7

        C.      The Remaining Cases On Which Plaintiffs Seek To Rely Provide
                No Support For Their Position ....................................................9

II.     The FOIA Improvement Act Does Not Require The Department
        Of Labor To Disclose EEO-1 Reports .............................................. 13

        A.      The Trade Secrets Act Prohibits The Disclosure Of EEO-1
                Reports .....................................................................14

        B.      Disclosure Would Cause Foreseeable Harm To An Interest
                Protected By Exemption 4 ....................................................19

III.    Plaintiffs' Collateral-Estoppel Argument Is Waived And, In
        Any Event, Meritless ................................................................ 26

CONCLUSION ......................................................................................... 29

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                                      **Page(s)**

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
   475 F.3d 1080 (9th Cir. 2007) ....................................................................... 26

*AMA Sys., LLC v. FDA*,
   No. DLB-23-489, 2024 WL 712465 (D. Md. Feb. 21, 2024) .................................... 17

*American Airlines, Inc. v. National Mediation Bd.*,
   588 F.2d 863 (2d Cir. 1978) ........................................................... 3–4, 13

*American Small Bus. League v. U.S. Dep't of Def.*,
   411 F. Supp. 3d 824 (N.D. Cal. 2019) ................................................... 20–21

*Animal Legal Def. Fund v. USDA*,
   935 F.3d 858 (9th Cir. 2019) ................................................................. 20

*Azar v. Allina Health Servs.*,
   587 U.S. 566 (2019) ............................................................................ 4

*Baker & Hostetler LLP v. U.S. Dep't of Commerce*,
   473 F.3d 312 (D.C. Cir. 2006) ................................................................ 8

*Besson v. U.S. Dep't of Commerce*,
   480 F. Supp. 3d 105 (D.D.C. 2020) ........................................................ 13

*Brockway v. Department of the Air Force*,
   518 F.2d 1184 (8th Cir. 1975) ............................................................. 11

*Carlson v. U.S. Postal Serv.*,
   504 F.3d 1123 (9th Cir. 2007) ......................................................... 4, 11

*Center for Investigative Reporting v. U.S. Dep't of Labor*,
   424 F. Supp. 3d 771 (N.D. Cal. 2019) ........................................... 2, 26, 27

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) .............................................................. 14, 15, 17

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
   58 F.4th 1255 (D.C. Cir. 2023) ......................................................... 3, 10

*Estate of Saunders v. Commissioner*,
   745 F.3d 953 (9th Cir. 2014) ............................................................... 26

*Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co.,*
　873 F.2d 229 (9th Cir. 1989) ............................................................ 26, 27

*Evans v. Synopsys, Inc.,*
　34 F.4th 762 (9th Cir. 2022) ............................................................. 2

*Food Mktg. Inst. v. Argus Leader Media,*
　588 U.S. 427 (2019) ............................................ 2, 3, 7, 18, 19, 20, 24

*Getman v. NLRB,*
　450 F.2d 670 (D.C. Cir. 1971) ........................................................ 12

*Guerrero v. RJM Acquisitions LLC,*
　499 F.3d 926 (9th Cir. 2007) ............................................................ 13

*Hawkins v. Kroger Co.,*
　906 F.3d 763 (9th Cir. 2018) ............................................................ 20

*McClellan Ecological Seepage Situation v. Carlucci,*
　835 F.2d 1282 (9th Cir. 1987) ......................................................... 3, 4

*National Ass'n of Home Builders v. Norton,*
　309 F.3d 26 (D.C. Cir. 2002) .......................................................... 9

*National Treasury Emps. Union v. IRS,*
　765 F.2d 1174 (D.C. Cir. 1985) ...................................................... 28

*New York Times Co. v. U.S. Dep't of Justice,*
　No. 19-cv-1424, 2021 WL 371784 (S.D.N.Y. Feb. 3, 2021),
　*aff'd on other grounds,* 2024 WL 1109260 (2d Cir. Mar. 14, 2024) .................................. 9

*News Grp. Bos., Inc. v. National R.R. Passenger Corp.,*
　799 F. Supp. 1264 (D. Mass. 1992) ............................................. 13

*Pacific Architects & Eng'rs Inc. v. U.S. Dep't of State,*
　906 F.2d 1345 (9th Cir. 1990) ..................................................... 15, 16

*Sears, Roebuck & Co. v. GSA,*
　384 F. Supp. 996 (D.D.C. 1974) .................................................. 28

*Seife v. FDA*:
　43 F.4th 231 (2d Cir. 2022) ..................................... 17, 20, 23, 24
　492 F. Supp. 3d 269 (S.D.N.Y. 2020) ........................................ 17

*Sunoco Pipeline, L.P. v. U.S. Dep't of Transp.,*
　No. 21-cv-1760, 2023 WL 11195824 (D.D.C. Sept. 29, 2023) .................................. 17

*Synopsys, Inc. v. U.S. Department of Labor,*
  Nos. 20-16414, 20-16416, 2022 WL 1501094 (9th Cir. May 12, 2022) .............. 2, 16

*United States v. Gementera,*
  379 F.3d 596 (9th Cir. 2004) ......................................... 18

*United States v. Mendoza,*
  464 U.S. 154 (1984) ......................................... 27

*Van Bourg, Allen, Weinberg & Roger v. NLRB,*
  728 F.2d 1270 (9th Cir. 1984) ......................................... 12

*Washington Research Project, Inc. v. Department of Health, Educ. & Welfare,*
  504 F.2d 238 (D.C. Cir. 1974) ......................................... 11

*Watkins v. U.S. Bureau of Customs & Border Prot.,*
  643 F.3d 1189 (9th Cir. 2011) ......................................... 7

*Westinghouse Elec. Corp. v. Schlesinger,*
  392 F. Supp. 1246 (E.D. Va. 1974), *aff'd,*
  542 F.2d 1190 (4th Cir. 1976) ......................................... 28

*Williams v. Woodford,*
  384 F.3d 567 (9th Cir. 2004) ......................................... 26

**Statutes:**

Freedom of Information Act (FOIA):
  5 U.S.C. § 552(a)(8)(A) ......................................... 14, 17
  5 U.S.C. § 552(a)(8)(A)(i)(I) ......................................... 19
  5 U.S.C. § 552(a)(8)(A)(i)(II) ......................................... 16, 19
  5 U.S.C. § 552(b)(4) ......................................... 1, 10
  5 U.S.C. § 552(b)(7) ......................................... 10

18 U.S.C. § 1905 ......................................... 14, 18, 19

39 U.S.C. § 410(c)(2) ......................................... 11

42 U.S.C. § 2000e-8(e) ......................................... 25

**Legislative Material:**

S. Rep. No. 114-4 (2015) ......................................... 16

iv

**Other Authority:**

Restatement (Second) of Judgments § 28(5) (1982) ....................................................... 26

## INTRODUCTION

This case involves a request under the Freedom of Information Act (FOIA) for EEO-1 reports submitted by all federal contractors over a period of several years. Those reports describe contractors' workforces; they identify a contractor's total number of employees and the number of employees in each of 10 job categories, broken down by race/ethnicity and sex. Each report thus contains information about a contractor's productive capacity; the way that it has structured its workforce across executives, managers, technicians, sales workers, craft workers, and administrative support (among other job categories); and its progress in diversifying its workforce to gain a competitive advantage. Viewing EEO-1 reports filed across several years also provides information about, *inter alia*, a contractor's growth or contraction and its shifts in workforce allocation.

There should be no doubt, then, that EEO-1 reports contain "commercial … information" within the meaning of FOIA Exemption 4. 5 U.S.C. § 552(b)(4). In holding otherwise, the district court imposed additional requirements not found in the text of the statute. The court asked, for example, whether EEO-1 reports contain "commercially valuable" information, 1-ER-7, and whether a competitor would find "commercial gain" in them, 1-ER-9. Plaintiffs' answering brief asks this Court to impose similar limitations, arguing that information is commercial only if it "disclose[s] 'intimate aspects of a business'" or relates specifically to the "products" or "finances" of a company. Response Br. 24–25 (emphases omitted). Plaintiffs thus

invite this Court to disregard the Supreme Court's admonition against "arbitrarily constrict[ing]" Exemption 4 "by adding limitations found nowhere in its terms." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) (emphasis omitted).

Plaintiffs further ask this Court to consider whether disclosing EEO-1 reports would foreseeably harm interests protected by Exemption 4—an inquiry they say is required under the FOIA Improvement Act of 2016. There is no need for the Court to reach that issue. In any event, the record is clear that requiring the disclosure of EEO-1 reports would cause commercial harm to federal contractors, damage the relationship between the government and its contractors, and make it more difficult for the government to obtain information about contractors' compliance with anti-discrimination requirements and to ensure such compliance.[1]

---

[1] Plaintiffs' brief contains numerous factual errors. For example, plaintiffs erroneously assert (Br. 1, 6) that the Equal Employment Opportunity Commission (EEOC), an independent federal agency, is a sub-agency within the Department of Labor and that the Department of Labor collects EEO-1 reports pursuant to Title VII of the Civil Rights Act. The government's principal brief contains a correct statement of the facts, and the government will not repeat those facts here.

Plaintiffs also misrepresent this Court's review of *Center for Investigative Reporting v. U.S. Department of Labor* (*CIR I*), 424 F. Supp. 3d 771 (N.D. Cal. 2019). Contrary to plaintiffs' assertions (Br. 3 n.4, 9), "this [C]ourt" did not address whether EEO-1 reports contain commercial information or whether their disclosure would cause foreseeable harm because the intervenor's appeal of that case was dismissed for lack of jurisdiction. *See Evans v. Synopsys, Inc.*, 34 F.4th 762, 777 (9th Cir. 2022). Neither that jurisdictional dismissal, nor this Court's decision in *Synopsys, Inc. v. U.S. Department of Labor*, Nos. 20-16414, 20-16416, 2022 WL 1501094 (9th Cir. May 12, 2022), can be said to "tacitly adopt[]" the district court's decision, Response Br. 22.

2

## ARGUMENT

### I.     EEO-1 REPORTS CONTAIN COMMERCIAL INFORMATION

#### A.     EEO-1 Data Is Commercial Information Under The Ordinary Meaning Of The Statute

1. To interpret the word "commercial" in Exemption 4, a court must "ask what that term's 'ordinary, contemporary, common meaning' was when Congress enacted FOIA in 1966." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 433–434 (2019). The government's opening brief explained that the word "commercial" meant then, as it does now, "of, in, or relating to commerce," "trade," or "the exchange or buying and selling of commodities." Opening Br. 19 (quoting various dictionaries). Plaintiffs declare (Br. 23) that, in citing these lexicographical sources, the government has "invented" a "potentially dangerous 'related to' test." But they do not contest that these, in fact, constitute the ordinary definition of "commercial," nor do they provide an alternative definition.

Plaintiffs also err in asserting that this common understanding varies from the definitions adopted by this Court and other courts. *See, e.g.*, *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987) ("Information is commercial if it relates to commerce, trade, or profit."); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 58 F.4th 1255, 1263 (D.C. Cir. 2023) ("[I]nformation is commercial if it pertains to the exchange of goods or services or the making of a profit."); *American Airlines, Inc. v. National Mediation Bd.*, 588 F.2d 863, 870 (2d Cir.

3

1978) ("'Commercial' surely means pertaining or relating to or dealing with commerce."); *see also Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1129 (9th Cir. 2007) ("[I]nformation is commercial if it relates to commerce, trade, or profit." (quoting *McClellan*, 835 F.2d at 1285)).[2] This plain meaning of the statute does not, as plaintiffs assert (Br. 23), "render the term 'commercial' meaningless." In most circumstances, for example, the term would not include information about an individual or a non-commercial entity and would not include information provided by a company where that information is unrelated to the company's business.

2. The record shows that EEO-1 data contains at least four types of commercial information, as that term is ordinarily understood.

First, the government explained in its opening brief (at 20–22) that employee-headcount data is commercial information because it is a key metric of the human resources a company has at its disposal to pursue its business objectives. Plaintiffs do not dispute the centrality of a company's workforce to its engagement in commerce or that headcount data is an important metric for describing a company's human capital. Instead, plaintiffs argue (Br. 29) that headcount data "may inaccurately suggest commercial productivity." But commercial information falls within the scope of Exemption 4 even if it does not provide a complete picture of a company's

---

[2] *McClellan* interpreted the term "commercial" in a separate provision of FOIA. But there is no reason "to unseat [the] normal presumption that, when Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout." *Azar v. Allina Health Servs.*, 587 U.S. 566, 576 (2019).

4

productivity or can lead observers to reach inaccurate conclusions. *See* Opening Br. 30. Indeed, plaintiffs' argument could be made about most commercial information: Even product inventories, for example, may prove a misleading indicator of productivity without additional information about product turnover, yet no one would argue that inventories are not commercial information.

Second, the government showed that EEO-1 reports contain information on "how an employer has deliberately staffed areas of its business to maximize efficiencies, operations, and profit, and to minimize unnecessary expenses." Opening Br. 22–24 (quoting 2-ER-78). Plaintiffs protest (Br. 30) without specific citations that the job categories on EEO-1 reports are "vague." But they provide no basis for suggesting that information is non-commercial in nature just because it could be more specific. *See* Opening Br. 29–30. In any event, the EEO-1 job categories have commercial significance because they describe employees according to their business function. *See* 3-ER-279 (listing job categories including "Executive/Senior Level Officials," "First/Mid-Level Officials and Managers," "Sales Workers," and "Administrative Support Workers"); *see also* 3-ER-348–351 (providing definitions and examples). The record shows that these categories "correspond to existing sources of job analytic information" and are sufficiently specific for observers to draw conclusions about a company's workforce. 2-ER-177. EEO-1 reports reveal, for example, "the ratios" companies maintain between revenue-generating employees "and client support and overhead positions," as well as how many sales workers a

5

company has.  3-ER-366; *see also, e.g.*, 3-ER-376; 3-ER-382; 3-ER-390; 3-ER-531–532. That information is commercial under any reasonable standard.[3]

Third, many companies make continual efforts to monitor and increase workforce diversity consistent with the law because diversity can create a competitive advantage.  The workforce demographic data in EEO-1 reports is thus commercial information because it provides one measure of a workforce's strengths and a company's progress in efforts to increase workforce diversity.  Opening Br. 24–26. Plaintiffs respond that demographic "data is only '*correlated* with performance outcomes.'"  Response Br. 30 (alteration and emphasis omitted).  But such correlation plainly renders the information commercial.  There is no statutory requirement that commercial information explain cause and effect.  Moreover, regardless of the nature of the relationship between employee diversity and commercial success, many companies track workforce demographic data and make business decisions based on it.  *See* 2-ER-227–228.

Fourth, disclosing EEO-1 data from multiple years would provide information about changes and trends in employee headcount, personnel allocation, and employee diversity.  Opening Br. 26–28.  Plaintiffs do not disagree, and they argue (Br. 31) only that the requested data will be "too stale" to be meaningful.  As our opening brief explains (at 29–30), however, FOIA Exemption 4 contains no requirement that

---

[3] Plaintiffs selectively quote (Br. 30) from a declaration of a government expert addressing a different issue that provides no support for plaintiffs' argument.

6

confidential commercial information also be current for it to be protected from disclosure, and plaintiffs' argument thus finds no basis in the statute. In any event, plaintiffs have repeatedly submitted supplemental FOIA requests to seek updated EEO-1 information. *See* 1-ER-397–400.

### B. Plaintiffs' Arguments Would Arbitrarily Constrict Exemption 4 By Adding Limitations Found Nowhere In Its Terms

As the previous discussion indicates, plaintiffs' argument finds no basis in the ordinary meaning of "commercial" and turns instead on an attempt to graft atextual limitations onto Exemption 4. For example, plaintiffs mistakenly cite (Br. 24) *Watkins v. U.S. Bureau of Customs & Border Protection*, 643 F.3d 1189 (9th Cir. 2011), to argue that information is commercial only if it relates to "intimate aspects" of a business or is "plainly commercial." *Watkins* held that information relating to merchandise seized at a port was "plainly commercial information" that disclosed "intimate aspects of an importer's business such as supply chains and fluctuations of demand for merchandise." 643 F.3d at 1195. But the Court never suggested that the modifiers "plainly" or "intimate" are limitations on the statute's scope. Plaintiffs' argument to the contrary would "arbitrarily constrict" Exemption 4 "by adding limitations found nowhere in its terms." *Argus Leader*, 588 U.S. at 439 (emphasis omitted). In any event, employee headcount data *is* "plainly commercial information" that "discloses intimate aspects" of a company's business. *Watkins*, 643 F.3d at 1195. Like supply-chain information, headcount data relates to a company's ability to produce goods or

7

services, and changes in headcount over time can reflect fluctuations in demand for a company's products.

For a similar reason, plaintiffs err in citing (Br. 25) *Watkins*, among other cases, for the proposition that Exemption 4 is limited to information related to "products" or "finances." *Watkins* says nothing of the sort. Plaintiffs commit a basic error of logic in concluding, on the basis of cases finding that information concerning products or finances *is* commercial, that information concerning other types of information is necessarily *not* commercial. Indeed, courts have explained that "Exemption 4 is *not* confined only to records that 'reveal basic commercial operations or relate to the income-producing aspects of a business.'" *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006) (Kavanaugh, J.) (alteration omitted).

Plaintiffs further argue (Br. 26) that the EEO-1 records at issue "are not meaningfully commercial or intimately related to the bottom line as they only *potentially* disclose some putative commercial indicators." Plaintiffs again insert qualifiers ("meaningfully" and "intimately") that are nowhere present in the text of Exemption 4. In any event, plaintiffs' concession (Br. 29) that EEO-1 reports would at least "possibly indicate some commercial information" is fatal to their claim.

Plaintiffs likewise err in arguing (Br. 31) that, even if EEO-1 reports contain commercial information, they are not protected from disclosure because the data is

not "'intertwined' with more clearly financial data."  Again, the text of Exemption 4 contains no such limitation, and the unreported, district-court decision on which plaintiffs seek to rely is inapposite.  In that case, the court held that information about an automaker's compliance with a plea agreement does not itself "'relate to the income-producing aspects of a business,'" and for that reason the court inquired whether that information was "intertwined with other information that can fairly be described as commercial."  *New York Times Co. v. U.S. Dep't of Justice*, No. 19-cv-1424, 2021 WL 371784, at *12, *14 (S.D.N.Y. Feb. 3, 2021), *aff'd on other grounds*, 2024 WL 1109260 (2d Cir. Mar. 14, 2024).  Whatever the merit of that holding (which the Second Circuit did not reach on appeal), the same analysis certainly would not apply to information about a company's workforce, which is directly involved in the income-producing aspects of a company's business.

## C.    The Remaining Cases On Which Plaintiffs Seek To Rely Provide No Support For Their Position

Plaintiffs cite (Br. 23) the formulation in *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002), where the D.C. Circuit stated that "information is 'commercial' under" Exemption 4 if "it serves a 'commercial function' or is of a 'commercial nature.'"  As the government explained in its opening brief, information about a company's headcount, its allocation of employees across job functions, and its workforce demographic data is commercial in nature because, *inter alia*, it describes a core commercial resource, a company's ability to produce the goods

9

and services that it sells for profit, how a company has structured its staffing to
maximize efficiencies and profit, and trends in a company's growth. The information
also serves a commercial function because businesses track and use employee
headcount and demographic data to measure their ability to produce goods or service
contracts and their success in attracting a diverse workforce. *See* Opening Br. 20–28;
*supra* pp. 4–7.

Plaintiffs mistakenly urge (Br. 36) that the information at issue ceases to be
commercial because EEO-1 reports are completed on "government issued forms" or
intended to "aid a government agency['s]" enforcement efforts. The question under
Exemption 4 is not whether the EEO-1 reports themselves are commercial
documents or serve a commercial function; the question, instead, is whether they
contain "commercial or financial *information*." 5 U.S.C. § 552(b)(4) (emphasis added);
*see, e.g.*, *Citizens for Responsibility & Ethics in Washington*, 58 F.4th at 1265 (citing cases in
which government-required reports were exempted from disclosure because the court
"examined the 'character of the information' in the reports"). Indeed, plaintiffs do
not seek EEO-1 reports in their traditional format, but rather a spreadsheet
combining the data of all federal contractors. *E.g.*, 4-ER-553. Unlike some other
FOIA exemptions, Exemption 4 is not limited to a particular kind of record. *Cf., e.g.*,
5 U.S.C. § 552(b)(7) (exempting certain "records or information compiled for law
enforcement purposes"). Thus, whether companies use EEO-1 forms for a

commercial function is irrelevant; what matters is whether the information those forms contain is commercial.

Other cases plaintiffs cite are similarly inapposite. For example, the Court in *Carlson* held that the names, contact information, and business hours of post offices are not commercial information. 504 F.3d at 1129. But the Court reached this conclusion because of the particular "position and purpose of the United States Postal Service," which, the Court emphasized, "is a government entity, not a business, which provides a service, mail delivery, to the public." *Id.* at 1127–1128. The Court explained that "[m]ail service may be essential *to* commerce and trade," but the Postal Service's position as a government entity means that the mail service *itself* is not commerce. *Id.* at 1129 (emphasis added).[4]

Plaintiffs cite (Br. 27) several other cases that similarly involved information about non-commercial entities. *E.g.*, *Brockway v. Department of the Air Force*, 518 F.2d 1184, 1187–1189 (8th Cir. 1975) (statement regarding the crash of an Air Force plane); *Washington Research Project, Inc. v. Department of Health, Educ. & Welfare*, 504 F.2d 238, 244–245 (D.C. Cir. 1974) ("noncommercial scientist's research design"). While Exemption 4 covers commercial information provided to the government by non-commercial parties, information *about* non-commercial entities is often not

---

[4] *Carlson* did not construe FOIA but rather a statute particular to the Postal Service that allows the Service to withhold certain information that is "of a commercial nature," 39 U.S.C. § 410(c)(2).

11

commercial.  There is no dispute here that the government contractors whose EEO-1 reports are at issue are private, commercial entities whose business is commercial. The decisions plaintiffs cite thus cast no doubt on the fact that information about the operation of the businesses at issue here is commercial information.

Plaintiffs also err in relying on the *Excelsior*-list cases, which held that the National Labor Relations Board was required to disclose the names and addresses of employees eligible to vote in certain representation elections.  In the first of those cases, *Getman v. NLRB*, 450 F.2d 670, 673 (D.C. Cir. 1971), the D.C. Circuit held, with almost no explanation, that "a bare list of names and addresses of employees which employers are required by law to give the Board, without any express promise of confidentiality, and which cannot be fairly characterized as 'trade secrets' or 'financial' or 'commercial' information is not exempted from disclosure" under Exemption 4. This Court subsequently adopted that holding, without additional analysis, in the specific situation where the Board had not given any "promise of confidentiality." *Van Bourg, Allen, Weinberg & Roger v. NLRB*, 728 F.2d 1270, 1272–1273 (9th Cir. 1984).

Those cases held only that a "bare list" of employee names and addresses is ordinarily not covered by Exemption 4 because a person's identity and address are not commercial information, but rather information about an individual.  *Getman*, 450 F.2d at 673.  Information about individual employees contrasts markedly with information about a company's workforce as a whole.  The lists at issue in *Getman* and

12

*Van Bourg* included only names and addresses of employees eligible to vote in representation elections, not a roster of a company's entire workforce (from which total headcount might be derived), and without designation of each individual's job category, sex, or race/ethnicity.  And even assuming that it might have been possible to derive commercial information from the lists at issue, *Getman* and *Van Bourg* considered no such argument and establish no precedent on the point.  *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 937–938 (9th Cir. 2007) (per curiam).

Courts have recognized that information quantifying groups of employees—in contrast to the *Excelsior* lists—is commercial in nature, *see American Airlines*, 588 F.2d at 868–870, and that even information about the identity of particular employees may fall within Exemption 4 if disclosure would reveal information about a company's business strategy or capabilities, *see Besson v. U.S. Dep't of Commerce*, 480 F. Supp. 3d 105, 113 (D.D.C. 2020).[5]

## II.  THE FOIA IMPROVEMENT ACT DOES NOT REQUIRE THE DEPARTMENT OF LABOR TO DISCLOSE EEO-1 REPORTS

The Court should reverse the district court's holding that EEO-1 reports do not contain commercial information and remand for the district court to consider whether the EEO-1 data at issue is confidential.  If the court holds that the

---

[5] Plaintiffs are mistaken in their characterization of the holdings of other cases. For example, *News Group Boston, Inc. v. National Railroad Passenger Corp.*, 799 F. Supp. 1264, 1269 (D. Mass. 1992), did not address whether Amtrak's salary information is commercial, but rather whether it is confidential.  *Contra* Response Br. 27.

information is confidential, then it falls within FOIA Exemption 4. The district court would then need to consider whether the Department of Labor may withhold the data under the FOIA Improvement Act of 2016.

The FOIA Improvement Act provides that an agency shall withhold records that fall within a FOIA exemption only if "the agency reasonably foresees that disclosure would harm an interest protected by" one of those exemptions or "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A). Disclosure of the information at issue in this case is prohibited by the Trade Secrets Act. Thus, neither this Court nor the district court on remand needs to consider whether disclosure would harm an interest protected by a FOIA exemption.

## A.    The Trade Secrets Act Prohibits The Disclosure Of EEO-1 Reports

Although the district court did not need to reach the issue given its erroneous holding that EEO-1 reports are not covered by Exemption 4, the court held that the Trade Secrets Act does not prohibit disclosure of the reports. This Court should correct that mistaken holding.

1. The Trade Secrets Act prohibits the disclosure of certain information, including "confidential statistical data," "to any extent not authorized by law." 18 U.S.C. § 1905. FOIA generally authorizes the disclosure of information not falling within its exemptions, and thus the Trade Secrets Act does not prohibit the disclosure of such information. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 319 n.49 (1979)

14

(explaining that if material fell "outside Exemption 4 yet within the substantive provisions of" the Trade Secrets Act, "FOIA might provide the necessary 'authorization by law' for purposes of" the Trade Secrets Act (alteration omitted)). But FOIA does not authorize the disclosure of information falling within its exemptions, and the Trade Secrets Act thus bars the disclosure of FOIA-exempt information falling within the Trade Secrets Act's scope. *See id.* at 317–319 (holding that a company can file an action under the Administrative Procedure Act to prevent the disclosure of EEO-1 reports where such disclosure is not authorized by FOIA or any other statute or regulation). This Court has explained that if information falls within one of FOIA's exemptions and within the scope of the Trade Secrets Act, the Trade Secrets Act "qualifies as a barring statute" that prohibits an agency from disclosing the information. *Pacific Architects & Eng'rs Inc. v. U.S. Dep't of State*, 906 F.2d 1345, 1346–1347 (9th Cir. 1990).

Because the EEO-1 reports at issue fall within Exemption 4, FOIA does not authorize their disclosure. And because those reports fall within the substantive scope of the Trade Secrets Act, the Department of Labor is prohibited from disclosing them. The FOIA Improvement Act does not require the disclosure of

15

information in such a case. *See* 5 U.S.C. § 552(a)(8)(A)(i)(II) (permitting withholding if "disclosure is prohibited by law").[6]

      Plaintiffs fail to understand the relevant inquiry and instead argue that EEO-1 reports do not fall within FOIA Exemption 3, which is not at issue in this case. Plaintiffs also contend (Br. 48) that the government's argument would "cut[] foreseeable harm out of the equation" in Exemption 4 cases. That would be true if this Court continues to apply its earlier holding that the scope of the Trade Secrets Act and Exemption 4 are "the same, or, coextensive," *Pacific Architects*, 906 F.2d at 1347 (alteration and quotation marks omitted), but the Court has recognized a question about the continuing validity of that holding following *Argus Leader*, *see Synopsys, Inc. v. U.S. Dep't of Labor*, Nos. 20-16414, 20-16416, 2022 WL 1501094, at *4 n.3 (9th Cir. May 12, 2022), and the Court need not resolve that question now. *See* Opening Br. 40. In any event, the legislative history of the FOIA Improvement Act makes clear that Congress understood that significant amounts of information exempt from disclosure under FOIA, including all information falling within certain exemptions, would be withheld because disclosure is prohibited by some other law. *See* S. Rep. No. 114-4, at 8–9 (2015) (explaining, for example, that criminal statutes would likely prohibit the disclosure of all information falling within Exemption 1).

---

      [6] The EEO-1 reports of employers who have not kept their data confidential—including those who did not object to the release of their reports—would not fall within FOIA Exemption 4 or the Trade Secrets Act.

16

Amici Knowledge Ecology International, et al., engage in tortuous reasoning to urge (Br. 24–26) that the FOIA Improvement Act authorizes the disclosure of any information that would not cause foreseeable harm, and thus the Trade Secrets Act would not prohibit the disclosure of such material. But the FOIA Improvement Act addresses when "[a]n agency shall … *withhold* information," 5 U.S.C. § 552(a)(8)(A) (emphasis added); it does not authorize the *disclosure* of any information within the meaning of the Trade Secrets Act. Furthermore, amici's reading of the FOIA Improvement Act would abrogate *Chrysler*'s holding that the Trade Secrets Act prohibits the disclosure of information falling within FOIA Exemption 4 and that a company can bring suit to bar the disclosure of such information. *See* 441 U.S. at 317–318. There is no indication that Congress intended such a result. Indeed, even following the passage of the FOIA Improvement Act, courts have continued to hold that the Trade Secrets Act prohibits the disclosure of material falling within Exemption 4, without requiring a showing of foreseeable harm. *See AMA Sys., LLC v. FDA*, No. DLB-23-489, 2024 WL 712465, at *9 (D. Md. Feb. 21, 2024); *Sunoco Pipeline, L.P. v. U.S. Dep't of Transp.*, No. 21-cv-1760, 2023 WL 11195824, at *3 (D.D.C. Sept. 29, 2023).[7]

---

[7] *Seife v. FDA*, 43 F.4th 231 (2d Cir. 2022), held that the disclosure of certain material covered by FOIA Exemption 4 would cause foreseeable harm, and therefore did not address whether disclosure would be prohibited by the Trade Secrets Act. *See Seife v. FDA*, 492 F. Supp. 3d 269, 279 n.3 (S.D.N.Y. 2020) (declining to reach the issue).

17

2.  As the government explained (Br. 39–42), the EEO-1 reports at issue fit within the terms of the Trade Secrets Act because they contain "confidential statistical data." 18 U.S.C. § 1905.  Plaintiffs spend a page and a half arguing (Br. 51–52) that EEO-1 data is not a "trade secret," responding to an argument that the government has never made.  Despite its name, the Trade Secrets Act covers much more than trade secrets.  *See* 18 U.S.C. § 1905 (addressing "[d]isclosure of confidential information generally").  When plaintiffs address the government's understanding of the statute, they primarily assert (Br. 52) that EEO-1 data is not confidential statistical data because, in their view, the EEO-1 reports are not confidential.  But the district court did not address the confidentiality issue, and none of the parties urge this Court to do so in the first instance.[8]

Plaintiffs cannot contest that EEO-1 reports contain "statistical data" as the term is commonly understood, and they urge instead (Br. 53) that the term should be limited to "statistics with inherent commercial value."  But the Trade Secrets Act says nothing about commercial value, and plaintiffs' atextual construction fails for the same reason that the Supreme Court rejected an analogous construction of FOIA

---

[8] Amici urge this Court to hold that EEO-1 reports are not confidential, but the Court does not address issues raised only by amici.  *United States v. Gementera*, 379 F.3d 596, 607 (9th Cir. 2004).  Furthermore, confidentiality is a fact-specific issue that depends on how each federal contractor treated its information, *see Argus Leader*, 588 U.S. at 434 ("[I]nformation communicated to another remains confidential whenever it is customarily kept private, or at least closely held, *by the person imparting it*." (emphasis added)), so amici err in arguing that this Court should address the confidentiality of EEO-1 reports as a general matter.

Exemption 4 in *Argus Leader*. *See* 588 U.S. at 433–435. None of the cases that plaintiffs rely on even cite, much less discuss, the Trade Secrets Act.

Contrary to plaintiffs' assertion (Br. 53), a plain-language construction of "confidential statistical data" would not "swallow much of the rest of the statute." Information related to "trade secrets, processes, operations, style of work, or apparatus" often will not come in the form of statistical data, nor will information about the "source of … income" or the object of expenditures. 18 U.S.C. § 1905. Thus, the government's construction of "confidential statistical data" does not render any of these terms of the Trade Secrets Act surplusage.

## B.    Disclosure Would Cause Foreseeable Harm To An Interest Protected By Exemption 4

Because disclosing confidential EEO-1 reports would violate the Trade Secrets Act and the Department of Labor is therefore permitted to withhold the reports under 5 U.S.C. § 552(a)(8)(A)(i)(II), no court need ever consider whether disclosure would foreseeably harm an interest protected by Exemption 4, *see* 5 U.S.C. § 552(a)(8)(A)(i)(I). If, however, the Court believes that the foreseeable-harm issue is necessary to a decision on plaintiffs' claims, it still should not address the issue but rather remand for the district court to do so in the first instance (assuming that the district court holds on remand that the EEO-1 reports at issue contain confidential information and thus fall within Exemption 4). *See* 1-ER-11–12 (declining to consider whether disclosure would foreseeably harm interests protected by Exemption 4). This

19

Court generally does not consider an issue not passed upon below, *Hawkins v. Kroger Co.*, 906 F.3d 763, 773 & n.11 (9th Cir. 2018), particularly where, as here, the issue "involve[s] questions of fact," *Animal Legal Def. Fund v. USDA*, 935 F.3d 858, 876 (9th Cir. 2019).

In any event, the Department of Labor reasonably determined that disclosing the EEO-1 reports at issue would harm interests protected by Exemption 4 of FOIA. In *Argus Leader*, the Supreme Court explained that Exemption 4 was intended, in part, to "provid[e] private parties with sufficient assurances about the treatment of their proprietary information so they will cooperate in federal programs and supply the government with information vital to its work." 588 U.S. at 440. In *Seife v. FDA*, the Second Circuit identified another interest protected by Exemption 4: "the submitter's commercial or financial interests in information that is of a type held in confidence." 43 F.4th 231, 241 (2d Cir. 2022). An agency can therefore meet the foreseeable harm requirement of the FOIA Improvement Act "by showing foreseeable commercial or financial harm to the submitter upon release of the contested information," *id.* at 242, or by showing that disclosure would harm private parties' willingness to cooperate in federal programs or the government's access to information held by private parties.[9]

---

[9] The Second Circuit in *Seife* did not consider the interest in ensuring that private parties share information with the federal government. The court there did note that at least one court has held that "the interest protected by Exemption 4 is 'the information's confidentiality—that is, its private nature'"—such that disclosure would always harm that interest. 43 F.4th at 239; *see American Small Bus. League v. U.S.*

*Continued on next page.*

First, as the government has already explained (Br. 35–37), requiring the disclosure of confidential EEO-1 reports would reveal the sensitive commercial information of federal contractors and harm contractors' commercial or financial interests.  For example, declarations from Allied Universal and DHL explained that EEO-1 data would reveal how those companies balance their profit-center employees with client-support and overhead-related positions, and that this information would provide competitors with a guideline for their own staffing strategies, depriving the contractors of the competitive advantage they have cultivated.  3-ER-371–372; 3-ER-385; *see also* 2-ER-180 ("In highly competitive business environments, a company's investment in building effective [human-resource management] systems is a pivotal source of competitive advantage over other companies.").  The data would also show competitors where federal contractors are investing in additional personnel or reducing personnel, which can provide insight into a contractor's confidential business growth or development plans, and competitors could use this information "to gain a commercial advantage" over the contractor "and to frustrate and hinder its business growth."  3-ER-379; *see also* 2-ER-79; 3-ER-385–386.  Employee demographic data could also be used by competitors or media outlets to paint a

---

*Dep't of Def.*, 411 F. Supp. 3d 824, 835–836 (N.D. Cal. 2019).  This Court need not consider whether such harm would satisfy the foreseeable-harm standard of the FOIA Improvement Act, or whether there are additional interests protected by Exemption 4 beyond those argued here.

21

negative picture of certain federal contractors, exposing them to reputational harm and hindering their recruitment efforts. 2-ER-76–79; 3-ER-386.

Second, an order requiring disclosure of the EEO-1 reports would also harm governmental interests. The Department of Labor explained that it relies on the cooperation of contractors to report demographic data and that if contractors were hesitant to report full or accurate data, the Department would need to expend limited enforcement resources to compel the production of this information. 3-ER-273. Furthermore, requiring the Department to release confidential information would harm relations between the Department and the regulated community, which has already expressed concerns about the Department's ability to keep company data confidential as a result of these FOIA requests, and dissuade contractors from participating in voluntary programs, educational efforts, and related initiatives run by the Department. 3-ER-272; 3-ER-372–373. It would also lead contractors to rethink their decision to bid for government contracts, which could drive up the government's contracting costs. 3-ER-273–274; 3-ER-371. Plaintiffs' claim (Br. 46) that this last assertion of harm is unsupported by evidence is simply incorrect; it is directly supported by a declaration from a Department of Labor official and a current federal contractor. *See* 3-ER-273–274; 3-ER-371.

The government has met its burden of demonstrating that these harms are reasonably foreseeable. The government provided multiple declarations containing dozens of pages of thorough and detailed explanation as to the importance and

commercial value of the specific information in the EEO-1 reports, and the precise harm to federal contractors and government operations that would result from the information's release. These declarations were submitted by Department of Labor officials and experts, as well as federal contractors and industry representatives drawing on their intimate knowledge of their own businesses, industries, and competition. *See* 2-ER-79; 2-ER-93–94; 2-ER-99–107; 2-ER-174–181; 2-ER-228–231; 3-ER-270–274; 3-ER-371–373; 3-ER-377–380; 3-ER-384–387; 3-ER-394–395; 3-ER-531–534. Contrary to plaintiffs' argument (Br. 44–45) this is not a case in which the government has made only generalized assertions of harms. Rather, the government has identified the specific ways in which the disclosure of EEO-1 data would lead to federal contractors' competitors obtaining a commercial advantage over the contractors, harm cooperation between the Department of Labor and regulated entities, and hurt the government's contracting efforts.

Plaintiffs cite (Br. 44) cases holding that a private company's embarrassment or reputational injury does not constitute a "substantial competitive harm" that would render information confidential under a test abrogated by the Supreme Court in *Argus Leader*. Those cases did not address whether such injury would satisfy the FOIA Improvement Act's foreseeable-harm requirement, however, particularly when the embarrassment or reputational injury would cause private companies "commercial or financial harm," *Seife*, 43 F.4th at 242, or would cause the companies not to "cooperate in federal programs and supply the government with information vital to

23

its work," *Argus Leader*, 588 U.S. at 440.  In any event, the government has demonstrated foreseeable harm unrelated to any reputational injuries.

Plaintiffs fare no better in asserting that the harm that would result from disclosing EEO-1 reports would be mitigated by the age of those reports and data that is already public.  As an initial matter, the FOIA Improvement Act does not require the government to demonstrate any particular quantum of harm.  *See Seife*, 43 F.4th at 243 (rejecting as inadequate a FOIA requestor's evidence that "at most challenge[d] the degree of commercial or financial harm …, rather than that such harm would result").  Furthermore, even EEO-1 data that is a few years old can expose a company's workforce structure, for example, and provide competitors insight and advantage.  And although plaintiffs note (Br. 46 & n.20) that some federal contractors have made public some workforce-related information, the contractors have not released other information that they have determined is sensitive in the context of their particular business and industry.  *See* 2-ER-61–64; 2-ER-69–70; 2-ER-77; 2-ER-94–95.  That a company may make public a list of its corporate leaders, for example, does not mean that information about the company's total headcount and how personnel are divided across job areas would not provide competitors an advantage.

Congress recognized the injuries that the government and private parties would suffer if the employment and workforce-demographic data of employers was made public, and Congress therefore prohibited the EEOC from disclosing such

24

information.  42 U.S.C. § 2000e-8(e).  While some courts have held that this provision does not cover the Department of Labor, *see* Opening Br. 7, the provision demonstrates Congress's recognition of the importance of safeguarding EEO-1 data. Furthermore, requiring the Department to disclose the EEO-1 reports of federal contractors, while the reports of other companies must remain confidential, would impose a penalty on companies for working with the federal government and expose them to a competitive disadvantage.  3-ER-371.  Such a result is inconsistent with the statutory scheme and would cause harm that justifies withholding under the FOIA Improvement Act.

Plaintiffs and amici assert that providing broad access to employers' workforce demographic data may serve important public interests, including in ensuring compliance with anti-discrimination laws, but they fail to recognize that those same interests would be hampered by requiring the Department of Labor to disclose confidential commercial information that, if made public, could harm federal contractors.  Regulated entities would foreseeably be less willing to cooperate with the Department's anti-discrimination programs if doing so meant that their confidential information is disclosed and they are put at a competitive disadvantage.  This would, in turn, hinder the government's law-enforcement efforts.

25

III.    PLAINTIFFS' COLLATERAL-ESTOPPEL ARGUMENT IS WAIVED AND, IN ANY EVENT, MERITLESS

The district court correctly held that the earlier decision in *CIR I* does not collaterally estop the Department of Labor from withholding EEO-1 data. Plaintiffs forfeited their challenge (Br. 22 n.10) to that holding because "[a]rguments raised only in footnotes"—even lengthy ones—"are generally deemed waived." *Estate of Saunders v. Commissioner*, 745 F.3d 953, 962 n.8 (9th Cir. 2014). *But see Williams v. Woodford*, 384 F.3d 567, 587 n.5 (9th Cir. 2004).

In any event, plaintiffs' collateral-estoppel argument is meritless. As a general matter, collateral estoppel "prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007) (quotation marks omitted). Even where the prerequisites for collateral estoppel are met, the doctrine will not be applied, *inter alia*, if doing so would have a "potential adverse impact … on the public interest or the interests of persons not themselves parties in the initial action" or if "the party sought to be precluded … did not have an adequate … incentive to obtain a full and fair adjudication in the initial action." Restatement (Second) of Judgments § 28(5) (1982). In short, collateral estoppel will not be applied "when its effect would be unfair." *Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co.*, 873 F.2d 229, 234 (9th Cir. 1989).

In *CIR I*, the plaintiffs sought a single year's EEO-1 data for 10 identified companies. 424 F. Supp. 3d at 775. Here, plaintiffs seek data from 16,755 EEO-1 reports, spanning multiple years and concerning 4757 contractors, 3-ER-411, and plaintiffs' multiple FOIA requests indicate that they now intend to seek the data of every federal contractor each year, 3-ER-397–400. This Court has explained that "discrepancies in amounts at issue between two actions may make application of collateral estoppel inappropriate," *Eureka Fed. Sav.*, 873 F.2d at 233, because a litigant without much incentive to appeal a small judgment in an initial case should not be exposed to a much larger judgment in a later case by application of collateral estoppel. This concern is particularly true for the United States, which must consider "a variety of factors, such as the limited resources of the government and the crowded dockets of the courts" before deciding whether to appeal. *United States v. Mendoza*, 464 U.S. 154, 161 (1984). It would be unfair now to require the Department of Labor to turn over every federal contractor's EEO-1 report for every year just because the government decided not to appeal an earlier decision concerning 10 reports.

Application of collateral estoppel would also adversely affect nonparties and the public interest. Requiring the Department of Labor to disclose the reports at issue in this case would expose the confidential information of thousands of federal contractors that had no information at stake in *CIR I*. Applying collateral estoppel here would be particularly unjust because the decision in that case is inconsistent with numerous other district-court decisions that have recognized that EEO-1 reports "are

27

commercial information." *Sears, Roebuck & Co. v. GSA*, 384 F. Supp. 996, 1005 (D.D.C. 1974); *see also, e.g.*, *Westinghouse Elec. Corp. v. Schlesinger*, 392 F. Supp. 1246, 1249 (E.D. Va. 1974), *aff'd*, 542 F.2d 1190 (4th Cir. 1976). Indeed, while prior decisions split on whether EEO-1 reports were confidential under the prevailing standard prior to *Argus Leader*, until *CIR I*, courts consistently ruled that EEO-1 reports contain commercial information.

In contrast to the situation in *National Treasury Employees Union v. IRS*, on which plaintiffs attempt to rely, this case and *CIR I* do not involve FOIA requests that "are identical except for the year involved." 765 F.2d 1174, 1177 (D.C. Cir. 1985). As explained, *CIR I* involved the data of 10 federal contractors, while this case involves the data of 4757 contractors. Furthermore, the prior decision at issue in *National Treasury Employees Union* permitted the agency to withhold any portions of the requested documents that would identify specific individual employees of the agency, *id.* at 1175, and thus applying collateral estoppel in that case to permit similar withholdings did not adversely affect the interests of any nonparties. Collateral estoppel has never been applied offensively against the government in a FOIA case to compel the production of previously unreleased documents.

28

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

*Of Counsel:*

BRIAN M. BOYNTON
    *Principal Deputy Assistant Attorney*
    *General*

SEEMA NANDA
    *Solicitor of Labor*

ISMAIL J. RAMSEY
    *United States Attorney*

EMILY S. WHITTEN
    *Attorney*

PAMELA JOHANN
    *Assistant United States Attorney*

    *United States Department of Labor*

MARK B. STERN

    *s/ Joshua M. Koppel*
JOSHUA M. KOPPEL
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7212*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 514-4820*
    *joshua.m.koppel@usdoj.gov*

August 2024

29

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Ninth Circuit Rule 21-1 because it contains 6,967 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Joshua M. Koppel*
Joshua M. Koppel